# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

PETER K. KIJEWSKI, PhD

<div style="margin-left:4em">*Plaintiff,*</div>

v.

TIAA, TIAA Trust Services
The Vanguard Group, Inc.,
BNY Pershing,
Maureen A. Dunn, Esq.,
Mitchell Y. Cohen, Esq.,
Marie F. Kijewski, PhD

<div style="margin-left:4em">*Defendants.*</div>

No.          1:25-cv-01779

**INDIVIDUAL COMPLAINT**

**POTENTIAL JURY TRIAL**

# I. Introduction

## A. TIAA

1. EXHIBIT 1 October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348 reveals:

    a. **Legal**: Divorce attorney Ms. Dunn submission to TIAA a valid $468,997 Domestic Relations Order (DRO).

    b. **Prohibited**: TIAA enforcement actions resulting in recurring Plaintiff Peter Kijewski retirement income disbursements "hold", including Federal & State tax withholding "hold", since 2018.

2. EXHIBIT 2 June 22, 2022, Ms. Perry, TIAA Law & Compliance Liaison, letter to Plaintiff Peter Kijewski reveals TIAA recurring enforcement actions: "On July 1, 2015, April 18, 2017 and March 22, 2018, TIAA received an order to restrain withdrawals, transfers, and prevent any status changes of your retirement plan accounts until the necessary QDRO had been executed, processed, and funds distributed to the plaintiff. As a result of these orders, TIAA placed a restriction on your retirement accounts."

3. EXHIBIT 3 Jul 6, 2015, Ms. Angela Shaw, TIAA QDRO Relationship Manager, letter to "Dear Attorney Cohen" NYSCEF No. 358 reveal TIAA consented "We will implement the Order to the extent of the funds remaining in the contract affected" causing Peter Kijewski TIAA retirement income "hold".

4. EXHIBIT 4 July 6, 2015, Peter Kijewski proposed, effective TIAA alternative letter would have required researching applicable regulatory requirements, but the effort would have been substantially less compared to an unprecedented number of recurring TIAA letters confirming "consent to a further

restraining order being imposed on the accounts while we work through the myriad of issues remaining in an effort to divide the retirement interests appropriately."

    a. **TIAA Consent**: "Pursuant to those communications, TIAA has maintained a disbursement hold on Dr. Kijewski's accounts since 2018, pending the receipt of a domestic relations order (DRO)."

5. <u>EXHIBIT 5</u> Enclosed September 26, 2023, Ms. Perry, TIAA Law & Compliance Liaison, letter to Ms. Christine Pesaturo, MSKCC Plan Administrator, Plaintiff Peter Kijewski <u>sponsor</u> 403(b) & 457(b) retirement plans, reveals:

    a. March 6, 2018 - December 16, 2021, TIAA <u>custodian</u> 403(b) & 457(b) retirement plans retirement income disbursements "hold", including Federal & State tax withholding "hold", accounts <u>owner</u> Plaintiff Peter Kijewski.

    b. Ms. Christine Pesaturo, MSKCC Plan Administrator, communication to TIAA mandated TIAA compliance: "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)."

    c. Ms. Christine Pesaturo, MSKCC Plan Administrator, consulting with Robert Newman, Esq., achieved tax years 2018, 2019, 2020 and 2021 "Required Minimum Distribution" (RMD) disbursements.

    d. Attorney participants, June 19, 2015, no-fault Action for a Divorce 60606/2015 NYSCEF No. 1 & 2, failed to achieve "Required Minimum Distribution" (RMD) disbursements.

6. <u>EXHIBIT 5</u> Enclosed **MSKCC Retirement Savings Plan (RSP)**
**Summary Plan Description**, **MSK BENEFITS DEPARTMENT** reveals a
compilation of retirement plans regulatory requirements.

7. <u>EXHIBIT 6</u> June 12, 2024, EBSA File No. 202430-11820: Plaintiff Peter
Kijewski wrote and mailed to the Department of Labor his complaint about $0.00
"Required Minimum Distribution" (RMD) disbursements since March 6, 2018.  By
email or phone, Peter Kijewski received monthly information of an active
investigation.

8. <u>EXHIBIT 7</u> Enclosed October 18, 2022, Ms. Perry, TIAA Law & Compliance
Liaison, letter to "Dear Ms. Dunn":

a. "TIAA has maintained a disbursement hold on Dr. Kijewski's TIAA
retirement plan accounts since 2018, pending the receipt of a qualified
domestic relations order (DRO). To date, TIAA has not received a DRO in this
matter."

9. <u>EXHIBIT 7</u> December 1, 2023, Ms. Perry, TIAA Law & Compliance Liaison,
letter to "Dear Ms. Dunn", Enclosure: "Last year you shared a 'Decision and Order'
dated November 4, 2022.":

a.   November 4, 2022, Hon. Thomas Quinones, J.S.C. No. 6 of 7,
**DECISION & ORDER** <u>Applications</u> No. 12 & 13 NYSCEF No. 505 & 506:

i. "ORDERED, that if Defendant fails to purge himself of this
contempt by the purge date of December 12, 2022, Defendant shall be
committed to the custody of the Westchester County Commissioner of
Corrections to be incarcerated at the Westchester County Jail for a
period to be determined by the Court, or until he has offered proof to

this Court that he has fully satisfied the purge conditions as set forth

herein, whichever occurs first; and it is further"

 ii. "ORDERED, that Defendant is restrained from removing,

transferring, or withdrawing the retirement assets at Vanguard and

TIAA-CREF until the necessary QDROs are processed, except to the

extent he is required to take a mandatory distribution for the calendar

year 2022; and it is further"

 iii. "ORDERED, that the parties are directed to appear before the

Court at 12:00 P.M. on December 13, 2022 to confirm that Defendant

has purged himself of the contempt herein determined or for the

incarceration of Defendant as the facts might dictate."

 iv. December 1, 2023, Ms. Perry, TIAA Law & Compliance Liaison,

removed October 18, 2022, "IRA FBO", confirming TIAA IRA transfer to

another company.

10. **Inexplicable Discovery**: To date of the present COMPLAINT, TIAA

never received any Plaintiff Peter Kijewski 403(b) & 457(b) retirement plans

Domestic Relations Order (DRO), since June 19, 2015, Action for a Divorce NYSCEF

No. 1 & 2 and June 25, 2015, Action for a Divorce papers delivery to Plaintiff Peter

Kijewski exposed NYSCEF No. 3.

11. **Tracking Attorney Restraining Order Timelines**: Peter Kijewski

COMPLAINT tracks timelines of recurring enforcement 403(b) & 457(b) retirement

plans and IRAs retirement income "hold", including "Required Minimum

Distribution" (RMD) disbursements "hold", reveals never-seen-before entirely

preventable adverse outcomes.

## B. Vanguard Group, Inc.

12. June 25, 2015, Mr. Cohen wrote his AUTOMATIC ORDERS letter to Vanguard, sent by wire "FAX 06 27 2015 0300", viewing Vanguard **Traditional IRA account** and **Rollover IRA account** statements handed to him in secrecy by his client Ms. Kijewski:

a. "Mr. Kijewski has the following accounts with your company: Individual account #054009785096851; Traditional IRA account #0509-09788620965 and #0056-09788620965 and possibly other accounts."

b. "The aforesaid notice of Entry of Automatic Orders includes a specific provision that: ORDERED: Neither party shall transfer, encumber, assign, remove, withdraw or in any way dispose of, without the consent of the other party, or by order of the court.. ." any cash accounts, stocks, mutual funds, bank accounts, etc See paragraph (1) thereon A similar restriction is imposed with respect to any "tax deferred funds, stocks or other assets held in any individual retirement accounts, 401K accounts, profit sharing plans, Keogh accounts, or any other pension or retirement accounts. See paragraph (2) thereon."

c. "See paragraph (2) thereon" reveals Mr. Cohen omitted an unfavorable phrase concerning his intentions "except that any party who is already in pay status may continue to receive such payments thereunder."

13. March 22, 2018, Ms. Dunn letter to Vanguard NYSCEF No. 365, via FAX "03 24 2018 0300", filed November 4, 2021, by Peter Kijewski: "An Order to Show Cause was signed by Hon. Lewis J. Lubell in connection with this matter, and said Order temporarily restrains all retirement accounts maintained by Mr. Kijewski at

Vanguard, so that no transfers or withdrawals may be made out of any retirement accounts. A copy of the Order is enclosed for service upon you; your attention is directed to the first full paragraph on page 3 of the Order.

14. EXHIBIT 8 April 5, 2018, Miles Gilpin, Legal Analyst, Vanguard Legal Department, subpoena response to "Dear Ms. Dunn", Enclosures:

a. " On behalf of The Vanguard Group, Inc. ("Vanguard"), I am responding to the March 14, 2018 subpoena regarding the above-captioned matter."

b. "Vanguard objects to the subpoena …"

c. "Subject to and without waiver of the foregoing objections, Vanguard is enclosing the following responsive documents, Bates labeled, VGI-1023958-000001 through VGI-1023958-000120:"

i. Vanguard enumerates account statements revealing Paul Cowie, TIAA CFP, Portfolio Advisor WMA, transferred the Vanguard IRA to the TIAA Portfolio Advisor A57-649187 IRA he created.

ii. Vanguard enumerates account statements revealing Ms. Dunn enforced transfer of the prior Vanguard IRA back to Vanguard.

iii. January 5, 2017, Ms. Dunn wire communication to Ms. Dahan NYSCEF No. 121: "I have discussed this with Marie and quite frankly, Peter's position does not make sense and we do not consent to using TIAA Cref for the QDRO."

15. EXHIBIT 9 April 9, 2018, Ms. Lynda Roseboro, Legal Analyst, Vanguard Legal Department, letter to "Dear Mr. Kijewski" NYSCEF No. 367, Enclosure:

a. "Vanguard is not a party to this action, and is therefore not bound by the March 14, 2018, Order. However, in light of what appears to be a dispute regarding the assets in the Account, we are writing to notify you that Vanguard has placed a restriction on the Account; accordingly, no exchanges, redemptions, withdrawals, or distributions of any kind may occur in or from the Account during this time (including any Required Minimum Distributions)."

b. "Enclosed is a copy of the Order to Show Cause associated with the documentation received.": March 20, 2018, Hon. Luis J. Lubell, J.S.C. No. 4 of 7, **IMMEDIATE RELIEF REQUESTED <u>ORDER TO SHOW CAUSE</u>** <u>Application</u> No. 5 NYSCEF No. 163.

c. Ms. Dunn omitted NYSCEF filing "March 14, 2018, ORDER" supporting papers:

    i. March 14, 2018, Ms. Dunn **<u>AFIRMATION IN SUPPORT</u>** (2 pages).

    ii. March 14, 2018, Ms. Kijewski **<u>AFFIDAVIT IN SUPPORT</u>** (9 pages).

16. Vanguard Group Inc. inexplicable enforcement actions resulted in recurring "Required Minimum Distribution" (RMD) disbursements "hold", including Federal & State tax withholding "hold", Plaintiff Peter Kijewski <u>Individual</u> Retirement Account (IRA <u>owner</u>.

17. Vanguard Group Inc. failed to assure the Internal Revenue Code compliance mandating Peter Kijewski, Individual Retirement Account (IRA) <u>owner</u>,

quarterly scheduled "Required Minimum Distribution" (RMD) disbursements,

starting May 10, 2011.

18. Recurring Vanguard Group, Inc. letters to Plaintiff Peter Kijewski

concerning the Internal Revenue Code mandatory "Required Minimum Distribution"

(RMD) disbursements:

### Table 1 Vanguard Annual RMD Letters

| Tax Years 2018 - 2023 Vanguard Tax-Deferred IRA Savings Benefits Mandatory RMD Distribution Letters | | | |
|---|---|---|---|
| IRS, Department of the Treasury, Internal Revenue Code: "Retirement plan participants and IRA owners, including owners of SEP IRAs and SIMPLE IRAs, are responsible for taking the correct amount of RMDs on time every year from their accounts, and they **face stiff penalties for failure to take RMDs**" since May 10, 2011. | | | |
| Date | Tax Year | RMD | Vanguard IRA Letter |
| 1/19/2018 | 2018 | $27,995.73 | "January 19, 2018 Vanguard Letter - 'Your Vanguard IRA RMD for 2018 is $27,995.73'.pdf" |
| 1/23/2019 | 2019 | $29,663.34 | "January 23, 2019 Vanguard Letter - 'Your Vanguard IRA RMD for 2019 is $29,663.34'.pdf" |
| 1/24/2020 | 2020 | $31,594.75 | "January 24, 2020 Vanguard Letter - 'Your Vanguard IRA RMD for 2020 is $31,594.75'.pdf" |
| 1/22/2021 | 2021 | $33,155.64 | "January 22, 2021 Vanguard Letter - 'Your Vanguard IRA RMD for 2021 is $33,155.64'.pdf" |
| 1/21/2022 | 2022 | $32,083.61 | "January 21, 2022 Vanguard Letter - 'Your Vanguard IRA RMD for 2022 is $32,083.61'.pdf" |
| 1/13/2023 | 2023 | $34,054.27 | "January 13, 2023 Vanguard Letter - 'Your Vanguard IRA RMD for 2023 is $34,054.27'.pdf" |
| TBD | 2023 | $188,547.34 | **"Employee Retirement Income"** SHORT FORM ORDER: "The Parties consent for the Defendant to be **permitted** to receive any and all RMD's (required minimum distributions) from any and all retirement accounts in his name. A short form order was issued directing the same" since May 10, 2011. |
| | | **$61,449.16** Tax Years 2018, 2019, 2021 and 2022 **stiff** RMD 50% **penalties** | |
| | | **$30,724.58 Omitted** mandatory RMD distribution Federal and State tax withholding | |

19. January 19, 2018, Ms. Karin Risi, Vanguard Managing Director, letter to

"Dear Peter K Kijewski":

a. "Remember to take your 2018 required minimum distribution"

b. "Because you're over the age of 70½, you must take an annual

required minimum distribution (RMD) from your IRA (traditional IRA,

rollover IRA, SIMPLE IRA or SEP-IRA) assets with Vanguard by December

31, 2018. For additional information about RMDs, log on to your Vanguard

account and, from the menu, choose My Accounts, select Account

maintenance, and then, under Services, choose Required minimum

distributions (RMD)."

c. "For an easy way to take your distribution from your Vanguard IRAs, we offer automatic distribution options as part of our complimentary RMD Service. You can keep your assets invested in Vanguard funds by setting up an automatic exchange into a nonretirement account with Vanguard. You can also set up automatic withdrawals linked to a bank account."

d. Vanguard failed to memorialize: "However, in light of what appears to be a dispute regarding the assets in the Account, we are writing to notify you that Vanguard has placed a restriction on the Account; accordingly, no exchanges, redemptions, withdrawals, or distributions of any kind may occur in or from the Account during this time (including any Required Minimum Distributions)."

20. January 30, 2023, Peter Kijewski wire communication to Vanguard Group, Inc., attachment January 30, 2023, Court Order:

**"Vanguard Reference # 1024233**
PK
Peter Kijewski
To:Subpoena_Response
Cc:Jill Spielberg;Alyson Kuritzky

Mon 1/30/2023 8:53 PM

20150625 20230130 January 30, 2023 Hon. Thomas Quinones, NYS JSC Order - Peter K. Kijewski 'authorized and permitted to take any and all required minimum distibutions' NYSCEF No. 523.pdf 38 KB

The Vanguard Group, Inc.
Attn: Office of the General Counsel - M35
100 Vanguard Boulevard
Malvern, PA 19355
Reference # 1024233

January 30, 2023

Appended Hon. Thomas Quinones, NYS JSC Order compliance and IRS, Department of the Treasury, Internal Revenue Code compliance, Vanguard 0033-88045718421 IRA account owner Peter K. Kijewski requests Vanguard proceed with immediate tax years 2018, 2019, 2021 and 2022 in arrears mandatory RMD distributions.  The order was signed January 30, 2023, in the Westchester County

Court Room #1003, 111 Dr. Martin Luther King Jr Blvd, White Plains, NY 10601.  Peter K. Kijewski Vanguard "Profile and account settings" define:

1.  Federal and State withholding

2.  Bank of America checking account net mandatory RMD distribution deposit

Regards,

*Peter Kijli*

Peter K. Kijewski, '63
PhD University of California Berkeley
23 Shipyard Drive #307
Hingham, MA 02043
Cell: 914-281-4893
Email: pkijewski@outlook.com"

21. March 8, 2023, Ms. Dunn Order NYSCEF No. 529 reveals Vanguard

Group, Inc. conflicting actions:

    a. April 9, 2018, "Vanguard is not a party to this action, and is therefore

not bound by the March 14, 2018, Order" resulted in IRA "Required Minimum

Distribution" (RMD) disbursement "hold".

    b. January 30, 2023, Hon. Thomas Quinones J.S.C. **SHORT FORM**

**ORDER** *ON CONSENT* NYSCEF No. 523: "It is hereby **Ordered**, *that*

*Defendant, Peter Kijewski, is hereby authorized and permitted to*

*take any and all required minimum distributions ("RMDs") from*

*any and all retirement accounts in Defendant's name.  This shall*

*include to the extent possible allowing Defendant to take his*

*2022 RMD's from his Vanguard account.*" resulted in Vanguard

failure to release "Required Minimum Distribution" (RMD) disbursement

"hold".

22. March 8, 2023, Ms. Dunn **Order** NYSCEF No. 529: "**ORDERED,** that

Vanguard shall issue Required Minimum Distributions to Defendant from the

Vanguard IRA in the total sum of $188,547.44, for years 2018 through 2023, as follows":

      a. "2018: $27,995.73"

      b. "2019: $29,663.34"

      c. "2020: $31,594.75"

      d. "2021: $33,155.64"

      e. "2022: $32,083.61"

      f. "2023: $34,054.27"

23. **Inexplicable Discovery**:

      a. To date March 8, 2023, Vanguard never processed any IRA Domestic Relations Order (DRO), since June 19, 2015, Action for a Divorce NYSCEF No. 1 & 2 and June 25, 2015, Action for a Divorce papers delivery to Plaintiff Peter Kijewski exposed NYSCEF No. 3.

      b. Ms. Dunn presented to Vanguard an invalid Domestic Relations Order (DRO), including false information about IRS Internal Revenue Code: "(6) Any distributions received by the Former Spouse pursuant to this Order will be included as gross income by the Former Spouse. For the purposes of Section 72 of the Internal Revenue Code, the Former Spouse and not the IRA Owner shall be treated as the distributee of any distribution or payment made by any IRA pursuant to this Order. "

      c. May 23, 2023, Ms. Dunn recitation of her "one million dollar" "Investment Experience" financial plan NYSCEF No. 548: "*The Parties further acknowledge that the date of transfer of the Vanguard IRA*

*to the Plaintiff was 5/15/23, and that the ~~Peter~~ Plaintiff received a total of $424,458.68 from said transfer.*"

24. **Tracking Attorney Restraining Order Timelines**: Peter Kijewski COMPLAINT tracks timelines of recurring enforcement IRAs retirement income "hold", including "Required Minimum Distribution" (RMD) disbursements "hold", reveals never-seen-before entirely preventable adverse outcomes.

a. November 16, 2015, Ms. Kijewski tax years 2011 - 2015 RMD calculations NYSCEF No. 441 reveals Vanguard IRA "Required Minimum Distribution" (RMD) included in BNY Pershing RMD disbursements.

### C. BNY Pershing

25. January 31, 2011, BNY Pershing Individual Retirement Account statement, Peter Kijewski account <u>owner</u>: "According to our records, you are required under federal tax law to take an annual minimum distribution from your retirement account. These required minimum distributions (RMDs) usually begin in the year you reach the age of <u>70½</u>. Failure to take the RMD when required may result in a <u>50% excise tax</u> imposed on the amount you did not take. **NOTE**: Any outstanding rollovers or recharacterizations that were not in your account on December 31 of the prior year should be added to your year-end fair market value for the previous year to calculate your RMD for the current year. Also, when taking your RMD, please consider any scheduled distribution amounts you have established which may allow you to <u>automatically</u> meet all or part of your RMD. Please contact us if you are interested in establishing instructions."

26. June 25, 2015, Mr. Cohen AUTOMATIC ORDERS letter to Pershing Advisor Solutions NYSCEF No. 400 (18 pages), enclosed <u>unauthorized</u> BNY Pershing IRA account numbers and dog & cat doodle, account <u>owner</u> Peter Kijewski:

a. "Please be advised that your undersigned represents Marie Kijewski in connection with her matrimonial matter against her husband, Peter Kijewski. An Action for Divorce has been commenced by Marie Kijewski against Peter Kijewski in the Supreme Court of the State of New York, in the County of Westchester. Enclosed herewith is a copy of the Summons for Divorce which includes Notice of Entry of Automatic Orders pursuant to Domestic Relations Law Section 236."

b. "Mr. Kijewski has the following accounts with your company: J4N-301918 and possibly other accounts."

c. " The aforesaid notice of Entry of Automatic Orders includes a specific provision that: ORDERED: Neither party shall transfer, encumber, assign, remove, withdraw or in any way dispose at without the consent of the other party, or by order of the court...." any cash accounts, stocks, mutual funds, bank accounts, etc. See paragraph (1) thereon. A similar restriction is imposed with respect to any "tax deferred funds, stocks or other assets held in any individual retirement accounts, 401K accounts, profit sharing plans, Keogh accounts, or any other pension or retirement accounts. See paragraph (2) thereon."

d. "See paragraph (2) thereon" reveals Mr. Cohen expunged an unfavorable phrase concerning his intentions "<u>except that any party who is already in pay status may continue to receive such payments thereunder.</u>"

e. "Please consider this as Notice to you that these restrictions are in place and be guided accordingly."

27. November 16, 2015, Ms. Dunn letter to Ms. Dahan NYSCEF No. 415:

a. "As you are aware, your client has provided no financial support to Ms. Kijewski in the past month, and the funds he provided in October went to pay household and family bills that were incurred largely in August and/or September. Your client's obligation to support his wife and child is clear. Does he intend to make any good faith payment of support?"

b. "Additionally, your client's discovery responses were due last Friday, pursuant to the Preliminary Conference Order. When can I expect to receive same?"

c. "Finally, as addressed in our application before the Court and as discussed in our recent correspondence, your client is obligated to withdraw the sum of $48,389.49 form (sic) one of his retirement accounts as and for his Required Minimum Distribution for 2015. Same must be requested imminently or it may not be processed within this calendar year. Such delay would subject the parties to a penalty of up to 50%, which would be a wholly unnecessary dissipation of marital funds. Ms. Kijewski (as she has historically done) has calculated your client's RMD, and a copy of these calculations is attached. Also attached is the RMD distribution request form for your client's Clear Harbor account (account number J4N-301918). Please confirm that your client will sign and submit this form to Clear Harbor as soon as possible in order to ensure that the RMD is processed within this calendar year."

d. "Ms. Kijewski (as she has historically done) has calculated your client's RMD, and a copy of these calculations is attached.": Tax years 2011, 2012, 2013, 2014 & 2015 RMD calculations NYSCEF No. 441.

e. "With respect to the funds received from the RMD, it is proposed that your client agree that these funds be equally divided between the parties upon receipt, or in the alternative, that your firm will hold in escrow all funds received, pending a decision from the Court as to the disposition of these proceeds. Please advise as to your client's position regarding this request."

28. EXHIBIT 10 November 23, 2015, Ms. Woolston Wire Communication to "Hello Peter", reply from BNY Pershing Legal Group NYSCEF No. 418, attachment June 25, 2015, Mr. Cohen AUTOMATIC ORDERS letter to Pershing Advisor Solutions NYSCEF No. 400:

a. "**Our legal group has reviewed the Action for Divorce submitted to us in June of this year.   Regarding the client being able to take out his RMD, they responded with the below:**"

b. "**"This client needs to take their RMD and should have his attorney alert Mitchell Cohen of Johnson & Cohen LLP that this action took place and is a regulatory requirement."**"

29. November 23, 2015, BNY Pershing wire communication to Peter Kijewski, via Ms. Woolston Clear Harbor Asset Management, NYSCEF No. 420:

**RE: TIAA-CREF Letter**
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Louis Newman;Jessica Dahan

Mon 11/23/2015 4:19 PM

Pershing is now coming back with this...
Hello Cat,

After further review our legal team has said that we will not be able to remove the block or approve the client's RMD request until we receive a letter from the attorney acknowledging that they know of the end-clients intentions.

I'm very sorry about this...

Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

    30. EXHIBIT 11 April 12, 2016, Ms. Dunn Letter to "Dear Ms. Dahan"

explains how Ms. Dunn benefits due to BNY Pershing enforcement "Required

Minimum Distribution" (RMD) disbursements "hold":

    a. "I understand that your client claims to need an advance on equitable

distribution, although I cannot understand how that is possible as he did not

pay any expenses for the marital residence for four months and has not paid

my client the support he owes her. Regardless, my client is willing to agree

that your client take his 2016 RMD from his Clear Harbor retirement account

now, to be divided evenly between the parties. This will be approximately

$49,000 in total."

    i. "Offers to purchase my client's interest in the home at a price

agreeable to both parties; or "

    ii. "Signs a listing agreement with one of the two real estate agents

that have been proposed, and further agrees to be equally responsible

for the reasonable repairs and staging recommended by the selected

agent in order to prepare the home for sale."

b. "Please review this proposal with your client, and please advise by this Friday, April 15th as to which, if either, of the two options he has selected. If your client declines to buy out my client's interest, and further refuses to sign a listing agreement with either real estate agent, my client will not agree that he take any advance on equitable distribution. Further, as the parties will lose the potential to sell the home this spring due to your client's continued delay, we will address your client's wasteful dissipation of this substantial marital asset with the Court."

31. EXHIBIT 12 December 7, 2016, Ms. Woolston wire communication to "Hello Maureen, Jessica, Peter and Marie" NYSCEF No. 362:

a. **"Kijewski - Required Minimum Distribution from Peter's IRA— MUST be done before 12/31/16"**

b. "Anticipating an issue since Pershing still has a block on Peter's IRA…I'm sure we need a letter like this one to do the RMD."

c. Attachments:

i. December 2, 2015, Mr. Cohen letter to "Dear Ms. Woolston" NYSCEF No. 360: "Pursuant to your discussion with my associate this morning, please be advised that I am aware of Mr. Kijewski's request for a distribution from account J4N-301918 in the sum of $48,389.49, which represents his Required Minimum Distribution for the year 2015. On behalf of Ms. Kijewski, we consent to the request to release these funds. It is my understanding that these funds will be released directly to Mr. Kijewski's counsel, Newman & Denney, P.C., where they will be held in escrow."

ii. "IRA/ESA Distribution Request Instructions and IRA/ESA Distribution Request, Account Number J4N-301918":

iii. "Withhold federal income tax from the gross distribution amount at the rate of 10%. **Withhold** 20%"

iv. "Withhold state income tax from the distribution according to the requirements as outlined in Pershing's IRA Federal and State Income Tax Withholding Instructions. **Withhold** 5%"

32. BNY Pershing Legal Department lawyers understand "wholly unnecessary dissipation of marital funds" due to enforcement BNY Pershing IRA "Required Minimum Distribution" (RMD) disbursements "hold":

a. **AUTOMATIC ORDERS**: "(2) ORDERED: Neither party shall transfer, encumber, assign, remove, withdraw or in any way dispose of any tax deferred funds, stocks or other assets held m any individual retirement accounts, 401K accounts, profit sharing plans, Keogh accounts, or any other pension or retirement account, and the parties shall further refrain from applying for or requesting the payment of retirement benefits or annuity payments of any kind, without the consent of the other party in writing, or upon further order of the court ; except that any party who is already in pay status may continue to receive such payments thereunder."

33. **Ms. Dunn Court Applications No. 1, 2 & 3**: Numerous attorney communications occurred about BNY Pershing IRA, account owner Peter Kijewski, "Required Minimum Distribution" (RMD) disbursements "hold".

34. September 2, 2016, Ms. Dunn **JUDGMENT OF DIVORCE** NYSCEF No. 102:

a. "**ORDERED AND ADJUDGED** that equitable distribution shall be as set forth in the parties' Stipulation of Settlement; and it is further"

b. "**ORDERED AND ADJUDGED** that pursuant to the Stipulation of Settlement, a separate Qualified Domestic Relations Order shall be issued simultaneously herewith or as soon as practicable;"

35. September 20, 2017, Ms. Dunn wire communication to BNY Pershing, via Ms. Woolsten (sic), Clear Harbor Asset Management, NYSCEF No. 355 (yellow highlight in original text):

**From:** Maureen Dunn [mailto:MDunn@johnsoncohenlaw.com]
**Sent:** Wednesday, September 20, 2017 8:57 AM
**To:** 'cwoolston@clearharboram.com'
**Cc:** Jessica Friedrich <Jessica.Friedrich@sslllp.com>
**Subject:** Kijewski v. Kijewski

Dear Ms. Woolsten:

As you may recall, I represent Marie Kijewski in connection with the matrimonial matter against Peter Kijewski. Mr. Kijewski is currently represented by Jessica Friedrich (copied here). Ms. Friedrich advised that her client has encountered difficulty in receiving his Required Minimum Distribution from Clear Harbor as a result of the hold on the accounts that had been in effect during the pendency of the matrimonial action. Please be advised that to the extent such a hold previously existed, same is no longer required as the parties have resolved their matrimonial litigation and a judgment of divorce has been issued. Mr. Kijewski should no longer be restrained from accessing his accounts due to the previous hold.

Regards,

*Maureen A. Dunn, Esq.*
*Johnson & Cohen, LLP*
*mdunn@johnsoncohenlaw.com*
*Phone: (914) 644-7100*
*Fax: (914) 922-9500*
*www.johnsoncohenlaw.com*
**Email is not permitted for service of papers.**
**NOTICE TO RECIPIENT: This email transmission is meant only for the intended recipient of this transmission. This transmission may be a communication privileged by law. If you have received this transmission in error, any review, use, dissemination, distribution, or copying of this email is strictly prohibited. Please notify us by return email of the error and delete this message from your system. Thank you for your cooperation.**

36. **Inexplicable Discovery**: Since BNY Pershing Legal Department lawyer confirmed ""**This client needs to take their RMD and should have his**

**attorney alert Mitchell Cohen of Johnson & Cohen LLP that this action took place and is a regulatory requirement.""**:

  a. **BNY Pershing Required Response**: "Because BNY Pershing has not received a DRO, we will immediately release the disbursement "hold" on Dr. Kijewski's accounts and inform our client Dr. Peter Kijewski this action took place, due to BNY Pershing IRA "Required Minimum Distribution" (RMD) disbursements **regulatory requirement**."

37. **Tracking Attorney Restraining Order Timelines**: Peter Kijewski COMPLAINT tracks timelines of recurring enforcement IRAs retirement income "hold", including "Required Minimum Distribution" (RMD) disbursements "hold", reveals never-seen-before entirely preventable adverse outcomes.

  a. November 16, 2015, Ms. Kijewski tax years 2011 - 2015 RMD calculations NYSCEF No. 441 reveals BNY Pershing (Clear Harbor) IRA "Required Minimum Distribution" (RMD) aggregating TIAA IRA, Vanguard IRA and BNY Pershing IRA RMD disbursements, preventing IRA RMD 50% penalties.

  b. RMD calculations omit pre-1987 403(b) retirement plans, account <u>owner</u> Plaintiff Peter Kijewski, tax year 2015 Internal Revenue Code compliance: "don't need to be distributed from the plan until December 31 of the year in which a participant turns <u>age 75</u> or, if later, April 1 of the calendar year immediately following the calendar year in which the participant retires."

  c. December 9, 2015, Hon. Paul I. Marx, J.S.C. No. 1 of 7, PENDENTE LITE DECISION AND ORDER NYSCEF No. 59 regarding Lincoln Financial

403(b) plan: "Plaintiff notes that Defendant has already received $2,207.60 from one retirement account."

**D. Ms. Dunn, Mr. Cohen & Ms. Kijewski: Unprecedented Volume of Obfuscating NYSCEF Content**

38. March 14, 2018, custodians TIAA & Vanguard enforcement actions 403(b) & 457(b) retirement plans and IRAs, accounts <u>owner</u> Peter Kijewski, "Required Minimum Distribution" (RMD) disbursements "hold" resumed.

39. Ms. Dunn continued filing an unprecedented volume of obfuscating NYSCEF content, mandating comprehensive review, analysis and understanding content:

a. February 28, 2018, Ms. Dunn **ORDER TO SHOW CAUSE IMMEDIATE ARREST AND IMPRISONMENT** <u>Application</u> No. 4 NYSCEF No. 133.

b. March 14, 2018, Ms. Dunn **NOTICE OF HARDCOPY SUBMISSION - - E-FILED CASE** NYSCEF No. 166, filed March 23, 2018, by Ms. Dunn:

i. March 20, 2018, Hon. Luis J. Lubell, J.S.C. No. 4 of 7, **IMMEDIATE RELIEF REQUESTED <u>ORDER TO SHOW CAUSE</u> <u>Application</u>** No. 5 NYSCEF No. 163.

ii. Received March 14, 2018, by CHIEF CLERK.

iii. Received March 15, 2018, by Special Referee Josephine Trovini, assigned September 5, 2017.

iv. Filed March 23, 2018, by Court User.

40. March 14, 2018, Ms. Dunn **NOTICE OF HARDCOPY SUBMISSION - - E-FILED CASE** NYSCEF No. 166 grossly false statement:

a. "[x] I am submitting a <u>proposed</u> <u>order</u> <u>to</u> <u>show</u> <u>cause</u> and supporting papers seeking a TRO, together with the required showing that I or my client

will be significantly prejudiced by giving notice. If the court directs service in hard copy only, I shall e-file these documents within 3 business days after service."

    b. Ms. Dunn never e-filed:

        i. March 14, 2018, Ms. Dunn **<u>AFFIRMATION IN SUPPORT</u>**.

        ii. March 14, 2018, Ms. Kijewski notarized **<u>AFFIDAVIT IN SUPPORT</u>**.

    c. April 11, 2018, Ms. Dunn e-filed <u>Application</u> No. 5 "supporting papers", which will be the topic of comprehensive review, analysis and understanding content:

        i. April 10, 2018, Ms. Kijewski **<u>AFFIDAVIT IN REPLY</u>** NYSCEF No. 193.

        ii. December 8, 2017, IRS returned, "Defendant's 2016 tax transcript and email", "<mark>This Product Contains Sensitive Taxpayer Data</mark>", NYSCEF No. 195, subpoenaed by Ms. Dunn.

    d. False statement "my client will be significantly prejudiced by giving notice":

        i. **<u>Legal</u>**: Submission to TIAA and/or Vanguard valid just, fair & untimely $468,997 Domestic Relations Order (DRO).

        ii. **<u>Prohibited</u>**: Account <u>owner</u> Peter Kijewski 403(b) & 457(b) retirement plans and IRAs "Required Minimum Distribution" (RMD) disbursement "hold".

    e. "Supporting papers seeking a TRO" resulting in March 6, 2018 - December 16, 2021, TIAA Temporary Restraining Order (TRO).

41. **<u>Discovery</u>**:

a. **<u>Attorneys & Parties</u>**: Ms. Dunn, Mr. Cohen & Ms. Kijewski empowered e-filing recurring Court <u>Applications</u>, including unprecedented volume of obfuscating supporting papers.

b. **<u>Retirement Asset Custodians</u>**: TIAA, Vanguard Group, Inc. & BNY Pershing empowered recurring enforcement 403(b) & 457(b) retirement plans and IRAs retirement income disbursement "hold", inexplicably including "Required Minimum Distribution" (RMD) disbursement "hold".

c. **<u>Plaintiff</u>**: Peter Kijewski definitely not empowered enforcement Internal Revenue Code compliance, exposed November 15, 2018, Ms. Dunn **<u>AFFIRMATION IN REPLY</u>** NYSCEF No. 245: "15. The Referee's Report recommended that this request be referred to the hearing to determine whether the request is necessary, in light of the document production recommended to be ordered. Counsel's argument that the documents "speak for themselves" misses the point; the need for Plaintiff to speak directly to the financial advisors is to determine the extent of the <u>changes made to these accounts by Defendant</u> subsequent to the parties' divorce (including <u>closing of accounts</u>, <u>changing account numbers</u>, <u>putting accounts into RMD status a year before he was required to do so</u>, <u>transferring funds</u>, etc.) and how these changes impact the pending QDROs. Furthermore, the TIAA accounts in question are almost fully invested in TIAA Traditional shares, an unusual insurance-based investment with arcane rules that are specific to each of the 4 separate plans in Defendant's name that remain to be divided. For example, the <u>premature change to RMD status</u>, undesirable to Plaintiff as she is not yet

required to take distributions and strongly prefers not to as she currently earns the highest salary of her life, may or may not be irreversible on Plaintiff's share after division, and may or may not be controlled by judicial order, depending on plan rules. The statements do not speak to these issues. It is appropriate for this request to be explored further at a hearing.":

  i. "Financial advisors": Paul Cowie, TIAA CFP, Portfolio Advisor WMA, and his team since December 31, 2015.

  ii. Hospital mergers cause "<u>changing account numbers</u>".

  iii. "<u>Putting accounts into RMD status a year before he was required to do so</u>": Each year, since tax year 2011, the Internal Revenue Code puts accounts into RMD status.

  iv. Ms. Dunn never submitted to TIAA any Domestic Relations Order (DRO) using "TIAA Traditional shares, an unusual insurance-based investment with arcane rules that are specific to each of the 4 separate plans in Defendant's name".

  v. October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348 lists "TIAA Traditional shares, an unusual insurance-based investment with arcane rules that are specific to each of the 4̶ 6 separate plans in Defendant's name", informing Ms. Dunn to use the plans and submit a valid Domestic Relations Order (DRO).

  vi. Ms. Dunn may have shunned a Domestic Relations Order (DRO) due to November 2021 monthly invoices, Ms. Dunn $12,360.06,

Professional Deduction ($3,000), and Mr. Senter $12,875.00, Courtesy

Adjustment ($1,000).

    vii. November 5, 2021, Ms. Dunn **AFFIRMATION IN SUPPORT**

NYSCEF No. 381 reveals Ms. Dunn instant discovery of ERISA rules &

regulation applicable for "TIAA Traditional shares, an unusual

insurance-based investment with arcane rules that are specific to each

of the 4 separate plans in Defendant's name".

42. **Evaluation**: June 19, 2015, no-fault Action for a Divorce 60606/2015

NYSCEF No. 1 & 2, novel Word processing application for e-filing an unprecedented

volume of obfuscating Court content "to protect the livelihoods of lawyers".

43. **Justification**: Defendant Ms. Dunn unlawful actions concerning the

Internal Revenue Code and "Employee Retirement Income Security Act of 1974"

(ERISA) substantially exceeds requirements for Ms. Dunn inclusion in Peter Kijewski

COMPLAINT.

    **E. Tracking TIAA, Vanguard & BNY Pershing "Required Minimum
Distribution" (RMD) Disbursements "Hold" Timeline**

44. Unprecedented Violations - TIAA, Vanguard & BNY Pershing IRS Internal

Revenue Code and "Employee Retirement Income Security Act of 1974" (ERISA)

tracks tax years 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022 and 2023 TIAA,

Vanguard and BNY Pershing "Required Minimum Distribution" (RMD)

disbursements "hold".

45. Visual 1 money transfer and Visual 2 marital money withdrawal urgent

money for Table 2 June 25, 2015, Mr. Cohen AUTOMATIC ORDERS letters causing

TIAA IRA, Vanguard IRA & BNY Pershing IRA "Required Minium Distribution"

(RMD) disbursement "hold".

46. Visual 3 Presentation recurring enforcement "TIAA Traditional shares, an

unusual insurance-based investment with arcane rules that are specific to each of the

4 6 separate plans in Defendant's name", Vanguard IRA & BNY Pershing IRA

"Required Minimum Distribution" (RMD) disbursements "hold".

## II. Contact Information

47. EXHIBIT 13 Contact information for attorneys and parties who

participated, starting June 19, 2015, no-fault Action for a Divorce 60606/2015

NYSCEF No. 1 & 2 and June 25, 2015, divorce papers delivery information NYSCEF

No. 3, appended Plaintiff Peter Kijewski mugshot.

48. EXHIBIT 14 February 1, 2020, ABA PRESIDENT'S LETTER BY JUDY

PERRY MARTINEZ: "We must not squander the future of legal services" concerning

Ms. Dunn conduct:

a. Ms. Dunn novel unprecedented volume of NYSCEF content e-filing

caused potential Attorney/Firm for Defendant impossible review, analysis and

understanding NYSCEF content: "Access to justice is a fundamental tenet of

the rule of law. Without it, people cannot fully protect their rights, liberty and

property; and the public's confidence in our justice system is put at risk."

b. June 19, 2015 - May 15, 2023, Ms. Dunn abhorred submission to

retirement asset custodians just, fair & untimely $468,997 Domestic Relations

Order (DRO): "Lawyers have the privilege of regulating their own profession.

With that privilege comes a responsibility to ensure that the rules and

regulations of the legal profession serve the public good. The ultimate purpose

of regulation is not to protect the livelihoods of lawyers but to advance the administration of justice. Some would suggest that if we don't have justice or public protection as our goal, we potentially put our self-regulation at risk."

49. November 2, 2021, Ms. Dunn wire communication to Mr. Senter NYSCEF No. 396 exposes Ms. Dunn asserted empowered authority enforcement IRS Internal Revenue Code subversion: "If he does truly want to resolve these issues, please advise if he will consent to a further restraining order being imposed on the accounts while we work through the myriad of issues remaining in an effort to divide the retirement interests appropriately. If he will consent, I can discuss with my client a carve out to enable Mr. Kijewski to remove his 2021 RMD to avoid further penalty, however those funds must first go to pay the outstanding money judgments and child support owed to my client."

50. Family Law Attorneys White Plains NY | Divorce Westchester County initiated June 19, 2015, guaranteed forever Action for a Divorce by achieving TIAA, Vanguard and BNY Pershing "consent to a further restraining order being imposed on the accounts while we work through the myriad of issues remaining in an effort to divide the retirement interests appropriately.":

## Table 2 Attorney AUTOMATIC ORDERS Invoices and Process Notes

| June 25, 2015 - September 20, 2017, AUTOMATIC ORDERS Recurring $0.00 RMD Disbursements | | | | | | |
|---|---|---|---|---|---|---|
| Date | Days | Charge | Process Notes | Time | Invoice | Peter |
| 4/25/2013 | -791 | MYC | Agreement "Attorney's signature" + "Client's signature" | ? | ? | |
| 6/15/2015 | -10 | MYC | Conference with Client | 1.5 | $712.50 | Pro Se |
| 6/17/2015 | -8 | MYC | Conference with Martin T. Johnson; telephone conference with client | 0.1 | $47.50 | Pro Se |
| 6/18/2015 | -7 | MYC | Telephone conference with client | 0.1 | $47.50 | Pro Se |
| 6/19/2015 | -6 | JA | Dictation of E-Mail to process server | 0.1 | $11.00 | Pro Se |
| 6/19/2015 | -6 | MYC | Conference with Client | 0.3 | $142.50 | Pro Se |
| 6/19/2015 | -6 | MYC | Miscellaneous - file pleadings | 0.1 | $47.50 | Pro Se |
| 6/24/2015 | -1 | MYC | Review financial account listing | 0.1 | $47.50 | Pro Se |
| 6/24/2015 | -1 | MYC | Telephone conference with client | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to TIAA-CREF | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to Pershing Advisor Solutions LLC | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to Vanguard | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to Lincoln Financial | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Telephone conference with client | 0.2 | $95.00 | Pro Se |
| 6/26/2015 | 1 | MYC | Telephone conference with client | 0.5 | $237.50 | Pro Se |
| 6/29/2015 | 4 | MYC | Receipt of Affidavit of Service and invoice from Finest Services | 0.1 | $47.50 | Pro Se |
| 7/9/2015 | 14 | LIN | Office meeting with client, call to opposing counsel | 0.5 | $287.50 | |
| 7/10/2015 | 15 | JNS | Notice of Appearance (filed and served), Demand for Statement of Net Worth (filed and served), drafted Answer and Counterclaim | 1.7 | $484.50 | |
| 7/13/2015 | 18 | MYC | Preparation of Demand for Worth Statement; file with Court | 0.2 | $95.00 | |
| 7/13/2015 | 18 | MYC | Review E-Mail from attorney with Notice of Appearance and Demand for NWS | 0.1 | $47.50 | |
| 7/13/2015 | 18 | MYC | Letter from TIAA Cref | 0.1 | $47.50 | |
| 7/13/2015 | 18 | MYC | Letter from Pershing | 0.1 | $47.50 | |
| 4/25/2013 | -791 | MYC | Johnson & Cohen, LLP: Opposing Mr. Cohen signed Agreement April 25, 2013. | | | |
| 7/9/2015 | 14 | LIN | Newman & Denney, LLC: Mr. Newman retained July 9, 2015, permanently closed. | | | |

51. Ms. Dunn enjoyed the benefits of recurring enforcement "Required

Minimum Distribution" (RMD) disbursements "hold":

| September 20, 2017, Ms. Dunn Terminating June 25, 2015, AUTOMATIC ORDERS RMD "Hold" | | | | | |
|---|---|---|---|---|---|
| Date | Years | Charge | Process Notes | Time | Invoice |
| 9/20/2017 | 2.2 | MD | E-Mails with client and attorney regarding retirement accounts | 0.2 | $70.00 |
| 9/20/2017 | 2.2 | MD | Telephone conference with client | 0.2 | $70.00 |
| 9/20/2017 | 2.2 | MD | Dictation of letter to Gail Wofford | 0.2 | $70.00 |
| 9/20/2017 | 2.2 | JF | review client emails; review notes from yesterday; draft affidavit | 0.4 | $120.00 |
| 9/20/2017 | 2.2 | DS | Email exch w/client re retirement accts | 0.2 | $120.00 |
| 9/21/2017 | 2.2 | MD | E-Mails with Clear Harbor | 0.2 | $70.00 |
| 9/21/2017 | 2.2 | MD | Telephone conference with client regarding QDROs | 0.3 | $105.00 |
| 9/21/2017 | 2.2 | MD | Conference with Mitchell Y. Cohen | 0.1 | $35.00 |
| 9/21/2017 | 2.2 | MD | E-Mails with client regarding ▮▮▮ | 0.1 | $35.00 |
| 9/21/2017 | 2.2 | DS | Reviewed client email re distribution; reviewed email from Clear Harbor re RMD | 0.2 | $120.00 |

| | | |
|---|---|---|
| | MS | Ms. Dunn |
| | DS | Ms. Stutman |
| | JF | Ms. Friedrich |

### III. NYS Supreme Court Applications

52. The table on the following page lists fourteen (14) divorce lawyer NYS Supreme Court <u>Applications</u>, including e-filing never-seen-before voluminous Word processing NYSCEF supporting papers content:

    a. **7.6 Years**: June 19, 2015, no-fault Action for a Divorce 60606/2015 NYSCEF No. 1 & 2 until January 19, 2023, Hon. Thomas Quinones, J.S.C. No. 6 of 7, **Domestic Relations Order (IRA)** (QUALIFIED DOMESTIC RELATIONS ORDER NYSCEF) NSYCEF No. 520.

    b. **Custodians Missing DRO**: January 19, 2015 - January 19, 2023, Peter Kijewski retirement asset custodians TIAA, Vanguard Group, Inc. and/or BNY Pershing never received any Domestic Relations Order (DRO) for potential assignment of $468,997 retirement assets, account <u>owner</u> Peter Kijewski, to Ms. Kijewski $468,997 retirement assets, account <u>owner</u>.

    c. **DRO Calculations**: January 19, 2023, Hon. Thomas Quinones, J.S.C. No. 6 of 7, **ORDER** (ORDER - OTHER (Motion #13)) NYSCEF No. 519 lists retirement asset values to calculate $468,997 Domestic Relations Order (DRO)

    d. **AUTOMATIC ORDERS**: June 25, 2015 - September 20, 2019, **AUTOMATIC ORDERS** enforcement assigned Application zero (0).

    e. **TIAA DRO Receipt**: October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 248 should have caused Ms. Dunn immediate submission to TIAA a valid $468,9997 Domestic Relations Order.

    f. **Timeline**: <u>Applications</u> No. 1 - 14 timeline tracking:

| | | | | | | NYS Supreme Court Applications No. 1 - 14 | |
|---|---|---|---|---|---|---|---|
| NYSCEF | Date Signed | Years | Application | Date Filed | Filer Name | TYPE | Description |
| 399 | 6/25/2015 | 0.0 | 0 | 11/7/2021 | Kijewski, P. | EXHIBIT(S) - 39 (Motion #12) | RMDs |
| 24 | 11/13/2015 | 0.4 | 1 | 11/13/2015 | Dunn, M. | ORDER TO SHOW CAUSE (PROPOSED) (Motion #001) | |
| 42 | 11/13/2015 | 0.4 | 1 | 11/13/2015 | Court User | ORDER TO SHOW CAUSE-SIGNED (Motion #1) | Cross out |
| 59 | 12/9/2015 | 0.5 | 1 | 12/9/2015 | Court User | DECISION + ORDER ON MOTION (Motion #1) | IRC |
| 63 | 4/29/2016 | 0.8 | 2 | 4/29/2016 | Dunn, M. | ORDER TO SHOW CAUSE (PROPOSED) (Motion #002) | |
| 100 | 7/26/2016 | 1.1 | 2 | 9/2/2016 | Dunn, M. | STIPULATION - SETTLEMENT (POST RJI) | |
| 101 | 7/26/2016 | 1.1 | 2 | 9/2/2016 | Dunn, M. | TRANSCRIPT OF PROCEEDINGS | Withdrawn |
| 102 | 9/2/2016 | 1.2 | 2 | 9/2/2016 | Dunn, M. | JUDGMENT OF DIVORCE (PROPOSED) | |
| 107 | 9/2/2016 | 1.2 | 2 | 9/8/2016 | Court User | JUDGMENT OF DIVORCE | |
| 109 | 4/17/2017 | 1.8 | 3 | 4/17/2017 | Dunn, M. | ORDER TO SHOW CAUSE (PROPOSED) (Motion #003) | |
| 132 | 7/17/2017 | 2.1 | 3 | 7/18/2017 | Court User | STIPULATION - SO ORDERED (Motion #003) | |
| 355 | 9/20/2017 | 2.2 | 0 | 11/2/2021 | Kijewski, P. | EXHIBIT(S) - 8 (Motion #12) | RMDs |
| 133 | 2/28/2018 | 2.7 | 4 | 2/28/2018 | Dunn, M. | ORDER TO SHOW CAUSE (PROPOSED) (Motion #4) | |
| 189 | 3/10/2016 | 0.7 | 4 | 4/9/2018 | Dunn, M. | EXHIBIT(S) - 28 (Motion #4) | Defraud |
| 163 | 3/20/2018 | 2.7 | 5 | 3/23/2018 | Court User | ORDER TO SHOW CAUSE-SIGNED (Motion #5) | |
| 166 | 3/20/2018 | 2.7 | 5 | 3/28/2018 | Friedrich, J. | EXHIBIT(S) - A (Motion #4) | 03.23.2018 |
| 193 | 4/10/2018 | 2.8 | 5 | 4/11/2018 | Dunn, M. | AFFIDAVIT OR AFFIRMATION IN REPLY (Motion #5) | |
| 218 | 10/5/2018 | 3.3 | 4 | 10/5/2018 | Court User | REPORT OF ATTORNEY REFEREE (Motion #4) | No. 4 & 5 |
| 219 | 10/8/2018 | 3.3 | 6 | 10/8/2018 | Dunn, M. | ORDER TO SHOW CAUSE (PROPOSED) (Motion #6) | |
| 246 | 12/7/2018 | 3.5 | 6 | 12/7/2018 | Dunn, M. | LETTER/CORRESPONDENCE - TO COURT | Withdrawn |
| 237 | 10/18/2018 | 3.3 | 7 | 10/18/2018 | Dunn, M. | ORDER TO SHOW CAUSE (PROPOSED) (Motion #7) | |
| 265 | 1/17/2019 | 3.6 | 7 | 1/18/2019 | Court User | DECISION + ORDER ON MOTION (Motion #7) | |
| 302 | 8/7/2019 | 4.1 | 7 | 8/8/2019 | Court User | HEAR AND DETERMINE ORDER | RELIEF #7 |
| 247 | 12/7/2018 | 3.5 | 8 | 12/7/2018 | Dunn, M. | ORDER TO SHOW CAUSE (PROPOSED) (Motion #8) | |
| 270 | 1/28/2019 | 3.6 | 8 | 1/28/2019 | Court User | ORDER TO SHOW CAUSE (Motion #8) | |
| 262 | 12/13/2018 | 3.5 | 9 | 12/13/2018 | Court User | ORDER TO SHOW CAUSE (PROPOSED) (Motion #9) | |
| 263 | 12/13/2018 | 3.5 | 9 | 12/13/2018 | Court User | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP (Motion #9) | |
| 301 | 8/7/2019 | 4.1 | 9 | 8/8/2019 | Court User | HEAR AND DETERMINE ORDER | RELIEF #9 |
| 306 | 8/7/2019 | 4.1 | 9 | 10/15/2019 | Court User | TRANSCRIPT - SO ORDERED | |
| 274 | 3/18/2019 | 3.7 | 10 | 3/18/2019 | Dunn, M. | QUALIFIED DOMESTIC RELATIONS ORDER (PROPOSED) | Pension |
| 276 | 3/26/2019 | 3.8 | 10 | 3/26/2019 | Court User | QUALIFIED DOMESTIC RELATIONS ORDER | |
| 277 | 3/27/2019 | 3.8 | 11 | 3/27/2019 | Kapka, V. | ORDER TO SHOW CAUSE (PROPOSED) (Motion #11) | $ Judgment |
| 293 | 6/10/2019 | 4.0 | 11 | 6/11/2019 | Court User | ORDER - OTHER | |
| 326 | 10/13/2021 | 6.3 | 12 | 10/13/2021 | Dunn, M. | ORDER TO SHOW CAUSE (PROPOSED) (Motion #12) | |
| 348 | 10/26/2021 | 6.3 | 12 | 10/31/2021 | Kijewski, P. | EXHIBIT(S) - 1 (Motion #12) | RMD hold |
| 505 | 11/4/2022 | 7.4 | 12 | 11/4/2022 | Court User | DECISION + ORDER ON MOTION (Motion #12) | |
| 380 | 11/5/2021 | 6.4 | 13 | 11/5/2021 | Dunn, M. | ORDER TO SHOW CAUSE (PROPOSED) (Motion #13) | Injunction |
| 506 | 11/4/2022 | 7.4 | 13 | 11/4/2022 | Court User | DECISION + ORDER ON MOTION (Motion #13) | |
| 509 | 11/30/2022 | 7.4 | 14 | 11/30/2022 | Dunn, M. | QUALIFIED DOMESTIC RELATIONS ORDER (PROPOSED) | DRO |
| 517 | 1/13/2023 | 7.6 | 14 | 1/13/2023 | Dunn, M. | NOTICE OF SETTLEMENT W/PROPOSED ORDER/COUNTER ORDER | Values |
| 519 | 1/19/2023 | 7.6 | 13 | 1/19/2023 | Court User | ORDER - OTHER (Motion #13) | Values |
| 520 | 1/19/2023 | 7.6 | 14 | 1/19/2023 | Court User | QUALIFIED DOMESTIC RELATIONS ORDER | DRO |
| 529 | 3/8/2023 | 7.7 | | 3/8/2023 | Dunn, M. | NOTICE OF SETTLEMENT W/PROPOSED ORDER/COUNTER ORDER *Corrected* | |
| 548 | 5/23/2023 | 7.9 | | 5/30/2023 | Kuritzky, A. | TRANSCRIPT OF PROCEEDINGS (REQUEST TO SO ORDER) | Vanguard |
| 553 | 7/24/2023 | 8.1 | | 7/24/2023 | Court User | QUALIFIED DOMESTIC RELATIONS ORDER | TIAA |

53. WebCivil Supreme Motion Information tracks the timeline of divorce lawyer Applications, "using means that have no substantial purpose other than to delay or prolong a proceeding or cause needless expense."

**Motion Information**

| Motion Number | Date Filed | Relief Sought | Submit Date | Answer Demanded | Status | Decision | Order Signed Date |
|---|---|---|---|---|---|---|---|
| 14 | 11/30/2022 | Qualified Domestic Relations Order | 1/19/2023 | No | Decided: 01/19/2023 Signed Before Justice: Quinones, Hon. Thomas | Long Form Order | 1/19/2023 |
| 13 | 11/8/2021 | Injunction/Restraining Order | 1/26/2022 | No | Decided:11/04/2022 Granted Before Justice: Quinones, Hon. Thomas | Long Form Order | 11/4/2022 |
| 12 | 10/14/2021 | Contempt | 1/26/2022 | No | Decided:11/04/2022 Granted Before Justice: Quinones, Hon. Thomas | Long Form Order | 11/4/2022 |
| 11 | 3/28/2019 | Confirm/Disapprove Award/ Report | 5/15/2019 | No | Decided: 05/15/2019 Granted Before Justice: Lubell, Hon. Lewis Jay | Oral | |
| 10 | 3/19/2019 | Qualified Domestic Relations Order | 3/26/2019 | No | Decided: 03/26/2019 Signed Before Justice: Lubell, Hon. Lewis Jay | | |
| 9 | 12/13/2018 | Attorney - Disqualify/Relieve/ Substitute/Withdraw | 1/22/2019 | No | Decided: 08/07/2019 Decided Before Justice: Lubell, Hon. Lewis Jay | Short Form Order | |
| 8 | 12/07/2018 | Contempt | 8/7/2019 | No | Decided: 08/07/2019 Decided Before Justice: Trovini, Josephine | | |
| 7 | 10/19/2018 | Confirm/Disapprove Award/Report | 11/21/2018 | No | Decided: 01/17/2019 Decided Before Justice: Lubell, Hon. Lewis Jay | Short Form Order | |
| 6 | 10/09/2018 | Contempt | 12/10/2018 | No | Decided: 12/10/2018 Withdrawn Before Justice: Trovini, Josephine | Oral | |
| 5 | 03/15/2018 | | 6/1/2018 | No | Decided: 10/05/2018 Decided Before Justice: Trovini, Josephine | Short Form Order | 10/05/2018 |
| 4 | 02/28/2018 | Contempt | 6/1/2018 | No | Decided: 10/05/2018 Decided Before Justice: Trovini, Josephine | Short Form Order | 10/05/2018 |
| 3 | 04/17/2017 | Contempt | 7/14/2017 | No | Decided: 07/14/2017 Settled Before Justice: Malone, Hon. Janet C. | So-Ordered Stipulation | |
| 2 | 04/29/2016 | Contempt | 7/26/2016 | No | Decided: 07/26/2016 Withdrawn Before Justice: Colangelo, Hon. John P. | Memorandum | |
| 1 | 11/13/2015 | Pendente Lite Support | 12/9/2015 | No | Decided: 12/09/2015 Decided Before Justice: Marx, Hon. Paul I. | Memorandum | |

54. EXHIBIT 15 October 31, 2021 - November 28, 2021, Peter Kijewski NYSCEF filing adds highly relevant information about TIAA, Vanguard and BNY Pershing recurring enforcement "Required Minimum Distribution" (RMD) disbursements "hold" and exposes attorneys failure NYSCEF e-filing required documents.

55. **Custodian Missing DRO**: January 19, 2023, TIAA, Vanguard Group, Inc. and BNY Pershing missing Domestic Relations Order (DRO) "using means that have no substantial purpose other than to delay or prolong a proceeding or cause needless expense.":

**Table 3 Attorney Exorbitant Process Notes and Invoices**

| Date | Years | Charge | Process Notes | Time | Invoice |
|------|-------|--------|---------------|------|---------|
| Total Known Process Notes and Invoices: June 19, 2015, No-Fault Action for a Divorce 60606/2015 NYSCEF No. 1, 2 | | | | | |
| 6/25/2015 | 0.0 | MYC | Letters to TIAA, Vanguard and BNY Pershing: RMD "hold" | 1.0 | $475.00 |
| 1/1/2022 | 6.5 | J&C | Total Invoice | | $152,197.90 |
| 4/1/2017 | 1.8 | N&D | Total Invoice | | $75,479.38 |
| 9/1/2022 | 7.2 | SSL | Total Invoice | | $154,465.33 |
| 12/1/2022 | 7.4 | G&R | Total Invoice | | $107,326.00 |
| 1/1/2024 | 8.5 | A&F | Total Invoice | | $80,665.80 |
| | | | **Grand Total** | | **$570,134.41** |

J&C     Johnson and Cohen, LLP: Opposing lawyers signed Agreement April 25, 2013.
N&D     Newman and Denney, LLC: Retained July 9, 2015, permanently closed.
SSL     Stutman and Stutman, LLP: Retained March 8, 2017, permanently closed.
G&R     Greenbaum and Rowe, LLP: ERISA lawyer retained October 8, 2020.
A&F     Abrams and Fensterman, LLP: Current attorneys retained November 23, 2021.
        March 20, 2024: Invoices received and paid.

Hon. James L. Hyer: The use of a "Consent to Change Attorney" form to withdraw where a party becomes a self-represented litigant is specifically prohibited.  Any attempt to do so will not be recognized by the Court.

56. June 22, 2022, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Dr. Kijewski" about NYS Supreme Court <u>Applications</u> No. 0 - 13:

a. "**Qualified Domestic Relations Order (QDRO) and Required Minimum Distribution (RMD)**"

b. "On July 1, 2015, April 18, 2017 and March 22, 2018, TIAA received an order to restrain withdrawals, transfers, and prevent any status changes of your retirement plan accounts until the necessary QDRO had been executed, processed, and funds distributed to the plaintiff. As a result of these orders, TIAA placed a restriction on your retirement accounts."

c. "TIAA is the record keeper for the employer-sponsored retirement plans in which you participate. In November 2021, TIAA took direction from

those plans to pay your 2018, 2019, and 2021 RMDs as well as the 2018 – 2021 fixed period annuity payments. The Internal Revenue Service (IRS) waived the requirement of the 2020 RMD, therefore TIAA did not issue RMD payments for the 2020 tax year."

d. "You have repeatedly expressed concerns about the activities of the opposing party and her counsel in your domestic relations proceedings. We strongly encourage you to work with your own counsel to resolve this situation. As plan record keeper, TIAA has no role in investigating the activities of either party."

57. October 20, 2016, Ms. Dunn wire communication to Actuary Robert Guarnera, Ms. Dahan and Ms. Kijewski NYSCEF No. 115 reveals Ms. Dunn "one million dollar" "Investment Experience" financial plan:

a. "I am following up on the QDROs necessary for this matter. I understand that you had a question as to whether the investment experience would be included after date of commencement. The answer is yes, the accounts should all be divided including investment experience through date of division, with of course the one exception being Mr. Kijewski's separate property credit (including that investment experience) on his TIAA-CREF account."

b. "I know that Ms. Kijewski is working to gather the documents you need. I have Mr. Kijewski's attorney, Jessica Dahan, copied here as well. I'm not sure if Mr. Kijewski has sent his retainer agreement and check to you and/or his documents — can you let us know what is still outstanding on that end so that we can make sure you get all of the information you need?"

**Table 4 NYS WebCivil Supreme Application No 14 Appearance Information**

| Appearances after June 19, 2023, Application No. 14 NYSCEF No. 520 | | | | | | |
|---|---|---|---|---|---|---|
| **Appearance Information:** | | | | | | |
| Appearance Date | Time | Court Date Purpose | Outcome Type | Justice Part | Remarks | Motion Seq |
| 7/24/2023 | 09:00 AM | Conference-Status | Held | Hyer, Hon. James L. | In Person Appearances Courtroom 1003 | |
| 6/9/2023 | 06:00 PM | Conference-Unknown | | Hyer, Hon. James L. | CPO | |
| 5/23/2023 | 02:00 PM | Conference-Status | Settled | Hyer, Hon. James L. | IN PERSON | |
| 4/27/2023 | 11:30 AM | Conference-Status | Adjourned | Hyer, Hon. James L. | IN PERSON - COURTROOM 1003 | |
| 4/11/2023 | 09:30 AM | Conference-Settlement | Held | Hyer, Hon. James L. | IN PERSON - COURTROOM 1003 | |
| 4/6/2023 | 09:30 AM | Conference-Status | Adjourned | Hyer, Hon. James L. | IN PERSON - COURTROOM 1003 | |
| 3/15/2023 | 05:00 PM | Motion-Order to Show Cause (Returnable) | Granted | Hyer, Hon. James L. | CPO - SUBMISSION OF NOS | 12 |
| 2/24/2023 | 10:00 AM | Motion-Order to Show Cause (Returnable) | Adjourned | Quinones, Hon. Thomas | TEAMS | 12 |
| 1/30/2023 | 10:00 AM | Motion-Order to Show Cause (Returnable) | | Quinones, Hon. Thomas | IN-PERSON | 12 |

58. May 23, 2023, Ms. Dunn recitation of her "one million dollar" "Investment Experience" financial plan NYSCEF No. 548:

a. "The Parties further acknowledge that the date of transfer of the Vanguard IRA to the Plaintiff was 5/15/23, and that the ~~Plaintiff~~ Plaintiff received a total of $424,458.68 from said transfer."

b. "The parties further acknowledge that the trading price of VTSAX at the close of the market on 5/14/23 was $99.83 per share. As a result, Plaintiff was entitled to a total of $1,027,035.27. The shortfall remaining due and owing Plaintiff is therefore $602,576.59"

59. "The shortfall":

a. July 24, 2023, Hon. James L. Hyer, J.S.C. No. 7 of 7, **DOMESTIC RELATIONS ORDER** NYSCEF No. 553: TIAA "IRA account number A57 - 649187: l00%".

b. September 8, 2015, Ms. Kijewski <u>STATEMENT OF NET WORTH</u> NYSCEF No. 16: "Roth IRA, Source of funds: salary, Current value: 82,420".

    c. December 15, 2017 - January 17, 2018, Ms. Dunn letters to Ms.

Friedrich NYSCEF No. 154:

    i. "As far as the Roth IRA, Ms. Kijewski had been attempting to

transfer this account to your client since the summer of 2016, so your

attempt to place blame on her for the account having not yet been

transferred is wholly misplaced. Further, your claim that this

jeopardized your client's mortgage application is also untenable and

unsupported by any documentation. Curiously, he is currently

benefitting from retaining in excess of one million dollars in retirement

assets belonging to Ms. Kijewski. Did he fully disclose on his mortgage

application that approximately one half of his retirement accounts

were not actually his property?"

    ii. "As for the Roth IRA, we have documentation establishing that

Ms. Kijewski had been attempting to transfer half of this account

(which is worth less than 5% of the amount your client owes to her) to

your client since at least September of 2016, and he did not cooperate

with these efforts, so your attempt to place blame on her for the

account having not yet been transferred is wholly misplaced. Moreover,

we always consulted your client and obtained his agreement before any

transfers or changes in investments were made. Your claim that your

client's mortgage application was jeopardized by the missing $50,000

(the approximate value of your client's half of the Roth account) is also

untenable and unsupported by any documentation. Curiously, he is

currently benefitting from retaining in excess of **one million dollars**

in retirement assets belonging to Ms. Kijewski. Did he fully disclose on his mortgage application that a large portion of his retirement accounts were not actually his property?"

iii. "Ms. Kijewski is certainly not willing to transfer the approximately $50,000 of Roth funds at this point, when we have just discovered that your client's actions have created an $89,000 shortfall in the sums owed to her. This transfer will be made after your client has taken the necessary actions to bring the Vanguard balance to the appropriate amount, as set forth in this correspondence and my prior letter of December 15th, and has signed the three QDROs."

iv. Actuary Robert Guarnera DRO calculation: "** Excludes NON TAXABLE ROTH IRA".

d. March 28, 2018, Ms. Stutman **MEMORANDUM OF <u>LAW</u>** NYSCEF No. 165: "Plaintiff refused defendant's multiple requests to divide plaintiffs Roth IRA pursuant to the Stipulation."

e. October 5, 2018, Special Referee Josephine Trovini Referee's Report NYSCEF No. 218: "Defendant has opposed the motion asserting that he is not in default of any court order and there is no basis to hold him in contempt. He asserts that plaintiff has refused to provide the funds from her Roth IRA account to which he is entitled."

60. Ms. Kijewski kept non-taxable Roth IRA for herself:

**Table 5 Attorney Failure to Follow the Tax Laws**

| Lawyer Tax Fraud | | |
|---|---|---|
| IRS: "Failure to withhold", "failure to pay tax", "failure to follow the tax laws" and "a false or alter document". | | |
| TIAA deleted all TIAA IRA account statements exposing omitted RMD illegal "Investment Experience". | | |
| Assigned to Marie F. Kijewski: Retirement interests incorporating omitted RMD illegal "Investment Experience". | | |
| 12/31/2022 | TIAA & Vanguard stiff RMD 50% penalties | ($194,980) | Tax years 2015 - 2022 IRS tax returns |
| 5/15/2023 | Vanguard IRA assigned to Marie F. Kijewski | ($424,459) | Vanguard Office of the General Counsel |
| 7/24/2023 | TIAA IRA assigned to Marie F. Kijewski | ($498,349) | TIAA Law & Compliance |

6/25/2015 Financial asset loss **$0.00** due to assignment     **$493,192** DRO submission to TIAA, Vanguard and/or
of retirement interests to Ms. Kijewski.                    BNY Pershing

61. Just, fair and timely Domestic Relations Order (DRO) benefits:

**Table 6 June 19, 2015, $493,192 Domestic Relations Order (DRO) Processing Benefits**

| Tax-Deferred IRA **$493,192** Domestic Relations Order (DRO) | | | | | | |
|---|---|---|---|---|---|---|
| **Federal + State Law Compliance**: "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)." | | | | | | |
| Date | Years | Share Price | Shares | Assignment of IRA | Difference | Performance Report |
| 6/19/2015 | 0.0 | $53.52 | 9,215.1 | $493,192 | $0 | Assignment of tax-deferred IRA to alternate payee. |
| 7/31/2023 | 8.1 | $111.15 | 9,215.1 | $1,024,258 | **$531,066** | Alternate payee "Investment Experience" |
| 7/15/2024 | 9.1 | $134.11 | 9,215.1 | **$1,235,837** | **$742,645** | Alternate payee **soaring** "Investment Experience" 🚀 |

## IV. Plaintiff Peter Kijewski Initiatives

62. EXHIBIT 16 February 19, 2025, TIAA wire communication to client Peter Kijewski reveals "TIAA Wealth Management x TIAA Institute: Safeguarding retirement in the age of scams":

a. "Millions of Americans each year are targets of financial fraud schemes that use email, text, social media, telephone calls and other means to steal money from prospective victims. And the problem is growing, as international crime syndicates employ technological advances like AI to make their scams more sophisticated and persuasive."

i. "Ways to detect fraud and stop it from occurring"

ii. "How common fraud schemes target the elderly—and why they succeed"

iii. "Actions to take now to safeguard your financial accounts from criminals"

63. Peter Kijewski (84) review, analysis and understanding "How common fraud schemes target the elderly—and why they succeed":

a. Ms. Dunn modern Word processing application for e-filing an unprecedented number of Court Applications, including an unprecedented volume of obfuscating Court NYSCEF content supporting papers "to protect the livelihoods of lawyers".

b. Ms. Dunn unprecedented subpoena power resulting in NYSCEF e-filing Peter Kijewski 403(b) and 457(b) plans and IRA statements, Citibank mortgage application, tax year 2016 tax return, Citibank account statements, Securian death benefit, etc.

c. To date of the present COMPLAINT, Ms. Dunn withheld submitting to TIAA any 403(b) & 457(b) retirement plans Domestic Relations Order (DRO), notwithstanding Ms. Dunn NYSCEF e-filing Peter Kijewski TIAA-CREF Quarterly Retirement Portfolio Statements listing 403(b) & 457(b) retirement plans.

d. August 9, 2019, transcript NYSCEF No. 306 (37 pages) about the Securian death benefit, benefitting Ms. Dunn and her client:

  i. "A. I'm not seeking anything in particular because I believe if he were to die I would have a claim on his estate for all the money he owes me."

  ii. "Q. Are you asking this Court to issue an order to reinstate the death benefit to the $450,000 that's required under the stipulation?"

  iii. "A. Yes, I am."

64. TIAA wire communication solution: Courts "employ technological advances like AI to" "safeguard your financial accounts from criminals".

65. EXHIBIT 17 October 5, 2021, Peter Kijewski wrote his Complaint letters to 403(b) & 457(b) retirement plans sponsors MSKCC, Harvard University, BWH and NEDH concerning "Required Minimum Distribution" (RMD) disbursements "hold" since March 6, 2018.

66. EXHIBIT 18 October 5, 2021, Plaintiff Peter Kijewski included his comprehensive review of "Required Minimum Distribution" (RMD) disbursements "hold" since June 25, 2015, Mr. Cohen AUTOMATIC ORDERS letter. (97 pages).

67. EXHIBIT 1 October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348 reveals the response to Plaintiff Peter Kijewski October 5, 2021, Complaint letters.

68. EXHIBIT 2 TIAA claims October 26, 2021, letter was written due to "In November 2021, TIAA took direction from those plans to pay your 2018, 2019, and 2021 RMDs as well as the 2018 – 2021 fixed period annuity payments."

69. TIAA, "record keeper for the employer-sponsored retirement plans", inexplicably needed "took directions from" Ms. Christine Pesaturo, Plan Administrator, MSKCC 403(b) & 457(b) retirement plans sponsors.

70. EXHIBIT 5 September 26, 2023, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Ms. Pesaturo" confirms March 6, 2018 - December 16, 2021, TIAA "Required Minimum Distribution" (RMD) disbursements "hold".

71. EXHIBIT 19 June 12, 2024, Plaintiff Peter Kijewski complaint letters to Government Officials about "Required Minimum Distribution" (RMD) disbursements "hold" and Domestic Relations Orders (DRO) issues, including supporting papers on flash drive.

72. EXHIBIT 6 EBSA File No. 202430-11820 was assigned as a result of June 12, 2024, Peter Kijewski complaint letters.  January 31, 2025, Peter Kijewski received the most recent monthly Notice of an active complaint investigation.

73. EXHIBIT 20 December 4, 2024, Perer Kijewski complaint letter to Ms. Spielberg about "this product contains sensitive taxpayer data", referring to Ms. Dunn NYSCEF e-filing SSNs and active account numbers to enable "international crime syndicates employ technological advances like AI to make their scams more sophisticated and persuasive".

74. EXHIBIT 21 January 12, 2025, Peter Kijewski complaint letter about New York State Courts Electronic Filing System (NYSCEF) in response to December 16, 2024, Notice for 2025 Annual Report on Electronic Filing. (46 pages)

    a. 24E-File-Report.pdf prior 2024 NYSCEF e-filing report (98 pages).

75. EXHIBIT 22 July 31, 2023, TIAA Client Relationship Summary: Section **"Fiduciary Acknowledgment under ERISA and Internal Revenue Code"**, also applies for Vanguard and BNY Pershing, includes specific terms all retirees who saved for retirement, and employees saving for retirement, judge to be of the highest importance:

    a. "Recommendations to enroll in an IRA, rollover/transfer to or from a Plan or IRA, or to begin lifetime income are "Covered Recommendations." When we make Covered Recommendations to you, we are fiduciaries within the meaning of Title I of the Employee Retirement Income Security Act ("ERISA") and/or the Internal Revenue Code, as applicable, which are laws governing retirement accounts. The way we make money creates some conflicts with your interests when we make Covered Recommendations, so we operate under a special rule that requires us to act in your best interest and not put our interest ahead of yours. Certain Plans (like governmental plans) are not covered by ERISA; however, our internal policies and procedures require us to adhere to the same fiduciary standard when we provide Covered Recommendations on non-ERISA Plan assets."

    b. Dale Richard Jones - Broker at TIAA-CREF INDIVIDUAL & INSTITUTIONAL SERVICES, LLC, Dale Jones, Managing Director and Head of Enterprise Fraud Management, TIAA, listed January 19, 2025, TIAA

wire communication "**Learn how to protect your retirement from modern scams**".

76. EXHIBIT 23 June 25, 2015, Mr. Cohen AUTOMATIC ORDERS letter to Vanguard, via FAX "06 27 2015 300", which Mr. Cohen omitted NYSCEF e-filing.

77. EXHIBIT 24 February 22, 2016, Ms. Dunn Discovery Deficiency Letter to "Dear Ms. Dahan" about 812 The Parkway attic for future review.

78. EXHIBIT 25 March 14, 2018, Ms. Kijewski **AFFIDAVIT IN SUPPORT**, which Ms. Dunn omitted NYSCEF e-filing:

a. "15. Defendant has demonstrated a clear pattern of deceitful behavior designed to thwart my ability to receive my share of our marital retirement assets. He did this by fraudulently transferring funds from both his Vanguard and TIAA-CREF retirement accounts and by continuing to lie to me, my attorney, and likely even his own attorneys about his actions. I believe that if Defendant becomes aware of this application for a restraining order on his accounts, he will take further action to transfer funds, initiate payouts, or otherwise impede my ability to receive my fair share of these funds as contemplated under our Stipulation. Defendant has no need to access these funds at this time and a restraining order is necessary to ensure that the funds that remain are not disturbed in any way until the QDROs are prepared and processed. Furthermore, the restraining order will provide a motivation for Defendant to cooperate with this process, which has dragged on for over a year and a half so far."

79. EXHIBIT 26 March 14, 2018, Ms. Dunn **AFFIRMATION IN SUPPORT**, which Ms. Dunn omitted NYSCEF e-filing:

a. "2. As Plaintiff noted in her affidavit, after Defendant provided his most recent TIAA-CREF statement, she became aware of inconsistencies within his accounts. I requested an explanation of the account changes and information regarding the account from Defendant's counsel via email on February 13th. Thereafter, on February 15th, I spoke by phone with Defendant's counsel, Jessica Friedrich, Esq., who reported that Defendant had advised her that he made "no affirmative changes" to the account, and that any changes would have been made by his financial advisor. At the time, we did not know the extent of the account changes as we were reviewing only the 4th quarter 2017 statement. Via email on February 15th, following up on our telephone call, I sent Ms. Friedrich a request for detailed explanations of the changes as well as for all statements from July 1, 2015 through September 30, 2017 for the TIAA-CREF accounts. Copies of the emails of February 13th and 15th are annexed hereto as Exhibit "6"."

b. "3. Upon receipt of the complete statements on March 1st, it became clear that Defendant has been engaged in an effort to hide funds and thwart Plaintiff's ability to receive her fair share of retirement assets, and that these actions have been occurring for at least 16 months. Defendant has made misrepresentations about the location of funds which were just discovered, and given his past actions, his claim through counsel that his financial advisor made such drastic changes to his accounts without his knowledge is simply not credible. Had Defendant truly been unaware of the changes to his accounts, then he would have cooperated far earlier and would not have

opposed Plaintiff's request for an authorization to speak to his financial advisor."

       c. "4. Defendant is attempting to hide his activity with regard to these retirement assets. No notice has been provided to Defendant or his counsel with regard to the instant application as, given his prior conduct, Defendant is likely to make further changes to his accounts if he becomes aware of the relief being sought in this application. Plaintiffs application details how she would be prejudiced by any elections Defendant may make to the status of his retirement accounts prior to their distribution to her via QDRO."

       d. "Any changes would have been made by his financial advisor" refers to Paul Cowie, TIAA CFP, Portfolio Advisor WMA, managing Peter Kijewski TIAA retirement, TIAA investment and TIAA bank accounts.

80. EXHIBIT 27 Mary Kentros, MD, role will be explored in the context of June 15, 2015, Mr. Cohen and Ms. Kijewski Conference agenda items NYSCEF No. 356:

       a. "will he have to pay cs for P, who is 22 but not functioning as an adult?"

       b. "will J be required to spend any time with him?"

       c. "my health (lost sleep, anti-depressants)"

81. EXHIBIT 28 Plaintiff Peter Kijewski wrote an analysis document tracking the timeline of Ms. Dunn "Investment Experience" financial plan, including supporting papers hyperlinks (50 pages):

       a. October 20, 2016, Ms. Dunn wire communication to Actuary Robert Guarnera NYSCEF No. 115 reveals Ms. Dunn claim $468,997 Domestic

Relations Order (DRO) must include "Investment Experience", violating July 26, 2016, **<u>STIPULATION OF SETTLEMENT</u>** <u>contract</u> NYSCEF No. 100.

b. August 22, 2023, Ms. Dunn achieved her $1,027,035.27 "Investment Experience" financial plan, willfully causing unprecedented violations:

i. IRS, Department of the Treasury, Internal Revenue Code and

ii. Department of Labor "Employee Retirement Income Security Act of 1974" (ERISA).

c. <u>EXHIBIT 6</u> June 12, 2024, Plaintiff Peter Kijewski included his analysis document in his Complaint submitted to the Department of Labor, resulting in a continuing Department of Labor investigation.

## V. Supporting Papers

82. EXHIBITS show contents of selected supporting papers included in the COMPLAINT document.

83. SDNY CM/ECF EXHIBITS Filed Separately lists provided supporting papers to be filed with the COMPLAINT.

84. Document List shows five-hundred-fifty-three (553) NYSCEF 60606/2015 documents, downloaded and provided on flash drive for SDNY CM/EDF filing.

    a. NYSCEF documents are principal COMPLAINT references.

    b. NYSCEF documents include numerous precedents referenced by Attorney/Firm for Plaintiff and Attorney/Firm for Defendant.

    c. "20150619 20231231 NYSCEF Index.xlsx" worksheet "List", provided on flash drive, will be essential for tracking timelines of NYSCEF document e-filing.

## VI. Jurisdiction and Venue

85. **Subject-matter jurisdiction**: NY State Supreme Court content NYSCEF No. 1 - 553 reveals Defendants' violations without resolution: "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)."

86. **Federal Court**: Documents e-filed in response to Plaintiff Peter Kijewski COMPLAINT must reference and affirm compliance with:

a. **Internal Revenue Code**: IRS, Department of the Treasury, Internal Revenue Code.

b. **ERISA**: Department of Labor "Employee Retirement Income Security Act of 1974" (ERISA).

c. **Fiduciary Responsibilities**: Retirement asset custodians TIAA, Vanguard and BNY Pershing fiduciary responsibilities comprehensively included in TIAA, Vanguard and BNY Pershing documents and wire communications.

87. Table 3 **Attorney Exorbitant Process Notes and Invoices**: Plaintiff Peter Kijewski must be relieved of attorney legal fee payments to enforce compliance with the Internal Revenue Code and "Employee Retirement Income Security Act of 1974" (ERISA) since June 25, 2015, Mr. Cohen AUTOMATIC ORDERS letters to TIAA, Vanguard, BNY Pershing and Lincoln Financial, inexplicably violating AUTOMATIC ORDERS "tax-deferred funds in pay status exception", applicable since May 10, 2011.

## A. Equitable Distribution

88. December 9, 2015, Hon. Paul I. Marx, NYS J.S.C. No. 1 of 7 PENDENTE LITE DECISION AND ORDER NYSCEF No. 59:

a. "Therefore, the Court awards Plaintiff the sum of $87,055.66 annually or $7,254.64 per month to be paid by Defendant. The award shall be taxable to Plaintiff, as she does not specify any basis for departing from "the norm envisioned by current Internal Revenue Code provisions." *Girgenti v Girgenti,* 81 AD3d 886, 889 [2nd Dept 2011] (quoting *Grumet v Grumet,* 37 AD3d 534, 536 [2nd Dept 2007]); *see also Markopoulos v Markopoulos,* 274 AD2d 457, 459 [2nd Dept 2000]."

b. "***Required Minimum Distribution***"

c. "Plaintiff asks the Court to direct Defendant to distribute 50% of his Required Minimum Distribution to her. Plaintiff explains that Defendant is required to withdraw a certain amount from his retirement accounts each year or he will be charged a 50% penalty. Plaintiff notes that Defendant has already received $2,207.60 from one retirement account. She does not ask for a portion of that distribution. Instead, Plaintiff asks that the remaining distribution of approximately $48,389.49 be divided equally between the parties. Defendant opposes Plaintiff's request, noting that since it is a marital asset, it cannot be distributed until equitable distribution of the entire marital estate occurs."

d. "The Court is unpersuaded by Defendant's argument, because the Court has the authority to award an advance on equitable distribution. *See Havell v Islam,* 288 AD2d 160, 160 [1st Dept 2001]. Defendant is directed to

provide Plaintiff with 50% of the remaining 2015 Required Minimum

Distribution. Such monies will be subject to reallocation at the time of trial."

89. September 2, 2016, Ms. Dunn **JUDGMENT OF DIVORCE** NYSCEF No.

102:

    a. "ORDERED AND ADJUDGED that ==equitable distribution== shall be

as set forth in the parties' Stipulation of Settlement; and it is further

    b. ORDERED AND ADJUDGED that pursuant to the ==Stipulation of==

==Settlement==, a separate Qualified Domestic Relations Order shall be issued

simultaneously herewith or as soon as practicable; and it is further …"

    c. "Stipulation of Settlement": July 26, 2016, **STIPULATION OF**

**SETTLEMENT** <u>contract</u> NYSCEF No. 100 (45 pages) composed by Ms. Dunn.

**B. Regulatory Requirements Discovery: Plain English**

90. **Regulatory Requirements Discovery**: Anyone understands plain

English:

    a. Ms. Kijewski, <u>owner</u> of her retirement plans and IRAs.

    b. Mr. Kijewski, <u>owner</u> of his retirement plans and IRAs.

    c. June 19, 2015, Attorney/Firm for Plaintiff submission of a just, fair &

timely $493,192 Domestic Relations Order (DRO) to TIAA, Vanguard and/or

BNY Pershing may result in assignment of $493,192 retirement assets,

account <u>owner</u> Peter Kijewski, to Ms. Kijewski, account <u>owner</u> $493,192

retirement assets.

    d. Carlyn D'Agostino, Esq. provides $493,192 Domestic Relations Order

(DRO) calculations, using Peter Kijewski retirement plans and IRA statements

in the possession of Attorney/Firm for Plaintiff.

e. Ms. Kijewski, <u>owner</u> $84,420 tax-free Roth IRA, promptly approves Equitable Distribution Roth IRA share assignment to Mr. Kijewski.

f. Attorneys may include "Required Minimum Distribution" (RMD) disbursements retirement income when calculating minor (16) support payments until June 30, 2017, including reduction due to Ms. Kijewski minor (16) Supplemental Security Income (SSI).

g. Attorney/Firm for Plaintiff understand IRA "tax-deferred funds in pay status exception" since May 10 2011.

h. The Internal Revenue Code protects RMD retirement income, starting May 10, 2011: "Retirement plan <u>participants</u> and IRA <u>owners</u>, including <u>owners</u> of SEP IRAs and SIMPLE IRAs, are responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

i. November 13, 2015, Ms. Dunn **<u>MEMORANDUM OF LAW</u>** NYSCEF No. 40 compliance, plain English content:

    i. "Courts have consistently held that a party should not be placed under economic duress during the pendency of a matrimonial action and should be permitted to continue the standard of living commensurate with that enjoyed prior to the commencement of the action and the marital difficulties."

    ii. "In that case, the Appellate Division noted its concern that given the disparity in income and assets between the parties, that the ~~husband~~ wife was "**capable of wearing down or financially**

**punishing the opposition by recalcitrance, or by prolonging the litigation**."" [**bold** emphasis by Ms. Dunn]

    iii. "The Court in this controlling case emphasized that during litigation the priority is to ensure that the parties can proceed on equal footing; the determination of who should ultimately be responsible for the costs of the counsel fees should be made during the process of equitable distribution."

    iv. "[**"The Courts are to see to it that the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant's wallet**"] [emphasis added]" by Ms. Dunn.

    v. Ms. Dunn writing about the missing $468,997 Domestic Relations Order (DRO) and "Required Minimum Distribution" (RMD) disbursements "hold": "As set forth in ~~Plaintiff's~~ Defendant's affidavit and the accompanying affirmation, ~~Defendant's~~ Plaintiff's actions have made it clear that ~~he~~ she intends to drive up legal fees and will not resolve even the simplest of issues without Court intervention, and the disparity between the parties' incomes is substantial."

# VII. Parties

## A. Plaintiff

91. **Plaintiff Peter Kijewski** lives in Hingham, Massachusetts. Peter Kijewski utilizes TIAA as his recordkeeper of 403(b) and 457(b) retirement plans listed October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348.  Ms. Kijewski account <u>owner</u> of "IRA FBO Peter K Kijewski".

    a. September 1, 1975 - March 1994, he worked for Harvard Hospitals, Department of Medical Physics, Chairman Bengt Bjarngard, PhD, and Joint Center for Radiation Therapy, Chairman Samuel Hellman, MD.

    b. April 1994 - June 31, 2017, he worked for the Memorial Sloan Kettering Cancer Center, Department of Medical Physics, Chairman Clifton Ling, PhD, and Department of Radiology, Chairman Hedvig Hricak, MD.

    c. April 1994 – June 30, 1999, Peter Kijewski successfully completed his Picture Archiving and Communication System (PACS) project.

    d. He retired July 1, 2017, MSKCC Emeritus employee.

    e. He utilizes TIAA as his recordkeeper of 403(b) & 457(b) retirement plans, listed October 26, 2021, Ms. Perry, TIAA Lawy & Compliance Liaison, letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348.

92. Plaintiff Peter Kijewski biography, e-filing by Ms. Dunn<u>:</u>

    a. May18, 2018, "MSKCC Biography" NSYCEF No. 204.

    b. May 18, 2018, "Defendant's MSKCC Teaching Responsibilities" NYSCEF No. 205.

c. May 18, 2018, "Defendant's Current MSKCC Position" NYSCEF No. 206.

d. May 18, 2018, "Email from Defendant's colleague" NYSCEF No. 207.

e. June 25, 2015, Peter Kijewski photograph provided by Ms. Kijewski NYSCEF No. 3, e-filing by Mr. Cohen.

93. December 31, 2015, Peter Kijewski "TIAA-CREF Your quarterly retirement savings portfolio statement":

a. "**Wealth Management Advisor**"

b. *"Your Wealth Management Advisor conducts all advisory-related and financial planning services such as initial discovery, diagnosis, and presentation meetings, investment reviews, and planning for estate and investment management. Meets with clients by appointment.*"

c. "**PAUL COWIE** Wealth Management Advisor (800) 842-2733 Ext. 235422 pcowie@tiaa-cref.org".

94. **Special recognition**: October 26, 2021, Ms. Christine Pesaturo, MSKCC Plan Administrator 403(b) & 457(b) retirement plans sponsor, discharged her "fiduciary responsibilities prudently and solely in the interest of the plan's participants and beneficiaries" Sonia Kijewski Poulin, Paul N. Kijewski and Joseph P. Kijewski:

a. October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348.

b. December 16, 2021, Ms. Christine Pesaturo achieved TIAA tax years 2018, 2019, 2020 & 2021 tax-deferred 403(b) & 457(b) retirement plans and IRA "Required Minimum Distribution" (RMD) disbursements.

## B. Defendants

## a) TIAA

95. September 1, 1975, Plaintiff Peter Kijewski started his retirement savings:

    a. College Retirement Equities Fund, **RETIREMENT UNIT-ANNUITY CERTIFICATE**, CREF Certificate Number: P-697778-4 09 1 75.

    b. Teachers Insurance and Annuity Association, **RETIREMENT ANNUITY CONTRACT**, TIAA Certificate Number: A-697778-7 09 1 75.

    c. April 9, 2018, Ms. Dunn published Peter Kijewski September 1, 1975, TIAA-CREF contract NYSCEF No. 189, Pages No. 13 – 15 of 51, "Defendant's prior attempts to defraud Plaintiff".

96. June 25, 2015, Mr. Cohen dictated his AUTOMATIC ORDERS letter to TIAA-CREF, sent via FAX "150701_0730", NYSCEF No. 399, enclosed March 31, 2015, Peter Kijewski TIAA-CREF Quarterly Retirement Portfolio Statement, handed to Mr. Cohen by his client Ms. Kijewski:

    a. Ms. Dunn affirmed "TIAA Traditional shares, an unusual insurance-based investment with arcane rules that are specific to each of the 4 6 separate plans in Defendant's name".

    b. TIAA A697778-7 & CREF P697778-4.

    c. TIAA N967110-7 (closed) TRADITIONAL IRA

97. July 6, 2015, Ms. Angela Shaw, TIAA QDRO Relationship Manager, letter to "Dear Attorney Cohen" NYSCEF No. 358 confirmed Mr. Cohen AUTOMATIC ORDERS: "We will implement the Order to the extent of the funds remaining in the contract affected".

98. December 31, 2016, TIAA "**Your quarterly retirement savings portfolio statement**": "TIAA Traditional (TIAA K599435-1)", "11/11/2016 11/11/2016 Direct transfer to other company (TIAA N967110-7) TIAA Traditional (closed)".

99. "Direct transfer to other company": December 31, 2016, "TIAA brokerage services, A division of TIAA Individual & Institutional Services, LLC, Member FINRA/SIPC, **TIAA PORTFOLIO ADVISOR** INVESTMENT ADVISORY PROGRAM, *Individual Retirement Account Statement*, Account Number A57-649187, Clearing through Pershing LLC, a wholly owned subsidiary of The Bank of New York Mellon Corporation (BNY Mellon), Pershing LLC, member FINRA, NYSE, SIPC", implemented by Paul Cowie, TIAA CFP, Portfolio Advisor WMA.

100. December 31, 2016, "TIAA DIRECT, TIAA-CREF Trust Company, FSB, Account Statement For: Peter K Kijewski, Number 302002319872", implemented by Paul Cowie, TIAA CFP, Portfolio Advisor WMA.

101. March 22, 2018, Ms. Dunn retirement plans & IRA, account <u>owner</u> Peter Kijewski, TRO letter to TIAA-CREF, sent via FAX "180322 1609", NSYCEF No. 364 terminating:

    a. March 3, 2018, **TIAA Portfolio Advisor** Periodic Asset Movement, Account Number: A57-XXXX87 and

    b. Disbursements of "TIAA Traditional shares, an unusual insurance-based investment with arcane rules that are specific to each of the 4 6 separate plans in Defendant's name."

102. April 10, 2018, Ms. Kijewski **AFFIDAVIT IN REPLY**, <u>Application</u> No. 5, NYSCEF No. 193 reveals justification for retirement plans & IRA TRO: "9. Defendant

will not be harmed by extending the restraining order as he received substantial

RMDs in December 2017, he just sold the former marital residence, and he recently

received an inheritance."

103. August 1, 2021 - September 30, 2021, Ms. Dunn Process Notes and

Invoices reveal preparations for a Domestic Relations Order (DRO):

### Table 7 Ms. Dunn Preparing Potential Domestic Relations Order (DRO)

| Date | Years | Charge | Process Notes | Time | Invoice |
|---|---|---|---|---|---|
|  | | | **Ms. Dunn Domestic Relations Order (DRO) Preparation** | | |
| 6/25/2015 | 0.0 | MYC | Mr. Cohen AUTOMATIC ORDERS letters. | 0.8 | $380.00 |
| 8/5/2021 | 6.1 | MD | Review Stipulation of Settlement: draft letter to | 0.2 | $70.00 |
| 8/5/2021 | 6.1 | MD | Update Order to Show Cause and Affidavit | 0.4 | $140.00 |
| 8/5/2021 | 6.1 | MS | Preparation of Subpoenas | 0.7 | $77.00 |
| 8/5/2021 | 6.1 | MD | E-Mails with client | 0.2 | $70.00 |
| 8/5/2021 | 6.1 | MD | Review Stipulation of Settlement- draft letter to | 0.2 | $70.00 |
| 8/9/2021 | 6.1 | MD | E-Mails with client regarding | 0.3 | $105.00 |
| 8/9/2021 | 6.1 | MD | Review and revise subpoenas for TIAA and Vanguard | 0.4 | $140.00 |
| 8/9/2021 | 6.1 | MD | Dictation of letter to | 0.2 | $70.00 |
| 8/9/2021 | 6.1 | MD | Dictation of letter to The Vanguard Group | 0.2 | $70.00 |
| 8/9/2021 | 6.1 | MD | Dictation of letter to TIAA, FSB | 0.2 | $70.00 |
| 8/9/2021 | 6.1 | MD | Dictation of letter to TIAA | 0.2 | $70.00 |
| 8/16/2021 | 6.1 | MD | Dictation of letter to Peter Kijewski | 0.2 | $70.00 |
| 8/27/2021 | 6.2 | MD | Review E-Mail from TIAA regarding subpoena | 0.1 | $35.00 |
| 8/30/2021 | 6.2 | MD | E-Mails with TIAA | 0.1 | $35.00 |
| 8/30/2021 | 6.2 | MD | Review TIAA Subpoena Response | 0.3 | $105.00 |
| 8/30/2021 | 6.2 | MD | E-Mails with client | 0.1 | $35.00 |
| 8/31/2021 | 6.2 | MD | E-Mails with Vanguard regarding subpoena | 0.1 | $35.00 |
| 8/31/2021 | 6.2 | MD | Dictation of letter to Peter Kijewski, Pro Se | 0.2 | $70.00 |
| 8/31/2021 | 6.2 | MD | E-Mails with client | 0.1 | $35.00 |
| 8/1/2021 | 6.1 | J&C | Monthly Invoice | | $1,464.29 |
| 9/1/2021 | 6.2 | MD | E-Mails with Vanguard regarding subpoena compliance | 0.1 | $35.00 |
| 9/1/2021 | 6.2 | MD | Review letter from Peter; e-mails with client; review Stipulation of Settlement | 0.3 | $105.00 |
| 9/2/2021 | 6.2 | MD | Review TIAA Compliance / documents | 0.3 | $105.00 |
| 9/5/2021 | 6.2 | MD | E-Mails with | 0.1 | $35.00 |
| 9/10/2021 | 6.2 | MD | E-Mails with Vanguard regarding subpoena | 0.1 | $35.00 |
| 9/16/2021 | 6.2 | MD | Review Vanguard documents; prepare Notice of Subpoena Compliance | 0.2 | $70.00 |
| 9/16/2021 | 6.2 | MD | Dictation of letter to Peter Kijewski Pro Se | 0.2 | $70.00 |
| 9/22/2021 | 6.2 | MD | E-Mails with TIM with documents | 0.1 | $35.00 |
| 9/28/2021 | 6.3 | MD | Review Calculations; revise Affidavit | 0.3 | $105.00 |
| 9/28/2021 | 6.3 | MD | E-Mails with client | 0.1 | $35.00 |
| 9/29/2021 | 6.3 | MD | E-Mails with client | 0.2 | $70.00 |
| 9/1/2021 | 6.2 | J&C | Monthly Invoice | | $702.16 |

104. July 26, 2016, Stipulation of Settlement <u>contract</u> NYSCEF No. 100 defines $468,997 Domestic Relations Order (DRO).

105. August 12, 2021, Vincent Ford, TIAA QDRO Relationship Manager, subpoena compliance letter to "Dear Maureen A. Dunn" NYSCEF No. 484 (42 pages), copy to Ms. Kijewski:

a. TIAA violated this rule: "Any transfer, withdrawal or other option selection executed by the Participant after the date(s) requested were disregarded, with two exceptions. First, Minimum Distribution Payments made to the Participant after the date(s) requested were deducted from the account value(s)."

b. TIAA violated this rule: "Participant may not initiate loans, withdrawals or distributions. This distribution restriction will remain in effect until the earliest of the following":

i. "The date Minimum Distribution Payments must commence, but only to the extent of the Minimum Distribution Payments;"

c. Listing of Minimum Distribution Option (MDO) values which have not been disbursed.

d. Retirement plan values to be used for a potential $468,997 Domestic Relations Order (DRO), including September 1, 1975, **TIAA Number: A6977787** and **CREF Number: P6977784**.

e. Comprehensive instructions for creating a valid $468,997 Domestic Relations Order (DRO).

106. October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348 informs Ms. Dunn about required

Domestic Relations Orders (DRO) and "Required Minimum Distribution" (RMD) disbursements "hold" since March 22, 2018:

>    a. "TIAA has received multiple communications relating to a potential qualified domestic relations order (DRO) involving the subject retirement plan accounts record kept by TIAA. Pursuant to those communications, TIAA has maintained a disbursement hold on Dr. Kijewski's accounts since 2018, pending the receipt of a domestic relations order (DRO). However, TIAA has never received a DRO in this matter."

>    b. "Because TIAA has not received a DRO, we will release the disbursement hold on Dr. Kijewski's accounts if TIAA does not receive a DRO within 30 days of the date of this letter."

107. November 2, 2021, Ms. Dunn wire communication to Mr. Senter NYSCEF No. 396 revealed Ms. Dunn intentions concerning retirement plans and IRA, account <u>owner</u> Peter Kijewski: "If he does truly want to resolve these issues, please advise if he will consent to a further restraining order being imposed on the accounts while we work through the myriad of issues remaining in an effort to divide the retirement interests appropriately. If he will consent, I can discuss with my client a carve out to enable Mr. Kijewski to remove his 2021 RMD to avoid further penalty, however those funds must first go to pay the outstanding money judgments and child support owed to my client."

108. November 5, 2021, Ms. Dunn **AFFIRMATION IN SUPPORT** Application No. 13 NYSCEF No. 381 reveals Ms. Dunn in need of a crash course about "Employee Retirement Income Security Act of 1974" (ERISA) concerning "TIAA

Traditional shares, an unusual insurance-based investment with arcane rules that are specific to each of the 4 6 separate plans in Defendant's name."

109. November 5, 2021, Ms. Dunn **ORDER TO SHOW CAUSE INTERIM RELIEF REQUESTED**, Injunction/Restraining Order, <u>Application</u> No. 13 NYSCEF No. 394 (62 pages) reveals Ms. Dunn abhors submission of a $468,997 Domestic Relations Order (DRO) and prefers an alternative course of action:

    a. Continuation of "Required Minimum Distribution" (RMD) disbursement "hold" enabling October 1, 2021 - January 31, 2022, Ms. Dunn Process Notes and Invoices NYSCEF No. 503: **$22,765**.

110. November 9, 2021, Hon. Nancy Quinn Koba, J.S.C. No. 5 of 7, signed **ORDER TO SHOW CAUSE INTERIM RELIEF REQUESTED**, Injunction/Restraining Order, <u>Application</u> No. 13 NYSCEF No. 405.

111. Ms. Dunn Process Notes and Invoices about Restraining Order and Peter Kijewski NYSCEF e-filing:

**Table 8 November 5, 2021, Ms. Dunn E-Filing RMD Restraining Order**

| Date | Years | Charge | Process Notes | Time | Invoice |
|---|---|---|---|---|---|
| November 2021 Ms. Dunn Process Notes and Invoices Responding to October 26, 2021, TIAA Letter | | | | | |
| 11/5/2021 | 6.36 | MD | E-Mails with T Senter | 0.1 | $35.00 |
| 11/5/2021 | 6.36 | MD | Preparation of exhibits for OTSC | 0.3 | $105.00 |
| 11/5/2021 | 6.36 | MD | Preparation of Order to Show Cause for restraining order | 3.0 | $1,050.00 |
| 11/5/2021 | 6.36 | MD | E-Filing | 0.2 | $70.00 |
| 11/5/2021 | 6.36 | MD | E--Mails with client | 0.2 | $70.00 |
| 11/5/2021 | 6.36 | MD | Conference with Mitchell Y. Cohen | 0.5 | $175.00 |
| 11/5/2021 | 6.36 | MD | Letter from Peter Kijewski to Court regarding experts | | $35.00 |
| 11/5/2021 | 6.36 | MD | Letter from Peter Kijewski to Court | 0.1 | $35.00 |
| 11/5/2021 | 6.36 | TCS | Review correspondence from Maureen Dunn, Esq.; correspondence with Dr. Kijewski regarding same. | 0.3 | $154.50 |
| 11/6/2021 | 6.36 | MD | Review submissions from P Kijewski | 0.3 | $105.00 |
| 11/6/2021 | 6.36 | MD | E-Mails with client | 0.1 | $35.00 |
| 11/7/2021 | 6.37 | MD | Review filing from P Kijewski | 0.1 | $35.00 |
| 11/7/2021 | 6.37 | MD | E-Mails with client | 0.1 | $35.00 |
| 11/8/2021 | 6.37 | MD | Review Documents from P Kijewski | 0.6 | $210.00 |
| 11/8/2021 | 6.37 | MD | Review E-Mail from Court with signed OTSC | 0.1 | $35.00 |
| 11/8/2021 | 6.37 | MD | Review E-Mail with exhibit 42 and letter from pro se attorney | 0.1 | $35.00 |
| 11/8/2021 | 6.37 | MD | Review Conformed OTSC; conference with Mitchell Cohen | 0.2 | $70.00 |
| 11/8/2021 | 6.37 | MD | Conference with Mitchell Y. Cohen | 0.2 | $70.00 |
| 11/8/2021 | 6.37 | MD | E-Mails with client | 0.2 | $70.00 |
| 11/8/2021 | 6.37 | TCS | Prepare statements of expertise and commence work on experts reports. | 1.2 | $618.00 |
| 11/9/2021 | 6.37 | MD | Conference with Mitchell Y. Cohen | 0.2 | $70.00 |
| 11/9/2021 | 6.37 | MD | E-Mails with client and T Senter | 20.0 | $245.00 |
| 11/9/2021 | 6.37 | MD | Telephone conference and e-mails with E Perry | 0.2 | $70.00 |
| 11/9/2021 | 6.37 | MD | Telephone conference with TIAA (v. Ford); prepare correspondence regarding Order Restraining Accounts | 0.3 | $105.00 |
| 11/9/2021 | 6.37 | MD | Review submissions from P Kijewski | 0.3 | $105.00 |
| 11/9/2021 | 6.37 | MD | Dictation of letter to TIAA QDRO manager Vince Ford | 0.2 | $70.00 |

112. **TIAA Confirmation**: December 16, 2021, TIAA confirmed the Internal

Revenue Code and "Employee Retirement Security Act of 1974" (ERISA) compliance

supersedes NY Court Injunction/Restraining Order:

a. December 16, 2021, TIAA initiated tax years 2018, 2019, 2020 & 2021

Required Minimum Distribution (RMD) disbursements:

## Table 9 TIAA Confirmation March 6, 2018 - December 16, 2021, RMD Disbursements "Hold"

| September 26, 2023, TIAA Letter to Plan Administrator, MSKCC Retirement Plans Sponsor |
|---|

Elizabeth J. Perry, TIAA Law & Compliance Liaison: I have researched your inquiry regarding payments that were issued to Dr. Kijewski from the Memorial Sloan Kettering Cancer Center retirement plans. The payment details are outlined in the table below:

| Contract Number | Payment Date | Gross Amount | Federal Taxes | State Taxes | Net Amount |
|---|---|---|---|---|---|
| L8754974 | 12/27/2021 | $22,001.16 | $0.00 | $0.00 | $22,001.16 |
| L8754974 | 12/23/2021 | $15,766.56 | $0.00 | $0.00 | $15,766.56 |
| L8754974 | 12/22/2021 | $11,073.96 | $0.00 | $0.00 | $11,073.96 |
| L8754974 | 12/20/2021 | $8,425.71 | $0.00 | $0.00 | $8,425.71 |
| K5994351 | 12/17/2021 | $90,558.40 | $18,111.68 | $4,527.92 | $67,918.80 |
| C3686023 | 12/16/2021 | $1.35 | $0.27 | $0.07 | $1.01 |
| 08156M09 | 12/16/2021 | $145,968.07 | $29,193.61 | $7,298.40 | $109,476.06 |
|  |  |  |  |  |  |
| K5994351 | 3/6/2018 | $2,585.29 | $517.06 | $131.85 | $1,936.38 |
| K5994351 | 3/5/2018 | $23,864.65 | $4,772.93 | $1,217.10 | $17,874.62 |
| K5994351 | 3/5/2018 | $2,872.55 | $574.51 | $146.50 | $2,151.54 |
| L8754974 | 3/2/2018 | $936.19 | $0.00 | $0.00 | $936.19 |
| L8754974 | 2/2/2018 | $936.19 | $0.00 | $0.00 | $936.19 |
| L3754974 | 1/4/2018 | $936.19 | $0.00 | $0.00 | $936.19 |
| C8156M09 | 12/7/2017 | $33,667.13 | $8,416.78 | $0.00 | $25,250.35 |
|  | Totals | $359,593.40 | $61,586.84 | $13,321.84 | $284,684.72 |

The payments were distributed as follows:

| Contract Number | Payment Date | Payment Destination |
|---|---|---|
| L8754974 | 12/27/2021 | EFT - BANK OF AMERICA, NA |
| L8754974 | 12/23/2021 | EFT - BANK OF AMERICA, NA |
| L8754974 | 12/22/2021 | EFT - BANK OF AMERICA, NA |
| L8754974 | 12/20/2021 | EFT - BANK OF AMERICA, NA |
| K5994351 | 12/17/2021 | EFT - BANK OF AMERICA, NA |
| C3686023 | 12/16/2021 | EFT - BANK OF AMERICA, NA |
| C8156M09 | 12/16/2021 | EFT - BANK OF AMERICA, NA |
|  |  |  |
| K5994351 | 3/6/2018 | MAIL - PERSHING LLC C/O TC BROKERAGE, |
| K5994351 | 3/5/2018 | MAIL - PERSHING LLC CO TC BROKERAGE |
| K5994351 | 3/5/2018 | MAIL - PERSHING LLC CO TC BROKERAGE, |
| L8754974 | 3/2/2018 | EFT - EVERBANK, NA |
| L8754974 | 2/2/2018 | EFT - EVERBANK, NA |
| L8754974 | 1/4/2018 | EFT - EVERBANK, NA |
| C8156M09 | 12/7/2017 | EFT - EVERBANK, NA |

113. August 31, 2023, "TIAA brokerage services, A division of TIAA Individual & Institutional Services, LLC, Member FINRA/SIPC, **TIAA PORTFOLIO ADVISOR** INVESTMENT ADVISORY PROGRAM, *Individual Retirement Account Statement*, Account Number A57-649187, Client Account

Beneficiary Information, SONIA KIJEWSKI PRIMARY DAUGHTER, JOSEPH

KIJEWSKI PRIMARY SON, MATT POULIN CONTINGENT OTHER

INDIVIDUAL, 8/22/2023 multiple DIVORCE/QUALIFIED DOMESTIC

RELATIONS ORDER TRANSFER:

a. TRANSFER to DEFENDANT Ms. Dunn client DEFENDANT Ms.

Kijewski, due to TIAA consent October 20, 2016, Ms. Dunn wire

communication to Actuary Robert Guarnera, Ms. Dahan and Ms. Kijewski

NYSCEF No. 115: "I am following up on the QDROs necessary for this

matter. I understand that you had a question as to whether the investment

experience would be included after date of commencement. The answer is yes,

the accounts should all be divided including investment experience through

date of division, with of course the one exception being Mr. Kijewski's

separate property credit (including that investment experience) on his TIAA-

CREF account."

114. December 1, 2023, Ms. Perry, TIAA Law & Compliance Liaison, letter to

"Dear Ms. Dunn":

a. List of "TIAA Traditional shares, an unusual insurance-based

investment with arcane rules that are specific to each of the 4 6 separate plans

in Defendant's name".

b. Confirmation Peter Kijewski IRA account <u>owner</u>: **$0.00**.

c. "TIAA has maintained a disbursement hold on Dr. Kijewski's TIAA

retirement plan accounts since 2018, pending the receipt of a Domestic

Relations Order (DRO)."

    d. "Letters were sent in 2021 and 2022 informing parties that the hold on Peter Kijewski's accounts would be released within 30 days of the date of our letters if no DRO was received. A copy of the 2022 letter is enclosed for your reference. We are past that 30-day notice."

    e. "Last year you shared a 'Decision and Order' dated November 4, 2022. While the Order appeared to be against Dr. Kijewski, not TIAA or the retirement plans, TIAA as a courtesy maintained the holds on the retirement accounts because we were expecting receipt of the DRO within the first part of 2023. To date, TIAA has not received a DRO for the retirement plans. Since we do not have a DRO, the hold on the accounts will be released on December 13, 2023."

    f. "Dr. Kijewsjki (sic) has requested a withdrawal from his retirement accounts. We are making you aware of this request as a courtesy. This payment will be made when the hold is released. Please note that TIAA will not send you notifications in the future should Dr. Kijewski request any additional withdrawals from his retirement plan accounts."

    g. "Please feel free to contact me directly if you have any questions or concerns regarding this matter. I can be reached weekdays at **800-842-2733, ext. 242873** or via email at [eperry@tiaa.org](mailto:eperry@tiaa.org)."

    h. "Last year you shared a 'Decision and Order' dated November 4, 2022" exposing "Required Minimum Distribution" (RMD) disbursements "hold" since June 25, 2015:

i. "Defendant shall be committed to the custody of the Westchester

County Commissioner of Corrections to be incarcerated at the

Westchester County Jail for a period to be determined by the Court".

115. December 11, 2023, Ms. Dunn wire communication to Ms. Kuritzky and

Ms. Spielberg:

**Fwd: Kijewski**
AK
Alyson Kuritzky<AKuritzky@Abramslaw.com>
To:You
Cc:Jill Spielberg

Mon 12/11/2023 11:41 PM

Peter

Please see email below and advise. Your immediate response is appreciated. Thank you.

Alyson

Begin forwarded message:

**From:** Maureen Dunn <mdunn@johnsoncohenlaw.com>
**Date:** December 11, 2023 at 9:01:57 AM EST
**To:** Jill Spielberg <JSpielberg@abramslaw.com>, Alyson Kuritzky
<AKuritzky@abramslaw.com>
**Subject: Kijewski**

Caution: This email originated outside of the organization

Good morning:

I have been advised by TIAA that your client has sought to obtain a distribution from them in the sum of $25,000, beyond his Required Minimum Distributions which he has already received for this year (and which total $108,587.17). As you are well aware, the current court order prevents any distributions other than RMDs from his accounts. His request is a direct violation of the terms of the current restraining orders. If he obtains this distribution, we will have no choice but to file an application to hold him in contempt, yet again.

We have requested his updated TIAA account statements to prepare the final QDROs that are necessary in this matter, and he has failed to produce same.

**Please confirm by close of business tomorrow that he will cancel his requested distribution and will produce his statements year to date so that we can send you a proposed QDRO for your/his review.**

Thank you,

Maureen A. Dunn, Esq.
Partner
Johnson & Cohen, LLP
mdunn@johnsoncohenlaw.com
Phone: (914) 644-7100
Fax: (914) 922-9500
www.johnsoncohenlaw.com

**NOTICE TO RECIPIENT: This email transmission is meant only for the intended recipient of this transmission. This transmission may be a communication privileged by law. If you have received this transmission in error, any review, use, dissemination, distribution, or copying of this email is strictly prohibited. Please notify us by return email of the error and delete this message from your system. Thank you for your cooperation.**



116. December 15, 2023, Ms. Perry, TIAA Law & Compliance Liaison, wire

communication to Peter Kijewski:

**RE: Tracking frozen retirement plans without $493,192 Domestic Relations Order (DRO) since June 25, 2015**

PE
Perry, Elizabeth<eperry@tiaa.org>
To:You

Fri 12/15/2023 7:03 PM

Dr. Kijewski:

A request has been entered into our system to lift the hold on your retirement accounts.  The hold should already be lifted from the brokerage accounts.  On Monday we will process the withdrawal request that you submitted in November for $25,000.

Sincerely,
Elizabeth Perry

**Elizabeth Perry**
Sr Customer Resolution Manager Law Liaison | Individual Client Services
TIAA

1670 Broadway | Suite 2200
Denver CO 80202
Phone: 303.607.2873
eperry@tiaa.org
www.tiaa.org

TIAA-CREF Individual & Institutional Services, LLC, Member FINRA and SIPC

*Documents and Forms may be uploaded through our website by using the TIAA Mobile App. If unable to submit forms and documents via digital channels, please contact me for alternate instructions or mail forms to TIAA, P.O. Box 1259, Charlotte, NC 28201.*



117. "The hold should already be lifted from the brokerage accounts" reveals

Ms. Perry failed to memorialize:

a. August 22, 2023, TIAA IRA A57-649187 account, <u>owner</u> Peter

Kijewski, assigned to Ms. Kijewski, IRA account <u>owner</u>.

b. TIAA <mark>expunged</mark> all evidence of TIAA IRA A57-649187 account, including all TIAA IRA account statements

118. **<u>SDNY CM/ECF</u>**: Requirements substantially exceed filing "Peter Kijewski-v.-TIAA-Complaint-##.##.25.docx".

### b) Vanguard Group, Inc.

119. December 31, 2014, Peter Kijewski Vanguard accounts <u>owner</u>, since December 31, 2009, or earlier: "**Vanguard**, **Vanguard Voyager Select Services**":

a. "**Individual account** VFIAX 500 Index Fund Adm account 0540-09785096851".

b. "**Traditional IRA account** VIGAX Growth Index Fund Adm account 0509-09788620965 and VGSTX STAR Fund account 0056-09788620965."

120. December 31, 2014, Peter Kijewski account <u>owner</u> "**Vanguard**, **Vanguard Voyager Select Services**, **Rollover IRA account** VTSAX 500 Index Fund Adm account 0585-88045718421, since November 30, 2010".

121. June 25, 2015, Mr. Cohen wrote his AUTOMATIC ORDERS letter to Vanguard, sent by wire "FAX 06 27 2015 0300", viewing Vanguard **Traditional IRA account** and **Rollover IRA account** statements handed to him in secrecy by his client Ms. Kijewski:

a. "Please be advised that your undersigned represents Marie Kijewski in connection with her matrimonial matter against her husband, Peter Kijewski. An Action for Divorce has been commenced by Marie Kijewski against Peter Kijewski in the Supreme Court of the State of New York, in the County of Westchester. Enclosed herewith is a copy of the Summons for Divorce which includes Notice of Entry of Automatic Orders pursuant to Domestic Relations Law Section 236.

b. "Mr. Kijewski has the following accounts with your company: Individual account #054009785096851; Traditional IRA account #0509-09788620965 and #0056-09788620965 and possibly other accounts."

c. "The aforesaid notice of Entry of Automatic Orders includes a specific provision that: ORDERED: Neither party shall transfer, encumber, assign, remove, withdraw or in any way dispose of, without the consent of the other party, or by order of the court.. ." any cash accounts, stocks, mutual funds, bank accounts, etc See paragraph (1) thereon A similar restriction is imposed with respect to any "tax deferred funds, stocks or other assets held in any individual retirement accounts, 401K accounts, profit sharing plans, Keogh accounts, or any other pension or retirement accounts. See paragraph (2) thereon."

d. "Please consider this as Notice to you that these restrictions are in place and be guided accordingly."

e. "If you have any questions, please contact me."

122. November 16, 2015, Ms. Kijewski tax years 2011, 2012, 2013, 2014 & 2015 "Required Minimum Distribution" (RMD) disbursement calculations NYSCEF No. 441 included Vanguard Traditional IRA and Vanguard Rollover IRA.

123. **Vanguard Group, Inc. penalties payable to Peter Kijewski**:

a. Mr. Cohen included Peter Kijewski **investment** "Individual account #0540-09785096851" private property.

b. Mr. Cohen initiated tax deferred IRA "failure to withhold", "failure to pay tax" and "failure to follow the tax laws".

c. Mr. Cohen froze Peter Kijewski and the Vanguard investment account due to June 25, 2015, NSYCEF No. 3, appended Peter Kijewski mugshot.

d. Not knowing Ms. Kijewski violation of trust, Peter Kijewski used the Vanguard investment account to pay for his model 2003 car he still drives.

e. Vanguard Group, Inc. response to Mr. Cohen's shady actions have not yet been exposed.

f. Vanguard Group Inc., response to Mr. Cohen "please consider this as Notice to you that these restrictions are in place and be guided accordingly": AUTOMATIC ORDERS "tax-deferred funds in pay status exception" to prevent tax penalties???

124. November 16, 2015, Ms. Dunn viewed Ms. Kijewski RMD calculations and wrote her letter to "Dear Ms. Dahan" NYSCEF No. 415:

a. "As you are aware, your client has provided no financial support to Ms. Kijewski in the past month, and the funds he provided in October went to pay household and family bills that were incurred largely in August and/or September. Your client's obligation to support his wife and child is clear. Does he intend to make any good faith payment of support?"

b. "Additionally, your client's discovery responses were due last Friday, pursuant to the Preliminary Conference Order. When can I expect to receive same?"

c. "Finally, as addressed in our application before the Court and as discussed in our recent correspondence, your client is obligated to withdraw the sum of $48,389.49 form one of his retirement accounts as and for his

Required Minimum Distribution for 2015. Same must be requested imminently or it may not be processed within this calendar year. Such delay would subject the parties to a penalty of up to 50%, which would be a wholly unnecessary dissipation of marital funds. Ms. Kijewski (as she has historically done) has calculated your client's RMD, and a copy of these calculations is attached. Also attached is the RMD distribution request form for your client's Clear Harbor account (account number J4N-301918). Please confirm that your client will sign and submit this form to Clear Harbor as soon as possible in order to ensure that the RMD is processed within this calendar year."

    d. "With respect to the funds received from the RMD, it is proposed that your client agree that these funds be equally divided between the parties upon receipt, or in the alternative, that your firm will hold in escrow all funds received, pending a decision from the Court as to the disposition of these proceeds. Please advise as to your client's position regarding this request."

125. December 31, 2016, "**Vanguard**, **Vanguard Voyager Select Services**, **Rollover IRA account** VTSAX Fund and account 0585-88045718421":

    a. Transferred to "TIAA brokerage services, A division of TIAA Individual & Institutional Services, LLC, Member FINRA/SIPC, **TIAA PORTFOLIO ADVISOR** INVESTMENT ADVISORY PROGRAM, *Individual Retirement* Account Statement, Account Number A57-649187, Clearing through Pershing LLC, a wholly owned subsidiary of The Bank of New York Mellon Corporation (BNY Mellon), Pershing LLC, member FINRA,

NYSE, SIPC", due to Plaintiff Peter Kijewski guidance by Paul Cowie, TIAA CFP, Portfolio Advisor WMA.

    b. Single Vanguard Rollover IRA account "Required Minimum Distribution" (RMD) disbursement, including "Federal withholding" and "NY State withholding", required due to transfer to TIAA

126. May 31, 2017, "**Vanguard**, **Vanguard Voyager Select Services**, **Rollover IRA account** VMFXX Fund and account Fund and account 0033-88045718421":

    a. Transfer back to Vanguard from "TIAA brokerage services, A division of TIAA Individual & Institutional Services, LLC, Member FINRA/SIPC, **TIAA PORTFOLIO ADVISOR** INVESTMENT ADVISORY PROGRAM, ***Brokerage*** *Account Statement*, Account Number: A57-666850" due to DEFENDANT Ms. Dunn denial using the TIAA account for a $468,997 Domestic Relations Order (DRO).

    b. May 12, 2023 "**Vanguard**, Vanguard Flagship Services, Rollover IRA account Vanguard Federal Money Market Fund — 0033-88045718421, Normal distribution, Federal withholding, MA State withholding":

        i. Single Vanguard Rollover IRA account 0033-88045718421 "Required Minimum Distribution" (RMD) disbursement due to April 9, 2018, Vanguard Legal Department (Vanguard Office of the General Counsel) letter to Peter Kijewski NYSCEF No. 367:

        ii. "Vanguard is not a party to this action, and is therefore not bound by the March 14,2018, Order. However, in light of what appears to be a dispute regarding the assets in the Account, we are writing to

notify you that Vanguard has placed a restriction on the Account;
accordingly, no exchanges, redemptions, withdrawals, or distributions
of any kind may occur in or from the Account during this time
(including any Required Minimum Distributions)."

127. May 15, 2023, "**Vanguard**, Vanguard Flagship Services, Rollover IRA
account Vanguard Federal Money Market Fund — 0033-88045718421, Transfer to
another account, Dividend to another account", referencing Defendant Ms. Dunn
client Defendant Ms. Kijewski account.

128. May 23, 2023, Ms. Dunn recitation NYSCEF No. 548 reveals the first
assignment of retirement interests, Peter Kijewski account <u>owner</u>, to Ms. Kijewski
retirement assets account <u>owner</u>, since June 19, 2015, Action for a Divorce NYSCEF
No. 1 & 2:

a. "*The Parties further acknowledge that the date of transfer
of the Vanguard IRA to the Plaintiff was 5/15/23, and that the
~~Peter~~ Plaintiff received a total of $424,458.68 from said
transfer.*"

**c) BNY Pershing**

129. January 31, 2011, "**Pershing Advisor Solutions**, A BNY MELLON COMPANY, CLEAR HARBOR ASSET MANAGEMENT, *Individual Retirement Account Statement*, Account Number J4N-301918, Clearing through Pershing LLC, a wholly owned subsidiary of The Bank of New York Mellon Corporation (BNY Mellon), Pershing LLC, member FINRA, NYSE, SIPC" included a comprehensive statement about IRS Internal Revenue Code applicable for IRA <u>owners</u>, age 70 ½:

a. "According to our records, you are required under federal tax law to take an annual minimum distribution from your retirement account. These required minimum distributions (RMDs) usually begin in the year you reach the age of <u>70½</u>. Failure to take the RMD when required may result in a <u>50% excise tax</u> imposed on the amount you did not take. **NOTE**: Any outstanding rollovers or recharacterizations that were not in your account on December 31 of the prior year should be added to your year-end fair market value for the previous year to calculate your RMD for the current year. Also, when taking your RMD, please consider any scheduled distribution amounts you have established which may allow you to <u>automatically</u> meet all or part of your RMD. Please contact us if you are interested in establishing instructions."

130. June 25, 2015 - September 20, 2017, BNY Pershing Legal Department lawyers required DEFENDANT Mr. Cohen or DEFENDANT Ms. Dunn permission to release *Individual Retirement Account Statement*, Account Number J4N-301918, "Required Minimum Distribution" disbursement "hold", violating IRS Internal

Revenue Code and AUTOMATIC ORDERS "tax-deferred funds in pay status exception".

131. June 15, 2015 - March 31, 2016, Mr. Cohen & Ms. Dunn Process Notes and Invoices NYSCEF No. 77 (29 pages):

### Table 10 June 25, 2015, Mr. Cohen TIAA, Vanguard & BNY Pershing RMD "Hold"

| June 25, 2015 - September 20, 2017, AUTOMATIC ORDERS Recurring $0.00 RMD Disbursements | | | | | | |
|---|---|---|---|---|---|---|
| Date | Days | Charge | Process Notes | Time | Invoice | Peter |
| 6/24/2015 | -1 | MYC | Review financial account listing | 0.1 | $47.50 | Pro Se |
| 6/24/2015 | -1 | MYC | Telephone conference with client | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to TIAA-CREF | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to Pershing Advisor Solutions LLC | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to Vanguard | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to Lincoln Financial | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Telephone conference with client 🖊️ | 0.2 | $95.00 | Pro Se |

132. June 25, 2015, Mr. Cohen letter to BNY Pershing NYSCEF No. 400, enclosed <u>unauthorized</u> BNY Pershing IRA account numbers and dog & cat doodle, account <u>owner</u> Peter Kijewski: "Mr. Kijewski has the following accounts with your company: J4N-301918 and possibly other accounts. Please consider this as Notice to you that these restrictions are in place and be guided accordingly."

a. NYSCEF No. 400 Additional Document Information "RMDs: June 25, 2015 Mitchell Y. Cohen, Esq. initiating BNY Mellon Pershing "hold, release, terminate" "Required" Minimum Distributions. Demand: Johnson & Cohen, LLP file four (4) original June 25, 2015 documents in NSYCEF (sic)."

133. November 16, 2015, Ms. Dunn letter to "Dear Ms. Dahan" NYSCEF No. 415 reveals Ms. Dunn failure to memorialize June 25, 2015, AUTOMATIC ORDERS "Required Minimum Distribution" (RMD) disbursements "hold": "Finally, as addressed in our application before the Court and as discussed in our recent correspondence, your client is obligated to withdraw the sum of $48,389.49 form

(sic) one of his retirement accounts as and for his Required Minimum Distribution

for 2015. Same must be requested imminently or it may not be processed within

this calendar year. Such delay would subject the parties to a penalty of up to 50%,

which would be a wholly unnecessary dissipation of marital funds. Ms. Kijewski (as

she has historically done) has calculated your client's RMD, and a copy of these

calculations is attached. Also attached is the RMD distribution request form for

your client's Clear Harbor account (account number J4N-301918). Please confirm

that your client will sign and submit this form to Clear Harbor as soon as possible

in order to ensure that the RMD is processed within this calendar year."

134. November 16, 2015, Ms. Kijewski tax years 2011 - 2015 "Required

Minimum Distribution" (RMD) calculations NYSCEF No. 441, tax year 2015

45,169.78 RMD reviewed by Ms. Dunn.

135. November 16, 2015, Ms. Kijewski "Required Minimum Distribution"

(RMD) BNY Pershing IRA Distribution Request Form and Instructions, Peter

Kijewski J 4 N-3 0 1 9 1 8 account <u>owner</u>, NYSCEF No. 414.

136. November 23, 2015, Ms. Woolston wire communication to Ms. Dahan

and Mr. Newman NYSCEF No. 418, attachment June 25, 2015, Mr. Cohen letter to

BNY Pershing NYSCEF No. 400:

**RE: Clear Harbor Letter**
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Louis Newman;Jessica Dahan

Mon 11/23/2015 1:09 PM

Kijewski Letter.pdf 231 KB

Hello Peter,

Please find attached the letter Pershing received in June.

I received the following reply from Pershing to my inquiry after their legal team
reviewed the RMD request:

**Morning Cat,**

**Our legal group has reviewed the Action for Divorce submitted to us in June of this year.   Regarding the client being able to take out his RMD, they responded with the below:**

**"This client needs to take their RMD and should have his attorney alert Mitchell Cohen of Johnson & Cohen LLP that this action took place and is a regulatory requirement. "**

I am initiating the RMD today as per your request on Friday.

Happy Thanksgiving!

Cat
Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

137. November 23, 2015, Ms. Woolston wire communication to Peter Kijewski

NYSCEF No. 419: "Anytime…The funds did not yet go out…I submitted it earlier,

but it can take a day or two to process…Will email when I got notice that the funds

went out…"

138. November 23, 2015, Ms. Woolston wire communication to Ms. Dahan

and Mr. Newman NYSCEF No. 420 revealing BNY Pershing Legal Department

lawyer relinquished empowered authority RMD disbursements to Mr. Cohen:

**RE: TIAA-CREF Letter**
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Louis Newman;Jessica Dahan

<div align="right">Mon 11/23/2015 4:19 PM</div>

Pershing is now coming back with this…

Hello Cat,

After further review our legal team has said that we will not be able to remove the block or approve the client's RMD request until we receive a letter from the attorney acknowledging that they know of the end-clients intentions.

I'm very sorry about this…

Catherine Stamm Woolston, Director
Clear Harbor Asset Management

420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

139. December 1, 2015, BNY Pershing Legal Department lawyer wire communication, via Ms. Woolston, to "Hello Peter" NYSCEF No. 421:

    a. "I have called a few times to make sure you saw this email…your cell phone mailbox is full and not accepting any voicemail."

    b. "I know this is frustrating, but unfortunately, I can't change Pershing."

    c. "Please let me know if you/your attorney will contact Johnson and Cohen or if you want me to try to reach out to them."

    d. "I'm in the office for the remainder of the year except Christmas Eve and Christmas Day."

140. December 2, 2015, Ms. Dahan letter to "Dear Ms. Dunn" NYSCEF No. 359:

    a. "Upon the commencement of the Action for Divorce against my client, your office sent a letter to Pershing Advisor Solutions, LLC, instructing them of your understanding of the Automatic Orders."

    b. "As a result of your instruction, Mr. Kijewski's RMD request at Clear Harbor is currently blocked and will continue to be blocked until they receive a letter from your office acknowledging that you are aware of this request and that you consent to the release of the funds. As you know, the parties will suffer financial consequences should they be unable to obtain this

RMD. Therefore, at your earliest convenience, inform Pershing that you are aware of my client's request."

     c. "Please copy this office on your correspondence with Pershing. We will hold the RMD funds in escrow during the pendency of this matter."

141. **Mr. Cohen Empowered Authority**: December 2, 2015, Mr. Cohen letter to BNY Pershing, via Ms. Woolston, NYSCEF No. 360 exposed BNY Pershing lawyer assigned to Mr. Cohen empowered authority IRS Internal Revenue Code enforcement, concerning Peter Kijewski account <u>owner</u> J4N-301918:

     a. "Pursuant to your discussion with my associate this morning, please be advised that I am aware of Mr. Kijewski's request for a distribution from account J4N-301918 in the sum of $48,389.49, which represents his Required Minimum Distribution for the year 2015. On behalf of Ms. Kijewski, we consent to the request to release these funds. It is my understanding that these funds will be released directly to Mr. Kijewski's counsel, Newman & Denney, P.C., where they will be held in escrow."

     b. "Kindly advise if you require any additional action from me or Ms. Kijewski in order to release these funds."

142. December 2, 2015 - December 9, 2015, Process Notes and Invoices:

**Table 11 Tax Year 2015, BNY Pershing $48,389.49 Blocked RMD**

| Date | Days | Charge | Process Notes | Time | Invoice |
|------|------|--------|---------------|------|---------|
|  | | Attorney Activities: Tax Year 2015 Blocked BNY Pershing $48,389.49 RMD + NYSCEF E-Filing | | | |
| 6/24/2015 | -1 | MYC | Review financial account listing | 0.1 | $47.50 |
| 6/24/2015 | -1 | MYC | Telephone conference with client | 0.2 | $95.00 |
| 6/25/2015 | 0 | MYC | Dictation of letter to Pershing Advisor Solutions LLC | 0.2 | $95.00 |
| 6/25/2015 | 0 | MYC | Telephone conference with client | 0.2 | $95.00 |
| 12/2/2015 | 160 | MYC | Dictation of letter to Clear Harbor Asset Management | 0.2 | $95.00 |
| 12/2/2015 | 160 | MYC | Conference with Maureen Dunn; review and revise Reply Affidavit and Affirmation | 0.4 | $190.00 |
| 12/2/2015 | 160 | MD | Finalize Affidavit and exhibits | 1.5 | $525.00 |
| 12/2/2015 | 160 | MD | E-Mails with client | 0.2 | $70.00 |
| 12/2/2015 | 160 | MD | Conference with Client | 0.6 | $210.00 |
| 12/2/2015 | 160 | MD | Preparation of Affirmation and Memo of Law | 2.0 | $700.00 |
| 12/2/2015 | 160 | MD | E-Mails with attorney; review documents | 0.2 | $70.00 |
| 12/2/2015 | 160 | MD | Telephone conference with Clear Harbor | 0.1 | $35.00 |
| 12/2/2015 | 160 | MD | Miscellaneous - e-filing | 0.2 | $70.00 |
| 12/2/2015 | 160 | MD | Conference with Mitchell Y. Cohen | 0.2 | $0.00 |
| 12/2/2015 | 160 | MD | Travel to Supreme Court to file working copy of Reply Papers | 0.3 | $105.00 |
| 12/2/2015 | 160 | JAD | Email with Financial Advisor; located documents requested | 0.2 | $57.00 |
| 12/2/2015 | 160 | JAD | Email correspondence with Clear Harbor, client, and opposing counsel. | 0.1 | $28.50 |
| 12/4/2015 | 162 | JAD | Phone conference with client | 0.1 | $28.50 |
| 12/4/2015 | 162 | JAD | Compile all exhibits for production of documents; review response; burn CD | 1.5 | $427.50 |
| 12/7/2015 | 165 | JAD | Phone with client and financial advisor | 0.2 | $57.00 |
| 12/8/2015 | 166 | JAD | Review and respond to client emails; Phone with client | 0.2 | $57.00 |
| 12/9/2015 | 167 | MYC | Telephone conference with Maureen Dunn | 0.1 | $0.00 |
| 12/9/2015 | 167 | MD | Conference with Mitchell Y. Cohen; review D&O | 0.3 | $105.00 |
| 12/9/2015 | 167 | MD | E-Mails with client | 0.1 | $35.00 |
| 12/9/2015 | 167 | JAD | Email correspondence with Clear Harbor. | 0.1 | $28.50 |
| 12/9/2015 | 167 | JAD | Review emails from client | 0.1 | $28.50 |
| 12/9/2015 | 167 | JAD | Phone conference with client; email with client. | 0.4 | $114.00 |

143. "**December 9, 2015, review D&O**": December 9, 2015, Hon. Paul I.

Marx, J.S.C. No. 1 of 7, PENDENTE LITE DECISION AND ORDER Application

No. 1 NYSCEF No. 59 causing Ms. Dunn, Mr. Cohen and Ms. Kijewski shock & awe

wire communications:

a. The present brief review included in Plaintiff Peter Kijewski

COMPLAINT, since interminable needless litigation principally concerns two

issues: 1) blocked "Required Minimum Distribution" (RMD) disbursements

and 2) missing $468,997 Domestic Relations Order (DRO).

b. "On June 19, 2015, Plaintiff filed the instant action for dissolution of the parties' marriage based upon irretrievable breakdown of the parties' relationship for at least six months, pursuant to Domestic Relations Law ("DRL") Section 170(7). On October 7, 2015, Plaintiff's counsel filed a Request for Judicial Intervention seeking a preliminary conference."

c. Hon. Paul I. Marx clearly defined list of issues to be resolved, essential issues list abhorred by attorneys: "On November 13, 2015, Plaintiff filed her Order to Show Cause seeking: (1) temporary spousal support in the amount of $7,199.79 per month; (2) interim child support in the amount of $3,180.84 per month; (3) Defendant to pay 50% of the costs on the marital residence until Plaintiff's relocation; (4) after Plaintiff's relocation, Defendant to pay 50% of repairs on the marital residence and 100% of all other expenses associated with the marital residence; (5) Defendant to pay 86.7% of statutory and expanded add-on expenses for the parties' child; (6) Defendant to divide his remaining 2015 Required Minimum Distribution evenly between the parties; and (7) $25,000 in interim counsel fees. The Court signed Plaintiffs Order to Show Cause and set a briefing schedule."

d. Attorneys failed memorializing "the norm envisioned by current Internal Revenue Code provisions", notwithstanding Hon. Paul I. Marx reminder: "Therefore, the Court awards Plaintiff the sum of $87,055.66 annually or $7,254.64 per month to be paid by Defendant. The award shall be taxable to Plaintiff, as she does not specify any basis for departing from "the norm envisioned by current Internal Revenue Code provisions." *Girgenti v Girgenti,* 81 AD3d 886, 889 [2nd Dept 2011] (quoting *Grumet v Grumet,* 37

AD3d 534, 536 [2nd Dept 2007]); *see also Markopoulos v Markopoulos,* 274 AD2d 457, 459 [2nd Dept 2000]."

   e. Anyone understands one sentence, except attorneys: "Upon proper proof, Defendant may take a credit for the payment of $7,000 he allegedly made to Plaintiff on November 27, 2015."

   f. Ms. Dunn determined this amount to be inadequate, restored her $3,187.50 child support formula, starting August 1, 2016, and redacted Ms. Kijewski Joseph Supplemental Security Income payments: "The Court determines this amount to be adequate to meet the reasonable expenses of the parties' child as claimed by Plaintiff, including housing expenses. Defendant shall pay to Plaintiff $1,800 per month in interim child support beginning on January 1, 2016 and on the first of each month thereafter."

   g. "***Carrying Costs on the Marital Home***"

   h. Ms. Dunn recurring request for double award denied: "The Court agrees with Defendant. Here, the Court has used a statutory formula to calculate temporary maintenance. Thus, Plaintiff's maintenance award includes an allowance for housing. Moreover, although the Court did not use the CSSA to calculate interim child support, the Court chose to include housing expenses attributable to the child within its award. If Defendant were required to pay a portion of the carrying charges on the marital home, it would result in an impermissible double shelter allowance. *Mosso, supra* at 759. Plaintiff shall be responsible for all of the carrying charges on the marital home until such time as she relocates. Plaintiff's responsibility for these costs shall be effective *nunc pro tunc* as of November 13, 2015."

i. "*Required Minimum Distribution*"

j. **Peter Kijewski Review**: The present brief review included in Plaintiff Peter Kijewski COMPLAINT, since interminable needless litigation principally concerns two issues: 1) blocked "Required Minimum Distribution" (RMD) disbursements and 2) missing $468,997 Domestic Relations Order (DRO): "Plaintiff asks the Court to direct Defendant to distribute 50% of his Required Minimum Distribution to her. Plaintiff explains that Defendant is required to withdraw a certain amount from his retirement accounts each year or he will be charged a 50% penalty. Plaintiff notes that Defendant has already received $2,207.60 from one retirement account. She does not ask for a portion of that distribution. Instead, Plaintiff asks that the remaining distribution of approximately $48,389.49 be divided equally between the parties. Defendant opposes Plaintiff's request, noting that since it is a marital asset, it cannot be distributed until equitable distribution of the entire marital estate occurs."

k. Actuary Robert Guarnera reduced $493,192 Domestic Relation Order (DRO) to $468,997: "The Court is unpersuaded by Defendant's argument, because the Court has the authority to award an advance on equitable distribution. *See Havell v Islam,* 288 AD2d 160, 160 [1st Dept 2001]. Defendant is directed to provide Plaintiff with 50% of the remaining 2015 Required Minimum Distribution. Such monies will be subject to reallocation at the time of trial."

l. "The Court has considered several factors in awarding interim fees in this case, notably, the lack of complexity of the case, which does not warrant

the large award sought by Plaintiff. In addition, the Court's award of temporary maintenance and interim child support changes the financial circumstances of both parties, rendering greater parity. Furthermore, Plaintiff expects to receive close to $25,000 from Defendant's Required Minimum Deduction. Accordingly, the Court awards Plaintiff interim counsel fees in the amount of $5,000, with leave to bring further application, if necessary. Defendant shall pay to Plaintiff's counsel $5,000 within 60 days of the date of this Decision and Order."

m. "All other requests for relief are denied."

144. **Retirement Income "Hold"**: Attorneys subverted Hon. Paul I. Marx just, fair and timely PENDENTE LITE DECISION AND ORDER since BNY Pershing Legal Department lawyers needlessly enabled recurring Plaintiff Peter Kijewski retirement income (block) "hold".

145. December 15, 2015, Ms. Dahan wire communication to Ms. Dunn NYSCEF No. 75, filed April 29, 2016, by Ms. Dunn:

a. "We received the RMD payment yesterday for the Clear Harbor acccount (sic). Attached is an image of the check for your file. We will deposit it and distribute as per court order."

b. Attached December 11, 2015, tax year 2015 PERSHING ADVISOR SOLUTIONS LLC $48,389.49 RMD check image, "FED TAX $0.00", "ST TAX $0.00", payable to **NEWMAN & DENNEY P.C. AS ATTORNEY**, authorized by Peter Kijewski IRA J4N-301918 account <u>owner</u>:

i. December 9, 2015, Peter Kijewski: "Catherine - I authorize that the entire $ amount as submitted by me to Clear Harbor be paid to

Newman & Denney, P.C. as Attorneys and as instructed by Jessica

Dahan. The only change I authorize is the recipient of the RMD

payment."

c. Attached January 13, 2016, Ms. Dunn letter to Ms. Dunn: "I received

your e-mail dated December 15, 2015 confirming your receipt of the RMD

together with a copy of the check for the RMD payment from the Clear

Harbor account. Nearly one month has passed and the check for our client's

share has not been received. Demand is hereby made that you immediately

release a check payable to Marie Kijewski for one-half the amount, i.e.,

$24,194.74 as set forth in Judge's Marx's order."

d. Attached January 19, 2016, Ms. Dahan letter to Ms. Dunn:

"Pursuant to Judge Marx's Order, dated December 9, 2015, enclosed hereto

please find a check made payable to Plaintiff Marie Kijewski in the amount of

$24,194.75, representing one-half of Mr. Kijewski's Required Minimum

Distribution.": As a result, $493,192 Domestic Relations Order (IRA) is

reduced to $468,997.

e. Attachment January 14, 2016, **IOLA NEWMAN & DENNEY P.C.**

$24,194.75 check image payable to Marie Kijewski.

146. September 2, 2016, Hon. John P. Colangelo, J.S.C. No. 2 of 7, Judgment

of Divorce NYSCEF No. 107, terminating June 25, 2015, AUTOMATIC ORDERS

tax-deferred funds in pay status "Required Minimum Distribution" (RMD)

disbursement "hold"?

147. December 7, 2016, Ms. Woolston wire communication to Peter Kijewski,

Ms. Dunn, Ms. Dahan and Ms. Kijewski NYSCEF No. 362:

**Kijewski - Required Minimum Distribution from Peter's IRA--MUST be done before**
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Maureen Dunn;Jessica Dahan;Marie Kijewski

Wed 12/7/2016 4:40 PM

You forwarded this message on Thu 12/8/2016 8:13 AM

Clear Harbor (Woolston) 2015-12-02 release RMD funds.pdf **46 KB**
2016 RMD KIJEWSKI .pdf **173 KB**
2 attachments (220 KB)

Hello Maureen, Jessica, Peter and Marie:

Anticipating an issue since Pershing still has a block on Peter's IRA...I'm sure we need a letter like this one to do the RMD.

I spoke to Peter and he know he needs to sign the attached RMD form.

Please provide the LOA ASAP.

Thanks,

Cat

Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

148. December 7, 2016, Ms. Kijewski wire communication NYSCEF No. 458:

# Re: Kijewski - Required Minimum Distribution from Peter's IRA--MUST be done before 12/31/16

You replied on Wed 12/7/2016 5:58 PM
You replied on Wed 12/7/2016 5:58 PM

<div style="background:#4472c4;color:white;text-align:center">MK</div>

Marie Kijewski
Wed 12/7/2016 5:01 PM

To: You; Maureen Dunn; Jessica Dahan
I have done the RMD calculations in the past; Peter always took the entire RMD amount from the Clear Harbor IRA. I believe that I sent Peter a spreadsheet with the information he will need for the calculations, but I can resend it if he doesn't have it. I can also explain anything that isn't clear.
In the past, Clear Harbor needed the request well before the end of the year.
Marie

149. December 9, 2016, Ms. Woolston wire communication NYSCEF No. 462:

# RMD
You replied on Sat 12/10/2016 4:28 PM
You replied on Sat 12/10/2016 4:28 PM

| CW |
|----|

Catherine Woolston <CWoolston@clearharboram.com>
Fri 12/9/2016 12:13 PM
To: You
2016 RMD KIJEWSKI .pdf 173 KB

Peter,

==I got the letter from Marie's lawyer OK'ing the releasing the RMD funds==…All I need is for you to sign page 9 of the attached PDF and return it to me ASAP…I don't need the original…a scan/email or fax work on my end…

Best,
Cat

Catherine Stamm **Woolston**, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com
**NEW YORK | WASHINGTON, D.C. | DALLAS**

Confidentiality Note: This message and all attachments may contain confidential and/or legally privileged information for the firm Clear Harbor Asset Management, LLC, and is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance to the contents is strictly prohibited. If you have received this message in error, please notify this firm immediately by telephone (212-867-7310) or by electronic mail (info@clearharboram.com), and delete this message and all copies and backups thereof.

150. September 20, 2017, Ms. Dunn wire communication to BNY Pershing Legal Department, via Ms. Woolston, NYSCEF No. 355 (==yellow== highlight in original text), terminating June 25, 2015, AUTOMATIC ORDERS tax-deferred funds in pay status "Required Minimum Distribution" (RMD) disbursement "hold".

151. Ms. Dunn failed NYSCEF filing "==lawyers' letterhead, a physical signature and date included==" to BNY Pershin Legal Department, via Clear Harbor:

**Table 12 September 20, 2017, Ms. Dunn Terminated June 2015, RMD "Hold"**

| Date | Years | Charge | Process Notes | Time | Invoice |
|------|-------|--------|---------------|------|---------|
|  | September 20, 2017, Ms. Dunn Terminating June 25, 2015, AUTOMATIC ORDERS RMD "Hold" |
| 9/20/2017 | 2.2 | MD | E-Mails with client and attorney regarding retirement accounts | 0.2 | $70.00 |
| 9/20/2017 | 2.2 | MD | Telephone conference with client | 0.2 | $70.00 |
| 9/20/2017 | 2.2 | MD | Dictation of letter to Gail Wofford | 0.2 | $70.00 |
| 9/20/2017 | 2.2 | JF | review client emails; review notes from yesterday; draft affidavit | 0.4 | $120.00 |
| 9/20/2017 | 2.2 | DS | Email exch w/client re retirement accts | 0.2 | $120.00 |
| 9/21/2017 | 2.2 | MD | E-Mails with Clear Harbor | 0.2 | $70.00 |
| 9/21/2017 | 2.2 | MD | Telephone conference with client regarding QDROs | 0.3 | $105.00 |
| 9/21/2017 | 2.2 | MD | Conference with Mitchell Y. Cohen | 0.1 | $35.00 |
| 9/21/2017 | 2.2 | MD | E-Mails with client regarding ███ | 0.1 | $35.00 |
| 9/21/2017 | 2.2 | DS | Reviewed client email re distribution; reviewed email from Clear Harbor re RMD | 0.2 | $120.00 |

|     |     |
|-----|-----|
| MS | Ms. Dunn |
| DS | Ms. Stutman |
| JF | Ms. Friedrich |

152. September 20, 2017, wire communications about releasing AUTOMATIC

ORDERS tax-deferred funds in pay status "Required Minimum Distribution" (RMD)

disbursement "hold":

# FW: Kijewski v. Kijewski

You forwarded this message on Tue 8/31/2021 9:23 AM
You forwarded this message on Tue 8/31/2021 9:23 AM

**JF**

Jessica Friedrich <Jessica.Friedrich@sslllp.com>
Wed 9/20/2017 12:40 PM
To: You

Cc: Dana Stutman

Hi Peter:

Please see M. Dunn's email to Clear Harbor below. I understand from you that Ms. Woolston is out of the office, but even so this is a step in the right direction.

Jessica Friedrich | Associate
Stutman Stutman & Lichtenstein, LLP
Main: 212.226.6644 | Direct: 646.688.4340 |Fax: 212.750.1901
135 West 50th Street, 18th Floor
New York, New York 10020
25 Roslyn Road, 1st Floor
Mineola, New York 11501

This message and any attachment are intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (212) 266-6644. Thank You.

 U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.

**From:** Maureen Dunn [mailto:MDunn@johnsoncohenlaw.com]
**Sent:** Wednesday, September 20, 2017 8:57 AM
**To:** 'cwoolston@clearharboram.com'
**Cc:** Jessica Friedrich <Jessica.Friedrich@sslllp.com>
**Subject:** Kijewski v. Kijewski

Dear Ms. Woolsten:

As you may recall, I represent Marie Kijewski in connection with the matrimonial matter against Peter Kijewski. Mr. Kijewski is currently represented by Jessica Friedrich (copied here). Ms. Friedrich advised that her client has encountered difficulty in receiving his Required Minimum Distribution from Clear Harbor as a result of the hold on the accounts that had been in effect during the pendency of the matrimonial action. Please be advised that to the extent such a hold previously existed, same is no longer required as the parties have resolved their matrimonial litigation and a judgment of divorce has been issued. Mr. Kijewski should no longer be restrained from accessing his accounts due to the previous hold.

Regards,

*Maureen A. Dunn, Esq.*
*Johnson & Cohen, LLP*
*mdunn@johnsoncohenlaw.com*
*Phone: (914) 644-7100*
*Fax: (914) 922-9500*
*www.johnsoncohenlaw.com*
**Email is not permitted for service of papers.**
**NOTICE TO RECIPIENT: This email transmission is meant only for the intended recipient of this transmission. This transmission may be a communication privileged by law. If you have received this transmission in error, any review, use, dissemination, distribution, or copying of this email is strictly prohibited. Please notify us by return email of the error and delete this message from your system. Thank you for your cooperation.**

# RE: Kijewski v. Kijewski

You forwarded this message on Wed 9/20/2017 4:32 PM
You forwarded this message on Wed 9/20/2017 4:32 PM

**GW**

Gail Wofford <GWofford@clearharboram.com>
Wed 9/20/2017 3:36 PM
To: You
Cc: Jessica.Friedrich@sslllp.com; MDunn@johnsoncohenlaw.com; Catherine Woolston

Dear Mr. Kijewski,

Thank you for forwarding the email from Ms. Dunn at Johnson Cohen Law regarding removing the hold on the account.

In order for the letter of authorization to be processed, the instructions must be on the lawyers' letterhead, a physical signature and date included.

We cannot accept an electronic signature.

The LOA may be sent via email to my attention and I will see that it is submitted for processing while Ms. Woolston is out of the office.

Sincerely,
Gail J. Wofford
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212-867-7310
Fax:  212-867-7804
GWofford@clearharboram.com



**NEW YORK | WASHINGTON, D.C. | DALLAS**

Confidentiality Note: This message and all attachments may contain confidential and/or legally privileged information for the firm Clear Harbor Asset Management, LLC, and is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance to the contents is strictly prohibited. If you have received this message in error, please notify this firm immediately by telephone (212-867-7310) or by electronic mail (info@clearharboram.com), and delete this message and all copies and backups thereof

153. BNY Pershing Legal Department lawyers failed to send recurring Notice to Ms. Dunn and Mr. Senter: **"This client needs to take their RMD and should have his attorney alert Mitchell Cohen of Johnson & Cohen LLP that this action took place and is a regulatory requirement."**

### d) Maureen A. Dunn, Esq.

154. Regulatory Requirements Discovery: Plain English: Attorney compliance with the Internal Revenue Code, "Employee Retirement Income Security Act of 1974" (ERISA) and AUTOMATIC ORDERS tax-deferred funds in pay status exception.

155. **Thwarted Mediation**: June 30, 2015, Peter Kijewski, pro se, wire communication to Lauren Bokor, Esq., Divorce Mediation & Collaborative Law, NYSCEF No. 357:

a. "I am writing to you for an assessment if it is worthwhile to initiate mediation of a divorce filed by my wife. A process server delivered to me an extremely aggressive divorce filing without prior warning. If the divorce proceedings go forward as initiated by my wife it will result in consequences well known to you – high expense, damage to all concerned parties, and possibly years to get this matter resolved."

b. "To the best of my knowledge there is only one issue which will definitely be of interest to the court. It concerns one of our two sons. He is an adult and already has to deal with multiple problems. If the legal system gets involved, which will happen if the divorce proceeds as initiated, the consequences will not be good for our son. This I would like to avoid."

c. "Of course there are other reasons to attempt mediation. My wife and I will go our separate ways, but I can't think of anything that is of interest to the legal system. Nor is there anything in the filing accusing me of wrong doing. A way has to be found to divide our assets and that should be the end of it."

d. "Reviewing the terms of the divorce filing, I believe the reason for the way my wife has chosen to proceed with the divorce is panic as she tries to deal with a possible involuntary exit from the work force, a process which started about a year ago. I did not know until a day after the divorce filing that my income was supporting almost all our expenses. There is also a very good reason for finding a temporary solution and then proceed with the divorce in about a year. She did not think through the consequences of her action. She has her grievances regarding our relationship, but these are not issues for intervention by our legal system."

e. "My conclusion is based on the fact that there is no fault on my part, but I get to pay for every single expense and Marie contributes not one penny. She is asking for full custody, an irrelevant demand by the time the divorce is granted. There is a demand for a distributive award. I don't know that is, but I assume I get to make an additional payment. She does not have to make any effort to find work while I must continue to work. I am 74 and employed full time."

f. "There is also a very strong suspicion on my part that the lawyer she hired is going for a big pay check."

g. "I can provide you with a copy of the divorce filing and background information about all concerned parties. I know that I will be ineffective in persuading my wife to consider mediation. A qualified expert has to be involved and I can engage family members."

h. "What I need from you is agreement to review the provided material, approximate fees, and an opinion on whether or not mediation is an option. If

mediation is an option, we should meet and review what needs to be done to persuade my wife to start with mediation toward an eventual divorce."

156. **Adverse Outcomes**: Ms. Dunn recurring e-filing NYSCEF <u>Applications</u> (motions), concurrent with her Process Notes and Invoices, reveal the horrific adverse outcomes due to her failure to comply with a simple set of rules & regulations.

157. "**Investment Experience**": October 20, 2016, Ms. Dunn wire communication to Actuary Robert Guarnera NYSCEF No. 115 launched Ms. Dunn one million dollar "Investment Experience" financial plan:

    a. "I am following up on the QDROs necessary for this matter. I understand that you had a question as to whether the <u>investment experience</u> would be included after date of commencement. The answer is yes, the accounts should all be divided including <u>investment experience</u> through date of division, with of course the one exception being Mr. Kijewski's separate property credit (including that <u>investment experience</u>) on his TIAA-CREF account."

    b. December 15, 2017, Ms. Dunn letter to "Dear Ms. Friedrich" NYSCEF No. 154 (**bold** highlight in original text):

        i. January 17, 2018, appended: "As for the Roth IRA, we have documentation establishing that Ms. Kijewski had been attempting to transfer half of this account (which is worth less than 5% of the amount your client owes to her) to your client since at least September of 2016, and he did not cooperate with these efforts, so your attempt to place blame on her for the account having not yet been transferred is wholly misplaced. Moreover, we always consulted your client and obtained his

agreement before any transfers or changes in investments were made. Your claim that your client's mortgage application was jeopardized by the missing $50,000 (the approximate value of your client's half of the Roth account) is also untenable and unsupported by any documentation. Curiously, he is currently benefitting from retaining in excess of **one million dollars** in retirement assets belonging to Ms. Kijewski. Did he fully disclose on his mortgage application that a large portion of his retirement accounts were not actually his property?"

    ii. Page No. 14 of 14: December 8, 2016, Actuary Robert Guarnera $468,997 Domestic Relations Order (DRO) calculation, including tax year 2015 RMD split.

158. **Domestic Relations Order (DRO)**: Ms. Dunn recurring failure to submit to retirement asset custodians TIAA, Vanguard and/or BNY Pershing a just, fair and timely 403(b) & 457(b) retirement plans & IRAs, account <u>owner</u> Peter Kijewski, $468,997 Domestic Relations Order (DRO), violating:

    a. September 2, 2016, Ms. Dunn **JUDGMENT OF DIVORCE** NYSCEF No. 102:

        i. "ORDERED AND ADJUDGED that equitable distribution shall be as set forth in the parties' Stipulation of Settlement; and it is further

        ii. ORDERED AND ADJUDGED that pursuant to the Stipulation of Settlement, a separate Qualified Domestic Relations Order shall be issued simultaneously herewith or as soon as practicable; and it is further …"

iii. "Parties' Stipulation of Settlement": July 6, 2016, Stipulation of

Settlement <u>contract</u> NYSCEF No. 100 (45 pages) includes retirement

asset value to calculate $468,997 Domestic Relations Order (DRO).

b. August 7, 2019, "SO ORDERED JOSPHINE TROVINI, ESQ. Special

Referee", since September 5, 2017, NYSCEF No. 306 (37 pages): "THE

COURT: To the extent you are seeking a deviation from the stipulation, which

is a contract that this Court is obligated to enforce, you would be required to

submit an additional Order to Show Cause."

159. **Attorney Orders**: Ms. Dunn recurring Court <u>Applications</u>, resulting in

403(b) & 457(b) retirement plans and IRAs retirement income "hold", replaced just,

fair and timely retirement plans and IRAs $468,997 Domestic Relations Order

(DRO) submission to TIAA, Vanguard and/or BNY Pershing:

a. September 20, 2017, Ms. Dunn wire communication to BNY

Pershing Legal Department, via Ms. Woolston, Clear Harbor Asset

Management, NYSCEF No. 355 confirmed attorney AUTOMATIC ORDERS

Attorney Orders since June 25, 2015:

i. "As you may recall, I represent Marie Kijewski in connection

with the matrimonial matter against Peter Kijewski. Mr. Kijewski is

currently represented by Jessica Friedrich (copied here). Ms. Friedrich

advised that her client has encountered difficulty in receiving his

Required Minimum Distribution from Clear Harbor as a result of the

hold on the accounts that had been in effect during the pendency of the

matrimonial action. Please be advised that to the extent such a hold

previously existed, same is no longer required as the parties have

resolved their matrimonial litigation and a judgment of divorce has

been issued. Mr. Kijewski should no longer be restrained from

accessing his accounts due to the previous hold."

ii. "In effect during the pendency of the matrimonial action": June

19, 2015, no-fault Action for a Divorce NYSCEF No. 1 & 2.

iii. "Judgment of divorce has been issued.": September 2, 2016, Ms.

Dunn **JUDGEMENT OF DIVORCE** NYSCEF No. 102, September 2,

2016, signed by Hon. John P. Colangelo, J.S.C. No. 2 of 7, NYSCEF No.

107.

160. **Recurring <u>Applications</u>**: Ms. Dunn abhorred submitting to TIAA,

Vanguard and/or BNY Pershing a just, fair & timely $468,997 Domestic Relations

Order (DRO):

a. November 13, 2015, Ms. Dunn **<u>ORDER TO SHOW CAUSE</u>**, Court

<u>Application</u> **No. 1** NYSCEF No. 24: "G. Directing Defendant to pay, as and for

an award of interim counsel fees, the sum of $25,000 to Johnson & Cohen,

LLP;"

b. April 29, 2016, Ms. Dunn **<u>ORDER TO SHOW CAUSE</u>**

**IMMEDIATE ARREST AND IMPRISONMENT**, Court <u>Application</u> **No. 2**

NYSCEF No 63: "D. Awarding Plaintiff the sum of $15,000 as and for interim

counsel fees to enable her to continue in the prosecution of this matter, with

leave to apply for further sums should they become necessary;"

c. April 17, 2017, Ms. Dunn **<u>ORDER TO SHOW CAUSE</u>**

**IMMEDIATE ARREST AND IMPRISONMENT**, Court <u>Application</u> **No. 3**

NYSCEF No. 109: "D. Awarding Plaintiff counsel fees in the sum of $5,000.00

for the legal fees incurred in the connection with this application as a result of Defendant's conduct;"

    d. February 28, 2018, Ms. Dunn **ORDER TO SHOW CAUSE IMMEDIATE ARREST AND IMPRISONMENT**, <u>Application</u> **No. 4** NYSCEF No. 133: "G. Awarding Plaintiff counsel fees in the sum of $25,000.00 for the legal fees incurred as a result of Defendant's conduct and in the connection with this application, with leave to seek additional fees;"

    e. March 14, 2018, Ms. Dunn "NOTICE OF HARDCOPY SUBMISSION -- E-FILED CASE" NYSCEF No. 166, included March 20, 2018, Hon. Lewis J. Lubell, NYS J.S.C. No. 4 of 7, signed I**MMEDIATE RELIEF REQUESTED <u>ORDER TO SHOW CAUSE</u>**, Court <u>Application</u> **No. 5** NYSCEF No. 163, filed March 28, 2018, by Ms. Friedrich.

    f. October 8, 2018, Ms. Dunn **ORDER TO SHOW CAUSE IMMEDIATE ARREST AND IMPRISONMENT**, Court <u>Application</u> **No. 6** NYSCEF No. 219:

        i. Response to October 5, 2018, Special Referee Josephine Trovini, **REPORT AND <u>RECOMMENDATION</u>**, Referee's Report, Court <u>Applications</u> No. 4 & 5 NYSCEF No. 218: "With regard to motion sequence number 5, it is recommended that defendant's retirement assets at Vanguard and TIAA-CREF be restrained until the necessary QDROs are processed, subject to a hearing to be held regarding whether defendant needs to make withdrawals from the accounts to take his required minium (sic) distribution."

g. October 18, 2018, Ms. Dunn **ORDER TO SHOW CAUSE**, Court

Application **No. 7** NYSCEF No. 237: "A. Confirming the Report and

Recommendation of Special Referee Josephine Trovini dated October 5, 2018,

pursuant to CPLR 4403 and 22 NYCRR 202.44(b);"

h.  December 7, 2018, Ms. Dunn, Esq. **ORDER TO SHOW CAUSE**

**IMMEDIATE ARREST AND IMPRISONMENT**, Court Application **No. 8**

NYSCEF No. 247:

i. "C. Directing Defendant to immediately increase the death

benefit of his Prudential Life Insurance Policy to $451,000, naming

Plaintiff as the beneficiary thereof; and"

ii. "D. Awarding Plaintiff counsel fees in the sum of $5,000.00 for

the legal fees incurred as a result of Defendant's conduct and in

connection with the preparation of this application, with leave to seek

additional fees as may be necessary;"

i. March 18, 2019, Ms. Dunn, **Qualified Domestic Relations Order**,

NEDH pension, account owner Peter Kijewski, Court Application **No. 10**

NYSCEF No. 247 (**bold** highlight in original text): "**The Alternate Payee is**

**to receive one hundred percent (100%) of the Participant's monthly**

**benefit until arrears from August 1, 2016 are satisfied.**"

j. August 7, 2019, Special Referee Josephine Trovini SO ORDERED,

Court Applications No. **4 & 5** NYSCEF No. 306 (37 pages):

i. Ms. Dunn: "Q. Can you explain to the Court why you incurred

fees totalling (sic) over $88,000 over the past three years?"

ii. Ms. Kijewski: "A. Well, most of those fees were incurred in an attempt to obtain compliance with the terms of a divorce stipulation and the vast majority of them were made necessary by my ex-husband's bad faith and bad behavior. I went through 2016 and 2017, I went through every month and every item on the bills and I compared that with e-mails and I allocated anything that was not due to bad faith or attempts to obtain compliance from him. And I found that $81.795 in legal fees should not have been necessary."

iii. Special Referee Josephine Trovini: "THE COURT: Based upon review of the time sheets and affirmation of services, the Court awards reasonable counsel fees in this matter in the sum of $60,000 for the Motion Sequence Number 4 and 5, and the motion to confirm."

k. October 13, 2021, Ms. Dunn **ORDER TO SHOW CAUSE IMMEDIATE ARREST AND IMPRISONMENT**, Court <u>Application</u> **No. 12** NYSCEF No. 326: "F. Granting Plaintiff counsel fees in the sum of $10,000.00 in connection with this application;"

l. November 5, 2021, Ms. Dunn **ORDER TO SHOW CAUSE INTERIM RELIEF REQUESTED**, Court <u>Application</u> **No. 13** NYSCEF No. 394.

i. Response to October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348.

m. November 30, 2022, Ms. Dunn, **DOMESTIC RELATIONS ORDER (IRA)**, Court <u>Application</u> **No. 14** NYSCEF No. 509: Hon. Thomas Quinones, J.S.C. No. 6 of 7, signature line.

    i. Actuary Robert Guarnera **DOMESTIC RELATIONS ORDER (IRA)**, NYSCEF No. 117: Hon. John P. Colangelo, J.S.C. No. 2 of 7, Ms. Dunn, Ms. Dahan, Ms. Kijewski, Peter Kijewski signature lines.

    ii. January 19, 2023, Hon. Thomas Quinones, J.S.C. No. 6 of 7, signed **DOMESTIC RELATIONS ORDER (IRA)**, Long Form Order, Court <u>Application</u> **No. 14** NYSCEF No. 520.

    iii. May 15, 2023, removed by Vanguard Office of the General Counsel lawyer, since Peter Kijewski IRA account <u>owner</u>: "(6) Any distributions received by the Former Spouse pursuant to this Order will be included as gross income by the Former Spouse. For the purposes of Section 72 of the Internal Revenue Code, the Former Spouse and not the IRA Owner shall be treated as the distributee of any distribution or payment made by any IRA pursuant to this Order."

n. July 24, 2023, Hon. James L. Hyer, J.S.C. No. 7 of 7, signed **Domestic Relations Order** NYSCEF No. 553:

    i. Ms. Kijewski signed **Domestic Relations Order**.

    ii. Peter Kijewski signed **Domestic Relations Order** due to Ms. Spielberg communication Peter Kijewski (82) immediate "Defendant shall be committed to the custody of the Westchester County Commissioner of Corrections to be incarcerated at the Westchester County Jail for a period to be determined by the Court."

161. **Invoices and Process Notes**: Ms. Dunn recurring NYSCEF filing of her Invoices and Process Notes, paid to Ms. Dunn by her client Ms. Kijewski, for the sole purpose of Peter Kijewski reimbursing her client for fees her client paid for Ms. Dunn filing Court <u>Applications</u>.

162. **Tax Fraud Activity**: Account <u>owner</u> Peter Kijewski 403(b) & 457(b) retirement plans and IRAs retirement income "hold" resulted in "failure to withhold", "failure to pay tax", "failure to follow the tax laws" and "a false or alter document". Tax years 2011 – 2023 tax returns reveal:

a. Peter Kijewski stiff $194,980 RMD 50% tax penalties.

b. Ms. Dunn tax returns reveal no evidence of stiff tax penalties she caused.

163. **Defamation**: Ms. Dunn highly effective recurring defamation against Peter Kijewski, resulted November 4, 2022, Hon. Thomas Quinones, J.S.C. No. 6 of 7, Ms. Dunn Court <u>Applications</u> No. 12 & 13, **<u>DECISION & ORDER</u>** NYSCEF No. 506: "Defendant shall be committed to the custody of the Westchester County Commissioner of Corrections to be incarcerated at the Westchester County Jail for a period to be determined by the Court".

164. **Tracking Applications**: Tracking Ms. Dunn <u>Applications</u> timeline reveals her focused direction has always been e-filing <u>Applications</u>, Word processing unprecedented supporting papers NYSCEF content and exorbitant legal fee demands

165. **Table 6** **Rules & Regulations** compliance would have immensely benefitted her client.

166. Actuary Robert Guarnera $493,192 Domestic Relations Order (DRO)

calculation:

**Table 13 Actuary Robert Guarnera $468,997/$493,192 Domestic Relations Order (DRO) Calculation**

| KIJEWSKI RETIREMENT ASSETS | | | | | |
|---|---|---|---|---|---|
| _Peter_ | | | _MARIE_ | | |
| Clear Harbor IRA | 196301 | | Clear Harbor IRA | 188049 | |
| Vanguard IRA | 555984 | | Vanguard IRA | 108063 | |
| Vanguard IRA | 96714 | | TIAA | 417373 | |
| Lincoln 403B | 51424 | | Fidelity | 300957 | |
| TIAA MSKCC(OTH) | 830966* | | | 1014442* | |
| TIAA IRA | 269437 | | | | |
| | $ 2000826 | –$1014442 =$ 986384 | | | |
| | | X.5 | | | |
| | | 493192 | | | |
| | 1/2 2015 RMD | – 24195 | | | |
| | | $468,997 | | | |
| * Does NOT Include Accounts with Premarital | | | | | |
| ** Excludes NON TAXABLE ROTH IRA | | | | | |

167. **Justification**: Defendant Ms. Ms. Dunn unlawful actions concerning the

Internal Revenue Code and "Employee Retirement Income Security Act of 1974"

(ERISA) substantially exceeds requirements for Ms. Dunn inclusion in Peter Kijewski

COMPLAINT:

a. **Subpoenas**: Ms. Dunn issued recurring subpoenas to obtain

account <u>owner</u> Peter Kijewski 403(b) & 457(b) retirement plans and NYSCEF

e-filing for no purpose whatsoever.

b. **Domestic Relations Order (DRO)**: Ms. Dunn, using account

<u>owner</u> Peter Kijewski 403(b) & 457(b) retirement plans and <u>Individual</u>

Retirement Account (IRA) Statements in her possession, had the opportunity

any time to submit a $468,997 Domestic Relation Order (DRO) to TIAA, Vanguard and/or BNY Pershing.

c. **TIAA**: To date of the present COMPLAINT, TIAA never received any Plaintiff Peter Kijewski account <u>owner</u> 403(b) & 457(b) retirement plans Domestic Relations Order (DRO) since June 19, 2015, Action for a Divorce NYSCEF No. 1 & 2.

d. **Vanguard**: May 15, 2023, Vanguard processed the <u>first</u> Domestic Relations Order (DRO) since June 19, 2015, Action for a Divorce NYSCEF No. 1 & 2:

    i. Vanguard Voyager Select Services, Rollover IRA Domestic Relations Order (DRO) resulted in the assignment of account <u>owner</u> Peter Kijewski Vanguard IRA to Ms. Kijewski account <u>owner</u> Vanguard IRA.

    ii. Vanguard Domestic Relations Order (DRO) processing required removal of invalid Domestic Relations Order (DRO) term (6), first defined December 8, 2016: "(6) Any distributions received by the Former Spouse pursuant to this Order will be included as gross income by the Former Spouse. For the purposes of Section 72 of the Internal Revenue Code, the Former Spouse and not the IRA Owner shall be treated as the distributee of any distribution or payment made by any IRA pursuant to this Order."

    iii. **<u>Owner</u>**: Removal of IRA Domestic Relations Order (DRO) term (6) indisputably verifies Defendant Ms. Dunn grossly violated Plaintiff Peter Kijewski "rights, liberty and property".

e. **BNY Pershing**: To date of the present COMPLAINT, BNY Pershing never received any Plaintiff Peter Kijewski account <u>owner</u> IRA Domestic Relations Order (DRO) since June 19, 2015, Action for a Divorce NYSCEF No. 1 & 2.

f. November 5, 2021, Ms. Dunn Injunction/Restraining Order Court <u>Application</u> No. 13 NYSCEF No. 394 (62 pages) inexplicably reveals Ms. Dunn first encounter of "Employee <u>Retirement Income Security</u> Act of 1974" (ERISA) since June 19, 2015, Action for a Divorce NYSCEF No. 1 & 2.

### e) Mitchell Y. Cohen, Esq.

168. April 25, 2013, "Statement of Client's Rights and Responsibilities, Attorney's Signature (Mr. Cohen), and Client's Signature (Ms. Kijewski)" NYSCEF No. 124 (pages 8 & 9).

169. June 15, 2015 - June 25, 2015, Mr. Cohen raised two (2) red flags: "Every scam, no matter how sophisticated, or how amateur, there are two (2) red flags":

 a. "1) Urgent need for June 15, 2015, **$10,000** marital money legal fee retainer, deducted from June 12, 2015, **$25,000** marital money transfer in secrecy, and"

 b. "2) Asking for TIAA, Vanguard Group, Inc., BNY Pershing and Lincoln financial retirement accounts personal information in secrecy, omitting Peter Kijewski account <u>owner</u> authorization":

### Table 14 June 24, 2015, Mr. Cohen Review Retirement Benefits Financial Account Listing

| June 19, 2015 – June 25, 2015, Mr. Cohen "Required Minimum Distribution" (RMD) Disbursements "Hold" | | | | | | |
|---|---|---|---|---|---|---|
| Date | Days | Charge | Process Notes | Time | Invoice | Peter |
| 4/25/2013 | -791 | MYC | Agreement "Attorney's signature" + "Client's signature" | ? | ? | |
| 6/15/2015 | -10 | MYC | Conference with Client | 1.5 | $712.50 | Pro Se |
| 6/17/2015 | -8 | MYC | Conference with Martin T. Johnson; telephone conference with client | 0.1 | $47.50 | Pro Se |
| 6/18/2015 | -7 | MYC | Telephone conference with client | 0.1 | $47.50 | Pro Se |
| 6/19/2015 | -6 | JA | Dictation of E-Mail to process server | 0.1 | $11.00 | Pro Se |
| 6/19/2015 | -6 | MYC | Conference with client | 0.3 | $142.50 | Pro Se |
| 6/19/2015 | -6 | MYC | Miscellaneous - file pleadings | 0.1 | $47.50 | Pro Se |
| 6/24/2015 | -1 | MYC | Review financial account listing | 0.1 | $47.50 | Pro Se |
| 6/24/2015 | -1 | MYC | Telephone conference with client | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to TIAA-CREF | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to Pershing Advisor Solutions LLC | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to Vanguard | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to Lincoln Financial | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Telephone conference with client | 0.2 | $95.00 | Pro Se |
| 6/26/2015 | 1 | MYC | Telephone conference with client | 0.5 | $237.50 | Pro Se |
| 6/29/2015 | 4 | MYC | Receipt of Affidavit of Service and invoice from Finest Services | 0.1 | $47.50 | Pro Se |

170. "**Conference with Client**": June 15, 2015, Mr. Cohen and Ms. Kijewski Conference agenda items NYSCEF No. 356:

a. "What about retirement accounts?"

    i. "I will have to check what he had as of our wedding date. would that amount be subtracted from joint assets? Would growth of that money be subtracted? what if money was shuffled around, absorbed in other accounts over the years?"

    ii. "Would it be possible to split every account, rather than just equalizing (or whatever division) totals?"

171. "What if money was shuffled around, absorbed in other accounts over the years?": June 24, 2015, Mr. Cohen "Review financial account listing" invoice concerning March 31, 2015, Plaintiff Peter Kijewski "TIAA-CREF **Quarterly Retirement Portfolio Statement**":

**Table 15 March 31, 2015, TIAA Quarterly Retirement Portfolio Statement**

| March 31, 2015, TIAA-CREF Account Statements: Peter Kijewski Owner 403(b) & 457(b) Retirement Plans | | | | |
|---|---|---|---|---|
| Account **numbers** and **custodians** change due to medical institution **merger activity**. | | | | |
| September 1, 1975, account numbers defined: TIAA A-697778-7, CREF P-697778-4 | | | | |
| Retirement plan **sponsor** labels do **NOT** change. | | | | |
| Valid $468,997 Domestic Relations Order (DRO) calculated any time, including after "Required Minimum Distribution" (RMD) disbursement. | | | | |
| Date | Years | Viewed By | Sponsor labels with/without hospital merger | Merge | Account # with and without "-" |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA A697778-7, CREF P697778-4 |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA C368602-3, CREF U368602-1 |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | Other Investments |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) VOLUNTARY PLAN | No | TIAA K599435-1, CREF J599435-3 |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC KEY EMPLOYEE SUPPLEMENTAL SAVINGS PLAN | No | TIAA L875497-4, Other Investments |
| 3/31/2015 | -0.2 | Mr. Cohen | RETIREMENT INCOME PLAN FOR TEACHING FACULTY OF HARVARD UNIV | No | TIAA A697778-7, CREF P697778-4 |
| 3/31/2015 | -0.2 | Mr. Cohen | NEW ENGLAND DEACONESS HOSPITAL DISCONTINUED | Yes | TIAA A697778-7, CREF P697778-4 |
| 3/31/2015 | -0.2 | Mr. Cohen | BRIGHAM AND WOMENS HOSPITAL PROFESSIONAL STAFF | Yes | TIAA A697778-7, CREF P697778-4 |

172. June 15, 2015, Mr. Cohen and Ms. Kijewski **RETAINER AGREEMENT** NYSCEF No. 18: "In order for us to begin our representation the client has agreed to pay and the firm has agreed to accept a retainer payment of $10,000 –."

173. "**June 19, 2015, Dictation of E-Mail to process server**" processing: June 25, 2015, **AFFIDAVIT OF SERVICE** NYSCEF No. 3: "I identified the defendant by a photograph provided to me by the plaintiff which is annexed hereto.", appended Peter Kijewski mugshot.

174. "June 19, 2015, Miscellaneous - file pleadings":

a. June 19, 2015, *SUMMONS WITH NOTICE* NYSCEF **ACTION FOR A DIVORCE** NSYCEF No. 1, appended **AUTOMATIC ORDERS** about "tax deferred funds exception":

i. "(2) ORDERED: Neither party shall transfer, encumber, assign, remove, withdraw or in any way dispose of any <u>tax deferred funds</u>, stocks or other assets held m any individual retirement accounts, 401K accounts, profit sharing plans, Keogh accounts, or any other pension or retirement account, and the parties shall further refrain from applying for or requesting the payment of retirement benefits or annuity payments of any kind, without the consent of the other party in writing, or upon further order of the court ; <u>except that any party who is already in pay status may continue to receive such payments thereunder</u>."

b. June 19, 2015, **VERIFIED COMPLAINT** NYSCEF No. 2: "MARIE FOLEY KIJEWSKI, deposes and says: I hereby state, under oath, that the marital relationship between the plaintiff and defendant has broken down irretrievably for a period of six (6) months or more prior to my filing the Summons for Divorce. I understand that no <u>Judgment of Divorce</u> shall be granted to me until the economic issues of <u>equitable distribution of marital</u>

property, the payment or waiver of spousal support, the payment of child support, the payment of counsel and experts' fees and expenses as well as the custody and visitation with the minor children of the marriage have been resolved by the parties or determined by the Court and incorporated into the Judgment of Divorce."

    c. September 2, 2016, Ms. Dunn **JUDGMENT OF DIVORCE** NYSCEF No. 102 about "I understand that no Judgment of Divorce shall be granted to me until the economic issues of equitable distribution of marital property":

        i.  "ORDERED AND ADJUDGED that equitable distribution shall be as set forth in the parties' Stipulation of Settlement; and it is further

        ii. ORDERED AND ADJUDGED that pursuant to the Stipulation of Settlement, a separate Qualified Domestic Relations Order shall be issued simultaneously herewith or as soon as practicable; and it is further …"

175. "**June 24, 2015, Review financial account listing**", Peter Kijewski retirement account statements personal information Ms. Kijewski printed and handed to Mr. Cohen in secrecy:

    a. TIAA: "Mr. Kijewski has the following accounts with your company: (See Annual Printout) and possibly other accounts.", appended March 31, 2015, account owner Peter Kijewski, TIAA-CREF *QUARTERLY RETIREMENT PORTFOLIO STATEMENT*.

b. Vanguard Group, Inc.: "Mr. Kijewski has the following accounts with your company: Individual account #054009785096851; Traditional IRA account #0509-09788620965 and #0056-09788620965 and possibly other accounts."

c. BNY Pershing: "Mr. Kijewski has the following accounts with your company: J4N-301918 and possibly other accounts."

d. Lincon Financial: "Plaintiff notes that Defendant has already received $2,207.60 from one retirement account."

176. "**June 25, 2015, Dictation of letter to TIAA-CREF**" Mr. Cohen perpetrated Peter Kijewski retirement income "hold": June 25, 2015, Mr. Cohen AUTOMATIC ORDERS letter to TIAA-CREF, via FAX "150701_0730", NYSCEF No. 399, attached March 31, 2015, Plaintiff Peter Kijewski "TIAA-CREF **Quarterly Retirement Portfolio Statement**" Pages No. 8 - 11.

177. "**June 25, 2015, Dictation of letter to Pershing Advisor Solutions LLC**" Mr. Cohen perpetrated Peter Kijewski retirement income "hold": June 25, 2015, Mr. Cohen AUTOMATIC ORDERS letter to BNY Pershing NYSCEF No. 400, attached dog and cat doodle.

178. "**June 25, 2015, Dictation of letter to Vanguard**" Mr. Cohen perpetrated Peter Kijewski retirement income "hold": June 25, 2015, Mr. Cohen AUTOMATIC ORDERS letter to Vanguard, via FAX "06 27 2015 0300".

179. "**June 25, 2015, Dictation of letter to Lincoln Financial**" to be provided by Mr. Cohen.

180. June 25, 2015, Mr. Cohen letters to TIAA, Vanguard and BNY Pershing included "The aforesaid notice of Entry of Automatic Orders includes a specific

provision that: ORDERED: Neither party shall transfer, encumber, assign, remove, withdraw or in any way dispose at without the consent of the other party, or by order of the court...." any cash accounts, stocks, mutual funds, bank accounts, etc. See paragraph (1) thereon. A similar restriction is imposed with respect to any "tax deferred funds, stocks or other assets held in any individual retirement accounts, 401K accounts, profit sharing plans, Keogh accounts, or any other pension or retirement accounts. See paragraph (2) thereon.":

> a. "See paragraph (2) thereon": Mr. Cohen needed to emphasize in his letter, but chose to omit: "(2) ORDERED: Neither party shall transfer, encumber, assign, remove, withdraw or in any way dispose of any <u>tax deferred funds</u> … <u>except that any party who is already in pay status may continue to receive such payments thereunder</u>", since May 10, 2011.

181. Mr. Cohen confirmed Peter Kijewski retirement income "hold", inexplicably including "Required Minimum Distribution" (RMD) Federal & State tax withholding and tax payments "hold":

**Table 16 July 13, 2015, Mr. Cohen Review TIAA & BNY Pershing RMD "Hold" Letters**

| Date | Days | Charge | Process Notes | Time | Invoice | Peter |
|------|------|--------|---------------|------|---------|-------|
| July 13, 2015, Letters from TIAA-CREF & BNY Pershing | | | | | | |
| 7/13/2015 | 18 | MYC | Letter from TIAA Cref | 0.1 | $47.50 | |
| 7/13/2015 | 18 | MYC | Letter from Pershing | 0.1 | $47.50 | |

182. July 6, 2015, Ms. Angela Shaw, TIAA QDRO Relationship Manager, letter to "Dear Attorney Cohen" NYSCEF No. 413, appended June 19, 2015, Action for a Divorce, NYSCEF No. 1:

a. "This letter is in response to a Notice of Entry of Automatic Orders received on July 1, 2015 pertaining to Mr. Kijewski's TIAA-CREF annuity contracts."

b. "Our records have been updated with this information; however, we cannot be held responsible for any transactions that may have occurred prior to the processing of this order."

c. "TIAA-CREF cannot be held responsible for any transaction executed by the Participant, such as cash withdrawals, transfers, and/or a conversion from a Deferred Annuity contract to an Immediate Annuity contract prior to receipt of a valid QDRO. If there have been account withdrawals or transfers, there may be insufficient funds to meet the terms of the Order. We will implement the Order to the extent of the funds remaining in the contract affected."

d. "I am the divorce case manager concerning the division of your TIAA-CREF annuities. For future inquiries or requests regarding this matter, you may reach me from 9:30 AM to 6:30 PM (ET) at (877) 535-3910, ext. 222236. For all other inquiries regarding TIAA-CREF products and services, please call our National Contact Center at (800) 842-2776."

e. "Our consultants are available Monday through Friday from 8:00 AM to 10:00 PM and Saturdays from 9:00 AM to 6:00 PM (ET)."

183. December 2, 2015, Ms. Dahan letter to "Dear Ms. Dunn" NYSCEF No. 359 confirmed BNY Pershing retirement income "hold", inexplicably including "Required Minimum Distribution" (RMD) Federal & State tax withholding and tax payments "hold":

a. "Upon the commencement of the Action for Divorce against my client, your office sent a letter to Pershing Advisor Solutions, LLC, instructing them of your understanding of the Automatic Orders."

b. "As a result of your instruction, Mr. Kijewski's RMD request at Clear Harbor is currently blocked and will continue to be blocked until they receive a letter from your office acknowledging that you are aware of this request and that you consent to the release of the funds. As you know, the parties will suffer financial consequences should they be unable to obtain this RMD. Therefore, at your earliest convenience, inform Pershing that you are aware of my client's request."

c. "Please copy this office on your correspondence with Pershing. We will hold the RMD funds in escrow during the pendency of this matter."

184. September 20, 2017, Ms. Dunn wire communication to "Dear Ms. Woolsten", forwarded to BNY Pershing, NYSCEF No. 355 reveals Mr. Cohen and Ms. Dunn enjoyed the benefits of "tax-deferred funds in pay status" prolonged "hold":

a. "As you may recall, I represent Marie Kijewski in connection with the matrimonial matter against Peter Kijewski. Mr. Kijewski is currently represented by Jessica Friedrich (copied here). Ms. Friedrich advised that her client has encountered difficulty in receiving his Required Minimum Distribution from Clear Harbor as a result of the hold on the accounts that had been in effect during the pendency of the matrimonial action. Please be advised that to the extent such a hold previously existed, same is no longer required as the parties have resolved their matrimonial litigation and a

judgment of divorce has been issued. Mr. Kijewski should no longer be restrained from accessing his accounts due to the previous hold."

185. September 20, 2017, Ms. Gail Wofford wire communication to "Dear Ms. Dunn" NYSCEF No. 355 about submission for BNY Pershing RMD processing:

    a.  "Thank you for the signed and dated letter of authorization for Mr. Kijewski. This has been submitted for processing."

    b. "In order for the letter of authorization to be processed, the instructions must be on the lawyers' letterhead, a physical signature and date included."

    c. "We cannot accept an electronic signature."

    d. "The LOA may be sent via email to my attention and I will see that it is submitted for processing while Ms. Woolston is out of the office."

186. Invoices and Process Notes to settle various issues "as a result of the hold on the accounts that had been in effect during the pendency of the matrimonial action":

**Table 17 July 26, 2016, Stipulation of Settlement <u>Contract</u> Process Notes**

| | | | Stipulation of Settlement, Judgment of Divorce & Terminating "RMD Hold" | | |
|---|---|---|---|---|---|
| Date | Years | Charge | Process Notes | Time | Invoice |
| 7/26/2016 | 1.1 | LIN | Court appearance for settlement, inquest and allocution | 5.0 | $2,875.00 |
| 7/26/2016 | 1.1 | JAD | Settlement conference in court | 5.0 | N/C |
| 7/26/2016 | 1.1 | JAD | Phone with financial advisor | 0.4 | $114.00 |
| 7/28/2016 | 1.1 | JAD | Phone with client; email with opposing counsel | 0.2 | $57.00 |
| 7/28/2016 | 1.1 | JAD | Phone with client | 0.1 | $28.50 |
| 7/29/2016 | 1.1 | JAD | Phone with client | 0.2 | $57.00 |
| 7/1/2016 | 1.0 | N&D | Monthly Invoice | 0.0 | $5,322.50 |
| 8/2/2016 | 1.1 | JAD | Phone with client | 0.2 | $57.00 |
| 8/5/2016 | 1.1 | JAD | Phone with client | 0.1 | $28.50 |
| 8/12/2016 | 1.1 | JAD | Phone with client; email with opposing counsel and clear harbor | 0.5 | $142.50 |
| 8/30/2016 | 1.2 | JAD | Review JOD and FOF by opposing counsel; Confirm it is in keeping with settlement agreement | 0.5 | $142.50 |
| 8/31/2016 | 1.2 | JAD | Meeting with client | 1.3 | $370.50 |
| 8/1/2016 | 1.1 | N&D | Monthly Invoice | | $747.75 |
| 9/20/2017 | 2.2 | MD | E-Mails with client and attorney regarding retirement accounts | 0.2 | $70.00 |
| 9/20/2017 | 2.2 | MD | Telephone conference with client | 0.2 | $70.00 |
| 9/20/2017 | 2.2 | MD | Dictation of letter to Gail Wofford | 0.2 | $70.00 |
| 9/20/2017 | 2.2 | JF | review client emails; review notes from yesterday; draft affidavit | 0.4 | $120.00 |
| 9/20/2017 | 2.2 | DS | Email exch w/client re retirement accts | 0.2 | $120.00 |
| 9/21/2017 | 2.2 | MD | E-Mails with Clear Harbor | 0.2 | $70.00 |
| 9/21/2017 | 2.2 | MD | Telephone conference with client regarding QDROs | 0.3 | $105.00 |
| 9/21/2017 | 2.2 | MD | Conference with Mitchell Y. Cohen | 0.1 | $35.00 |
| 9/21/2017 | 2.2 | MD | E-Mails with client regarding ███ | 0.1 | $35.00 |
| 9/21/2017 | 2.2 | DS | Reviewed client email re distribution; reviewed email from Clear Harbor re RMD | 0.2 | $120.00 |

| | |
|---|---|
| JAD | Ms. Dahan |
| MS | Ms. Dunn |
| DS | Ms. Stutman |
| JF | Ms. Friedrich |

187. "Settlement, inquest and allocution": July 26, 2016, Hon. John P. Colangelo, J.S.C. No. 2 of 7, Presiding - Transcript of Inquest NYSCEF No. 101: "THE COURT: Plaintiff's motion is withdrawn."

188. "Settlement conference in court": July 26, 2016, Stipulation of Settlement <u>contract</u> NYSCEF No. 100 (45 pages).

189. "**JOD**": September 2, 2016, Ms. Dunn **JUDGMENT OF DIVORCE** NYSCEF No. 102.

190. "**FOF**": September 2, 2016, Ms. Dunn **FINDINGS OF FACT AND CONCLUSIONS OF LAW** NYSCEF No. 103: " THIRTEENTH: There is one

unemancipated child of the marriage. The unemancipated child of the marriage entitled to receive support is: Joseph Kijewski".

191. June 19, 2015, **ACTION FOR A DIVORCE** NYSCEF No. 106:

a. Appended, Peter Kijewski mugshot.

b. Ms. Dunn about "withdrawn": "**CERTIFICATION**: I hereby certify that all of the papers that I have served, filed or submitted to the court in this divorce action are not frivolous as defined in subsection (c) of Section 130-1.1 of the Rules of the Chief Administrator of the Courts."

192. "**QDROs**": September 2, 2016, Ms. Dunn **JUDGMENT OF DIVORCE** NYSCEF No. 102:

a. "**ORDERED AND ADJUDGED** that equitable distribution shall be as set forth in the parties' Stipulation of Settlement; and it is further"

b. "**ORDERED AND ADJUDGED** that pursuant to the Stipulation of Settlement, a separate Qualified Domestic Relations Order shall be issued simultaneously herewith or as soon as practicable;"

193. April 17, 2017, Ms. Dunn **IMMEDIATE ARREST AND IMPRISONMENT <u>ORDER TO SHOW CAUSE</u>** NYSCEF No. 109 due to inadequate **AUTOMATIC ORDERS** retirement income "hold":

a. "**ORDERED,** that pending the hearing and determination of this application, Defendant's retirement assets maintained at TIAA-CREF and Vanguard shall be restrained, and no withdrawals or transfers shall be permitted except for the pending transfer from Defendant's TIAA-CREF IRA account to Defendant's Vanguard IRA account (account number 88045718421);"

194. Ms. Dahan plunging monthly invoice $5,322.50 to $747.75:

a. October 6, 2016, Peter Kijewski wire communication to Ms. Dahan: "The hospital is asking for the final divorce decree.  I need this and the date.  There is a 31 day time limit.  Otherwise it does not go into effect until January.  Is this the date the agreement was filed?"

b. October 9, 2016, Ms. Dahan wire communication to Peter Kijewski: "The judgment of divorce is attached. It was signed 9/2".

c. October 3, 2016, Ms. Dunn and Ms. Kijewski **POST MATRIMONIAL/POST JUDGMENT <u>RETAINER AGREEMENT</u>** NYSCEF No. 124, appended April 25, 2013, Mr. Cohen and Ms. Kijewski **"Statement of Client's Rights and Responsibilities"**

d. Ms. Dahan failed to present to Peter Kijewski **POST MATRIMONIAL/POST JUDGMENT <u>RETAINER AGREEMENT</u>**.

e. March 8, 2017, Ms. Stutman and Peter Kijewski SASL LLP **<u>RETAINER AGREEMENT</u>** NYSCEF No. 169 (18 pages).

f. April 17, 2017, Ms. Dunn **<u>AFFIRMATION IN SUPPORT</u>** NYSCEF No. 111: "4. Affirmant has contacted Defendant's counsel no less than 12 times in 3 months to inquire as to the status of the transfer."

195. September 2, 2016: "**ORDERED AND ADJUDGED** that pursuant to the Stipulation of Settlement, a separate Qualified Domestic Relations Order shall be issued simultaneously herewith or as soon as practicable;":

## Table 18 NYS Supreme Court Applications No. 1, 2 & 3

| NYSCEF | Date Signed | Years | Application | Date Filed | Filer Name | TYPE | Description |
|---|---|---|---|---|---|---|---|
| 399 | 6/25/2015 | 0.0 | 0 | 11/7/2021 | Kijewski, P. | EXHIBIT(S) - 39 (Motion #12) | RMDs |
| 24 | 11/13/2015 | 0.4 | 1 | 11/13/2015 | Dunn, M. | ORDER TO SHOW CAUSE (PROPOSED) (Motion #001) | |
| 42 | 11/13/2015 | 0.4 | 1 | 11/13/2015 | Court User | ORDER TO SHOW CAUSE-SIGNED (Motion #1) | Cross out |
| 59 | 12/9/2015 | 0.5 | 1 | 12/9/2015 | Court User | DECISION + ORDER ON MOTION (Motion #1) | IRC |
| 63 | 4/29/2016 | 0.8 | 2 | 4/29/2016 | Dunn, M. | ORDER TO SHOW CAUSE (PROPOSED) (Motion #002) | |
| 100 | 7/26/2016 | 1.1 | 2 | 9/2/2016 | Dunn, M. | STIPULATION - SETTLEMENT (POST RJI) | |
| 101 | 7/26/2016 | 1.1 | 2 | 9/2/2016 | Dunn, M. | TRANSCRIPT OF PROCEEDINGS | Withdrawn |
| 102 | 9/2/2016 | 1.2 | 2 | 9/2/2016 | Dunn, M. | JUDGMENT OF DIVORCE (PROPOSED) | |
| 107 | 9/2/2016 | 1.2 | 2 | 9/8/2016 | Court User | JUDGMENT OF DIVORCE | |
| 109 | 4/17/2017 | 1.8 | 3 | 4/17/2017 | Dunn, M. | ORDER TO SHOW CAUSE (PROPOSED) (Motion #003) | |
| 132 | 7/17/2017 | 2.1 | 3 | 7/18/2017 | Court User | STIPULATION - SO ORDERED (Motion #003) | |
| 355 | 9/20/2017 | 2.2 | 0 | 11/2/2021 | Kijewski, P. | EXHIBIT(S) - 8 (Motion #12) | RMDs |

196. May 25, 2016, frivolous Application No. 2 award **$0.00**, mandating

"withdrawn":

## Table 19 April 29, 2016, Ms. Dunn Application No. 2 Award Sought

| $ Amount | Description |
|---|---|
| $6,865.60 | "Owed by Defendant to Plaintiff, representing the amount he improperly withheld from his March, 2016 maintenance and child support payment". |
| $8,094.03 | "Owed by Defendant to Plaintiff as and for his 71% share of add-on and extracurricular expenses incurred by Plaintiff for the parties' son, Joseph, from November 13, 2015, through April 27, 2016". |
| $1,733.75 | "Representing one half of the repairs to the marital residence incurred by Plaintiff" |
| $3,250.38 | "Expenses incurred by Plaintiff either for Defendant's benefit or for which Defendant was reimbursed, and which Defendant has failed and refused to pay to Plaintiff" |
| **$19,943.76** | "Updated sum of arrears plus statutory interest in the event that such arrears are not paid to the Plaintiff within 10 days of a Court Order directing such payment". |
| $15,000.00 | "Interim counsel fees to enable her to continue in the prosecution of this matter, with leave to apply for further sums should they become necessary". |
| $3,500.00 | "Counsel fees in the sum of $3,500 for the unnecessary fees incurred in the prosecution of this application". |
| **$38,443.76** | Total award sought |

### f) Ms. Marie F. Kijewski, PhD

197. August 7, 2019, Special Referee Josephine Trovini SO ORDERED,

<u>Application</u> No. 8 NYSCEF No. 306 (37 pages) reveals April 25, 2013, Ms. Kijewski

first attorney encounter:

      a. Ms. Dunn: "Q. And do you recognize your signature on the last page

of that document?"

      b. Ms. Kijewski: "A. Yes. This is the initial. This says 4/25/13. October

3, 2016."

      c. "Signature on the last page of that document": October 3, 2016, Ms.

Dunn and Ms. Kijewski **POST MATRIMONIAL/POST JUDGMENT**

**<u>RETAINER AGREEMENT</u>** NYSCEF No. 124, last page: "Attorney's

signature (Mr. Cohen) 4/25/13" and "Client's signature (Ms. Kijewski)".

198. June 15, 2015, Mr. Cohen and Ms. Kijewski Conference agenda items

NYSCEF No. 356:

      a. March 23, 2016, Ms. Kijewski AUTOMATIC ORDERS violation

property removal NYSCEF No. 448 resulted in Ms. Kijewski inadvertent

failure to remove June 15, 2015, agenda items hardcopy.

      b. June 28, 2016, Peter Kijewski revealed June 15, 2015, agenda items

at the conclusion of a six (6) hour Settlement Conference, attendees: Mr.

Cohen, Ms. Dunn, Mr. Newman and Ms. Dahan.

      c. Includes information about beneficiaries:

        i. Sonia Kijewski Poulin (age 43): "he had an 8-year-old daughter,

who lived with us".

        ii. Paul Kijewski (age 22): "P".

        iii. Joseph Kijewski (age 16) "J".

199. June 15, 2015, Mr. Cohen and Ms. Kijewski Conference agenda items NYSCEF No. 356 expose highly relevant issues concerning June 19, 2015, no-fault Action for a Divorce 60606/2015 NYSCEF No. 1 & 2:

        a. "should I move out with boys without telling him? while he's gone?"

        b. "can I move money into my private account (he has a private account, too, although there's only $3k in it)"

        c. "how much will he have to pay in support/child support"

          i. "now, with J living at home"

          ii. "next year, with J at college but still needing a home"

          iii. "will he have to pay cs for P, who is 22 but not functioning as an adult?"

        d. "volatile situation with P/J"

        e. "plan to buy a boat"

        f. "will J be required to spend any time with him?"

        g. "how will my degree be handled? I had a master's before we married, my doctorate was awarded 4 years after the wedding. (People in my field are paid more with master's, and I can document this with salary surveys.)"

        h. "would it be helpful to compile EZ pass records showing that he is away — 14 hours every weekday, with no vacations or days off?"

        i. "recordings?"

        j. "the house — he bought a house in 1978-9 for $90k, $30k down. We sold the house for $360k in 1994. my name was never on the deed. We bought this house in 1996 for $543k; my name has always been on the deed."

k. "What about retirement accounts?"

    i. "I will have to check what he had as of our wedding date. would that amount be subtracted from joint assets? Would growth of that money be subtracted? what if money was shuffled around, absorbed in other accounts over the years?"

    ii. "Would it be possible to split every account, rather than just equalizing (or whatever division) totals?"

l. "If he claims that he came into the marriage with assets and I came in with liabilities (small amount of student loans), would it help to argue that he had an 8-year-old daughter, who lived with us, and I was the primary caretaker? He never took her to the doctor, dentist, orthodontist. We paid for her to go to college, paid part of her wedding, gave them money for down payment on house."

m. "Will the fact that living 200 miles away from my job had a major negative impact on my career help me get a better financial settlement? My salary is lower, my promotion to assoc prof was delayed (explicitly) for 2 years, because a dean at the medical school didn't want to promote me when I wasn't there all the time. My job security is much worse because I can't get hard money (clinical salary)."

n. "my health (lost sleep, anti-depressants)"

200. June 15, 2015, agenda item: "can I move money into my private account (he has a private account, too, although there's only $3k in it)".

a. March 23, 2016, Ms. Kijewski AUTOMATIC ORDERS violation property removal caused Ms. Kijewski $25,500 receipt discovery.

b. June 12, 2015, teller Brittney witness and advice for Ms. Kijewski

"Please keep your receipt":

**Visual 1 June 12, 2015, Ms. Kijewski $25,500 Payroll Money Transfer to her Private Personal Chase Account**



c. June 15, 2015, Mr. Cohen $10,000 urgent money demand:

**Visual 2 June 12, 2015, $25,010 Ms. Kijewski Payroll Money Countercheck**



d. Table 2 Mr. Cohen urgent money expenses forwarded via Ms. "Marie Foley Kijewski, POB 782, Larchmont, NY 10538, 7/2/2015 Payment from account ($2,121,00)".

201. March 23, 2016, Ms. Dahan wire communication to Peter Kijewski NYSCEF No. 448:

a. "Peter, please see the attachments and let's discuss tomorrow. They are insane."

b. Two (2) attachments Ms. Dunn about **AUTOMATIC ORDERS** property removal violation:

i. "Attorney 2016-03-23 re property , moving out, sale of home & repairs.pdf"

ii. "Attorney 2016-03-23 re noncompliance with interim support order.pdf"

c. Ms. Kijewski document discovery located in container "HOLD FOR JOSEPH".

202. June 15, 2015, Mr. Cohen and Ms. Kijewski **RETAINER**

**AGREEMENT** NYSCEF No. 18 (**bold** highlight in original text):

    a. "In order for us to begin our representation the client has agreed to

pay and the firm has agreed to accept a retainer payment of $10,000 -."

    b. **"The client has been specifically advised, and the client**

**understands, that the firm is not providing any tax or financial**

**advice and that the client understands that he/she should obtain tax**

**and/or financial advice from a competent professional."**

    c. **"The client acknowledges that he or she has read this**

**Agreement in its entirety, has had full opportunity to consider its**

**terms, and has had full and satisfactory explanation of same, and**

**fully understands its terms, and agrees to such terms."**

203. **Property Violation**: June 15, 2015 - June 24, 2015, Ms. Kijewski

located, printed and handed Mr. Cohen the entirety of Peter Kijewski unauthorized

retirement plans and IRAs statements, retirement asset custodians TIAA,

Vanguard Group, Inc., BNY Pershing and Lincon Financial, accounts <u>owner</u> Peter

Kijewski:

    a. Ms. Kijewski included Peter Kijewski separate Vanguard

investment account statement.

204. <u>Table 10</u> Mr. Cohen Process Notes and Invoice reveal Mr. Cohen in

possession of Peter Kijewski property and potential compliance with regulatory

requirements.

205. Regulatory Requirements:

    a. Ms. Kijewski, account <u>owner</u> of her retirement plans and IRAs.

b. Mr. Kijewski, account <u>owner</u> of his retirement plans and IRAs.

c. TIAA, Vanguard Group, Inc. and/or BNY Pershing receipt of a valid $493,192 Domestic Relations Order (DRO) may result assignment of Peter Kijewski, account <u>owner</u> $493,192 retirement plans & IRAs to Ms. Kijewski, account <u>owner</u> $493,192 retirement plans & IRAs.

d. Attorneys may include "Required Minimum Distribution" (RMD) disbursements retirement income when calculating minor (16) support payments until June 30, 2017, including reduction due to Ms. Kijewski minor (16) Supplemental Security Income (SSI).

e. Attorneys understand **AUTOMATIC ORDERS**: "(2) Neither party shall transfer, encumber, assign, remove, withdraw or in any way dispose of <u>any tax deferred funds</u>, stocks or other assets held in any individual retirement accounts, 401K accounts, profit sharing plans, Keogh accounts, or any other pension or retirement account, and the parties shall further refrain from applying for or requesting the payment of retirement benefits or annuity payments of any kind, without the consent of the other party in writing, or upon further order of the court<u>, except that any party who is already in pay status may continue to receive such payments thereunder</u>."

206. Mr. Cohen and Ms. Kijewski planned an alternate course of action:

**Table 20 June 15, 2015 – July 13, 2013, Mr. Cohen & Ms. Kijewski Achievement RMD Disbursement "Hold"**

| | | | Mr. Cohen & Ms. Kijewski Plan: Peter Kijewski Retirement Income "Hold". | | | |
|---|---|---|---|---|---|---|
| Date | Days | Charge | Process Notes | Time | Invoice | Peter |
| 4/25/2013 | -791 | MYC | Agreement "Attorney's signature" + "Client's signature" | ? | ? | |
| 6/15/2015 | -10 | MYC | Conference with Client | 1.5 | $712.50 | Pro Se |
| 6/17/2015 | -8 | MYC | Conference with Martin T. Johnson; telephone conference with client | 0.1 | $47.50 | Pro Se |
| 6/18/2015 | -7 | MYC | Telephone conference with client | 0.1 | $47.50 | Pro Se |
| 6/19/2015 | -6 | MYC | Conference with Client | 0.3 | $142.50 | Pro Se |
| 6/24/2015 | -1 | MYC | Telephone conference with client | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Telephone conference with client | 0.2 | $95.00 | Pro Se |
| 6/26/2015 | 1 | MYC | Telephone conference with client | 0.5 | $237.50 | Pro Se |
| 7/13/2015 | 18 | MYC | Letter from TIAA Cref | 0.1 | $47.50 | |
| 7/13/2015 | 18 | MYC | Letter from Pershing | 0.1 | $47.50 | |

207. July 6, 2015, Angela Shaw, TIAA-CREF QDRO Relationship Manager, letter to "Dear Attorney Cohen" NYSCEF No. 358 confirms Peter Kijewski retirement income "hold" using AUTOMATIC ORDERS enforcement.

208. November 13, 2015, Ms. Kijewski **AFFIDAVIT IN SUPPORT** NYSCEF No. 25 reveals Ms. Kijewski grievous violation of trust concerning family members Peter, Paul and Joseph: "3. I commenced this action for divorce on June 19, 2015. Until that time, throughout our marriage, Defendant and I had both deposited our income into one of our joint checking accounts. From those accounts, I was always responsible for paying our household and family bills and managing our budget. Defendant was not involved in this process beyond depositing the entirety of his paycheck into our account. However, since shortly after he was served with the Summons and Complaint, Defendant has stopped depositing his paycheck into the joint account. He has failed to contribute his income in an appropriate way and Defendant has now left our family in the position of being unable to pay for necessary expenses."

209. November 13, 2015, Ms. Dunn **MEMORANDUM OF LAW** NYSCEF No. 40 precedent about Peter Kijewski retirement income "hold": "Courts have

consistently held that a party should not be placed under economic duress during the pendency of a matrimonial action and should be permitted to continue the standard of living commensurate with that enjoyed prior to the commencement of the action and the marital difficulties."

210. November 16, 2015, Ms. Dunn letter to "Dear Ms. Dahan" NYSCEF No. 415 reveals Ms. Dunn failure to memorialize June 25, 2015, AUTOMATIC ORDERS "Required Minimum Distribution" (RMD) disbursements "hold": "Finally, as addressed in our application before the Court and as discussed in our recent correspondence, your client is obligated to withdraw the sum of $48,389.49 form (sic) one of his retirement accounts as and for his Required Minimum Distribution for 2015. Same must be requested imminently or it may not be processed within this calendar year. Such delay would subject the parties to a penalty of up to 50%, which would be a wholly unnecessary dissipation of marital funds. Ms. Kijewski (as she has historically done) has calculated your client's RMD, and a copy of these calculations is attached. Also attached is the RMD distribution request form for your client's Clear Harbor account (account number J4N-301918). Please confirm that your client will sign and submit this form to Clear Harbor as soon as possible in order to ensure that the RMD is processed within this calendar year."

211. December 2, 2015, Ms. Kijewski **AFFIDAVIT IN REPLY** NYSCEF No. 48 about "will he have to pay cs for P, who is 22 but not functioning as an adult?": "While I understand that certain of Defendant's allegations are entirely irrelevant to the issues that this Court must decide, I believe it is necessary for the Court to have an accurate understanding of these issues. Defendant has alleged that our older son, Paul, has "physically and violently confronted" him on "numerous

occasions", and claims that I refused to call for help during the last confrontation. I was home for the incident he (falsely) describes. I was upstairs and Paul and the Defendant were in the kitchen. I heard the Defendant speaking to him. I couldn't hear the words, but the tone of voice was extremely nasty. I ran downstairs and when I entered the kitchen, Paul was standing near the Defendant, who was at the stove, but not touching him. The Defendant told me to call 911. I told Paul to go upstairs, and he immediately left the kitchen and went to his bedroom. The Defendant was furious, and he asked me why I hadn't called 911. I said that there was no need to. He kept castigating me for not calling over the next few days. On one occasion, he said that he was lying on the floor and I wouldn't call 911. He was not lying on the floor; he was standing. I have not previously heard a claim that Paul punched him or held his hands behind his back. Paul states that he never touched the Defendant and this is consistent with what I saw. I don't know what the Defendant said to Paul, and Paul won't tell me, but it clearly hurt him. Defendant is not an innocent victim, but rather repeatedly instigates confrontations with Paul. Paul avoids Defendant; whenever he is home, Paul remains in his bedroom."

212. March 23, 2016, Ms. Dahan wire communication to Peter Kijewski NYSCEF 448 concerning "should I move out with boys without telling him? while he's gone?", Ms. Dunn attachments:

a. "First, with respect to personal property, please be advised that my client has removed the items set forth on her list from the marital residence today, except for a couch, lamps and a mirror from the living room. Your client's objections to the items she set forth were largely baseless, including

objecting to the removal of my client's separate property or personal documents. Further, your client has continued to instigate confrontations with the parties' son, Paul, which have created an intolerable situation in the marital residence and required my client and the boys to move out as soon as possible. To be clear, the items remaining in the marital residence are not to be disposed of in any way by your client. To the extent that there are any disputes as to the ultimate resolution of personal property, each side may certainly reserve all rights to any property in the other's possession. As I noted previously, my client is leaving some items in the marital residence which she will ultimately like to possess, and this issue can be fully resolved upon the conclusion of this matter. It is certainly in everyone's best interest that the parties physically separate at this time."

b. "As previously discussed and agreed upon, my client will need access to the home to oversee any further repairs and/or to meet with realtors or prepare the home for any showings to prospective buyers. In addition, Joseph's piano will be moved tomorrow, Thursday, as same was unable to be moved today. I assume your client will not interfere with the removal of the piano as Joseph will need it to practice for an important performance in April. Finally, my client's work materials were not fully moved today, so she will remove them at a later time."

213. March 23, 2016, Ms. Dahan wire communication to Peter Kijewski NYSCEF No. 448, attachment AUTOMATIC ORDERS property removal violation:

a. "I am writing in response to your correspondence of March 8th and March 10th. Thank you for forwarding your proposal to settle this matter.

Unfortunately, we will not be able to respond to that proposal as there are pressing issues which must first be resolved, specifically your client's failure and refusal to comply with the terms of the interim support order and his obstructionist tactics with regard to the sale of the parties' home and the division of personal property. It appears, based on your client's position as set forth in your letter of March 10th, that we will need the court's intervention on these matters."

    b. "Thank you for forwarding your proposal to settle this matter", copy of altered March 10, 2016, proposal appended March 23, 2016, NYSCEF No. 448:

        i. April 9, 2018, **WITHOUT PREJUDICE FOR SETTLEMENT PURPOSES ONLY NOT TO BE USED IN ANY COURT PROCEEDING** NYSCEF No. 189 (51 pages).

214. **Peter Kijewski COMPLAINT**: Ms. Kijewski has been an active participant litigating Peter Kijewski recurring retirement income "hold" by means of providing Ms. Dunn financial resources for her recurring Court <u>Applications</u>, including e-filing an unprecedented volume of Ms. Kijewski obfuscating NYSCEF supporting papers content:

    a. April 10, 2018, Defendant Ms. Kijewski **<u>AFFIDAVIT IN REPLY</u>** NYSCEF No. 193, filed April 11, 2018, by Ms. Dunn, indisputably exposes Peter Kijewski needlessly using his financial assets to pay for his expenses: "9. It is respectfully submitted that, due to Defendant's actions, the impact of the various account changes (other than the obvious reductions in value) remains unknown at this time. Accordingly, the restraining order on these

accounts must stay in effect until the full impact can be determined, ideally by an Order from this Court directing Defendant in provide an authorization so that I and my attorney can speak to TIAA directly and receive complete information on these changes as well as on any discussions concerning them. Defendant will not be harmed by extending the restraining order as he received substantial RMDs in December 2017, he just sold the former marital residence, and he recently received an inheritance."

    b. "Defendant will ~~not~~ be harmed by extending the restraining order" since Peter Kijewski was coerced to use his financial assets to pay for living expenses, minor (16) support, exorbitant legal fees and taxes:

        i. "he received substantial RMDs in December 2017"

        ii. "he just sold the former marital residence, and"

        iii. "he recently received an inheritance."

215. "Impact of the various account changes" due to hospital mergers never impacted assigning account <u>owner</u> Peter Kijewski $468,997 retirement interests to Ms. Kijewski, account <u>owner</u> $468,997 retirement interests, using a valid $468,997 Domestic Relations Order (DRO) submitted to TIAA, Vanguard and/or BNY Pershing.

216. "Restraining order on these accounts" caused tax years 2015 - 2022 "Required Minimum Distribution" (RMD) **$194,980** 50% penalties.

217. Ms. Kijewski failed to reference the Internal Revenue Code about <u>Individual </u>Retirement Accounts (IRA) and account <u>owner</u> 403(b) & 457(b) retirement plans:

a. <u>Retirement plan and IRA required minimum distributions FAQs |</u>
<u>Internal Revenue Service</u> comprehensive "the Internal Revenue Code" rules
& regulations written so "people ca̶n̶n̶o̶t̶ fully protect their rights, liberty and
property".

b. "Employee <u>Retirement Income Security</u> Act of 1974" (ERISA) defines
an orderly process to assign account <u>owner</u> Peter Kijewski $468,997
retirement interests to Ms. Kijewski, account <u>owner</u> $468,997 retirement
interests, using a valid $468,997 Domestic Relations Order (DRO) submitted
to TIAA, Vanguard and/or BNY Pershing.

218. **Justification**: Defendant Ms. Kijewski unlawful actions concerning the
Internal Revenue Code and "Employee Retirement Income Security Act of 1974"
(ERISA) substantially exceeds requirements for Ms. Kijewski inclusion in Peter
Kijewski COMPLAINT!

## VIII. Retirement Asset Custodians Fiduciary Responsibilities

219. <u>EXHIBIT 22</u> July 31, 2023, TIAA Client Relationship Summary, Section **"Fiduciary Acknowledgment under ERISA and Internal Revenue Code"**, also applies for Vanguard and BNY Pershing, includes specific terms all retirees who saved for retirement, and employees saving for retirement, judge to be of the highest importance:

    a. "Recommendations to enroll in an IRA, rollover/transfer to or from a Plan or IRA, or to begin lifetime income are "Covered Recommendations." When we make Covered Recommendations to you, we are <u>fiduciaries</u> within the meaning of Title I of the <u>Employee Retirement Income Security Act</u> <u>("ERISA")</u> and/or the <u>Internal Revenue Code</u>, as applicable, which are laws governing retirement accounts. The way we make money creates some conflicts with your interests when we make Covered Recommendations, so we operate under a special rule that requires us to <u>act in your best interest and not put our interest ahead of yours</u>. Certain Plans (like governmental plans) are not covered by ERISA; however, our internal policies and procedures require us to adhere to the same <u>fiduciary standard</u> when we provide Covered Recommendations on non-ERISA Plan assets."

220. January 15, 2025, William Swenson TIAA Advisor Assignment letter, replacing Paul Cowie, TIAA CFP, Portfolio Advisor WMA:

    a. **"SUPERVISION"**

    b. "William is supervised by Sr Dir, Wealth Management Jack Reetz who can be contacted at 207-361-7782."

c. "We have policies and procedures in place for the review and supervision of our investment advisory programs and services. Such policies are designed to comply with the requirements of the Investment Advisers Act of 1940, the <u>Employee Retirement Income Security Act of 1974</u> and other applicable rules and regulations."

221. [What Kind of Trust Is Right for Me | TIAA](#):

a. "Protect assets from creditor's claims."

b. "Establish a tax-advantaged charitable gift, structured gifts to charities, or other philanthropic activities."

c. "Avoid the potential costs and delays associated with probate and manage your estate tax exposure as well as any potential estate taxes."

d. "Provide an orderly means of managing your financial affairs in case you become incapacitated, or upon death."

e. "Ensure that your assets are managed for the benefit of your heirs, according to your wishes."

222. June 22, 2022, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Dr. Kijewski":

a. "**Fiduciary Responsibilities**"

b. "TIAA has completed a thorough review of Paul Cowie's interactions with you and your accounts. Our review indicates that Paul has met all regulatory requirements applicable to TIAA and to Paul as your assigned Wealth Management Advisor."

223. October 13, 2023, Ms. Carol S. Hamilton, Regional Director,

**EMPLOYEE BENEFITS SECURITY ADMINISTRATION** letter to "Dear Mr.

Kijewski", enclosed:

    a. **MSKCC Retirement Savings Plan (RSP) Summary Plan

Description**:

        i. "**TIAA SELF-DIRECTED BROKERAGE ACCOUNT** Keep in

mind that the MSK Retirement Plans Investment Committee, as Plan

fiduciary, selects and monitors only the Plan's core investment options.

No Plan fiduciary selects or monitors investments available through

the TIAA Self-Directed Brokerage Account. You are solely responsible

for your selection of investments within the TIAA Self-Directed

Brokerage Account."

        ii. "DISTRIBUTIONS WHEN YOU LEAVE MSK Generally, you

will be required to take a distribution by the later of: (a) the date you

terminate employment; or (b) the April 1 following (1) the year in

which you reach age 70$^1$/$_2$; or (2) if you turned 70$^1$/$_2$ after December 31,

2019, the year in which you reach age 72."

224. January 31, 2018, "TIAA brokerage services, A division of TIAA

Individual & Institutional Services, LLC, Member FINRA/SIPC, **TIAA

PORTFOLIO ADVISOR** INVESTMENT ADVISORY PROGRAM, *Individual

Retirement Account Statement*, Account Number A57-649187, Clearing through

Pershing LLC, a wholly owned subsidiary of The Bank of New York Mellon

Corporation (BNY Mellon), Pershing LLC, member FINRA, NYSE, SIPC",

applicable since May 10, 2011:

a. **"Disclaimers and Other Important Information Regarding Your Required Minimum Distribution Summary** According to our records, you are required under federal tax law to take an annual minimum distribution from your retirement account. Required minimum distributions (RMDs) usually begin in the year you reach the age of 70 1/2 and is calculated by dividing your year-end fair market value by a factor determined by the Internal Revenue Service (IRS). For the year you turn 70 1/2, the first RMD payment can be delayed until April 1st of the year following the year in which you turn 70 1/2. For all subsequent years, including the year in which the first RMD was paid by April 1st, you must take the RMD by December 31st of the year. Please verify this calculation with your tax professional, as there may be other information that could impact your RMD. If you do not take enough to satisfy the requirement, the IRS may impose a 50% excise tax on the shortfall. To start your distributions, contact your Financial Institution"

225. TIAA fiduciaries in various roles managing Peter Kijewski retirement assets:

a. PAUL BRIAN COWIE - Broker at TIAA-CREF INDIVIDUAL & INSTITUTIONAL SERVICES, LLC.

b. ELIZABETH JENNIFER PERRY - Broker at TIAA-CREF INDIVIDUAL & INSTITUTIONAL SERVICES, LLC.

c. VINCENT EUGENE FORD - Broker at TIAA-CREF INDIVIDUAL & INSTITUTIONAL SERVICES, LLC.

d. ARACELY VICKY RAMIREZ - BrokerCheck.

e. Angela Shaw - BrokerCheck.

   f. VONZELL ZEMBLIST SIMMONS - Broker at TIAA-CREF.

INDIVIDUAL & INSTITUTIONAL SERVICES, LLC.

   g. WILLIAM TODD SWENSON - Broker at TIAA-CREF INDIVIDUAL

& INSTITUTIONAL SERVICES, LLC.

## IX. Unprecedented TIAA, Vanguard & BNY Pershing IRS Internal Revenue Code & DOL "Employee Retirement Income Security Act of 1974" (ERISA) Violations

226. **Inexplicable Violations**: This action arises from DEFENDANTS'

recurring unprecedented violations, initiated June 25, 2015:

a. Department of Labor "Employee Retirement Income Security Act of

1974" (ERISA) concerning Plaintiff Peter Kijewski, account owner MSKCC,

Harvard University, NEDH & BWH 403(b) & 457(b) retirement plans,

b. IRS, Department of the Treasury, Internal Revenue Code concerning

Plaintiff Peter Kijewski, account owner MSKCC, Harvard University, NEDH

& BWH 403(b) & 457(b) retirement plans and IRAs,

c. July 26, 2016, Stipulation of Settlement contract NYSCEF[1] No. 100

concerning Ms. Dunn "Investment Experience" financial plan:

i. June 19, 2015 - December 11, 2015, TIAA, Vanguard and/or BNY

Pershing receipt of a valid $468,997 Domestic Relations Order (DRO)

may result in assignment of Plaintiff Peter Kijewski, account owner

$468,997 retirement plans & IRAs to DEFENDANT Ms. Kijewski,

account owner $468,997 retirement plans & IRAs,

ii. October 20, 2016, Ms. Dunn successfully initiated and achieved

her "Investment Experience" financial plan resulting May 23, 2023,

"The parties further acknowledge that the trading price of

VTSAX at the close of the market on 5/14/23 was $99.83

per share.  As a result, Plaintiff was entitled to a total of

$1,027,035.27. The shortfall remaining due and owing

==Plaintiff is therefore $602,576.59==" NYSCEF No. 548 excessive

Domestic Relation Orders (DRO), Plaintiff Peter Kijewski account

<u>owner</u> TIAA & Vanguard IRAs.

    d. June 25, 2015, AUTOMATIC ORDERS (<u>underline</u> in original text):

September 1, 2009, amendment "(2) Neither party shall transfer, encumber,

assign, remove, withdraw or in any way dispose of any tax deferred funds … <u>,</u>

<u>except that any party who is already in pay status may continue to receive</u>

<u>such payments thereunder.</u>": Plaintiff Peter Kijewski tax-deferred IRAs

"Required Minimum Distribution" (RMD) disbursements "in pay status" since

May 10, 2011.

    227. <u>COUNT I:</u> Reveals comprehensive specific information about TIAA,

Vanguard & BNY Pershing prolonged recurring enforcement actions, causing

recurring Plaintiff Peter Kijewski 403(b) & 457(b) retirement plans & IRAs **$0.00**

disbursements retirement income, verifiable by TIAA, Vanguard and BNY

Pershing.

    228. **Missing DRO**: This action arises from DEFENDANT TIAA recurring

preventable enforcement actions, considering to date of the present COMPLAINT,

TIAA never received any Plaintiff Peter Kijewski, account <u>owner</u> 403(b) & 457(b)

retirement plans and IRAs, Domestic Relations Order (DRO), since June 19, 2015,

no-fault Action for a Divorce NYSCEF No. 1 & 2:

    a. December 9, 2015, Hon. Paul I. Marx, J.S.C. No. 1 or 7, PENDENTE

LITE DECISION AND ORDER NYSCEF No. 59: "On June 19, 2015, Plaintiff

filed the instant action for dissolution of the parties' marriage based upon

irretrievable breakdown of the parties' relationship for at least six months,

pursuant to Domestic Relations Law ("DRL") Section 170(7)" NYSCEF No. 1 & 2."

229. **Federal Tax Penalties**: TIAA, Vanguard & BNY Pershing enforced recurring 403(b) & 457(b) retirement plans and IRAs, account <u>owner</u> Plaintiff Peter Kijewski, $0.00 retirement income disbursements, inexplicably including $0.00 "Required Minimum Distribution" (RMD) disbursements, initiated in response to June 25, 2015, Mr. Cohen AUTOMATIC ORDERS FAX wire communication, causing preventable tax penalties:

a. IRS Internal Revenue Code: "Retirement plan <u>participants</u> and IRA <u>owners</u>, including <u>owners</u> of SEP IRAs and SIMPLE IRAs, are responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

b. December 9, 2015, Hon. Paul I. Marx, J.S.C. No 1 of 7, PENDENTE LITE DECISION AND ORDER NYSCEF No. 59: "***Required Minimum Distribution*** Plaintiff asks the Court to direct Defendant to distribute 50% of his Required Minimum Distribution to her. Plaintiff explains that Defendant is required to withdraw a certain amount from his retirement accounts each year or he will be charged a 50% penalty."

c. All attorneys and parties understand **$0.00** stiff RMD 50% penalties protect retirement accounts <u>owner</u> Peter Kijewski retirement income.

### A. TIAA Concealed Evidence: TIAA Portfolio Advisor A57-649187 <u>Individual</u> Retirement Account, Prior <u>Owner</u> Peter Kijewski

230. **Account Statements Deletion**: August 22, 2023, or later, TIAA deleted all TIAA Portfolio Advisor A57-649187 <u>Individual</u> Retirement Account (IRA)

Statements, prior account <u>owner</u> Peter Kijewski, from the TIAA archive, accessible by Peter Kijewski with username/password.

231. **<u>IRS</u>**: Emphasis <u>individual</u>, <u>owner</u> and <u>participant</u> due to IRS Internal Revenue Code, relevant for Plaintiff Peter Kijewski since May 10, 2011: "Retirement plan <u>participants</u> and <u>Individual</u> Retirement Account (IRA) <u>owners</u>, including <u>owners</u> of SEP <u>Individual</u> Retirement Accounts (IRAs) and SIMPLE <u>Individual</u> Retirement Accounts (IRAs), are responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

232. **<u>Jail</u>**: July 24, 2023, **TIAA DOMESTIC RELATIONS ORDER** NYSCEF No. 553: July 24, 2023, Peter Kijewski coerced signature: "Defendant shall be committed to the custody of the Westchester County Commissioner of Corrections to be incarcerated at the Westchester County Jail for a period to be determined by the Court".

233. **<u>Flash Drive</u>**: TIAA Portfolio Advisor A57-649187 <u>Individual</u> Retirement Account (IRA) downloaded statements available on flash drive, important for tracking the timeline of recurring lawyers needless RMD tax penalties disputes.

### B. Timeline: Recurring Retirement Income Disbursement "Hold"

234. <u>Visual 3</u> A visual presentation has been generated to facilitate understanding the scope of TIAA, Vanguard & BNY Pershing enforcement actions against Plaintiff Peter Kijewski and tracking the abnormal timeline of Peter Kijewski 403(b) & 457(b) retirement plans and IRAs.

### C. TIAA Verification: March 6, 2018 - December 26, 2021, TIAA Retirement Plans & IRA "Required Minimum Distribution" (RMD) Disbursement "Hold"

235. EXHIBIT includes:

a. October 13, 2023, **EMPLOYEE BENEFITS SECURITY ADMINISTRATION** letter to Peter Kijewski.

b. September 28, 2023, Robert S. Newman, COVINGTON, letter to Employee Benefits Security Administration.

c. September 26, 2023, TIAA letter to Plan Administrator, MSKCC retirement plans sponsor, including "Required Minimum Distribution" (RMD) disbursements.

d. **MSKCC Retirement Savings Plan (RSP) Summary Plan Description**:

i. "**TIAA SELF-DIRECTED BROKERAGE ACCOUNT** Keep in mind that the MSK Retirement Plans Investment Committee, as Plan fiduciary, selects and monitors only the Plan's core investment options. No Plan fiduciary selects or monitors investments available through the TIAA Self-Directed Brokerage Account. You are solely responsible for your selection of investments within the TIAA Self-Directed Brokerage Account."

ii. "DISTRIBUTIONS WHEN YOU LEAVE MSK Generally, you will be required to take a distribution by the later of: (a) the date you terminate employment; or (b) the April 1 following (1) the year in which you reach age 70$\frac{1}{2}$; or (2) if you turned 70$\frac{1}{2}$ after December 31, 2019, the year in which you reach age 72."

236. Table 9 TIAA verification "Required Minimum Distribution" RMD disbursement "hold", exposing 3.8 years $0.00 retirement income disbursements,

tax year 2021 balloon disbursement and in arrears Federal and State tax

withholding.

## X. Plaintiff Peter Kijewski Preventable Unprecedented Financial Asset Loss

237. Anyone would certainly judge, without hesitation, retirement asset custodians TIAA, Vanguard & BNY Pershing recurring retirement income disbursement "hold" causes catastrophic financial asset loss, considering multi-year needless retirement income restrictions enforcement:

### Table 21 Plaintiff Peter Kijewski TIAA, Vanguard & BNY Pershing Retirement Account Owner Financial Asset Loss

| Date | Peter K. Kijewski Financial Assets | Amount | Damage Certification |
|------|-----|-----|-----|
|  | Damage: Ms. Dunn **Failure** to Submit **$493,192** or **$468,997** Delayed Domestic Relations Order (DRO) | | |
|  | Peter Kijewski coerced to use financial assets to pay expenses due to recurring enforcement **$0.00** retirement income | | |
|  | Excluded: "Investment Experience" loss, excess tax payments, Medicare deductions, credit card interest, etc. | | |
| 3/31/2017 | TIAA Bank cash loss, adjusted | ($292,153) | TIAA Law & Compliance |
| 5/31/2018 | TIAA Portfolio Advisor investment cash loss | ($343,182) | TIAA Law & Compliance |
| 6/30/2017 | Payroll deficit | ($327,159) | Citibank account statements |
| 8/8/2016 | Vanguard investment liquidation | ($33,876) | Vanguard Office of the General Counsel |
| 5/5/2020 | Lincoln Financial 403(b) liquidation | ($26,684) | Lincoln Financial account statement |
| 8/26/2020 | Lincoln Financial 403(b) liquidation | ($21,556) | Lincoln Financial account statement |
| 6/19/2015 | Marital Roth IRA share | ($41,240) | Marie F. Kijewski |
| 12/11/2017 | Tax year 2015 RMD | ($48,389) | BNY Pershing Legal Department |
| 4/15/2016 | Emergency unsecured loan to pay support | ($50,000) | May 13, 2016, NYSCEF No. 82 |
| 11/30/2022 | Maureen A. Dunn, Esq. legal fee | ($10,000) | Maureen A. Dunn, Esq. |
| 5/17/2023 | Child support interest | ($12,355) | Maureen A. Dunn, Esq. |
| 5/17/2023 | Money Judgment | ($78,035) | Maureen A. Dunn, Esq. |
| 6/14/2023 | Maureen A. Dunn, Esq. legal fee | ($10,000) | Maureen A. Dunn, Esq. |
| 7/25/2023 | Maureen A. Dunn, Esq. legal fee | ($1,500) | Maureen A. Dunn, Esq. |

**Preventable verifiable cash dissipation   ($1,296,129)** TIAA, Vanguard and BNY Pershing

|  | **Lawyer Tax Fraud** | | |
|------|-----|-----|-----|
|  | IRS: "Failure to withhold", "failure to pay tax", "failure to follow the tax laws" and "a false or alter document". | | |
|  | TIAA deleted all TIAA IRA account statements exposing omitted RMD illegal "Investment Experience". | | |
|  | Assigned to Marie F. Kijewski: Retirement interests incorporating omitted RMD illegal "Investment Experience". | | |
| 12/31/2022 | TIAA & Vanguard stiff RMD 50% penalties | ($194,980) | Tax years 2015 - 2022 IRS tax returns |
| 5/15/2023 | Vanguard IRA assigned to Marie F. Kijewski | ($424,459) | Vanguard Office of the General Counsel |
| 7/24/2023 | TIAA IRA assigned to Marie F. Kijewski | ($498,349) | TIAA Law & Compliance |

6/25/2015 Financial asset loss **$0.00** due to assignment of retirement interests to Ms. Kijewski.          **$493,192** DRO submission to TIAA, Vanguard and/or BNY Pershing

238. Plaintiff Peter Kijewski was coerced to use his TIAA Portfolio Advisor investment account, TIAA Bank financial assets, Vanguard investment account and MSKCC payroll income to pay for living expenses, minor (16) support and taxes, starting June 25, 2015.

239. April 10, 2018, DEFENDANT Ms. Kijewski **AFFIDAVIT IN REPLY** NYSCEF No. 193, filed April 11, 2018, by Ms. Dunn, indisputably exposes Peter Kijewski needlessly using his financial assets to pay for his expenses: "9. It is respectfully submitted that, due to Defendant's actions, the impact of the various account changes (other than the obvious reductions in value) remains unknown at this time. Accordingly, the restraining order on these accounts must stay in effect until the full impact can be determined, ideally by an Order from this Court directing Defendant in provide an authorization so that I and my attorney can speak to TIAA directly and receive complete information on these changes as well as on any discussions concerning them. Defendant will not be harmed by extending the restraining order as he received substantial RMDs in December 2017, he just sold the former marital residence, and he recently received an inheritance."

240. Paul Cowie, TIAA CFP, Portfolio Advisor WMA, created Portfolio Advisor A57-649187 Individual Retirement Account (IRA) and consolidated TIAA Traditional IRA, Vanguard IRA and BNY Pershing IRA into TIAA Portfolio Advisor IRA, substantially contributing to account owner Peter Kijewski financial asset loss.

241. Anyone would certainly judge, without hesitation, retirement asset custodian massive IRA consolidation into a single IRA account mandates Risk & Compliance Management processes to comply with custodian fiduciary responsibilities.

242. Paul Cowie, TIAA CFP, Portfolio Advisor WMA, 2021 Q3 Quarterly

Performance Report NYSCEF No. 372:

   a. Page 4 of 14, illustrates <u>tracking</u> the timeline of IRA consolidation.

   b. Page 7 of 14, illustrates <u>tracking</u> the timeline of TIAA Portfolio

Advisor investment account indisputable prolonged financial asset loss.

   c. Page 9 of 14, table visualizes financial asset loss "pain points".

   d. <u>July 13, 2021, TIAA-CREF Individual & Institutional Services, LLC</u>

(17 pages) explains "pain points".

   e. Paul Cowie Performance Report includes seventy (70) occurrences of

"risk".

   f. Paul Cowie Performance Report includes zero (0) occurrences of

"compliance".

## XI. Plan Administrator, MSKCC 403(b) & 457(b) Retirement Plans Sponsor

243. October 5, 2021, Plaintiff Peter Kijewski wrote and mailed his complaint about $0.00 "Required Minimum Distribution" (RMD) disbursements since March 6, 2018, to Memorial Sloan Kettering Cancer Center (MSKCC), Harvard University, New England Deaconess Hospital (NEDH) and Brigham and Women's Hospital (BWH) 403(b) & 457(b) retirement plans sponsors.

244. October 26, 2021, MSKCC Plan Administrator 403(b) & 457(b) retirement plans sponsor, discharged her "fiduciary responsibilities prudently and solely in the interest of the plan's participants and beneficiaries" "P", "J" & "8-year-old daughter", mandating TIAA compliance: "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)."

245. Robert Newman | Covington & Burling LLP, representing Memorial Sloan Kettering Cancer Center, counseled Plan Administrator, MSKCC 403(b) & 457(b) retirement plans.

246. June 15, 2015, Mr. Cohen and Ms. Kijewski conference agenda items NYSCEF No. 356 include information about beneficiaries "P", "J" & "8-year-old daughter", division of retirement plans, mother of "P" & "J" AUTOMATIC ORDERS flight risk and "J" college tuition.

247. **TIAA Admission of Federal Law Compliance Failure**: October 26, 2021, TIAA Law & Compliance lawyer wrote and filed in TIAA archive:



**Elizabeth Perry**
Sr. Customer Resolution Manager
Customer Care Team
**T** 800 842-2733 Ext 242873
**F** 800 914 -8922
eperry@tiaa.org

October 26, 2021

Johnson & Cohen, LLP
Attorneys at Law
Attn: Maureen A. Dunn
701 Westchester Ave., Suite 208W
White Plains, NY 10604

Greenbaum, Rowe, Smith & Davis LLP
Attn: Thomas C. Senter
99 Wood Avenue South
Iselin, NJ 08830

RE: Dr. Kijewski's TIAA Retirement Accounts held in:

> Brigham and Women's Hospital Professional Staff Retirement Plan
> New England Deaconess Hospital Discontinued
> Retirement Income Plan for Teaching Faculty of Harvard University
> MSKCC Retirement Savings Plan (RSP) Base Plus Match Plan
> MSKCC Retirement Savings Plan (RSP) Voluntary Plan
> MSKCC Key Employee Supplemental Savings Plan
> IRA FBO Peter K Kijewski

Dear Ms. Dunn & Mr. Senter:

TIAA has received multiple communications relating to a potential qualified domestic relations order (DRO) involving the subject retirement plan accounts record kept by TIAA. Pursuant to those communications, TIAA has maintained a disbursement hold on Dr. Kijewski's accounts since 2018, pending the receipt of a domestic relations order (DRO). However, TIAA has never received a DRO in this matter.

Because TIAA has not received a DRO, we will release the disbursement hold on Dr. Kijewski's accounts if TIAA does not receive a DRO within 30 days of the date of this letter.

Please feel free to contact me directly if you have any questions or concerns regarding this matter. I can be reached weekdays at **800-842-2733, ext. 242873** or via email at eperry@tiaa.org.

Sincerely,

Elizabeth J. Perry
Sr. Customer Resolution Manager
cc: Peter K. Kijewski

248. Peter Kijewski downloaded October 26, 2021, TIAA "Dear Ms. Dunn & Mr. Senter" letter from the TIAA archive, followed by NYSCEF filing:

    a. October 31, 2021, Peter Kijewski NYSCEF No. 348, mailing envelope to MAUREEN DUNN.

    b. October 31, 2021, Peter Kijewski NYSCEF No. 349, mailing envelope to THOMAS SENTER.

    c. October 31, 2021, Peter Kijewski NYSCEF No. 350, mailing envelope to PETER KIJEWSKI.

    d. November 5, 2021, Ms. Dunn NYSCEF No. 386, mailing envelope to MAUREEN DUNN.

    e. January 19, 2022, Ms. Kuritzky NYSCEF No. 497, mailing envelope to THOMAS SENTER.

    f. January 19, 2022, Associate Ms. Kuritzky for Partner Ms. Spielberg NYSCEF No. 497, mailing envelope to THOMAS SENTER.

249. Review, analysis and understanding of October 26, 2021, TIAA "Dear Ms. Dunn & Mr. Senter" letter NYSCEF No. 348 reveals important information about "Employee Retirement Income Security Act of 1974" (ERISA) and IRS, Department of the Treasury, Internal Revenue Code all lawyers need to understand.

250. "TIAA has received multiple communications relating to a potential qualified domestic relations order (DRO) involving the subject retirement plan accounts record kept by TIAA":

a. July 6, 2015, TIAA letter to "Dear Attorney Cohen" NYSCEF No. 358 includes the first "communications relating to a potential qualified domestic relations order (DRO)".

251. "Pursuant to those communications, TIAA has maintained a disbursement hold on Dr. Kijewski's accounts since 2018, pending the receipt of a domestic relations order (DRO)":

a. In fact, "TIAA has maintained a disbursement hold" since March 6, 2018.

252. **<u>Highest Emphasis</u>**: "However, TIAA has never received a DRO in this matter":

a. To date of the present COMPLAINT, TIAA has never received any 403(b) & 457(b) retirement plans Domestic Relations Order (DRO) in this matter, since June 19, 2015, NYSCEF No. 1 & 2, notwithstanding September 2, 2016, Hon. John P. Colangelo, J.S.C. No. 2 of 7, signed Judgement of Divorce NYSCEF No. 107:

i. "ORDERED AND ADJUDGED that equitable distribution shall be as set forth in the parties' Stipulation of Settlement; and it is further

ii. ORDERED AND ADJUDGED that pursuant to the Stipulation of Settlement, a separate Qualified Domestic Relations Order shall be issued simultaneously herewith or as soon as practicable; and it is further …"

iii. "Parties' Stipulation of Settlement": July 6, 2016, Stipulation of Settlement <u>contract</u> NYSCEF No. 100 (45 pages).

iv. September 2, 2016, Ms. Dunn wrote & filed Judgment of Divorce NYSCEF No. 102, including terms mandating compliance.

253. "Because TIAA has not received a DRO, we will release the disbursement hold on Dr. Kijewski's accounts if TIAA does not receive a DRO within 30 days of the date of this letter":

    a. November 5, 2021, Ms. Dunn filed her "Required Minimum Distribution" (RMD) disbursements Injunction/Restraining Order NYSCEF No. 394 (62 pages), replacing a $468,997 Domestic Relations Order (DRO) recommended by TIAA.

254. November 2, 2021, Ms. Dun wire communication to Mr. Senter NYSCEF No. 396 exposes Ms. Dunn reasoning, since June 19, 2015, to continue forever RMD restraining Orders: "If he does truly want to resolve these issues, please advise if he will consent to a further restraining order being imposed on the accounts while we work through the myriad of issues remaining in an effort to divide the retirement interests appropriately. If he will consent, I can discuss with my client a carve out to enable Mr. Kijewski to remove his 2021 RMD to avoid further penalty, however those funds must first go to pay the outstanding money judgments and child support owed to my client."

255. Six (6+) years after receiving June 25, 2015, Mr. Cohen AUTOMATIC ORDERS letter NYSCEF No. 399, and arm-twisting by Plan Administrator, MSKCC 403(b) & 457(b) retirement plans sponsor, TIAA Law & Compliance lawyers realized "Employee Retirement Income Security Act of 1974" (ERISA) compliance and IRS Internal Revenue Code compliance supersedes Ms. Dunn Injunction/Restraining Order NYSCEF No. 394.

256. December 16, 2021 - December 27, 2021, TIAA released tax years 2018, 2019, 2020 and 2021 TIAA tax-deferred retirement plans and IRA savings benefits

mandatory $439,826 balloon retirement income disbursement, including in arears

mandatory $150,376 balloon United States Treasury and MA-DOR tax withholding

and tax payments. TIAA also included tax years 2018, 2019, 2020 and 2021

mandatory 457(b) $57,267 "Wages, salaries, tips, etc. Attach Form(s) W-2".

257. October 26, 2021, Plan Administrator, MSKCC retirement plans

sponsor, thwarted Ms. Maureen A. Dunn Injunction/Restraining Order and

prevented tax year 2021 additional stiff $93,840 RMD 50% penalty.

258. **Remarkable Ms. Dunn Achievement**: March 2024 Social Security

income due to tax year 2021 TIAA "Required Minimum Distribution" (RMD) balloon

disbursement: **$1.00**.

259. October 26, 2021, TIAA "Dear Ms. Dunn & Mr. Senter" letter NYSCEF

No. 348, requires distribution to all lawyers due to balloon money disbursements,

Retirement Plan Administrator preventing the victim's bankruptcy.

260. March 23, 2016, Ms. Dunn review of AUTOMATIC ORDERS residence

stripping violation NYSCEF No. 448, omitted mentioning divorce book remaining in

the stripped marital residence:

a. "Your Best Strategy: Think Financially – Act Legally.  Make your

financial concerns the centerpiece of your divorce, and work within the

framework of the law.  That is the most powerful position you can take."

b. **Your Worst Strategy**: Ms. Dunn "Investment Experience" financial

plan, initiated October 20, 2016, Ms. Dunn wire communication to Actuary

Robert Guarnera, Ms. Dahan and Ms. Kijewski NYSCEF No. 115.

### XII. June 22, 2022, TIAA Letter to Dr. Kijewski: Timeline "Required Minimum Distribution" Disbursement "Hold" Since July 1, 2015

261. EXHIBIT June 22, 2022, TIAA letter to Dr. Kijewski, followed by review, analysis and under stating content:

262. "This letter is a follow-up to your May 9 communications to Stacy Caraccio and Paul Cowie about Paul's fiduciary responsibilities regarding your TIAA accounts. You have also expressed concern that the balances in your accounts has decreased.": Review of retirement account statement Peter Kijewski balances suddenly decreased due to December 16, 2021 - December 27, 2021, TIAA released tax years 2018, 2019, 2020 and 2021 TIAA tax-deferred 403(b) & 457(b) retirement plans and IRA savings benefits mandatory $439,826 balloon retirement income disbursement.

263. "We recognize that you have been unhappy with your interactions with TIAA as they relate to our record keeping of your accounts that have been the subject of certain domestic relations proceedings. As this issue has been the subject of substantial past correspondence, this letter will address new issues that you have raised and only summarize issues that have been the subject of past communications.": The present Plaintiff Peter Kijewski COMPLAINT seeks just, fair and timely compensation due to TIAA failure to properly manage domestic relations proceedings revealed EXHIBIT 1 alternative effectual TIAA "Dear Ms. Dunn & Mr. Cohen" letter.

264. "**Fiduciary Responsibilities** TIAA has completed a thorough review of Paul Cowie's interactions with you and your accounts. Our review indicates that Paul has met all regulatory requirements applicable to TIAA and to Paul as your assigned Wealth Management Advisor.": Peter Kijewski inquiries to Paul Cowie

about "Required Minimum Distribution" (RMD) disbursements "hold" resulted in Peter Kijewski receipt of yet another TIAA Law & Compliance lawyer letter, via Elizabeth Perry, TIAA Law & Compliance Liaison, explaining the role of lawyers to resolve the RMD "hold" matter.

265. "**Qualified Domestic Relations Order (QDRO) and Required Minimum Distribution (RMD)** On July 1, 2015, April 18, 2017 and March 22, 2018, TIAA received an order to restrain withdrawals, transfers, and prevent any status changes of your retirement plan accounts until the necessary QDRO had been executed, processed, and funds distributed to the plaintiff. As a result of these orders, TIAA placed a restriction on your retirement accounts.": Required TIAA response to Ms. Dunn & Mr. Cohen:

    a. "Ms. Kijewski <u>owner</u> of her retirement plans & IRAs."

    b. "Peter Kijewski <u>owner</u> of his retirement plans & IRAs."

    c. TIAA receipt of a $468,997 Domestic Relations Order (DRO) may result in assignment of Peter Kijewski, account <u>owner</u> $468,997 retirement plans & IRAs to Ms. Kijewski, account <u>owner</u> $468,997 retirement plans & IRAs.

    d. Since TIAA has not yet received a $468,997 Domestic Relations Order (DRO), Peter Kijewski will promptly continue to receive his retirement plans and IRA disbursements upon request.

    e. "**Required Minimum Distribution (RMD)**" disbursements will never terminate to prevent stiff RMD 50% penalties.

f. TIAA confirms "Employee Retirement Income Security Act of 1974" (ERISA) defines an orderly legal retirement plans & IRAs Equitable Distribution process.

266. "TIAA is the record keeper for the employer-sponsored retirement plans in which you participate. In November 2021, TIAA took direction from those plans to pay your 2018, 2019, and 2021 RMDs as well as the 2018 - 2021 fixed period annuity payments. The Internal Revenue Service (IRS) waived the requirement of the 2020 RMD, therefore TIAA did not issue RMD payments for the 2020 tax year.":

a. Retirement asset <u>custodian</u> TIAA never requires directions from Plan Administrator, MSKCC retirement plans <u>sponsor</u>.

b. Tax year 2021 TIAA RMD balloon disbursements confirm Federal Law compliance supersedes November 5, 2021, Ms. Dunn Injunction/Restraining Order NYSCEF No. 396 (62 pages).

c. TIAA failed to consider Peter Kijewski, client since September 1, 1975, may need funds in excess of RMD disbursements to pay for living expenses, minor(16) support and taxes.

267. "In relation to your concerns about the IRS penalty for delayed RMD, The IRS may waive part or all of additional taxes due if you can show that any shortfall in the amount of distributions was due to reasonable error and you are taking reasonable steps to remedy the shortfall. Please refer to IRS Form 5329 and its instructions providing IRS guidance regarding the attachment of a statement of explanation to your Form 5329.": <u>Preventable Stiff $194,980 RMD 50% Penalty</u> explains Peter Kijewski initiative for waiver of preventable **$194,980** stiff RMD 50% penalty.

268. "You have repeatedly expressed concerns about the activities of the opposing party and her counsel in your domestic relations proceedings. We strongly encourage you to work with your own counsel to resolve this situation. As plan record keeper, TIAA has no role in investigating the activities of either party.": TIAA has a very important role to investigate the activities of Ms. Dunn to assure compliance with TIAA policies and procedures and prevent Peter Kijewski financial assets squandering: "We have policies and procedures in place for the review and supervision of our investment advisory programs and services. Such policies are designed to comply with the requirements of the Investment Advisers Act of 1940, the Employee Retirement Income Security Act of 1974 and other applicable rules and regulations."

269. "We strongly encourage you to work with your own counsel to resolve this situation" resulted in unprecedented legal fees and numerous attorneys total failure to release Plaintiff Peter Kijewski RMD disbursement "hold", mandating Plan Administrator, MSKCC retirement plans sponsor, singular remarkable achievement to release tax years 2018, 2019, 2020 & 2021 retirement income disbursement "hold".

270. "**Account Fluctuations** In December 2021, at the direction from your retirement plans, TIAA issued your 2018, 2019, and 2021 RMDs, as well as the 2018 – 2021 fixed period annuity payments. In addition, the 2018, 2019, and 2021 RMD payments were issued from your Portfolio Advisor (PA) Individual Retirement Account (IRA). These distributions totaled $439,826.37 and caused a corresponding decrease in the balance of your accounts. It's also important to note that financial markets do fluctuate and in some years can be quite volatile. If you are concerned

how market volatility will affect your retirement investments, we suggest that you speak to your advisory team. They can provide assistance towards meeting your financial goals.":

       a. Preventable account fluctuations occurred due to TIAA, Vanguard & BNY Pershing recurring enforcement Plaintiff Peter Kijewski retirement income disbursement "hold".

       b. Tax year 2021, Peter Kijewski needlessly experienced "financial markets do fluctuate and in some years can be quite volatile".

       c. "We suggest that you speak to your advisory team" resulted in a pile of Elizabeth Perry, TIAA Law & Compliance Liaison, letters to Peter Kijewski, Ms. Dunn and Mr. Senter.

## XIII. April 9, 2018, Vanguard Consented March 22, 2018, Ms. Dunn Order $0.00 "Required Minimum Distribution" (RMD) Disbursements

271. March 22, 2018, Ms. Dunn Order NYSCEF No. 367:

a. Additional Document Information "RMDs: April 9, 2018 Vanguard to Maureen A. Dunn, Esq.: "Vanguard is not a party to this action, and is therefore not bound by the March 14, 2018, Order. " - "what appears to be a dispute" - "restriction" - "including any Required Minimum Distributions.""",

b. Appended March 20, 2018, Hon. Lewis J. Lubell, J.S.C. No. 4 of 7, IMMEDIATE RELIEF REQUESTED ORDER TO SHOW CAUSE NSYCEF No. 163, omitted Ms. Dunn NYSCEF filing supporting documents until April 9, 2018, and omitted any reference to "Required Minimum Distribution" (RMD) disbursements.

272. Vanguard Office of the General Counsel lawyer failed to demand Ms. Dunn:

a. Comply with IRS, Department of the Treasury, Internal Revenue Code,

b. Submission to Vanguard a valid $468,997 Domestic Relations Order (DRO) and

c. Delete invalid Domestic Relations Order (DRO) Internal revenue Code term: "(6) Any distributions received by the Former Spouse pursuant to this Order will be included as gross income by the Former Spouse. For the purposes of Section 72 of the Internal Revenue Code, the Former Spouse and not the IRA Owner shall be treated as the distributee of any distribution or payment made by any IRA pursuant to this Order."

273. April 9, 2018, Vanguard Office of the General Counsel lawyer letter to

Mr. Kijewski, via Lynda Roseboro, NYSCEF No. 367:

FILED: WESTCHESTER COUNTY CLERK 11/04/2021 01:18 PM    INDEX NO. 60606/2015
NYSCEF DOC. NO. 367                                     RECEIVED NYSCEF: 11/04/2021



P0. Box 2600
Valley Forge, PA 19482-2600

www.vanguard.corn

April 9, 2018

Peter K. Kijewski
23 Shipyard Dr, Apt N307
Hingham, MA 02043-1607

RE:    **Marie Foley Kijewski v. Peter K. Kijewski**
       **Index No. 60606-15**
       **Our File No. 1024233**
       **Rollover IRA - #xxxxx8421**

Dear Mr. Kijewski:

I am writing with regard to documentation that The Vanguard Group, Inc. ("Vanguard") received in connection with the above-referenced Vanguard account (the "Account").

Enclosed is a copy of the Order to Show Cause associated with the documentation received.

Vanguard is not a party to this action, and is therefore not bound by the March 14, 2018, Order. However, in light of what appears to be a dispute regarding the assets in the Account, we are writing to notify you that Vanguard has placed a restriction on the Account; accordingly, no exchanges, redemptions, withdrawals, or distributions of any kind may occur in or from the Account during this time (including any Required Minimum Distributions). <span style="color:red">Peter: See this restriction</span>

Vanguard will maintain the restriction on the Account until we receive satisfactory documentation that the dispute regarding the assets in the Account is resolved, or is no longer being pursued.

Should you have any questions concerning this matter, please contact me at 610/503-2218.

Sincerely,

*Lynda Roseboro*

Lynda Roseboro
Legal Analyst
Legal Department

Enclosure

274. "Vanguard is not a party to this action, and is therefore not bound by the March 14, 2018, Order" means:

   a. Vanguard <u>Individual</u> Retirement Account (IRA) immediate automatic quarterly scheduled "Required Minimum Distribution" (RMD) disbursements to account <u>owner</u> Peter Kijewski separate bank account, after Federal & State tax withholding,

275. "However, in light of what appears to be a dispute regarding the assets in the Account, we are writing to notify you that Vanguard has placed a restriction on the Account; accordingly, no exchanges, redemptions, withdrawals, or distributions of any kind may occur in or from the Account during this time (including any Required Minimum Distributions).": Vanguard exposes defective Risk & Compliance Management policies and procedures.

276. Table 3 "Vanguard will maintain the restriction on the Account until we receive satisfactory documentation that the dispute regarding the assets in the Account is resolved, or is no longer being pursued" causes Peter Kijewski legal fee payments to enforce IRS Internal Revenue Code.

### XIV. Ms. Dunn "Investment Experience" Financial Plan

### Table 22 June 24, 2015, Mr. Cohen Review Financial Account Listing for RMD "Hold" Letters

| June 24, 2015, Mr. Cohen Review Financial Account Listing for RMD "Hold" Letters | | | | | | |
|---|---|---|---|---|---|---|
| Date | Days | Charge | Process Notes | Time | Invoice | Peter |
| 6/24/2015 | -1 | MYC | Review financial account listing | 0.1 | $47.50 | Pro Se |
| 6/24/2015 | -1 | MYC | Telephone conference with client | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to TIAA-CREF | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to Pershing Advisor Solutions LLC | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to Vanguard | 0.2 | $95.00 | Pro Se |
| 6/25/2015 | 0 | MYC | Dictation of letter to Lincoln Financial | 0.2 | $95.00 | Pro Se |

277. June 24, 2015, Mr. Cohen "Review financial account listing" reveals an opportunity to submit to TIAA, Vanguard and/or BNY Pershing a just, fair and timely $493,192 Domestic Relations Order (DRO), avoiding:

      a. Filing any "Investment Experience" Court <u>Applications</u>.

      b. Writing "Investment Experience" NYSCEF content.

      c. Interminable lawyer disputes about July 26, 2016, Stipulation of Settlement DRO <u>contract</u> compliance NYSCEF No. 100.

      d. Prejudicing client Ms. Kijewski.

278. Table 6 Mr. Cohen had an opportunity to immensely benefit his client Ms. Kijewski by assignment of $493,192 retirement interests, Peter Kijewski account <u>owner</u>, to alternate payee Ms. Kijewski $493,192 retirement interests, Ms. Kijewski account <u>owner</u>.

279. Ms. Dunn "Investment Experience" loser financial plan NYSCEF No. 548, peddled May 23, 2023, 10th floor, Westchester County Court Family Court:

The Parties acknowledge that pursuant to the order of this court dated 3/20/23, plaintiff is entitled to receive from the defendant's Vanguard IRA a transfer in an amount equal to the amount of 10,287.842 shares of the VTSAX, at the trading price at the close of the market on the date immediately prior to the date of transfer.

The Parties further acknowledge that the date of transfer of the Vanguard IRA to the Plaintiff was 5/15/23, and that the Plaintiff received a total of $424,458.68 from said transfer.

The parties further acknowledge that the trading price of VTSAX at the close of the market on 5/14/23 was $99.83 per share. As a result, Plaintiff was entitled to a total of $1,027,035.27. The shortfall remaining due and owing Plaintiff is therefore $602,576.59.

The Parties acknowledge that the Order of Justice Quinones dated 11/4/22 and the Order of this Court dated 3/20/23 authorize

Plaintiff to submit a domestic relations order transferring the funds from Defendant's TIAA IRA account ending xx9187 in order to make up the aforementioned shortfall, without prejudice to Plaintiff's right to make a further application to address any remaining monies owed.

As of April 30, 2023, the parties acknowledge that the balance of the defendant's TIAA IRA accounts was $504,442.09. Thus the entirety of Defendant's TIAA IRA accounts ending xx9187 shall be transferred to Plaintiff via a Domestic relations order.  Defendant shall cooperate to sign all necessary documents required to effectuate a 100% transfer of his TIAA IRA account to Plaintiff, including without limitation the Domestic Relations Order and any forms required by TIAA to process the Domestic Relations Order.

Defendant shall make no transfers, withdrawals or changes to his investments in his TIAA IRA accounts ending xx9187.

The Parties acknowledge that Plaintiff will be owed an additional sum in the approximate amount of $100,000.  The exact sum owed shall be calculated by deducting the total amount received by Plaintiff upon transfer to her of the TIAA IRA from the current shortfall of $602,576.59.

Plaintiff reserves all rights to seek that additional sum via further court application.

## XV. Ms. Dunn Novel NYSCEF Court Content Creator

280. Ms. Dunn, voluminous NYSCEF content creator, learned novel use of Word processing technology, while pushing her 0.1 hour Process Notes and Invoices button, sustained her livelihood quite comfortably.

281. Considering the voluminous NYSCEF content Ms. Dunn created, filing recurring Court <u>Applications</u> causing "Required Minimum Distribution" (RMD) disbursement "hold", Justice of the Supreme Court and Peter Kijewski representing attorneys were overwhelmed reviewing, analyzing and understanding NYSCEF content Ms. Dunn created.

282. Hon. Thomas Quinones, J.S.C. No. 6 of 7, required February 2, 2022 - November 4, 2022, to render his Court <u>Application</u> No. 12 & 13 RMD **<u>DECISION & ORDER</u>** NYSCEF No. 505, copy NSYCEF No. 506: "ORDERED, that Defendant is restrained from removing, transferring, or withdrawing the retirement assets at Vanguard and TIAA-CREF until the necessary QDROs are processed, except to the extent he is required to take a mandatory distribution for the calendar year 2022;"

283. Ms. Dunn failed to remove her March 22, 2018, RMD disbursement "hold" NYSCEF No. 365 she never filed in NYSCEF, required to comply with Hon. Quinones, J.S.C. No. 6 of 7, Court **<u>DECISION & ORDER</u>**.

284. Hon. Paul I. Marx, J.S.C. No. 1 of 7, reviewing substantially reduced Ms. Dunn NYSCEF content, required only December 2, 2015 - December 9, 2015, to render his Court <u>Application</u> No. 1 RMD PENDENTE LITE DECISION AND ORDER NYSCEF No. 59:

a. "The award shall be taxable to Plaintiff, as she does not specify any basis for departing from "the norm envisioned by current Internal Revenue Code provisions.""

b. ***Required Minimum Distribution*** Plaintiff asks the Court to direct Defendant to distribute 50% of his Required Minimum Distribution to her. Plaintiff explains that Defendant is required to withdraw a certain amount from his retirement accounts each year or he will be charged a 50% penalty."

285. Honorable Paul I. Marx, J.S.C., required less than one (1) day to render his preliminary November 13, 2015, strikeout DECISION NYSCEF No. 42, page 3 & 4, "does not warrant the large award sought by Plaintiff", on receipt of November 13, 2015, Ms. Dunn "large award sought by Plaintiff" Court <u>Application</u> No. 1 **<u>ORDER TO SHOW CAUSE</u>** NYSCEF No. 24.

286. **<u>Timelines</u>**: June 22, 2022, TIAA Letter to Peter Kijewski offers a solution using multi-year timelines for review, analysis and understanding the unprecedented volume of Ms. Dunn NYSCEF Word processing content creation: **"Qualified Domestic Relations Order (QDRO) and Required Minimum Distribution (RMD)** On July 1, 2015, April 18, 2017 and March 22, 2018, TIAA received an order to restrain withdrawals, transfers, and prevent any status changes of your retirement plan accounts until the necessary QDRO had been executed, processed, and funds distributed to the plaintiff. As a result of these orders, TIAA placed a restriction on your retirement accounts."

287. TIAA Law & Compliance lawyer reveals a **2.7-year** timeline of **"Required Minimum Distribution (RMD)** restrictions".

288. Extending the timeline, using November 4, 2022, Hon. Thomas Quinones **<u>DECISION & ORDER</u>** NYSCEF No. 505 reveals a **7.3-year** timeline of "**Required Minimum Distribution (RMD)** restrictions", inexplicably without receipt of a **$468,997** Domestic Relations Order (DRO).

## XVI. Paul Cowie, TIAA Portfolio Advisor WMA, Deposition: Confirm Ms. Dunn Recurring Defamation Against Peter Kijewski

289. Paul Cowie, TIAA Portfolio Advisor WMA, will be provided NYSCEF No. 1 - 553 and all Court documents received by Peter Kijewski, for review and analysis to confirm Ms. Dunn willful defamation against Peter Kijewski regarding Paul Cowie management of Peter Kijewski retirement plans and IRAs, starting with:

a. December 15, 2017, Ms. Dunn letter to Ms. Friedrich NYSCEF No. 154.

b. March 14, 2018, Ms. Dunn signed **AFIRMATION IN SUPPORT**.

c. March 14, 2018, Ms. Kijewski signed **AFFIDAVIT IN SUPPORT** (9 pages).

d. April 9, 2018, Ms. Kijewski **AFFIDAVIT IN REPLY** NYSCEF No. 182 (15 pages).

e. April 9, 2018, Ms. Dunn **AFIRMATION IN REPLY** NYSCEF No. 183 (5 pages).

f. March 10, 2016, Ms. Dahan letter to Mr. Cohen, with April 9, 2018, Redaction NYSCEF No. 189 (51 pages).

g. April 10, 2018, Ms. Kijewski **AFFIDAVIT IN REPLY** NYSCEF No. 193 (7 pages).

h. April 10, 2018, Peter Kijewski 2016 tax return NYSCEF No. 195 (12 pages), analyzed by Ms. Kijewski.

i. May 17, 2018, Ms. Kijewski **SUR-REPLY AFFIDAVIT** NYSCEF No. 200 (12 pages).

j. May 17, 2018, Ms. Dunn **SUR-REPLY AFFIRMATION** NYSCEF No. 201.

k. November 15, 2018, Ms. Dunn **AFIRMATION IN REPLY**. NYSCEF No. 245 (8 pages) in opposition to November 9, 2018, Ms. Friedrich **AFIRMATION IN OPPOSITION** (6 pages) NYSCEF No. 243.

290. November 13, 2015, Ms. Kijewski NYSCEF No. 45 confirms Ms. Kijewski managed marital money, preventing Peter Kijewski fraudulent activities: "I commenced this action for divorce on June 19, 2015.  Until that time, throughout our marriage, Defendant and I had both deposited our income into one of our joint checking accounts.  From those accounts, I was always responsible for paying our household and family bills and managing our budget. Defendant was not involved in this process beyond depositing the entirety of his paycheck into our account. However, since shortly after he was served with the Summons and Complaint, Defendant has stopped depositing his paycheck into the joint account. He has failed to contribute his income in an appropriate way and Defendant has now left our family in the position of being unable to pay for necessary expenses."

291. Paul Cowie, TIAA Portfolio Advisor WMA, will review, analyze and write a report about his "TIAA Portfolio Advisor Quarterly Performance Reports", including his tax year 2021 Q3 Performance Report NYSCEF No. 372.

292. THE COURT may subpoena Mr. Newman, Ms. Dahan, Ms. Friedrich and Ms. Spielberg regarding Ms. Dunn and Ms. Kijewski conduct in the course of Court proceedings, revealed November 24, 2015, Mr. Newman **AFIRMATION IN OPPOSITION** NYSCEF No. 45:

a. "3. It is unfortunate that Plaintiff and her counsel needs to resort to personal attacks on my associate because she was defending our client and disputing the numbers presented by Plaintiff's counsel.   There was no need to assert, as does Plaintiff's counsel, that my associate, Ms. Dahan, exhibited a "willingness to comply with … gamesmanship" when we simply could not come to an agreement on support figures and therefore required the Court's intervention."

b. "4. It is curious to me why counsel believes that she is deserving of having her demands agreed to simply because she demands it."

293. Notably, the lack of complexity, preventing financial asset loss since March 23, 2016, Ms. Dahan wire communication to Peter Kijewski, including three (3) attachments, NYSCEF No. 448 speaks volumes about Ms. Dunn and Ms. Kijewski atrocious conduct, specifically considering Ms. Kijewski grossly violated property removal AUTOMATIC ORDERS and left in the stripped marital residence June 15, 2015, Mr. Cohen and Ms. Kijewski conference agenda items NYSCEF No. 356.

294. Paul Cowie, TIAA Portfolio Advisor, will review, analyze and write a report about Peter Kijewski TIAA Bank account.

295. Paul Cowie will provide all documents and a report about his wire communications with Peter Kijewski, TIAA Law & Compliance lawyers, Ms. Perry, TIAA Law & Compliance Liaison, and any TIAA fiduciaries:

**Table 23 Tax Year 2018 "Required Minimum Distribution" (RMD) $57,341 50% Penalty**

| | | | | | | |
|---|---|---|---|---|---|---|
| over table: **RMD 50% Penalty Dispute: Paul Cowie, TIAA CFP vs. TIAA Law & Compliance Lawyers** |||||||
| Date | Years | Time | Min. | Sec. | Expense | Action |
| 6/25/2015 | 0.0 | | 60 | 0 | $475 | Mr. Cohen tax deferred funds in pay status violation + client phone call! |
| 6/25/2015 | 0.0 | | 12 | | $95 | Dictation of letter to TIAA-CREF |
| 6/25/2015 | 0.0 | | 12 | | $95 | Dictation of letter to Pershing Advisor Solutions LLC |
| 6/25/2015 | 0.0 | | 12 | | $95 | Dictation of letter to Vanguard |
| 6/25/2015 | 0.0 | | 12 | | $95 | Dictation of letter to Lincoln Financial |
| 6/25/2015 | 0.0 | | 12 | | $95 | Telephone conference with client |
| 11/27/2018 | 3.4 | 9:03 AM | 3 | 50 | $0 | Initiate RMD 50% penalty prevention |
| 11/27/2018 | 3.4 | 3:45 PM | 1 | 5 | | Phone call Peter K Kijewski & Paul Cowie Wealth Management Advisor |
| 11/27/2018 | 3.4 | 3:49 PM | 0 | 45 | | Phone call Peter K Kijewski & Paul Cowie Wealth Management Advisor |
| 11/27/2018 | 3.4 | 3:50 PM | 10 | 56 | | Phone call Peter K Kijewski & Paul Cowie Wealth Management Advisor |
| 11/28/2018 | 3.4 | 3:48 PM | 2 | 56 | | Phone call Peter K Kijewski & Paul Cowie Wealth Management Advisor |
| 11/28/2018 | 3.4 | 4:18 PM | 5 | 19 | | Phone call Peter K Kijewski & Paul Cowie Wealth Management Advisor |
| 11/28/2018 | 3.4 | 4:47 PM | 5 | 9 | | Phone call Peter K Kijewski & Paul Cowie Wealth Management Advisor |
| 12/5/2018 | 3.4 | 5:42 PM | 1 | 1 | | Phone call Peter K Kijewski & Paul Cowie Wealth Management Advisor |
| 12/6/2018 | 3.4 | 8:57 AM | 2 | 50 | | Phone call Peter K Kijewski & Paul Cowie Wealth Management Advisor |
| 12/7/2018 | 3.5 | 10:39 AM | 1 | 41 | | Phone call Peter K Kijewski & Paul Cowie Wealth Management Advisor |
| 12/7/2018 | 3.5 | 10:47 M | 0 | 3 | | Phone call Peter K Kijewski & Paul Cowie Wealth Management Advisor |
| 12/7/2018 | 3.5 | 10:47 M | 9 | 5 | | Phone call Peter K Kijewski & Paul Cowie Wealth Management Advisor |
| 12/14/2018 | 3.5 | 2:14 PM | 1 | 32 | | Phone call Peter K Kijewski & Paul Cowie Wealth Management Advisor |
| 12/17/2018 | 3.5 | | | | ($60,000) | TIAA Portfolio Advisor investment account liquidation due to due to TIAA parties' 50% RMD penalty dispute, revealed in TIAA Performance Report. |
| 12/31/2018 | 3.5 | 12:00 PM | 0 | 0 | | Damage due to Ms. Dunn recurring attorney "Temporary Restraining Orders" (TRO), including 2.2 years AUTOMATIC ORDERS restraints. |
| 2015 | | | | | $2,207.60 | Lincoln Financial 403(b) Statements: "RMD WITHDRAWAL OF INCOME" |

296. **Paul Cowie, TIAA CFP, Portfolio Advisor WMA, anticipated reports**:

a. **Defamation Against Peter Kijewski**: "**Fiduciary Responsibilities** - TIAA has completed a thorough review of Paul Cowie's interactions with you and your accounts. Our review indicates that Paul has met all regulatory requirements applicable to TIAA and to Paul as your assigned Wealth Management Advisor" means Ms. Dunn and Ms. Kijewski totally false recurring, lack of civility, NYSCEF filings about Peter Kijewski managing his 403(b) & 457(b) retirement plans and IRAs:

i. May 17, 2018, Ms. Kijewski <u>SUR-REPLY AFFIDAVIT</u>

NYSCEF No. 200: "14. In any context other than divorce, retention of another party's assets of over $1,000,000 for the better part of 2 years and associated attempts to defraud would be a crime (in NY, a class B felony). Without the remedy I am seeking from the court, Defendant would effectively be able to use the divorce to perpetrate a criminal felony upon me. Moreover, if I had recourse to the criminal justice system, there would be no need to pay tens of thousands of dollars in legal fees to obtain the assets that belong to me, under New York marital property law, by the eminently fair equal division of assets accumulated during a 35-year marriage."

ii. May 17, 2018, Ms. Dunn <u>SUR-REPLY AFFIRMATION</u>

NYSCEF No. 201: "2. As this Court is aware, Plaintiff's initial application sought an immediate order directing the production of all statements for Defendant's retirement accounts at TIAA-CREF, which relief was unopposed by Defendant. This immediate relief was directed and Defendant purported to comply with it. However, Defendant failed to include all of his retirement accounts and in fact did not produce statements for the account number A57-649187. Plaintiff only discovered the existence of this account after receiving subpoena compliance from CitiMortgage; Defendant had produced those account statements in connection with his mortgage application just a few months prior to Plaintiff's motion to this Court, yet he had conveniently not produced them through counsel to my office. The

account contains approximately $427,000 as of September 30, 2017, the last date upon which Defendant has produced a statement; suffice it to say that this is a rather large omission and given Defendant's history of secretive transfers regarding these accounts, it cannot reasonably be viewed as an oversight."

iii. December 16, 2016, Ms. Dahan wire communication to Ms. Dunn NYSCEF No. 119 specifically references TIAA A57-649187 IRA account, resulting January 5, 2017, Ms. Dunn wire communication to Ms. Dahan & Ms. Kijewski NYSCEF No. 121 rejecting TIAA A57-649187 IRA $468,997 Domestic Relations Order (DRO).

b. **Prohibited**: Ms. Dunn numerous MEMORANDA OF LAW precedents affirm excessive child support and retirement plans & IRAs disbursement "hold" can never occur concurrently.

## XVII. TIAA, Vanguard & BNY Pershing Failure to Act in the Best Interests of Client Peter Kijewski

297. This action arises from TIAA, Vanguard & BNY Pershing **catastrophic** failure to act in client Peter Kijewski best interests following Paul Cowie, TIAA CFP, Portfolio Advisor WMA, "recommendations to enroll in an IRA, rollover/transfer to or from a Plan or IRA", transferring Peter Kijewski 0585-88045718421 Vanguard IRA to Peter Kijewski A57- 649187 Portfolio Advisor IRA account, revealed by:

　　a. December 31, 2016, Vanguard IRA statement NYSCEF No. 120, filed April 17, 2017, by Ms. Dunn.

　　b. September 30, 2021, Paul Cowie, "TIAA Portfolio Advisor Quarterly Performance Report" NYSCEF No. 372, page No. 4 of 14, timeline Peter Kijewski A57- 649187 Portfolio Advisor IRA account, "Inception Date November 16, 2016".

298. This action arises from Defendants' causing entirely preventable never-seen-before Peter Kijewski financial asset loss, starting:

　　a. June 19, 2015, no-fault Action for a Divorce 60606/2015 NYSCEF No. 1 & 2.

　　b. June 25, 2015, Mr. Cohen "AFFIRMATION/AFFIDAVIT OF SERVICE" NYSCEF No. 3, enclosed Plaintiff Peter Kijewski photograph and physical description, resulting June 19, 2015, Pearl Harbor Action for a Divorce NYSCEF No. 1 & 2.

　　c. June 25, 2015 - September 20, 2017, AUTOMATIC ORDERS legacy 403(b) retirement plans and IRAs "tax deferred funds in pay status exception" violation.

299. This action arises from Defendants' use of alternative "Employee Retirement Income Security Act of 1974" (ERISA) rules revealed by reviewing and analyzing April 10, 2018, NYSCEF No. 193, which uses a false analysis of April 10, 2018, Ms. Dunn subpoenaed tax year 2016 Peter Kijewski Federal tax return NYSCEF No. 195, indisputably exposing 1) restraining Peter Kijewski TIAA & Vanguard retirement income and 2) coercing Peter Kijewski use his financial assets to pay for living expenses, taxes, including tuition taxes, and minor (16) support:

a. "9. It is respectfully submitted that, due to Defendant's actions, the impact of the various account changes (other than the obvious reductions in value) remains unknown at this time. Accordingly, the restraining order on these accounts must stay in effect until the full impact can be determined, ideally by an Order from this Court directing Defendant in provide an authorization so that I and my attorney can speak to TIAA directly and receive complete information on these changes as well as on any discussions concerning them. Defendant will not be harmed by extending the restraining order as he received substantial RMDs in December 2017, he just sold the former marital residence, and he recently received an inheritance."

b. March 6, 2018, final tax year 2018 TIAA "Required Minimum Distribution" (RMD) disbursement occurred, resulting in tax year 2018 $57,341 RMD 50% tax penalty.

c. April 10, 2018, NYSCEF No. 193 (7 pages) caused financial asset damage due to inexplicable failure to reference "Employee Retirement Income Security Act of 1974" (ERISA).

d. April 10, 2018, NYSCEF No. 193 (7 pages) caused financial asset damage due to inexplicable failure to reference "Internal Revenue Code".

e. April 10, 2018, NYSCEF No. 193 (7 pages) caused financial asset damage due to advocating Ms. Dunn restraining Orders of Peter Kijewski 403(b) and 457(b) retirement plans, while to date of the present COMPLAINT, Ms. Dunn never submitted to TIAA any 403(b) and 457(b) retirement plans Domestic Relations Order (DRO).

300. This action arises from Defendants' unprecedented recurring enforcement $0.00 tax deferred funds "Required Minimum Distribution" (RMD) disbursements: "Retirement plan participants and IRA owners, including owners of SEP IRAs and SIMPLE IRAs, are responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

a. **Permitted**: Minor (16) support payment calculations include "Required Minimum Distribution" (RMD) disbursements income.

b. **Prohibited**: Recurring enforcement $0.00 tax deferred funds "Required Minimum Distribution" (RMD) disbursements.

c. **Prohibited**: Attorney "Required Minimum Distribution" (RMD) disbursements restraining Orders resulting in Peter Kijewski expense payments "pain points," to "create pain" by helping clients "self-realize" the financial vulnerability, and then to recommend May 23, 2023, "*Plaintiff was entitled to a total of $1,027,035.27* retirement assets, PLAINTIFF Peter Kijewski account owner.

    d. **Prohibited**: Subverting December 9, 2015, Hon. Paul I. Marx, NYS

J.S.C. No. 1 of 7, PENDENTE LITE DECISION AND ORDER NYSCEF No.

59: "***Required Minimum Distribution*** Plaintiff asks the Court to direct

Defendant to distribute 50% of his Required Minimum Distribution to her.

Plaintiff explains that Defendant is required to withdraw a certain amount

from his retirement accounts each year or he will be charged a 50% penalty."

    e. **Prohibited**: December 8, 2016 - May 15, 2023, NYSCEF document

production and filing of Domestic Relations Order (IRA) consistently

including Internal Revenue Code violation and shock & awe "Internal

Revenue Code" misinformation: "(6) Any distributions received by the Former

Spouse pursuant to this Order will be included as gross income by the Former

Spouse. For the purposes of Section 72 of the Internal Revenue Code, the

Former Spouse and not the IRA <u>Owner</u> shall be treated as the distributee of

any distribution or payment made by any IRA pursuant to this Order."

301. This action arises from Defendants' comprehensive knowledge "Required

Minimum Distributions" (RMD) disbursements started tax year 2011, revealed

viewing November 16, 2015, RMD calculations NYSCEF No. 441:

    a. Tax year 2015, BNY Pershing omitted mandatory Federal & State

tax withholding revealed December 11, 2015, RMD $48,389.49 disbursement

check NYSCEF No. 437.

    b. Tax year 2015 RMD calculations violate Internal Revenue Code

legacy 403(b) retirement plans age 75 rule.

c. Tax years 2011 - 2015, BNY Pershing failed to deposit, IRA account

<u>owner</u> Peter Kijewski, "Required Minimum Distribution" (RMD)

disbursements in Peter Kijewski separate private bank account:

## Table 24 Tax Years 2011 - 2023 Federal Tax Returns Expose Deficient RMD Disbursements

302. IRS, Department of the Treasury, views Federal tax penalties in Peter Kijewski tax returns, while viewing Ms. Dunn laundered Federal tax returns.

303. **Green values**: Guaranteed "Required Minimum Distribution" (RMD) disbursements retirement income to pay for living expenses, taxes and minor (16) support, guaranteed using AI Agents without humans in the loop.

304. **Black Values**: Copied from tax returns showing Ms. Dunn Court Applications since June 19, 2015, Action for a Divorce NYSCEF No. 1 & 2.

305. **Red Values**: "Required Minimum Distribution" (RMD) balloon disbursements showing Ms. Dunn Court Applications since March 22, 2018:

| Tax Years 2011 - 2023 Tax Returns: Serial $0.00 RMD WITHDRAWAL OF INCOME | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| May 10, 2011, "IRA distributions" tax deferral terminated permanently. | | | | | | | | |
| Tax return entries tracking mandatory RMD WITHDRAWAL OF INCOME | | | | | | | | |
| "IRA distributions": TIAA Traditional, Vanguard, Vanguard Traditional, BNY Pershing, TIAA Portfolio Advisor | | | | | | | | |
| "Pensions and annuities":  Retirement plans - MSKCC 403(b).  Harvard, NEDH, BWH 403(b).  NEDH 403(b). | | | | | | | | |
| "Wages, salaries, tips, etc.  Attach Form(s) W-2": MSKCC retirement plan 457(b), MSKCC payroll | | | | | | | | |
| Columns "IRS IRA", "IRS Pensions": IRS, Department of the Treasury, mandatory RMD distributions compliance | | | | | | | | |
| Joseph taxable tuition payroll included in "Wages, salaries, tips, etc.  Attach Form(s) W-2". | | | | | | | | |
| Marie needs to return tax years 2010, 2011, 2012, 2013, 2014 and 2015 Peter retirement account statements to Peter. | | | | | | | | |
| March 22, 2018, Maureen A. Dunn, Esq. TIAA NYSCEF No. 383 & Vanguard NYSCEF No. 365 terminated mandatory RMDs. | | | | | | | | |
| November 9, 2021, Maureen A. Dunn, Esq. motion No. 13 NYSCEF No. 405 to terminate tax year 2021 TIAA balloon RMD. | | | | | | | | |
| Retirement expenses and taxes: Citibank cash, TIAA Bank cash, TIAA Portfolio Advisor investment | | | | | | | | |

| Tax Year | File | IRA distr. | IRS IRA | Pensions annuities | IRS Pensions | Wages, salaries | Adjusted income | Joseph tuition | Comments |
|---|---|---|---|---|---|---|---|---|---|
| 2011 | Joint | | 34,053 | 34,055 TBD | | 373,137 | 431,858 | | IRA incorrect category, Pension missing |
| 2012 | Joint | | 33,837 | 47,685 | 13,848 | 361,688 | 438,293 | | IRA incorrect category |
| 2013 | Joint | 36,921 | 36,921 | 11,884 TBD | | 361,039 | 436,768 | | 4/25/13 attorney Cohen Marie counsel |
| 2014 | Joint | 45,170 | 45,170 | 11,951 | 12,428 | 312,021 | 396,382 | | 4/10/14 Marie stops contributing salary |
| 2015 | Peter | 48,389 | 48,390 | 10,334 | 27,437 | 253,244 | 308,404 | | Attorney RMD permission required |
| 2016 | Peter | 48,153 | 48,153 | 28,843 | 28,825 | 298,248 | 315,132 | 25,112 | Attorney RMD permission required |
| 2017 | Peter | 52,529 | 52,529 | 12,672 | 87,070 | 189,601 | 253,891 | 51,227 | Attorney RMD permission required |
| 2018 | Peter | 7,023 | 56,087 | 42,068 | 99,088 | 29,969 | 110,220 | 53,276 | Maureen A. Dunn, Esq. terminated RMDs |
| 2019 | Peter | | 56,960 | 5,919 | 93,293 | 55,716 | 102,694 | 55,716 | Joseph taxable tuition payroll |
| 2020 | Peter | | 64,266 | 48,240 | 107,326 | 28,556 | 112,747 | 28,556 | NEDH 403(b) liquidation |
| 2021 | Peter | 86,626 | 71,417 | 295,932 | 127,417 | 57,267 | 493,408 | | TIAA retirement plans & IRA balloon RMD |
| 2022 | Peter | 34,839 | 66,923 | 124,985 | 124,123 | 16,587 | 209,247 | | Vanguard IRA tax deferral since 2018 |
| 2023 | Peter | 217,180 | 62,687 | 134,268 | 134,268 | 4,487 | 390,745 | | Vanguard IRA balloon RMD |

## XVIII. Guaranteed "Required Minimum Distribution" (RMD) Disbursements Retirement Income

306. **Humans**: June 1, 2018 - October 5, 2018 Court Attorney Referee Family Law Attorney White Plains | Josephine Trovini "Required Minimum Distribution" (RMD) legal analysis resulting in:

a. October 5, 2018, REPORT OF ATTORNEY REFEREE (Motion #4), Report and Recommendation, Motion Seq 4 & 5, "Referee's Report" NYSCEF No. 218, filed October 5, 2018, by Court User: "With regard to motion sequence number 5, it is recommended that defendant's retirement assets at Vanguard and TIAA-CREF be restrained until the necessary QDROs are processed, subject to a hearing to be held regarding whether defendant needs to make withdrawals from the accounts to take his required minium (sic) distribution."

b. December 17, 2018, **ORDER TO SHOW CAUSE** (Motion #9) NYSCEF No. 264 (2 pages), filed December 18, 2018, by Court User.

c. December 17, 2018, **ORDER TO SHOW CAUSE** (Motion #9) NYSCEF No. 264, "2018.12.11 - Kijewski - OSC (motion to be relieved) (signed by Judge).pdf" (49 pages), attachment wire communication from Ms. Friedrich to Peter Kijewski, NYSCEF filing omitted:

i. Pages No. 3 - 11 of 49 pages: Ms. Stutman (DS) **AFFIRMATON IN SUPPORT**.

ii. Page No. 34 of 49 Pages:

| Date | Professional | Description | Hours | Rate | Amount |
|------|--------------|-------------|-------|------|--------|
| 10-09-2018 | DS | Reviewed client emails re ████████ | 0.1 | 650 | 65.00 |

d. "January 2, 2019 Dr. Peter Kijewski Response to Motion Sequence

9" letter to Special Referee Josephine Trovini NYSCEF No. 283 (8 of 81

pages), filed March 27, 2019, by Ms. Veronica Kapka, page No. 4:

| Date | Professional | Description | Hours | Rate | Amount |
|------|-------------|-------------|-------|------|--------|
| 10-09-2018 | DS | Reviewed client emails re Referee's Report | 0.1 | 650 | 65.00 |

e. March 27, 2019, Ms. Veronica Kapka, EXHIBIT(S) - H (Motion #11),

Invoices, NYSCEF No. 286 (page 2 of 16 pages):

| Date | Professional | Description | Hours | Rate | Amount |
|------|-------------|-------------|-------|------|--------|
| 10-09-2018 | DS | Reviewed client emails re ███████████ | 0.1 | 650 | 65.00 |

307. "January 2, 2019 Dr. Peter Kijewski Response to Motion Sequence 9"

letter to Special Referee Josephine Trovini NYSCEF No. 283 (8 of 81 pages), filed

March 27, 2019, by Ms. Veronica Kapka, page No. 2:

a. "I request that my TIAA and Vanguard restraints are **lifted**

**immediately** for these reasons:"

b. "1. Enable TIAA and Vanguard to directly pay my mandatory in-

arrears IRS and MRD taxes"

c. "2. I can report to IRS and MRD that my RMD taxes have been paid"

d. "3. I am able to pay down debt and pay for my expenses"

e. "4. Restore RMD automation for quarterly tax payments and RMD

income"

f. "5. Continuing restraints will rapidly escalate expenses for resolving

the no-default divorce dispute 60606-2015"

g. "Aggregation of retirement accounts by TIAA and automation of

withdrawals is **mandatory** due to my age and health status.  It is the

**exclusive and only** reason my retirement counts were modified.

Retirement account reconciliation could have been done **without problem** in

2014 or 2015."

308. January 9, 2019, Ms. Stutman wire communication to Peter Kijewski,

after her review of "January 2, 2019 Dr. Peter Kijewski Response to Motion

Sequence 9":

### RE: Invoice 1606 for Peter Kijewski - Peter Kijewski - Post-Judgment (255-00001)
DS
Dana Stutman<dana.stutman@sslllp.com>
To:You

Wed 1/9/2019 3:57 PM

Peter,

Please let me know when we can discuss your outstanding balance due our firm.

Perhaps we can accommodate eachother (sic).

Sincerely,

Dana M. Stutman, Esq.

Stutman Stutman & Lichtenstein, LLP
135 West 50th Street, 18th Floor
New York, New York 10020
Main: (212) 226-6644
Direct: (646) 688-3484
Fax: (212) 750-1901

25 Roslyn Road, 1st Floor
Mineola, New York 11501

dana.stutman@sslllp.com | sslllp.com

This message and any attachments are intended only for the use of the addressee and may contain
information that is private and confidential.  If you are not the intended recipient, you are hereby notified that
any dissemination of this communication is strictly prohibited.  If you have received this communication in
error, please notify us immediately by telephone at 212-226-6644.  Thank you.
U.S. Treasury Circular 230 Notice: Any U.S. federal tax advise included in this communication was not
intended or written to be used, and cannot be used for the purpose of avoiding U.S. federal tax penalties.

### Invoice 1606 for Peter Kijewski - Peter Kijewski - Post-Judgment (255-00001)
S
Stutman Stutman & Lichtenstein, LLP<mailer@timesolv.com>
To:You
Cc:michael.stutman@sslllp.com;dana.stutman@sslllp.com;kari.lichtenstein@sslllp.com;
valerie.tocci@sslllp.com;andrea.berkowitz@sslllp.com;michael.stutman@sslllp.com

Wed 1/9/2019 2:18 PM

Invoice 1606 for Peter Kijewski - Peter Kijewski - Post-Judgment (255-00001).pdf 91 KB

## A. "Protect the livelihoods of lawyers"

309. Ms. Stutman needed to vigorously advocate her excellent document about Ms. Dunn "Investment Experience" claim and July 26, 2016, Stipulation of Settlement <u>contract</u> NYSCEF No. 100:

a. March 28, 2018, Ms. Stutman **MEMORANDUM OF <u>LAW</u>** NYSCEF No. 165 in opposition to obfuscating Ms. Dunn document:

b. April 9, 2018, Ms. Dunn **<u>SUPPLEMENTAL MEMORANDUM OF LAW</u>** NYSCEF No. 184.

310. Ms. Stutman needed to assist her Associate Ms. Friedrich vigorously defending Peter Kijewski:

a. November 9, 2018, Ms. Friedrich **AFFIRMATION IN OPPOSITION** <u>Application</u> No. 7 NYSCEF No. 243 in opposition to Ms. Dunn defamation document causing tax year 2018 TIAA & Vanguard stiff **$57,341** RMD 50% penalty:

b. November 15, 2018, Ms. Dunn **<u>AFFIRMATION IN REPLY</u>** <u>Application</u> No. 7 NYSCEF No. 245.

311. November 24, 2015, Mr. Newman **AFFIRMATION IN OPPOSITION** NYSCEF No. 45 exposes Ms. Dunn recurring attacks against Associate attorneys defending Peter Kijewski: "3. It is unfortunate that Plaintiff and her counsel needs to resort to personal attacks on my associate because she was defending our client and disputing the numbers presented by Plaintiff's counsel.   There was no need to assert, as does Plaintiff's counsel, that my associate, Ms. Dahan, exhibited a "willingness to comply with … gamesmanship" when we simply could not come to an agreement on support figures and therefore required the Court's intervention."

## XIX. TIAA, Vanguard and BNY Pershing Tax Fraud Activity

312. **Tax fraud activity**: TIAA, Vanguard and BNY Pershing recurring enforcement $0.00 Required Minimum Distribution (RMD) disbursements resulted in 1) "failure to withhold", 2) "failure to pay tax", 3) "failure to follow the tax laws" and 4) "a false or altered document".

313. **False document**: April 10, 2018, NYSCEF No. 193, referencing subpoenaed Peter Kijewski 2016 Federal tax return NYSCEF No. 195, false document reveals alternative content of "Employee Retirement Income Security Act of 1974" (ERISA) and the Internal Revenue Code: "9. It is respectfully submitted that, due to Defendant's actions, the impact of the various account changes (other than the obvious reductions in value) remains unknown at this time. Accordingly, the restraining order on these accounts must stay in effect until the full impact can be determined, ideally by an Order from this Court directing Defendant in provide an authorization so that I and my attorney can speak to TIAA directly and receive complete information on these changes as well as on any discussions concerning them. Defendant will not be harmed by extending the restraining order as he received substantial RMDs in December 2017, he just sold the former marital residence, and he recently received an inheritance."

314. **Omitted RMD**: Retirement plans and IRA account <u>owner</u> failure "taking the correct amount of RMDs on time, every year from their accounts" resulted in illegal omitted RMD "Investment Experience":

    a. October 20, 2016, Ms. Dunn "Investment Experience" explanation meant for Actuary Robert Guarnera NYSCEF No. 115: "I am following up on the QDROs necessary for this matter. I understand that you had a question as

to whether the <u>investment experience</u> would be included after date of
commencement. The answer is yes, the accounts should all be divided
including <u>investment experience</u> through date of division, with of course the
one exception being Mr. Kijewski's separate property credit (including that
<u>investment experience</u>) on his TIAA-CREF account."

315. Ms. Dunn "Investment Experience" was achieved using:

    a. TIAA, Vanguard & BNY Pershing recurring RMD disbursement
"hold".

    b. Processing of the first Domestic Relations Order (DRO) occurred
nearly eight (**8**) years after June 19, 2015, Action for a Divorce NYSCEF No.
1 & 2.

    c. Ms. Dunn failure to comply with July 26, 2016, Stipulation of
Settlement <u>contract</u> NYSCEF No. 100 and September 2, 2016,
**JUDGEMENT OF DIVORCE** Ms. Dunn wrote and filed NSYCEF 102, and
September 2, 2016, Hon. John P. Colangelo, J.S.C. No. 2 of 7, signed
**JUDGMENT OF DIVORCE** NYSCEF No.107:

    i. "ORDERED AND ADJUDGED that equitable distribution shall
be as set forth in the parties' Stipulation of Settlement; and it is
further

    ii. ORDERED AND ADJUDGED that pursuant to the Stipulation
of Settlement, a separate Qualified Domestic Relations Order shall be
issued simultaneously herewith or as soon as practicable; and it is
further …"

## A. March 6, 2018 – December 16, 2021, TIAA Tax Fraud Activity

### a) March 14, 2018, Ms. Dunn Omitted NYSCEF Filing

316. March 20, 2018, Hon. Lewis J. Lubell J.S.C. signed <u>ORDER TO SHOW CAUSE</u> Court <u>Application</u> No. 5, "JT 3-15-18 seq #5", NYSCEF No. 163, received March 14, 2018:

a. "UPON READING AND FILING the annexed affidavit of the Plaintiff, MARIE FOLEY KIJEWSKI, duly sworn to on the 14th day of March, 2018, the affirmation of MAUREEN A. DUNN, ESQ., dated March 14, 2018, and all the papers and proceedings heretofore had herein".

b. "A. Directing that Defendant's retirement assets maintained at TIAA-CREF (including plan numbers … ) shall be restrained …" and

c. "C. Directing that Defendant's retirement assets maintained at Vanguard (including account number 88045718421) shall be restrained …".

d. Not annexed, never filed in NYSCEF, but available: "The annexed affidavit of the Plaintiff, MARIE FOLEY KIJEWSKI, duly sworn to on the 14th day of March, 2018".

e. Not annexed, never filed in NYSCEF, but available: "The affirmation of MAUREEN A. DUNN, ESQ., dated March 14, 2018, and all the papers and proceedings heretofore had herein".

f. March 23, 2018, **Order to Show Cause** received by Peter Kijewski causing 403(b) & 457(b) and IRA, account <u>owner</u> Peter

Kijewski, "Required Minimum Distribution" (RMD) disbursements

"hold":

**FW: Kijewski - Order to Show Cause**

JF
Jessica Friedrich<Jessica.Friedrich@sslllp.com>
To:You
Cc:Dana Stutman

Fri 3/23/2018 9:34 AM

OSC 2018-03-20 (signed, with exhibits).pdf **8 MB**
Notice of Hard Copy Submission 2018-03-14.pdf **71 KB**

Dear Peter:

Marie filed another motion regarding the retirement accounts, a copy of which I just received (see email below and attachments).

The Court ordered a temporary restraining order preventing you from withdrawing, transferring or otherwise changing the status of any of your TIAA, CREF or Vanguard retirement accounts. Do not make any changes to these accounts for any reason and do not instruct any of your financial advisors to make changes to those accounts for any reason.

I have not yet had a chance to fully review the motion, but I will do so soon and then we can discuss.

Jessica **Friedrich** | Associate
Stutman Stutman & Lichtenstein, LLP
Main: 212.226.6644 | Direct: 646.688.4340 | Fax: 212.750.1901
sslllp.com | LinkedIn

135 West 50th Street, 18th Floor
New York, New York 10020

25 Roslyn Road, 1st Floor
Mineola, New York 11501

g. OSC 2018-03-20 (signed, with exhibits).pdf **8 MB** (156 pages)

includes the documents examined by Hon. Lewis J. Lubell, J.S.C. No. 4

of 7, but never filed in NYSCEF.

317. "The annexed affidavit of the Plaintiff, MARIE FOLEY KIJEWSKI,

duly sworn to on the 14th day of March, 2018":

a. **Emphasis RMD**: The document includes seventeen (**17**)

"RMD" references.

b. "15. Defendant has demonstrated a clear pattern of deceitful behavior designed to thwart my ability to receive my share of our marital retirement assets. He did this by fraudulently transferring funds from both his Vanguard and TIAA-CREF retirement accounts and by continuing to lie to me, my attorney, and likely even his own attorneys about his actions. I believe that if Defendant becomes aware of this application for a restraining order on his accounts, he will take further action to transfer funds, initiate payouts, or otherwise impede my ability to receive my fair share of these funds as contemplated under our Stipulation. Defendant has no need to access these funds at this time and a restraining order is necessary to ensure that the funds that remain are not disturbed in any way until the QDROs are prepared and processed. Furthermore, the restraining order will provide a motivation for Defendant to cooperate with this process, which has dragged on for over a year and a half so far."

c. "[5] The transactions within the MSKCC base plus match plan in 4th quarter 2017 were so numerous and complex that although it appears that he took a number of RMD from that plan, I can't be sure. If he initiated an RMD process within that plan, as well as the other three plans, then I will experience even greater negative financial effects."

318. "The affirmation of MAUREEN A. DUNN, ESQ., dated March 14, 2018":

a. "4. Defendant is attempting to hide his activity with regard to these retirement assets. No notice has been provided to Defendant or his

counsel with regard to the instant application as, given his prior conduct, Defendant is likely to make further changes to his accounts if he becomes aware of the relief being sought in this application. Plaintiffs application details how she would be prejudiced by any elections Defendant may make to the status of his retirement accounts prior to their distribution to her via QDRO."

319. "The transactions within the MSKCC base plus match plan in 4th quarter 2017 were so numerous and complex" explained September 20, 2017, Ms. Dunn AUTOMATIC ORDERS document NYSCEF No. 355, releasing "Required Minimum Distribution" (RMD) disbursements "hold", recurring enforcement since June 25, 2015, Mr. Cohen AUTOMATIC ORDERS letters to TIAA, Vanguard and BNY Pershing.

320. March 22, 2018, Ms. Dunn letter to TIAA-CREF Legal Department NYSCEF No. 364, via FAX March 22, 2018, filed November 4, 2021, by Peter Kijewski: "An Order to Show Cause was signed by Hon. Lewis J. Lubell in connection with this matter, and said Order temporarily restrains all retirement accounts maintained by Mr. Kijewski at TIAA-CREF, so that no transfers or withdrawals may be made out of any retirement accounts, and no changes may be made to the status of said accounts. A copy of the Order is enclosed for service upon you; your attention is directed to the last paragraph on the bottom of page 2 of the Order, which continues onto the top of page 3 of the Order."

321. March 22, 2018, Ms. Dunn letter to Vanguard NYSCEF No. 365, via FAX March 24, 2018, filed November 4, 2021, by Peter Kijewski: "An Order to

Show Cause was signed by Hon. Lewis J. Lubell in connection with this matter, and said Order temporarily restrains all retirement accounts maintained by Mr. Kijewski at Vanguard, so that no transfers or withdrawals may be made out of any retirement accounts. A copy of the Order is enclosed for service upon you; your attention is directed to the first full paragraph on page 3 of the Order."

**b) March 3, 2018, "Auto RMD" NYSCEF No. 181, Filed April 4, 2018, by Ms. Friedrich, Revealing IRS Internal Revenue Code Compliance**

322. March 3, 2018, "Auto RMD" NYSCEF No. 181, filed April 4, 2018, by Ms. Friedrich:

      a. "Periodic Asset Movement"

      b. "First Pay Date 04/20/2018"

      c. "Federal Tax Withholding 20.00%"

      d. "State Tax Withholding 5.10%"

      e. "State of Tax Withholding MA"

323. **TIAA Fraudulent Action**: TIAA consented to terminate Federal and State tax withholding until December 16, 2021, responding to March 22, 2018, Ms. Dunn letter NYSCEF No. 364.

324. **Omitted TIAA Action**: Demand Ms. Dunn submit valid $468,997 Domestic Relations Order (DRO).

325. Ms. Dunn, via Ms. Friedrich, coerced Peter Kijewski to request TIAA promptly terminate "Auto RMD".

**c) April 9, 2018, Ms. Dunn Resumed NYSCEF Filing**

326. **Court Application No. 4 NYSCEF Filing**: April 9, 2018, Ms. Kijewski **AFFIDAVIT IN REPLY** NYSCEF No. 182 + April 9, 2018, Ms. Dunn **AFFIRMATION IN REPLY** NYSCEF No. 183.

327. **Court Application No. 5 NYSCEF Filing**: Ms. Dunn filed her client's Affidavit, which includes twenty-four (**24**) "RMD" references, omitting Ms. Dunn Affirmation.

328. Twenty-eight (28) days after "received March 14, 2018", on April 11, 2018, Ms. Dunn filed:

a. April 10, 2018, "AFFIDAVIT OR AFFIRMATION IN REPLY (Motion #5) Plaintiff's Reply Affidavit" NYSCEF No. 193 and

b. April 10, 2018, "EXHIBIT(S) - 8 (Motion #5) Defendant's 2016 tax transcript and email" NYSCEF No. 195.

329. April 10, 2018, NYSCEF 193 & 195 content reveals an alternative version of "Employee Retirement Income Security Act of 1974" (ERISA) and IRS Internal Revenue Code, including a bizarre justification to restrain retirement plans and IRA, account <u>owner</u> Peter Kijewski: "9. It is respectfully submitted that, due to Defendant's actions, the impact of the various account changes (other than the obvious reductions in value) remains unknown at this time. Accordingly, the restraining order on these accounts must stay in effect until the full impact can be determined, ideally by an Order from this Court directing Defendant in provide an authorization so that I and my attorney can speak to TIAA directly and receive complete information on these changes as well as on any discussions concerning them. Defendant will not be harmed by extending the restraining order as he received substantial RMDs in December 2017, he just sold the former marital residence, and he recently received an inheritance."

330. <u>Plaintiff Peter Kijewski Preventable Unprecedented Financial Asset Loss</u> reveals the adverse financial outcome due to the false claim: "Defendant will not be harmed by extending the restraining order as he

received substantial RMDs in December 2017, he just sold the former marital residence, and he recently received an inheritance."

331. April 9, 2018, Ms. Dunn Court Application No. 5 NYSCEF filing includes:

a. "Order re TIAA statements and email" NYSCEF No. 194,

b. "Defendant's 2016 tax transcript and email", including SSN, NYSCEF No. 195,

c. "Defendant's loan application" NYSCEF No. 196,

d. "TIAA RMD election forms" NYSCEF No. 197 (32 pages) and

e. "PART 130 CERTIFICATION (Motion #5)" NYSCEF No. 198.

332. June 1, 2018, Ms. Friedrich filed NYSCEF No. 211- 217.

333. June 1, 2018, Ms. Friedrich emailed to Peter Kijewski attachment "Sur Reply re contempt motion 4811--8710 v.1.docx 6326" + June 2, 2018, Ms. Friedrich emailed attachment "3615_001.pdf" (53 pages).

### d) October 5, 2018, Special Referee Josephine Trovini "Referee's Report"

334. Four (4) months later NYSCEF filing resumed.

335. October 5, 2018, Special Referee Josephine Trovini "Referee's Report" NYSCEF No. 218: "With regard to motion sequence number 5, it is recommended that defendant's retirement assets at Vanguard and TIAA-CREF be restrained until the necessary QDROs are processed, subject to a hearing to be held regarding whether defendant needs to make withdrawals from the accounts to take his required minium (sic) distribution."

336. November 15, 2018, Ms. Dunn **AFFIRMATION IN REPLY**

NYSCEF No. 145, in opposition to November 9, 2018, Ms. Friedrich

**AFFIRMATION IN <u>OPPOSITION</u>** NYSCEF No. 243, Ms. Dunn caused tax

year 2018 stiff **$57,341** RMD 50% penalty, concerning IRS Internal Revenue

Code "putting accounts into RMD status" May 10, 2011:

    a. "15. Counsel's argument that the documents "speak for

themselves" misses the point; the need for Plaintiff to speak directly to

the financial advisors is to determine the extent of the changes made to

these accounts by Defendant subsequent to the parties' divorce

(including closing of accounts, changing account numbers, putting

accounts into RMD status a year before he was required to do so,

transferring funds, etc.) and how these changes impact the pending

QDROs."

    b. "15. For example, the premature change to RMD status,

undesirable to Plaintiff as she is not yet required to take distributions

and strongly prefers not to as she currently earns the highest salary of

her life, may or may not be irreversible on Plaintiff's share after division,

and may or may not be controlled by judicial order, depending on plan

rules."

    c. "**Issue #5 - Defendant's Request to Access the Restrained**

**Funds to Withdraw his RMD:** 16. Plaintiff understands the need for

an RMD to be taken by Defendant, and it is appropriate to address this

issue at the upcoming hearing. There is no requirement that Defendant

take his RMD's from the accounts subject to division with Plaintiff.

There are other retirement assets available to Defendant, which are not the subject of the account division, and which Defendant may access to take his RMDs for 2018. This matter can be addressed at the upcoming hearing and (if Defendant immediately provides recent statements), the unaffected accounts from which he can take RMDs can be identified prior to the hearing."

337. January 17, 2019, Hon. Lewis J. Lubell J.S.C. Court <u>Application</u> No. 7 **DECISION & ORDER NYSCEF** No. 265: "The following papers were considered in connection with this motion by plaintiff for an Order confirming the Report and Recommendation of Special Referee Josephine Trovini dated October 5, 2018 … ORDERED, that defendant's retirement assets at Vanguard and TIAA-CREF are hereby restrained until the necessary QDROs are processed, subject to a hearing to be held regarding whether defendant needs to make withdrawals from the accounts to take his required minium (sic) distribution".

### e) NYS Supreme Court Hearings Omitted Lawyers Discourse About TIAA & Vanguard RMD Disbursement "Hold"

338. May 9, 2019, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Dr. Kijewski", responding to Ms. Dunn Court <u>Applications</u>:

a. "This letter is a follow-up to your April 18 email to Paul Cowie and John Douglas regarding your inability to access your required minimum distribution (RMD). Your comments were referred to my attention."

b. "On April 18, 2017 & March 22, 2018, TIAA received an Order to Show Cause to restrain all TIAA retirement accounts so that no transfers or withdrawals may be made from your account. We received subsequent correspondence on May 25, 2018 which further made clear that the constraint also includes required minimum distributions. Due to the receipt of this documentation, we have placed a restriction on all requests for transfers, loans, cash withdrawals, and any other transaction that would impact the accumulations in the accounts mentioned. For your reference, I have enclosed copies of the order and Attorney Dunn's letters as well as our prior correspondence where you were copied."

c. "This restriction will remain in place until we receive a certified copy of a court order releasing or removing the restriction or upon the successful completion of a Qualified Domestic Relations Order (QDRO). The attorneys and parties will need to resolve how to handle the RMD payments."

d. "While we are sorry for any confusion about your RMD in 2018, this is a dispute between the parties and it's not our role to look into opposing parties' activities. We suggest that you work with your own counsel to resolve this situation."

339. Court <u>Applications</u> explanation:

a. February 28, 2018, Ms. Dunn Word processing **IMMEDIATE ARREST AND IMPRISONMENT <u>ORDER TO SHOW CAUSE</u>**

Application No. 4 NYSCEF No. 133 (4 pages), filed February 28, 2018, by Ms. Dunn.

b. March 9, 2018, Hon. Lewis J. Lubell, J.S.C. No. 4 of 7, signed **IMMEDIATE ARREST AND IMPRISONMENT <u>ORDER TO SHOW CAUSE</u>** Application No. 4 NYS NYSCEF No. 161 (4 pages), filed March 9, 2018, by Court User.

c. March 12, 2018, Ms. Friedrich wire communication to Peter Kijewski, attachment Ms. Dunn composition "OSC Conformed (full document) 2018-03-09.pdf" (238 pages).

d. March 20, 2018, Hon. Lewis J. Lubell, J.S.C. No. 4 of 7, signed **IMMEDIATE RELIEF REQUESTED <u>ORDER TO SHOW CAUSE</u>** Application No. 5 NYSCEF No. 163 (3 pages), filed March 23, 2018, by Court User.

e. March 23, 2019, Ms. Friedrich wire communication to Peter Kijewski:

i. Attachment Ms. Dunn composition "OSC 2018-03-20 (signed, with exhibits).pdf"(156 pages), NYSCEF filing omitted.

ii. Attachment Ms. Dunn "Notice of Hard Copy Submission 2018-03-14.pdf".

f. April 10, 2018, Ms. Friedrich wire communication to Peter Kijewski, attachment Ms. Kijewski composition "Affidavit in Reply 2018-04-09 (with exhibits).pdf" (136 pages).

340. August 7, 2019, "hearing", Special Referee Josephine Trovini presiding, Ms. Dunn leading, Ms. Kijewski following, NYSCEF No. 306 (37 pages):

a. Omitted agenda item: The need for "Required Minimum Distribution" (RMD) disbursements.

b. THE COURT instructed Ms. Dunn about the need to comply with July 26, 2016, Stipulation of Settlement contract NYSCEF No. 100.

c. Recurring defamation against Peter Kijewski to justify $60,000 money judgment: "A. Well, most of those fees were incurred in an attempt to obtain compliance with the terms of a divorce stipulation and the vast majority of them were made necessary by my ex-husband's bad faith and bad behavior."

d. Justification to cash $450,000 death benefit: "A. I'm not seeking anything in particular because I believe if he were to die I would have a claim on his estate for all the money he owes me."

341. October 26, 2021, TIAA letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348, initiated by Plan Administrator, MSKCC retirement plans sponsor, resulted December 16, 2021 – December 27, 2021, tax years 2018, 2019, 2020 & 2021 $439,826 "Required Minium Distribution" (RMD) balloon disbursements.

**B. January 1, 2018 - May 15, 2023, Vanguard Tax Fraud Activity**

342. March 22, 2018, Ms. Dunn letter to Vanguard NYSCEF No. 365, never filed by Ms. Dunn in NYSCEF: "An Order to Show Cause was signed by

Hon. Lewis J. Lubell in connection with this matter, and said Order

temporarily restrains all retirement accounts maintained by Mr. Kijewski at

Vanguard, so that no transfers or withdrawals may be made out of any

retirement accounts. A copy of the Order is enclosed for service upon you; your

attention is directed to the first full paragraph on page 3 of the Order."

343. "An Order to Show Cause was signed by Hon. Lewis J. Lubell in

connection with this matter" related documents in the prior Section also apply

for Vanguard.

344. April 9, 2018, Vanguard letter to Peter Kijewski NYSCEF No. 367

reveals Vanguard complied with Ms. Dunn Order and lawyers fighting about

Peter Kijewski RMDs: "Vanguard is not a party to this action, and is therefore

not bound by the March 14, 2018, Order. However, in light of what appears to

be a dispute regarding the assets in the Account, we are writing to notify you

that Vanguard has placed a restriction on the Account; accordingly, no

exchanges, redemptions, withdrawals, or distributions of any kind may occur

in or from the Account during this time (including any Required Minimum

Distributions)."

345. November 4, 2022, Hon. Thomas Quinones J.S.C. DECISION &

ORDER NYSCEF No. 505, copy No. 506: "ORDERED, that Defendant is

restrained from removing, transferring, or withdrawing the retirement assets

at Vanguard and TIAA-CREF until the necessary QDROs are processed,

except to the extent he is required to take a mandatory distribution for the

calendar year 2022".

346. Ms. Dunn failed to remove March 22, 2018, Ms. Dunn letter to Vanguard NYSCEF No. 365.

347. January 30, 2023, Hon. Thomas Quinones J.S.C. **SHORT FORM ORDER** *ON CONSENT* NYSCEF No. 523: "It is hereby **Ordered**, *that Defendant, Peter Kijewski, is hereby authorized and permitted to take any and all required minimum distributions ("RMDs") from any and all retirement accounts in Defendant's name.  This shall include to the extent possible allowing Defendant to take his 2022 RMD's from his Vanguard account.*"

348. Ms. Dunn failed to remove March 22, 2018, Ms. Dunn letter to Vanguard NYSCEF No. 365.

349. May 23, 2023, Ms. Dunn reading from yellow lined paper teleprompter terminated the matter Vanguard tax fraud activity NYSCEF No. 548: "*The Parties further acknowledge that the date of transfer of the Vanguard IRA to the Plaintiff was 5/15/23, and that the Plaintiff received a total of $424,458.68 from said transfer.*"

### C. June 25, 2015 - September 20, 2017, BNY Pershing Tax Fraud Activity

350. Table 2 June 25, 2015, Mr. Cohen initiated TIAA, Vanguard & BNY Pershing "Required Minimum Distribution" disbursements "hold", using unauthorized 403(b) & 457(b) and IRA account statements, account <u>owner</u> Peter Kijewski, received from Ms. Kijewski.

## Table 25 June 25, 2015, Mr. Cohen AUTOMATIC ORDERS Economic Duress E-Filings

| Date | Charge | Process Notes | NYSCEF Content |
|------|--------|---------------|----------------|
| | | **Mr. Cohen AUTOMATIC ORDERS Economic Duress E-Filings** | |
| 4/25/2013 | MYC | "Client's signature" | October 3, 2016, NYSCEF No. 124 pages No. 8 & 9. |
| 6/15/2015 | MYC | Conference with Client | Agenda "P", "J" & "8-year-old daughter" NYSCEF No. 356 |
| 6/19/2015 | JA | process server | June 25, 2015, mugshot NYSCEF No. 3 |
| 6/19/2015 | MYC | file pleadings | June 19, 2015, Pearl Harbor NYSCEF No. 1 & 2 |
| 6/24/2015 | MYC | Review financial account listing | June 25, 2015, unauthorized review NSYCEF No. 399 |
| 6/25/2015 | MYC | letter to TIAA-CREF | June 25, 2015, unauthorized RMD "hold" NSYCEF No. 399 |
| 6/25/2015 | MYC | letter to Pershing Advisor Solutions LLC | June 25, 2015, unauthorized RMD "hold" NYSCEF No. 400 |
| 6/25/2015 | MYC | letter to Vanguard | Available: June 25, 2015, unauthorized RMD "hold" |
| 6/25/2015 | MYC | letter to Lincoln Financial | Mr. Cohen document production request |
| 6/29/2015 | MYC | Finest Services | June 25, 2015, mugshot NYSCEF No. 3 |
| 6/30/2015 | PKK | | Mediation wire to Lauren Bokor NYSCEF No. 357 |
| 7/10/2015 | JNS | Statement of Net Worth | October 22, 2015, "Chronic pain" NYSCEF No. 21 |
| 7/13/2015 | MYC | Worth Statement | September 8, 2015, "except for neuropathy" NYSCEF No. 16 |
| 7/13/2015 | MYC | NWS | September 8, 2015, "except for neuropathy" NYSCEF No. 16 |
| 7/13/2015 | MYC | Letter from TIAA Cref | July 6, 2015, ineffectual TIAA response letter NYSCEF No. 358 |
| 7/13/2015 | MYC | Letter from Pershing | Mr. Cohen document production request |

351. November 13, 2015, Ms. Dunn memo explaining "economic duress" NYSCEF No. 40: "Courts have consistently held that a party should not be placed under economic duress during the pendency of a matrimonial action and should be permitted to continue the standard of living commensurate with that enjoyed prior to the commencement of the action and the marital difficulties."

352. It should not be a surprise Plaintiff Peter Kijewski assumed contents of June 25, 2015, NYSCEF No. 3, which Mr. Cohen omitted filing in NYSCEF, resulted in freezing 403(b) & 457(b) retirement plans and IRAs, account <u>owner</u> Peter Kijewski, retirement income, using the AUTOMATIC ORDERS:

a. June 25, 2015, Mr. Cohen letter to TIAA-CREF, via FAX July 1, 2015 730, NYSCEF No. 399, enclosed unauthorized March 31, 2015, TIAA retirement account statement, account <u>owner</u> Peter Kijewski: "Mr. Kijewski has the following accounts with your company: (See Annual

Printout) and possibly other accounts. Please consider this as Notice to you that these restrictions are in place and be guided accordingly."

b. June 25, 2015, Mr. Cohen available letter to Vanguard, via FAX June 27, 2015 300, enclosed unauthorized Vanguard IRA account numbers, account <u>owner</u> Peter Kijewski: "Mr. Kijewski has the following accounts with your company: Individual account #0540-09785096851; Traditional IRA account #0509-09788620965 and #0056-09788620965 and possibly other accounts. Please consider this as Notice to you that these restrictions are in place and be guided accordingly."

c. June 25, 2015, Mr. Cohen letter to BNY Pershing NYSCEF No. 400, enclosed unauthorized BNY Pershing IRA account numbers and dog & cat doodle, account <u>owner</u> Peter Kijewski: "Mr. Kijewski has the following accounts with your company: J4N-301918 and possibly other accounts. Please consider this as Notice to you that these restrictions are in place and be guided accordingly."

d. June 25, 2015, Mr. Cohen letter to Lincoln Financial, to be provided by Mr. Cohen, possible contents "RMD WITHDRAWAL OF INCOME", certifying "Required Minimum Distribution" (RMD) disbursement, including mandatory quarterly estimated Federal & State tax payments.

e. **Note**: Mr. Cohen's letters specifically and inexplicably omitted: "except that any party who is already in pay status may continue to receive such payments thereunder" since May 10, 2011:

(2) ORDERED: Neither party shall transfer, encumber, assign, remove, withdraw or in any way dispose of any tax deferred funds, stocks or other

assets held in any individual retirement accounts, 401K accounts, profit sharing plans, Keogh accounts, or any other pension or retirement account, and the parties shall further refrain from applying for or requesting the payment of retirement benefits or annuity payments of any kind, without the consent of the other party in writing, or upon further order of the court ; except that any party who is already in pay status may continue to receive such payments thereunder.

    f. All divorce lawyers have learned the need to comply with

September 1, 2009, "ADMINISTRATIVE ORDER OF THE <u>CHIEF</u>

<u>ADMINISTRATIVE JUDGE OF THE COURTS</u> Pursuant to the

authority vested in me, and with the advice and consent of the

Administrative Board of the Courts, I hereby amend, effective nunc pro

tunc as of September 1, 2009, section 202.16-a of the Uniform Civil

Rules for the Supreme and County Courts to read as follows"

AUTOMATIC ORDERS amendment [Corel Office Document](https://www.nycourts.gov/LegacyPDFS/RULES/trialcourts/202-16a_amend2.pdf)

(https://www.nycourts.gov/LegacyPDFS/RULES/trialcourts/202-

16a_amend2.pdf), (<u>underline</u> emphasis in original text):

    i. "(2) Neither party shall transfer, encumber, assign,

remove, withdraw or in any way dispose of any tax deferred

funds, stocks or other assets held in any individual retirement

accounts, 401K accounts, profit sharing plans, Keogh accounts, or

any other pension or retirement account, and the parties shall

further refrain from applying for or requesting the payment of

retirement benefits or annuity payments of any kind, without the

consent of the other party in writing, or upon further order of the

court<u>, except that any party who is already in pay status may</u>

<u>continue to receive such payments thereunder</u>."

353. **Attorney Orders**: June 25, 2015 - September 20, 2017, recurring TIAA, Vanguard & BNY Pershing enforcement $0.00 retirement income, Peter Kijewski account <u>owner</u>, confirmed Attorney Orders. Attorneys Mr. Cohen and Ms. Dunn justified the enforcement action using the AUTOMATIC ORERS, violating 1) AUTOMATIC OERDERS "tax-deferred funds in pay status exception", 2) IRS Internal Revenue Code 403(b) retirement plans age 75 rule and 3) continuing AUTOMATIC ORDERS enforcement after September 2, 2016, Ms. Dunn JUDGMENT OF DIVORCE (PROPOSED) NYSCEF No. 102 and Hon. John P. Colangelo J.SC. signed JUDGMENT OF DIVORCE NYSCEF No. 107.

354. November 16, 2015, Ms. Dunn letter to Ms. Dahan NYSCEF No. 415: "Finally, as addressed in our application before the Court and as discussed in our recent correspondence, your client is obligated to withdraw the sum of $48,389.49 form one of his retirement accounts as and for his Required Minimum Distribution for 2015. Same must be requested imminently or it may not be processed within this calendar year. Such delay would subject the parties to a penalty of up to 50%, which would be a wholly unnecessary dissipation of marital funds. Ms. Kijewski (as she has historically done) has calculated your client's RMD, and a copy of these calculations is attached. Also attached is the RMD distribution request form for your client's Clear Harbor account (account number J4N-301918). Please confirm that your client will sign and submit this form to Clear Harbor as soon as possible in order to ensure that the RMD is processed within this calendar year."

355. November 23, 2015, Ms. Woolston wire communication to Ms.

Dahan and Mr. Newman NYSCEF No. 418, attachment June 25, 2015, Mr.

Cohen letter to BNY Pershing NYSCEF No. 400:

**RE: Clear Harbor Letter**
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Louis Newman;Jessica Dahan

Mon 11/23/2015 1:09 PM

Kijewski Letter.pdf **231 KB**

Hello Peter,

Please find attached the letter Pershing received in June.

I received the following reply from Pershing to my inquiry after their legal
team reviewed the RMD request:

**Morning Cat,**

**Our legal group has reviewed the Action for Divorce submitted to us
in June of this year.   Regarding the client being able to take out his
RMD, they responded with the below:**

**"This client needs to take their RMD and should have his attorney
alert Mitchell Cohen of Johnson & Cohen LLP that this action took
place and is a regulatory requirement. "**

I am initiating the RMD today as per your request on Friday.

Happy Thanksgiving!

Cat
Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

356. November 23, 2015, Ms. Woolston wire communication to Peter

Kijewski NYSCEF No. 419: "Anytime…The funds did not yet go out…I

submitted it earlier, but it can take a day or two to process…Will email when I

got notice that the funds went out…"

357. November 23, 2015, Ms. Woolston wire communication to Ms.

Dahan and Mr. Newman NYSCEF No. 420 revealing BNY Pershing Legal

Department lawyer relinquished empowered authority RMD disbursements to

Mr. Cohen:

**RE: TIAA-CREF Letter**
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Louis Newman;Jessica Dahan

<div align="right">Mon 11/23/2015 4:19 PM</div>

Pershing is now coming back with this…

Hello Cat,

After further review our legal team has said that we will not be able to remove
the block or approve the client's RMD request until we receive a letter from
the attorney acknowledging that they know of the end-clients intentions.

I'm very sorry about this…

Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

358. December 2, 2015, Ms. Dahan letter to Ms. Dunn NYSCEF No,

359:

a. "Upon the commencement of the Action for Divorce against my

client, your office sent a letter to Pershing Advisor Solutions, LLC,

instructing them of your understanding of the Automatic Orders."

b. "As a result of your instruction, Mr. Kijewski's RMD request at

Clear Harbor is currently blocked and will continue to be blocked until

they receive a letter from your office acknowledging that you are aware

of this request and that you consent to the release of the funds. As you

know, the parties will suffer financial consequences should they be

unable to obtain this RMD. Therefore, at your earliest convenience,

inform Pershing that you are aware of my client's request."

359. September 20, 2017, Ms. Dunn wire communication to BNY

Pershing, via Clear Harbor Asset Management, NYSCEF No. 355:

**From:** Maureen Dunn [mailto:MDunn@johnsoncohenlaw.com]
**Sent:** Wednesday, September 20, 2017 8:57 AM
**To:** 'cwoolston@clearharboram.com'
**Cc:** Jessica Friedrich <Jessica.Friedrich@sslllp.com>
**Subject:** Kijewski v. Kijewski

Dear Ms. Woolsten:

As you may recall, I represent Marie Kijewski in connection with the matrimonial matter against Peter Kijewski. Mr. Kijewski is currently represented by Jessica Friedrich (copied here). Ms. Friedrich advised that her client has encountered difficulty in receiving his Required Minimum Distribution from Clear Harbor as a result of the hold on the accounts that had been in effect during the pendency of the matrimonial action. Please be advised that to the extent such a hold previously existed, same is no longer required as the parties have resolved their matrimonial litigation and a judgment of divorce has been issued. Mr. Kijewski should no longer be restrained from accessing his accounts due to the previous hold.

Regards,

*Maureen A. Dunn, Esq.*
*Johnson & Cohen, LLP*
*mdunn@johnsoncohenlaw.com*
*Phone: (914) 644-7100*
*Fax: (914) 922-9500*
*www.johnsoncohenlaw.com*

### D. Preventable Federal Tax Penalties

360. June 25, 2015 - May 15, 2023, TIAA, Vanguard, BNY Pershing, Ms.

Dunn, Mr. Cohen and other parties recurring Internal Revenue Code violations,

Retirement plan and IRA required minimum distributions FAQs | Internal

Revenue Service posted rule No. 1 of 16 rules: "Retirement plan participants

and IRA owners, including owners of SEP IRAs and SIMPLE IRAs, are

responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

361. December 9, 2015, Hon. Paul I. Marx, J.S.C. No. 1 of 7, PENDENTE LITE DECISION AND ORDER NYSCEF No. 59 nearly nonexistent NYSCEF content "Internal Revenue Code":

    a. "The award shall be taxable to Plaintiff, as she does not specify any basis for departing from "the norm envisioned by current Internal Revenue Code provisions."

    b. "***Required Minimum Distribution***"

    c. "Plaintiff asks the Court to direct Defendant to distribute 50% of his Required Minimum Distribution to her. Plaintiff explains that Defendant is required to withdraw a certain amount from his retirement accounts each year or he will be charged a 50% penalty."

362. January 31, 2011, BNY Pershing Individual Retirement Account statement, Peter Kijewski account <u>owner</u>: "According to our records, you are required under federal tax law to take an annual minimum distribution from your retirement account. These required minimum distributions (RMDs) usually begin in the year you reach the age of <u>70½</u>. Failure to take the RMD when required may result in a <u>50% excise tax</u> imposed on the amount you did not take. **NOTE**: Any outstanding rollovers or recharacterizations that were not in your account on December 31 of the prior year should be added to your year-end fair market value for the previous year to calculate your RMD for the current year. Also, when taking your RMD, please consider any scheduled distribution amounts you have established which may allow you to

automatically meet all or part of your RMD. Please contact us if you are interested in establishing instructions."

363. December 31, 2016, TIAA **Portfolio Advisor** Investment Advisory Program, Individual Retirement Account Statement, Peter Kijewski A57-649187 account owner: "Your required minimum distribution amount for this year is showing zero. This could be the result of securities in your account that are not valued or your account was not on our records by December 31 of the previous year. Please review the details above and provide your Financial Institution with any updates. We will calculate your RMD once this information is received. According to our records, you are required under federal tax law to take an annual minimum distribution from your retirement account. Required minimum distributions (RMDs) usually begin in the year you reach the age of 70 ½ and is calculated by dividing your year-end fair market value by a factor determined by the Internal Revenue Service (IRS). For the year you turn 70 ½, the first RMD payment can be delayed until April 1st of the year following the year in which you turn 70 ½. For all subsequent years, including the year in which the first RMD was paid by April 1st, you must take the RMD by December 31st of the year. Please verify this calculation with your tax professional, as there may be other information that could impact your RMD. If you do not take enough to satisfy the requirement, the IRS may impose a 50% excise tax on the shortfall. To start your distributions, contact your Financial Institution."

364. October 26, 2021, TIAA Law & Compliance lawyer letter, via Ms. Perry, to Ms. Dunn & Mr. Senter NYSCEF No. 348, 349, 350, 386, 394 (page 43

of 62), 405 & 497 exposes multiple employee benefits issues.  TIAA failed to comply with the "Employee Retirement Income Security Act of 1974" (ERISA) and the Internal Revenue Code.  Substantial financial asset damage occurred, since March 6, 2018 - December 16, 2021, Peter Kijewski was needlessly forced to use his cash financial assets to pay for living expenses, minor (16) support and taxes.  October 26, 2021, TIAA letter NYSCEF No. 348 reveals TIAA enforced "pursuant to those communications, TIAA has maintained a disbursement hold on Dr. Kijewski's accounts since 2018, pending the receipt of a domestic relations order (DRO). However, TIAA has never received a DRO in this matter."

### Table 26 "Required Minimum Distribution" (RMD) 50% Penalties

| Year | TIAA IRA | Vanguard | Harvard, NEDH, BWH | MSKCC 403(b) | MSKCC 457(b) | RMDs | Penalty |
|---|---|---|---|---|---|---|---|
|  | **Tax Years 2015 - 2023 "Tax Fraud Activity" Enabled by TIAA, Vanguard and BNY Pershing** | | | | | | |
|  | Starting June 25, 2015, Ms. Dunn & Mr. Cohen recurring Court applications achieved enforcement Peter Kijewski $0.00 "Required Minimum Distribution" (RMD) disbursements, resulting in preventable stiff RMD 50% penalties. | | | | | | |
| 2015 | | | $14,915.65 | | | $14,915.65 | **$7,458** |
| 2017 | | | | $23,864.65 | | $23,864.65 | **$11,932** |
| 2018 | $21,068.25 | $27,995.73 | $17,572.89 | $39,619.68 | $8,425.71 | $114,682.27 | **$57,341** |
| 2019 | $27,296.34 | $29,663.34 | $19,134.31 | $68,324.15 | $11,073.96 | $155,492.10 | **$77,746** |
| 2020 | March 27, 2020, CARES Act, except 457(b) retirement plan payroll | | | | $15,766.56 | $15,766.56 | **$7,883** |
| 2021 | December 16, 2021 - December 27, 2021, tax years 2018 - 2021 TIAA RMD INCOME | | | | | **$439,826.37** | |
| 2021 | | $33,155.64 | | | | $33,155.64 | **$16,578** |
| 2022 | | $32,083.61 | | | | $32,083.61 | **$16,042** |
| 2023 | May 17, 2023, tax years 2018 - 2023 Vanguard balloon RMD INCOME | | | | | **$188,547.34** | |

**$122,898.32**    Total terminated RMD WITHDRAWAL OF INCOME  $389,960.48

**$61,449.16** Vanguard penalty    Total Stiff RMD 50% penalty  $194,980.24  **$194,980**

| Year | | | | | | | |
|---|---|---|---|---|---|---|---|
|  | **November 9, 2021, Ms. Dunn Injunction/Restraining Order NYSCEF No. 405** | | | | | | |
| 2021 | $38,261.50 | $33,155.64 | $22,697.88 | $104,719.34 | $22,001.16 | $220,835.52 | **$110,418** |
| 2022 | | $32,083.61 | | | | $32,083.61 | **$16,042** |

**$122,898.32**    Total terminated RMD WITHDRAWAL OF INCOME  $577,640.36

**$61,449.16** Vanguard penalty    Total Stiff RMD 50% penalty  $288,820.18  **$288,820**

Additional stiff RMD 50% penalty  **$93,840**

October 26, 2021, Plan Administrator, 403(b) & 457(b) retirement plans sponsor Memorial Sloan Kettering Cancer Center HR, thwarted Ms. Dunn, preventing RMD 50% penalty soaring to $288,820.

365. To date of the present COMPLAINT, TIAA never received any

403(b) & 457(b) retirement plans, account <u>owner</u> Peter Kijewski, Domestic

Relations Order (DRO) since June 19, 2015, no-fault Action for a Divorce

NSCEF No. 1 & 2.  October 26, 2021, TIAA letter NYSCEF No. 348:

> Brigham and Women's Hospital Professional Staff Retirement Plan
> New England Deaconess Hospital Discontinued
> Retirement Income Plan for Teaching Faculty of Harvard University
> MSKCC Retirement Savings Plan (RSP) Base Plus Match Plan
> MSKCC Retirement Savings Plan (RSP) Voluntary Plan
> MSKCC Key Employee Supplemental Savings Plan
> ~~IRA FBO Peter K Kijewski~~[2]

    a. **TIAA admission of unlawful enforcement**: October 26,

2021, TIAA letter NYSCEF No. 348 surely must be considered a TIAA

Law & Compliance lawyer admission of unlawful March 6, 2018 –

December 16, 2021, enforcement 403(b) & 457(b) retirement plans and

TIAA consolidated Portfolio Advisor IRA, A57-649187 account <u>owner</u>

Peter Kijewski, $0.00 retirement income.

    b. **TIAA caused financial assets damage**: <u>Plaintiff Peter</u>

<u>Kijewski Preventable Unprecedented Financial Asset Loss</u> due to

recurring "Required Minimum Distribution" (RMD) disbursement "hold".

Each line item can be verified using available financial statements.

Nearly all line items can be verified by retirement asset custodians!

### E. Department of Labor Investigation

366. <u>EXHIBIT 2</u>: Information about an active Department of Labor

investigation concerning <u>Unprecedented Violations - TIAA, Vanguard & BNY</u>

---

[2] TIAA deleted all IRA FBO Peter Kijewski statements, knowing TIAA A57-649187 Portfolio
Advisor IRA FBO Peter Kijewski will be highly relevant for financial asset loss Peter Kijewski
suffered.

Pershing Internal Revenue Code and "Employee Retirement Income Security

Act of 1974" (ERISA).

## XX. TIAA, Vanguard & BNY Pershing Retirement Income Disbursement "Hold" Enabled Ms. Dunn Fraudulent "Investment Experience" Scheme

### A. December 16, 2016, Ms. Dahan Offered Just, Fair & Timely TIAA IRA $468,997 Domestic Relations Order (DRO)

367. September 2, 2016, Hon. John P. Colangelo, J.S.C. No. 2, Judgment of Divorce NYSCEF No. 107:

> a. "**ORDERED AND ADJUDGED** that equitable distribution shall be as set forth in the parties' Stipulation of Settlement; and it is further"

> b. "**ORDERED AND ADJUDGED** that pursuant to the Stipulation of Settlement, a separate Qualified Domestic Relations Order shall be issued simultaneously herewith or as soon as practicable; and it is further …"

368. Table 13 December 8, 2016, Actuary Robert Guarnera NYSCEF No. 116 calculated just, fair & timely $468,997 Domestic Relations Order (IRA).

369. December 16, 2016, Ms. Dahan wire communication to Ms. Dunn NYSCEF No. 119 reveals proposed Hon. John P. Colangelo, J.S.C. No. 2 of 7, just, fair & timely "DOMESTIC RELATIONS ORDER (IRA)", "ACCOUNT A57649187", "The Custodian is directed to transfer, at the direction of the Former Spouse, $468,997 of the account balance as of the date of transfer to the Former Spouse."

370. "The Custodian is directed to transfer, at the direction of the Former Spouse, $468,997 of the account balance as of the date of transfer to

the Former Spouse" resolves the issue of the Domestic Relations Order (DRO) included term (6), unenforceable due to IRS Internal Revenue Code: "(6) Any distributions received by the Former Spouse pursuant to this Order will be included as gross income by the Former Spouse. For the purposes of Section 72 of the Internal Revenue Code, the Former Spouse and not the IRA <u>Owner</u> shall be treated as the distributee of any distribution or payment made by any IRA pursuant to this Order."

371. January 5, 2017, Ms. Dunn wire communication to Ms. Dahan NYSCEF No. 121: "I have discussed this with Marie and quite frankly, Peter's position does not make sense and we do not consent to using TIAA Cref for the QDRO."

## B. April 17, 2017, Ms. Dunn Filed Court <u>Application</u> No. 3 NYSCEF No. 109, Replacing $468,997 Domestic Relations Order (DRO)

372. April 17, 2017, Ms. Dunn Court <u>Application</u> No. 3 NYSCEF No.109:

a. "D. Awarding Plaintiff counsel fees in the sum of $5,000.00 for the legal fees incurred in the connection with this application as a result of Defendant's conduct;"

b. "ORDERED, that pending the hearing and determination of this application, Defendant's retirement assets maintained at TIAA-CREF and Vanguard shall be restrained, and no withdrawals or transfers shall be permitted except for the pending transfer from Defendant's TIAA-CREF IRA account to Defendant's Vanguard IRA account (account number 88045718421);"

373. October 1, 2016 - March 31, 2017, Ms. Dunn Process Notes and Invoices NYSCEF No. 125.

374. April 17, 2017, Ms. Dunn **AFFIRMATION IN SUPPORT** NYSCEF No. 111:

a. "2. As Plaintiff has set forth in detail in her affidavit, Defendant has engaged in a course of conduct that was designed to and did prejudice Plaintiff and impair her rights. Defendant delayed retaining the services of Robert Guarnera to prepare the necessary QDROs in this matter for several months. Unbeknownst to Plaintiff, affirmant, or Defendant's own counsel, he actually transferred over half a million dollars out of one of his retirement accounts (the Vanguard IRA account) prior to retaining Mr. Guarnera. He then allowed nearly two months to pass without informing anyone of his deception, and while affirmatively misrepresenting the fact that he had transferred these funds, only admitting to his deception after his lies about his RMD were brought to light."

b. "5. Because of Defendant's constantly changing story and his prior lies regarding the status of his retirement assets, affirmant requested through Defendant's counsel that Defendant provide an authorization to speak with his financial representatives at both TIAA-CREF and Vanguard. If the transfer had in fact been requested and was simply processing, surely these financial representatives would be able to confirm that and Plaintiff could be assured that the matter would be resolved shortly. This request was made to Ms. Dahan by telephone on

March 31st and again by emails dated April 11th and April 13th. Copies

of those emails are annexed hereto as **Exhibit "11".** While Ms. Dahan

initially advised by telephone that she did not anticipate that there

would be any issue in obtaining the authorization from Defendant, none

was provided and despite two follow up emails and a request that the

authorization be provided by April 14th, none has been received to date."

    c. "10. Given Defendant's contemptuous and fraudulent conduct

to date, and the legal fees incurred by Plaintiff as a direct result of

Defendant's actions, it is respectfully submitted that Defendant should

be directed to pay $5,000 toward Plaintiff's counsel fees in this matter."

375. April 15, 2017, Ms. Kijewski **AFFIDAVIT IN SUPPORT**

NYSCEF No. 110, Ms. Kijewski asserted Peter Kijewski flight risk to

Germany, retirement assets in suitcase:

    a. "8. On December 16, instead of a signed QDRO, Ms. Dahan

sent my attorney a revised version of the QDRO prepared by Mr.

Guarnera, which Defendant apparently revised with the help of his

"finance person". However, Defendant changed the reference to

Vanguard to instead be "TIAA-CREF", and changed the percentage that

I was to receive to be a fixed sum instead. Ms. Dahan described these

changes as "minor edits" but they in fact were far different than what

was prepared by Mr. Guarnera, as the fixed sum would not provide me

with the benefit of the investment experience of the account (as a

percentage would) and as TIAA-CREF requires pre-approval for a

QDRO to be processed and they would not accept this form. My attorney

responded to Ms. Dahan raising these issues. Copies of this correspondence are annexed hereto collectively as Exhibit "8"."

b. "14. I am aware that Defendant is planning to retire in late June and I am concerned that he will not cooperate with this process and will then leave the country, returning to Germany where he grew up, maintains a bank account, owns property and where his brothers reside. If he does so, and transfers his retirement assets to a foreign bank, I will have no way of enforcing the Stipulation and obtaining the significant retirement assets that are owed to me pursuant to our divorce."

376. July 17, 2017, Hon. Janet C. Malone, J.S.C. No. 3 of 7,

**STIPULATION** NYSCEF No. 132: 1) terminated TIAA & Vanguard retirement plans and IRA TRO 2) Ms. Dunn cashed $5,000 and 3) Ms. Dunn removed Interpol Red Notice.

## C. March 20, 2018, Court User Filed Court <u>Application</u> No. 5 NYSCEF No. 163, Replacing $468,997 Domestic Relations Order (DRO)

377. September 20, 2017, Ms. Dunn letter to BNY Pershing, via Clear Harbor Asset Management, NYSCEF No. 355 terminated June 25, 2015, AUTOMATIC ORDERS "Required Minimum Distribution" (RMD) disbursement restraints NYSCEF No. 400.

378. December 15, 2017, Ms. Dunn letter to Ms. Friedrich NYSCEF No. 154 reveals Ms. Dunn rejected Ms. Friedrich and Peter Kijewski offer assignment of $567,761.60 Vanguard retirement interests, account <u>owner</u> Peter Kijewski, to Marie Kijewski, $567,761.60 Vanguard retirement

interests, account <u>owner</u> Marie Kijewski, substantial exceeding July 26, 2016, Stipulation of Settlement <u>contract</u> NYSCEF No. 100 (14 pages) in the amount of $468,997:

a. "The parties executed the Stipulation of Settlement on July 26, 2016." NYSCEF No. 100.

b. "In summary, your client has acted in bad faith by: 1) transferring the funds without notifying anyone, while he knew the QDROs were in the process of being prepared; 2) delaying the return transfer of funds to the Vanguard IRA by 6 months from November, 2016 to May, 2017; 3) failing to transfer an amount sufficient to account for the growth that the account would have experienced had it been undisturbed; and 4) failing to appropriately reinvest the funds into VTSAX shares in May when requested."

c. "These actions have now resulted in Ms. Kijewski being unable to obtain her fair and appropriate share of the Vanguard IRA account. At yesterday's share price of $66.31, the account balance of $567,761.60 is approximately $172,000 less than the total account value would have held had the funds been undisturbed."

d. "Her proposal to resolve this issue with regard to the Vanguard IRA, therefore, is that your client transfer (from another IRA account already factored into the Vanguard QDRO, e.g., the Clear Harbor account) an amount of money sufficient to bring the Vanguard IRA account balance to the number of shares of VTSAX owed to her."

e. "Additionally, I am still awaiting statements for your client's TIAA accounts, which you have advised would be provided. I remind you that your client should make no transfers or withdrawals to any of the TIAA accounts which will be the subject of the TIAA QDRO to be prepared by Mr. Guarnera."

f. "Absent an agreement on these issues as set forth above by Tuesday, December 19th, Ms. Kijewski is prepared to renew her application for contempt and seek relief from the Court, which, given your client's conduct, will include an application for counsel fees. Further, absent the Vanguard transfer being made and the Vanguard QDRO being signed by December 31st, as well as the pension QDRO and accompanying stipulation having been signed by that date, Ms. Kijewski will be seeking the Court's intervention."

g. January 15, 2018, Ms. Dunn NYSCEF No. 154 initiated the false $1,000,000 "Investment Experience" retirement assets claim, while Defendants Ms. Dunn, Mr. Cohen & Ms. Kijewski knew Ms. Kijewski was entitled to maximum $468,997 retirement assets: "Curiously, he is currently benefitting from retaining in excess of one million dollars in retirement assets belonging to Ms. Kijewski."

h. January 15, 2018, Ms. Dunn NYSCEF No. 154: "This matter could be easily resolved if your client agrees to the reasonable proposal made by Ms. Kijewski. Simply put, Ms. Kijewski will not agree to sign the QDRO for the Vanguard account while leaving the issue of the more than $89,000 owed to her up for further debate; she is entitled to this

sum, and your client must agree to compensate her for same or we will be seeking the Court's intervention."

i. January 17, 2018, Ms. Dunn NYSCEF No. 154 (**bold** highlight in original text): "Your claim that your client's mortgage application was jeopardized by the missing $50,000 (the approximate value of your client's half of the Roth account) is also untenable and unsupported by any documentation. Curiously, he is currently benefitting from retaining in excess of **one million dollars** in retirement assets belonging to Ms. Kijewski. Did he fully disclose on his mortgage application that a large portion of his retirement accounts were not actually his property?"

j. December 15, 2017, NYSCEF No. 154 page 14 of 14, Ms. Dunn appended Robert Guarnera "KIJEWSKI RETIREMENT ASSETS" calculation, revealing Ms. Dunn client Ms. Kijewski is entitled to maximum $468,997 retirement assets, complying with July 26, 2016, Stipulation of Settlement contract NYSCEF No. 100.

379. February 28, 2018, Ms. Dunn filed "ORDER TO SHOW CAUSE" Court Application No. 4, NYSCEF No. 133: "G. Awarding Plaintiff counsel fees in the sum of $25,000.00 for the legal fees incurred as a result of Defendant's conduct and in the connection with this application, with leave to seek additional fees;"

380. February 26, 2018, Ms. Kijewski Affidavit NYSCEF No. 134 (15 pages):

a. "Defendant still retains over $1,000,000 of my retirement assets despite 18 months having passed since our divorce judgment was entered, and despite thousands of dollars in legal fees having been spent in an effort to gain his compliance. It is clear that Defendant has no intention to cooperate and that litigation is the only option for me to obtain what is rightfully mine."

b. "14. As a result of Defendant's deceitful actions, I was forced to file an application on April 17, 2017, seeking to hold him in contempt. At that time I requested, and was granted, immediate relief which included a temporary order freezing Defendant's retirement assets at TIAA-CREF and Vanguard, except for the transfer of the IRA account discussed above back to Vanguard."

381. February 27, 2018, Ms. Dunn, Affirmation in Support NYSCEF No. 135:

a. "4. Additionally, Defendant has caused numerous substantial changes to be made to his TIAA retirement accounts, including changing account numbers, co-mingling accounts, and the disappearance of an IRA account altogether. Defendant has failed to produce the statements for this account to enable Plaintiff to determine what changes were made."

b. "7. A copy of Plaintiff's redacted billing history from June 1, 2017 through January 31, 2018 is annexed hereto as **Exhibit "22"**".

c. "8. Affirmant's experience includes handling custody, support, complex equitable distribution matters, and prenuptial agreements, among other family law matters."

d. "10. Given Defendant's contemptuous and fraudulent conduct to date, and the legal fees incurred by Plaintiff as a direct result of Defendant's actions, it is respectfully submitted that Defendant should be directed to pay $25,000 toward Plaintiff's counsel fees in this matter."

382. June 30, 2015, Peter Kijewski TIAA-CREF **Quarterly Retirement Portfolio Statement** NYSCEF No. 155, filed February 28, 2018, by Ms. Dunn, defines potential $468,997 Domestic Relations Order (DRO).

383. December 31, 2017, Peter Kijewski TIAA-CREF **Quarterly Retirement Portfolio Statement** NYSCEF No. 156.

384. June 1, 2017 - January 31, 2018, Ms. Dunn Process Notes and Invoices NYSCEF No. 158.

385. **Ms. Dunn Pause**: February 28, 2018 - April 9, 2018, Ms. Dunn paused further NYSCEF filing:

a. Ms. Dunn and Ms. Kijewski composed various documents, total 156 pages, available but never filed in NYSCEF, for presentation to Hon. Lewis J. Lubell, J.S.C. No. 4 of 7.

b. Ms. Dunn and Ms. Kijewski required additional time to invent justification for enforcement Peter Kijewski 403(b) & 457(b) retirement plans and IRAs "Required Minimum Distribution" (RMD) "hold".

386. March 20, 2018, Hon. Lewis J. Lubell, NYS J.S.C. No. 5, OSC IMMEDIATE RELIEF REQUESTED Court Application No. 5 NYSCEF No. 163, using total 156 page written by Ms. Dunn and Ms. Kijewski without NYSCEF filing: "UPON READING AND FILING the annexed affidavit of the Plaintiff, MARIE FOLEY KIJEWSKI, duly sworn to on the 14th day of March, 2018, the affirmation of MAUREEN A. DUNN, ESQ., dated March 14, 2018, and all the papers and proceedings heretofore had herein".

387. March 22, 2018, Ms. Dunn letter to TIAA-CREF, "03/22/2018 16:08" via FAX, NYSCEF No. 364, attached March 20, 2018, Hon. Lewis J. Lubell, NYS J.S.C. No. 5, OSC IMMEDIATE RELIEF REQUESTED Court Application No. 5 NYSCEF No. 163: "Please be advised that your undersigned represents Marie Kijewski in connection with her pending post-judgment matrimonial matter against her ex-husband, Peter Kijewski. An Order to Show Cause was signed by Hon. Lewis J. Lubell in connection with this matter, and said Order temporarily restrains all retirement accounts maintained by Mr. Kijewski at TIAA-CREF, so that no transfers or withdrawals may be made out of any retirement accounts, and no changes may be made to the status of said accounts. A copy of the Order is enclosed for service upon you; your attention is directed to the last paragraph on the bottom of page 2 of the Order, which continues onto the top of page 3 of the Order.  Upon information and belief, Mr. Kijewski maintains several retirement accounts with your company. A list of account numbers is included on the attached Order. Please be advised that no transfers or withdrawals

shall be made from either these accounts or any other retirement accounts pending further Order of the Court."

388. March 22, 2018, Ms. Dunn letter to Vanguard, "03 24 2018 0300" via FAX, NYSCEF No. 365, attached March 20, 2018, Hon. Lewis J. Lubell, NYS J.S.C. No. 5, OSC IMMEDIATE RELIEF REQUESTED Court Application No. 5 NYSCEF No. 163: "Please be advised that your undersigned represents Marie Kijewski in connection with her pending post-judgment matrimonial matter against her ex-husband, Peter Kijewski. An Order to Show Cause was signed by Hon. Lewis J. Lubell in connection with this matter, and said Order temporarily restrains all retirement accounts maintained by Mr. Kijewski at Vanguard, so that no transfers or withdrawals may be made out of any retirement accounts. A copy of the Order is enclosed for service upon you; your attention is directed to the first full paragraph on page 3 of the Order. Upon information and belief, Mr. Kijewski maintains the following retirement accounts with your company: account ending xxx8421. Please be advised that no transfers or withdrawals shall be made from this account or any other retirement accounts pending further Order of the Court."

389. March 28, 2018, Ms. Stutman **MEMORANDUM OF LAW** NYSCEF No. 165 (8 pages): "**THE STIPULATION DOES NOT PROVIDE FOR THE DISTRIBUTION OF INVESTMENT EXPERIENCE; THEREFORE, THE QDROS CANNOT ADD THAT RELIEF**" affirming July 26, 2016, Stipulation of Settlement contract NYSCEF No. 100.

390. March 14, 2018, Ms. Dunn "NOTICE OF HARDCOPY SUBMISSION -- E-FILED CASE" NYSCEF No. 166, included March 20, 2018,

Hon. Lewis J. Lubell, NYS J.S.C. No. 5, I**MMEDIATE RELIEF**

**REQUESTED <u>ORDER TO SHOW CAUSE</u>** Court <u>Application</u> No. 5

NYSCEF No. 163, filed March 28, 2018, by Ms. Friedrich.

 391. March 28, 2018, Ms. Friedrich filed:

  a. "R. Guarnera's hand-written calculations" NYSCEF No. 168,

listing $468,997 retirement assets to be assigned to Ms. Kijewski.

  b. "Defendant's counsel's email re Roth IRA 07.07.2017" NYSCEF

No. 174, attached November 2, 2017, Memorial Sloan Kettering Cancer

Center payroll check "EXACTLY *********0 AND DOLLARS AND 00

CENTS" demand by Ms. Dunn and $104,767.09 taxes and deductions

listing Ms. Dunn firmly believes are also "EXACTLY *********0 AND

DOLLARS AND 00 CENTS".

 392. March 3, 2018, "Automatic RMD" NYSCEF No. 181, filed April 9,

2018, by Ms. Friedrich, "First Pay Date 4/20/2018", continuing "Required

Minimum Distribution" (RMD) disbursements, would have prevented Peter

Kijewski catastrophic financial assets squandering and RMD 50% penalties:

  **Federal Tax Withholding** 20.00%
  **State Tax Withholding** 5.10%
  **State of Tax Withholding** MA

 393. **Ms. Dunn Pause**: April 9, 2018, Ms. Dunn lifted February 28,

2018, NYSCEF Court <u>Application</u> No. 4 filing pause.

  a. April 9, 2018, Ms. Kijewski **<u>AFFIDAVIT IN REPLY</u>** NYSCEF

No. 182 (15 pages) about "Investment Experience": "3. Instead, due to

Defendant's conduct, I am yet to receive the funds owed to me

(approximately $1,000,000); if the Court were to believe Defendant's

argument, then I am the only one penalized by this delay, which has certainly not been the result of my actions, and I would lose hundreds of thousands of dollars in investment experience that has been generated over the past nearly 3 years since the divorce was commenced."

   b. April 9, 2018, Ms. Dunn **<u>AFFIRMATION IN REPLY</u>** NYSCEF No. 183 five (5) pages about "Investment Experience": "3. Defendant asserts in his opposition to Plaintiff's application that the parties' Stipulation of Settlement did not intend to include the investment experience generated on their collective $3.7 million dollars of retirement assets from the date of commencement in June, 2015 through the date of division, which has been repeatedly and needlessly delayed as a result of Defendant's deceitful and contemptuous conduct. Notably, Defendant's opposition papers do not include an affirmation from his counsel, but instead relies solely on Defendant's assertions."

   c. April 9, 2018, Ms. Dunn **<u>MEMORANDUM OF LAW</u>** NYSCEF No. 184 "**Point I: The Parties' Stipulation of Settlement Clearly Anticipated the Inclusion of Investment Experience After Commencement and Should be Enforced**" in opposition to March 28, 2018, Ms. Stutman Memorandum of Law NYSCEF No. 165 "**THE STIPULATION DOES NOT PROVIDE FOR THE DISTRIBUTION OF INVESTMENT EXPERIENCE; <u>THEREFORE, THE QDROS CANNOT ADD THAT RELIEF</u>**".

394. March 10, 2016, Ms. Dahan **WITHOUT PREJUDICE FOR SETTLEMENT PURPOSES ONLY NOT TO BE USED IN ANY COURT**

**PROCEEDING** NYSCEF No. 189 (51 pages), "Defendant's prior attempts to defraud Plaintiff", filed April 9, 2018, by Ms. Dunn:

a. Sharpie black redaction: "3. <u>Child Support</u>: For settlement purposes, we have calculated child support predicated on the income figures utilized by the Court in the pendente lite Decision. Defendant's income, after Social Security and Medicare taxes is $283,531 plus $32,250 for social security and $11,951 from a pension aggregating $327,732 and Plaintiff's income is $73,493, for combined parental income of $401,225. Defendant's income represents 81.6% of the total combined parental income. On the basis of a $200,000 "cap" the presumptive amount of basic child support would be $34,000 per year or $2,833.33 per month. However, as Plaintiff receives $1,343 per month from SSI for Joseph's social security, the basic child support should be reduced by $1,343 per month. The remaining sum of $1,490 should be allocated 81.6% to Defendant or $1,216.11 per month."

b. Peter Kijewski account number changes, Ms. Dunn serial false claims "to trick and defraud" her client Ms. Kijewski, pages 13 - 15 of 51:

i. September 1, 1975, TIAA contract "A-697778-7" CREF contract "P-697778-4", forty-nine (49) years later:

ii. December 31, 2024, TIAA contract "TIAA A697778-7" CREF contract "P697778-4".

395. February 1, 2018 - March 31, 2018, Ms. Dunn Process Notes and Invoices NYSCEF No. 191, paid by Ms. Dunn client Ms. Kijewski for Court Applications 4 & 5 NYSCEF filing, to be reimbursed by Peter Kijewski.

396. April 10, 2018, NYSCEF No. 193 (7 pages), which uses a false analysis of April 10, 2018, Ms. Dunn subpoenaed tax year 2016 Peter Kijewski Federal tax return NYSCEF No. 195 (12 pages), indisputably exposing 1) restraining Peter Kijewski TIAA & Vanguard retirement income and 2) coercing Peter Kijewski use his financial assets to pay for living expenses, taxes, including tuition taxes, and child support.

397. May 17, 2018, Ms. Kijewski Sur-Reply Affidavit NYSCEF No. 200 (12 pages) serial defamation against Peter Kijewski using "715 pages of documentation":

    a. "2. I am grateful for the opportunity to file yet another affidavit. We regret the volume of material that has been submitted to the court, but we have received from Defendant, by very late production on April 23, 2018, TIAA statements for IRA account A57-649187 that he had been ordered to produce by court order on March 9, 2018. Upon careful review of these statements, as well as 715 pages of documentation that were received between April 2nd and April 6th as a result of subpoenas issued by my attorney, I have uncovered information crucial to my case that makes it necessary to update my previous affidavits, which were based on incomplete information. Furthermore, these recently obtained documents contain additional

strong evidence of Defendant's duplicity in his dealings with me and my

attorney and provide additional support for my petition for legal fees."

398. May 17, 2018, Ms. Dunn Sur-Reply Affirmation NYSCEF No. 201

(4 pages) false assertion:

a. "However, Defendant failed to include all of his retirement

accounts and in fact did not produce statements for the account number

A57-649187. Plaintiff only discovered the existence of this account after

receiving subpoena compliance from CitiMortgage; Defendant had

produced those account statements in connection with his mortgage

application just a few months prior to Plaintiff's motion to this Court,

yet he had conveniently not produced them through counsel to my

office.", since Ms. Dunn viewed and rejected A57-649187 IRA account

money exposed in December 16, 2016 NYSCEF No. 119 & 144 (<mark>yellow</mark>

highlight in original text): "(c) "IRA" shall mean the IRA Account FBO

Peter K. Kijewski (<mark>ACCOUNT A57649187</mark>)."

399. May 18, 2018, Peter Kijewski stellar bio NYSCEF No. 204, 205,

206 & 207, published by Ms. Dunn in NYSCEF, including colorized

photograph of black/white photograph published June 25, 2015, NYSCEF No.

3, revealing no evidence of fraudulent activities.

400. May 18, 2018, "TIAA Questions" NYSCEF No. 209 about

retirement plans "contract numbers were changed" by Peter Kijewski, which

in fact occur exclusively due to hospital mergers:

**Table 27 June 30, 2015 & December 31, 2017, TIAA Quarterly Retirement Portfolio Statements**

| | | | | | |
|---|---|---|---|---|---|
| TIAA Account Statements: Peter Kijewski Owner 403(b) & 457(b) Retirement Plans | | | | | |
| Account **numbers** and custodians change due to medical institution **merger activity**. | | | | | |
| April 10, 2018, Ms. Kijewski **AFFIDAVIT IN REPLY** Court Application No. 5 NYSCEF No. 193 revealing Ms. Kijewski retirement plans analysis. | | | | | |
| Retirement plan **account numbers** Ms. Kijewski included in her analysis. | | | | | |
| The category of the accounts and IRS Internal Revenue Code rules do **NOT** change: 403(b) & 457(b). | | | | | |
| Retirement plan **sponsor** labels do **NOT** change. | | | | | |
| Valid $468,997 Domestic Relations Order (DRO) calculated any time, including after "Required Minimum Distribution" (RMD) disbursement. | | | | | |
| Date | Years | Viewed By | Sponsor labels with/without hospital merger | Merge | Account # with and without "-" |
| 6/30/2015 | 0.0 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA A697778-7, CREF P697778-4 |
| 6/30/2015 | 0.0 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA C368602-3, CREF U368602-1 |
| 6/30/2015 | 0.0 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | Other Investments |
| 12/31/2017 | 2.5 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA A697778-7, CREF P697778-4 |
| 12/31/2017 | 2.5 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA C368602-3, CREF U368602-1 |
| 12/31/2017 | 2.5 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | Add | TIAA C8156MO-9, CREF U8156MO-7 |
| 6/30/2015 | 0.0 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) VOLUNTARY PLAN | No | TIAA K599435-1, CREF J599435-3 |
| 12/31/2017 | 2.5 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) VOLUNTARY PLAN | No | TIAA K599435-1, CREF J599435-3 |
| 6/30/2015 | 0.0 | Ms. Kijewski | MSKCC KEY EMPLOYEE SUPPLEMENTAL SAVINGS PLAN | No | TIAA L875497-4, Other Investments |
| 12/31/2017 | 2.5 | Ms. Kijewski | MSKCC KEY EMPLOYEE SUPPLEMENTAL SAVINGS PLAN | No | TIAA L875497-4, CREF L875497-4 |
| 6/30/2015 | 0.0 | Ms. Kijewski | RETIREMENT INCOME PLAN FOR TEACHING FACULTY OF HARVARD UNIV | No | TIAA A697778-7, CREF P697778-4 |
| 12/31/2017 | 2.5 | Ms. Kijewski | RETIREMENT INCOME PLAN FOR TEACHING FACULTY OF HARVARD UNIV | No | TIAA A697778-7, CREF P697778-4 |
| 6/30/2015 | 0.0 | Ms. Kijewski | NEW ENGLAND DEACONESS HOSPITAL DISCONTINUED | Yes | TIAA A697778-7, CREF P697778-4 |
| 12/31/2017 | 2.5 | Ms. Kijewski | NEW ENGLAND DEACONESS HOSPITAL DISCONTINUED | Yes | TIAA C8256LT-5, CREF U8256LT-3 |
| 6/30/2015 | 0.0 | Ms. Kijewski | BRIGHAM AND WOMENS HOSPITAL PROFESSIONAL STAFF | Yes | TIAA A697778-7, CREF P697778-4 |
| 12/31/2017 | 2.5 | Ms. Kijewski | BRIGHAM AND WOMENS HOSPITAL PROFESSIONAL STAFF | Yes | TIAA C8126LV-5, CREF U8126LV-3 |

401. **June 1, 2018, NYSCEF Filing Pause**: June 1, 2021, Ms. Friedrich filed NYSCEF documents about Peter Kijewski mortgage application, life insurance and "AFFIDAVIT OF DEFENDANT (Motion #4)" NYSCEF No. 215.

**D. October 8, 2018, Ms. Dunn Filed Court Application No. 6 NYSCEF No. 219, Replacing $468,997 Domestic Relations Order (DRO)**

402. **NYSCEF Filing Pause**: Court User terminated June 1, 2018 - October 5, 2018, NYSCEF filing pause.

403. October 5, 2018, Special Referee Josephine Trovini "Referee's Report" NYSCEF No. 218, Ms. Dunn Court Applications No. 4 & 5 "Decided Before Justice: Trovini, Josephine":

a. "This matter was assigned to the undersigned Special Referee pursuant to the standing orders of the Hon. Alan D. Scheinkman, JSC, dated September 5, 2017 and December 13, 2017."

b. "The following papers were read with regard to the instant report and recommendation: Order to Show Cause (Sequence 5); Affidavit of Marie Foley Kijewski, sworn to March 14, 2018, Affirmation of Maureen A. Dunn, Esq., dated March 14, 2018, with all exhibits annexed thereto": March 20, 2018, Hon. Lewis J. Lubell, NYS J.S.C. No. 4 of 7, signed "Order to Show Cause (Sequence 5)", filed March 23, 2018, omitting NYSCEF filing of the remaining documents Special Referee Josephine Trovini read.

c. March 14, 2018, Court Application No. 5 failed to occur: "On March 14, 2018, plaintiff filed another Order to Show Cause (Sequence No. 5) seeking an order: (i) directing defendant's retirement assets at TIAA-CREF be restrained an no withdrawals or transfers be permitted from said accounts until the necessary QDROs for said accounts have been executed; (ii) directing that defendant be prevented from making any changes to the status of the retirement assets maintained in his name at TIAA-CREF including any annuity elections, payout elections, or any other change in the current account status; (iii) directing defendant's retirement assets maintained at Vanguard be restrained and that no withdrawals or transfers be permitted from said accounts until the necessary QDROs have been executed; and (iv) such other and further relief as to the court seems just and proper. Upon signing the

order to show cause, the Court (Lubell, J.) restrained defendant from changing the status of any of his accounts at TIAA-CREF and Vanguard."

d. March 14, 2018, Ms. Kijewski signed **AFFIDAVIT IN SUPPORT** (9 pages), exposing gross violation of Court rules, considering Paul Cowie, TIAA CFP, Portfolio Advisor WMA, will be able to confirm Ms. Kijewski engaged in unprecedented defamation against Peter Kijewski and concealed her derogatory remarks:

i. "1. I am requesting that these restraining orders go into effect immediately. I have not provided notice of this application to Defendant or his attorneys for the reasons set forth herein."

ii. "15. Defendant has demonstrated a clear pattern of deceitful behavior designed to thwart my ability to receive my share of our marital retirement assets. He did this by fraudulently transferring funds from both his Vanguard and TIAA-CREF retirement accounts and by continuing to lie to me, my attorney, and likely even his own attorneys about his actions. I believe that if Defendant becomes aware of this application for a restraining order on his accounts, he will take further action to transfer funds, initiate payouts, or otherwise impede my ability to receive my fair share of these funds as contemplated under our Stipulation. Defendant has no need to access these funds at this time and a restraining order is necessary to ensure that the funds that remain are not disturbed in any way until the QDROs are

prepared and processed. Furthermore, the restraining order will provide a motivation for Defendant to cooperate with this process, which has dragged on for over a year and a half so far."

e. March 14, 2018, Ms. Dunn signed **AFFIRMATION IN SUPPORT**, exposing gross violation of Court rules, considering Paul Cowie, TIAA CFP, Portfolio Advisor WMA, will be able to confirm Ms. Dunn engaged in unprecedented defamation against Peter Kijewski and attempted to conceal her derogatory remarks:

    i. "3. Upon receipt of the complete statements on March 1st, it became clear that Defendant has been engaged in an effort to hide funds and thwart Plaintiffs ability to receive her fair share of retirement assets, and that these actions have been occurring for at least 16 months. Defendant has made misrepresentations about the location of funds which were just discovered, and given his past actions, his claim through counsel that his financial advisor made such drastic changes to his accounts without his knowledge is simply not credible. Had Defendant truly been unaware of the changes to his accounts, then he would have cooperated far earlier and would not have opposed Plaintiffs request for an authorization to speak to his financial advisor."

    ii. "4. Defendant is attempting to hide his activity with regard to these retirement assets. No notice has been provided to Defendant or his counsel with regard to the instant application as, given his prior conduct, Defendant is likely to make further

changes to his accounts if he becomes aware of the relief being sought in this application. Plaintiff's application details how she would be prejudiced by any elections Defendant may make to the status of his retirement accounts prior to their distribution to her via QDRO."

f. October 5, 2018, "Referee's Report" NYSCEF No. 218:

 i. "**A. Background** Plaintiff also asserts there is one other QDRO that must be prepared with regard to defendant's TIAA accounts, specifically 5 sub accounts for TIAA-CREF, that were not included in the Vanguard QDRO. She further alleges that of the 5 accounts that were to be divided, only 3 are identifiable, and of those, 2 changed contract numbers. In addition, plaintiff contends that two additional accounts can no longer be identified upon reviewing the recent statements.":

 ii. The referenced accounts have always been identifiable as shown in table "Hospital Mergers Cause Contract Number Changes".

 iii. Ms. Kijewski will not be able to receive any retirement assets unless Ms. Dunn submits a $468,997 Domestic Relations Order (DRO) to Peter Kijewski retirement asset custodians.

g. "**B. Parties' Assertions** With regard to motion sequence 5, plaintiff asserts that, based upon defendant's failure to cooperate in dividing the retirement assets and his transfer of such assets without her knowledge, the accounts at Vanguard and TIAA-CREF should be

restrained until the parties can settle their issues regarding the division of their retirement assets. Defendant asserts, in part, that the restraint is not warranted and that the restraint is prohibiting him from taking his required minimum distributions.":

    i. Special Referee Josephine Trovini "Referee's Report" would have been unnecessary in the event all parties had complied with IRS, Department of the Treasury, Internal Revenue Code and demanded prompt implementation of automatic quarterly scheduled "Required Minimum Distribution" (RMD) disbursements, starting May 10, 2011.

h. "**C. Legal Analysis** With regard to motion sequence number 5, it is recommended that defendant's retirement assets at Vanguard and TIAA-CREF be restrained until the necessary QDROs are processed, subject to a hearing to be held regarding whether defendant needs to make withdrawals from the accounts to take his required minium (sic) distribution.":

    i. Special Referee Josephine Trovini fails to reference IRS, Department of the Treasury, Internal Revenue Code: "Retirement plan participants and IRA owners, including owners of SEP IRAs and SIMPLE IRAs, are responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

404. October 8, 2018, Ms. Dunn faced two options:

a. Promptly submit a $468,997 Domestic Relations Order (DRO) to Peter Kijewski retirement asset custodians.

b. File October 8, 2016, Court <u>Application</u> No. 6 NYSCEF No. 219.

405. October 18, 2018, Ms. Dunn filed Court <u>Application</u> No. 7 NYSCEF No. 237: "A. Confirming the Report and Recommendation of Special Referee Josephine Trovini dated October 5, 2018, pursuant to CPLR 4403 and 22 NYCRR 202.44(b);"

406. November 15, 2018, Ms. Dunn **AFFIRMAITON IN REPLY** Court <u>Application</u> No. 7 NYSCEF No. 245: "**Issue #1 - The Inclusion of Investment Experience:**"

a. "4. First, Defendant's counsel asserts that the Referee incorrectly determined that the parties' retirement assets should be divided to include <u>investment experience</u> accrued since the commencement of this action in June, 2015, based upon the Referee's review of the language in the parties' Stipulation of Settlement. In support of this argument, counsel submits that a QDRO may not convey rights that are not provided within the Stipulation of Settlement. Counsel is correct in this case law, but misses the point. In the present case, the Referee determined that the Stipulation did intend to provide for the inclusion of <u>investment experience</u> on the retirement accounts subsequent to the date of commencement. Having made that determination, the Court would not be granting or conveying any rights in a QDRO that were not provided in the Stipulation of Settlement."

b. "5. Counsel's reference to the Monroe County Supreme Court

decision in ***Dutille v. Dutille***, 52 Misc. 3d 303; 28 N.Y.S.3d 813

(Monroe Cty. 2016) is similarly misplaced, as same addresses the

division of a defined benefit plan and whether the ex-wife's stipulated

40% share of same should be fixed at the date of the agreement, or

should include three year period between the execution of the

agreement and the commencement of a divorce action. The comparison

of the ex-husband's pension benefits to the Defendant's retirement

assets in the case at bar is not appropriately made. In the ***Dutille*** case,

the ex-wife was seeking to increase her previously agreed-upon share by

virtue of the ex-husband's actual contributions to the defined benefit

plan subsequent to the agreement. In this case, Plaintiff seeks only her

share of the passive <u>investment experience</u> of a previously existing

asset; any actual post-commencement contributions made by Defendant

to these assets, as well as the <u>investment experience</u> realized upon the

post-commencement contributions, is clearly excluded from division by

the terms of the parties' Stipulation."

c. "6. Counsel's assertion that the Referee erred by referencing the

***A.Y. v. R.A.*** case (38 Misc. 3d 1212(A); 966 N.Y.S.2d 344 [Westchester

Cty. 2013]) is yet another red herring. While the Referee did cite to this

case, a careful reading of this portion of the Referee's Report makes it

clear that she did not rely upon the case for the proposition that "in a

post matrimonial matter, a Court may deviate from the terms of a

stipulation when presented with compelling and unanticipated changes

in circumstances." In fact, the Referee's Report determined that the language of the parties' Stipulation did clearly intend to include the <u>investment experience</u> when dividing the retirement assets, and thus her report and recommendation did not deviate from the terms of the parties' stipulation."

     d. "7. Finally, counsel's reliance on the negative implication canon of construction is also misapplied in this instance. As counsel states, the canon provides that "where a text describes the particular situations in which it is to apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded." However, that premise actually supports Plaintiff's argument. In the context of this case, the parties' Stipulation provided clear exceptions from the marital portion of the retirement assets, by acknowledging (and ascribing a value to) Defendant's pre-marital contributions, as well as the <u>investment experience</u> enjoyed thereon, and also by acknowledging the parties' post-commencement contributions, together with <u>investment experience</u>. Thus, given the Stipulation, the inference must be made that everything specifically mentioned (i.e. the pre-marital and post-commencement portions) was intended to be separate property, and anything omitted or excluded was intended to be marital."

## E. Peter Kijewski Analysis of Ms. Dunn "Investment Experience"

     407. <u>Table 6</u> June 19, 2015, Mr. Cohen, using 403(b) & 457(b) retirement plans & IRAs statements in his possession, account <u>owner</u> Peter

Kijewski, inexplicably rejected a just, fair and timely Equitable Distribution

settlement, benefitting all parties.

408. November 15, 2018, Ms. Dunn **AFFIRMATION IN REPLY** Court

Application No. 7 NYSCEF No. 245: "As a result, the total shares of VTSAX

that would have been in the account now is 11,356.772[3], and the value of those

shares (as of November 13, 2018) would be $769,534.87. **The most recent**

**balance available to Plaintiff of Defendant's Vanguard IRA account is**

**$567,761.60, a difference of over $200,000;**"

409. Analysis of Ms. Dunn numbers reveals her grossly false claim due

to an inexplicable error concerning number of shares and omission of known

adjustments:

### Table 28 November 13, 2018, Ms. Dunn False "Investment Experience" Claim

| November 13, 2018, Ms. Dunn False "Investment Experience" Claim | | | | | |
|---|---|---|---|---|---|
| **Federal + State Law Compliance Failure**: "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)." | | | | | |
| Date | Years | Share Price | Shares | Assignment of IRA | Performance Report |
| 6/19/2015 | 0.0 | $53.52 | 9,215.1 | $493,192 | Potential tax-deferred IRA to alternate payee. |
| 6/19/2015 | 0.0 | $53.52 | (452.1) | ($24,195) | Actual Ms. Kijewski 1/2 tax year 2015 RMD. |
| 6/19/2015 | 0.0 | $53.52 | 8,763.0 | $468,997 | Robert Guarnera adjusted tax-deferred IRA. |
| 6/19/2015 | 0.0 | $53.52 | (770.0) | ($41,210) | Ms. Kijewski permanent retention 1/2 Roth IRA. |
| 6/19/2015 | 0.0 | $53.52 | (1,026.7) | ($54,947) | Convert Roth IRA to tax-deferred IRA, 25% tax rate. |
| 6/19/2015 | 0.0 | $53.52 | 7,736.4 | $414,051 | Actual shares owed after adjustment |
| 11/13/2018 | 3.4 | $67.76 | 7,736.4 | $524,217 | $ amount including "Investment Experience". |
| 11/13/2018 | 3.4 | $67.76 | 11,356.8 | $769,535 | Ms. Dunn grossly false claim. |
| | | | | $245,318 | Difference between Ms. Dunn claim and actual amount. |

410. Table 6 Actuary Robert Guarnera calculations include the

adjustments Ms. Dunn omitted.

411. Additional false claims:

a. December 15, 2017, Ms. Dunn letter to Ms. Friedrich NYSCEF

No. 154: "Curiously, he is currently benefitting from retaining in excess

of one million dollars in retirement assets belonging to Ms. Kijewski."

b. Peter Kijewski has the power to reinvest frozen IRA account.

## F. August 7, 2019, Special Referee Josephine Trovini Order: Ms. Dunn Must Submit a $468,997 Domestic Relations Order (DRO)

412. August 7, 2019, Court transcript Special Referee Josephin Trovini

SO ORDERED NSYCEF No. 306 (37 pages):

"THE COURT": Special Referee Josephine Trovini.

THE COURT: Let the record reflect the Court's report and recommendation was confirmed on January 17, 2019 by Judge Lubell.

To your knowledge, has defendant complied with that paragraph on page 12 of the report and recommendation and has the Vanguard account been transferred?

MS. DUNN: It has not.

THE COURT: And do you have an application with regard thereto?

MS. DUNN: Your Honor, Miss Kijewski would like the Court's permission to submit a QDRO transferring the entirety of the Vanguard account to her and then to have permission to submit a supplemental QDRO from a separate IRA account maintained by Mr. Kijewski to transfer the balance she should have received. It's not specifically before the Court at this time.

THE COURT: I was looking at the relief in the
report and recommendation, the relief that was
sought at that time, and time has transpired,
that that was not sought in the initial Order to
Show Cause and inasmuch as we are required to
give due notice and provide an opportunity for
defendant to be heard with regard to any new
relief, it appears to me that you would have to
file another Order to Show Cause seeking the new
relief that you are requesting because this was
not previously requested. Unfortunately we cannot
grant relief on changed circumstances without
the formality of a motion. I will have to deny
that today with leave to renew.

MS. DUNN: Additionally, the Court may recall
Motion Sequence 4 and 5 with regard to Mr.
Kijewski retirement interest maintained at TIAA
Kref.

With regard to the accounts maintained by Mr.
Kijewski, part of the request for relief included
obtaining copies of statements of those accounts
to determine the changes that had been made by Mr.
Kijewski to those accounts between the date of the
parties divorce stipulation in July of 2016 to
present. We have been able to ascertain numerous
changes that were made and as a result Miss
Kijewski would be submitting an application to
permit her to submit a QDRO to the Court that
would provide her with her share of those accounts

in a manner that might not be entirely consistent
with the terms of the stipulation due to the
changes made to the accounts by Mr. Kijewski.

    THE COURT: To the extent you are seeking a
deviation from the stipulation, which is a
contract that this Court is obligated to enforce,
you would be required to submit an additional
Order to Show Cause.

    MS. DUNN: Understood.

413. Ms. Dunn failed to understand and neglected to submit a $468,997
Domestic Relations Order (DRO).

### G. November 5, 2021, Ms. Dunn Filed Court <u>Application</u> No. 13 NSYCEF No. 380, Replacing 468,997 Domestic Relation Order (DRO)

414. August 12, 2021, Vincent Ford, TIAA QDRO Relationship
Manager, Response to Ms. Dunn Subpoena NYSCEF No. 484 (42 pages)
includes Peter Kijewski TIAA retirement account statements and instructions
for composing a $468,997 Domestic Relations Order (DRO).

415. October 26, 2021, TIAA "Dear Ms. Dunn & Mr. Senter" Letter,
NYSCEF No. 348 informed Ms. Dunn about "Required Minimum Distribution"
(RMD) disbursement "hold" and TIAA having never received a $468,997
Domestic Relations Order (DRO).

416. November 5, 2021, Ms. Dunn **<u>ORDER TO SHOW CAUSE</u>**
**<u>INTERIM RELIEF REQUESTED</u>** NYSCEF No. 380:

    a. "A. Directing that Defendant, Peter K. Kijewski, shall be
restrained from withdrawing and/or transferring any funds from his

retirement assets maintained at TIAA-CREF, including without
limitation his Brigham and Women's Hospital Professional Staff
Retirement Plan; New England Deaconess Hospital Discontinued;
Retirement Income Plan for Teaching Faculty of Harvard University;
MSKCC Retirement Savings Plan (RSP) Base Plus Match Plan;
MSKCC Retirement Saving Plan (RSP) Voluntary Plan; MSKCC Key
Employee Supplemental Savings Plan; and RIA (sic) FBO Peter K.
Kijewski, until the necessary Qualified Domestic Relations Order(s) for
said account have been executed and processed and the funds
distributed to Plaintiff or until further Order of this Court; and"

b. "B. Directing that Defendant be prevented from making any
changes to the status of the retirement assets maintained in his name
at TIAA-CREF, including without limitation his Brigham and Women's
Hospital Professional Staff Retirement Plan; New England Deaconess
Hospital Discontinued; Retirement Income Plan for Teaching Faculty of
Harvard University; MSKCC Retirement Savings Plan (RSP) Base Plus
Match Plan; MSKCC Retirement Saving Plan (RSP) Voluntary Plan;
MSKCC Key Employee Supplemental Savings Plan; and RIA (sic) FBO
Peter K. Kijewski, including any annuity elections, payout elections, or
any other change in the current account status; and"

c. "C. Granting Plaintiff such other, further, and different relief
as to the Court may seem just and proper"

d. " **SUFFICIENT REASON APPEARING THEREFOR,** it is
hereby"

e. "**ORDERED,** that pending the hearing and determination of this matter, Defendant is hereby restrained and enjoined from withdrawing and/or transferring any funds from his retirement assets maintained at TIAA-CREF, including without limitation his Brigham and Women's Hospital Professional Staff Retirement Plan; New England Deaconess Hospital Discontinued; Retirement Income Plan for Teaching Faculty of Harvard University; MSKCC Retirement Savings Plan (RSP) Base Plus Match Plan; MSKCC Retirement Saving Plan (RSP) Voluntary Plan; MSKCC Key Employee Supplemental Savings Plan; and RIA (sic) FBO Peter K. Kijewski; and it is further"

f. "**ORDERED,** that pending the hearing and determination of this matter, Defendant is hereby restrained and enjoined from making any changes to the status of the retirement assets maintained in his name at TIAA-CREF, including without limitation his Brigham and Women's Hospital Professional Staff Retirement Plan; New England Deaconess Hospital Discontinued; Retirement Income Plan for Teaching Faculty of Harvard University; MSKCC Retirement Savings Plan (RSP) Base Plus Match Plan; MSKCC Retirement Saving Plan (RSP) Voluntary Plan; MSKCC Key Employee Supplemental Savings Plan; and RIA (sic) FBO Peter K. Kijewski, including any annuity elections, payout elections, or any other change in the current account status."

417. To date of the present COMPLAINT, Ms. Dunn never submitted any Domestic Relations Order (DRO) for the retirement plans she enumerated in her Oder:

a. "Brigham and Women's Hospital Professional Staff Retirement

Plan; New England Deaconess Hospital Discontinued; Retirement

Income Plan for Teaching Faculty of Harvard University; MSKCC

Retirement Savings Plan (RSP) Base Plus Match Plan; MSKCC

Retirement Saving Plan (RSP) Voluntary Plan; MSKCC Key Employee

Supplemental Savings Plan;"

418. November 9, 2021, Hon. Nancy Quinn Koba, J.S.C. No. 5 of 7,

signed Ms. Dunn **ORDER TO SHOW CAUSE INTERIM RELIEF**

**REQUESTED** NYSCEF No. 404, redacted "**ORDERED,** that answering

papers, if any, shall be served upon Plaintiff's counsel and filed with the Court

..."

419. December 16, 2021 - December 27, 2021, TIAA Law & Compliance

lawyers discovered an army of TIAA Law & Compliance lawyers can release a

torrent of retirement account cash, without facing Ms. Dunn demand for

clawback and deposit Federal & State tax withholding, account <u>owner</u> Peter

Kijewski.

## H. Ms. Dunn Benefits due to Eight (8+) Years Withholding $468,997 Domestic Relations Order (DRO)

420. Ms. Dunn achieved recovery of Peter Kijewski "is currently

benefitting from retaining in excess of one million dollars in retirement assets

belonging to Ms. Kijewski", including "Investment Experience":

## Table 29 March 8, 2023, Ms. Dunn Money Judgment

| Date | Legal Fee | Interest | Total Legal Fee | Child Support | Interest | Total Support |
|---|---|---|---|---|---|---|
|  | March 8, 2023, Ms. Dunn Money Judgment NYSCEF No. 529 + Included NYSCEF No. 506 |||||||
| 11/30/2022 | $10,000.00 | $0.00 | $10,000.00 | $28,687.50 | $0.00 | $28,687.50 |
| 5/17/2023 | $9,500.00 | $2,855.47 | $12,355.47 | $38,250.00 | $12,430.73 | $50,680.73 |
| 5/17/2023 | $60,000.00 | $18,034.52 | $78,034.52 | $0.00 | $0.00 | $0.00 |
| 6/14/2023 | $10,000.00 | $0.00 | $10,000.00 | $0.00 | $0.00 | $0.00 |
| | | | $110,389.99 | $0.00 | $0.00 | $79,368.23 |

| | |
|---|---|
| Total cash payments to Maureen A. Dunn, Esq. | $189,758.22 |
| Peter K. Kijewski Vanguard RMD WITTHDRAWAL OF INCOME after tax withholding | $160,265.24 |
| Peter K. Kijewski Federal and State tax | ($28,282.10) |
| Peter K. Kijewski net cash Vanguard RMD WITHDRAWAL OF INCOME | $131,983.14 |
| **Peter K. Kijewski Deficit** | **($57,775.08)** |
| Accounting for **tax-deferred** retirement plans withdrawal: **Total Deficit** | **($77,033.44)** |

421. Ms. Dunn TIAA & Vanguard IRA assignment to her client:

## Table 30 TIAA & Vanguard IRA Assignment to Ms. Kijewski

| Damage due to TIAA, Vanguard & BNY Mellon Pershing Recurring Enforcement $0.00 Retirement Income | | | | |
|---|---|---|---|---|
| Federal + State Law Compliance Failure: "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)." | | | | |
| September 2, 2016, Ms. Dunn Judgment of Divorce NYSCEF No. 102 Equitable Distribution Failure: "ORDERED AND ADJUDGED that equitable distribution shall be as set forth in the parties' Stipulation of Settlement"; July 26, 2016, Stipulation of Settlement NYSCEF No. 100. | | | | |

| Date | Years | Account | Share Price | Amount |
|---|---|---|---|---|
| 6/19/2015 | 0.0 | Ms. Kijewski BNY Pershing Individual Retirement Account (IRA) owner | $53.52 | $188,049 |
| 6/19/2015 | 0.0 | Ms. Kijewski Vanguard Individual Retirement Account (IRA) owner | $53.52 | $108,063 |
| 6/19/2015 | 0.0 | Ms. Kijewski tax-free Roth IRA owner | $53.52 | $82,420 |
| 6/19/2015 | 0.0 | Peter Kijewski tax year 2015 IRA "Required Minimum Distribution" (RMD) | $53.52 | $48,389 |
| 6/25/2015 | 0.0 | Dictation of letter to TIAA-CREF | | $95 |
| 6/25/2015 | 0.0 | Dictation of letter to Pershing Advisor Solutions LLC | | $95 |
| 6/25/2015 | 0.0 | Dictation of letter to Vanguard | | $95 |
| 6/25/2015 | 0.0 | Dictation of letter to Lincoln Financial | | $95 |
| 6/25/2015 | 0.0 | Telephone conference with client | | $95 |
| 3/22/2018 | 2.7 | Ms. Dunn TIAA "Temporary Restraining Order" NYSCEF No. 364 | | |
| 3/22/2018 | 2.7 | Ms. Dunn Vanguard "Temporary Restraining Order" NYSCEF No. 365 | | |
| 5/15/2023 | 7.9 | Peter Kijewski Vanguard IRA owner: "Transfer to another account" | | $423,238 |
| 5/15/2023 | 7.9 | Peter Kijewski Vanguard IRA owner: "Dividend to another account" | | $1,221 |
| 8/22/2023 | 8.2 | TIAA IRA "DIVORCE/QUALIFIED DOMESTIC RELATIONS ORDER TRANSFER TBIIX" | | $498,349 |
| 8/22/2023 | 8.2 | Ms. Kijewski 1/2 tax year 2015 RMD share | $106.38 | $48,091 |
| 8/22/2023 | 8.2 | Ms. Kijewski retained Roth IRA, tax-deferred conversion, 25% tax rate. | $106.38 | $218,431 |
| 8/22/2023 | 8.2 | Ms. Kijewski Individual Retirement Account (IRA) owner due to transfer | | $1,189,330 |
| 8/22/2023 | 8.2 | Ms. Kijewski Individual Retirement Account (IRA) owner since June 19, 2015 | $106.38 | $588,572 |
| 8/22/2023 | 8.2 | **DEFENDANT Ms. Kijewski TOTAL IRA Owner** | | **$1,777,902** |
| 8/22/2023 | 8.2 | **PLAINTIFF Peter Kijewski TOTAL IRA Owner** | | **$0** |
| 12/31/2022 | 7.5 | TIAA & Vanguard RMD 50% Penalty | | ($194,980) |
| 3/20/2024 | 8.7 | Lawyer Process Notes and Invoices | | ($570,134) |

422. **Prohibited**: To date of the present COMPLAINT, Ms. Dunn never submitted to Peter Kijewski retirement asset custodian TIAA any 403(b) and 457(b) retirement plans Domestic Relations Order (DRO), concurrent with Ms. Dunn Court Applications achieving Peter Kijewski retirement asset custodian TIAA recurring 403(b) and 457(b) retirement plans disbursement "hold", since June 19, 2015, Action for a Divorce NYSCEF No. 1 & 2.

423. March 8, 2023, Ms. Dunn **ORDER** NYSCEF No. 529 (22 pages) Ms. Dunn failed to include:

a. January 19, 2023, Hon. Thomas Quinones, J.S.C. No. 6 or 7, NYSCEF No. 521, listing retirement asset values for just, fair & timely $468,997 Domestic Relations Order (DRO):

**Table 31 December 8, 2016, Actuary Robert Guarnera and January 19, 2023, Kijewski Retirement Assets Comparison**

| KIJEWSKI RETIREMENT ASSETS |
|---|
| January 19, 2023, Retirement Accounts List |
| Plaintiff's Clear Harbor IRA account with a date of commencement balance of $188,049; |
| MARIE Clear Harbor IRA 188049 |
| Plaintiffs Vanguard IRA account with a date of commencement balance of $108,063; |
| MARIE Vanguard IRA 108063 |
| Plaintiff's TIAA account with a date of commencement balance of $417,373; |
| MARIE TIAA 417373 |
| Plaintiff's Fidelity account with a date of commencement balance of $300,957; |
| MARIE Fidelity 300957 |
| Defendant's Clear Harbor IRA account with a date of commencement balance of $196,301; |
| Peter Clear Harbor IRA 196301 |
| Defendant's Vanguard IRA account with a date of commencement balance of $555,984; |
| Peter Vanguard IRA 555984 |
| Defendant's Vanguard IRA account with a date of commencement balance of $96,714; |
| Peter Vanguard IRA 96714 |
| Defendant's Lincoln 403(b) account with a date of commencement balance of $51,424; |
| Peter Lincoln 403B 51424 |
| Defendant's T1AA MSKCC account with a date of commencement balance of $830,966; |
| Peter TIAA MSKCC(OTH) 830966.1 |
| and Defendant's TIAA IRA account with a date of commencement balance of $269,437; |
| Peter TIAA IRA 269437 |

b. <u>Table 13</u> December 8, 2016, Actuary Robert Guarnera

NYSCEF No. 116 Domestic Relations Order (DRO) calculations:

### KIJEWSKI RETIREMENT ASSETS

| <u>Peter</u> | | | <u>MARIE</u> | |
|---|---|---|---|---|
| Clear Harbor IRA | 196301 | | Clear Harbor IRA | 188049 |
| Vanguard IRA | 555984 | | Vanguard IRA | 108063 |
| Vanguard IRA | 96714 | | TIAA | 417373 |
| Lincoln 403B | 51424 | | Fidelity | <u>300957</u> |
| TIAA MSKCC(OTH) | 830966* | | | 1014442* |
| TIAA IRA | 269437 | | | |
| | $ 2000826  −$1014442 =$ 986384 | | | |
| | | X.5 | | |
| | | 493192 | | |
| | 1/2 2015 RMD | − 24195 | | |
| | | $468,997 | | |
| * Does NOT Include Accounts with Premarital | | | | |
| ** Excludes NON TAXABLE ROTH IRA | | | | |

# I. Contact Information

424. A substantial number of attorneys and parties have been participants in disputes about TIAA, Vanguard & BNY Pershing recurring "Required Minimum Distribution" (RMD) disbursements "hold" since June 19, 2015, no-fault Action for a Divorce NYSCEF No. 1 &2.

425. EXHIBIT 13 lists contact information about attorneys and parties.

426. EXHIBIT 14 ABA letter expresses concerns about attorney conduct, including potential solutions.

427. No one should be surprised ABA initiatives by "technologists, design experts and computer scientists" will find "21st century solutions":

    a. Defendant: Owner of his retirement plans & IRAs.

    b. Plaintiff: Owner of her retirement plans & IRAs.

    c. Submission of a just, fair and timely $493,192 Domestic Relations Order (DRO) to TIAA, Vanguard and/or BNY Pershing may result in assignment of $493,192 retirement interests from Defendant account owner to Plaintiff $493,192 retirement interests account owner.

    d. Property Owners: "Retirement plan participants and IRA owners, including owners of SEP IRAs and SIMPLE IRAs, are responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

    e. "Without it, people cannot fully protect their rights, liberty and property; and the public's confidence in our justice system is put at risk."

## XXI. TIAA "Fiduciary Acknowledgment under ERISA and Internal Revenue Code"

428. EXHIBIT 22 July 31, 2023, TIAA Client Relationship Summary, Section "**Fiduciary Acknowledgment under ERISA and Internal Revenue Code**" specifically confirms TIAA ERISA and Internal Revenue Code fiduciary responsibilities: "Recommendations to enroll in an IRA, rollover/transfer to or from a Plan or IRA, or to begin lifetime income are "Covered Recommendations." When we make Covered Recommendations to you, we are fiduciaries within the meaning of Title I of the Employee Retirement Income Security Act ("ERISA") and/or the Internal Revenue Code, as applicable, which are laws governing retirement accounts. The way we make money creates some conflicts with your interests when we make Covered Recommendations, so we operate under a special rule that requires us to act in your best interest and not put our interest ahead of yours. Certain Plans (like governmental plans) are not covered by ERISA; however, our internal policies and procedures require us to adhere to the same fiduciary standard when we provide Covered Recommendations on non-ERISA Plan assets."

429. "We operate under a special rule that requires us to act in your best interest": Review, analysis and understanding of numerous TIAA letters Plaintiff Peter Kijewski received, expose TIAA Law & Compliance lawyers always acted in the best interest of Ms. Dunn, Mr. Cohen and client Ms. Kijewski.  Retirement asset custodian TIAA 403(b) and 457(b) retirement plans and IRAs, account owner Peter Kijewski, enforced recurring $0.00

retirement income without having received any Domestic Relations Order

(DRO).

430. To date, Ms. Dunn never submitted to TIAA any 403(b) & 457(b)

retirement plans Domestic Relations Order (DRO).  Ms. Dunn email exposes

June 25, 2015 - December 11, 2023, TIAA never terminated Ms. Dunn

attempts to achieve Peter Kijewski $0.00 retirement income:

**Fwd: Kijewski**
AK
Alyson Kuritzky<AKuritzky@Abramslaw.com>
To:You
Cc:Jill Spielberg
<div align="right">Mon 12/11/2023 11:41 PM</div>

Peter

Please see email below and advise. Your immediate response is appreciated. Thank you.

Alyson

Begin forwarded message:


**From:** Maureen Dunn <mdunn@johnsoncohenlaw.com>
**Date:** December 11, 2023 at 9:01:57 AM EST
**To:** Jill Spielberg <JSpielberg@abramslaw.com>, Alyson Kuritzky
<AKuritzky@abramslaw.com>
**Subject: Kijewski**

**Caution: This email originated outside of the organization**

Good morning:

I have been advised by TIAA that your client has sought to obtain a distribution from them in the
sum of $25,000, beyond his Required Minimum Distributions which he has already received for
this year (and which total $108,587.17). As you are well aware, the current court order prevents
any distributions other than RMDs from his accounts. His request is a direct violation of the terms
of the current restraining orders. If he obtains this distribution, we will have no choice but to file
an application to hold him in contempt, yet again.

We have requested his updated TIAA account statements to prepare the final QDROs that are
necessary in this matter, and he has failed to produce same.

**Please confirm by close of business tomorrow that he will cancel his requested distribution and
will produce his statements year to date so that we can send you a proposed QDRO for your/his
review.**

Thank you,

Maureen A. Dunn, Esq.
Partner
Johnson & Cohen, LLP
mdunn@johnsoncohenlaw.com

Phone: (914) 644-7100
Fax: (914) 922-9500
www.johnsoncohenlaw.com

**NOTICE TO RECIPIENT: This email transmission is meant only for the intended recipient of this transmission. This transmission may be a communication privileged by law. If you have received this transmission in error, any review, use, dissemination, distribution, or copying of this email is strictly prohibited. Please notify us by return email of the error and delete this message from your system. Thank you for your cooperation.**

431. June 22, 2022, TIAA letter to Peter Kijewski reveals TIAA Law & Compliance lawyers acted in the best interest of Ms. Dunn enriching herself, revealed in her Process Notes and Invoices NYSCEF filing: "You have repeatedly expressed concerns about the activities of the opposing party and her counsel in your domestic relations proceedings. We strongly encourage you to work with your own counsel to resolve this situation. As plan record keeper, TIAA has no role in investigating the activities of either party."

432. TIAA enforcement actions against Peter Kijewski enabled Ms. Dunn "to discover areas of vulnerability for these clients, called "pain points," to "create pain" by helping clients "self-realize" the financial vulnerability, and then to recommend" May 23, 2023, to Hon. James L. Hyer J.S.C. No. 7:

The parties further acknowledge that the trading price of VTSAX at the close of the market on 5/14/23 was $99.83 per share. As a result, Plaintiff was entitled to a total of $1,027,035.27. The shortfall remaining due and owing Plaintiff is therefore $602,576.59.

433. Peter Kijewski "self-realized" his financial vulnerability and signed assignment of his IRAs to Ms. Kijewski, account <u>owner</u>, to avoid: "Defendant shall be committed to the custody of the Westchester County Commissioner of

Corrections to be incarcerated at the Westchester County Jail for a period to be determined by the Court."

434. Federal Court review and analysis TBD:

a. December 16, 2016, Hon. John P. Colangelo, J.S.C. No. 2 of 7, potential DOMESTIC RELATIONS ORDER (TIAA A57-649187 Portfolio Advisor IRA) NYSCEF No. 119, filed April 17, 2017, by Ms. Dunn, resulted in Ms. Dunn actions:

i. **<u>Rejected</u>**: January 5, 2017, Ms. Dunn wire communication to Ms. Dahan NYSCEF No. 121: "I have discussed this with Marie and quite frankly, Peter's position does not make sense and we do not consent to using TIAA Cref for the QDRO".

ii. **<u>Accepted</u>**: July 24, 2023, Hon. James L. Hyer, J.S.C. No. 7 of 7, DOMESTIC RELATIONS ORDER (TIAA A57-649187 Portfolio Advisor IRA) NYSCEF No. 553.

iii. **<u>Accepted</u>**: January 17, 2018, Ms. Dunn wire communication to "Dear Ms. Friedrich" NYSCEF No. 154: "As for the Roth IRA, we have documentation establishing that Ms. Kijewski had been attempting to transfer half of this account (which is worth less than 5% of the amount your client owes to her) to your client since at least September of 2016, and he did not cooperate with these efforts, so your attempt to place blame on her for the account having not yet been transferred is wholly misplaced. Moreover, we always consulted your client and obtained his agreement before any transfers or changes in

investments were made. Your claim that your client's mortgage application was jeopardized by the missing $50,000 (the approximate value of your client's half of the Roth account) is also untenable and unsupported by any documentation. Curiously, he is currently benefitting from retaining in excess of **one million dollars** in retirement assets belonging to Ms. Kijewski. Did he fully disclose on his mortgage application that a large portion of his retirement accounts were not actually his property?" [**Bold** highlight by Ms. Dunn]

### Table 32 May 15, 2023, Vanguard IRA & August 22, 2023, TIAA IRA Assignment to Ms. Kijewski

| Damage due to TIAA, Vanguard & BNY Mellon Pershing Recurring Enforcement $0.00 Retirement Income | | | |
|---|---|---|---|
| 5/15/2023 | 7.9 | Peter Kijewski Vanguard IRA owner: "Transfer to another account" | $423,238 |
| 5/15/2023 | 7.9 | Peter Kijewski Vanguard IRA owner: "Dividend to another account" | $1,221 |
| 8/22/2023 | 8.2 | TIAA IRA **"DIVORCE/QUALIFIED DOMESTIC RELATIONS ORDER TRANSFER TBIIX"** | $498,349 |

### A. TIAA Confirmation of "Employee Retirement Income Security Act of 1974" (ERISA) and Internal Revenue Code Violations

435. Highly relevant DEFENDANTS' unlawful actions are summarized analyzing October 26, 2021, TIAA Law & Compliance lawyer letter, via Ms. Elizabeth Perry, TIAA Law & Compliance Liaison, to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348, 349, 350, 386, 394 (page 43 of 62), 405 & 497.

436. October 26, 2021, TIAA letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348 enumerates retirement assets in dispute, using "further restraining order being imposed on the accounts while we work through the myriad of issues remaining in an effort to divide the retirement interests appropriately":

RE: Dr. Kijewski's TIAA Retirement Accounts held in:

Brigham and Women's Hospital Professional Staff Retirement Plan
New England Deaconess Hospital Discontinued
Retirement Income Plan for Teaching Faculty of Harvard University
MSKCC Retirement Savings Plan (RSP) Base Plus Match Plan
MSKCC Retirement Savings Plan (RSP) Voluntary Plan
MSKCC Key Employee Supplemental Savings Plan
IRA FBO Peter K Kijewski

437. October 26, 2021, TIAA letter NYSCEF No. 348: "TIAA has received multiple communications relating to a potential qualified domestic relations order (DRO) involving the subject retirement plan accounts record kept by TIAA. Pursuant to those communications, TIAA has maintained a disbursement hold on Dr. Kijewski's accounts since 2018, pending the receipt of a domestic relations order (DRO). However, TIAA has never received a DRO in this matter."

438. **TIAA Confirmation of "Employee Retirement Income Security Act of 1974" (ERISA) & IRS Internal Revenue Code Violation**: "Because TIAA has not received a DRO, we will release the disbursement hold on Dr. Kijewski's accounts if TIAA does not receive a DRO within 30 days of the date of this letter.":

a. TIAA receipt of a Domestic Relations Order (DRO) would have resulted in segregating and preserving selected retirement assets, account <u>owner</u> Peter Kijewski.

b. Since TIAA did not receive a Domestic Relations Oder (DRO), account <u>owner</u> Peter Kijewski will receive his retirement plans and IRAs retirement income disbursements to pay for living expenses, minor (16) support and taxes.

c. TIAA will terminate segregating and preserving the entirety of Peter Kijewski retirement assets!

439. **TIAA Confirmation of "Employee Retirement Income Security Act of 1974" (ERISA) & IRS Internal Revenue Code Violation**: June 22, 2022, TIAA letter to Peter Kijewski (available), Plaintiff and account <u>owner</u>: "TIAA is the record keeper for the employer-sponsored retirement plans in which you participate. In November 2021, TIAA took direction from those plans to pay your 2018, 2019, and 2021 RMDs as well as the 2018 − 2021 fixed period annuity payments. The Internal Revenue Service (IRS) waived the requirement of the 2020 RMD, therefore TIAA did not issue RMD payments for the 2020 tax year."

    a. "In November 2021, TIAA took direction from those plans": TIAA fiduciary responsibilities are equivalent to Plan Administrator, MSKCC retirement plans sponsor, confirming retirement asset custodian TIAA directions to comply with "Employee Retirement Income Security Act of 1974" (ERISA) and IRS Internal Revenue Code are never required.

    b. "2018 − 2021 fixed period annuity payments 2018 − 2021 fixed period annuity payments": Peter Kijewski CPA tax accountant noted TIAA issued an invalid tax years 2018, 2019 and 2020 tax form (available) since payments occurred in tax year 2021.

    c. "**Account Fluctuation** In December 2021, at the direction from your retirement plans, TIAA issued your 2018, 2019, and 2021 RMDs, as well as the 2018 − 2021 fixed period annuity payments. In addition, the 2018, 2019, and 2021 RMD payments were issued from your Portfolio Advisor (PA) Individual Retirement Account (IRA). These

distributions totaled $439,826.37 and caused a corresponding decrease in the balance of your accounts. It's also important to note that financial markets do fluctuate and in some years can be quite volatile. If you are concerned how market volatility will affect your retirement investments, we suggest that you speak to your advisory team. They can provide assistance towards meeting your financial goals.":

      i. **"Advisory Team"**: Nominal Paul Cowie, TIAA CFP, Portfolio Advisor WMA, actually TIAA Law & Compliance lawyers.

## XXII. Tracking TIAA, Vanguard and BNY Pershing Recurring Enforcement $0.00 RMD Disbursements

440. September 2, 2021, Ms. Thasunda Brown Duckett wrote Forget about work-life balance. Try this instead highlights tracking issue timelines leads to discovery impossible to obtain by any other means: "So how do I achieve work-life balance? I don't believe it's possible. Instead, I live my life like a diversified portfolio. I write down everything that matters to me, and I allocate my time. That step is important to me, because nothing happens unless it's tracked."

441. Starting June 25, 2015, on receipt of June 25, 2015, NYSCEF No .3, Peter Kijewski wrote down everything that matters to him and allocated his time. That step is important to Peter Kijewski, because resolution of his diversified portfolio "Required Minimum Distribution" (RMD) "hold" will never happen unless it's tracked.

442. EXHIBIT 15 lists one-hundred-twenty-nine (129) Peter Kijewski NYSCEF filings:

      a. October 31, 2021, Peter Kijewski was awarded NYSCEF username/password.

      b. Peter Kijewski was able to immediately file prepared documents.

      c. Tracking TIAA, Vanguard & BNY Pershing recuring "Required Minimum Distribution" (RMD) disbursements "hold" are the principal topic of Peter Kijewski NYSCEF filings.

d. Peter Kijewski also filed numerous highly relevant documents attorneys neglected to file in NYSCEF archive.

e. Peter Kijewski NYSCEF documents are invaluable for filing the present COMPLAINT in SDNY CM/ECF.

## XXIII. July 26, 2016, Stipulation of Settlement Contract Violation

443. This action arises from Defendants' unprecedented eight (**8+**) years 403(b) & 457(b) retirement plans and IRAs disbursement violations: "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)."

      a. Peter Kijewski, Defendant: <u>Owner</u> of his retirement plans & IRAs.

      b. Marie Kijewski, Plaintiff: <u>Owner</u> of her retirement plans & IRAs.

      c. Submission of a just, fair and timely $493,192 Domestic Relations Order (DRO) to TIAA, Vanguard and/or BNY Pershing may result in assignment of $493,192 retirement interests from Peter Kijewski account <u>owner</u> to Marie Kijewski $493,192 retirement interests account <u>owner</u>.

444. Ms. Dunn recurring NYS Court <u>Applications</u> achieved assignment of $1,027,035.27 retirement interests, Peter Kijewski account <u>owner</u>, to Ms. Dunn client Ms. Kijewski account <u>owner</u>.  A transcription error required excising Ms. Dunn May 23, 2023, yellow lined teleprompter paper.  Ms. Dunn, having written July 26, 2016, Stipulation of Settlement NYSCEF No. 100 <u>contract</u> content, understood her client was entitled to maximum delayed $468,997 retirement interests.[3]

---

[3] **NYSCEF**: New York State Courts Electronic Filing System 60606/2015, Ms. Spielberg, Ms. Kuritzky, Ms. Dunn & Mr. Cohen in secrecy since April 25, 2013.

445. **Stiff Federal Tax Penalties**: IRS, Department of the Treasury, Internal Revenue Code protects Peter Kijewski 403(b) & 457(b) retirement plans and IRAs "Required Minimum Distribution" (RMD) disbursements retirement income, since Justices of the NYS Supreme Court never **ORDER** and attorneys never cause Federal & State tax penalties: "Retirement plan participants and IRA owners, including owners of SEP IRAs and SIMPLE IRAs, are responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

446. Ms. Dunn wrote, filed and violated September 2, 2016, Judgment of Divorce NYSCEF No. 102:

> a. "**ORDERED AND ADJUDGED** that equitable distribution shall be as set forth in the parties' Stipulation of Settlement; and it is further

> b. **ORDERED AND ADJUDGED** that pursuant to the Stipulation of Settlement, a separate Qualified Domestic Relations Order shall be issued simultaneously herewith or as soon as practicable; and it is further …"

447. July 26, 2016, Stipulation of Settlement NYSCEF No. 100 lists retirement accounts resulting in maximum Ms. Dunn submission of a 468,997 Domestic Relations Order (DRO).

448. **TIAA Document Labels**: Peter Kijewski received TIAA documents revealing TIAA enforcement actions were justified using Attorney Orders:

**"To:** PETER KIJEWSKI
**From:** TIAA
**Subject:** TIAA Outbound Email
**Date:** 05/13/2020 05:00:16 PM
**Attachment:**
Response-5-9-2019-Kijewski (2).pdf (24KB)
5-25-2018-Attorney Order.pdf (57KB)
3-22-2018_Attorney Order.pdf (94KB)
4-20-2017_Ackn-of-order_Kijewski (2).pdf (29KB)
4-18-2017-Attorney-Order-.pdf (9808KB)
Response 5.13.2020 Kijewski.pdf (96KB)

**Message:**

Dear Dr. Kijewski: Please find attached correspondence in response to your May 2 letter. Sincerely, Elizabeth Perry Elizabeth Perry Sr Customer Resolution Manager Law Liaison | Retail Client Services TIAA 1670 Broadway | Suite 2200 Denver CO 80202 Phone: 303.607.2873 eperry@tiaa.org www.tiaa.org TIAA-CREF Individual & Institutional Services, LLC, Member FINRA and SIPC"

449. Table 21 Anyone reviewing, analyzing and understanding TIAA, Vanguard and BNY Pershing eight (**8+**) years recuring enforcement tax-deferred retirement plans and IRAs disbursement "hold" will result in never-seen-before verifiable financial asset loss, Peter Kijewski financial assets owner.

450. **Court Order Proposed**: Defendants promptly certify all financial asset loss line items, Peter Kijewski account owner, using available bank, retirement, investment and other financial account statements, including entirely preventable $194,980 Federal tax penalties.

451. **Financial Statements & Document Retention**: NYS Courts enumerate mandatory material retention concerning NYS Supreme Court June 19, 2015, 60606/2015 Kijewski v. Kijewski NYSCEF No. 1 & 2 + June 25, 2015, Peter Kijewski photograph NYSCEF No. 3.

## XXIV. Just, Fair & Timely $493,192 + Just, Fair & Untimely $468,997 Domestic Relations Order (DRO)

452. Table 13 December 8, 2016, Actuary Robert Guarnera calculated just & fair Domestic Relations Orders NYSCEF No. 116, page No. 3 of 3, copies filed:

       a. February 28, 2018, NYSCEF No. 141 page No. 3 of 3.

       b. February 28, 2018, NYSCEF No. 154 page No. 14 of 14.

       c. March 28, 2018, NYSCEF No. 168 page No. 1 of 1.

453. Table 6 June 24, 2015, Mr. Cohen Process Notes and Invoices listed "Review financial account listing", which Mr. Cohen could have used to submit to TIAA, Vanguard and/or BNY Pershing a just, fair and timely $493,192 Domestic Relations Order (DRO), resulting in unprecedented benefits for his client alternate payee Marie Kijewski.

454. June 25, 2015, Mr. Cohen wrote letters to TIAA, Vanguard, BNY Pershing and Lincoln Financial, denying account owner Peter Kijewski "RMD WITHDRAL OF INCOME", except Lincoln Financial continued 403(b) plan "RMD WITHDRAWAL OF INCOME.

455. December 9, 2015, Hon. Paul I. Marx, J.S.C. No. 1 of 7, PENDENTE LITE DECISION AND ORDER NYSCEF, Court Application No. 1, No. 59 reveals the exact tax year 2015 "RMD WITHDRAWAL OF INCOME" $ amount: "Plaintiff notes that Defendant has already received $2,207.60 from one retirement account. She does not ask for a portion of that distribution. Instead, Plaintiff asks that the remaining distribution of approximately $48,389.49 be divided equally between the parties."

456. Ms. Dunn legal advice:

a. Include Peter Kijewski $2,207.60 RMD WITHDRAWAL OF INCOME when calculating minor (16) support payments.

b. Include Peter Kijewski $48,389.49 RMD WITHDRAWAL OF INCOME, after Federal & State tax withholding, when calculating minor (16) support.

c. Required compliance AUTOMATIC ORDERS "tax deferred funds in pay status exception" since May 10, 2011.

457. Lincoln Financial RMD WITHDRAWAL OF INCOME:

**Table 33 Lincoln Financial RMD WITHDRAWAL OF INCOME**

| Lincoln Financial NEDH 403(b) Tax-Deferred Retirement Plan | | | |
|---|---|---|---|
| Date | Years | Type of Activity | Amount |
| 11/7/2014 | -0.6 | RMD WITHDRAWAL OF INCOME | ($1,616.50) |
| 11/6/2015 | 0.4 | RMD WITHDRAWAL OF INCOME | ($2,207.60) |
| 11/8/2016 | 1.4 | RMD WITHDRAWAL OF INCOME | ($2,277.47) |
| 11/14/2017 | 2.4 | RMD WITHDRAWAL OF INCOME | ($2,338.17) |
| 11/13/2018 | 3.4 | RMD WITHDRAWAL OF INCOME | ($2,411.60) |
| 11/12/2019 | 4.4 | RMD WITHDRAWAL OF INCOME | ($2,474.18) |
| 5/5/2020 | 4.9 | WITHDRAWAL OF PRINCIPAL | ($1,089.33) |
| 5/5/2020 | 4.9 | WITHDRAWAL OF INCOME | ($25,595.13) |
| 8/26/2020 | 5.2 | WITHDRAWAL OF PRINCIPAL | ($1,891.23) |
| 8/26/2020 | 5.2 | WITHDRAWAL OF INCOME | ($11,342.71) |
| 8/26/2020 | 5.2 | WITHDRAWAL OF PRINCIPAL | ($8,233.64) |
| 8/26/2020 | 5.2 | WITHDRAWAL OF INCOME | ($88.16) |
| | | Liquidation | ($48,240.20) |

458. **Recurring Violations of Account <u>Owner</u> Property**: December 9, 2015, Peter Kijewski wire communication to Ms. Woolston NYSCEF No. 436 attorneys and parties were informed by BNY Pershing Legal Department lawyer:

a. Peter Kijewski, Defendant: <u>Owner</u> of his retirement plans & IRAs.

b. Marie Kijewski, Plaintiff: <u>Owner</u> of her retirement plans and

IRAs

**RE: RMD**
PK
Peter Kijewski
To:Jessica Dahan;Catherine Woolston;Louis Newman

Wed 12/9/2015 8:47 PM

Catherine - I authorize that the entire $ amount as submitted by me to Clear Harbor be paid to Newman & Denney, P.C. as Attorneys and as instructed by Jessica Dahan.  The only change I authorize is the recipient of the RMD payment.

Thank you,
Peter

**From:** Catherine Woolston [mailto:CWoolston@clearharboram.com]
**Sent:** Wednesday, December 09, 2015 10:55 AM
**To:** Jessica Dahan; Peter Kijewski; Louis Newman
**Subject:** RE: RMD

Where should it be mailed?

Peter,  Can you reply by email or call me to confirm that you permit me to change the instruction page on the RMD form you dropped off the other day.

Thanks,

Cat

Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

459. December 11, 2015, $48,389.49 BNY Pershing RMD check

NYSCEF No. 437 reduces $493,192 Domestic Relations Order (DRO) to

maximum $468,997 Domestic Relations Order (DRO).

460. Recurring attorney emails reveal exorbitant time and expense

resolving the issue of $48,389.49 RMD Federal & State tax payments.

461. May 23, 2023, Ms. Dunn NYSCEF No. 548 achieved her

"Investment Experience" financial plans, using withholding submission of a

just, fair and untimely $468,997 Domestic Relations Order (DRO):

> The parties further acknowledge that the trading price of
> VTSAX at the close of the market on 5/14/23 was $99.83 per
> share.  As a result, Plaintiff was entitled to a total of
> $1,027,035.27. The shortfall remaining due and owing
> Plaintiff is therefore $602,576.59.

## XXV. Active Department of Labor Investigation

462. June 12, 2024, Peter Kijewski initiated a Department of Labor investigation.  Multiple communications have been received about an active investigation.  January 31, 2025, Karin Bautista | Benefits Advisor, United States Department of Labor, Employee Benefits Security Administration, confirmed a continuing active investigation by phone.

463. EXHIBIT documents the most recent EBSA communication.

464. **Special Emphasis**: To date of the present COMPLAINT, Ms. Dunn never submitted to retirement plans custodian TIAA, account owner Peter Kijewski, any Domestic Relations Order (DRO), concurrent with her Court Applications and numerous subpoenas resulting in:

   a. TIAA recurring enforcement Peter Kijewski $0.00 retirement income.

   b. NYSCEF filing of numerous retirement plan statements, inexplicably including active account numbers.

   c. August 12, 2021, Vincent Ford, TIAA fiduciary, mailed to Ms. Dunn, complying with Ms. Dunn subpoena, retirement plan statements, including detailed DRO/QDRO instructions NSYCEF No. 484 (42 pages)

   d. November 5, 2021, Ms. Dunn filed retirement plans Injunction/Restraining Order NYSCEF No. 394 (62 pages).

465. "Required Minimum Distribution" (RMD) 50% tax penalties justify a joint IRS, Department of the Treasury, and Department of Labor investigation of DEFENDANTS' unlawful actions.

## XXVI. Invoices and Process Notes

466. Recurring TIAA letters to Peter Kijewski advised retaining counsel. TIAA needed to write an effective CEASE AND DESIST letter to Ms. Dunn releasing Peter Kijewski "Required Minimum Distribution" (RMD) disbursement "hold" and promptly submit to retirement asset custodians a $468,997 Domestic Relations Order (DRO).

467. May 9, 2019, TIAA letter to Peter Kijewski: "This restriction will remain in place until we receive a certified copy of a court order releasing or removing the restriction or upon the successful completion of a Qualified Domestic Relations Order (QDRO). The attorneys and parties will need to resolve how to handle the RMD payments.

While we are sorry for any confusion about your RMD in 2018, this is a dispute between the parties and it's not our role to look into opposing parties' activities. We suggest that you work with your own counsel to resolve this situation."

468. April 27, 2020, TIAA letter to Peter Kijewski: "As we have also explained previously, this restriction will remain in place until: (1) we receive a certified copy of a court order releasing or removing the restriction or (2) the successful completion of a Qualified Domestic Relations Order (QDRO).  We must emphasize that this is a dispute between the parties and their counsel. We must also reiterate that you have the ability, working with your own counsel, to pursue one of the courses of action described above to resolve this situation and to receive your required minimum distribution payments."

469. February 23, 2022, TIAA letter to Peter Kijewski: "As a result of this order, the 2018, 2019, and 2020 annuity payments, from the MSKCC Key Employee Supplemental Savings Plan, were issued in 2021. In addition, the 2018 and 2019 RMD payments for the other retirement plans were also issued in 2021. Understandably you may be concerned about the tax implications of receiving the missed distributions after their respective deadlines. You may be able to request a waiver of the missed RMD penalty based on your facts and circumstances. Generally, the waiver is made with IRS Form 5329. As with any tax matter, we suggest you seek the advice of your tax advisor for additional assistance. TIAA is unable to provide legal, tax or accounting advice."

470. March 22, 2022, TIAA letter to Peter Kijewski reveals partial success: "This restriction on your accounts will remain in place until we receive a judge signed court certified copy of an order releasing or removing the restriction, or upon the successful completion of a QDRO, or if TIAA is directed by the plan to process the annual RMD.

I have communicated with your attorney that TIAA expects to pay the annual RMDs in the year in which they are due. Based on our current communications with plan sponsors, we have maintained a hold on your accounts while the alternate payee's attorney prepares a QDRO."

**Note**: Plan Administrator, MSKCC 403(b) & 457(b) retirement plans sponsor, achieved permanent "Required Minimum Distribution" (RMD) disbursements.

471. June 22, 2022, TIAA letter to Peter Kijewski: "You have repeatedly expressed concerns about the activities of the opposing party and her counsel

in your domestic relations proceedings. We strongly encourage you to work with your own counsel to resolve this situation. As plan record keeper, TIAA has no role in investigating the activities of either party."

472. December 1, 2023, TIAA quit in defeat and wrote a letter to Ms. Dunn: "Dr. Kijewsjki (sic) has requested a withdrawal from his retirement accounts. We are making you aware of this request as a courtesy. This payment will be made when the hold is released. Please note that TIAA will not send you notifications in the future should Dr. Kijewski request any additional withdrawals from his retirement plan accounts."

473. Ms. Dunn did not admit defeat and responded December 11, 2023, to Ms. Spielberg and Ms. Kuritzky by wire communication: "I have been advised by TIAA that your client has sought to obtain a distribution from them in the sum of $25,000, beyond his Required Minimum Distributions which he has already received for this year (and which total $108,587.17). As you are well aware, the current court order prevents any distributions other than RMDs from his accounts. His request is a direct violation of the terms of the current restraining orders. If he obtains this distribution, we will have no choice but to file an application to hold him in contempt, yet again.

We have requested his updated TIAA account statements to prepare the final QDROs that are necessary in this matter, and he has failed to produce same.

**Please confirm by close of business tomorrow that he will cancel his requested distribution and will produce his statements year to**

**date so that we can send you a proposed QDRO for your/his review.**"

(**bold** highlight in original text)

474. TIAA included in the December 1, 2023, letter:

RE: Dr. Kijewski's TIAA Retirement Accounts held in:

Brigham and Women's Hospital Professional Staff Retirement Plan
New England Deaconess Hospital Discontinued
Retirement Income Plan for Teaching Faculty of Harvard University
MSKCC Retirement Savings Plan (RSP) Base Plus Match Plan
MSKCC Retirement Savings Plan (RSP) Voluntary Plan
MSKCC Key Employee Supplemental Savings Plan

475. To date December 1, 2023, TIAA never received any retirement

plans Domestic Relations Order (DRO) or QDRO since June 19, 2015,

NYSCEF No. 1 & 2.

476. Table 3 Lawyers fighting about RMDs, DROs and other matters

costs a lot "while we work through the myriad of issues remaining in an effort

to divide the retirement interests appropriately".

477. November 2, 2021, Ms. Dunn novel "carve out" wire communication

to Mr. Senter NYSCEF No. 396, concerning her use of forever "Required

Minimum Distribution" (RMD) "hold": "If he does truly want to resolve these

issues, please advise if he will consent to a further restraining order being

imposed on the accounts while we work through the myriad of issues

remaining in an effort to divide the retirement interests appropriately. If he

will consent, I can discuss with my client a carve out to enable Mr. Kijewski to

remove his 2021 RMD to avoid further penalty, however those funds must first

go to pay the outstanding money judgments and child support owed to my

client."

478. To date of the present COMPLAINT, Ms. Dunn failed to remove:

a. March 22, 2018, Ms. Dunn letter to TIAA-CREF Legal Department NYSCEF No. 364, via FAX March 22, 2018 16:09, filed November 4, 2021, by Peter Kijewski: "An Order to Show Cause was signed by Hon. Lewis J. Lubell in connection with this matter, and said Order temporarily restrains all retirement accounts maintained by Mr. Kijewski at TIAA-CREF, so that no transfers or withdrawals may be made out of any retirement accounts, and no changes may be made to the status of said accounts. A copy of the Order is enclosed for service upon you; your attention is directed to the last paragraph on the bottom of page 2 of the Order, which continues onto the top of page 3 of the Order."

b. March 22, 2018, Ms. Dunn letter to Vanguard NYSCEF No. 365, via FAX March 24, 2018 3:00, filed November 4, 2021, by Peter Kijewski: "An Order to Show Cause was signed by Hon. Lewis J. Lubell in connection with this matter, and said Order temporarily restrains all retirement accounts maintained by Mr. Kijewski at Vanguard, so that no transfers or withdrawals may be made out of any retirement accounts. A copy of the Order is enclosed for service upon you; your attention is directed to the first full paragraph on page 3 of the Order."

### XXVII. TIAA Denial Retirement Planning Services

479. TIAA Certified Financial Planner®, Certified Investment Management Analyst®, posted an example of individual who was recently assigned to Peter Kijewski, enumerating services Peter Kijewski never received: "I started my career in financial services over 25 years ago and have been a TIAA Wealth Management Advisor for over 17 years. My practice focuses on helping clients coordinate their income, investment, legacy, and incapacity planning to provide a clear path forward and peace of mind as they transition to and through retirement. I love when I hear feedback from clients that I have given them confidence or relieved anxiety by helping them overcome a challenging financial obstacle. I also enjoy meeting my clients' children and extended networks of family and friends as our relationships deepen."

480. Paul Cowie, TIAA CFP, Portfolio Advisor WMA, revealed 2015 Q4 TIAA retirement plans and IRA statement:

## Wealth Management Advisor

Your Wealth Management Advisor conducts all advisory-related and financial planning services such as initial discovery, diagnosis, and presentation meetings, investment reviews, and planning for estate and investment management. Meets with clients by appointment.

**PAUL COWIE**
Wealth Management Advisor
(800) 842-2733 Ext. 235422
pcowie@tiaa-cref.org

481. Requests for retirement planning services resulted in recurring TIAA Law & Compliance lawyer letters and wire communication to Peter Kijewski, for example this TIAA Law & Compliance lawyer dementia wire communication:

**Fwd: Dr. Kijewski**

SP
Sonia Poulin
To:You

Thu 12/12/2019 7:29 PM

You forwarded this message on Mon 1/31/2022 10:32 PM

---------- Forwarded message ---------
From: **Annalora, Chris** <cannalora@tiaa.org>
Date: Thu, Dec 12, 2019 at 2:16 PM
Subject: Dr. Kijewski
To: skpoulin@gmail.com <skpoulin@gmail.com>
Cc: Perry, Elizabeth <eperry@tiaa.org>

Dear Ms. Poulin,

I'm an attorney at TIAA, and I am reaching out to you about your father, Dr. Peter Kijewski. We've been in correspondence with your father on and off for the last year or two, and we're concerned for his welfare. We've seen that he has cc'ed you on his correspondence to us, and our records indicate that you hold a full power of attorney for your father.

Dr. Kijewski has asked us to perform certain transactions on his behalf that we are unable to perform. We have attempted multiple times to explain what he needs to do so that we can accept his transaction instructions, but we're concerned that he does not understand.

Would you be willing to contact me to discuss the situation? I will be out of the office tomorrow (12/13), but I will be in all next week.

Thank you,

Chris Annalora

**J. Christian** Annalora
Senior Director, Associate General Counsel | Law & Compliance
**TIAA**

730 Third Avenue | 12th Floor
New York, NY 10017-3206
Tel:  212.916.5121
cannalora@tiaa.org
www.tiaa.org

482. Two (2) years later, December 16, 2021, Plan Administrator, MSKCC 403(b) & 457(b) retirement plans sponsor "asked us to perform certain transactions on his behalf that we are ~~unable~~ able to perform.  We have attempted multiple times to explain what he needs to do so that we can accept his transaction instructions, but we're concerned that he does ~~not~~ understand."

483. October 5, 2021, Peter Kijewski did understand and wrote to his retirement plans sponsors complaining about "TIAA has maintained a

disbursement hold on Dr. Kijewski's accounts since 2018, pending the receipt

of a domestic relations order (DRO)."

484. January 2, 2019, Peter Kijewski wrote to Special Referee Josephine

Trovini complaining about "TIAA has maintained a disbursement hold on Dr.

Kijewski's accounts since 2018, pending the receipt of a domestic relations

order (DRO)." January 2, 2019, Peter Kijewski letter, "JT" upper right corner

NYSCEF No. 283 & 373. Bookmarks expose the reasons an inordinate

amount of time needs to be allocated for review, analysis and understanding

June 19, 2015, no-fault Action for a Divorce 60606/2015 NYSCEF No. 1 & 2,

and June 25, 2015, mugshot NYSCEF No. 3.

## XXVIII. July 13, 2021, SEC CEASE AND DESIST ORDER Against TIAA

485. In 2021, TIAA was sanctioned by the U.S. Securities and Exchange Commission and the New York Attorney General for using fraudulent sales tactics to induce participants with high account balances to roll their assets into TIAA's expensive non-plan products, including:

a. Peter Kijewski TIAA Portfolio Advisor A57-689187 IRA Account and

b. Peter Kijewski TIAA Portfolio Advisor A57-666850 investment account.

486. July 13, 2021, TIAA-CREF Individual & Institutional Services, LLC: "Respondent also trained WMAs to use the rollover process to discover areas of vulnerability for these clients, called "pain points," to "create pain" by helping clients "self-realize" the financial vulnerability, and then to recommend Portfolio Advisor as the solution to their problem. ... WMAs were trained to identify a client's critical decision points, sometimes referred to in TIAA's training materials as "pain points," diagnose a client's financial vulnerabilities as part of the financial planning process, and prescribe a managed account as the solution. Respondent's training encouraged WMAs to "create pain" for clients by exposing the client's financial vulnerabilities and to use those vulnerabilities to help the client to "self-realize" to find a solution, and that a managed solution was the right option.

487. Paul Cowie, TIAA CFP, Portfolio Advisor WMA, Quarterly

Performance Reports track the timeline of Portfolio Advisor A57-689187 and

A57-666850 accounts unprecedented needless squandering.

## XXIX. Defendants Indisputable Cash Award Payments to Plaintiff Peter Kijewski Exposed in 6060/2015 NYSCEF No. 1 - 553 Content

488. March 23, 2016, Ms. Dunn wire communication to Ms. Dahan NYSCEF No. 448, including attachments:

a. Ms. Dunn wrote about AUTOMATIC ORDERS property removal violation.

b. Divorce book located in the container "HOLD FOR JOSEPH", remaining in the marital residence: "Your Best Strategy: Think Financially – Act Legally.  Make your financial concerns the centerpiece of your divorce, and work within the framework of the law.  That is the most powerful position you can take."

489. **Defendants Admissions**: Defendants actions exposed in 60606/2015 NYSCEF content:

a. Failed to consider financial concerns, resulting in unprecedented preventable financial asset loss.

b. Failed to work within the framework of the law: the Internal Revenue Code and "Employee Retirement Income Security Act of 1974" (ERISA).

c. December 9, 2015, Hon. Paul I. Marx, J.S.C. No. 1 of 7, PENDENTE LITE DECISION AND ORDER NYSCEF No. 59 includes the specific tax law "Internal Revenue Code", highly relevant tax law and precedents attorneys failed to include in interminable legal disputes: "The award shall be taxable to Plaintiff, as she does not specify any basis for departing from "the norm envisioned by current

Internal Revenue Code provisions. "*Girgenti v Girgenti,* 81 AD3d 886, 889 [2nd Dept 2011] (quoting *Grumet v Grumet,* 37 AD3d 534, 536 [2nd Dept 2007]); *see also Markopoulos v Markopoulos,* 274 AD2d 457, 459 [2nd Dept 2000]."

490. Six (**6+**) years after June 19, 2015, no-fault Action for a Divorce NYSCEF No. 1 & 2, the first lawyer disputes erupted about "Employee Retirement Income Security Act of 1974" (ERISA), revealed November 5, 2021, Ms. Dunn **AFFIRMATION IN SUPPORT** NYSCEF No. 381, which includes seven (7) "ERISA" references:

a. "10. Notwithstanding the current restraining order, affirmant recently received correspondence from TIAA indicating that they would release the "disbursement hold" on Defendant's TIAA Retirement Accounts within 30 days unless a QDRO was submitted, claiming that ERISA laws required this. A copy of this correspondence is annexed as **Exhibit "5"**."

b. "11. After becoming aware of the content of this correspondence by Defendant's rampant NYSCEF filings, affirmant contacted TIAA and spoke with Elizabeth Perry, who issued the letter in question, on November 1, 2021. Ms. Perry first advised affirmant that the reason the hold would be released was because the accounts were "ERISA accounts" and could only be restrained for 18 months.[1] Despite this, Ms. Perry assured affirmant that if a new restraining order was issued, this would effectively "restart the clock" with respect to the 18-month time frame. However, Ms. Perry followed that conversation with an email to

affirmant on November 2, 2021, wherein she wrote: "I spoke with our legal department after our call. I misspoke. Per ERISA and the IRS the 18-month time frame does not reset with a new order. Additionally, counsel for the related retirement plans is telling us that the hold on Dr. Kijewski's accounts should be released." A copy of Ms. Perry's email of November 2, 2021 is annexed as **Exhibit "6"**."

c. "[1] It should be noted that Defendant's IRA account with TIAA is not an ERISA account."

d. "12. Affirmant subsequently wrote to Ms. Perry, reminding her of the court orders and prior written confirmation of TIAA's compliance with same, and correcting her misapplication of ERISA law. Specifically, the reference that Ms. Perry had made to the 18 month time limit on restraining ERISA accounts is not applicable in this situation, as same only applies once the plan has been served with a proposed Domestic Relations Order.[2] In the instant case, no DRO has been issued or served on TIAA, and the restraining order issued by this Court cannot be construed as a DRO. A copy of this correspondence is annexed as **Exhibit "7"**. Notwithstanding this communication, no response has been received from TIAA and their continued compliance with the extant orders of this Court is not guaranteed. From the last correspondence received from TIAA (Ms. Perry's November 1st email), it appears that TIAA may even release the restraints on the TIAA Retirement Accounts now."

e. "[2] It appears that Ms. Perry was misconstruing ERISA Section

206(d)(3)(H)."

491. EXHIBIT 1 reveals October 26, 2021, correspondence NYSCEF No.

348, causing lawyer sudden ERISA disputes and Ms. Dunn filing November 5,

2021, frivolous and costly Injunction/Restraining Order NYSCEF No. 394 (62

pages).

## A. TIAA Just, Fair & Timely Cash Award Payments to Plaintiff Peter Kijewski

492. TIAA custodian of 403(b) & 457 (b) retirement plans and IRAs mandatory compliance: "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)."

493. January 31, 2018, "TIAA brokerage services, A division of TIAA Individual & Institutional Services, LLC, Member FINRA/SIPC, **TIAA PORTFOLIO ADVISOR** INVESTMENT ADVISORY PROGRAM, *Individual Retirement* Account Statement, Account Number A57-649187, Clearing through Pershing LLC, a wholly owned subsidiary of The Bank of New York Mellon Corporation (BNY Mellon), Pershing LLC, member FINRA, NYSE, SIPC", applicable since May 10, 2011:

a. "**Disclaimers and Other Important Information Regarding Your Required Minimum Distribution Summary**

According to our records, you are required under federal tax law to take an annual minimum distribution from your retirement account. Required minimum distributions (RMDs) usually begin in the year you reach the age of 70 1/2 and is calculated by dividing your year-end fair market value by a factor determined by the Internal Revenue Service (IRS). For the year you turn 70 1/2, the first RMD payment can be delayed until April 1st of the year following the year in which you turn

70 1/2. For all subsequent years, including the year in which the first RMD was paid by April 1st, you must take the RMD by December 31st of the year. Please verify this calculation with your tax professional, as there may be other information that could impact your RMD. If you do not take enough to satisfy the requirement, the IRS may impose a 50% excise tax on the shortfall. To start your distributions, contact your Financial Institution."

494. EXHIBIT 22 July 31, 2023, "TIAA **Client relationship summary**":

    a. **Fiduciary Acknowledgment under ERISA and Internal Revenue Code**"

    b. "Recommendations to enroll in an IRA, rollover/transfer to or from a Plan or IRA, or to begin lifetime income are "Covered Recommendations." When we make Covered Recommendations to you, we are fiduciaries within the meaning of Title I of the Employee Retirement Income Security Act ("ERISA") and/or the Internal Revenue Code, as applicable, which are laws governing retirement accounts. The way we make money creates some conflicts with your interests when we make Covered Recommendations, so we operate under a special rule that requires us to act in your best interest and not put our interest ahead of yours. Certain Plans (like governmental plans) are not covered by ERISA; however, our internal policies and procedures require us to adhere to the same fiduciary standard when we provide Covered Recommendations on non-ERISA Plan assets."

### a) March 5, 2018, Final "Required Minimum Distribution" (RMD) Disbursement

495. **FINAL** "Required Minimum Distribution" (RMD) disbursement, except custodian Lincoln Financial 403(b) retirement plan, sponsor New England Deaconess Hospital:

### Table 34 March 5, 2018, Final TIAA "Required Minimum Distribution" (RMD) Disbursement

| YOUR QUARTERLY RETIREMENT SAVINGS PORTFOLIO STATEMENT FOR January 1, 2018 to March 31, 2018 | | | | | |
|---|---|---|---|---|---|
| Your transaction details | | | | | |
| MSKCC RETIREMENT SAVINGS PLAN (RSP) VOLUNTARY PLAN | | | | | |
| Processing date | Effective date Description | | Number of units/shares | Unit/ share price | Amount |
| 3/5/2018 | 3/5/2018 | Minimum distribution withdrawal VAN Extend MkIdx Inst Pl | -0.979 | 211.94 | -207.49 |
| 3/5/2018 | 3/5/2018 | Minimum distribution withdrawal Vang Intl Growth Adm | -1.7258 | 99.66 | -171.99 |
| 3/5/2018 | 3/5/2018 | Minimum distribution withdrawal (TIAA K599435-1) TIAA Traditional | n/a | n/a - 1,401.84 | |
| 3/5/2018 | 3/5/2018 | Minimum distribution withdrawal Vang Inst Idx Inst | -1.8292 | 248.61 | -454.76 |
| 3/5/2018 | 3/5/2018 | Minimum distribution withdrawal Vang Windsor II Adm | -2.9699 | 67.2 | -199.58 |
| 3/5/2018 | 3/5/2018 | Minimum distribution withdrawal Vang Ttl Intl Stk Idx Ins | -1.229 | 121.75 | -149.63 |

496. March 22, 2018, Ms. Dunn letter to TIAA-CREF, "03/22/2018 16:08" via FAX, NYSCEF No. 364, attached March 20, 2018, Hon. Lewis J. Lubell, NYS J.S.C. No. 5, OSC IMMEDIATE RELIEF REQUESTED Court Application No. 5 NYSCEF No. 163: "Please be advised that your undersigned represents Marie Kijewski in connection with her pending post-judgment matrimonial matter against her ex-husband, Peter Kijewski. An Order to Show Cause was signed by Hon. Lewis J. Lubell in connection with this matter, and said Order temporarily restrains all retirement accounts maintained by Mr. Kijewski at TIAA-CREF, so that no transfers or

withdrawals may be made out of any retirement accounts, and no changes may be made to the status of said accounts. A copy of the Order is enclosed for service upon you; your attention is directed to the last paragraph on the bottom of page 2 of the Order, which continues onto the top of page 3 of the Order. Upon information and belief, Mr. Kijewski maintains several retirement accounts with your company. A list of account numbers is included on the attached Order. Please be advised that no transfers or withdrawals shall be made from either these accounts or any other retirement accounts pending further Order of the Court

497. March 27, 2018, Ms. Aracely Ramirez, TIAA QDRO Relationship Manager, letter to "Dear Ms. Dunn" NYSCEF No. 366:

      a. "I am responding to your written inquiry dated March 22 and the Order to Show Cause pertaining to the TIAA accounts of Dr. Peter K. Kijewski in divorce proceedings."

      b. "Due to the receipt of the Order and correspondence we have placed a restriction on all requests for transfers, loans, cash withdrawals, and any other transaction that would impact the accumulations in the annuities mentioned in the Order. The restriction will remain in place until we receive a judge signed court certified copy of an order releasing or removing the restriction or upon the successful completion of a QDRO. TIAA will require a Qualified Domestic Relations Order (QDRO) in order to split the designated annuities and/or Immediate Annuity (IA) payments."

498. November 5, 2021, Ms. Dunn NSYCEF No. 383:

a. March 22, 2018, Ms. Dunn letter to TIAA-CREF NYSCEF No. 364.

b. March 27, 2018, Ms. Aracely Ramirez, TIAA QDRO Relationship Manager, letter to "Dear Ms. Dunn" NYSCEF No. 366.

499. May 25, 2018, Ms. Dunn letter to "Dear Ms. Ramirez", via FAX May 29, 2018 15:40, NYSCEF No. 368 (**bold** highlight in original text):

a. "As you may be aware, your undersigned represents Marie Kijewski in connection with her pending post-judgment matrimonial matter against her ex-husband, Peter Kijewski. An Order signed by Hon. Lewis J. Lubell (Westchester County, NY Supreme Court) was previously served upon TIAA-CREF in connection with this matter, which temporarily restrains **all retirement accounts** maintained by Mr. Kijewski at TIAA-CREF, so that no transfers or withdrawals may be made out of any retirement accounts, and no changes may be made to the status of said accounts."

b. "You received a copy of this Order and confirmed same in your letter to me dated March 27, 2018. That correspondence advised that the restraining order would remain in place until a further court order or QDRO. Neither event has occurred, yet it is my understanding that a Required Minimum Distribution was recently issued to Mr. Kijewski from one of the restrained accounts at TIAA-CREF. The gross distribution was $7,022.75 and the net distribution was $5,260.04."

c. "This is an unacceptable violation of a court order which prejudices my client. Demand is made that TIAA-CREF immediately re-

deposit the funds distributed from this account in order to comply with the existing court order. Further, demand is made that TIAA-CREF confirm in writing that no further distributions will be issued from any of Mr. Kijewski's retirement accounts maintained at TIAA-Cref, including account A57-649187, which was not specifically listed in the Order but which is included as same is a retirement account."

     d. "Your prompt attention to this matter is required. Absent an immediate correction being made by TIAA-CREF to address this issue, my client will have no choice but to consider taking legal action against TIAA-CREF for its failure to abide by a duly served court order."

500. January 22, 2018, "The gross distribution was $7,022.75 and the net distribution was $5,260.04." listed in January 31, 2018, "TIAA brokerage services, A division of TIAA Individual & Institutional Services, LLC, Member FINRA/SIPC, **TIAA PORTFOLIO ADVISOR** INVESTMENT ADVISORY PROGRAM, *Individual Retirement* Account Statement, Account Number A57-649187, Clearing through Pershing LLC, a wholly owned subsidiary of The Bank of New York Mellon Corporation (BNY Mellon), Pershing LLC, member FINRA, NYSE, SIPC", applicable since May 10, 2011:

     a. January 22, 2018, lost "CHECK PD.#4022393191" due to tax year 2018 Ms. Dunn NYSCEF EXPARTE defamation content filing hyperactivity.

     b. February 27, 2018, Ms. Dunn **<u>AFFIRMATION IN SUPPORT</u>** "AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP (Motion #4)" <u>Application</u> No. 4 NYSCEF No. 135:

"10. Given Defendant's contemptuous and fraudulent conduct to date,

and the legal fees incurred by Plaintiff as a direct result of Defendant's

actions, it is respectfully submitted that Defendant should be directed to

pay $25,000 toward Plaintiff's counsel fees in this matter."

**Table 35 January 22, 2018, Lost and Reissued RMD Check**

| TIAA PORTFOLIO ADVISOR INVESTMENT ADVISORY PROGRAM, Individual Retirement Account Statement | | |
|---|---|---|
| Account Number: A57-649187 | | |
| Transactions in Date Sequence | | |
| Process/<br>Settlement<br>Date Activity Type | Description | Amount Currency |
| 1/22/2018 FEDERAL TAX WITHHELD<br>NORMAL DISTRIBUTION<br>USD999997 | FED WITHHOLDING TAX | -1,404.55 USD |
| 1/22/2018 NORMAL DISTRIBUTION<br>USD999997 | CHECK PD.#4022393191 PRINCIPAL DISTRIBTN FED TAX<br>$1,404.55 ST TAX $351.14 FEE(S) $.00 | -5,267.05 USD |
| 1/22/2018 STATE TAX WITHHELD<br>USD999997 | NY STATE W/H TAX | -351.14 USD |
| 1/22/2018 FDIC INSURED BANK<br>WITHDRAWAL<br>USD999997 | TIAA BANK RETIREMENT SWEEP ACCOUNT | 7,022.74 USD |

501. December 31, 2018, Paul Cowie, TIAA CFP, Portfolio Advisor

WMA, Performance Report:

**Table 36 December 31, 2018, Paul Cowie, TIAA CFP, Portfolio Advisor WMA, Quarterly Performance Report**

| TIAA Quarterly Portfolio Advisor Performance Report | | | | | | |
|---|---|---|---|---|---|---|
| Advisor: | | | | | | |
| Paul Cowie | | | | | | |
| 212-916-5422 (Work) | | | | | | |
| October 1, 2018 to December 31, 2018 | | | | | | |
| **Managed Account Contributions, Withdrawals, and Fees (Year-to-Date)** | | | | | **PKK Notes** | |
| KIJEWSKI PETER #1 | | | As of 12/31/2018 | | **IRA** | |
| Date | Type | Ticker/Cusip | Quantity | Price | Amount | |
| 22-Jan-18 | Cash Out | USD | 7,022.74 | $1.00 | -$7,022.74 | Lost RMD check |
| 20-Apr-18 | Cash Out | USD | 7,022.75 | 1 | -7,022.75 | Reissue RMD check |
| 10-Dec-18 | Securities Out | FGZMX | 0.002 | 14.27 | -0.03 | |
| 24-Jan-18 | Program Fees | USD | 1,147.70 | 1 | -1,147.70 | |
| 23-Apr-18 | Program Fees | USD | 1,082.99 | 1 | -1,082.99 | |
| 23-Jul-18 | Program Fees | USD | 991.36 | 1 | -991.36 | |
| 22-Oct-18 | Program Fees | USD | 1,016.59 | 1 | -1,016.59 | |
| Total | | | | | -18,284.16 | |
| | | | | | | |
| **Managed Account Contributions, Withdrawals, and Fees (Year-to-Date)** | | | | | | |
| KIJEWSKI PETER #2 | | | As of 12/31/2018 | | **Investment** | |
| Date | Type | Ticker/Cusip | Quantity | Price | Amount | PKK Notes |
| 27-Feb-18 | Cash In | USD | 240,000.00 | $1.00 | $240,000.00 | Inheritance |
| 5-Mar-18 | Cash In | USD | 17,874.62 | 1 | 17,874.62 | |
| 5-Mar-18 | Cash In | USD | 2,151.54 | 1 | 2,151.54 | |
| 6-Mar-18 | Cash In | USD | 1,936.38 | 1 | 1,936.38 | |
| 22-Jun-18 | Cash Out | USD | 30,000.00 | 1 | -30,000.00 | |
| 18-Sep-18 | Cash Out | USD | 10,000.00 | 1 | -10,000.00 | |
| 17-Dec-18 | Cash Out | USD | 60,000.00 | 1 | -60,000.00 | RMD "hold" |
| 24-Jan-18 | Program Fees | USD | 263.07 | 1 | -263.07 | |
| 23-Apr-18 | Program Fees | USD | 415.03 | 1 | -415.03 | |
| 23-Jul-18 | Program Fees | USD | 706.32 | 1 | -706.32 | |
| 22-Oct-18 | Program Fees | USD | 679.54 | 1 | -679.54 | |
| Total | | | | | $159,898.58 | |

502. May 31, 2018, Ms. Aracely Ramirez, TIAA QUADRO Relationship

Manager, letter to "Dear Ms. Dunn" NYSCEF No. 369:

a. "I am responding to your correspondence dated May 25, 2018

regarding the Order of Court temporarily restraining transfers and

withdrawals on the TIAA-CREF accounts of Dr. Peter K. Kijewski. The Order listed Dr. Kijewski's deferred annuity contracts as follows:"

b. "A6977787/P6977784, C3686023/U3686021, C8156M09/U8156M07, K5994351/J5994353, C8256LT5/U8256LT3, L8754974 & C8126LV5/U8126LV3"

c. "This letter serves as confirmation that my research indicates that Dr. Kijewski has *not* taken any withdrawals on his deferred annuity retirement contracts listed above since receiving the Order on March 22."

d. "Your letter of May 25, 2018 indicates a distribution of $7,022.75/gross, $5,260.04/net. In addition your letter now mentions an additional contract A57649187. Please note this is a BROKERAGE account in which I am not authorized/licensed to review Brokerage accounts and have no access to Brokerage account information. The Brokerage department is a separate entity within TIAA. Please contact the TIAA Brokerage Department at the following number on divorce process and please address future correspondence for Brokerage accounts to the same TIAA address, ATTN BROKERAGE SERVICES."

e. "The attorneys and the parties will need to determine how to handle the RMD contracts as Dr. Kijewski's RMD payments for the deferred annuity retirement accounts will need to be accelerated for the calendar year in which a final certified QDRO is received for the retirement contracts A6977787/P6977784, C3686023/U3686021, C8156M09/U8156M07, "

f. "As stated in my letter of March 27, 2018, due to the receipt of the prior Order we did place a restriction on all requests for transfers, loans, cash withdrawals, and any other transactions that would impact the accumulations in the annuities mentioned in the Order. The restriction will remain in place until we receive a judge signed court certified copy of an order releasing or removing the restriction on Mr. Kijewski's TIAA-CREF accounts or with the final completion of the QDRO split."

g. "I have forwarded your letter of May 25 to the TIAA Brokerage Services department regarding the withdrawal mentioned above along with a copy of the Order. If you have any questions or require additional information, you may reach me from 10:00 AM. to 6:30 PM. (ET) at 800-8422638, ext. 242418. For all other inquiries please call our **National Contact Center at 800-8422776,** Monday through Friday, 8:00 am to 10:00 pm ET, or Saturday from 9:00 am to 6:00 pm ET."

503. June 1, 2018, Ms. Friedrich "Retirement Account Statements" NYSCEF No. 216 (28 pages):

a. May 17, 2018, Lincoln Financial Group NEW ENGLAND DEACONESS 403(b) statement.

b. March 31, 2018, Vanguard Voyager Select Services, Roll Over IRA 0033-88045718421 account:

i. Funds exceed requirements for valid $468,997 Domestic Relations Order (DRO).

ii. Funds exceed requirements for valid $567,761.60 Domestic Relations Order (DRO), offer rejected December 15, 2017, Ms. Dunn letter to "Dear Ms. Friedrich" NYSCEF No. 154: "These actions have now resulted in Ms. Kijewski being unable to obtain her fair and appropriate share of the Vanguard IRA account. At yesterday's share price of $66.31, the account balance of $567,761.60 is approximately $172,000 less than the total account value would have held had the funds been undisturbed."

iii. Continuing January 15, 2018, "Dear Ms. Friedrich": "Curiously, he is currently benefitting from retaining in excess of one million dollars in retirement assets belonging to Ms. Kijewski. Did he fully disclose on his mortgage application that approximately one half of his retirement accounts were not actually his property?

c. March 31, 2018, Peter Kijewski TIAA "Your quarterly retirement savings portfolio statement", revealing to date of the present COMPLAINT, Ms. Dunn omitted submitting to TIAA any Domestic Relations Order (DRO):

i. Omitted Domestic Relations Order (DRO), in fact means "Did he fully disclose on his mortgage application that ~~approximately one half~~ 100% of his retirement accounts were ~~not~~ actually his property?"

504. June 1, 2018 - October 5, 2018, NYSCEF filing paused.

505. Attorney wire communications during NYSCEF content filing

pause lacked transparency concerning TIAA TRO "Required Minimum

Distribution" disbursement "hold" since March 6, 2018:

### Table 37 September 2018 Attorney Wire Communication Various Process Notes

| Date | Years | Charge | Process Notes | Time | Invoice |
|------|-------|--------|---------------|------|---------|
| **Attorney Wire Communication Process Notes** | | | | | |
| 9/4/2018 | 3.2 | DS | Reviewed client email re various | 0.1 | $65.00 |
| 9/7/2018 | 3.2 | MD | E-Mails with client and **attorney** | 0.1 | $35.00 |
| 9/10/2018 | 3.2 | MD | E-Mails with client regarding | 0.1 | $35.00 |
| 9/16/2018 | 3.2 | MD | E-Mails with client ███████████ | 0.1 | $35.00 |
| 9/17/2018 | 3.2 | MD | E-Mails with **attorney**, client and Court | 0.3 | $105.00 |
| 9/17/2018 | 3.2 | MD | Conference with Mitchell Y. Cohen | 0.1 | $35.00 |
| 9/18/2018 | 3.2 | MD | Telephone conference with **attorney** | 0.1 | $35.00 |
| 9/18/2018 | 3.2 | DS | Reviewed email exchange w/client, JF re various | 0.1 | $65.00 |
| 9/19/2018 | 3.2 | MD | E-Mails with client | 0.3 | $105.00 |
| 9/19/2018 | 3.2 | DS | Reviewed client email re various | 0.1 | $65.00 |
| 9/20/2018 | 3.2 | MD | E-Mails with client and **attorney** regarding support and life insurance | 0.3 | $105.00 |
| 9/20/2018 | 3.2 | MD | Conference with Mitchell Y. Cohen | 0.1 | $35.00 |
| 9/20/2018 | 3.2 | MD | Review Stipulation of Settlement regarding ███████ | 0.1 | $35.00 |
| 9/20/2018 | 3.2 | MYC | Telephone conference with Maureen Dunn | 0.1 | $47.50 |
| 9/21/2018 | 3.2 | JF | Email with client; telephone call to opposing counsel | 0.1 | $30.00 |
| 9/24/2018 | 3.2 | MD | E-Mails with client | 0.1 | $35.00 |
| 9/24/2018 | 3.2 | MD | Telephone conference with **attorney** | 0.1 | $35.00 |
| 9/24/2018 | 3.2 | JF | Telephone call with opposing counsel; email to Peter; review client emails | 0.4 | $120.00 |
| 9/24/2018 | 3.2 | DS | Email exchange w/client, JF re various | 0.2 | $130.00 |
| 9/26/2018 | 3.3 | DS | Reviewed email exchange w/client, JF re various | 0.1 | $65.00 |
| 9/28/2018 | 3.3 | DS | Reviewed email exchange w/client, JF re various | 0.1 | $65.00 |
| 9/1/2018 | 3.2 | J&C | Monthly Invoice | 1.9 | $677.50 |
| | | J&C | Previous balance | | $70.00 |
| | | SSL | Total Fees | | $605.00 |
| | | SSL | Administrative overhead charge | | $24.20 |
| 9/1/2018 | 3.2 | SSL | Monthly Invoice | | $629.20 |

| | |
|---|---|
| MYC | Mitchell Y. Cohen, Johnson and Cohen, LLP, signed Agreement April 25, 2013 |
| MD | Maureen A. Dunn, Johnson and Cohen, LLP |
| J&C | Johnson and Cohen, LLP: Opposing lawyers. |
| DS | Dana M. Stutman, Stutman and Stutman, LLP |
| JF | Jessica R. Friedrich, Stutman and Stutman, LLP |
| SSL | Stutman and Stutman, LLP: Retained March 8, 2017, permanently closed. |

506. October 5, 2018, Special Referee Josephine Trovini Referee's

Report NYSCEF No. 218 about TIAA TRO "Required Minimum Distribution"

disbursement "hold" since March 6, 2018: "With regard to motion sequence

number 5, it is recommended that defendant's retirement assets at Vanguard and TIAA-CREF be restrained until the necessary QDROs are processed, subject to a hearing to be held regarding whether defendant needs to make withdrawals from the accounts to take his required minium (sic) distribution."

507. November 15, 2018, Ms. Dunn **AFFIRMATION IN REPLY** <u>Application</u> No. 7 NYSCEF No. 245 (bold highlight in original text):

a. "10. **The most recent balance available to Plaintiff of Defendant's Vanguard IRA account is \$567,761.60, a difference of over \$200,000;**"

b. "15. The Referee's Report recommended that this request be referred to the hearing to determine whether the request is necessary, in light of the document production recommended to be ordered. Counsel's argument that the documents "speak for themselves" misses the point; the need for Plaintiff to speak directly to the financial advisors is to determine the extent of the changes made to these accounts by Defendant subsequent to the parties' divorce (including closing of accounts, changing account numbers, putting accounts into RMD status a year before he was required to do so, transferring funds, etc.) and how these changes impact the pending QDROs. Furthermore, the TIAA accounts in question are almost fully invested in TIAA Traditional shares, an unusual insurance-based investment with arcane rules that are specific to each of the 4 separate plans in Defendant's name that remain to be divided. For example, the premature change to RMD status, undesirable to Plaintiff as she is not yet required to take

distributions and strongly prefers not to as she currently earns the highest salary of her life, may or may not be irreversible on Plaintiff's share after division, and may or may not be controlled by judicial order, depending on plan rules. The statements do not speak to these issues. It is appropriate for this request to be explored further at a hearing."

c. Table 27 "Changing account numbers" of "an unusual insurance-based investment with arcane rules that are specific to each of the 4 separate plans in Defendant's name that remain to be divided".

d. "16. **Issue #5 - Defendant's Request to Access the Restrained Funds to Withdraw his RMD:** Plaintiff understands the need for an RMD to be taken by Defendant, and it is appropriate to address this issue at the upcoming hearing. There is no requirement that Defendant take his RMD's from the accounts subject to division with Plaintiff. There are other retirement assets available to Defendant, which are not the subject of the account division, and which Defendant may access to take his RMDs for 2018. This matter can be addressed at the upcoming hearing and (if Defendant immediately provides recent statements), the unaffected accounts from which he can take RMDs can be identified prior to the hearing:"

e. May 25, 2018, Ms. Dunn letter to "Dear Ms. Ramirez", via FAX May 29, 2018 15:40, NYSCEF No. 368 (**bold** highlight in original text) Ms. Dunn memorialized: "An Order signed by Hon. Lewis J. Lubell (Westchester County, NY Supreme Court) was previously served upon TIAA-CREF in connection with this matter, which temporarily restrains

**all retirement accounts** maintained by Mr. Kijewski at TIAA-CREF, so that no transfers or withdrawals may be made out of any retirement accounts, and no changes may be made to the status of said accounts."

      f. April 9, 2018, Vanguard letter to Peter Kijewski NYSCEF No. 367 reveals Vanguard complied with Ms. Dunn Order and lawyers fighting about Peter Kijewski RMDs: "Vanguard is not a party to this action, and is therefore not bound by the March 14, 2018, Order. However, in light of what appears to be a dispute regarding the assets in the Account, we are writing to notify you that Vanguard has placed a restriction on the Account; accordingly, no exchanges, redemptions, withdrawals, or distributions of any kind may occur in or from the Account during this time (including any Required Minimum Distributions)."

508. December 7, 2018, Ms. Dunn **ORDER DO SHOW CAUSE IMMEDIATE ARREST AND IMPRISONMENT** <u>Application</u> No. 8 NYSCEF No. 247:

      a. "A. Adjudging Defendant in contempt of Court for his willful and deliberate disobedience of the terms of the parties' Stipulation of Settlement dated July 26, 2016, which was incorporated but not merged into the Judgment of Divorce dated September 2, 2016 and entered September 8, 2016, which terms require the Defendant to pay child support in the amount of $3,187.50 per month and to maintain certain life insurance for the benefit of Plaintiff and the parties' unemancipated child; and"

b. "B. Directing Defendant to immediately pay the sum of $12,750.00, representing child support arrears for the months of September, 2018 through December, 2018, together with any additional sums that may become due and owing;"

c. "C. Directing Defendant to immediately increase the death benefit of his Prudential Life Insurance Policy to $451,000, naming Plaintiff as the beneficiary thereof;"

d. "D. Awarding Plaintiff counsel fees in the sum of $5,000.00 for the legal fees incurred as a result of Defendant's conduct and in connection with the preparation of this application, with leave to seek additional fees as may be necessary;"

509. DEFENDANTS commenced evaluating various directions concerning Plaintiff Peter Kijewski "Required Minimum Distribution" disbursement "hold" retirement income:

a. October 5, 2018, Special Referee Josephine Trovini Referee's Report NYSCEF No. 218 two (2) alternative directions:

i. "Defendant asserts, in part, that the restraint is not warranted and that the restraint is prohibiting him from taking his required minimum distributions."

ii. "With regard to motion sequence number 5, it is recommended that defendant's retirement assets at Vanguard and TIAA-CREF be restrained until the necessary QDROs are processed, subject to a hearing to be held regarding whether

defendant needs to make withdrawals from the accounts to take

his required minium (sic) distribution."

b. November 15, 2018, Ms. Dunn **AFFIRMATION IN REPLY**

<u>Application</u> No. 7 NYSCEF No. 245: "There are other retirement assets

available to Defendant, which are not the subject of the account

division, and which Defendant may access to take his RMDs for 2018.

This matter can be addressed at the upcoming hearing and (if

Defendant immediately provides recent statements), the unaffected

accounts from which he can take RMDs can be identified prior to the

hearing:"

510. "The attorneys and the parties will need to determine how to

handle the RMD contracts as Dr. Kijewski's RMD payments for the deferred

annuity retirement accounts will need to be accelerated for the calendar year"

resulting in Required Minimum Distribution (RMD) **$155,492.10**

disbursement retirement income:

a. "Defendant to pay child support in the amount of $3,187.50 per

month."

b. "Defendant to immediately pay the sum of $12,750.00,

representing child support arrears for the months of September, 2018

through December, 2018, together with any additional sums that may

become due and owing;"

c. "Awarding Plaintiff counsel fees in the sum of $5,000.00."

d. Joseph Junior year Brown University **$54,319.20** advance

college tuition.

511. Table 23 November 27, 2018, TIAA Law & Compliance lawyers commenced evaluating various directions concerning Plaintiff Peter Kijewski "Temporary Restraining Order" (TRO) concerning "Required Minimum Distribution" disbursement "hold".

512. Plaintiff Peter Kijewski needed to use his TIAA Portfolio Advisor Investment Account cash to pay for living expenses, minor (16) child support and taxes.

513. Table 36 December 31, 2018, Paul Cowie, TIAA CFP, Portfolio Advisor WMA, Performance Report.

514. January 2, 2019, Peter Kijewski letter to Special Referee Josephine Trovini NYSCEF No. 283 (8 of 87 pages) RMD disbursement pleadings: "I request that my TIAA and Vanguard restraints are **lifted immediately** for these reasons:"

a. "Enable TIAA and Vanguard to directly pay my mandatory in-arrears IRS and MRD taxes"

b. "I can report to IRS and MRD that my RMD taxes have been paid"

c. "I am able to pay down debt and pay for my expenses"

d. "Restore RMD automation for quarterly tax payments and RMD income"

e. "Continuing restraints will rapidly escalate expenses for resolving the **no-default** divorce dispute 60606-2015"

515. **RMD automation** disabled: March 3, 2018, IRA FBO PETER K KIJEWSKI, RMD Request QUARTERLY, **TIAA PORTFOLIO ADVISOR**

INVESTMENT ADVISORY PROGRAM, Periodic Asset Movement NYSCEF
No. 181.

516. January 17, 2019, Hon. Lewis J. Lubell, J.S.C. No. 4 of 7,

**DECISION & ORDER** Motion No. 7 NYSCEF No. 265:

a. "The following papers were considered in connection with this
motion by plaintiff for an Order confirming the Report and
Recommendation of Special Referee Josephine Trovini dated October 5,
2018"

b. "ORDERED, that defendant's retirement assets at Vanguard
and TIAA-CREF are hereby restrained until the necessary QDROs are
processed, subject to a hearing to be held regarding whether defendant
needs to make withdrawals from the accounts to take his required
minium (sic) distribution;"

c. Page No. 11 of 18, Referee's Report: "With regard to motion
sequence 5, plaintiff asserts that, based upon defendant's failure to
cooperate in dividing the retirement assets and his transfer of such
assets without her knowledge, the accounts at Vanguard and TIAA-
CREF should be restrained until the parties can settle their issues
regarding the division of their retirement assets. Defendant asserts, in
part, that the restraint is not warranted and that the restraint is
prohibiting him from taking his required minimum distributions."

d. Page No. 17 of 18, Referee's Report: "With regard to motion
sequence number 5, it is recommended that defendant's retirement
assets at Vanguard and TIAA-CREF be restrained until the necessary

QDROs are processed, subject to a hearing to be held regarding whether

defendant needs to make withdrawals from the accounts to take his

required minium [sic] distribution."

517. "ORDERED, that defendant's retirement assets at Vanguard and

TIAA-CREF are hereby restrained until the necessary QDROs are processed":

    a. To date of the present COMPLAINT, Ms. Dunn never

submitted any Domestic Relations Order (DRO) for TIAA-CREF

retirement assets to commence processing QDROs, notwithstanding

May 23, 2023, $100,000 TIAA-CREF QDRO:

        i. "*The Parties acknowledge that Plaintiff will be owed an additional sum in the approximate amount of $100,000. The exact sum owed shall be calculated by deducting the total amount received by Plaintiff upon transfer to her of the TIAA IRA from the current shortfall of $602,576.59.*"

518. February 20, 2019, Special Referee Josephine Trovini **REPORT & RECOMMENDATION** NYSCEF No. 272:

    a. "Defendant submitted a flash drive and a response to "Motion

Sequence #9" on January 2, 2019. In his response, Defendant stated

that "I am **not** self-representing and I am **not** a lawyer"; yet, he

provided what appeared to be, a copy of the invoice which was color-

coded to indicate his purported opposition to the amount of the fees

sought. Recognizing that Dr. Peter Kijewski is a pro se litigant, and

may be given some latitude due to his lack of formal legal training and

unfamiliarity with court procedures, the Court shall deem Defendant's

submission as opposition to the motion."

   b. January 2, 2019, Peter Kijewski letter to Special Referee

Josephine Trovini NYSCEF No. 283, "copy of the invoice which was

color-coded", black/white due to NYSCEF filing.

519. August 7, 2019, Special Referee Josephine Trovini, transcript, SO

ORDERED NYSCEF No. 306 (37 pages) confirming Ms. Dunn requirement to

submit $468,997 Domestic Relations Order (DRO) due to July 26, 2016,

Stipulation of Settlement <u>contract</u> NYSCEF No. 100:

"THE COURT": Special Referee Josephine Trovini
"Q": Ms. Dunn
"A": Ms. Kijewski

THE COURT: We are here this morning with regard
to a hearing on Motion Sequence Number 7. Let the
record reflect that on June 10, 2019 the Court takes
judicial notice of an order for entry for money
judgment signed by Judge Lubell which also directs
counsel and parties to appear for a hearing on Motion
Sequence Number 4 and 5 and that order was served
upon Mr. Kijewski at 23 Shipyard Drive Hingham,
Massachusetts on June 12, 2019.

   Let the record reflect it is now 10 after 11 and
there has been no communication from Mr. Kijewski,
the defendant, or counsel representing him on his
behalf. Miss Dunn, have you heard from Mr. Kijewski
regarding this matter?

   MS. DUNN: I have not.

THE COURT: Are you prepared to proceed with the hearing?

MS. DUNN: Yes.

THE COURT: Do you have an application with regard to that branch of the motion?

MS. DUNN: Yes, Your Honor. Miss Kijewski would like to withdraw the contempt application to let Your Honor hear and determine.

THE COURT: Let the record reflect counsel and Miss Kijewski have executed a stipulation permitting the Referee to hear and determine this matter. Are you prepared to proceed, Counsel?

MS. DUNN: Yes.

THE COURT: What is your first application?

MS. DUNN: I would request the Court take judicial notice of the report and recommendation of October 5, 2018 which was confirmed by Judge Lubell on January 17, 2019. The portion of that report and recommendation as confirmed which directed that Mr. Kijewski transfer sufficient funds into his Vanguard IRA account and then subsequently reinvest those funds into the VTSAX Fund within ten days of the confirmation of that report.

THE COURT: Let the record reflect the Court's report and recommendation was confirmed on January 17, 2019 by Judge Lubell.

To your knowledge, has defendant complied with that paragraph on page 12 of the report and

recommendation and has the Vanguard account been transferred?

    MS. DUNN: It has not.

    THE COURT: And do you have an application with regard thereto?

    MS. DUNN: Your Honor, Miss Kijewski would like the Court's permission to submit a QDRO transferring the entirety of the Vanguard account to her and then to have permission to submit a supplemental QDRO from a separate IRA account maintained by Mr. Kijewski to transfer the balance she should have received. It's not specifically before the Court at this time.

    THE COURT: I was looking at the relief in the report and recommendation, the relief that was sought at that time, and time has transpired, that that was not sought in the initial Order to Show Cause and inasmuch as we are required to give due notice and provide an opportunity for defendant to be heard with regard to any new relief, it appears to me that you would have to file another Order to Show Cause seeking the new relief that you are requesting because this was not previously requested. Unfortunately we cannot grant relief on changed circumstances without the formality of a motion. I will have to deny that today with leave to renew.

MS. DUNN: Additionally, the Court may recall Motion Sequence 4 and 5 with regard to Mr. Kijewski retirement interest maintained at TIAA Kref.

With regard to the accounts maintained by Mr. Kijewski, part of the request for relief included obtaining copies of statements of those accounts to determine the changes that had been made by Mr. Kijewski to those accounts between the date of the parties divorce stipulation in July of 2016 to present. We have been able to ascertain numerous changes that were made and as a result Miss Kijewski would be submitting an application to permit her to submit a QDRO to the Court that would provide her with her share of those accounts in a manner that might not be entirely consistent with the terms of the stipulation due to the changes made to the accounts by Mr. Kijewski.

THE COURT: To the extent you are seeking a deviation from the stipulation, which is a contract that this Court is obligated to enforce, you would be required to submit an additional Order to Show Cause.

MS. DUNN: Understood.

520. Ms. Dunn indisputably failed to understand her obligation concerning July 26, 2016, Stipulation of Settlement <u>contract</u> NYSCEF No. 100.

521. August 7, 2019, "hearing" omitted essential "hearing" agenda items:

a. March 22, 2018, Ms. Dunn letter to TIAA-CREF Legal Department NYSCEF No. 364: "Required Minimum Distribution" disbursement "hold".

b. March 22, 2018, Ms. Dunn letter to Vanguard Office of the General Counsel NYSCEF No. 365: "Required Minimum Distribution" disbursement "hold".

c. "Retirement plan participants and IRA owners, including owners of SEP IRAs and SIMPLE IRAs, are responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

522. July 17, 2020, Ms. Dunn letter to "Dear Ms. D'Agostino", Ms. Dunn wrote presumably because Ms. D'Agostino failed to incorporate in her proposed QDRO Ms. Dunn required one million dollar "Investment Experience" financial plan:

a. January 15, 2018, Ms. Dunn NYSCEF No. 154: "Curiously, he is currently benefitting from retaining in excess of one million dollars in retirement assets belonging to Ms. Kijewski."

b. "I am writing to advise you that our client, Marie Kijewski, has requested that you cease any work in connection with her matter. As you know, we retained you on behalf of Ms. Kijewski in May of 2019 to prepare a QDRO for her former husband's TIAA accounts. We spoke in June, 2019 at length to address the complicated issues surrounding this particular matter and formulated a plan to prepare the QDRO."

c. "Despite this, we did not receive the draft QDRO until December, 2019, which was not drafted in the manner we had discussed. Since January, we have tried to arrange a time for Ms. Kijewski to speak directly to you to address her concerns and despite several attempts this conversation has failed to occur."

d. "Given the above, Ms. Kijewski would like to move in a different direction to prepare the necessary QDRO and complete this matter. Further, she has requested a return of the $1,200 retainer fee which she paid for the preparation of the QDRO. Same can be returned via check to my office."

**b) August 12, 2021, Ms. Dunn Catastrophic Failure to Release "Required Minimum Distribution" (RMD) Disbursement "Hold"**

523. August 12, 2021, Vincent Ford, TIAA QDRO Relationship Manager, subpoena response to "Dear Maureen A. Dunn" NYSCEF No. 484 (42 pages) includes Peter Kijewski August 11, 2021, TIAA retirement account statements and instructions for composing a valid $468,997 Domestic Relations Order (DRO):

**Table 38 March 31, 2015 & August 11, 2018, TIAA Quarterly Retirement Portfolio Statements**

| TIAA Account Statements: Peter Kijewski Owner 403(b) & 457(b) Retirement Plans | | | | |
|---|---|---|---|---|
| Account **numbers** and custodians change due to medical institution **merger activity**. | | | | |
| April 10, 2018, Ms. Kijewski **AFFIDAVIT IN REPLY** Court Application No. 5 NYSCEF No. 193 revealing Ms. Kijewski retirement plans analysis. | | | | |
| Retirement plan **account numbers** Ms. Kijewski included in her analysis. | | | | |
| The category of the accounts and IRS Internal Revenue Code rules do **NOT** change: 403(b) & 457(b). | | | | |
| Retirement plan **sponsor** labels do **NOT** change. | | | | |
| **Valid $468,997** Domestic Relations Order (DRO) calculated any time, including after "**Required** Minimum Distribution" (RMD) disbursement. | | | | |
| Date | Years | Viewed By | Sponsor labels with/without hospital merger | Merge | Account # with and without "-" |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA A697778-7, CREF P697778-4 |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA C368602-3, CREF U368602-1 |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | Other Investments |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | No | TIAA A6977787, CREF P6977784 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | No | TIAA C3686023, CREF U3686021 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | No | TIAA C8156MO9, CREF U8156MO7 |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) VOLUNTARY PLAN | No | TIAA K599435-1, CREF J599435-3 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | No | TIAA K5994351, CREF J5994353 |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC KEY EMPLOYEE SUPPLEMENTAL SAVINGS PLAN | No | TIAA L875497-4, Other Investments |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | No | TIAA L8754974, CREF M8754972 |
| 3/31/2015 | -0.2 | Mr. Cohen | RETIREMENT INCOME PLAN FOR TEACHING FACULTY OF HARVARD UNIV | No | TIAA A697778-7, CREF P697778-4 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | No | TIAA A6977787, CREF P6977784 |
| 3/31/2015 | -0.2 | Mr. Cohen | NEW ENGLAND DEACONESS HOSPITAL DISCONTINUED | Yes | TIAA A697778-7, CREF P697778-4 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | Yes | TIAA C8256LT5, CREF U8256LT3 |
| 3/31/2015 | -0.2 | Mr. Cohen | BRIGHAM AND WOMENS HOSPITAL PROFESSIONAL STAFF | Yes | TIAA A697778-7, CREF P697778-4 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | Yes | TIAA C8126LV5, CREF U8126LV3 |

524. October 13, 2021, Ms. Dunn **ORDER TO SHOW CAUSE**

IMMEDIATE ARREST AND IMPRISONMENT <u>Application</u> No. 12 NYSCEF

No. 326

      a. "A. Adjudging Defendant in contempt of Court for his willful

and deliberate disobedience of the terms of the parties' Stipulation of

Settlement dated July 26, 2016, which was incorporated but not merged

into the Judgment of Divorce dated September 2, 2016 and entered

September 8, 2016, which terms require the Defendant to pay child

support in the amount of $3,187.50 per month;": includes "Judgment of

Divorce dated September 2, 2016" written by Ms. Dunn:

    i. "**ORDERED AND ADJUDGED** that equitable distribution shall be as set forth in the parties' Stipulation of Settlement; and it is further"

    ii. "**ORDERED AND ADJUDGED** that pursuant to the Stipulation of Settlement, a separate Qualified Domestic Relations Order shall be issued simultaneously herewith or as soon as practicable; and it is further …"

b. "B. Directing Defendant to immediately pay the sum of $28.687.50. representing child support arrears for the months of September, 2019 through May, 2020, and awarding Plaintiff a money judgment in that sum upon Defendant's failure to pay;":

    i. Thwarted TIAA and Vanguard "Required Minimum Distributions" (RMD) disbursements since March 6, 2018, substantially exceed Peter Kijewski ability to pay exorbitant minor (16) child support.

c. "C. Adjudging Defendant in contempt of Court for his willful and deliberate disobedience of the terms of the Order of Hon. Lewis J. Lubell, JSC dated January 17, 2019, which terms required him to deposit and reinvest funds in his Vanguard IRA account (account ending xx8421);":

    i. Reinvest funds in his Vanguard IRA account has been thwarted since March 22, 2018, Ms. Dunn "Temporary Restraining Order" NYSCEF No. 365.

d. "D. Directing the entry of a Qualified Domestic Relations Order transferring 100% of Defendant's IRA Account maintained at Vanguard (account ending xx8421) to Plaintiff;":

    i. December 16, 2016, Ms. Dahan wire communication to Ms. Dunn NYSCEF No. 119 offered use of the TIAA Portfolio Advisor A57-649187 IRA account for a valid $468,997 Domestic Relations Order (DRO).

    ii. Peter Kijewski IRA <u>owner,</u> Domestic Relations Order (DRO) processing requires removal of unlawful term (6): "(6) Any distributions received by the Former Spouse pursuant to this Order will be included as gross income by the Former Spouse. For the purposes of Section 72 of the Internal Revenue Code, the Former Spouse and not the IRA <u>Owner</u> shall be treated as the distributee of any distribution or payment made by any IRA pursuant to this Order."

e. "E. Directing the entry of a Qualified Domestic Relations Order transferring so much of Defendant's IRA Account maintained at TIAA (account number A57-649187) to Plaintiff as is necessary for Plaintiff to receive the appropriate amount of funds that she would have received had Defendant complied with this Court's Order dated January 17, 2019, and to satisfy all outstanding money judgments and sums owed by Defendant to Plaintiff, including those sums sought herein and awarded in connection with this application;":

i. The Order does not require any action by Peter Kijewski, since Ms. Dunn needs to submit a Domestic Relations Order (DRO).

f. "F. Granting Plaintiff counsel fees in the sum of $10,000.00 in connection with this application;":

i. December 15, 2017, Ms. Dunn letter to Ms. Friedrich NYSCEF No. 154 reveals Ms. Dunn rejected Ms. Friedrich and Peter Kijewski offer assignment of $567,761.60 Vanguard retirement interests, account <u>owner</u> Peter Kijewski, to Marie Kijewski, $567,761.60 Vanguard retirement interests, account <u>owner</u> Marie Kijewski, substantial exceeding July 26, 2016, Stipulation of Settlement <u>contract</u> NYSCEF No. 100 (45 pages), when acceptance of the offer would have avoided the need for any further fees.

g. Exhibit 7- $60,000 Money Judgment 2019-09-26 counsel fees (resubmitted to Court 2019-12-20)", pending SPECIAL REFEREE JOSEPHINE TROVINI signature, NYSCEF No. 335, notwithstanding TIAA & Vanguard "Required Minimum Distribution" disbursements "hold".

h. "Exhibit 9- Vanguard Calculations" NYSCEF No. 337:

i. Ms. Kijewski wildly false claim: At the 9/30/21 closing VTSAX price of $108.08, those shares are worth $1,090,328.47.

ii. Ms. Dunn May 23, 2023, false claim revealing Vanguard IRA value decreased: "*The parties further acknowledge*

that the trading price of VTSAX at the close of the market on 5/14/23 was $99.83 per share.  As a result, Plaintiff was entitled to a total of $1,027,035.27. The shortfall remaining due and owing Plaintiff is therefore $602,576.59.

iii. January 15, 2018, Ms. Dunn NYSCEF No. 154 initiated the false $1,000,000 "Investment Experience" retirement assets claim, while Defendants Ms. Dunn, Mr. Cohen & Ms. Kijewski knew maximum $468,997 retirement assets claim: "Curiously, he is currently benefitting from retaining in excess of one million dollars in retirement assets belonging to Ms. Kijewski."

iv. Awarding Ms. Kijewski her recurring "Investment Experience" NYSCEF content and preventing soaring RMD 50% penalties:

## Table 39 October 13, 2021, Ms. Kijewski Vanguard IRA "Investment Experience" Calculations

| October 13, 2021, Ms. Kijewski Vanguard IRA "Investment Experience" Calculations | | | | | | |
|---|---|---|---|---|---|---|
| Share price copied from Ms. Kijewski Vanguard calculations. | | | | | | |
| Date | Years | Share Price | Shares | Assignment of IRA | Difference | Performance Report |
| 6/19/2015 | 0.0 | $53.52 | 9,215.1 | **$493,192** | $493,192 | Actuary Robert Guarnera calculations. |
| 6/19/2015 | 0.0 | $53.52 | 8,763.0 | **$468,997** | $0 | Actuary Robert Guarnera calculations, after RMD split. |
| 6/19/2015 | 0.0 | $53.52 | 770.0 | $41,210 | $0 | Ms. Kijewski permanently retained Roth IRA share. |
| 6/25/2015 | 0.0 | | | | | Mr. Cohen RMD disbursements "hold". |
| 9/30/2021 | 6.3 | $111.66 | 8,763.0 | $978,479 | | Ms. Kijewski corrected Vanguard calculation. |
| 9/30/2021 | 6.3 | $111.66 | -1,026.7 | ($114,636) | | Roth IRA conversion to tax-deferred IRA: 25% tax rate |
| 9/30/2021 | 6.3 | $111.66 | 7,736.4 | $863,843 | $394,846 | Ms. Kijewski corrected Vanguard calculation. |
| 3/22/2018 | 2.7 | $67.84 | 7,736.4 | $524,835 | $55,838 | Ms. Dunn TIAA & Vanguard disbursements "hold". |
| 9/2/2016 | 1.2 | $56.63 | 7,736.4 | $438,110 | ($30,887) | Judgment of Divorce. |
| 7/15/2024 | 9.1 | $134.11 | 9,215.1 | $1,235,837 | $742,645 | Alternate payee soaring "Investment Experience". |

525. Table 13 Actuary Robert Guarnera calculations and

NONTAXABLE ROTH IRA.

### c) October 26, 2021, TIAA Confirms Illegal "Required Minimum Distribution" (RMD) Disbursement "Hold" Since March 6, 2018

526. October 26, 2021, TIAA letter to "Dear Ms. Dunn & Mr. Senter"

NYSCEF No. 348 concerning account <u>owner</u> Peter K. Kijewski 403(b) & 457(b)

retirement plans and IRA account A57-649187, exclusively due to action by

Plan Administrator, MSKCC retirement plans sponsor:

### Table 40 March 31, 2015 & October 26, 2021, TIAA Quarterly Retirement Portfolio Statements

|  | | | | | |
|---|---|---|---|---|---|
| **October 26, 2021, RE: Dr. Kijewski's TIAA Retirement Accounts held in:** | | | | | |
| Retirement plan **sponsor** labels do **NOT** change. | | | | | |
| **Valid $468,997** Domestic Relations Order (DRO) calculated any time, including after "**Required** Minimum Distribution" (RMD) disbursement. | | | | | |
| Date | Years | Viewed By | Sponsor labels with/without hospital merger | Merge | Account # with and without "-" |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA A697778-7, CREF P697778-4 |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA C368602-3, CREF U368602-1 |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | Other Investments |
| 10/26/2021 | 6.3 | Ms. Dunn | MSKCC Retirement Savings Plan (RSP) Base Plus Match Plan | No | |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) VOLUNTARY PLAN | No | TIAA K599435-1, CREF J599435-3 |
| 10/26/2021 | 6.3 | Ms. Dunn | MSKCC Retirement Savings Plan (RSP) Voluntary Plan | No | |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC KEY EMPLOYEE SUPPLEMENTAL SAVINGS PLAN | No | TIAA L875497-4, Other Investments |
| 10/26/2021 | 9.5 | Ms. Dunn | MSKCC Key Employee Supplemental Savings Plan | No | |
| 3/31/2015 | -0.2 | Mr. Cohen | RETIREMENT INCOME PLAN FOR TEACHING FACULTY OF HARVARD UNIV | No | TIAA A697778-7, CREF P697778-4 |
| 10/26/2021 | 6.3 | Ms. Dunn | Retirement Income Plan for Teaching Faculty of Harvard University | No | |
| 3/31/2015 | -0.2 | Mr. Cohen | NEW ENGLAND DEACONESS HOSPITAL DISCONTINUED | Yes | TIAA A697778-7, CREF P697778-4 |
| 10/26/2021 | 6.3 | Ms. Dunn | New England Deaconess Hospital Discontinued | Yes | |
| 3/31/2015 | -0.2 | Mr. Cohen | BRIGHAM AND WOMENS HOSPITAL PROFESSIONAL STAFF | Yes | TIAA A697778-7, CREF P697778-4 |
| 10/26/2021 | 6.3 | Ms. Dunn | Brigham and Women's Hospital Professional Staff Retirement Plan | Yes | |
| 10/26/2021 | 6.3 | Ms. Dunn | IRA FBO Peter K Kijewski | | |

a. "TIAA has received multiple communications relating to a

potential qualified domestic relations order (DRO) involving the subject

retirement plan accounts record kept by TIAA."

i. June 25, 2015, Mr. Cohen letter to TIAA-CREF, via FAX

July 1, 2015 730, NYSCEF No. 399, enclosed unauthorized March

31, 2015, TIAA retirement account statement, account <u>owner</u> Peter Kijewski: "Mr. Kijewski has the following accounts with your company: (See Annual Printout) and possibly other accounts.  Please consider this as Notice to you that these restrictions are in place and be guided accordingly."

ii. July 6, 2015, Angela Shaw, QDRO Relationship Manager, to "Dear Attorney Cohen" NYSCEF No. 358: "This letter is in response to a Notice of Entry of Automatic Orders received on July 1, 2015 pertaining to Mr. Kijewski's TIAA-CREF annuity contracts. - Our records have been updated with this information; however, we cannot be held responsible for any transactions that may have occurred prior to the processing of this order. - TIAA-CREF cannot be held responsible for any transaction executed by the Participant, such as cash withdrawals, transfers, and/or a conversion from a Deferred Annuity contract to an Immediate Annuity contract prior to receipt of a valid QDRO. If there have been account withdrawals or transfers, there may be insufficient funds to meet the terms of the Order. We will implement the Order to the extent of the funds remaining in the contract affected. - I am the divorce case manager concerning the division of your TIAA-CREF annuities. For future inquiries or requests regarding this matter, you may reach me from 9:30 AM to 6:30 PM (ET) at (877) 535-3910, ext. 222236. For all other inquiries

regarding TIAA-CREF products and services, please call our National Contact Center at (800) 842-2776."

b. "Pursuant to those communications, TIAA has maintained a disbursement hold on Dr. Kijewski's accounts since 2018, pending the receipt of a domestic relations order (DRO). However, TIAA has never received a DRO in this matter.":

i. March 22, 2018, Ms. Dunn letter to "Dear Sir/Madam", TIAA-CREF, NYSCEF No. 364: "Please be advised that your undersigned represents Marie Kijewski in connection with her pending post-judgment matrimonial matter against her ex-husband, Peter Kijewski. An Order to Show Cause was signed by Hon. Lewis J. Lubell in connection with this matter, and said Order temporarily restrains all retirement accounts maintained by Mr. Kijewski at TIAA-CREF, so that no transfers or withdrawals may be made out of any retirement accounts, and no changes may be made to the status of said accounts. A copy of the Order is enclosed for service upon you; your attention is directed to the last paragraph on the bottom of page 2 of the Order, which continues onto the top of page 3 of the Order. - Upon information and belief, Mr. Kijewski maintains several retirement accounts with your company. A list of account numbers is included on the attached Order. Please be advised that no transfers or withdrawals shall be made from either these accounts or any other retirement accounts pending further Order of the Court."

c. "Because TIAA has not received a DRO, we will release the disbursement hold on Dr. Kijewski's accounts if TIAA does not receive a DRO within 30 days of the date of this letter.": TIAA Law & Compliance lawyers indisputably confirm:

i. "Required Minimum Distribution" (RMD) disbursements "hold" violates IRS Internal Revenue Code.

ii. Since up to October 26, 2021, Ms. Dunn failed to submit to TIAA any Domestic Relations Order (DRO) since May 10, 2011, Peter Kijewski, account <u>owner</u> 403(b) & 457(b) retirement plans and <u>Individual</u> Retirement Account (IRA) <u>owner</u>, receives net "Required Minimum Distribution" (RMD) disbursements after Federal & State tax withholding.

iii. AUTOMATIC ORDERS "(2) ORDERED: Neither party shall … withdraw ... any tax deferred funds …; except that any party who is already in pay status may continue to receive such payments thereunder" since May 10, 2011, certifies all attorneys have been awarded means to comply with IRS Internal Revenue Code.

iv. December 9, 2015, Hon. Paul I. Marx, J.S.C. No. 1 of 7, PENDENTE LITE DECISION AND ORDER NYSCEF No. 59 affirms attorneys and parties are prohibited violating IRS Internal Revenue Code or cause RMD 50% penalties: 1) "The award shall be taxable to Plaintiff, as she does not specify any basis for departing from "the norm envisioned by current Internal

Revenue Code provisions."" and 2) "Plaintiff explains that Defendant is required to withdraw a certain amount from his retirement accounts each year or he will be charged a 50% penalty."

    v. Peter Kijewski, account <u>owner</u> 403(b) & 457(b) retirement plans and <u>Individual</u> Retirement Account (IRA) <u>owner</u>, confirms false understanding of IRS Internal Revenue Code revealed by Domestic Relations Order (DRO) term (6): "(6) Any distributions received by the Former Spouse pursuant to this Order will be included as gross income by the Former Spouse. For the purposes of Section 72 of the <u>Internal Revenue Code</u>, the Former Spouse and not the IRA <u>Owner</u> shall be treated as the distributee of any distribution or payment made by any IRA pursuant to this Order."

d. "Please feel free to contact me directly if you have any questions or concerns regarding this matter. I can be reached weekdays at **800-842-2733, ext. 242873** or via email at <u>eperry@tiaa.org</u>.":

    i. Ms. Dunn wire communications with Ms. Elizabeth Perry needed to strictly focus on Ms. Elizabeth Perry twenty-seven (27) years subject matter expertise: <u>ELIZABETH JENNIFER PERRY - Broker at TIAA-CREF INDIVIDUAL & INSTITUTIONAL SERVICES, LLC</u>.

527. November 2021 Ms. Dunn and Mr. Senter Process Notes and

Invoices exposed Ms. Dunn aggressive objections to releasing "Required

Minimum Distribution" (RMD) disbursements "hold" since March 6, 2018:

### Table 41 November 2021 Ms. Dunn & Mr. Senter Process Notes and Invoices About Continuing RMD Restraining Order

| November 2021 Ms. Dunn Process Notes and Invoices Responding to October 26, 2021, TIAA Letter | | | | | |
|---|---|---|---|---|---|
| "Peter Kijewski with exhibits" reveals Ms. Dunn reviewing Peter Kijewski NYSCEF filings. | | | | | |
| "OTSC": Ms. Dunn October 13, 2021, Application No. 12 & November 5, 2021, Application No. 13. | | | | | |
| "Review ERISA statute" reveals Ms. Dunn first encounter of "Employee Retirement Income Security Act of 1974" (ERISA). | | | | | |
| "C Annalora (TIAA)": J. Christian Annalora, Senior Director, Associate General Counsel | Law & Compliance, TIAA. | | | | | |
| "Liz Perry": October 26, 2021, Ms. Elizabeth Perry, TIAA Law & Compliance Liaison, NYSCEF No. 348. | | | | | |
| "T Senter, TCS": October 8, 2020, Thomas C. Senter, pro se ERISA attorney, retainer NYSCEF No. 395. | | | | | |
| "K. Wodeslaysky": Peter Kijewski CPA tax accountant. | | | | | |
| "R Newman": Memorial Sloan Kettering Cancer Center attorney. | | | | | |
| "Vince Ford": August 12, 2021, Mr. Ford, QDRO Relationship Manager, Ms. Dunn subpoena compliance NYSCEF No. 484. | | | | | |
| "Attendance at Teams Conference with Court": Hon. Nancy Quinn Koba, J.S.C. No. 5 of 7, asked about RMDs. | | | | | |
| "Matrimonial attorney": November 23, 2021, Ms. Jill F. Spielberg Post Judgment retainer. | | | | | |
| MYC: June 25, 2015, Mr. Cohen AUTOMATIC ORDERS letter to TIAA, RMD disbursement "hold" NYSCEF No. 399. | | | | | |
| MD: March 22, 2018, Ms. Dunn TRO "Required Minimum Distribution" (RMD) disbursement "hold" NYSCEF No. 364. | | | | | |
| Date | Years | Charge | Process Notes | Time | Invoice |
| 11/1/2021 | 6.35 | MD | Review E-Mail from Peter Kijewski with exhibits supporting OTSC Response | 0.1 | $35.00 |
| 11/2/2021 | 6.35 | MD | E-Mails with T Senter | 0.1 | $35.00 |
| 11/2/2021 | 6.35 | MD | Review exhibits filed by Peter | 0.2 | $70.00 |
| 11/2/2021 | 6.35 | MD | E-Mails with TIAA | 0.3 | $105.00 |
| 11/2/2021 | 6.35 | MD | Conference with Mitchell Y. Cohen | 0.3 | $105.00 |
| 11/2/2021 | 6.35 | MD | E-Mails with T Senter | 0.1 | $35.00 |
| 11/2/2021 | 6.35 | MD | Review submission from P Kijewski | 0.3 | $105.00 |
| 11/2/2021 | 6.35 | MD | E-Mails with; review ERISA statute | 0.4 | $140.00 |
| 11/2/2021 | 6.35 | MD | E-Mails with client | 0.2 | $70.00 |
| 11/2/2021 | 6.35 | MYC | Telephone conference with; conference with Maureen Dunn | 0.3 | $142.50 |
| 11/2/2021 | 6.35 | MD | Telephone conference with regarding; conference with Mitchell Cohen | 0.3 | $105.00 |
| 11/2/2021 | 6.35 | MS | Telephone conference with online research | 0.2 | $22.00 |
| 11/2/2021 | 6.35 | MD | Review all TIAA correspondence; draft letter to TIAA regarding continuing restraining order | 0.5 | $175.00 |
| 11/2/2021 | 6.35 | MD | Telephone conference with Mitchell Y. Cohen and with client | 0.6 | $210.00 |
| 11/2/2021 | 6.35 | MD | Telephone conference with Maureen Dunn and client | 0.6 | $285.00 |
| 11/2/2021 | 6.35 | MD | Review submission from P Kijewski | 0.8 | $280.00 |
| 11/2/2021 | 6.35 | MD | Conference with Mitchell Y. Cohen | 0.1 | $35.00 |
| 11/2/2021 | 6.35 | MD | Review E-Mail from Peter Kijewski with exhibits 9-12 | 0.1 | $35.00 |
| 11/2/2021 | 6.35 | MD | Review E-Mail from Peter Kijewski with exhibits 19-22 | 0.1 | $35.00 |
| 11/2/2021 | 6.35 | MD | Review E-Mail from Peter Kijewski with exhibits 23-26 | 0.1 | $35.00 |
| 11/2/2021 | 6.35 | MD | Dictation of letter to TIAA Customer Care - Liz Perry | 0.2 | $70.00 |
| 11/2/2021 | 6.35 | MD | Review filings from P Kijewski | 0.8 | $280.00 |
| 11/2/2021 | 6.35 | MD | Review E-Mail with exhibits 27-30 | 0.1 | $35.00 |
| 11/2/2021 | 6.35 | TCS | Correspondence from/to Maureen Dunn, Esq.; correspondence with Dr. Kijewski. | 0.8 | $412.00 |
| 11/3/2021 | 6.36 | TCS | Correspondence with Maureen Dunn, Esq. in final; attend to miscellaneous issues. | 0.8 | $412.00 |

| 11/4/2021 | 6.36 | TCS | Prepare outline of discussion items with Dr. Kijewski and Abrams & McKeever; telephone conference with Dr. Kijewski, P. Abrams and K. Wodeslaysky regarding strategy and next steps. | 1.5 | $772.50 |
|---|---|---|---|---|---|
| 11/5/2021 | 6.36 | MD | E-Mails with T Senter | 0.1 | $35.00 |
| 11/5/2021 | 6.36 | MD | Preparation of exhibits for OTSC | 0.3 | $105.00 |
| 11/5/2021 | 6.36 | MD | Preparation of Order to Show Cause for restraining order | 3.0 | $1,050.00 |
| 11/5/2021 | 6.36 | MD | E-Filing | 0.2 | $70.00 |
| 11/5/2021 | 6.36 | MD | E--Mails with client | 0.2 | $70.00 |
| 11/5/2021 | 6.36 | MD | Conference with Mitchell Y. Cohen | 0.5 | $175.00 |
| 11/5/2021 | 6.36 | MD | Letter from Peter Kijewski to Court regarding experts | | $35.00 |
| 11/5/2021 | 6.36 | MD | Letter from Peter Kijewski to Court | 0.1 | $35.00 |
| 11/5/2021 | 6.36 | TCS | Review correspondence from Maureen Dunn, Esq.; correspondence with Dr. Kijewski regarding same. | 0.3 | $154.50 |
| 11/6/2021 | 6.36 | MD | Review submissions from P Kijewski | 0.3 | $105.00 |
| 11/6/2021 | 6.36 | MD | E-Mails with client | 0.1 | $35.00 |
| 11/7/2021 | 6.37 | MD | Review filing from P Kijewski | 0.1 | $35.00 |
| 11/7/2021 | 6.37 | MD | E-Mails with client | 0.1 | $35.00 |
| 11/8/2021 | 6.37 | MD | Review Documents from P Kijewski | 0.6 | $210.00 |
| 11/8/2021 | 6.37 | MD | Review E-Mail from Court with signed OTSC | 0.1 | $35.00 |
| 11/8/2021 | 6.37 | MD | Review E-Mail with exhibit 42 and letter from pro se attorney | 0.1 | $35.00 |
| 11/8/2021 | 6.37 | MD | Review Conformed OTSC; conference with Mitchell Cohen | 0.2 | $70.00 |
| 11/8/2021 | 6.37 | MD | Conference with Mitchell Y. Cohen | 0.2 | $70.00 |
| 11/8/2021 | 6.37 | MD | E-Mails with client | 0.2 | $70.00 |
| 11/8/2021 | 6.37 | TCS | Prepare statements of expertise and commence work on experts reports. | 1.2 | $618.00 |
| 11/9/2021 | 6.37 | MD | Conference with Mitchell Y. Cohen | 0.2 | $70.00 |
| 11/9/2021 | 6.37 | MD | E-Mails with client and T Senter | 20.0 | $245.00 |
| 11/9/2021 | 6.37 | MD | Telephone conference and e-mails with E Perry | 0.2 | $70.00 |
| 11/9/2021 | 6.37 | MD | Telephone conference with TIAA (v. Ford); prepare correspondence regarding Order Restraining Accounts | 0.3 | $105.00 |
| 11/9/2021 | 6.37 | MD | Review submissions from P Kijewski | 0.3 | $105.00 |
| 11/9/2021 | 6.37 | MD | Dictation of letter to TIAA QDRO manager Vince Ford | 0.2 | $70.00 |
| 11/10/2021 | 6.38 | MYC | Telephone conference with Maureen Dunn and client | 0.5 | $237.50 |
| 11/10/2021 | 6.38 | MYC | Review of File for Court; conference with Maureen Dunn | 1.0 | $475.00 |
| 11/10/2021 | 6.38 | MD | Review E-Mail with exhibits 44 - 55 and 59-71 | 0.1 | $35.00 |
| 11/10/2021 | 6.38 | MD | E-Mails with R Newman | 0.1 | $35.00 |
| 11/10/2021 | 6.38 | MD | E-Mails with T Senter; review documents | 0.3 | $105.00 |
| 11/10/2021 | 6.38 | MD | Telephone conference with Mitchell Y. Cohen and client | 0.5 | $175.00 |
| 11/10/2021 | 6.38 | MD | Attendance at Zoom Conference with | 0.6 | $210.00 |
| 11/10/2021 | 6.38 | MD | Conference with Mitchell Y. Cohen | 0.3 | $105.00 |
| 11/10/2021 | 6.38 | MD | E-Mails with client | 0.3 | $105.00 |
| 11/10/2021 | 6.38 | MD | Review e-mailed exhibit from Peter Kijewski | 0.1 | $35.00 |
| 11/10/2021 | 6.38 | TCS | Prepare (continue) Statements of Expertise and correspondence with attorney for ex-spouse; telephone conference with Abrams & McKeever; correspondence (multiple) from/to Dr. Kijewski; prepare correspondence from Dr. Kijewski to the Court. | 5.2 | $2,678.00 |
| 11/11/2021 | 6.38 | MD | E-Mails with Senter | 0.1 | $35.00 |
| 11/11/2021 | 6.38 | MD | Review husband's submissions | 0.2 | $70.00 |
| 11/11/2021 | 6.38 | MYC | Telephone conference with Maureen Dunn and attorney from MSK | 0.2 | $95.00 |
| 11/11/2021 | 6.38 | MD | Review Documents for production to Senter | 0.3 | $105.00 |
| 11/11/2021 | 6.38 | MD | E-Mails and telephone call with R Newman (MSKCC) | 0.3 | $105.00 |
| 11/11/2021 | 6.38 | MD | E-Mails with C Annalora (TIAA) | 0.3 | $105.00 |
| 11/11/2021 | 6.38 | MD | Conference with Mitchell Y. Cohen | 0.3 | $105.00 |
| 11/11/2021 | 6.38 | MYC | Conference with Maureen Dunn | 0.3 | $142.50 |
| 11/11/2021 | 6.38 | MD | E-Mails with client | 0.6 | $210.00 |
| 11/11/2021 | 6.38 | MD | Letter from Peter Kijewski requesting expert | 0.1 | $35.00 |

| | | | | | |
|---|---|---|---|---|---|
| 11/11/2021 | 6.38 | TCS | Telephone conferences with Dr. Kijewski; prepare revisions to Court submission from Dr. Kijewski; review correspondence from Ms. Dunn; prepare outline for Dr. Kijewski's Court appearance on November 12, 2021 | 3.8 | $1,957.00 |
| 11/12/2021 | 6.38 | MD | Review e-mail from attorney to Court requesting expert and exhibits 59-71 | 0.1 | $35.00 |
| 11/12/2021 | 6.38 | MD | Review E-Mail with exhibits 72-95 | 0.1 | $35.00 |
| 11/12/2021 | 6.38 | MD | E-Mails with TIAA and MSKCC | 0.4 | $140.00 |
| 11/12/2021 | 6.38 | MD | Review P Kijewski's submissions | 0.5 | $175.00 |
| 11/12/2021 | 6.38 | MYC | Attendance at Teams Conference with Court | 0.5 | $237.50 |
| 11/12/2021 | 6.38 | MD | Conference with Mitchell Y. Cohen | 0.4 | $140.00 |
| 11/12/2021 | 6.38 | MYC | Review of File | 0.5 | $237.50 |
| 11/12/2021 | 6.38 | MYC | Telephone conference with client | 0.1 | $47.50 |
| 11/12/2021 | 6.38 | MD | E-Mails with client | 0.2 | $70.00 |
| 11/12/2021 | 6.38 | MD | Telephone conference with client | 0.3 | $105.00 |
| 11/12/2021 | 6.38 | TCS | Telephone conferences with Dr. Kijewski; correspondence with Mr. Abrams; attend to miscellaneous issues. | 1.5 | $772.50 |
| 11/13/2021 | 6.38 | MD | Review filings from P Kijewski | 0.4 | $140.00 |
| 11/14/2021 | 6.39 | MD | Review filings from P Kijewski | 0.3 | $105.00 |
| 11/14/2021 | 6.39 | MD | E-Mails with client | 0.1 | $35.00 |
| 11/15/2021 | 6.39 | MD | Review filing from P Kijewski | 0.3 | $105.00 |
| 11/15/2021 | 6.39 | MD | Conference with Mitchell Y. Cohen | 0.1 | $35.00 |
| 11/15/2021 | 6.39 | MD | E-Mails with client | 0.1 | $35.00 |
| 11/15/2021 | 6.39 | TCS | Review draft correspondence from Dr. Kijewski to Court; draft correspondence to TIAA-CREF; attend to finding matrimonial counsel. | 1.8 | $927.00 |
| 11/16/2021 | 6.39 | MD | E-Mails with TIAA | 0.2 | $70.00 |
| 11/16/2021 | 6.39 | MD | Review filings from P Kijewski | 0.4 | $140.00 |
| 11/16/2021 | 6.39 | MD | Conference with Mitchell Y. Cohen | 0.2 | $70.00 |
| 11/16/2021 | 6.39 | MD | Telephone conference and e-mail with client | 0.6 | $210.00 |
| 11/16/2021 | 6.39 | MYC | Telephone conference with Maureen Dunn and client | 0.3 | $142.50 |
| 11/16/2021 | 6.39 | TCS | Correspondence and telephone conference with matrimonial attorney regarding potential retention; correspondence (multiple) from/to Dr. Kijewski; | 1.2 | $618.00 |
| 11/17/2021 | 6.39 | MYC | Telephone conference with Maureen Dunn and client | 0.2 | $95.00 |
| 11/17/2021 | 6.39 | MYC | Conference with Maureen Dunn | 0.2 | $95.00 |
| 11/17/2021 | 6.39 | MYC | Review E-Mails from client and | 0.1 | $47.50 |
| 11/17/2021 | 6.39 | MD | Review filings from P Kijewski | 0.2 | $70.00 |
| 11/17/2021 | 6.39 | MD | E-Mails with T Senter; review judgement and interest calculations | 0.3 | $105.00 |
| 11/17/2021 | 6.39 | MD | Conference with Mitchell Y. Cohen | 0.2 | $70.00 |
| 11/17/2021 | 6.39 | MD | E-Mails with client | 0.5 | $175.00 |
| 11/17/2021 | 6.39 | MD | Review e-mail from Peter Kijewski with exhibits 107-113 | 0.1 | $35.00 |
| 11/17/2021 | 6.39 | MYC | Review E-Mail from client, conference with Maureen Dunn; e-mail to client | 0.2 | $95.00 |
| 11/18/2021 | 6.40 | MYC | Telephone conference with Maureen Dunn and client | 0.3 | $142.50 |
| 11/18/2021 | 6.40 | MD | E-Mails with TIAA | 0.1 | $35.00 |
| 11/18/2021 | 6.40 | MD | Revise e-mail to T Senter; review reply | 0.2 | $70.00 |
| 11/18/2021 | 6.40 | MD | Telephone conference with Mitchell Y. Cohen; telephone conference with client | 0.4 | $140.00 |
| 11/18/2021 | 6.40 | MD | Conference with Mitchell Y. Cohen | 0.3 | $105.00 |
| 11/18/2021 | 6.40 | MD | E-Mails with client | 0.4 | $140.00 |
| 11/18/2021 | 6.40 | TCS | Telephone conference with Jill Spielberg, Esq.; correspondence with Ms. Spielberg; correspondence with Maureen Dunn, Esq. | 2.2 | $1,133.00 |
| 11/19/2021 | 6.40 | TCS | Telephone conference with Dr. Kijewski and Ms. Spielberg; review correspondence from Dr. Kijewski. | 1.2 | $618.00 |
| 11/20/2021 | 6.40 | MYC | Review E-Mail from client regarding | 0.1 | $47.50 |
| 11/20/2021 | 6.40 | MD | E-Mails with client | 0.1 | $35.00 |
| 11/22/2021 | 6.41 | MD | E-Mails with client | 0.1 | $35.00 |
| 11/22/2021 | 6.41 | TCS | Correspondence with Jill Spielberg, Esq.; review correspondence from Dr. Kijewski. | 0.9 | $463.50 |
| 11/23/2021 | 6.41 | TCS | Correspondence from/to Dr. Kijewski; review TIAA-CREF materials. | 1.3 | $669.50 |

| | | | | | |
|---|---|---|---|---|---|
| 11/27/2021 | 6.42 | MD | Review E-Mail from pro-se attorney with exhibits 114-121 | 0.1 | $35.00 |
| 11/27/2021 | 6.42 | MD | Review filings from P Kijewski | 0.5 | $175.00 |
| 11/28/2021 | 6.43 | MD | Review filings from P Kijewski | 0.1 | $35.00 |
| 11/28/2021 | 6.43 | MD | E-Mails with client | 0.1 | $35.00 |
| 11/29/2021 | 6.43 | MD | E-Mails with client; review spread sheet | 0.2 | $70.00 |
| 11/29/2021 | 6.43 | TCS | Correspondence from/to Dr. Kijewski; correspondence with Jill Spielberg, Esq.; review information from Dr. Kijewski. | 0.8 | $412.00 |
| 11/30/2021 | 6.43 | MD | E-Mails with TIAA | 0.3 | $105.00 |
| 11/30/2021 | 6.43 | TCS | Correspondence from/to Dr. Kijewski; correspondence with Ms. Spielberg. | 0.5 | $257.50 |
| 11/1/2021 | | J&C | Monthly Invoice | | $12,360.06 |
| | | J&C | Professional Deduction | | ($3,000) |
| 11/1/2021 | | G&R | Monthly Invoice | 25.0 | $12,875.00 |
| | | G&R | Courtesy Adjustment | | ($1,000) |

528. November 2, 2021, Ms. Dunn novel "carve out" wire communication to Mr. Senter NYSCEF No. 396, concerning her use of forever "Required Minimum Distribution" (RMD) disbursements "hold":

a. "If he does truly want to resolve these issues, please advise if he will consent to a further restraining order being imposed on the accounts while we work through the myriad of issues remaining in an effort to divide the retirement interests appropriately. If he will consent, I can discuss with my client a carve out to enable Mr. Kijewski to remove his 2021 RMD to avoid further penalty, however those funds must first go to pay the outstanding money judgments and child support owed to my client."

529. November 5, 2021, Ms. Dunn **ORDER TO SHOW CAUSE INTERIM RELIEF REQUESTED NYSCEF** Motion Sequence #13 No. 394 (62 pages):

a. WebCivil Supreme Motion Sequence #13 "Injunction/Restraining Order".

b. "Injunction/Restraining Order" intended to continue Peter Kijewski retirement plans and "RIA FBO" (sic) disbursements "hold".

530. November 5, 2021, Ms. Dunn **AFFIRMATION IN SUPPORT**
NYSCEF No. 381 tracks the timeline "Required Minimum Distribution"
(RMD) disbursement "hold" since March 20, 2018, and Ms. Dunn
unanticipated encounter of "Employe Retirement Income Security Act of 1974"
(ERISA):

    a. "1. Affirmant is a member of the firm of JOHNSON & COHEN,
LLP, attorneys for Plaintiff, Marie Foley Kijewski. I submit this
affirmation in support of Plaintiffs annexed application for a restraining
order with respect to Defendant's TIAA-CREF retirement assets."

    b. March 20, 2018: "4. There has been a restraining order in effect
preventing TIAA-CREF from permitting any withdrawals and/or
transfers from the TIAA Retirement Accounts since March 20, 2018. A
copy of the conformed order to show cause which first granted the relief
is annexed as **Exhibit "1"**."

    c. March 27, 2018: "5. This restraining order was served on TIAA-
CREF on March 22, 2018, and their compliance was confirmed by
responsive correspondence dated March 27, 2018. Copies of this
correspondence is annexed hereto as Exhibit **"2"**."

    d. October 5, 2018 & January 17, 2019: "6. Referee Trovini issued
a report and recommendation on October 5, 2018, which recommended
continuing the restraining orders but for a hearing to be held as to
Defendant's withdrawal of the necessary amount to satisfy his Required
Minimum Distribution. The report and recommendation was confirmed
by Justice Lubell on January 17, 2019. A copy of Justice Lubell's

Decision and Order, which includes the underlying Report and Recommendation of Referee Trovini, is annexed hereto as **Exhibit "3".**"

e. "7. No hearing was held with respect to Defendant's 2018 RMD withdrawal, however, as Defendant refused to continue his participation in that litigation, causing his attorneys to seek to be relieved of further representation of him (see NYSCEF documents #262 - #264, #272).":

    i. December 13, 2018, Ms. Stutman **ORDER TO SHOW CAUSE** Application No. 9 NYSCEF No. 262.

    ii. December 17, 2018. Hon. Lewis J. Lubell, J.S.C. No. 4 of 7, **ORDER TO SHOW CAUSE** Application No. 9 NYSCEF No. 264.

    iii. February 20, 2019, Special Referee Josephine Trovini **REPORT & RECOMMENDATION** Application No. 9 NYSCEF No. 272.

f. January 17, 2019: "8. Defendant continued to default in appearing before the Court during several scheduled appearances throughout 2019, and further failed to comply with the directives contained in Judge Lubell's January 17, 2019 Decision and Order."

g. May 8, 2020: "9. In May 2020, affirmant again contacted TIAA to confirm that they were continuing to comply with the restraining order that was in effect. Again, TIAA confirmed in writing that they would continue to restrain Defendant's TIAA Retirement Accounts until such time as they received a QDRO or a court order authorizing the

release of funds. Copies of this correspondence is annexed hereto collectively as **Exhibit "4".**"

    i. May 8, 2020, Ms. Dunn letter to TIAA-CREF Legal Department NYSCEF No. 385 "EXHIBIT(S) - 4 (Motion #13)":

    ii. "Please be informed that in accordance with the Order to Show Cause executed by Judge Lewis J. Lubell dated March 20, 2018, the accounts held with TIAA-CREF in the name of Mr. Peter Kijewski are to remain frozen, with no withdrawals and/or transfers being permitted. A copy of the Order is annexed hereto for reference."

    iii. "Please confirm that the accounts maintained by Mr. Kijewski remain frozen as required by the Order."

    iv. May 27, 2020, Ms. Ramirez, TIAA QDRO Relationship Manager, letter to Ms. Dunn NYSCEF No. 385, appended illegible "I am responding to your written inquiry of May 8, 2020 regarding Order of Court restraining transfers and withdrawals on the TIAA-CREF accounts of Dr. Peter K. Kijewski dated March 20, 2018.  The Order listed Dr. Kijewski's deferred annuity contracts A6977787/P6977784, C3686023/U3686021, C8156M09/U8156M07K5994351/J5994353, C8256LT5/U8256LT3, L8754974 & C8126LV5/U8126LV3."

    v.  "A stated in my letter of March 27, 2018, due to receipt of the prior Order we did place a restriction on all requests for transfers, loans, cash withdrawals, and any other transactions

that would impact the accumulations in the annuities mentioned in the Order. The restriction will remain in place until we receive a judge signed court certified copy of an order releasing or removing restrictions on Mr. Kijewski's TIAA-CREF accounts or upon successful completion of a QDRO."

    vi. "If you have any questions or require additional information, you may reach me from 10:00 AM. to 6:30 PM. (ET) at 800-842-2638, ext. 242418. For all other inquiries please call our **National Contact Center at 800-842-2776,** Monday through Friday, 8:00 am to 10:00 pm ET, or Saturday from 9:00 am to 6:00 pm ET."

    vii. **<u>Outcome</u>**: TIAA never received any "judge signed court certified copy of an order releasing or removing restrictions on Mr. Kijewski's TIAA-CREF accounts or upon successful completion of a QDRO."

h. ERISA laws: "10. Notwithstanding the current restraining order, affirmant recently received correspondence from TIAA indicating that they would release the "disbursement hold" on Defendant's TIAA Retirement Accounts within 30 days unless a QDRO was submitted, claiming that ERISA laws required this. A copy of this correspondence is annexed as **Exhibit "5"**."

    i. October 26, 2021, TIAA letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348 concerning account <u>owner</u> Peter K. Kijewski 403(b) & 457(b) retirement plans and IRA account A57-

649187, exclusively due to Plan Administrator, MSKCC

retirement plans sponsor, discharged her "fiduciary

responsibilities prudently and solely in the interest of the plan's

participants and beneficiaries" "P", "J" & "8-year-old daughter".

ii. June 15, 2015, Mr. Cohen and Ms. Kijewski Conference - Agenda Items

NYSCEF No. 356 about beneficiaries and retirement plans, presented during June

28, 2016, "J" add-on expenses Settlement Conference.

i. "11. After becoming aware of the content of this correspondence

by Defendant's rampant NYSCEF filings, affirmant contacted TIAA and

spoke with Elizabeth Perry, who issued the letter in question, on

November 1, 2021. Ms. Perry first advised affirmant that the reason the

hold would be released was because the accounts were "ERISA

accounts" and could only be restrained for 18 months.[1] Despite this, Ms.

Perry assured affirmant that if a new restraining order was issued, this

would effectively "restart the clock" with respect to the 18-month time

frame. However, Ms. Perry followed that conversation with an email to

affirmant on November 2, 2021, wherein she wrote: "I spoke with our

legal department after our call. I misspoke. Per ERISA and the IRS the

18-month time frame does not reset with a new order. Additionally,

counsel for the related retirement plans is telling us that the hold on Dr.

Kijewski's accounts should be released." A copy of Ms. Perry's email of

November 2, 2021 is annexed as **Exhibit "6"**""

i. Requires IRS Internal Revenue Code compliance: "[1] It should be noted that Defendant's IRA account with TIAA is not an ERISA account."

ii. November 2, 2021, Ms. Elizabeth Perry wire communication to Ms. Dunn NYSCEF No. 387, "EXHIBIT(S) - 6 (Motion #13)": Ms. Perry is referring to MSKCC counsel Mr. Newman: "Additionally, counsel for the related retirement plans is telling us that the hold on Dr. Kijewski's accounts should be released."

iii. Ms. Dunn Process Notes and Invoices reveal multiple wire communications between Ms. Dunn and Mr. Newman.

iv. See EXHIBIT about "Defendant's rampant NYSCEF filings".

j. "12. Affirmant subsequently wrote to Ms. Perry, reminding her of the court orders and prior written confirmation of TIAA's compliance with same, and correcting her misapplication of ERISA law. Specifically, the reference that Ms. Perry had made to the 18 month time limit on restraining ERISA accounts is not applicable in this situation, as same only applies once the plan has been served with a proposed Domestic Relations Order.[2] In the instant case, no DRO has been issued or served on TIAA, and the restraining order issued by this Court cannot be construed as a DRO. A copy of this correspondence is annexed as **Exhibit "7"**. Notwithstanding this communication, no response has been received from TIAA and their continued compliance

with the extant orders of this Court is not guaranteed. From the last
correspondence received from TIAA (Ms. Perry's November 1st email), it
appears that TIAA may even release the restraints on the TIAA
Retirement Accounts now."

     i. "2 It appears that Ms. Perry was misconstruing ERISA
Section 206(d)(3)(H)."

     ii. November 4, 2021, Ms. Dunn wire communication to Ms.
Elizabeth Perry NYSCEF No. 388, "EXHIBIT(S) - 7 (Motion
#13)", includes March 22, 2018, Ms. Dunn letter to TIAA-CREF
Legal Department NYSCEF No. 383, which Ms. Dunn failed to
file March 22, 2018.

     iii. "No DRO has been issued or served on TIAA, and the
restraining order issued by this Court cannot be construed as a
DRO": **EMPHASIS FOR ALL ATTORNEYS**: 1) **Legal**: Serve
$468,997 Domestic Relations Order (DRO) on TIAA at any time
since June 19, 2015, NYSCEF No. 1 & 2, and 2) **Prohibited**:
March 22, 2018, Ms. Dunn letter to TIAA-CREF Legal
Department NYSCEF No. 383 causing "Required Minimum
Distribution" (RMD) disbursement "hold" since March 6, 2018.

k. "13. It is clear that TIAA has been in communication with
Defendant and/or his newly retained attorney, Thomas C. Senter, Esq.3,
as both are copied on the correspondence from TIAA. See Exhibit "4".
Upon information and belief, Defendant and/or his counsel have
pressured TIAA to release funds from Defendant's TIAA Retirement

Accounts despite the current Court order prohibiting same. Because the current order restrains TIAA, but not Defendant specifically, the instant application is being filed to clarify that Defendant should be prohibited from disturbing these accounts, even if TIAA ignores the directives previously issues by this Court."

    i. Thomas Senter: New Jersey Law Firm; New Jersey Attorneys, Lawyers, ERISA attorney: "[3] Mr. Senter has represented that he has been retained by Defendant but is not appearing in this proceeding."

    ii. "Defendant and/or his counsel have pressured TIAA to release funds from Defendant's TIAA Retirement Accounts despite the current Court order prohibiting same.": October 5, 2018, Plaintiff Peter Kijewski wrote to four (4) sponsors of his retirement plans, causing MSKCC Plan Administrator communication to TIAA and October 26, 2021, TIAA letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348, 349, 350, November 5, 2021, Ms. Dunn filed NYSCEF No. 386 and January 19, 2022, Ms. Kuritzky filed NYSCEF No. 497.

    iii. May 8, 2020, Ms. Dunn letter to TIAA-CREF Legal Department NYSCEF No. 385, "EXHIBIT(S) - 4 (Motion #13)".

l. "14. Based on the above, and upon TIAA's statement that they will not continue to comply with the extant orders of this Court, it is respectfully submitted that Defendant should be restrained and enjoined from making any transfers, withdrawals, or changes to his

TIAA Retirement Accounts, pending the issuance of a QDRO or further order of this Court. If Defendant is not restrained and enjoined in this manner, he will be able to make withdrawals from his TIAA Retirement Accounts that will irreparably prejudice Plaintiff, who is owed well in excess of $1,000,000 from Defendant's TIAA Retirement Assets.

     m. "Plaintiff, who is owed well in excess of $1,000,000 from Defendant's TIAA Retirement Assets": 1) Plaintiff Peter Kijewski single required action is to achieve release of TIAA & Vanguard retirement plans and IRAs "Required Minimum Distribution" (RMD) disbursements "hold", 2) Ms. Dunn single required action is to submit to TIAA a valid $468,997 Domestic Relations Order (DRO) and 3) "pending the issuance of a QDRO" requires Ms. Dunn valid $468,997 Domestic Relation Order (DRO).

     n. "15. This matter is scheduled for a conference before this Court on Friday, November 12, 2021, to address motion sequence #12, which seeks child support arrears, the division of certain retirement assets, counsel fees, and a finding of contempt against Defendant. It is respectfully requested that the instant application be heard at the same time."

          i. November 12, 2021, Hon. Nancy Quinn, Koba, J.S.C. No. 5 of 7, asked Plaintiff Peter Kijewski about the need for "Required Minimum Distribution" (RMD) disbursements due to his age (82).

ii. November 12, 2021, Mr. Cohen extolled the benefits of "Plaintiff, who is owed well in excess of $1,000,000 from Defendant's TIAA Retirement Assets".

o. "16. Notice of the within application was provided to Defendant via email. A copy of that email is annexed hereto as **Exhibit "8""**:

i. November 5, 2021, Ms. Dunn wire communication to Peter Kijewski NYSCEF No. 389, "EXHIBIT(S) - 8 (Motion #13), attachment "Proposed OSC with Supporting Docs.pdf **3 MB**" (62 pages) + twelve (12) wire communications from [efile@nycourts.gov](mailto:efile@nycourts.gov).

ii. November 5, 2021, Ms. Dunn **ORDER TO SHOW CAUSE INTERIM RELIEF REQUESTED NYSCEF** Motion Sequence #13 No. 394 (62 pages), November 5, 2021, filed by Peter Kijewski.

p. "**WHEREFORE**, it is respectfully requested that the relief requested by Plaintiff in her Order to Show Cause be granted in its entirety, and that the Court grant such other and further relief as the Court deems just and proper."

531. November 9, 2021, Hon. Nancy Quinn Koba, J.S.C. No. 6 of 7, signed **ORDER TO SHOW CAUSE INTERIM RELIEF REQUESTED** NYSCEF Motion Sequence #13 No. 405.

532. **EMPHASIS FOR ALL ATTORNEYS**: "**WHEREFORE**, it is respectfully requested that the relief requested by Plaintiff in her Order to Show Cause be granted in its entirety, and that the Court grant such other

and further relief as the Court deems just and proper" must be superseded due to Federal and State law compliance requirements: "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)."

### d) December 16, 2021 - December 27, 2018, TIAA Released Tax Years 2018, 2019, 2020 & 2021 "Required Minimum Distribution" (RMD) Disbursements "Hold"

533. December 16, 2021 - December 27, 2021, TIAA released tax years 2018, 2019, 2020 and 2021 TIAA tax-deferred 403(b) & 457(b) retirement plans and IRA savings benefits mandatory $439,826 balloon retirement income disbursement, including in arears mandatory $150,376 balloon United States Treasury and MA-DOR tax withholding and tax payments. TIAA also included tax years 2018, 2019, 2020 and 2021 mandatory 457(b) $57,267 "Wages, salaries, tips, etc. Attach Form(s) W-2".  October 26, 2021, Plan Administrator, MSKCC retirement plans sponsor, thwarted November 5, 2021, Ms. Maureen A. Dunn Injunction/Restraining Order NYSCEF No. 394 (62 pages) and prevented tax year 2021 additional stiff $93,840 RMD 50% penalty.  March 2024 Social Security income due to tax year 2021 TIAA "Required Minimum Distribution" (RMD) balloon disbursement: **$1.00**.

a. **<u>Further IRS Investigation</u>**: Available TIAA tax years 2018, 2019 and 2020 "OMB No. 1545-0008" MSKCC KEY EMPLOYEE SUPPLEMENTAL SAVINGS PLAN 457(b) tax document.

## B. Vanguard Just, Fair & Timely Cash Award Payments to Plaintiff Peter Kijewski

534. Vanguard custodian of <u>Individual</u> Retirement Accounts (IRA) mandatory compliance with the Internal Revenue Code: "Retirement plan <u>participants</u> and IRA <u>owners</u>, including <u>owners</u> of SEP IRAs and SIMPLE IRAs, are responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

### a) November 8, 2016, Final Vanguard "Required Minimum Distribution" (RMD) Disbursement

535. April 9, 2018, Vanguard Legal Department (Vanguard Office of the General Counsel) letter to Peter Kijewski NYSCEF No. 367 reveals lawyer disputes justify Peter Kijewski Vanguard IRA "Required Minimum Distribution" (RMD) disbursement "hold", specifically referencing "Required Minimum Distribution":

a. "Vanguard is not a party to this action, and is therefore not bound by the March 14, 2018, Order. However, in light of what appears to be a dispute regarding the assets in the Account, we are writing to notify you that Vanguard has placed a restriction on the Account; accordingly, no exchanges, redemptions, withdrawals, or distributions of any kind may occur in or from the Account during this time (including any Required Minimum Distributions)."

i. "March 14, 2018, Order": March 20, 2018, Hon. Lewis J. Lubell, J.S.C. No. 4 of 7, IMMEDIATE RELIEF REQUESTED <u>ORDER TO SHOW CAUSE</u> NSYCEF No. 163, March 14, 2018,

received, March 23, 2018, filed by Court User, omitted Ms. Dunn

NYSCEF filing supporting documents until April 9, 2018, and

omitted any reference to "Required Minimum Distribution"

(RMD) disbursements.

b. "Vanguard will maintain the restriction on the Account until

we receive satisfactory documentation that the dispute regarding the

assets in the Account is resolved, or is no longer being pursued."

c. "March 14, 2018, Order READING AND FILING" (156 pages):

i. March 20, 2018, signed Hon. Lewis Lubell, J.S.C. No. 4 of

7.

ii. Hon. Lewis J. Lubell READING available documents and

never NYSCEF FILING: "UPON READING AND FILING the

annexed affidavit of the Plaintiff, MARIE FOLEY KIJEWSKI,

duly sworn to on the 14th day of March, 2018, the affirmation of

MAUREEN A. DUNN, ESQ., dated March 14, 2018, and all the

papers and proceedings heretofore had herein".

536. November 15, 2018, Ms. Dunn **AFFIRMATION IN REPLY**

NYSCEF No. 245 reveals Ms. Dunn and her client's reasoning to continue

"Required Minimum Distribution" (RMD) disbursement hold: "15. The

Referee's Report recommended that this request be referred to the hearing to

determine whether the request is necessary, in light of the document

production recommended to be ordered. Counsel's argument that the

documents "speak for themselves" misses the point; the need for Plaintiff to

speak directly to the financial advisors is to determine the extent of the

changes made to these accounts by Defendant subsequent to the parties'
divorce (including closing of accounts, changing account numbers, putting
accounts into RMD status a year before he was required to do so, transferring
funds, etc.) and how these changes impact the pending QDROs. Furthermore,
the TIAA accounts in question are almost fully invested in TIAA Traditional
shares, an unusual insurance-based investment with arcane rules that are
specific to each of the 4 separate plans in Defendant's name that remain to be
divided. For example, the premature change to RMD status, undesirable to
Plaintiff as she is not yet required to take distributions and strongly prefers
not to as she currently earns the highest salary of her life, may or may not be
irreversible on Plaintiff's share after division, and may or may not be
controlled by judicial order, depending on plan rules. The statements do not
speak to these issues. It is appropriate for this request to be explored further
at a hearing."

537. November 4, 2022, Hon. Thomas Quinones, J.S.C. No. 6 of 7,
**DECISION & ORDER** Seq. No. 12 & 13 NYSCEF No. 505 & copy 506:
"ORDERED, that Defendant is restrained from removing, transferring, or
withdrawing the retirement assets at Vanguard and TIAA-CREF until the
necessary QDROs are processed, except to the extent he is required to take a
mandatory distribution for the calendar year 2022;"

a. Ms. Dunn failed to remove her March 22, 208, Attorney Order
NYSCEF No. 365: "An Order to Show Cause was signed by Hon. Lewis
*J.* Lubell in connection with this matter, and said Order temporarily
restrains all retirement accounts maintained by Mr. Kijewski at

Vanguard, so that no transfers or withdrawals may be made out of any retirement accounts."

538. November 9, 2022, Ms. Dunn invalid DOMESTIC RELATIONS ORDER (IRA) NYSCEF No. 509 includes a term preventing assignment of retirement interests to her client Ms. Kijewski and a false Internal Revenue Code assertion:

    a. "(6) Any distributions received by the Former Spouse pursuant to this Order will be included as gross income by the Former Spouse. For the purposes of Section 72 of the Internal Revenue Code, the Former Spouse and not the IRA Owner shall be treated as the distributee of any distribution or payment made by any IRA pursuant to this Order."

539. January 30, 2023, Hon. Thomas Quinones J.S.C. **SHORT FORM ORDER** *ON CONSENT* NYSCEF No. 523: "It is hereby **Ordered**, *that Defendant, Peter Kijewski, is hereby authorized and permitted to take any and all required minimum distributions ("RMDs") from any and all retirement accounts in Defendant's name. This shall include to the extent possible allowing Defendant to take his 2022 RMD's from his Vanguard account.*"

    a. Ms. Dunn failed to remove her March 22, 208, Attorney Order NYSCEF No. 365: "An Order to Show Cause was signed by Hon. Lewis *J.* Lubell in connection with this matter, and said Order temporarily restrains all retirement accounts maintained by Mr. Kijewski at

Vanguard, so that no transfers or withdrawals may be made out of any retirement accounts."

540. January 30, 2023, Court transcript NYSCEF No. 526 Ms. Spielberg about March 20, 2018, **ORDER TO SHOW CAUSE** Seq. #5 Court <u>Application</u> "RECEIVED NYSCEF: 03/23/2018" NYSCEF No. 163:

      a. March 14, 2018, Ms. Dunn NOTICE OF HARDCOPY SUBMISSION NYSCEF No. 166: "RECEIVED NYSCEF: 03/28/2018".

      b. March 15, 2018, Special Referee Josephine Trovini "*JT 3-15-18 Seq #5*" NYSCEF No. 163.

      c. March 24, 2018, via FAX to Vanguard: "03 24 2018 0300".

      d. January 30, 2023: "MS. SPIELBERG: The Court record and the Court file is replete with correspondence from the defendant in 2018 and 2019 about those time periods and the reason for his inability to appear at the court conferences to address the RMD's, so to the extent that plaintiff's counsel is memorializing that none of his inability to take RMD's has anything to do with plaintiff respectfully, the orders that were entered restraining him from taking his RMD's were as a result of the plaintiff's application."

541. January 30, 2023, Peter Kijewski wire communication to Vanguard reveals Vanguard has no need to act in response to Vanguard Individual Retirement Account (IRA) client:

**Vanguard Reference # 1024233**
PK
Peter Kijewski
To:Subpoena_Response
Cc:Jill Spielberg;Alyson Kuritzky

Mon 1/30/2023 8:53 PM

20150625 20230130 January 30, 2023 Hon. Thomas Quinones, NYS JSC Order - Peter K. Kijewski 'authorized and permitted to take any and all required minimum distibutions' NYSCEF No. 523.pdf 38 KB
The Vanguard Group, Inc.
Attn: Office of the General Counsel - M35
100 Vanguard Boulevard
Malvern, PA 19355
Reference # 1024233

January 30, 2023

Appended Hon. Thomas Quinones, NYS JSC Order compliance and IRS, Department of the Treasury, Internal Revenue Code compliance, Vanguard 0033-88045718421 IRA account owner Peter K. Kijewski requests Vanguard proceed with immediate tax years 2018, 2019, 2021 and 2022 in arrears mandatory RMD distributions.  The order was signed January 30, 2023, in the Westchester County Court Room #1003, 111 Dr. Martin Luther King Jr Blvd, White Plains, NY 10601.  Peter K. Kijewski Vanguard "Profile and account settings" define:

3.  Federal and State withholding

4.  Bank of America checking account net mandatory RMD distribution deposit

Regards,

Peter K. Kijewski, '63
PhD University of California Berkeley
23 Shipyard Drive #307
Hingham, MA 02043
Cell: 914-281-4893
Email: pkijewski@outlook.com

542. Vanguard IRS Internal Revenue Code compliance mandates immediate tax years 2018, 2019, 2021 and 2022 Vanguard IRA "Required Minimum Distribution" (RMD) disbursements, including Federal and State tax withholding.

543. Vanguard immediate RMD disbursement resolves several issues:

a. Terminates illegal omitted RMD "Investment Experience".

b. Domestic Relations Order (IRA) unenforceable term (6) would be irrelevant.

544. March 8, 2023, Ms. Dunn obfuscating **ORDER** prepared for signature by Hon. Thomas Quinones, J.S.C. No. 6 of 7, NYSCEF No. 529 (22 pages):

a. "**ORDERED,** that Vanguard shall issue Required Minimum Distributions to Defendant from the Vanguard IRA in the total sum of $188,547.44, for years 2018 through 2023, as follows: 2018: $27,995.73, 2019: $29,663.34, 2020: $31,594.75, 2021: $33,155.64, 2022: $32,083.61, 2023: $34,054.27;"

b. Page 6 of 22: November 4, 2022, Hon. Thomas Quinones, J.S.C. No. 6 of 7, **DECISION & ORDER** Seq. Nos. 12, 13 NYSCEF No. 506.

c. Page 17 of 22: January 30, 2023, Hon. Thomas Quinones J.S.C. **SHORT FORM ORDER** *ON CONSENT* NYSCEF No. 523.

d. Page 19, of 22: January 19, 2023, ~~2022~~, Hon. Thomas Quinones, J.S.C., signed invalid DOMESTIC RELATIONS ORDER (IRA) NYSCEF No. 520, of November 9, 2022, Ms. Dunn unsigned invalid DOMESTIC RELATIONS ORDER (IRA) NYSCEF No. 509.

545. March 8, 2023, Ms. Dunn **ORDER** includes, converted into a

worksheet:

**Table 42 March 8, 2023, Ms. Dunn Money Judgment Causing Peter Kijewski Deficit**

| | Date | Legal Fee | Interest | Total Legal Fee | Child Support | Interest | Total Support |
|---|---|---|---|---|---|---|---|
| March 8, 2023, Ms. Dunn Money Judgment NYSCEF No. 529 + Included NYSCEF No. 506 | | | | | | | |
| | 11/30/2022 | $10,000.00 | $0.00 | $10,000.00 | $28,687.50 | $0.00 | $28,687.50 |
| | 5/17/2023 | $9,500.00 | $2,855.47 | $12,355.47 | $38,250.00 | $12,430.73 | $50,680.73 |
| | 5/17/2023 | $60,000.00 | $18,034.52 | $78,034.52 | $0.00 | $0.00 | $0.00 |
| | 6/14/2023 | $10,000.00 | $0.00 | $10,000.00 | $0.00 | $0.00 | $0.00 |
| | | | | $110,389.99 | $0.00 | $0.00 | $79,368.23 |
| | Total cash payments to Maureen A. Dunn, Esq. | | | | | | $189,758.22 |
| Peter K. Kijewski Vanguard RMD WITTHDRAWAL OF INCOME after tax withholding | | | | | | | $160,265.24 |
| Peter K. Kijewski Federal and State tax | | | | | | | ($28,282.10) |
| Peter K. Kijewski net cash Vanguard RMD WITHDRAWAL OF INCOME | | | | | | | $131,983.14 |
| **Peter K. Kijewski Deficit** | | | | | | | **($57,775.08)** |
| Accounting for **tax-deferred** retirement plans withdrawal: **Total Deficit** | | | | | | | **($77,033.44)** |

546. March 8, 2023, Ms. Dunn **ORDER**, prepared for signature by Hon. Thomas Quinones, J.S.C. No. 6 of 7:

a. "**ORDERED,** that after issuing the Required Minimum Distributions to Defendant, Vanguard shall process the Domestic Relations Order dated January 19, 2023 by transferring the remaining balance of the Vanguard IRA to Plaintiff. Said transfer shall be effectuated by Vanguard pursuant to this order, without need for Defendant's written or verbal authorization to transfer the assets;"

b. "**ORDERED,** that Plaintiff is entitled to receive from the Vanguard IRA a transfer in an amount equal to the value of **10,287.842** shares of VTSAX at the trading price at the close of the market on the date immediately prior to the day of transfer of the Vanguard IRA to Plaintiff, as set forth above. To the extent that the value of the Vanguard IRA to be transferred to the Plaintiff in accordance with the

paragraph above is less than the value of the 10,287.842 shares as set

forth above, that difference shall be paid to the Plaintiff via a Domestic

Relations Order from Defendant's TIAA IRA account ending xx9187.

This is without prejudice to Plaintiff's right to make a further

application to the Court in the event that the funds in Defendant's

TIAA IRA account ending xx9187 are insufficient to fully satisfy the

sums due and owing to Plaintiff."

547. March 20, 2023, Hon. James L. Hyer, J.S.C. No. 7 of 7, NYSCEF

No. 533, signed March 8, 2023, Ms. Dunn obfuscating **ORDER** prepared for

signature by Hon. Thomas Quinones, J.S.C. No. 6 of 7, NYSCEF No. 529.

548. May 15, 2023, Vanguard Office of the General Counsel lawyer,

facing further stiff RMD 50% penalties, and tax years 2018, 2019, 2020, 2021,

2022 and 2023 letters to Peter Kijewski concerning "Required Minimum

Distribution" (RMD) disbursements, released Peter Kijewski tax years 2018,

2019, 2020, 2021, 2022 and 223 Vanguard IRA "Required Minimum

Distribution" (RMD) disbursement "hold":

    a. April 9, 2018, Vanguard Legal Department (Vanguard Office of

the General Counsel) letter to Peter Kijewski NYSCEF No. 367:

"Vanguard is not a party to this action, and is therefore not bound by

the March 14, 2018, Order. However, in light of what appears to be a

dispute regarding the assets in the Account, we are writing to notify you

that Vanguard has placed a restriction on the Account; accordingly, no

exchanges, redemptions, withdrawals, or distributions of any kind may

occur in or from the Account during this time (including any Required Minimum Distributions)."

      b. January 19, 2018, Vanguard Letter - 'Your Vanguard IRA RMD for 2018 is $27,995.73'.pdf

      c. January 23, 2019, Vanguard Letter - 'Your Vanguard IRA RMD for 2019 is $29,663.34'.pdf

      d. January 24, 2020, Vanguard Letter - 'Your Vanguard IRA RMD for 2020 is $31,594.75'.pdf

      e. January 22, 2021 Vanguard Letter - 'Your Vanguard IRA RMD for 2021 is $33,155.64'.pdf

      f. January 21, 2022 Vanguard Letter - 'Your Vanguard IRA RMD for 2022 is $32,083.61'.pdf

      g. January 13, 2023 Vanguard Letter - 'Your Vanguard IRA RMD for 2023 is $34,054.27'.pdf

**b) May 15, 2023, Vanguard Resumes "Required Minimum Distribution" (RMD) Disbursement**

549. May 23, 2023, Ms. Dunn teleprompter transcript NYSCEF No. 548:

"The Parties further acknowledge that the date of transfer of the Vanguard IRA to the Plaintiff was 5/15/23, and that the ~~Reb~~ Plaintiff received a total of $424,458.68 from said transfer."

550. Needless Vanguard stiff RMD 50% penalty and illegal omitted

RMD "Investment Experience":

**Table 43 December 31, 2022, Vanguard IRA 50% RMD Penalty**

| Tax Years 2018 - 2023 Vanguard IRA RMD Letters | | |
|---|---|---|
| Date | Tax Year | RMD |
| 1/19/2018 | 2018 | $27,995.73 |
| 1/23/2019 | 2019 | $29,663.34 |
| 1/24/2020 | 2020 | $31,594.75 |
| 1/22/2021 | 2021 | $33,155.64 |
| 1/21/2022 | 2022 | $32,083.61 |
| 1/13/2023 | 2023 | $34,054.27 |
| "Employee Retirement Income" | | $188,547.34 |
| Stiff RMD 50% penalties | | $61,449.16 |

551. Table 6 June 25, 2015, Ms. Dunn partner Mr. Cohen, using Mr.

Kijewski & Ms. Kijewski retirement account statements in his possession,

failed to submit to TIAA, Vanguard and/or BNY Pershing valid $493,192

Domestic Relations Order (DRO), which would have resulted in immense

financial benefits for all Kijewski family members Peter, Marie, Sonia, Paul,

Joseph, William, Emma and Luke.

### C. BNY Pershing Just, Fair & Timely Cash Award Payments to
### Plaintiff Peter Kijewski

552. BNY Pershing custodian of <u>Individual</u> Retirement Accounts (IRA) mandatory compliance with the Internal Revenue Code: "Retirement plan <u>participants</u> and IRA <u>owners</u>, including <u>owners</u> of SEP IRAs and SIMPLE IRAs, are responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

553. January 31, 2011, BNY Pershing J4N-301918 Individual Retirement Account (IRA) statement, Peter Kijewski account <u>owner</u>: "According to our records, you are required under federal tax law to take an annual minimum distribution from your retirement account. These required minimum distributions (RMDs) usually begin in the year you reach the age of <u>70 1/2</u>. Failure to take the RMD when required may result in a <u>50% excise tax</u> imposed on the amount you did not take.  **NOTE**: Any outstanding rollovers or recharacterizations that were not in your account on December 31 of the prior year should be added to your year-end fair market value for the previous year to calculate your RMD for the current year. Also, when taking your RMD, please consider any scheduled distribution amounts you have established which may allow you to <u>automatically</u> meet all or part of your RMD. Please contact us if you are interested in establishing instructions."

554. November 16, 2015, Ms. Dunn letter to Ms. Dahan NYSCEF No. 415 about BNY Pershing J4N-301918 Individual Retirement Account:

a. "As you are aware, your client has provided no financial support to Ms. Kijewski in the past month, and the funds he provided in October went to pay household and family bills that were incurred largely in August and/or September. Your client's obligation to support his wife and child is clear. Does he intend to make any good faith payment of support?"

b. "Additionally, your client's discovery responses were due last Friday, pursuant to the Preliminary Conference Order. When can I expect to receive same?"

c. "Finally, as addressed in our application before the Court and as discussed in our recent correspondence, your client is obligated to withdraw the sum of $48,389.49 form (sic) one of his retirement accounts as and for his Required Minimum Distribution for 2015. Same must be requested imminently or it may not be processed within this calendar year. Such delay would subject the parties to a penalty of up to 50%, which would be a wholly unnecessary dissipation of marital funds. Ms. Kijewski (as she has historically done) has calculated your client's RMD, and a copy of these calculations is attached. Also attached is the RMD distribution request form for your client's Clear Harbor account (account number J4N-301918). Please confirm that your client will sign and submit this form to Clear Harbor as soon as possible in order to ensure that the RMD is processed within this calendar year."

d. "With respect to the funds received from the RMD, it is proposed that your client agree that these funds be equally divided

between the parties upon receipt, or in the alternative, that your firm

will hold in escrow all funds received, pending a decision from the Court

as to the disposition of these proceeds. Please advise as to your client's

position regarding this request."

  e. November 16, 2015, attachment Ms. Kijewski BNY Pershing

J4N-301918 Individual Retirement Account (IRA) RMD disbursement

form NYSCEF No. 414.

  f. November 16, 2015, attachment Ms. Kijewski tax years 2011 -

2015 BNY Pershing J4N-301918 Individual Retirement Account (IRA)

RMD calculations NYSCEF No. 441.

**Letters**
JD
Jessica Dahan
To:You

<div align="right">Tue 11/17/2015 12:07 PM</div>

RMD calculations.xlsx **12 KB**
Kijewski RMD 2015.pdf **87 KB**
Dunn 11 16 15 2.pdf **67 KB**
Dunn 11 16 15.pdf **74 KB**
4 attachments (240 KB)

Peter,

Attached please find letters from J&C from yesterday, as well as the RMD form you should sign.

Please review the RMD form **immediately** and confirm with me you will sign it, so that I can send a letter to Maureen today.

Further, please write a check for $7k to Marie and photocopy it for me.

Thank you.

Jessica

**Jessica A. Dahan, Esq.**

Newman & Denney P.C.
570 Lexington Ave. Ste. 1600
New York, NY 10022
Tel: (212) 486-3200
Fax: (646) 449-7235
Email: JD@NewmanDenney.com

555. November 23, 2015, Ms. Woolston wire communication to Ms.

Dahan and Mr. Newman NYSCEF No. 418, attachment June 25, 2015, Mr.

Cohen letter to BNY Pershing NYSCEF No. 400:

**RE: Clear Harbor Letter**
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Louis Newman;Jessica Dahan

                                                                    Mon 11/23/2015 1:09 PM

Kijewski Letter.pdf **231 KB**

Hello Peter,

Please find attached the letter ==Pershing== received in June.

I received the following reply from ==Pershing== to my inquiry after their legal
team reviewed the RMD request:

**Morning Cat,**

**Our legal group has reviewed the Action for Divorce submitted to us
in June of this year.   Regarding the client being able to take out his
RMD, they responded with the below:**

**"This client needs to take their RMD and should have his attorney
alert Mitchell Cohen of Johnson & Cohen LLP that this action took
place and is a regulatory requirement. "**

I am initiating the RMD today as per your request on Friday.

Happy Thanksgiving!

Cat
Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

556. November 23, 2015, Ms. Woolston wire communication to Peter

Kijewski NYSCEF No. 419: "Anytime…The funds did not yet go out…I

submitted it earlier, but it can take a day or two to process…Will email when I

got notice that the funds went out…"

557. November 23, 2015, Ms. Woolston wire communication to Ms.

Dahan and Mr. Newman NYSCEF No. 420 revealing BNY Pershing Legal

Department lawyer cedes empowered authority RMD disbursements to Mr.

Cohen:

**RE: TIAA-CREF Letter**
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Louis Newman;Jessica Dahan

<div align="right">Mon 11/23/2015 4:19 PM</div>

==Pershing== is now coming back with this…

Hello Cat,

After further review our legal team has said that we will not be able to remove the block or approve the client's RMD request until we receive a letter from the attorney acknowledging that they know of the end-clients intentions.

I'm very sorry about this…

Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

558. December 1, 2015, Ms. Woolston wire communication to Ms. Dahan

and Mr. Newman NYSCEF No. 421, attachment June 25, 2015, Mr. Cohen

letter to BNY Pershing NYSCEF No. 400:

**Kijewski Letter.pdf**
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Louis Newman;Jessica Dahan

<div align="right">Tue 12/1/2015 1:58 PM</div>

Kijewski Letter.pdf 31 KB

Hello Peter,

I have called a few times to make sure you saw this email…your cell phone mailbox is full and not accepting any voicemail.

I know this is frustrating, but unfortunately, I can't **change** ==Pershing==.

Please let me know if you/your attorney will contact Johnson and Cohen or if you want me to try to reach out to them.

I'm in the office for the remainder of the year except Christmas Eve and Christmas Day.

Best,
Cat

Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

559. December 2, 2015, Ms. Dahan wire communication to Ms. Dunn NYSCEF No, 359:

a. "Upon the commencement of the Action for Divorce against my client, your office sent a letter to Pershing Advisor Solutions, LLC, instructing them of your understanding of the Automatic Orders."

b. "As a result of your instruction, Mr. Kijewski's RMD request at Clear Harbor is currently blocked and will continue to be blocked until they receive a letter from your office acknowledging that you are aware of this request and that you consent to the release of the funds. As you know, the parties will suffer financial consequences should they be unable to obtain this RMD. Therefore, at your earliest convenience, inform Pershing that you are aware of my client's request."

560. Table 10 Mr. Cohen failed NYSCEF filing his false "understanding of the Automatic Orders".

561. June 25, 2015, Mr. Cohen dog & cat doodle letter to BNY Pershing NYSCEF No. 400 (18 pages) about his understanding of "tax deferred funds in pay status exception":

      a. "Mr. Kijewski has the following accounts with your company: J4N-301918 and possibly other accounts."

      b. "The aforesaid notice of Entry of Automatic Orders includes a specific provision that: ORDERED: Neither party shall transfer, encumber, assign, remove, withdraw or in any way dispose at without the consent of the other party, or by order of the court...." any cash accounts, stocks, mutual funds, bank accounts, etc. See paragraph (1) thereon. A similar restriction is imposed with respect to any "tax deferred funds, stocks or other assets held in any individual retirement accounts, 401K accounts, profit sharing plans, Keogh accounts, or any other pension or retirement accounts. See paragraph (2) thereon."

      c. "Please consider this as Notice to you that these restrictions are in place and be guided accordingly."

562. **Peter Kijewski Account <u>Owner</u>**: December 9, 2015, Peter Kijewski wire communication to Ms. Dahan, Ms. Woolston & Mr. Newman NYSCEF No. 436 confirms Peter Kijewski account <u>owner</u> BNY Pershing J4N-301918 Individual Retirement Account (IRA)!

**RE: RMD**
PK
Peter Kijewski
To:Jessica Dahan;Catherine Woolston;Louis Newman

                                 Wed 12/9/2015 8:47 PM

Catherine - I authorize that the entire $ amount as submitted by me to Clear Harbor be paid to Newman & Denney, P.C. as Attorneys and as instructed by Jessica Dahan.  The only change I authorize is the recipient of the RMD payment.

Thank you,
Peter

563. December 15, 2015, Ms. Dahan wire communication to Ms. Dunn NYSCEF No. 75, attachments tax year 2015 BNY Pershing J4N-301918 Individual Retirement Account (IRA) $48,389.49 RMD check, omitted Federal & State tax withholding and $24,194.75 check payable to Ms. Kijewski.

564. EXHIBIT April 12, 2016, Ms. Dunn letter to Ms. Dahan exposes how Ms. Dunn uses her empowered authority to "hold/release" RMDs, Peter Kijewski account <u>owner</u>, BNY Pershing J4N-301918 Individual Retirement Account (IRA).

565. December 7, 2016, Ms. Woolston wire communication to Peter Kijewski, Ms. Dunn, Ms. Dahan and Ms. Kijewski NYSCEF No. 362:

**Kijewski - Required Minimum Distribution from Peter's IRA--MUST be done before**
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Maureen Dunn;Jessica Dahan;Marie Kijewski

Wed 12/7/2016 4:40 PM

You forwarded this message on Thu 12/8/2016 8:13 AM

Clear Harbor (Woolston) 2015-12-02 release RMD funds.pdf **46 KB**
2016 RMD KIJEWSKI .pdf **173 KB**
2 attachments (220 KB)

Hello Maureen, Jessica, Peter and Marie:

Anticipating an issue since Pershing still has a block on Peter's IRA...I'm sure we need a letter like this one to do the RMD.

I spoke to Peter and he know he needs to sign the attached RMD form.

Please provide the LOA ASAP.

Thanks,

Cat

Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main

212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

566. December 9, 2016, Ms. Dunn approved tax year 2016 BNY

Pershing J4N-301918 Individual Retirement Account (IRA) RMD

disbursement:

**RMD**
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You

Fri 12/9/2016 12:13 PM

You forwarded this message on Sat 1/15/2022 10:54 PM
2016 RMD KIJEWSKI .pdf **173 KB**

Peter,

I got the letter from Marie's lawyer OK'ing the releasing the RMD funds...All I need is for you to
sign page 9 of the attached PDF and return it to me ASAP...I don't need the original...a scan/email
or fax work on my end...

Best,

Cat
Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

567. September 20, 2017, Ms. Dunn wire communication to BNY

Pershing Legal Department, via Ms. Woolston, NYSCEF No. 355 (<mark>yellow</mark>

highlight in original text), terminating June 25, 2015, AUTOMATIC ORDERS

tax-deferred funds in pay status exception "Required Minimum Distribution"

(RMD) disbursement "hold":

**From:** Maureen Dunn [mailto:MDunn@johnsoncohenlaw.com]
**Sent:** Wednesday, <mark>September 20, 2017</mark> 8:57 AM
**To:** 'cwoolston@clearharboram.com'
**Cc:** Jessica Friedrich <Jessica.Friedrich@sslllp.com>
**Subject:** Kijewski v. Kijewski

Dear Ms. Woolsten:

As you may recall, I represent Marie Kijewski in connection with the matrimonial matter against Peter Kijewski. Mr. Kijewski is currently represented by Jessica Friedrich (copied here). Ms. Friedrich advised that her client has encountered difficulty in receiving his Required Minimum Distribution from Clear Harbor as a result of the hold on the accounts that had been in effect during the pendency of the matrimonial action. Please be advised that to the extent such a hold previously existed, same is no longer required as the parties have resolved their matrimonial litigation and a judgment of divorce has been issued. Mr. Kijewski should no longer be restrained from accessing his accounts due to the previous hold.

Regards,

*Maureen A. **Dunn**, Esq.*
*Johnson & Cohen, LLP*
*mdunn@johnsoncohenlaw.com*
*Phone: (914) 644-7100*
*Fax: (914) 922-9500*
*www.johnsoncohenlaw.com*
**Email is not permitted for service of papers.**
**NOTICE TO RECIPIENT: This email transmission is meant only for the intended recipient of this transmission. This transmission may be a communication privileged by law. If you have received this transmission in error, any review, use, dissemination, distribution, or copying of this email is strictly prohibited. Please notify us by return email of the error and delete this message from your system. Thank you for your cooperation.**

## D. Ms. Dunn Just, Fair & Timely Penalty Payments to PLAINIFF Peter Kijewski

568. September 2, 2016, Ms. Dunn Judgment of Divorce NYSCEF No. 102 mandates Peter Kijewski 403(b) & 457 (b) retirement plans and IRAs mandatory compliance:

a. "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)."

b. "ORDERED AND ADJUDGED that equitable distribution shall be as set forth in the parties' Stipulation of Settlement; and it is further

c. ORDERED AND ADJUDGED that pursuant to the Stipulation of Settlement, a separate Qualified Domestic Relations Order shall be issued simultaneously herewith or as soon as practicable; and it is further …"

d. "Parties' Stipulation of Settlement": July 6, 2016, Stipulation of Settlement contract NYSCEF No. 100 (45 pages).

e. "**EACH PARTY HAS A RIGHT TO SEEK A MODIFICATION OF THE CHILD SUPPORT ORDER UPON A SHOWING OF: (I) A SUBSTANTIAL CHANGE IN CIRCUMSTANCES; OR (II) THAT THREE YEARS HAVE PASSED SINCE THE ORDER WAS ENTERED, LAST MODIFIED**

**OR ADJUSTED; OR (III) THERE HAS BEEN A CHANGE IN EITHER PARTY'S GROSS INCOME BY FIFTEEN PERCENT OR MORE SINCE THE ORDER WAS ENTERED, LAST MODIFIED, OR ADJUSTED; HOWEVER, IF THE PARTIES HAVE SPECIFICALLY OPTED OUT OF SUBPARAGRAPH (II) OR (III) OF THIS PARAGRAPH IN A VALIDLY EXECUTED AGREEMENT OR STIPULATION, THEN THAT BASIS TO SEEK MODIFICATION DOES NOT APPLY.":**

i. April 17, 2017, Ms. Dunn **ORDER TO SHOW CAUSE** NYSCEF No. 109, immediate automatic zero ($0.00) child support payments: "ORDERED, that pending the hearing and determination of this application, Defendant's retirement assets maintained at TIAA-CREF and Vanguard shall be restrained, and no withdrawals or transfers shall be permitted except for the pending transfer from Defendant's TIAA-CREF IRA account to Defendant's Vanguard IRA account (account number 88045718421);"

ii. April 15, 2017, Ms. Kijewski **AFFIDAVIT IN SUPPORT** NYSCEF No. 110, Defendant is planning to retire, immediate automatic zero ($0.00) child support payments: "I am aware that Defendant is planning to retire in late June and I am concerned that he will not cooperate with this process and will then leave the country, returning to Germany where he grew up, maintains a bank account, owns property and where his brothers reside. If he

does so, and transfers his retirement assets to a foreign bank, I

will have no way of enforcing the Stipulation and obtaining the

significant retirement assets that are owed to me pursuant to our

divorce."

569. July 26, 2016, **STIPULATION OF SETTLEMENT** <u>contract</u>

NYSCEF No. 100 (45 pages), composed by Ms. Dunn: "ARTICLE XXVI:

WAIVER OF EQUITABLE DISTRIBUTION (b) The parties intend that their

real and personal property division, as provided in this Stipulation, shall be

final and irrevocable except in the case of fraud.":

a. Ms. Dunn unprecedented **fraud**:

i. March 22, 2018, Ms. Dunn letter to TIAA-CREF Legal

Department, via "FAX 180322 1609", NYSCEF No. 364: "Please

be advised that your undersigned represents Marie Kijewski in

connection with her pending post-judgment matrimonial matter

against her ex-husband, Peter Kijewski. An Order to Show Cause

was signed by Hon. Lewis J. Lubell in connection with this

matter, and said Order temporarily restrains all retirement

accounts maintained by Mr. Kijewski at TIAA-CREF, so that no

transfers or withdrawals may be made out of any retirement

accounts, and no changes may be made to the status of said

accounts. A copy of the Order is enclosed for service upon you;

your attention is directed to the last paragraph on the bottom of

page 2 of the Order, which continues onto the top of page 3 of the

Order.  Upon information and belief, Mr. Kijewski maintains

several retirement accounts with your company. A list of account numbers is included on the attached Order. Please be advised that no transfers or withdrawals shall be made from either these accounts or any other retirement accounts pending further Order of the Court."

ii. October 13, 2023, **EMPLOYEE BENEFITS SECURITY** ADMINISTRATION letter to Peter Kijewski includes Table 9 September 26, 2023, Ms. Perry, TIAA Law & Compliance Laision, letter to Plan Administrator, MSKCC 403(b) & 457(b) retirement plans sponsor, exposes Ms. Dunn unprecedented **fraud** causing entirely preventable "Required Minimum Distribution" (RMD) 50% penalties.

iii. October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Ms. Dunn & Mr. Senter", NYSCEF No. 348 mandates prompt "Required Minimum Distribution" (RMD) disbursements and submission to TIAA just, fair & untimely $468,997 Domestic Relations Order (DRO).

iv. November 5, 2021, Ms. Dunn Injunction/Restraining Order NYSCEF No. 394 (62 pages) exposes Ms. Dunn immediate **OBSTRUCTION**, preventing "Required Minimum Distribution" (RMD) disbursements until December 16, 2021, TIAA faced soaring tax years 2018, 2019, 2020 & 2021 RMD 50% penalties.

v. March 22, 2018, Ms. Dunn letter to Vanguard, via FAX "3 24 2018 0300", NYSCEF No. 365: "Please be advised that your

undersigned represents Marie Kijewski in connection with her

pending post-judgment matrimonial matter against her ex-

husband, Peter Kijewski. An Order to Show Cause was signed by

Hon. Lewis *J.* Lubell in connection with this matter, and said

Order temporarily restrains all retirement accounts maintained

by Mr. Kijewski at Vanguard, so that no transfers or withdrawals

may be made out of any retirement accounts. A copy of the Order

is enclosed for service upon you; your attention is directed to the

first full paragraph on page 3 of the Order. Upon information and

belief, Mr. Kijewski maintains the following retirement accounts

with your company: account ending xxx8421. Please be advised

that no transfers or withdrawals shall be made from this account

or any other retirement accounts pending further Order of the

Court."

vi. Table 1 March 8, 2023, Ms. Dunn **ORDER** NYSCEF No.

529 (22 pages) exposes Ms. Dunn unprecedented **<u>fraud</u>** causing

further RMD 50% penalties revealed by Vanguard letters to Peter

Kijewski.

570. "On June 19, 2015, Plaintiff filed the instant action for dissolution

of the parties' marriage based upon irretrievable breakdown of the parties'

relationship for at least six months, pursuant to Domestic Relations Law

("DRL") Section 170(7)" NYS 60606/2015 NYSCEF content reveals:

a. CPA tax accountants review of available retirement,

investment and bank financial statements will verify needless

catastrophic financial asset loss occurred due to Ms. Dunn unlawful
actions, specifically causing "Required Minimum Distribution" (RMD)
"failure to withhold", "failure to pay tax", "failure to follow the tax laws",
"a false or alter document" and omitted RMD disbursements
"Investment Experience" revealed analyzing Peter Kijewski tax years
2015 − 2022 tax returns.

571. November 13, 2015, Hon. Paul I. Marx, J.S.C. No. 1 of 7, denied
Ms. Dunn "large award sought by Plaintiff":

    a. November 13, 2015, Ms. Dunn filed "large award sought by
Plaintiff" Court <u>Application</u> No. 1 NYSCEF No. 24.

    b. November 13, 2015, Court User filed Hon. Paul I. Marx, J.S.C.
No. 1 of 7, "~~large award sought by Plaintiff~~" NYSCEF No. 42 (pages 3 &
4).

    c. November 13, 2015, Ms. Dunn filed $100,000 "large award
sought by Plaintiff" **<u>MEMORANDUM OF LAW</u>** NYSCEF No. 40, Ms.
Dunn "(emphasis added)":

        i. "The Appellate Division, Second Department, in the case *of*
***Penavic v. Penavic,*** 60 A.D.3d 1026, 877 N.Y.S. 2d 118 (2d
Dept. 2009), denounced the practice of deferring counsel fee
awards to trial. In that case, the Appellate Division noted its
concern that given the disparity in income and assets between
the parties, that the husband was **"capable of wearing down
or financially punishing the opposition by recalcitrance,
or by prolonging the litigation."** ***Prichep v. Prichep,*** 52

A.D.3d 61, 858 N.Y.S. 2d 667 (2d Dept. 2008) (emphasis added). The Appellate Division then reversed the trial court and awarded the wife $100,000 in interim counsel fees, without prejudice to any future application by the wife for additional counsel fees."

    ii. Penavic v Penavic (2009 NY Slip Op 02578): "The wife commenced the instant action for divorce against the husband in 2003. In 2006, the husband provided funds for the purchase of a separate residence for the wife worth approximately $1 million, and the parties stipulated that the husband would pay pendente lite maintenance and child support totaling $12,000 per month, health care costs for the family, educational and extracurricular costs for the children, and a one-year payment of $25,000 in travel costs for the wife. The husband also advanced the wife $250,000 from her equitable distribution. It is undisputed that he was able to make these payments since he had an adjusted gross income at the time of over $2.7 million per year."

d. December 2, 2015, Mr. Cohen filed "large award sought by Plaintiff" **AFFIRMATION IN SUPPORT** No. 49 (**bold** highlight in original text): "7. Further, Defendant and his counsel are critical of our inclusion of **Plaintiff's own settlement proposal** in our application. There is no rule that in any way prevents Plaintiff from revealing her own settlement position, and Defendant's attempt to insinuate wrongdoing on our part is misplaced. We were careful not to disclose any communication from Defendant's counsel that revealed their

settlement positions, and Defendant has in no way been prejudiced by Plaintiff disclosing that she made an extremely reasonable settlement proposal to which Defendant ultimately refused to respond, after his counsel repeatedly promised that a response had been prepared and was forthcoming. Now, Defendant argues that he would not have been able to afford the proposed support; however, his counsel never even had the courtesy to provide that response to my office prior to the filing of this application."

e. December 9, 2015, Hon. Paul I. Marx, J.S.C. No.1 of 7, PENDENTE LITE DECISION AND ORDER Court <u>Application</u> No. 1 NYSCEF No. 59 denied Ms. Dunn "large award sought by Plaintiff", citing "an impermissible double shelter allowance":

    i. "***Carrying Costs on the Marital Home***"

    ii. "Plaintiff asks the Court to direct each party to pay 50% of the carrying costs on the marital home until she relocates. Defendant opposes Plaintiffs request, noting that maintenance and child support include funds sufficient to pay for all shelter expenses. Defendant argues that if he is required to pay 50% of shelter costs, Plaintiff would essentially receive a double shelter allowance."

    iii. "A double shelter award occurs when a court directs a payor spouse to pay the carrying charges on the marital residence as well as a sum of child support and/or maintenance, which the court calculated by using a statutory formula. *See Mosso v Mosso,*

84 AD3d 757, 759 [2nd Dept 2011]; *Gaetano D. v Antoinette D.,* 37

Misc3d 990, 998-99 [Sup Ct, Westchester County 2012]."

    iv. "The Court agrees with Defendant. Here, the Court has

used a statutory formula to calculate temporary maintenance.

Thus, Plaintiff's maintenance award includes an allowance for

housing. Moreover, although the Court did not use the CSSA to

calculate interim child support, the Court chose to include

housing expenses attributable to the child within its award. If

Defendant were required to pay a portion of the carrying charges

on the marital home, it would result in an impermissible double

shelter allowance. *Mosso, supra* at 759. Plaintiff shall be

responsible for all of the carrying charges on the marital home

until such time as she relocates. Plaintiff's responsibility for these

costs shall be effective *nunc pro tunc* as of November 13, 2015."

    f. CPA tax accounts verify Peter Kijewski estimated **$341,326**

excess support calculation due to "an impermissible double shelter

allowance" memorialized by Ms. Dunn.

    g. February 2, 2022, Ms. Dunn **<u>AFFIRMATION IN REPLY</u>**

NYSCEF No. 499 falsely memorized "an impermissible double shelter

allowance": "2. As Plaintiff notes in her accompanying affidavit,

Defendant's "opposition" to this application largely focuses on issues

from years ago, which have already been litigated and decided in

Plaintiff's favor."

572. EXHIBIT: April 12, Ms. Dunn letter to Ms. Dahan exposes her recurring scheme: "The ultimate purpose of regulation is ~~not~~ to protect the livelihoods of lawyers" vs. "but to advance the administration of justice.":

a. Ms. Dunn always favors "The ultimate purpose of regulation is ~~not~~ to protect the livelihoods of lawyers" resulting in "I understand that your client claims to need an advance on equitable distribution, although I cannot understand how that is possible as he did not pay any expenses for the marital residence for four months and has not paid my client the support he owes her. Regardless, my client is willing to agree that your client take his 2016 RMD from his Clear Harbor retirement account now, to be divided evenly between the parties. This will be approximately $49,000 in total."

b. Ms. Dunn abhors "to advance the administration of justice", meaning Ms. Dunn submission to retirement asset custodians TIAA, Vanguard and/or BNY Pershing a valid $468,997 Domestic Relations Order (DRO).

c. May 23, 2023, Ms. Dunn recitation NYSCEF No. 548 exposes Ms. Dunn never-seen-before nearly eight (8) years delay to submit her first Domestic Relations Order (DRO): "The Parties further acknowledge that the date of transfer of the Vanguard IRA to the Plaintiff was 5/15/23, and that the ~~Debo~~ Plaintiff received a total of $424,458.68 from said transfer."

573. April 29, 2016, Ms. Dunn **ORDER TO SHOW CAUSE** THE

**PURPOSE OF THIS HEARING IS TO PUNISH THE DEFENDANT FOR**

**A CONTEMPT OF COURT AND SUCH PUNISHMENT MAY CONSIST OF A FINE OR IMPRISONMENT OR BOTH. WARNING: YOUR FAILURE TO APPEAR IN COURT MAY RESULT IN YOUR IMMEDIATE ARREST AND IMPRISONMENT FOR CONTEMPT OF COURT.** Court Application No. 2 NYSCEF No. 63:

    a. Ms. Dunn understands her legal fee benefits due to her client's Peter Kijewski tax year 2015 $24,194.75 RMD award:

**Table 44 Tax Year 2016 Application No. 2 Process Notes and Invoices**

| Date | Days | Charge | Process Notes | Invoice |
|---|---|---|---|---|
| 2015 RMD: Used for Application No. 2 Fees | | | | |
| 1/1/2016 | 190 | J&C | Monthly Invoice | $2,310.00 |
| 1/1/2016 | 190 | N&D | Monthly Invoice | $2,252.92 |
| 2/1/2016 | 221 | J&C | Monthly Invoice | $2,666.00 |
| 2/1/2016 | 221 | N&D | Monthly Invoice | $5,558.64 |
| 3/1/2016 | 250 | J&C | Monthly Invoice | $6,118.46 |
| 3/1/2016 | 250 | N&D | Monthly Invoice | $4,432.50 |
| 4/1/2016 | 281 | N&D | Monthly Invoice | $2,052.00 |
| 5/1/2016 | 311 | N&D | Monthly Invoice | $13,802.71 |
| 6/1/2016 | 342 | N&D | Monthly Invoice | $11,853.35 |
| 7/1/2016 | 372 | N&D | Monthly Invoice | $5,322.50 |
| 8/1/2016 | 403 | N&D | Monthly Invoice | $747.75 |
| | | | | **$57,116.83** |

    b. Table 19 Ms. Dunn seeks further "large award sought by Plaintiff".

c. CPA tax accountant analysis of Peter Kijewski Citibank

account:

### Table 45 Tax Year 2016 Citibank Account Statement Analysis

| Date | Days | $ Amount | Description |
|---|---|---|---|
| Bank Balance no Loan + OSC Request Granted + Credit Award Repaid | | | |
| 12/9/2015 | 167 | $48,389.49 | Hon. Paul I. Marx, JSC **award** advance on Equitable Distribution |
| 2/28/2016 | 248 | $49,000.00 | Ms. Jessica A. Dahan request advance on Equitable Distribution |
| 4/8/2016 | 288 | $49,000.00 | Ms. Jessica A. Dahan request advance on Equitable Distribution |
| 4/12/2016 | 292 | $49,000.00 | Ms. Maureen A. Dunn **rejected** advance on Equitable Distribution |
| 5/2/2016 | 312 | $36,933.72 | Bank balance incorporating emergency unsecured loan |
| 4/15/2016 | 295 | **($50,000.00)** | No emergency unsecured loan to pay support and taxes |
| 5/2/2016 | 312 | **($13,066.28)** | **Bank balance no loan** |
| **Bank Balance no loan + OSC request granted** | | | |
| 5/25/2016 | 335 | $39,672.79 | Bank balance |
| 4/15/2016 | 295 | ($50,000.00) | No emergency unsecured loan |
| 5/25/2016 | 335 | ($38,443.76) | OSC award granted |
| 5/25/2016 | 335 | **($48,770.97)** | **Bank balance** |
| **Bank Balance no loan + OSC request granted + $7,000 credit award repaid** | | | |
| 5/25/2016 | 335 | **($7,000.00)** | Credit award |
| 5/25/2016 | 335 | **($55,770.97)** | **Bank balance** |
| **Bank Balance no loan + OSC request granted + $7,000 paid + 2015 expenses denied** | | | |
| 5/25/2016 | 335 | ($17,000.00) | July 8, 2015, Mr. Louis I. Newman retainer: **$15,000** |
| 5/25/2016 | 335 | ($2,600.00) | Incidental daily expenses, including cafeteria lunch. |
| 5/25/2016 | 335 | **($75,370.97)** | **Bank Balance** |
| **Large Award Request Denied** | | | |
| 5/2/2016 | 312 | $19,943.76 | False claim owed to Marie Foley Kijewski |
| 5/2/2016 | 312 | $15,000.00 | Fee request |
| 5/2/2016 | 312 | $3,500.00 | Fee request |
| 4/29/2016 | 309 | **$38,443.76** | **Large Award Request** |
| **5/25/2016** | | **$0.00** | **NYS JSC John P. Colangelo award** |

d. May 25, 2015, Hon. John P. Colangelo, J.S.C. No. 2 of 7, award:

**$0.00**.

574. June 28, 2016, absent Hon. John P. Colangelo, J.S.C., Ms. Dunn

alternative **$85,000** Settlement Court <u>Application</u> No. 2:

**Table 46 May 25, 2016, Court Appearance Process Notes and Invoices**

| Date | Days | Charge | Process Notes | Time | Invoice |
|---|---|---|---|---|---|
|  | **Hon. John P. Colangelo, J.S.C. No. 2 of 7, $0.00 Award, Reduced from Ms. Dunn $38,443.76 Request** |
| 5/24/2016 | 334 | JAD | Accounting of client's income | 0.2 | $57.00 |
| 5/24/2016 | 334 | JAD | Prepare for court appearance | 0.7 | $199.50 |
| 5/25/2016 | 335 | LIN | Court appearance | 3.0 | $1,725.00 |
| 5/25/2016 | 335 | JAD | Court appearance | 3.0 | N/C |
|  | **Ms. Dunn $50,000 Award to Ms. Kijewski, Reduced from $85,000 Request, due to June 15, 2015, NYSCEF No. 356** |
| 6/28/2016 | 369 | JAD | Review 18 exhibits provided by client; prepare for settlement meeting | 1.8 | $513.00 |
| 6/28/2016 | 369 | JAD | Settlement meeting with opposing counsel and parties | 6.0 | $1,710.00 |
| 6/28/2016 | 369 | LIN | Settlement meeting, travel | 5.0 | $2,875.00 |
| | | | | **Total** | **$7,079.50** |

575. Ms. Dunn, Ms. Dahan, Mr. Cohen and Mr. Newman six (**6**) hour

Settlement conference resulting in failure to settle the matter Peter Kijewski

**$85,000** 71% add-on expense share for minor (17):

**Table 47 June 28, 2016, Minor (17) Add-On Expense Share**

| $85,000 Add-On Expense Share |
|---|
| 1a tuition check.pdf |
| 1b invoice.pdf |
| 2a jpk yellin check.pdf |
| 2b jpk yellin eob.pdf |
| 2c jpk yellin parking receipt.pdf |
| 2d email joseph add.pdf |
| 3a jazz band trip.pdf |
| 3b check band trip.pdf |
| 4a music dept trip.pdf |
| 4b check band trip 200.pdf |
| 4c check band trip 400.pdf |
| 5a application fee Michigan.pdf |
| 5b application fee SUNY.pdf |
| 5c application fee Brown Chicago.pdf |
| 6a sat scores 4 schools.pdf |
| 6b sat scores nm.pdf |
| 7 perf supp Brown.pdf |
| 8 video conversion software.pdf |
| 9 SUNY Orange transcript.pdf |
| 10a college visits summary 2016 0615.docx |
| 10b credit card 1037 oct 2015.pdf |
| 10c credit card 2690 aug 2015.pdf |
| 10d credit card 4037 aug 2015.pdf |

| |
|---|
| 10e credit card 4037 oct 2015.pdf |
| 10f credit card 4037 sept 2015.pdf |
| 10g rule on traveling with musical instruments.pdf |
| 11a macys.pdf |
| 11b credit card 4037 nov 2015.pdf |
| 11c brooksbrothers.pdf |
| 12 email university in hs.pdf |
| 21 CVS pharmacy.pdf |
| 22a check 2922 Rubinstein.pdf |
| 22b jpk rubinstein 222.40.pdf |
| 23a check 2915 grandsire815.pdf |
| 23b jpk grandsire 203.00.pdf |
| 24 eob acker.pdf |
| 25 check 2921 LaGamma.pdf |
| 26 check 125 chase piano tuning 05 2016.pdf |
| 27 check 124 mhs460 AP.pdf |
| 28 credit card 1037 october 2015.pdf |
| 29 check 116 piano 379.33.pdf |
| 30a multiple emails to peter about dental reimbursements.pdf |
| 30b metlife reimbursement jpk dentist.pdf |
| 30c peter deposited metlife check 382.00.pdf |
| 30d check dentist 382.pdf |
| 30e check dentist 239.pdf |
| 31a yellin statement.pdf |
| 31b check 133 yellin.pdf |
| 31c yellin parking.pdf |
| 33 college board SAT subj test.pdf |
| 34 suny orange course.pdf |
| 35 suny orange bookstore.pdf |
| 36a suny orange full tuition.pdf |
| 36b reduced tuition with residency certificate.pdf |
| 36c westchester county finance dept.pdf |
| 36d instructions westchester county.pdf |
| 36e credit card 1773 august 2015.pdf |
| 36f westchester county residency certificate.pdf |
| 37 credit card 1773 july 2015.pdf |
| 38 credit card 1773 august 2015.pdf |
| 39 Amazon books.pdf |
| 40 BarnesNoble books.pdf |
| 41 credit card 1773 september 2015.pdf |
| 42 mhs yearbook.pdf |
| 43 Amazon books.pdf |
| 44a AP score report.pdf |
| 44b credit card 1773 october 2015.pdf |
| 45 credit card 1773 november 2015.pdf |
| 46 zingermans order.pdf |
| 47 credit card 1773 january 2016.pdf |
| 48 credit card 1773 march 2016.pdf |
| 49a ebay calculator.pdf |
| 49b calculator email.pdf |

576. Interminable Settlement conferences failed to settle the matter

minor support payments:

**Table 48 Tax Year 2016, Settlement Proposals**

| Date | Days | Charge | Process Notes | Time | Invoice |
|------|------|--------|---------------|------|---------|
| Settlement Conference: $85,000 71% Minor Add-On Expense Share ||||||
| 6/25/2015 | 0 | MYC | Automatic Orders recurring RMD restraints | 1.0 | $475.00 |
| 2/17/2016 | 237 | LIN | Draft *settlement* proposal | 1.8 | $1,035.00 |
| 2/18/2016 | 238 | LIN | Draft *settlement* proposal letter | 1.9 | $1,092.50 |
| 2/19/2016 | 239 | JAD | Revise *settlement* proposal; phone with client to discuss same | 0.6 | $171.00 |
| 2/22/2016 | 242 | LIN | Review and revise letter proposal | 0.3 | $172.50 |
| 2/22/2016 | 242 | JAD | Revise *settlement* agreement | 0.5 | $142.50 |
| 3/8/2016 | 257 | JAD | Review documents provided by client regarding *settlement* proposal; draft revisions and emailed to client | 1.2 | $342.00 |
| 3/10/2016 | 259 | JAD | Revise *settlement* proposal pursuant to client and financial advisor's revisions. | 0.2 | $57.00 |
| 3/11/2016 | 260 | JAD | Phone with client; revise *settlement* agreement; email with opposing counsel | 0.5 | $142.50 |
| 5/11/2016 | 321 | LIN | Court appearance *settlement* conference | 3.0 | $1,725.00 |
| 6/3/2016 | 344 | JAD | Phone with financial advisor regarding discovery deficiency letter and *settlement* proposal | 1.0 | $285.00 |
| 6/16/2016 | 357 | LIN | Draft of *settlement* letter, email to client | 2.1 | $1,207.50 |
| 6/28/2016 | 369 | JAD | Review **18 exhibits** provided by client; prepare for *settlement* meeting | 1.8 | $513.00 |
| 6/28/2016 | 369 | JAD | *Settlement* meeting with opposing counsel and parties | 6.0 | $1,710.00 |
| 6/28/2016 | 369 | LIN | *Settlement* meeting, travel | 5.0 | $2,875.00 |
| 7/26/2016 | 397 | LIN | Court appearance for *settlement*, inquest and allocution | 5.0 | $2,875.00 |
| 7/26/2016 | 397 | JAD | *Settlement* conference in court | 5.0 | $0.00 |
| 7/26/2016 | 397 | | Total | | $14,820.50 |

577. After six (**6**) hours had elapsed, Mr. Newman requested Peter

Kijewski presentation of his case for reduced add-on expenses requiring Peter

Kijewski enter Ms. Dunn Interrogation Chambers:

a. Peter Kijewski flashed June 15, 2015, agenda items NYSCEF

No. 356.

b. Ms. Dunn dropped the hammer: **$50,000**.

c. June 26, 2016, Stipulation of Settlement <u>contract</u> NYSCEF No.

100 Ms. Dunn obfuscating transcript due to Peter Kijewski severe

economic duress:

i. "ARTICLE IV: RESPONSIBILITY OF DEBTS"

ii. "(e) In addition to the provisions set forth above, the parties acknowledge that the WIFE has alleged that HUSBAND owes certain sums to the WIFE, including but not limited to retroactive support and/or support arrears; add-on expenses incurred on behalf of the parties' son, Joseph; sums owed to the parties' son, Paul; and contribution toward the WIFE's counsel fees. The parties further acknowledge that the HUSBAND has alleged that he is entitled to certain credits from the WIFE based upon the value of certain marital financial accounts as of the commencement of this action and the WIFE's use of the funds in said accounts. In full satisfaction of all of the WIFE's and the HUSBAND's claims to the above sums, the HUSBAND shall pay to the WIFE the sum of FIFTY THOUSAND DOLLARS & 00/100 ($50,000.00), payable as follows, *including the wife's claim for support, which shall be deemed non taxable:*"

iii. "(i) SIXTEEN THOUSAND SIX HUNDRED SIXTY SEVEN DOLLARS & 00/100 ($16,667.00) payable on or before December 31, 2016; and"

iv. "(ii) SIXTEEN THOUSAND SIX HUNDRED SIXTY SEVEN DOLLARS & 00/100 ($16,667.00) payable on or before June 30, 2017; and"

v. "(iii) SIXTEEN THOUSAND SIX HUNDRED SIXTY SIX DOLLARS & 00/100 ($16,666.00) payable on or before December 31, 2017."

## E. Mr. Cohen Just, Fair & Timely Penalty Payments to PLAINIFF Peter Kijewski

578. June 24, 2015, Mr. Cohen "review financial account listing" mandated compliance:

a. "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)."

b. Table 10 June 25, 2015, Mr. Cohen letters to TIAA-CREF, Pershing Advisor Solutions LLC, Vanguard and Lincoln Financial, apparently dictated for Table 6 prompt assignment account owner Peter Kijewski $493,192 retirement interests to Ms. Kijewski, account owner $493,192 retirement interests, using a valid $493,192 Domestic Relations Order (DRO).

c. November 23, 2015, Pershing Advisor Solutions wire communications to Ms. Woolston, NYSCEF No. 418, attachment June 25, 2015, Mr. Cohen dictation of letter to Pershing Advisor Solutions LLC NYSCEF No. 400 (18 pages), reveals Mr. Cohen selected an alternative direction:

**RE: Clear Harbor Letter**
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Louis Newman;Jessica Dahan

Mon 11/23/2015 1:09 PM

Kijewski Letter.pdf 231 KB

Hello Peter,

Please find attached the letter Pershing received in June.

I received the following reply from Pershing to my inquiry after their legal team reviewed the RMD request:

**Morning Cat,**

**Our legal group has reviewed the Action for Divorce submitted to us in June of this year.   Regarding the client being able to take out his RMD, they responded with the below:**

**"This client needs to take their RMD and should have his attorney alert Mitchell Cohen of Johnson & Cohen LLP that this action took place and is a regulatory requirement."**

I am initiating the RMD today as per your request on Friday.

Happy Thanksgiving!

Cat
Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

      d. Peter Kijewski waited in the Clear Harbor waiting room while attorneys decided his RMD will be "subject to a hearing to be held regarding whether defendant needs to make withdrawals from the accounts to take his required minium (sic) distribution":

        i.  Peter Kijewski returned home with an unsigned RMD form, provided by Ms. Kijewski.

        ii. Ms. Kijewski failed to memorialize she paid Mr. Cohen for dictation of letter to Pershing Advisor Solutions LLC, "Kijewski Letter.pdf **231 KB**"

579. December 2, 2015, Mr. Cohen dictation of letter to Pershing Advisor Solutions LLC, via Ms. Woolston, NYSCEF No. 360 reveals the

outcome of "a hearing to be held regarding whether defendant needs to make withdrawals from the accounts to take his required minium (sic) distribution".

580. April 25, 2013, Statement of Client's Rights and Responsibilities, Attorney's Signature (Mr. Cohen), and Client's Signature (Ms. Kijewski) NYSCEF No. 124 (pages 8 & 9), revealing more than adequate time for Mr. Cohen and client Ms. Kijewski understanding IRS Internal Revenue Code and "Employee Retirement Income Security Act of 1974" (ERISA).

581. Jun 12, 2015, need for **$25,000** NYSCEF filing cash, mandating Ms. Kijewski marital money to private money transfer:

582. <u>Visual 1</u> June 12, 2015, teller Brittney witness and advice for Ms. Kijewski "Please keep your receipt".

583. **Don't**: Violate AUTOMATIC ORDERS property removal, since Peter Kijewski actually located and kept Ms. Kijewski receipt!

584. June 15, 2015, Mr. Cohen and Ms. Kijewski agenda items NYSCEF No. 356, revealing the need to initiate an immediate final Settlement:

a. Three (3) days ago Ms. Kijewski moved money into her private account: "can I move money into my private account (he has a private account, too, although there's only $3k in it)"

b. Need to initiate an immediate final Settlement: "will he have to pay cs for P, who is 22 but not functioning as an adult?"

c. "**Don't**: Make your child choose between mom and dad" divorce book advice: "will J be required to spend any time with him?"

d. Comply with AUTOMATIC ORDERS "tax-deferred funds in pay status exception" and submit an immediate $493,192 Domestic Relations ORDER (DRO) to husband retirement asset custodians: "What about retirement accounts?"

i. "I will have to check what he had as of our wedding date. would that amount be subtracted from joint assets? Would growth of that money be subtracted? what if money was shuffled around, absorbed in other accounts over the years?"

ii. "Would it be possible to split every account, rather than just equalizing (or whatever division) totals?"

e. Mr. Cohen need to ask about the role of Mary Kentros, MD:

"my health (lost sleep, anti-depressants)".

f. Further agenda items TBD.

585. **Don't**: Violate AUTOMATIC ORDERS property removal: March 23, 2016, Ms. Dahan wire communication to Peter Kijewski NYSCEF No. 448 about property removal, including two (2) attachments and March 10, 2016, altered Settlement document NYSCEF No. 189.

586. Table 6 Mr. Cohen need to initiate an immediate final Settlement: "The ultimate purpose of regulation is not to protect the livelihoods of lawyers but to **advance the administration of justice**."

587. Mr. Cohen alternative direction: "**The ultimate purpose of regulation is** ▉ **to protect the livelihoods of lawyers** but to advance the administration of justice."

588. Table 10 June 15, 2015 - March 31, 2016, Mr. Cohen & Ms. Dunn Process Notes and Invoices NYSCEF No. 77 (29 pages), NYSCEF filing for Peter Kijewski reimbursement to opposing parties.

589. June 25, 2015, Mr. Cohen letter to TIAA-CREF, via FAX July 1, 2015 730, NYSCEF No. 399, enclosed unauthorized March 31, 2015, TIAA retirement account statement, account <u>owner</u> Peter Kijewski: "Mr. Kijewski has the following accounts with your company: (See Annual Printout) and possibly other accounts. Please consider this as Notice to you that these restrictions are in place and be guided accordingly."

590. June 25, 2015, Mr. Cohen available letter to Vanguard, via FAX June 27, 2015 300, enclosed unauthorized Vanguard IRA account numbers,

account <u>owner</u> Peter Kijewski: "Mr. Kijewski has the following accounts with your company: Individual account #0540-09785096851; Traditional IRA account #0509-09788620965 and #0056-09788620965 and possibly other accounts.  Please consider this as Notice to you that these restrictions are in place and be guided accordingly."

591. June 25, 2015, Mr. Cohen letter to BNY Pershing NYSCEF No. 400, enclosed <u>unauthorized</u> BNY Pershing IRA account numbers and dog & cat doodle, account <u>owner</u> Peter Kijewski: "Mr. Kijewski has the following accounts with your company: J4N-301918 and possibly other accounts.  Please consider this as Notice to you that these restrictions are in place and be guided accordingly."

592. June 25, 2015, Peter Kijewski mugshot NYSCEF No. 3, in preparation for November 4, 2022, Hon. Thomas Quinones, J.S.C. No. 6 of 7, NYSCEF No. 506: "ORDERED, that if Defendant fails to purge himself of this contempt by the purge date of December 12, 2022, Defendant shall be committed to the custody of the Westchester County Commissioner of Corrections to be incarcerated at the Westchester County Jail for a period to be determined by the Court, or until he has offered proof to this Court that he has fully satisfied the purge conditions as set forth herein, whichever occurs first;"

593. June 25, 2015, Mr. Cohen raised two (2) red flags: "Every scam, no matter how sophisticated, or how amateur, there are two red flags:"

a. "1) Urgent need for June 15, 2015, **$10,000** marital <mark>money</mark> legal fee retainer in secrecy, deducted from June 12, 2015, **$25,000** marital <mark>money</mark> transfer, and"

b. "2) Asking for TIAA, Vanguard, BNY Pershing and Lincoln financial retirement accounts <mark>personal information</mark> in secrecy, omitting account <u>owner</u> authorization."

c. Mr. Cohen requirement: "Conferences" preparing for NYSCEF filing:

　　i. "We were careful not to disclose any communication from Defendant's counsel that revealed their settlement positions, and Defendant has in no way been prejudiced by Plaintiff disclosing that she made an extremely reasonable settlement proposal to which Defendant ultimately refused to respond, after his counsel repeatedly promised that a response had been prepared and was forthcoming."

　　ii. Revealing "A double shelter award occurs when a court directs a payor spouse to pay the carrying charges on the marital residence as well as a sum of child support and/or maintenance, which the court calculated by using a statutory formula."

　　iii. Table 6 June 15, 2015 - October 30, 2015, Johnson & Cohen, LLP Process Notes and Invoices NYSCEF No. 34: POB 782.

594. March 23, 2016, Ms. Dunn review of AUTOMATIC ORDERS residence stripping violation NYSCEF No. 448:

a. June 15, 2015, Mr. Cohen and Ms. Kijewski Conference agenda items NYSCEF No. 356, remaining in the container "HOLD FOR JOSEPH":

b. "should I move out with boys without telling him? while he's gone?"

c. "volatile situation with P/J"

d. "plan to buy a boat"

e. "would it be helpful to compile EZ pass records showing that he is away — 14 hours every weekday, with no vacations or days off?"

f. "recordings?"

595. Missing prenup:

a. "the house — he bought a house in 1978-9 for $90k, $30k down. We sold the house for $360k in 1994. my name was never on the deed. We bought this house in 1996 for $543k; my name has always been on the deed."

b. "If he claims that he came into the marriage with assets and I came in with liabilities (small amount of student loans), would it help to argue that he had an 8-year-old daughter, who lived with us, and I was the primary caretaker? He never took her to the doctor, dentist, orthodontist. We paid for her to go to college, paid part of her wedding, gave them money for down payment on house."

596. Ms. Kijewski expresses the need to solve her money problem: "Will the fact that living 200 miles away from my job had a major negative impact on my career help me get a better financial settlement? My salary is lower, my

promotion to assoc prof was delayed (explicitly) for 2 years, because a dean at the medical school didn't want to promote me when I wasn't there all the time. My job security is much worse because I can't get hard money (clinical salary)."

597. November 13, 2015, Ms. Kijewski **AFFIDAVIT IN SUPPORT**

NYSCEF No. 25 reveals Ms. Kijewski money problem solution: "I commenced this action for divorce on June 19, 2015. Until that time, throughout our marriage, Defendant and I had both deposited our income into one of our joint checking accounts. From those accounts, I was always responsible for paying our household and family bills and managing our budget. Defendant was not involved in this process beyond depositing the entirety of his paycheck into our account. However, since shortly after he was served with the Summons and Complaint, Defendant has stopped depositing his paycheck into the joint account. He has failed to contribute his income in an appropriate way and Defendant has now left our family in the position of being unable to pay for necessary expenses."

**F. April 10, 2018, Ms. Kijewski <u>AFFIDAVIT IN REPLY</u> NYSCEF No. 193 RMD Disbursements Unlawful "Temporary" Restraining Order**

598. June 15, 2015, Ms. Kijewski Conference with Mr. Cohen NYSCEF No 356 Ms. Kijewski revealed her concern about retirement interests account number shuffling and Mr. Kijewski "currently benefitting from retaining in excess of one million dollars in retirement assets belonging to Ms. Kijewski": "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code).":

    a. "What about retirement accounts?"

        i. "I will have to check what he had as of our wedding date. would that amount be subtracted from joint assets? Would growth of that money be subtracted? what if money was shuffled around, absorbed in other accounts over the years?"

        ii. "Would it be possible to split every account, rather than just equalizing (or whatever division) totals?"

599. June 25, 2015, Ms. Kijewski enabled Mr. Cohen to initiate Peter Kijewski 403(b) & 457(b) retirement plans and IRAs "Required Minimum Distribution" (RMD) disbursement "hold":

    a. June 15, 2015, Ms. Kijewski $10,000 advance payment for Mr. Cohen <u>contract</u> NYSCEF No. 18, payment accepted by Mr. Cohen for his successful "Required Minimum Distribution" (RMD) disbursement "hold" enforcement action.

b. Ms. Kijewski handed Mr. Cohen, without authorization by account <u>owner</u> Peter Kijewski, the entirety of Peter Kijewski TIAA, Vanguard, BNY Pershing and Lincoln Financial retirement account statements:

   i. "Mr. Kijewski has the following accounts with your company: (See Annual Printout) and possibly other accounts."

   ii. Mr. Cohen accepted March 31, 2015, Peter Kijewski TIAA-CREF Quarterly Retirement Portfolio Statement.

   iii. Vanguard: "Mr. Kijewski has the following accounts with your company: Individual account #0540-09785096851; Traditional IRA account #0509-09788620965 and #0056-09788620965 and possibly other accounts."

   iv. BNY Pershing: "Mr. Kijewski has the following accounts with your company: J4N-301918 and possibly other accounts."

c. March 31, 2015, Peter Kijewski TIAA-CREF Quarterly Retirement Portfolio Statement NYSCEF No. 399 (pages 8-11 of 11 pages), filed November 7, 2021, by Peter Kijewski, July 1, 2015 7:30, FAX to TIAA, appended to [Table 6](#) June 25, 2015 Mr. Cohen AUTOMATIC ORDERS letter to TIAA.

600. April 10, 2018, Ms. Kijewski **<u>AFFIDAVIT IN REPLY</u>** NYSCEF No. 193 (7 pages), filed April 11, 2018, by Ms. Dunn, analyzes Peter Kijewski TIAA retirement plans account statements and tax year 2016 subpoenaed tax return:

a. June 30, 2015, Peter K. Kijewski TIAA-CREF Quarterly Retirement Portfolio Statement NYSCEF No. 155 (16 pages), filed February 28, 2018, by Ms. Dunn.

b. December 31, 2017, Peter K. Kijewski TIAA Your quarterly retirement savings portfolio statement NYSCEF No. 156 (22 pages), filed February 28, 2018, by Ms. Dunn.

c. December 8, 2016, Peter Kijewski subpoenaed tax year 2016 tax return NYSCEF No. 195, (12 pages), filed April 11, 2018, by Ms. Dunn.

601. The table displayed on the next page include:

a. August 12, 2012, Mr. Ford, TIAA QDRO Relationship Manager, letter to Ms. Dunn NYSCEF No. 484 (42 pages), filed November 2021, by Peter Kijewski:

   i. TIAA response to Ms. Dunn subpoena.

   ii. August 11, 2021, Peter Kijewski TIAA retirement plans account values.

   iii. Comprehensive QDRO instructions.

b. December 31, 2024, Peter Kijewski TIAA Quarterly retirement savings portfolio statement.

602. Retirement account values listed April 10, 2018, Ms. Kijewski **AFFIDAVIT IN REPLY** NYSCEF No. 193, highlighted in the table on the next page:

## Table 49 TIAA Quarterly Retirement Portfolio Statements

| TIAA Account Statements: Peter Kijewski Owner 403(b) & 457(b) Retirement Plans |
|---|

Account **numbers** and custodians change due to medical institution **merger activity**.

April 10, 2018, Ms. Kijewski **AFFIDAVIT IN REPLY** Court Application No. 5 NYSCEF No. 193 revealing Ms. Kijewski retirement plans analysis.

Retirement plan **account numbers** Ms. Kijewski included in her analysis.

The category of the accounts and IRS Internal Revenue Code rules do **NOT** change: 403(b) & 457(b).

Retirement plan **sponsor** labels do **NOT** change.

**Valid $468,997** Domestic Relations Order (DRO) calculated any time, including after "**Required** Minimum Distribution" (RMD) disbursement.

| Date | Years | Viewed By | Sponsor labels with/without hospital merger | Merge | Account # with and without "-" |
|---|---|---|---|---|---|
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA A697778-7, CREF P697778-4 |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA C368602-3, CREF U368602-1 |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | Other Investments |
| 6/30/2015 | 0.0 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA A697778-7, CREF P697778-4 |
| 6/30/2015 | 0.0 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA C368602-3, CREF U368602-1 |
| 6/30/2015 | 0.0 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | Other Investments |
| 12/31/2017 | 2.5 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA A697778-7, CREF P697778-4 |
| 12/31/2017 | 2.5 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | No | TIAA C368602-3, CREF U368602-1 |
| 12/31/2017 | 2.5 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | Add | TIAA C8156MO-9, CREF U8156MO-7 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | No | TIAA A6977787, CREF P6977784 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | No | TIAA C3686023, CREF U3686021 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | No | TIAA C8156MO9, CREF U8156MO7 |
| 12/31/2024 | 9.5 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) BASE PLUS MATCH PLAN | | TIAA C8156MO-9, CREF U8156MO-7 |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC RETIREMENT SAVINGS PLAN (RSP) VOLUNTARY PLAN | No | TIAA K599435-1, CREF J599435-3 |
| 6/30/2015 | 0.0 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) VOLUNTARY PLAN | No | TIAA K599435-1, CREF J599435-3 |
| 12/31/2017 | 2.5 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) VOLUNTARY PLAN | No | TIAA K599435-1, CREF J599435-3 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | No | TIAA K5994351, CREF J5994353 |
| 12/31/2024 | 9.5 | Ms. Kijewski | MSKCC RETIREMENT SAVINGS PLAN (RSP) VOLUNTARY PLAN | No | TIAA K599435-1, CREF J599435-3 |
| 3/31/2015 | -0.2 | Mr. Cohen | MSKCC KEY EMPLOYEE SUPPLEMENTAL SAVINGS PLAN | No | TIAA L875497-4, Other Investments |
| 6/30/2015 | 0.0 | Ms. Kijewski | MSKCC KEY EMPLOYEE SUPPLEMENTAL SAVINGS PLAN | No | TIAA L875497-4, Other Investments |
| 12/31/2017 | 2.5 | Ms. Kijewski | MSKCC KEY EMPLOYEE SUPPLEMENTAL SAVINGS PLAN | No | TIAA L875497-4, CREF L875497-4 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | No | TIAA L875974, CREF M8754972 |
| 12/31/2024 | 9.5 | Ms. Kijewski | MSKCC KEY EMPLOYEE SUPPLEMENTAL SAVINGS PLAN | No | TIAA L875497-4, CREF L875497-4 |
| 3/31/2015 | -0.2 | Mr. Cohen | RETIREMENT INCOME PLAN FOR TEACHING FACULTY OF HARVARD UNIV | No | TIAA A697778-7, CREF P697778-4 |
| 6/30/2015 | 0.0 | Ms. Kijewski | RETIREMENT INCOME PLAN FOR TEACHING FACULTY OF HARVARD UNIV | No | TIAA A697778-7, CREF P697778-4 |
| 12/31/2017 | 2.5 | Ms. Kijewski | RETIREMENT INCOME PLAN FOR TEACHING FACULTY OF HARVARD UNIV | No | TIAA A697778-7, CREF P697778-4 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | No | TIAA A6977787, CREF P6977784 |
| 12/31/2024 | 9.5 | Mr. Kijewski | RETIREMENT INCOME PLAN FOR TEACHING FACULTY OF HARVARD UNIV | No | TIAA A697778-7, CREF P697778-4 |
| 3/31/2015 | -0.2 | Mr. Cohen | NEW ENGLAND DEACONESS HOSPITAL DISCONTINUED | Yes | TIAA A697778-7, CREF P697778-4 |
| 6/30/2015 | 0.0 | Ms. Kijewski | NEW ENGLAND DEACONESS HOSPITAL DISCONTINUED | Yes | TIAA A697778-7, CREF P697778-4 |
| 12/31/2017 | 2.5 | Ms. Kijewski | NEW ENGLAND DEACONESS HOSPITAL DISCONTINUED | Yes | TIAA C8256LT-5, CREF U8256LT-3 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | Yes | TIAA C8256LT5, CREF U8256LT3 |
| 12/31/2024 | 9.5 | Ms. Kijewski | NEW ENGLAND DEACONESS HOSPITAL DISCONTINUED | Yes | TIAA C8256LT-5, CREF U8256LT-3 |
| 3/31/2015 | -0.2 | Mr. Cohen | BRIGHAM AND WOMENS HOSPITAL PROFESSIONAL STAFF | Yes | TIAA A697778-7, CREF P697778-4 |
| 6/30/2015 | 0.0 | Ms. Kijewski | BRIGHAM AND WOMENS HOSPITAL PROFESSIONAL STAFF | Yes | TIAA A697778-7, CREF P697778-4 |
| 12/31/2017 | 2.5 | Ms. Kijewski | BRIGHAM AND WOMENS HOSPITAL PROFESSIONAL STAFF | Yes | TIAA C8126LV-5, CREF U8126LV-3 |
| 8/11/2021 | 6.1 | Ms. Dunn | Mr. Ford, TIAA, letter to Ms. Dunn subpoena compliance, no label. | Yes | TIAA C8126LV5, CREF U8126LV3 |
| 12/31/2024 | 9.5 | Mr. Kijewski | BRIGHAM AND WOMENS HOSPITAL PROFESSIONAL STAFF | Yes | TIAA C8126LV-5, CREF U8126LV-3 |

603. **Court** <u>**Application**</u> **No. 5**: March 20, 2018, Hon. Lewis J. Lubell, J.S.C No. 4 of 7, **IMMEDIATE RELIEF REQUESTED** <u>**ORDER TO SHOW CAUSE**</u> Court <u>Application</u> No. 5 NYSCEF No. 163:

      a. March 15, 2018, received by Special Referee Josephine Trovini.

      b. March 23, 2018, filed by Court User.

      c. Ms. Dunn failed NYSCEF filing Court <u>Application</u> No. 5 documents.

604. March 22, 2022, Ms. Dunn letter to TIAA NYSCEF 364: TIAA consent to enforce account <u>owner</u> Peter Kijewski 403(b) & 457(b) retirement plans and IRA, "Required Minimum Distribution" (RMD) disbursement "hold", including Federal & State tax withholding "hold", considering by March 22, 2018, TIAA had not received a $468,997 Domestic Relations Order (DRO).

605. March 22, 2022, Ms. Dunn letter to Vanguard NYSCEF 365: Vanguard consent to enforce account <u>owner</u> Peter Kijewski IRA, "Required Minimum Distribution" (RMD) disbursement "hold", including Federal & State tax withholding "hold", considering by March 22, 2018, Vanguard had not received a $468,997 Domestic Relations Order (DRO).

606. Ms. Dunn failed NYSCEF filing March 14, 2018, Ms. Dunn **<u>AFFIRMATION IN SUPPORT</u>** Court <u>Application</u> No. 5 and March 14, 2018, Ms. Kijewski **<u>AFFIDAVIT IN SUPPORT</u>** Court <u>Application</u> No. 5.

607. **Court** <u>**Application**</u> **No. 5**: April 11, 2018, Ms. Dunn started NYSCEF filing Court <u>Application</u> No. 5 documents in support of justifying her enforcement TIAA & Vanguard "Required Minimum Distribution" (RMD) disbursement "hold":

a. April 10, 2018, Ms. Kijewski **AFFIDAVIT IN REPLY**

Application No. 5 NYSCEF No. 193 about Peter Kijewski retirement

plans and IRA, omitting references to the Internal Revenue Code and

"Employee Retirement Income Security Act of 1974" (ERISA).

608. March 9, 2018, Hon. Lewis J. Lubell, J.S.C No. 4 of 7, **ORDER TO**

**SHOW CAUSE** Court Application No. 5 NYSCEF No. 194, copy of Court

Application No. 4 NYCEF No. 161, appended April 6, 2018, Ms. Dunn wire

communication to Ms. Friedrich.

a. December 8, 2017, IRS returned subpoenaed Peter Kijewski

tax year 2016 tax return Court Application No. 5 NYSCEF No. 195,

"<mark>This Product Contains Sensitive Taxpayer Data</mark>", omitting SSN

redaction, appended April 10, 2018, Ms. Dunn wire communication to

Ms. Friedrich.

b. January 8, 2018, subpoenaed Peter Kijewski mortgage

application Court Application No. 5 NYSCEF No. 196.

c. April 11, 2018, Ms. Dunn multiple Peter Kijewski **REQUEST**

**FOR RECURRING REQUIRED** MINIMUM DISTRIBUTIONS

FROM YOUR RETIREMENT INVESTMENTS Court Application No. 5

NYSCEF No. 197.

d. April 11, 2018, Ms. Dunn AFFIDAVIT IN REPLY PART 130

CERTIFICATION (Motion #5) Court Application No. 5 NYSCEF No.

198 terminated Ms. Dunn Court Application No. 5 NYSCEF filing.

609. Peter Kijewski review, analysis and understanding of Ms. Dunn

Court Application No. 5 NYSCEF No. 5, starting with April 10, 2018, Ms.

Kijewski AFFIDAVIT IN REPLY Court Application No. 5 NYSCEF No. 193,
which includes the justification for March 22, 2022, TIAA & Vanguard
NYSCEF consent to enforce account owner Peter Kijewski "Required
Minimum Distribution" (RMD) disbursement "hold", including Federal &
State tax withholding "hold":

> a. "9. It is respectfully submitted that, due to Defendant's actions,
> the impact of the various account changes (other than the obvious
> reductions in value) remains unknown at this time. Accordingly, the
> restraining order on these accounts must stay in effect until the full
> impact can be determined, ideally by an Order from this Court directing
> Defendant in provide an authorization so that I and my attorney can
> speak to TIAA directly and receive complete information on these
> changes as well as on any discussions concerning them. Defendant will
> not be harmed by extending the restraining order as he received
> substantial RMDs in December 2017, he just sold the former marital
> residence, and he recently received an inheritance."

> b. Ms. Kijewski justification coerced Peter Kijewski to use his
> cash financial assets, i.e. substantial RMDs in December 2017, he just
> sold the former marital residence, and he recently received an
> inheritance, to pay for living expenses, child support and taxes.

610. April 10, 2018, Ms. Kijewski **AFFIDAVIT IN REPLY** Court
Application No. 5 NYSCEF No. 193 reveals a damaging alternative for "While
the division of marital property generally is governed by state domestic
relations law, any assignments of retirement interests must also comply with

Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)."

611. Immediate $3,056,518 Cash Award - TIAA, Vanguard & BNY Pershing Payment to Peter Kijewski justification using Plaintiff Peter Kijewski analysis of April 10, 2018, Ms. Kijewski **AFFIDAVIT IN REPLY** Court Application No. 5 NYSCEF No. 193, which includes Ms. Kijewski analysis of December 8, 2017, IRS returned subpoenaed Peter Kijewski tax year 2016 tax return Court Application No. 5 NYSCEF No. 195.

612. **April 10, 2018, NYSCEF No. 193**: "1. I am the Plaintiff in the above captioned action, and as such I am fully familiar with all of the facts, circumstances and proceedings heretofore had herein. I submit this Affidavit in further support of the relief requested in my Order to Show Cause dated March 14, 2018."

a. Ms. Kijewski failed to include in her AFFIDAVIT prior facts, circumstances and proceedings revealed by December 9, 2015, Hon. Paul I. Marx, J.S.C. 1 of 7, PENDENTE LITE DECISION AND ORDER NYSCEF No. 59:

i. "The award shall be taxable to Plaintiff, as she does not specify any basis for departing from "the norm envisioned by current Internal Revenue Code provisions.""

ii. "***Required Minimum Distribution***"

iii. "Plaintiff asks the Court to direct Defendant to distribute 50% of his Required Minimum Distribution to her. Plaintiff explains that Defendant is required to withdraw a certain

amount from his retirement accounts each year or he will be charged a 50% penalty."

613. **April 10, 2018, NYSCEF No. 193**: "2. My application successfully sought an immediate order restraining Defendant's retirement assets at TIAA-CREF and Vanguard, based upon information I acquired upon review of Defendant's TIAA-CREF statements that were finally produced through his attorneys in early March. I have subsequently received documents in response to subpoenas that were served upon TIAA-CREF, Vanguard, and CitiMortgage (in connection with Defendant's recent mortgage application) which have shed even more light on Defendant's substantial efforts to conceal assets and deprive me of my share of marital assets. There are still, however, numerous issues remaining to be resolved, not the least of which is the ultimate impact on me of Defendant's decisions to intentionally and prematurely change the status of certain of his retirement accounts before any QDROs could be processed. Until such time as these issues have been fully explained and resolved, and the QDROs have been prepared, submitted and processed, the restraining orders should remain in place."

a. At all times account <u>owner</u> Peter Kijewski 403(b) & 457(b) retirement plans and IRAs have been available for Ms. Dunn submitting a valid $468,997 Domestic Relations Order (DRO) to TIAA, Vanguard and/or BNY Pershing.

b. June 24, 2015, Mr. Cohen invoice "Review financial account listing" reveals Mr. Cohen reviewed account owner Peter Kijewski unauthorized March 31, 2015, TIAA Quarterly Retirement Portfolio

Statement he failed to use for submitting a $493,192 Domestic
Relations Order (DRO), which would have substantially benefitted his
client Ms. Kijewski.

614. **April 10, 2018, NYSCEF No. 193**: "3. Defendant's opposition to
my application largely ignores the evidence of his financial wrongdoing and
attempts to explain his actions away by alternately feigning ignorance or
mentioning his age as excuses for his actions. In the past, Defendant has
asserted that he has not knowingly made any changes to his retirement assets
and instead suggested that his financial advisor must have done so without
his knowledge, but these claims are belied by the facts and the timing of the
changes to Defendant's accounts. I believe it would be helpful for the Court to
understand the timing behind Defendant's actions, which clearly reveals his
intentions to complicate this matter and impact my ability to receive my share
of our marital retirement assets".

   a. Paul Cowie, TIAA CFP, Portfolio Advisor WMA, initiated all
   the changes, consolidating Peter Kijewski TIAA Traditional IRA,
   Vanguard IRA and BNY Pershing IRA, which made sense due to Peter
   Kijewski age and health status.

   b. There never was any impact on assigning account <u>owner</u> Peter
   Kijewski $468,997 retirement interests to Ms. Kijewski, account <u>owner</u>
   $468,997 retirement interests, using a valid $468,997 Domestic
   Relations Order (DRO).

   c. June 15, 2015, Mr. Cohen and Ms. Kijewski conference agenda
   items NYSCEF No. 356 reveals failure to promptly submit a valid

Domestic Relations Order (DRO) complicates the matter: "What about retirement accounts? what if money was shuffled around, absorbed in other accounts over the years?"

615. **April 10, 2018, NYSCEF No. 193**: "3.a **PHASE I**: During this time period immediately following the Stipulation of Settlement, all of Defendant's retirement funds are deemed marital (with one exception as outlined in our Stipulation) and no decisions have been made about equalization strategy."

    a. IRS Internal Revenue Code recognizes <u>owner</u>, <u>participant</u> and <u>individual</u>, omitting marital, joint, etc.: "Retirement plan <u>participants</u> and IRA (<u>Individual </u>Retirement Account) <u>owners</u>, including <u>owners</u> of SEP IRAs (<u>Individual </u>Retirement Account) and SIMPLE IRAs (<u>Individual </u>Retirement Account) are responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

    b. <u>Owners</u> "are responsible for taking the correct amount of RMDs on time, every year from their accounts", prohibiting Ms. Dunn interfering in any way with a clearly defined IRS RMD disbursement procedure!

    c. **$468,997 Equalization Strategy**: December 8, 2016, Robert Guarnera 'Kijewski - Reconciliation' NYSCEF No. 116 (page 3), including recurring NYSCEF filing, needed to result in a valid $468,997 Domestic Relations Order (DRO).

616. **April 10, 2018, NYSCEF No. 193**: "3.a. **PHASE I**: During this time period immediately following the Stipulation of Settlement, all of Defendant's retirement funds are deemed marital (with one exception as outlined in our Stipulation) and no decisions have been made about equalization strategy. Yet, knowing that the retirement accounts in his name would need to be evaluated and divided, Defendant made numerous changes and transfers to his accounts without notifying me or my attorney.":

a. "i. August 10, 2016: Mr. Guarnera emailed to both attorneys his retainer agreement and a list of documents to be submitted."

b. "ii. Early November, 2016: Defendant initiated transfers of his Vanguard IRA and TIAA IRA to another company or companies. These accounts that Defendant transferred out were entirely marital property and should not have been touched."

c. "iii. November 11, 2016: Transfer out of TIAA IRA completed."

d. "iv. November 14, 2016: Transfer out of Vanguard IRA completed."

e. "v. November 15, 2016: Mr. Guarnera received Defendant's retainer check."

f. "vi. November 16, 2016: Mr. Guarnera received Defendant's information."

g. Section 3.a explains Paul Cowie, TIAA CFP, Portfolio Advisor WMA, IRAs consolidation into TIAA Portfolio Advisor A57-649187 IRA account he created.

h. "Another company or companies" refers to TIAA Portfolio Advisor A57-649187 IRA account, since no other companies received IRA money.

i. Ms. Kijewski examined account <u>owner</u> Peter Kijewski December 31, 2016 "Your quarterly retirement savings portfolio statement" revealing transfer of TIAA Traditional IRA into "other company" TIAA Portfolio Advisor A57-649187 IRA account: "11/11/2016 11/11/2016 Direct transfer to other company (TIAA N967110-7) TIAA Traditional (closed)".

j. Section 3.a explains a potential Defendant's 403(b) & 457(b) retirement plans Domestic Relations Order (DRO) which to date of the present COMPLAINT TIAA never received.

617. Table 27 **April 10, 2018, NYSCEF No. 193**: "3.b. **PHASE II**: At this time, Mr. Guarnera's proposed equalization strategy has been made known to us, which includes Defendant's large Vanguard IRA to be mostly transferred to me under one QDRO, Defendant's TIAA accounts under A697778 and P697778 to be divided after subtraction of pre-marital portion and post-commencement contributions under a second QDRO, and a third QDRO of Defendant's marital pension."

a. Ms. Dunn never submitted any Brigham and Women's Hospital and Harvard University A697778 and P697778 403(b) retirement plans Domestic Relations Order (DRO).

b. December 16, 2016, Ms. Dahan wire communication to Ms. Dunn NYSCEF No. 119 specifically references TIAA A57-649187 IRA account, resulting January 5, 2017, Ms. Dunn wire communication to

Ms. Dahan & Ms. Kijewski NYSCEF No. 121 rejecting TIAA A57-649187 IRA $468,997 Domestic Relations Order (DRO).

c. September 2, 2016, Ms. Dunn **JUDGMENT OF DIVORCE** NYSCEF No. 102 reveals Ms. Dunn wrote the "equalization strategy":

i. "ORDERED AND ADJUDGED that equitable distribution shall be as set forth in the parties' Stipulation of Settlement; and it is further"

ii. "ORDERED AND ADJUDGED that pursuant to the Stipulation of Settlement, a separate Qualified Domestic Relations Order shall be issued simultaneously herewith or as soon as practicable; and it is further …"

d. October 20, 2016, Ms. Dunn "Investment Experience" wire communication to Actuary Robert Guarnera, Ms. Dahan and Ms. Kijewski NYSCEF No. 115 reveals Ms. Dunn subverted her own "equalization strategy": "I am following up on the QDROs necessary for this matter. I understand that you had a question as to whether the investment experience would be included after date of commencement. The answer is yes, the accounts should all be divided including investment experience through date of division, with of course the one exception being Mr. Kijewski's separate property credit (including that investment experience) on his TIAA-CREF account."

e. I know that Ms. Kijewski is working to gather the documents you need. I have Mr. Kijewski's attorney, Jessica Dahan, copied here as well. I'm not sure if Mr. Kijewski has sent his retainer agreement and

check to you and/or his documents — can you let us know what is still outstanding on that end so that we can make sure you get all of the information you need?

618. **April 10, 2018, NYSCEF No. 193**: "3.b.i <u>December 8, 2016:</u> Mr. Guarnera emailed Defendant, me and our attorneys a proposed equalization strategy using 3 QDROs. Until then, no one knew which accounts would be affected. Mr. Guarnera set forth his strategy for a QDRO to TIAA-CREF to equalize certain accounts: "A QDRO to Peter's TIAA-CREF for the Harvard, Brigham & Womens Hospital, New England Deaconess Hospital and MSKCC for the accumulation from August 11, 1980 to June 11, 2015 in the A697778 and P697778 **accounts only.**""

a. To date of the present COMPLAINT, Ms. Dunn never submitted any Brigham and Women's Hospital and Harvard University A697778 and P697778 403(b) retirement plans Domestic Relations Order (DRO).

b. March 10, 2016, Ms. Dahan **WITHOUT PREJUDICE FOR SETTLEMENT PURPOSES ONLY NOT TO BE USED IN ANY COURT PROCEEDING** NYSCEF No. 189 (51 pages), "Defendant's prior attempts to defraud Plaintiff", filed April 9, 2018, by Ms. Dunn, pages No. 13 - 15 of 51:

i. September 1, 1975, TIAA contract "A-697778-7" CREF contract "P-697778-4", forty-nine (49) years later:

ii. December 31, 2024, TIAA contract "TIAA A697778-7" CREF contract "P697778-4".

619. **April 10, 2018, NYSCEF No. 193**: "3.b.ii **December** 11, 2016: As explained below, Defendant initiated changes to two of the four plans under those TIAA-CREF account numbers (BWH and NEDH) that had two effects: (1) the account numbers were changed and (2) annual RMD distributions were initiated. The contract numbers were changed so that A697778 and P697778 were no longer associated with the BWH and NEDH plans; presumably, Defendant believed that by doing this the funds in these plans would no longer be subject to the TIAA QDRO. The changes in contract numbers made the NEDH and BWH plans, for the first time, subject to RMD.[1]"

a. Retirement plan account number changes occur exclusively due to hospital mergers. Retirement plan labels always identify specific accounts.

b. Any of the referenced changes do not impact DROs or QDROs.

c. RMD disbursements do not impact DROs or QDROs.

d. Paul Cowie, TIAA CFP, Portfolio Advisor WMA, will be able to verify zero (0) illegal manipulation of retirement plans occurred.

e. Ms. Dunn always had available Peter Kijewski retirement account statements for assigning account owner Peter Kijewski $468,997 retirement interests to Ms. Kijewski, account owner $468,997 retirement interests, using a valid $468,997 Domestic Relations Order (DRO) submitted to TIAA, Vanguard and/or BNY Pershing.

620. **April 10, 2018, NYSCEF No. 193**: "[1] As previously explained, the IRS permits a taxpayer to exclude retirement accounts linked to a current employer from any RMD. Although Defendant was not employed by Brigham

& Womens Hospital or New England Deaconess Hospital (or Harvard) at that time, those retirement assets were linked to his retirement assets with his then-current employer, Memorial Sloan Kettering, by the shared account numbers (A697778 and P697778). As a result, all of those retirement assets under that account number were excluded from Defendant's RMD. By changing the account number and electing an RMD in 2016, while he was still working and was not required to take an RMD from these accounts, Defendant deliberately attempted to remove these accounts from the marital division."

    a. The above table shows Memorial Sloan Kettering Cancer Center retirement plans have never been linked to Brigham and Woman's Hospital, Harvard University or New England Deaconess Hospital retirement plans.

    b. RMD disbursements may be aggregated by type according to IRS Internal Revenue Code rules, which are simple and available for review:

        i. "An IRA owner must calculate the RMD separately for each IRA they own but can withdraw the total amount from one or more of the IRAs. Similarly, a 403 (b) contract owner must calculate the RMD separately for each 403(b) contract they own but can take the total amount from one or more of the 403(b) contracts. "

        ii. "However, RMDs required from other types of retirement plans, such as 401(k) and 457(b) plans, must be taken separately from each of those plan accounts."

621. **April 10, 2018, NYSCEF No. 193**: "3.b.iii. December 6, 2017 — all investments in Defendant's Memorial Sloan Kettering RSP plan, both those under A697778 and P697778 (to be included in TIAA QDRO) and those not under those contract numbers, were transferred out of original accounts and pooled under new account numbers.[2] It would not have been possible for Defendant to initiate RMDs and thereby change the account numbers on any MSK plans until after he had retired in July, 2017. This is another likely reason why Defendant has attempted to delay the processing of the Vanguard and TIAA QDROs."

622. **April 10, 2018, NYSCEF No. 193**: "[2] The MSKCC RSP + match plan that was partially covered under the Vanguard QDRO seems to have been changed in December, 2017, so that it is difficult or impossible to tell which investments remain to be divided."

623. **April 10, 2018, NYSCEF No. 193**: "4. **This means that the vast majority of the funds that should have been subject to the TIAA QDRO were removed from the account numbers that Mr. Guarnera had stated would be used.**"

   a. Account numbers may change due to hospital mergers, but retirement plan identifiers never changed."

   b. Table 27 Presumably Ms. Dunn and Ms. Kijewski investigated the account number issue, considering countless Defendant's retirement funds statement subpoenas and NYSCEF filings.

624. **April 10, 2018, NYSCEF No. 193**: "5. It is noteworthy that Defendant maintains two other MSKCC retirement accounts at TIAA-CREF

which were proposed Vanguard QDRO. As a result, they are not relevant to the TIAA-CREF QDRO. In those accounts, which are Voluntary and Key Employee plans, Defendant made no transfers or account changes and took no RMDs in 2016 or 2017. If Defendant was not acting intentionally to interfere with my receipt of marital assets, why did he only take action to change the status of the TIAA-CREF accounts that are subject to division with me? Why not take his RMDs from accounts that will remain his property, thereby avoiding any issue with the pending QDROs?":

a. IRS Internal Revenue Code about property <u>owners</u> and withdrawal rules:

i. "An IRA <u>owner</u> must calculate the RMD separately for each IRA they own but can withdraw the total amount from one or more of the IRAs.  Similarly, a 403(b) contract <u>owner</u> must calculate the RMD separately for each 403(b) contract they <u>own</u> but can take the total amount from one or more of the 403(b) contracts.

ii. However, RMDs required from other types of retirement plans, such as 401(k) and 457(b) plans, must be taken separately from each of those plan accounts."

b. Brigham and Womens Hospital, Harvard University and New England Deaconess Hospital "tax-deferred funds in pay status exception" starts January 1, 2015, or earlier due to age 75 rule and other issues.

c. MSKCC "tax-deferred funds in pay status" starts January 1, 2018.

d. **Prohibited**: Tax year 2020 MSKCC 457(b) "tax-deferred funds in pay status" "hold".

e. IRA "tax-deferred funds in pay status" starts May 10, 2011.

f. **Note**: Tax year 2016 subpoenaed tax return "Required Minimum Distribution" (RMD) 50% penalty: <mark>**$0.00**</mark>.

625. **April 10, 2018, NYSCEF No. 193**: "6. As noted above, my attorney served subpoenas upon TIAA-CREF, Vanguard, and CitiMortgage, and a partial response has been received at this time. Through these subpoenas, more of Defendant's lies have been uncovered, including:"

a. April 13, 2016, Ms. Dunn asserted her unlimited powers by subpoena to Citibank and never stopped gathering every scrap of financial information about Peter Kijewski by means of recurring subpoenas.

626. **April 10, 2018, NYSCEF No. 193**: "6.a. Documents received from the CitiMortgage Subpoena revealed that Defendant maintains another retirement account at TIAA (account number A57-649187) which was NOT produced to me or my attorneys. This is in direct violation of this Court's order dated March 9, 2018. A complete set of these statements have been requested through counsel but no response has been received from Defendant's counsel to date. Annexed hereto as **Exhibit "7"** is a copy of the Order directing the statements to be produced as well as my attorney's email to Defendant's attorney requesting same."

a. December 16, 2016, Ms. Dahan wire communication to Ms. Dunn NYSCEF No. 119 includes Hon. John P. Colangelo, J.R.C. No. 2 of 7, IRA A57-649187 account Domestic <u>Relation Order</u> (IRA).

b. January 5, 2017, Ms. Dunn wire communication to Ms. Dahan NYSCEF No. 121 reveals Ms. Dunn rejected using the IRA A57-649187 account: "I have discussed this with Marie and quite frankly, Peter's position does not make sense and we do not consent to using TIAA Cref (sic)for the QDRO."

i. July 24, 2023, Hon. James L. Hyer, J.S.C. No. 7 of 7, DOMESTIC RELATIONS ORDER No. 553 uses "IRA account number A57 -649187: l00%", absent SSN redaction, to achieve Ms. Dunn "Investment Experience" financial plan: "==The parties further acknowledge that the trading price of VTSAX at the close of the market on 5/14/23 was $99.83 per share.  As a result, Plaintiff was entitled to a total of $1,027,035.27. The shortfall remaining due and owing Plaintiff is therefore $602,576.59.=="

627. **April 10, 2018, NYSCEF No. 193**: "6.b. Documents received from the CitiMortgage Subpoena also revealed that Defendant filed inaccurate income tax returns in 2016, claiming that he paid $17,500 more in maintenance than he actually did. I have requested through counsel that he amend the returns as they are inaccurate and could cause problems for me with IRS. Annexed hereto as **Exhibit "8"** is a copy of Defendant's 2016 tax

transcript received from CitiMortgage, as well as my attorney's email to Defendant's attorney requesting that he amend his returns."

   a. **$12,500**: November 24, 2015, NYSCEF No. 45: "Referee request      10/14/2015   $12,500.00   Check #192".

   b. **$7,000**: Unprecedented NYSCEF content about December 9, 2015, Hon. Paul I. Marx, J.S.C. No. 1 of 7, PENDENTE LITE DECISION AND ORDER NYSCEF No. 59: "Upon proper proof, Defendant may take a credit for the payment of $7,000 he allegedly made to Plaintiff on November 27, 2015."

   c. "Could cause problems for me with IRS" due to Ms. Kijewski advocating RMD 50% penalties.

628. **April 10, 2018, NYSCEF No. 193**: "6.c. Documents received from the CitiMortgage Subpoena also revealed that Defendant lied on his loan application by failing to note that a substantial portion of the $1,860,000 in retirement assets maintained at TIAA belong to me, failing to disclose his child support obligation and failing to disclose that one half of his pension belongs to me. Yet, Defendant had the audacity to claim that the $50,000 he is entitled to from my Roth IRA could jeopardize his application. Annexed hereto as **Exhibit "9"** is a copy of Defendant's loan application submitted to CitiMortgage."

   a. "$1,860,000 in retirement assets maintained at TIAA belong to" account <u>owner</u> Peter Kijewski since Ms. Dunn failed to submit to TIAA a $468,997 Domestic Relations Order (DRO).

b. Ms. Kijewski permanently retained Peter Kijewski Roth IRA share.

629. **April 10, 2018, NYSCEF No. 193**: "6.d Documents received from the TIAA-CREF subpoena revealed that Defendant elected to obtain RMDs (as noted above) in 2016, when same were not necessary for him to take as he was still employed, and when doing so changed the status of the TIAA accounts unnecessarily and almost certainly to my detriment. **I was never notified about this election.** Annexed hereto as **Exhibit "10"** are copies of the RMD request submitted by Defendant in 2016.³"

a. IRS Internal Revenue Code: [Retirement plan and IRA required minimum distributions FAQs | Internal Revenue Service](): "**Q16. What are the required minimum distribution requirements for pre-1987 contributions to a 403(b) plan? (updated Dec. 10, 2024)**"

b. **Note**: Tax year 2016 subpoenaed tax return "Required Minimum Distribution" (RMD) 50% penalty: <mark>**$0.00**</mark>.

630. **April 10, 2018, NYSCEF No. 193**: "³ Through 2015, Defendant had not taken any RMDs from these specific TIAA accounts, as they were protected by his status as a current employee of MSKCC. Further, Defendant's practice with regard to the RMDs that he was required to take was to calculate the total amount and then take that as a withdrawal from one retirement account, specifically his Clear Harbor/Pershing IRA. There was no need or basis for Defendant to change this practice in 2016 or 2017, other than to complicate the division of retirement accounts and to make it more difficult for me to receive my share of his retirement accounts."

a. "**Q16. What are the required minimum distribution requirements for pre-1987 contributions to a 403(b) plan? (updated Dec. 10, 2024)**" applies.

631. **April 10, 2018, NYSCEF No. 193**: "7. Defendant has made several false statements regarding his RMD requests. He asserted in his opposition papers to this application that he wanted to take quarterly RMDs, when in fact his initial request was for annual RMDs and he did not request quarterly RMDs until March 3, 2018, after I had already filed my first motion before this Court. Further, contrary to his claims, there is no tax advantage to Defendant receiving the distributions on a quarterly basis instead of annually. Defendant's actions in electing to take his RMDs from the TIAA accounts in 2016, which was not necessary as he was still employed at the time, was actually a disadvantage to him from an income tax basis, as he was then required to pay tax on those distributions based upon his 2016 income which was higher due to his full time employment."

a. Peter Kijewski tax accountant calculated mandatory retirement income quarterly estimated tax payments, including RMD disbursements income, currently paid by Peter Kijewski prior to specific quarterly dates!

b. **Unprecedented Tax Law Violation**: Ms. Dunn and Ms. Kijewski obfuscating March 20, 2018, Hon. Lewis J. Lubell, J.S.C No. 4 of 7, **IMMEDIATE RELIEF REQUESTED <u>ORDER TO SHOW CAUSE</u>** Court <u>Application</u> No. 5 NYSCEF No. 163 resulted in terminating March 3, 2018, Periodic Asset Movement NYSCEF No. 181,

specifying April 20, 2018, RMD disbursement, including 20% Federal

tax withholding and 5.10% State tax withholding.

     c. Ms. Dunn and Ms. Kijewski failed to research IRS Internal

Revenue Code rules which apply for RETIREMENT INCOME PLAN

FOR TEACHING FACULTY OF HARVARD UNIV, BRIGHAM AND

WOMENS HOSPITAL PROFESSIONAL STAFF RET PLAN and NEW

ENGLAND DEACONESS HOSPITAL DISCONTINUED 403(b)

retirement plans:

       i. Included in March 31, 2015, TIAA Quarterly Retirement

Portfolio Statement.

       ii. Examined by Mr. Cohen June 24, 2015.

       iii. June 25, 2015, Mr. Cohen letter to TIAA NYSCEF No. 399,

pages No. 8 - 11.

       iv. July 1, 2015, 7:30, FAX to TIAA

       v. July 1, 2015, received by TIAA.

       vi. July 6, 2015, Angela Shaw, TIAA QRM, TIAA-CREF

Notice of Entry of Automatic Orders NYSCEF No. 358.

     d. **Permitted**: Ms. Dunn submission to TIAA a valid $468,997

Domestic Relations Order (DRO).

     e. **Prohibited**: Ms. Dunn and Ms. Kijewski Court Application

No. 5:

       i. "Access to justice is a fundamental tenet of the rule of law.

Without it, people cannot fully protect their rights, liberty and

property; and the public's confidence in our justice system is put at risk."

    ii. "Retirement plan participants and IRA (Individual Retirement Account) owners, including owners of SEP IRAs (Individual Retirement Account) and SIMPLE IRAs (Individual Retirement Account) are responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

632. **April 10, 2018, NYSCEF No. 193**: "8. I anticipate that Defendant will again attempt to explain away the RMD election in 2016 by claiming that his financial advisor made those changes and that he did not understand them. However, it is important that this Court understand that the only way for Defendant to have changed his account numbers at TIAA-CREF is to begin annual RMD withdrawals under the "MDO option", which is exactly what Defendant did for the BWH and NEDH plans in 2016, and for the MSKCC plan in 2017 once he retired and was able to do so. Defendant initiated these withdrawals for the BWH and NEDH plans, thereby changing the account numbers, only 3 days after Mr. Guarnera's December 8, 2016 email identifying the original account numbers as the ones to be divided under a TIAA QDRO, which demonstrates Defendant's desire to reduce the funds in these account numbers, thereby limiting the amount of assets to be transferred to me. No other explanation makes sense: certainly not a desire to prematurely take unnecessary RMIDs while at his highest income level."

a. Peter Kijewski and Paul Cowie, TIAA CFP, Portfolio Advisor WMA, never change account numbers.

b. Hospital mergers cause BWH and NEDH plans account number changes.

c. Account number changes do not impact assigning account <u>owner</u> Peter Kijewski $468,997 retirement interests to Ms. Kijewski, account <u>owner</u> $468,997 retirement interests, using a valid $468,997 Domestic Relations Order (DRO) submitted to TIAA, Vanguard and/or BNY Pershing.

633. **April 10, 2018, NYSCEF No. 193**: "9. It is respectfully submitted that, due to Defendant's actions, the impact of the various account changes (other than the obvious reductions in value) remains unknown at this time. Accordingly, the restraining order on these accounts must stay in effect until the full impact can be determined, ideally by an Order from this Court directing Defendant in provide an authorization so that I and my attorney can speak to TIAA directly and receive complete information on these changes as well as on any discussions concerning them. Defendant will not be harmed by extending the restraining order as he received substantial RMDs in December 2017, he just sold the former marital residence, and he recently received an inheritance.":

a. "Defendant will ~~not~~ be harmed by extending the restraining order" since Peter Kijewski was coerced to use his financial assets to pay for living expenses, minor (16) support, exorbitant legal fees and taxes:

i. "He received substantial RMDs in December 2017,

ii. he just sold the former marital residence, and

iii. he recently received an inheritance."

b. "Impact of the various account changes" due to hospital

mergers never impacted assigning account <u>owner</u> Peter Kijewski

$468,997 retirement interests to Ms. Kijewski, account <u>owner</u> $468,997

retirement interests, using a valid $468,997 Domestic Relations Order

(DRO) submitted to TIAA, Vanguard and/or BNY Pershing.

c. "Restraining order on these accounts" caused tax years 2015 -

2022 "Required Minimum Distribution" (RMD) **$194,980** 50% penalties.

634. Ms. Kijewski failed to reference the Internal Revenue Code about

<u>Individual </u>Retirement Accounts (IRA) and account <u>owner</u> 403(b) &457(b)

retirement plans:

a. <u>Retirement plan and IRA required minimum distributions</u>

<u>FAQs | Internal Revenue Service</u> comprehensive "the Internal Revenue

Code" rules & regulations written so "people can~~not~~ fully protect their

rights, liberty and property".

b. "Employee <u>Retirement Income Security</u> Act of 1974" (ERISA)

defines an orderly process to assign account <u>owner</u> Peter Kijewski

$468,997 retirement interests to Ms. Kijewski, account <u>owner</u> $468,997

retirement interests, using a valid $468,997 Domestic Relations Order

(DRO) submitted to TIAA, Vanguard and/or BNY Pershing.

## XXX. CAUSES OF ACTION

### COUNT I: <u>Unprecedented Violations - TIAA, Vanguard & BNY Pershing IRS Internal Revenue Code and "Employee Retirement Income Security Act of 1974" (ERISA)</u>

636. **3.8 Years TIAA**: March 6, 2018 - December 16, 2021, TIAA Law & Compliance lawyers enforced Peter K. Kijewski tax-deferred 403(b) & 457(b) retirement plans and IRA $0.00 retirement income, inexplicably including $0.00 "Required Minimum Distribution" (RMD) disbursements and $0.00 United States Treasury and MA-DOR tax withholding and tax payments.  The TIAA enforcement action resulted in illegal omitted RMD "Investment Experience" and stiff RMD 50% penalties.

637. December 16, 2021 - December 27, 2021, TIAA released tax years 2018, 2019, 2020 and 2021 TIAA tax-deferred 403(b) & 457(b) retirement plans and IRA savings benefits mandatory $439,826 balloon retirement income disbursement, including in arears mandatory $150,376 balloon United States Treasury and MA-DOR tax withholding and tax payments. TIAA also included tax years 2018, 2019, 2020 and 2021 mandatory 457(b) $57,267 "Wages, salaries, tips, etc. Attach Form(s) W-2".  October 26, 2021, Plan Administrator, MSKCC retirement plans sponsor, thwarted November 5, 2021, Ms. Maureen A. Dunn Injunction/Restraining Order NYSCEF No. 394 (62 pages) and prevented tax year 2021 additional stiff $93,840 RMD 50% penalty.  March 2024 Social Security income due to tax year 2021 TIAA "Required Minimum Distribution" (RMD) balloon disbursement: $1.00.

638. **5.4 Years Vanguard**: January 1, 2018 - May 15, 2023, Vanguard Office of the General Counsel lawyers enforced Peter K. Kijewski tax-

deferred Vanguard IRA $0.00 retirement income, inexplicably including

$0.00 "Required Minimum Distribution" (RMD) disbursements and $0.00

United States Treasury and MA-DOR tax withholding and tax

payments.  The Vanguard enforcement action resulted in illegal omitted

RMD "Investment Experience" and stiff RMD 50% penalties.  There was NO

need for tax years 2018, 2019, 2021 and 2022 Vanguard $61,449 RMD 50%

penalties and tax years 2018, 2019, 2020, 2021, 2022 and 2023 Vanguard

balloon $188,547 retirement income disbursement.  Tax year 2023 total US

and MA tax withholding and tax payments due to Vanguard "Required

Minimum Distribution" (RMD) balloon disbursement: $115,229.

639. **2.2 Years BNY Pershing**: June 25, 2015 - September 20, 2017,

BNY Pershing Legal Department lawyers enforced Peter Kijewski IRA

$0.00 retirement income, inexplicably including $0.00 "Required Minimum

Distribution" (RMD) disbursements and $0.00 United States Treasury and

NYSDTF tax withholding and tax payments, except when divorce lawyer Mr.

Mitchell Y. Cohen or Ms. Maureen A. Dunn, "Required Minimum

Distribution" (RMD) disbursement consent received.  Opposing Johnson &

Cohen lawyers used the AUTOMATIC ORDERS to justify the enforcement

action, subverting the AUTOMATIC ORDERS retirement savings "tax-

deferred funds in pay status exception" in effect since May 10, 2011.

640. **0.2 Years TIAA & Vanguard**: April 18, 2017 - July 17, 2017,

TIAA Law & Compliance lawyers and Vanguard Office of the General

Counsel lawyers enforced Peter K. Kijewski tax-deferred retirement plans

and IRAs $0.00 retirement income, inexplicably including $0.00 "Required

Minimum Distribution" (RMD) disbursements and $0.00 United States

Treasury and NYSDTF tax withholding and tax payments.  Opposing divorce

litigators falsely affirmed Peter K. Kijewski flight risk to Germany,

transferring retirement assets to a foreign country.  July 1, 2017, Peter

Kijewski retirement: TIAA, Vanguard and BNY Pershing lawyer

enforcement $0.00 403(b) & 457(b) retirement plans and IRAs income.

### a) TIAA Vanguard & BNY Pershing Confirmation: Unprecedented Violations IRS Internal Revenue Code and "Employee Retirement Income Security Act of 1974" (ERISA)

641. **<u>Verification</u>**: TIAA, Vanguard & BNY Pershing are in possession

of documents and financial statements to verify recurring enforcement

actions 403(b) & 457(b) and IRAs retirement income "hold" occurred and

resulted in entirely preventable Federal tax penalties.

642. **<u>Visual Presentation</u>**: See the visual revealing details of TIAA,

Vanguard & BNY Pershing recurring enforcement actions and

unprecedented timeline of Plaintiff Peter Kijewski retirement plans & IRAs,

exclusively due to recurring TIAA, Vanguard & BNY Pershing enforcement

403(b) & 457(b) retirement plans and IRAs, account <u>owner</u> Peter Kijewski,

retirement income "hold":

## Visual 3 Tracking TIAA, Vanguard & BNY Pershing RMD "Hold"



**b) TIAA Confirmation: Unprecedented Violations IRS Internal Revenue Code and "Employee Retirement Income Security Act of 1974" (ERISA)**

643. EXHIBIT 5 October 13, 2023, **EMPLOYEE BENEFITS SECURITY ADMINISTRATION** letter to Plaintiff Peter Kijewski (36 pages) includes Table 9 September 26, 2023, TIAA provided records of March 6, 2018 - December 16, 2021, "Required Minimum Distribution" (RMD) disbursements "hold".

644. The TIAA table confirms the visual presentation!

**c) Vanguard Confirmation: Unprecedented Violations IRS Internal Revenue Code**

645. March 8, 2023, Ms. Dunn **ORDER** NYSCEF No. 529 (22 pages) confirms Vanguard Group, Inc. tax years 2018, 2019, 2020, 2021 and 2022 "Required Minimum Distribution" (RMD) disbursements "hold":

a. Page No. 1: **NOTICE OF SETTLEMENT**.

b. Pages No. 2 - 4: Ms. Dunn **ORDER**.

c. Pages No. 6 - 15: November 4, 2022, Hon. Thomas Quinones, J.S.C. No. 6 of 7, **DECISION & ORDER** Applications No. 12 & 13 NYSCEF No. 506: "ORDERED, that Defendant is restrained from removing, transferring, or withdrawing the retirement assets at Vanguard and TIAA-CREF until the necessary QDROs are processed, except to the extent he is required to take a mandatory distribution for the calendar year 2022;"

d. Page No. 17: January 30, 2023, Hon. Thomas Quinones, J.S.C. No. 6 of 7, NYSCEF No. 523: "**SHORT FORM ORDER** *ON*

*CONSENT* It is hereby **Ordered**, *that Defendant, Peter Kijewski, is hereby authorized and permitted to take any and all required minimum distributions ("RMDs") from any and all retirement accounts in Defendant's name.  This shall include to the extent possible allowing Defendant to take his 2022 RMD's from his Vanguard account.*"

    e. Pages 19 - 21: January 19, 2023, Hon. Thomas Quinones, J.S.C. No. 6 of 7, **DOMESTIC RELATIONS ORDER (IRA)** NYSCEF No. 520, which reveals Ms. Dunn filed a prior version with alterations, but retaining Domestic Relations Order (IRA) terms No. (1) - (8):

      i. Pages No. 2 - 5: December 8, 2016, Hon. John P. Colangelo, J.S.C. No. 2 of 7, **DOMESTIC RELATIONS ORDER (IRA)** proposed NYSCEF No. 117:

      ii. Page No. 5: Ms. Dunn deleted signature entries.

      iii. Page 6: Ms. Dunn deleted certification Plaintiff Peter Kijewski Vanguard IRA account **owner**: "**ADDENDUM TO QUALIFIED DOMESTIC RELATIONS ORDER** The IRA Owner's (Peter K. Kijewski) Date of Birth is November 10, 1940 and Social Security number is ███████. The Former Spouse's (Marie Foley-Kijewski) Date of Birth is December 19, 1949 and Social Security number is ███████. **For security reasons, Dates of Birth and Social Security numbers should not be included in Court documents. Therefore,**

**this Addendum should be sent to the Plan, along with the
certified copy of the QDRO.**" (Peter Kijewski redaction)

iv. Domestic Relations Order (IRA) false IRS Internal
Revenue Code term (6) concerning Vanguard <u>Individual</u>
<u>Retirement Account (IRA)</u> <u>owner</u>: "(6) Any distributions received
by the Former Spouse pursuant to this Order will be included as
gross income by the Former Spouse. For the purposes of Section
72 of the Internal Revenue Code, the Former Spouse and not the
IRA Owner shall be treated as the distributee of any
distribution or payment made by any IRA pursuant to this
Order."

v. Domestic Relations Order (IRA) term (1)(a) certifies
Plaintiff Peter Kijewski Vanguard <u>Individual</u> Retirement
Account (IRA) <u>owner</u>: ""IRA Owner"" shall mean Peter K.
Kijewski, whose current address is 812 The Parkway,
Mamaroneck, NY 10543. The IRA Owner's Date of Birth and
Social Security number will be provided under separate cover."

f. Page No. 22: Ms. Dunn **NOTICE OF SETTLEMENT WITH
ORDER**.

646. March 8, 2023, Ms. Dunn **ORDER** NYSCEF No. 529 (pages No. 3
- 4) confirms Vanguard Group, Inc. tax years 2018, 2019, 2020, 2021 and
2022 "Required Minimum Distribution" (RMD) disbursements "hold",
subverting Hon. Thomas Quinones, J.S.C. No. 6 of 7, recurring **ORDER**s and
causing "Required Minimum Distribution" (RMD) 50% penalties:

"**ORDERED,** that Vanguard shall issue Required Minimum Distributions to Defendant from the Vanguard IRA in the total sum of $188,547.44, for years 2018 through 2023, as follows:"

        a. "2018: $27,995.73"

        b. "2019: $29,663.34"

        c. "2020: $31,594.75"

        d. "2021: $33,155.64"

        e. "2022: $32,083.61"

        f. "2023: $34,054.27"

647. Recurring Vanguard Group, Inc. letters to Plaintiff Peter Kijewski confirms required IRS Internal Revenue Code compliance: "Once you reach age 70½, the IRS requires you to withdraw a minimum amount from your 403(b) and Individual 401(k) employer-sponsored retirement plans and your traditional, rollover, SEP, and SIMPLE IRAs, but not your Roth IRAs. The required minimum distribution (RMD) is subject to ordinary taxes on the taxable portion. In general, failure to take your full RMD by the due date can result in a 50% federal penalty on the shortfall amount. For more information about the RMD rules, see IRS Publication 590-B (available online at irs.gov).":

        a. Internal Revenue Service | An official website of the United States government: "Helping people understand and meet their tax responsibilities", including Vanguard Group, Inc. Office of the General Counsel lawyers.

        b. January 19, 2018, Vanguard Group, Inc. letter to "Dear Peter Kijewski": "Your Vanguard IRA® RMD for 2018 is: $27,995.73"

c. January 23, 2019, Vanguard Group, Inc. letter to "Dear Peter Kijewski": "Your Vanguard IRA® RMD for 2019 is: $29,663.34"

d. January 24, 2020, Vanguard Group, Inc. letter to "Dear Peter Kijewski": "Your Vanguard IRA® RMD for 2020 is: $31,594.75"

e. January 22, 2021, Vanguard Group, Inc. letter to "Dear Peter Kijewski": "Your Vanguard IRA® RMD for 2021 is: $33,155.64"

f. January 21, 2022, Vanguard Group, Inc. letter to "Dear Peter Kijewski": "Your Vanguard IRA® RMD for 2022 is: $32,083.61"

g. January 13, 2023, Vanguard Group, Inc. letter to "Dear Peter Kijewski": "Your Vanguard IRA® RMD for 2023 is: $34,054.27"

648. **<u>Summary</u>**: Confirmation Vanguard Group, Inc. tax years 2018, 2019, 2020, 2021 & 2022 "Required Minimum Distribution" (RMD) disbursements "hold":

**Table 50 November 8, 2016 - May 15, 2023, Vanguard "Required Minimum Distribution" (RMD) Disbursements "Hold"**

| Date | Years | Amount | Description |
|---|---|---|---|
| Vanguard Group, Inc. IRA "Required Minimum Distribution" (RMD) Disbursements | | | |
| 6/25/2015 | 0.0 | $493,192.00 | Mr. Cohen letters to TIAA, Vanguard & BNY Pershing thwarting legal DRO. |
| 11/8/2016 | 1.4 | ($24,889.74) | Normal distribution |
| 11/8/2016 | 1.4 | ($2,928.21) | Federal withholding |
| 11/8/2016 | 1.4 | ($1,464.10) | NY State withholding |
| 3/22/2018 | 2.7 | $188,547.34 | Ms. Dunn Vanguard RMD "Temporary Restraining Order" (TRO) |
| 12/31/2018 | 3.5 | 27,995.73 | Vanguard "Required Minimum Distribution" (RMD) disbursement "hold" |
| 12/31/2019 | 4.5 | 29,663.34 | Vanguard "Required Minimum Distribution" (RMD) disbursement "hold" |
| 12/31/2020 | 5.5 | 31,594.75 | Vanguard "Required Minimum Distribution" (RMD) disbursement "hold" |
| 12/31/2021 | 6.5 | 33,155.64 | Vanguard "Required Minimum Distribution" (RMD) disbursement "hold" |
| 12/31/2022 | 7.5 | 32,083.61 | Vanguard "Required Minimum Distribution" (RMD) disbursement "hold" |
| 12/31/2022 | 7.5 | 61,449.16 | Vanguard "Required Minimum Distribution" (RMD) 50% penalty |
| 1/13/2023 | 7.6 | 34,054.27 | Vanguard RMD letter to "Dear Peter K Kijewski". |
| 5/12/2023 | 7.9 | $160,265.24 | PETER K KIJEWSKI, Check confirmation, VFTC - CUST IRA ROLLOVER |
| 5/12/2023 | 7.9 | ($160,265.24) | Normal distribution |
| 5/12/2023 | 7.9 | ($18,854.73) | Federal withholding |
| 5/12/2023 | 7.9 | ($9,427.37) | MA State withholding |
| 5/15/2023 | 7.9 | $424,458.68 | PETER K KIJEWSKI, Vanguard Transaction confirmation to Ms. Kijewski account. |
| 5/15/2023 | 7.9 | -423,237.64 | Transfer to another account |
| 5/15/2023 | 7.9 | $1,221.04 | Dividend to another account |

## d) BNY Pershing Confirmation: Unprecedented Violations IRS Internal Revenue Code

649. Table 10 June 15, 2015 - March 31, 2016, Mr. Cohen & Ms. Dunn

Process Notes and Invoices NYSCEF No. 77 (29 pages).

650. June 25, 2015, Mr. Cohen letter to BNY Pershing NYSCEF No.

400 (18 pages), enclosed unauthorized BNY Pershing IRA account numbers

and dog & cat doodle, account owner Peter Kijewski:

a. NYSCEF No. 400 Additional Document Information, filed

November 7, 2021, by Peter Kijewski: "RMDs: June 25, 2015 Mitchell

Y. Cohen, Esq. initiating BNY Mellon Pershing "hold, release,

terminate" "Required" Minimum Distributions.  Demand: Johnson &

Cohen, LLP file four (4) original June 25, 2015 documents in NSYCEF (sic)."

    b. "Please be advised that your undersigned represents Marie Kijewski in connection with her matrimonial matter against her husband, Peter Kijewski. An Action for Divorce has been commenced by Marie Kijewski against Peter Kijewski in the Supreme Court of the State of New York, in the County of Westchester. Enclosed herewith is a copy of the Summons for Divorce which includes Notice of Entry of Automatic Orders pursuant to Domestic Relations Law Section 236."

    c. "Mr. Kijewski has the following accounts with your company: J4N-301918 and possibly other accounts."

    d. Mr. Cohen omission concerning tax deferred funds "except that any party who is already in pay status may continue to receive such payments thereunder" in his letter to BNY Pershing: "The aforesaid notice of Entry of Automatic Orders includes a specific provision that: ORDERED: Neither party shall transfer, encumber, assign, remove, withdraw or in any way dispose at without the consent of the other party, or by order of the court...." any cash accounts, stocks, mutual funds, bank accounts, etc. See paragraph (1) thereon. A similar restriction is imposed with respect to any "tax deferred funds, stocks or other assets held in any individual retirement accounts, 401K accounts, profit sharing plans, Keogh accounts, or any other pension or retirement accounts. See paragraph (2) thereon."

e. "Please consider this as Notice to you that these restrictions are in place and be guided accordingly."

f. <u>Pages No. 5 - 7 of 18</u>: June 19, 2015, **ACTION FOR A DIVORCE**, *SUMMONS WITH NOTICE* NYSCEF No. 1.

g. Page 9 of 18: "**NOTICE OF ENTRY OF AUTOMATIC ORDERS (D.R.L. 236) Rev. 1/13 FAILURE TO COMPLY WITH THESE ORDERS MAY BE DEEMED A CONTEMPT OF COURT**"

h. Pages 8 - 18: Information unrelated to Action for a Divorce.

651. <u>Tax deferred funds in pay status confirmation</u>: November 16, 2015, Ms. Kijewski tax years 2011 - 2015 BNY Pershing "Required Minimum Distribution" (RMD) calculations NYSCEF No. 441, includes "VG trad" & "VG ro IRA" (Vanguard), "Clear Harbor" (BNY Pershing) and "TIAA IRA" IRA <u>Individual</u> Retirement Account (IRA), Plaintiff Peter Kijewski account <u>owner</u>.

652. BNY Pershing Legal Department lawyer failed to write a vigorous response to Mr. Cohen concerning IRS Internal Revenue Code compliance, 1) tax deferred funds in pay status exception and 2) IRS Internal Revenue Code age seventy-five (75) rule:

a. BNY Pershing Legal Department lawyer failed to respond to Mr. Cohen concerning requirements for Peter Kijewski, IRA account <u>owner</u>, estimated quarterly "Required Minimum Distribution" (RMD) disbursements tax withholding and tax payments.

653. June 25, 2015, Mr. Cohen **AFFIDAVIT OF SERVICE** NYSCEF No. 3, filed by Mr. Cohen, concurrent with Mr. Cohen failure NYSCEF filing his letters to TIAA, Vanguard, BNY Pershing and Lincoln Financial:

a. " That on **6/24/2015** at **9:38 PM** at **812 THE PARKWAY, MAMARONECK, NY 10543** Deponent served the within **NOTICE REGARDING AVAILABILITY OF ELECTRONIC FILING, CONFIRMATION NOTICE OF E-FILING, CONSENT TO E-FILING, SUMMONS WITH NOTICE - ACTION FOR A DIVORCE, VERIFIED COMPLAINT** On **PETER K. KIJEWSKI,** defendant therein named."

b. "The words **"Action For A Divorce" were** legibly printed on the face of the Summons with Notice which was so served on the Defendant therein named as required by Domestic Relations Law, Section 232. The Notice of Automatic Orders (D.R.L. Section 236) was also included with the service papers."

c. "INDIVIDUAL: By delivering a true copy of each to said recipient personally, deponent knew the person so served to be the person described as said recipient therein."

d. "DESCRIPTION: Deponent further states that the description of the person actually served is as follows: Gender: **Male Race/Skin: White** Age: **50+** Weight: **161-200 Lbs.** Height: **5' 4" - 5' 8"** Hair: **White** Glasses: No Other:"

e. Page No. 2 photograph: "I identified the defendant by a photograph provided to me by the plaintiff which is annexed hereto."

654. November 23, 2015, Ms. Woolston wire communication NYSCEF

No. 418, attachment June 25, 2015, Mr. Cohen letter to BNY Pershing

NYSCEF No. 400 (Kijewski Letter.pdf):

### RE: Clear Harbor Letter
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Louis Newman;Jessica Dahan

Mon 11/23/2015 1:09 PM

Kijewski Letter.pdf **231 KB**

Hello Peter,

Please find attached the letter Pershing received in June.

I received the following reply from Pershing to my inquiry after their legal
team reviewed the RMD request:

**Morning Cat,**

**Our legal group has reviewed the Action for Divorce submitted to us
in June of this year.   Regarding the client being able to take out his
RMD, they responded with the below:**

**"This client needs to take their RMD and should have his attorney
alert Mitchell Cohen of Johnson & Cohen LLP that this action took
place and is a regulatory requirement."**

I am initiating the RMD today as per your request on Friday.

Happy Thanksgiving!

Cat
Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

655. November 23, 2015, Ms. Woolston wire communication NYSCEF

No. 420:

### RE: TIAA-CREF Letter
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Louis Newman;Jessica Dahan

Mon 11/23/2015 4:19 PM

Pershing is now coming back with this…

Hello Cat,

After further review our legal team has said that we will not be able to remove the block or approve the client's RMD request until we receive a letter from the attorney acknowledging that they know of the end-clients intentions.

I'm very sorry about this…

Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

656. December 1, 2015, Ms. Woolston wire communication NYSCEF

No. 421:

**RE: TIAA-CREF Letter**
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Louis Newman;Jessica Dahan

Tue 12/1/2015 1:58 PM

Kijewski Letter.pdf 31 кв

Hello Peter,

I have called a few times to make sure you saw this email…your cell phone mailbox is full and not accepting any voicemail.

I know this is frustrating, but unfortunately, I can't change Pershing.

Please let me know if you/your attorney will contact Johnson and Cohen or if you want me to try to reach out to them.

I'm in the office for the remainder of the year except Christmas Eve and Christmas Day.

Best,
Cat
Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

657. December 2, 2015, Ms. Dahan letter to Ms. Dunn NYSCEF No. 359:

a. "Upon the commencement of the Action for Divorce against my client, your office sent a letter to Pershing Advisor Solutions, LLC, instructing them of your understanding of the Automatic Orders."

b. "As a result of your instruction, Mr. Kijewski's RMD request at Clear Harbor is currently blocked and will continue to be blocked until they receive a letter from your office acknowledging that you are aware of this request and that you consent to the release of the funds. As you know, the parties will suffer financial consequences should they be unable to obtain this RMD. Therefore, at your earliest convenience, inform Pershing that you are aware of my client's request."

c. "Please copy this office on your correspondence with Pershing. We will hold the RMD funds in escrow during the pendency of this matter."

658. **BNY Pershing confirmation IRS Internal Revenue Code Violations**: December 2, 2015, Mr. Cohen letter to Dear Ms. Woolston NYSCEF No. 429 confirms BNY Pershing relinquished IRS Internal Revenue Code compliance enforcement to Mr. Cohen and Ms. Dunn:

a. "Pursuant to your discussion with my associate this morning, please be advised that I am aware of Mr. Kijewski's request for a distribution from account J4N-301918 in the sum of $48,389.49, which represents his Required Minimum Distribution for the year 2015. On behalf of Ms. Kijewski, we consent to the request to release these

funds. It is my understanding that these funds will be released directly

to Mr. Kijewski's counsel, Newman & Denney, P.C., where they will be

held in escrow."

     b. "Kindly advise if you require any additional action from me or

Ms. Kijewski in order to release these funds."

659. Table 11 November 13, 2015 - December 2, 2015, Mr. Cohen and

Ms. Dunn preoccupied writing and filing Application No. 1 NYSCEF content.

660. September 2, 2016, Ms. Dunn wrote and filed Judgment of

Divorce NYSCEF No. 102.

661. September 2, 2016, Hon. John P. Colangelo signed Judgment of

Divorce NYSCEF No. 107.

662. December 7, 2016, Ms. Woolston wire communication to "Hello

Maureen, Jessica, Peter and Marie" NYSCEF No. 352, attachments

December 2, 2015, Mr. Cohen letter to Dear Ms. Woolston NYSCEF No. 429,

"Clear Harbor (Woolston) 2015-12-02 release RMD funds.pdf" + "2016 RMD

KIJEWSKI.pdf"

### Kijewski - Required Minimum Distribution from Peter's IRA--MUST be done before 12/31/2016

CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You;Maureen Dunn;Jessica Dahan;Marie Kijewski

                                         Wed 12/7/2016 4:40 PM

You forwarded this message on Thu 12/8/2016 8:13 AM
Clear Harbor (Woolston) 2015-12-02 release RMD funds.pdf 46 KB
2016 RMD KIJEWSKI .pdf 173 KB
2 attachments (220 KB)

Hello Maureen, Jessica, Peter and Marie:

Anticipating an issue since Pershing still has a block on Peter's IRA...I'm sure we need a letter like this one to do the RMD.

I spoke to Peter and he know he needs to sign the attached RMD form.

Please provide the LOA ASAP.

Thanks,
Cat
Catherine Stamm **Woolston**, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

663. December 9, 2016, Ms. Woolston wire communication NYSCEF

No. 462:

**RMD**
You replied on Sat 12/10/2016 4:28 PM
CW
Catherine Woolston<CWoolston@clearharboram.com>
To:You

Fri 12/9/2016 12:13 PM

2016 RMD KIJEWSKI.pdf **173 KB**

Peter,

I got the letter from Marie's lawyer OK'ing the releasing the RMD funds…All I need is for you to sign page 9 of the attached PDF and return it to me ASAP…I don't need the original…a scan/email or fax work on my end…

Best,
Cat
Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com

664. December 10, 2016, Peter Kijewski wire communication to Ms.

Woolston NYSCEF No. 463:

**Re: RMD**
PK
Peter Kijewski
To:Catherine Woolston

Sat 12/10/2016 4:28 PM

Clear Harbor Peter Kijewski RMD 2016.pdf **944 KB**

Catherine,

The signed form is attached.

Regards,
Peter

      665. September 20, 2017, Ms. Dunn wire communication to BNY

Pershing Legal Department, via Ms. Woolston, NYSCEF No. 355 (yellow

highlight in original text), terminating June 25, 2015, AUTOMATIC

ORDERS tax-deferred funds in pay status "Required Minimum Distribution"

(RMD) disbursement "hold":

# FW: Kijewski v. Kijewski
You forwarded this message on Tue 8/31/2021 9:23 AM
You forwarded this message on Tue 8/31/2021 9:23 AM

**JF**

Jessica Friedrich <Jessica.Friedrich@sslllp.com>
Wed 9/20/2017 12:40 PM
To: You
Cc: Dana Stutman

Hi Peter:

Please see M. Dunn's email to Clear Harbor below. I understand from you that Ms. Woolston is out of the office, but even so this is a step in the right direction.

Jessica Friedrich | Associate
Stutman Stutman & Lichtenstein, LLP
Main: 212.226.6644 | Direct: 646.688.4340 |Fax: 212.750.1901
135 West 50th Street, 18th Floor
New York, New York 10020
25 Roslyn Road, 1st Floor
Mineola, New York 11501

This message and any attachment are intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (212) 266-6644. Thank You.

 U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.

**From:** Maureen Dunn [mailto:MDunn@johnsoncohenlaw.com]
**Sent:** Wednesday, September 20, 2017 8:57 AM
**To:** 'cwoolston@clearharboram.com'
**Cc:** Jessica Friedrich <Jessica.Friedrich@sslllp.com>
**Subject:** Kijewski v. Kijewski

Dear Ms. Woolsten:

As you may recall, I represent Marie Kijewski in connection with the matrimonial matter against Peter Kijewski. Mr. Kijewski is currently represented by Jessica Friedrich (copied here). Ms. Friedrich advised that her client has ==encountered difficulty in receiving his Required Minimum Distribution== from Clear Harbor as a result of the ==hold== on the accounts that had been in effect ==during the pendency of the matrimonial action==. Please be advised that to the extent such a ==hold previously existed==, same is no longer required as the parties have resolved their matrimonial litigation and a ==judgment of divorce== has been issued. Mr. Kijewski should ==no longer be restrained from accessing his accounts due to the previous hold==.

Regards,

*Maureen A. **Dunn**, Esq.*
*Johnson & Cohen, LLP*
*mdunn@johnsoncohenlaw.com*
*Phone: (914) 644-7100*
*Fax: (914) 922-9500*
*www.johnsoncohenlaw.com*
**Email is not permitted for service of papers.**
**NOTICE TO RECIPIENT: This email transmission is meant only for the intended recipient of this transmission. This transmission may be a communication privileged by law. If you have received this transmission in error, any review, use, dissemination, distribution, or copying of this email is strictly prohibited. Please notify us by return email of the error and delete this message from your system. Thank you for your cooperation.**

## RE: Kijewski v. Kijewski

You forwarded this message on Wed 9/20/2017 4:32 PM
You forwarded this message on Wed 9/20/2017 4:32 PM

**GW**

Gail Wofford <GWofford@clearharboram.com>
Wed ==9/20/2017== 3:36 PM
To: You
Cc: Jessica.Friedrich@sslllp.com; MDunn@johnsoncohenlaw.com; Catherine Woolston

Dear Mr. Kijewski,

Thank you for forwarding the email from Ms. Dunn at Johnson Cohen Law regarding ==removing the hold on the account==.

In order for the letter of authorization to be processed, the instructions must be on the ==lawyers' letterhead, a physical signature and date included==.

We cannot accept an electronic signature.

The LOA may be sent via email to my attention and I will see that it is submitted for processing while Ms. Woolston is out of the office.

Sincerely,
Gail J. Wofford
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212-867-7310
Fax:  212-867-7804
GWofford@clearharboram.com



**NEW YORK | WASHINGTON, D.C. | DALLAS**

Confidentiality Note: This message and all attachments may contain confidential and/or legally privileged information for the firm Clear Harbor Asset Management, LLC, and is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance to the contents is strictly prohibited. If you have received this message in error, please notify this firm immediately by telephone (212-867-7310) or by electronic mail (info@clearharboram.com), and delete this message and all copies and backups thereof

## RE: Kijewski v. Kijewski

| GW |
|---|

Gail Wofford <GWofford@clearharboram.com>
Thu 9/21/2017 9:29 AM
To: You; Maureen Dunn
Cc: Jessica.Friedrich@sslllp.com; Catherine Woolston

Dear Ms. Dunn,

Thank you for the ==signed and dated letter of authorization== for Mr. Kijewski. This has been submitted for processing.

In order for Mr. Kijewski to withdraw his required minimum distribution from his IRA, he will need to submit a distribution form to us.

Sincerely,
Gail J. Wofford
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212-867-7310
Fax:  212-867-7804
GWofford@clearharboram.com
**NEW YORK | WASHINGTON, D.C. | DALLAS**

666. BNY Pershing Legal Department lawyer confirmed **"This client needs to take their RMD and should have his attorney alert Mitchell Cohen of Johnson & Cohen LLP that this action took place and is a regulatory requirement."**:

a. BNY Pershing Legal Department lawyer failed repeatedly to inform Ms. Dunn and Mr. Cohen to promptly comply with IRS Internal Revenue Code, assuring Peter Kijewski, IRA account <u>owner</u>, quarterly estimated "Required Minimum Distribution" (RMD) disbursements,

Federal & State tax withholding and tax payments since May 10, 2011.

667. Table 12 September 20, 2017, needless legal fees due to BNY Pershing Legal Department wire communication: **"This client needs to take their RMD and should have his attorney alert Mitchell Cohen of Johnson & Cohen LLP that this action took place and is a regulatory requirement."**

**e) United States District Court, Southern District of New York**

668. Documents e-filed in response to Plaintiff Peter Kijewski COMPLAINT must reference and affirm compliance with:

a. **Internal Revenue Code**: IRS, Department of the Treasury, Internal Revenue Code.

b. **ERISA**: Department of Labor "Employee Retirement Income Security Act of 1974" (ERISA).

c. **Fiduciary Responsibilities**: Retirement asset custodians TIAA, Vanguard and BNY Pershing fiduciary responsibilities comprehensively included in TIAA, Vanguard and BNY Pershing documents and wire communications.

## COUNT II: Immediate $3,056,518 Cash Award - TIAA, Vanguard & BNY Pershing Payment to Peter Kijewski

669. TIAA, Vanguard & BNY Pershing enforced recurring 403(b) & 457(b) retirement plans and IRAs, account <u>owner</u> Plaintiff Peter Kijewski, $0.00 retirement income disbursements, inexplicably including $0.00 "Required Minimum Distribution" (RMD) disbursements, initiated in response to June 25, 2015, Mr. Cohen AUTOMATIC ORDERS FAX wire communications.

670. TIAA, Vanguard & BNY enforcement action exposes unprecedented violations:

a. Department of Labor "Employee Retirement Income Security Act of 1974" (ERISA) concerning Peter Kijewski 403(b) & 457(b) total six (6) retirement plans, September 1, 1975, signed TIAA & CREF contract.

b. IRS, Department of the Treasury, Internal Revenue Code concerning Peter Kijewski 403(b) & 457(b) retirement plans and IRAs.

c. June 25, 2015 - May 15, 2023, tax-deferred 403(b) & 457(b) retirement plans and IRAs, account <u>owner</u> Plaintiff Peter Kijewski, recurring disbursement "hold", without retirement asset custodian receipt of a mandatory Domestic Relations Order (DRO).

d. To date of the present COMPLAINT, TIAA never received any 403(b) & 457(b) retirement plans, account <u>owner</u> Peter Kijewski, Domestic Relations Order (DRO) since June 19, 2015, Action for a Divorce NYSCEF No. 1 & 2!

671. Unprecedented Violations - TIAA, Vanguard & BNY Pershing
Internal Revenue Code and "Employee Retirement Income Security Act of
1974" (ERISA) guarantees unprecedented Table 21 Plaintiff Peter Kijewski
cash financial asset dissipation and other catastrophic adverse financial
outcomes.

672. Plaintiff Peter Kijewski financial asset loss was entirely
preventable!

673. Plaintiff Peter Kijewski is seeking an immediate TIAA, Vanguard
& BNY Pershing indisputable cash award:

a. Immediate TIAA, Vanguard and BNY Pershing cash payment
to Plaintiff Peter Kijewski: **$1,296,129**.

b. **Total payment**, including interest since June 25, 2015, Ms.
Dunn confirmed 9% interest payment: **$3,056,518**.

**Table 51 Cash Award Calculation due to Financial Asset Loss**

| Cash Award Calculation | | | | | | |
|---|---|---|---|---|---|---|
| Date | End Date | Amount | Interest | Total | Daily | Years |
| 6/19/2015 | 1/1/2025 | $1,296,129 | 235.82% | $3,056,518 | 365 | 9.53 |

674. October 26, 2021, **Plan Administrator**, MSKCC 403(b) & 457(b)
retirement plans **sponsor**, mandated TIAA Law & Compliance lawyer letter,
via Ms. Perry, TIAA Law & Compliance Laison, letter to "Dear Ms. Dunn &
Mr. Senter" NSYCEF No. 348, 349, 350, 386, 394 (page 43 of 62), 405 & 497
causing:

a. December 16, 2021 - December 27, 2027, TIAA tax years
2018, 2019, 2020 and 2021 $439,826 "Required Minimum Distribution"
(RMD) balloon disbursements.

b. **Plan Administrator**, MSKCC 403(b) & 457(b) retirement plans **sponsor**, action reveals 1) "Employee Retirement Income Security Act of 1974" (ERISA) compliance, 2) IRS Internal Revenue Code compliance and 3) TIAA failure receipt of a $468,997 Domestic Relations Order (DRO) supersedes November 5, 2021, Ms. Dunn Injunction/Restraining Order NYSCEF No. 394 (62 pages).

c. October 1, 2021 - January 31, 2022, Ms. Dunn wasteful Process Notes and Invoices NYSCEF No. 503, payable by her client Ms. Kijewski, proved to be entirely ineffectual to prevent TIAA tax years 2018, 2019, 2020 and 2021 $439,826 "Required Minimum Distribution" (RMD) balloon disbursements.

d. November 2, 2021, Ms. Dunn wire communication to Mr. Senter NYSCEF No. 396 to enrich herself and her client failed due to tax year 2021 Plan Administrator, MSKCC 403(b) & 457(b) retirement plans, thwarted $93,840 RMD 50% penalty: "If he does truly want to resolve these issues, please advise if he will consent to a further restraining order being imposed on the accounts while we work through the myriad of issues remaining in an effort to divide the retirement interests appropriately. If he will consent, I can discuss with my client a carve out to enable Mr. Kijewski to remove his 2021 RMD to avoid further penalty, however those funds must first go to pay the outstanding money judgments and child support owed to my client."

675. EXHIBIT 4 Effectual July 6, 2015, AUTOMATIC ORDERS

response letter to Mr. Cohen and Ms. Dunn, compared to the EXHIBIT 3

ineffectual pathetic July 6, 2018, TIAA response letter NYSCEF No. 358.

676. Plaintiff Peter Kijewski preventable use of his TIAA PORTFOLIO

ADVISOR Program A57-666850 Investment Account to pay for living

expenses, minor (16) support, exorbitant legal fees and taxes:

**Table 52 TIAA PORTFOLIO ADVISOR Program A57-666850
Investment Account Flushing Cash into Bottomless Pit**

| TIAA PORTFOLIO ADVISOR Program A57-666850 Investment Account | | | | $0.00 RMD Transactions | |
|---|---|---|---|---|---|
| 9/23/2021 | 6.2 | A57-666850 liquidation due to $0.00 "Required" Minimum Distributions causing tax debt | | | -$375,000.00 |
| 7/13/2021 | 6.0 | "July 13, 2021 TIAA REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER" - $97,000,000 disgorgement | | | |
| Date | Years | Activity Type | Description | Withdrawal | Investment |
| 11/15/2021 | 6.4 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($15,000.00) | -$95,000.00 |
| 9/23/2021 | 6.2 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($15,000.00) | |
| 7/9/2021 | 6.0 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($15,000.00) | |
| 5/27/2021 | 5.9 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($15,000.00) | |
| 3/18/2021 | 5.7 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($20,000.00) | |
| 1/25/2021 | 5.6 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($15,000.00) | |
| 10/19/2020 | 5.3 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($25,000.00) | -$80,000.00 |
| 4/24/2020 | 4.8 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($5,000.00) | |
| 3/26/2020 | 4.8 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($5,000.00) | |
| 2/25/2020 | 4.7 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($25,000.00) | |
| 1/28/2020 | 4.6 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($10,000.00) | |
| 1/6/2020 | 4.5 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($10,000.00) | |
| 10/9/2019 | 4.3 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($20,000.00) | -$100,000.00 |
| 8/6/2019 | 4.1 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($10,000.00) | |
| 7/15/2019 | 4.1 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($10,000.00) | |
| 4/26/2019 | 3.8 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($20,000.00) | |
| 2/27/2019 | 3.7 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($40,000.00) | |
| 12/17/2018 | 3.5 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH BANK OF AMERICA, N.A. | ($60,000.00) | -$100,000.00 |
| 9/18/2018 | 3.2 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH TIAA DIRECT | ($10,000.00) | |
| 6/22/2018 | 3.0 | ELECTRONIC TRANSACTION | SEND TO BANK FOR ACH 081086700 302002 … | ($30,000.00) | |
| 12/16/2021 | 6.5 | Tax years 2018, 2019, 2020 and 2021 403(b) & 457(b) retirement plans and IRA balloon disbursement | | | |
| 3/6/2018 | 2.7 | Last TIAA 403(b) & 457(b) retirement plans and IRA disbursement. | | | |
| 2/27/2018 | 2.7 | CHECK RECEIVED | PETER KIJEWSKI -CK#0348 (inheritance) | $240,000.00 | |
| 7/1/2017 | 2.0 | Peter K. Kijewski (76) exit the workforce: RMD ATRO & RMD TRO enforcement | | | |
| 11/8/2016 | 1.4 | Last Vanguard IRA disbursement | | | |
| 6/25/2015 | 0.0 | AUTOMATIC ORDERS "Temporary" Restraining Order freezing retirement accounts, including RMDs | | | |

677. **Bottomless Pit Justification**: April 10, 2018, DEFENDANT

Ms. Kijewski **AFFIDAVIT IN REPLY** NYSCEF No. 193, filed April 11,

2018, by Ms. Dunn, indisputably exposes Peter Kijewski needlessly using his financial assets to pay for his expenses: "9. It is respectfully submitted … Defendant will not be harmed by extending the restraining order as he received substantial RMDs in December 2017, he just sold the former marital residence, and he recently received an <u>inheritance</u>."

678. November 8, 2021, Immediate Unconditional Removal of all "Temporary" Restraining Orders Freezing Retirement Accounts NYSCEF No. 402, filed November 8, 2021, by Peter Kijewski:

      a. **Page No. 29 – 32**: Visuals about vaporizing cash.

      b. **Page No. 4 of 32**: "November 2, 2021 Maureen A. Dunn, Esq. wire communication is a concern, considering IRS Internal Revenue Code, for immediate resolution by subject matter experts: "If he does truly want to resolve these issues, please advise if he will ==consent to a further restraining order== being imposed on the accounts while we work through the myriad of issues remaining in an effort to divide the retirement interests appropriately. If he will consent, ==I can discuss with my client a carve out to enable Mr. Kijewski to remove his 2021 RMD to avoid further penalty, however those funds must first go to pay the outstanding money judgments and child support owed to my client==."

679. **<u>Cash Award</u>**: Table 21 TIAA, Vanguard & BNY Pershing recurring enforcement 403(b) & 457(b) retirement plans, <u>sponsors</u> MSKCC, Harvard University, NEDH & BWH, and Individual Retirement Accounts (IRAs), account <u>owner</u> Peter Kijewski, retirement income "hold", substantially exceeds requirements for **$3,056,518** cash award payable to Plaintiff Peter Kijewski by retirement asset <u>custodians</u> TIAA, Vanguard & BNY Pershing.

680. EXHIBIT 1 October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348 reveals Ms. Christine Pesaturo, Plan Administrator, MSKCC 403(b) & 457(b) retirement plans <u>sponsor</u>, achieved retirement asset <u>custodian</u> TIAA tax years 2018, 2019, 2020 & 2021 "Required Minimum Distribution" (RMD) disbursements.

**COUNT III: Just $385,750 Cash Award – TIAA, Vanguard & BNY Pershing Payment to Peter Kijewski due to June 19, 2015 - June 30, 2017, Peter Kijewski $0.00 Payroll Income**

681. Cash in the amount of **$3,056,518** payable to Peter Kijewski fails to compensate Peter Kijewski for June 19, 2015 - June 30, 2017, **$0.00** payroll income, since Peter Kijewski **$327,158** payroll income was needlessly squandered.

682. Cash payments to Peter Kijewski to compensate for **$0.00** payroll income, accounting for normal expenses: one-half of **$327,158** + 9% interest: **$385,750**.

**Table 53 Payroll Compensation Calculation**

| Payroll Compensation Calculation | | | | | | |
|---|---|---|---|---|---|---|
| Date | End Date | Amount | Interest | Total | Daily | Years |
| 6/19/2015 | 1/1/2025 | $163,579 | 235.82% | $385,750 | 365 | 9.53 |

683. **Cash Award**: TIAA, Vanguard & BNY Pershing recurring enforcement 403(b) & 457(b) retirement plans, sponsors MSKCC, Harvard University, NEDH & BWH, and Individual Retirement Accounts (IRAs), account owner Peter Kijewski, retirement income "hold", causing needless Plaintiff Peter Kijewski payroll squandering, substantially exceeds requirements for **$385,750** cash award payable to Plaintiff Peter Kijewski by retirement asset custodians TIAA, Vanguard & BNY Pershing.

## COUNT IV: Pooled $8,699,667 Cash Award – Defendants Payment to Peter Kijewski for Needless Time Allocated to Assure Federal Law Compliance

684. Cash payment five (5) hours/day * $500/hour * 365 days/year *

June 19, 2015 – January 1, 2025, totaling 9.53 years: **$8,699,667**.

### Table 54 Plaintiff Peter Kijewski Time & Effort Compensation: Federal Law Compliance Enforcement

| Federal Law Compliance: Peter Kijewski Compensation Calculation | | | | | | |
|---|---|---|---|---|---|---|
| Date | End Date | Per/hour | Hours/day | Total | Days | Years |
| 6/19/2015 | 1/1/2025 | $500 | 5 | $8,699,167 | 365 | 9.53 |

685. Plaintiff Peter Kijewski needless use of time:

a. Recurring unprecedented effort to overcome severe economic duress due to TIAA, Vanguard & BNY Pershing recurring prolonged retirement income disbursement "hold".

b. Numerous failed attempts to retain a law firm due to requirements for review, analysis and understanding a gigantic pile of NYSCEF documents, highlighting Ms. Dunn unparalleled Word processing competence generating NYSCEF content, including an uncountable number of needless precedents.

c. Preparing material for NYSCEF e-filing one-hundred-twenty-nine (129) documents in opposition to Ms. Dunn NYSCEF e-filings.

d. Search to retain four (4) law firms due to representing attorneys suddenly ghosting client Peter Kijewski, highlighting Ms. Dahan failure to process a post-judgment retainer agreement and failure to advocate for Peter Kijewski during post-judgment legal proceedings.

e. Review, analysis and understanding overwhelming NYSCEF content, up to two-hundred-thirty-eight (238) pages: February 28, 2018, Ms. Dunn **ORDER TO SHOW CAUSE** **IMMEDIATE ARREST AND IMPRISONMENT** <u>Application</u> No. 4 NYSCEF No. 133.

f. Producing comprehensive documentation for attempts to release "Required Minimum Distribution" (RMD) disbursement "hold":

    i. January 2, 2019, Peter Kijewski letter to Special Referee Josephine Trovini NYSCEF No. 283.

g. Comprehensive research about IRS Internal Revenue Code and "Employee Retirement Income Security Act of 1974" (ERISA).

h. Review, analysis and understanding Peter Kijewski 403(b) & 457(b) retirement plans and IRAs due to June 19, 2015, Mr. Cohen secretive e-filing NYSCEF No. 1 & 2 and June 25, 2015, NYSCEF No. 3, revealing Mr. Cohen action to assure Peter Kijewski will be overwhelmed dealing with severe economic duress:

    i. June 25, 2015, Mr. Cohen failed NYSCEF e-filing his economic duress letters to TIAA, Vanguard, BNY Pershing & Lincoln Financial.

i. Continual importing of financial statements into worksheets for financial analysis.

j. Incessant partitioning of NYSCEF documents up to two-hundred-thirty-eight (238) pages + OCR of NYSCEF content to enable extracting relevant text for quotations.

k. June 12, 2014, Peter Kijewski successful initiative resulting in active Department of Labor investigation of the matter Defendants failure to comply with IRS Internal Revenue Code and "Employee Retirement Income Security Act of 1974" (ERISA).

l. Successful initiative to educate Ms. Friedrich & Ms. Spielberg, resulting in highly relevant materials included in NYSCEF content.

m. Legal education about NYS Supreme Court legal proceedings rules & regulations.

n. Continual effort to secure minor (17) Joseph 100% college tuition payments, highlighting Ms. Kijewski, collaborating with Ms. Dunn, $0.00 contribution for her son's college tuition.

o. Peter Kijewski desperate attempt to obtain mandatory medications, notwithstanding Peter Kijewski health care needs are specifically listed in Plaintiff & Defendant Statements of Net Worth.

p. Learning Federal Court processes for filing this COMPLAINT has not yet been included in the time award.

q. Items listed here for COUNT IV replaced Peter Kijewski justified retirement years leisure, commencing July 1, 2017, at age seventy-six (76).

r. Table 3 Peter Kijewski time award must be evaluated highlighting attorney ineffectual efforts to release Peter Kijewski retirement income "hold", revealed by attorney Process Notes and exorbitant Invoices.

686. **<u>Cash Award</u>**: Defendants' recurring enforcement 403(b) & 457(b) retirement plans, <u>sponsors</u> MSKCC, Harvard University, NEDH & BWH, and Individual Retirement Accounts (IRAs), account <u>owner</u> Peter Kijewski, retirement income "hold", causing Plaintiff Peter Kijewski needlessly allocating time and effort, since June 19, 2015, Mr. Cohen secretive NYSCEF No. 1 & 2 e-filing, substantially exceeds requirements for pooled **$8,699,667** cash award payable to Plaintiff Peter Kijewski by Defendants TIAA, Vanguard, BNY Pershing, Ms. Dunn, Mr. Cohen and Ms. Kijewski.

**COUNT V: Finalize Equitable Distribution: Actuary Robert Guarnera Kijewski $493,192/$468,997 Retirement Assets Reconciliation**

687. Table 13 Actuary Robert Guarnera Kijewski Retirement Assets reconciliation used to calculate rebalancing retirement plans and IRAs.

688. Table 6 Mr. Cohen inexplicable failure to guide his client Ms. Kijewski to a prompt Settlement benefitting all parties, including beneficiaries "P", "J" and "8-year-old daughter".

689. Table 30 False claim "One million dollars in retirement assets belonging to Ms. Kijewski" assigned to Ms. Kijewski, resulting in assignment of the entirety of Peter Kijewski IRAs to Ms. Kijewski.

690. September 2, 2016, Ms. Dunn wrote and filed Judgement of Divorce NYSCEF No. 102:

   a. "ORDERED AND ADJUDGED that equitable distribution shall be as set forth in the parties' Stipulation of Settlement; and it is further

   b. ORDERED AND ADJUDGED that pursuant to the Stipulation of Settlement, a separate Qualified Domestic Relations Order shall be issued simultaneously herewith or as soon as practicable; and it is further …"

   c. October 20, 2016, Ms. Dunn wire communication to Actuary Robert Guarnera NYSCEF No. 115, reveals Ms. Dunn retirement plans and IRAs "Investment Experience" demand, account owner Peter Kijewski, replacing a just, fair and timely $468,997 Domestic Relations Order (DRO) submission to TIAA, Vanguard and/or BNY Pershing.

691. March 22, 2018, Ms. Dunn Vanguard Attorney Order NYSCEF No. 365 disabled Ms. Dunn "Investment Experience" demand, since Vanguard consented freezing Peter Kijewski Vanguard IRA account.

692. October 20, 2016, Ms. Dunn successfully initiated and achieved her "Investment Experience" financial plan resulting May 23, 2023, "The parties further acknowledge that the trading price of VTSAX at the close of the market on 5/14/23 was $99.83 per share.  As a result, Plaintiff was entitled to a total of $1,027,035.27. The shortfall remaining due and owing Plaintiff is therefore $602,576.59" NYSCEF No. 548 excessive Domestic Relation Orders (DRO), Plaintiff Peter Kijewski account owner TIAA & Vanguard IRAs.

693. **Unprecedented & illegal** 403(b) & 457(b) retirement plans, account owner Peter Kijewski, recurring disbursement "hold" justifies further Federal Court Order:

a. THE COURT will award Ms. Marie Kijewski reasonable living expenses.

b. The entirety of her financial assets will be restrained "while we work through the myriad of issues remaining in an effort to divide the retirement interests appropriately".

694. June 19, 2015 - December 16, 2021, TIAA never received any Domestic Relations Order (DRO), required for assignment of retirement interests, Peter Kijewski account owner, to Ms. Kijewski account owner, retirement interests.

695. **Fiduciary Responsibilities Transfer**: December 12, 2019, J. Christian Annalora, Senior Director, Associate General Counsel | Law & Compliance, TIAA, included in his wire communication to Sonia Kijewski Poulin: "Dr. Kijewski has asked us to perform certain transactions on his behalf that we are unable to perform.  We have attempted multiple times to explain what he needs to do so that we can accept his transaction instructions, but we're concerned that he does not understand."

    a. Two (2) years later: Plan Administrator, MSKCC retirement plans sponsor, has asked us to perform certain transactions on Peter Kijewski behalf that we are ~~unable~~ able to perform.

696. Ms. Dunn and Ms. Kijewski jointly enriched themselves, using Ms. Dunn retirement plans & IRAs, Peter Kijewski account <u>owner</u>, restraining Orders, enabled by Ms. Kijewski unprecedented legal fee payments to Ms. Dunn, achieving excess assignment of IRA retirement interests to Ms. Kijewski:

    a. June 25, 2015, Ms. Dunn, Mr. Cohen and Ms. Kijewski had a rejected NYS Equitable Distribution opportunity by submitting to TIAA, Vanguard and/or BNY Pershing a $493,192 Domestic Relations Order (DRO) and comply with AUTOMATIC ORDERS "tax-deferred funds in pay status exception".

    b. Inexplicably Mr. Cohen selected:

        i. Unlawful "Required Minimum Distribution" (RMD) disbursement "hold",

ii. Mandatory RMD disbursements, calculated and managed

by Ms. Kijewski since May 10, 2011,

iii. Reviewed November 16, 2015, by Ms. Dunn NYSCEF No.

441 and confirmed December 7, 2016, by Ms. Kijewski NYSCEF

No. 459.

697. **Finalize Equitable Distribution**:

a. **Roth IRA**: Immediate assignment of Peter Kijewski

Equitable Distribution Roth IRA share to Peter Kijewski, unlawfully

withheld by Ms. Dunn and Ms. Kijewski joint actions, since June 19,

2015, NYSCEF No. 1 & 2.

b. **Tax-Deferred IRA Funds**: Ms. Kijewski will assign to

Plaintiff Peter Kijewski tax-deferred IRA funds she received exceeding

**$468,997**.

c. **Judgment of Divorce**: September 2, 2017, Ms. Dunn wrote

and e-filed **JUDGMENT OF DIVORCE** NYSCEF No. 102:

i. "**ORDERED AND ADJUDGED** that equitable

distribution shall be as set forth in the parties' Stipulation of

Settlement; and it is further"

ii. "**ORDERED AND ADJUDGED** that pursuant to the

Stipulation of Settlement, a separate Qualified Domestic

Relations Order shall be issued simultaneously herewith or as

soon as practicable;"

## **COUNT VI: Preventable Stiff $194,980 RMD 50% Penalty**

698. Peter Kijewski will be relieved of preventable "Required

Minimum Distribution" (RMD) **$194,980** 50% tax penalty, since tax penalties

avoidance was essential to protect Peter Kijewski RMD disbursements

retirement income to pay for living expenses, taxes and minor (16) support.

699. Peter Kijewski will not be charged for omitted RMD

disbursements "Investment Experience".

700. Table 26 Defendants need to sort out RMD **$194,980** penalty with

IRS, Department of the Treasury, considering IRS may claim the tax

penalties are larger.

701. **Evaluation**: April 10, 2018, Ms. Kijewski **AFFIDAVIT IN**

**REPLY** NYSCEF No. 193, Ms. Kijewski complained about tax year 2016

**$0.00** RMD 50% penalty, analyzing Peter Kijewski subpoenaed tax year 2016

tax return NYSCEF No. 195!

**COUNT VII: Paul Cowie, TIAA Portfolio Advisor WMA, Deposition Will Confirm Ms. Dunn Defamation Against Peter Kijewski**

702. Paul Cowie, TIAA CFP, Portfolio Advisor WMA, assigned to Peter Kijewski December 31, 2015:

   a. Created Portfolio Advisor A57-649187 Individual Retirement Account (IRA) and consolidated TIAA Traditional IRA, Vanguard IRA and BNY Pershing IRA into TIAA Portfolio Advisor IRA, complying with TIAA policies.

   b. Created Portfolio Advisor A57-666850 Investment Account and consolidated Peter Kijewski investments.

   c. Created TIAA Bank account for deposit of Peter Kijewski inheritance and other cash assets.

703. EXHIBIT 2 June 22, 2022, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Dr. Kijewski" confirmed Peter Kijewski accounts have been managed without exhibiting Ms. Dunn recurring defamatory accusations against Peter Kijewski she e-filed in NYSCEF content:

   a. "**Fiduciary Responsibilities** – TIAA has completed a thorough review of Paul Cowie's interactions with you and your accounts. Our review indicates that Paul has met all regulatory requirements applicable to TIAA and to Paul as your assigned Wealth Management Advisor."

704. Paul Cowie, TIAA Portfolio Advisor WMA, will be provided NYSCEF No. 1 - 553 and all Court documents received by Peter Kijewski, for review and analysis to confirm Ms. Dunn willful defamation against Peter

Kijewski regarding Paul Cowie management of Peter Kijewski retirement plans and IRAs.

705. Paul Cowie will confirm Ms. Dunn defamatory accusations regarding Peter Kijewski manipulating his retirement plans and IRAs to "trick and defraud" her client Ms. Kijewski, are in fact impossible.

706. Paul Cowie will provide a report of his findings.

707. November 23, 2015, Mr. Newman **AFFIRMATION IN OPPOSITION** NYSCEF No. 45 about Ms. Dunn abysmal conduct

a. "3. It is unfortunate that Plaintiff and her counsel needs to resort to personal attacks on my associate because she was defending our client and disputing the numbers presented by Plaintiff's counsel. There was no need to assert, as does Plaintiff's counsel, that my associate, Ms. Dahan, exhibited a "willingness to comply with … gamesmanship" when we simply could not come to an agreement on support figures and therefore required the Court's intervention."

b. "4. It is curious to me why counsel believes that she is deserving of having her demands agreed to simply because she demands it."

c. Her demands denied December 9, 2015, Hon. Paul I. Marx, J.S.C. No. 1 of 7, NYSCEF No. 59: "If Defendant were required to pay a portion of the carrying charges on the marital home, it would result in an impermissible double shelter allowance. Mosso, supra at 759. Plaintiff shall be responsible for all of the carrying charges on the marital home until such time as she relocates."

708. Due to Ms. Dunn unprecedented baseless defamation against Peter Kijewski, Ms. Dunn will immediately disgorge to Peter Kijewski all legal fees paid to her and Mr. Cohen by client Ms. Kijewski.

a. Additional Ms. Dunn penalty payments to Peter Kijewski may occur during the trial phase of this action.

b. Ms. Kijewski will immediately disgorge to Peter Kijewski all legal fee reimbursements she received, including interest Peter Kijewski paid.

709. **Prohibited**: Ms. Dunn numerous MEMORANDA OF LAW precedents affirm excessive child support concurrent with retirement plans & IRAs disbursement "hold":

a. June 19, 2015 - June 30, 2017, Ms. Kijewski may retain Hon. Paul I. Marx, J.S.C. No. 1, $1,800 child support award, with reduction due to Joseph SSI payments Ms. Dunn and Ms. Kijewski attempted to conceal April 10, 2018, NYSCEF No. 189.

b. Ms. Kijewski will disgorge to Peter Kijewski all other child support payments she received.

c. Child support reimbursements to Peter Kijewski comply with December 9, 2018, Hon. Paul I. Marx, J.S.C. No. 1 of 7, PENDENTE LITE DECISION AND ORDER NYSCEF No. 59.

d. Peter Kijewski will retain his December 9, 2015, $7,000 credit award.

710. June 19, 2015, no-fault Action for a Divorce NYSCEF No. 1 & 2 could have been resolved promptly in the event:

a. All Defendants complied with: "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)."

b. All parties complied with September 2, 2016, Hon. John P. Colangelo Judgment of Divorce NYSCEF No. 107, considering September 2, 2016, Ms. Dunn wrote and filed Judgment of Divorce NYSCEF No. 102.

c. October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Ms. Dunn & Mr. Senter" NYSCEF No. 348 reveals Plan Administrator, MSKCC retirement plans sponsor, discharged her "fiduciary responsibilities prudently and solely in the interest of the plan's participants and beneficiaries" Sonia (43-53), Paul (22-31) and Joseph (16-26).

d. Plan Administrator, MSKCC retirement plans sponsor, showed all parties compliance can be achieved, since TIAA released tax years 2018, 2019, 2020 and 2021 retirement plans and IRA, Peter Kijewski account owner, "Required Minimum Distribution" (RMD) disbursement "hold".

e. Inexplicably, November 5, 2021, Ms. Dunn wrote and filed Injunction/Restraining Order NYSCEF No. 394 (62 pages) and November 9, 2021, Hon. Nancy Quinn Koba, J.S.C. No. 5 of 7, signed

NYSCEF No. 405, following review and analysis of October 26, 2021,

TIAA letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348.

**COUNT VIII: June 25, 2015 – December 11, 2023, Ms. Dunn Fraudulent Scheme**

711. **Fees**: Ms. Dunn e-files recurring NYSCEF Court Applications causing Ms. Kijewski fee payments to Ms. Dunn.

712. **Invoices**: Ms. Dunn includes in NYSCEF Court Applications her Invoices and Process Notes:

a. False claim affirming: "Given Defendant's contemptuous and fraudulent conduct to date, and the legal fees incurred by Plaintiff as a direct result of Defendant's actions, it is respectfully submitted that Defendant should be directed to pay $25,000 toward Plaintiff's counsel fees in this matter."

b. Ms. Dunn prompting Ms. Kijewski to amplify Ms. Dunn's false claims: "A. Well, most of those fees were incurred in an attempt to obtain compliance with the terms of a divorce stipulation and the vast majority of them were made necessary by my ex-husband's bad faith and bad behavior. I went through 2016 and 2017, I went through every month and every item on the bills and I compared that with e-mails and I allocated anything that was not due to bad faith or attempts to obtain compliance from him. And I found that $81.795 in legal fees should not have been necessary."

c. Defendant Peter Kijewski must reimburse Ms. Dunn's client Ms. Kijewski for Ms. Dunn NYSCEF Court Applications filing.

713. **Economic Duress**: Defendant Peter Kijewski financial strangulation:

a. Ms. Dunn letters to TIAA, Vanguard & BNY Pershing demand "Required Minimum Distribution" (RMD) disbursement "hold".

b. Inexplicably, TIAA, Vanguard & BNY Pershing complied with Ms. Dunn Attorney Orders., starting with June 25, 2015, Mr. Cohen AUTOMATIC ORDERS.

714. **Tax Penalties**:

a. TIAA, Vanguard & BNY Pershing recurring "Required Minimum Distribution" (RMD) disbursement "hold" causes "failure to withhold", "failure to pay tax", "failure to follow the tax laws" and "a false or altered document".

b. IRS, Department of the Treasury, views tax penalties in Defendant Peter Kijewski tax returns, while viewing Ms. Dunn clean tax returns.

715. **Forever Fees**: Ms. Dunn always selects Option No. 1:

a. Option No. 1: Ms. Dunn NYSCEF Court <u>Applications</u> e-filing causing fee payments to Ms. Dunn.

b. Option No. 2: Submit to retirement asset custodian TIAA, Vanguard and/or BNY Pershing a just, fair and timely $468,997 Domestic Relations Order (DRO), resulting in a just, fair and timely Settlement and terminating fee payments to Ms. Dunn.

716. **TIAA Discovery**: October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348 reveals TIAA Law & Compliance lawyers assert resuming "Required

Minimum Distribution" (RMD) disbursement supersedes November 5, 2021,

Ms. Dunn Injunction/Restraining Order Court Application No. 13 NYSCEF

No. 394 (62 pages).

717. **Ms. Dunn Opposition**:

a. November 2, 2021, Ms. Dunn wire communication to Mr.

Senter NYSCEF No. 396 falsely affirming Ms. Dunn IRS Internal

Revenue Code empowered authority: "If he does truly want to resolve

these issues, please advise if he will consent to a further restraining

order being imposed on the accounts while we work through the

myriad of issues remaining in an effort to divide the retirement

interests appropriately. If he will consent, I can discuss with my client

a carve out to enable Mr. Kijewski to remove his 2021 RMD to avoid

further penalty, however those funds must first go to pay the

outstanding money judgments and child support owed to my client."

b. November 5, 2021, Ms. Dunn Injunction/Restraining Order

Court Application No. 13 NYSCEF No. 380, causing unprecedented

Ms. Kijewski fee payments to Ms. Dunn, concurrent with potential tax

year 2021 **$93,840** tax penalty.

718. **TIAA Opposition**: EXHIBIT 5 December 16, 2021 - December

27, 2021, TIAA released tax years 2018, 2019, 2020 and 2021 TIAA tax-

deferred 403(b) & 457(b) retirement plans and IRA savings benefits

mandatory $439,826 balloon retirement income disbursement, including in

arears mandatory $150,376 balloon United States Treasury and MA-DOR tax

withholding and tax payments. TIAA also included tax years 2018, 2019,

2020 and 2021 mandatory 457(b) $57,267 "Wages, salaries, tips, etc. Attach

Form(s) W-2".  October 26, 2021, Plan Administrator, MSKCC retirement

plans sponsor, thwarted November 5, 2021, Ms. Maureen A. Dunn

Injunction/Restraining Order NYSCEF No. 394 (62 pages) and prevented tax

year 2021 additional stiff $93,840 RMD 50% penalty.  March 2024 Social

Security income due to tax year 2021 TIAA "Required Minimum

Distribution" (RMD) balloon disbursement: $1.00.

719. **December 11, 2023**: Ms. Dunn understands permanent Rising

Stars Injunction/Restraining Order personal benefits "to protect the

livelihoods of lawyers":

**Fwd: Kijewski**
AK
Alyson Kuritzky<AKuritzky@Abramslaw.com>
To:You
Cc:Jill Spielberg

Mon 12/11/2023 11:41 PM

Peter

Please see email below and advise. Your immediate response is appreciated. Thank you.

Alyson
Begin forwarded message:

**From:** Maureen Dunn <mdunn@johnsoncohenlaw.com>
**Date:** December 11, 2023 at 9:01:57 AM EST
**To:** Jill Spielberg <JSpielberg@abramslaw.com>, Alyson Kuritzky
<AKuritzky@abramslaw.com>
**Subject: Kijewski**
Caution: This email originated outside of the organization

Good morning:

I have been advised by TIAA that your client has sought to obtain a distribution from them in the
sum of $25,000, beyond his Required Minimum Distributions which he has already received for
this year (and which total $108,587.17). As you are well aware, the current court order prevents
any distributions other than RMDs from his accounts. His request is a direct violation of the terms
of the current restraining orders. If he obtains this distribution, we will have no choice but to file
an application to hold him in contempt, yet again.

We have requested his updated TIAA account statements to prepare the final QDROs that are
necessary in this matter, and he has failed to produce same.

**Please confirm by close of business tomorrow that he will cancel his requested distribution and will produce his statements year to date so that we can send you a proposed QDRO for your/his review.**

Thank you,
Maureen A. Dunn, Esq.
Partner
Johnson & Cohen, LLP
mdunn@johnsoncohenlaw.com
Phone: (914) 644-7100
Fax: (914) 922-9500
www.johnsoncohenlaw.com

**NOTICE TO RECIPIENT: This email transmission is meant only for the intended recipient of this transmission. This transmission may be a communication privileged by law. If you have received this transmission in error, any review, use, dissemination, distribution, or copying of this email is strictly prohibited. Please notify us by return email of the error and delete this message from your system. Thank you for your cooperation.**



720. EXHIBIT 14 reveals additional ABA information about protecting

the livelihood of lawyers and potential solutions to thwart Ms. Dunn

fraudulent scheme.

## COUNT IX: Immediate Restraining Order Against Ms. Dunn, Mr. Cohen and Ms. Kijewski

721. Immediate Restraining Order against Ms. Dunn, Mr. Cohen and Ms. Kijewski:

a. Ms. Kijewski will be restrained participating in any action against Plaintiff Peter Kijewski and his beneficiaries Sonia Kijewski Poulin, Paul N. Kijewski and Joseph P. Kijewski, who have also been exposed to unprecedented financial asset loss.

b. The entirety of Ms. Kijewski financial assets will be frozen until further Order of the Court.

c. Reasonable living expenses will be provided for Ms. Kijewski, including reasonable legal fees in her role as Defendant of this action.

d. November 13, 2015, Ms. Dunn **MEMORANDUM OF LAW** NYSCEF No. 40 (7 pages) in support of Ms. Kijewski living expenses: "Courts have consistently held that a party should not be placed under economic duress during the pendency of a matrimonial action and should be permitted to continue the standard of living commensurate with that enjoyed prior to the commencement of the action and the marital difficulties."

e. Ms. Dunn and Mr. Cohen will be referred to enforcement actions by IRS, Department of the Treasury, and Department of Labor to impose restrictions on Ms. Dunn and Mr. Cohen activities.

722. Proposed Restraining Order additional justification due to needless IRS Internal Revenue Code and "Employee Retirement Income

Security Act of 1974" (ERISA) false alternative rules and regulations, used

by Ms. Dunn for her NYSCEF Court <u>Applications</u>:

      a. April 10, 2018, Ms. Kijewski **<u>AFFIDAVIT IN REPLY</u>**

NYSCEF No. 193, including an analysis of:

      b. April 10, 2018, Ms. Dunn Plaintiff Peter Kijewski tax year

2016 tax return NYSCEF No. 195, obtained by Ms. Dunn subpoena.

      c. Ms. Dunn gross negligence, omitting redaction due to IRS

highlight warning: "This Product Contains Sensitive Taxpayer Data"

  723. **<u>RMD Tax Penalties</u>**:

      a. Plaintiff Peter Kijewski tax year 2016 tax return analysis

reveals tax year 2016 stiff RMD 50% penalty: **$0.00**!

      b. September 20, 2017, Ms. Dunn wire communication to BNY

Pershing, via Clear Harbor Asset Management, NYSCEF No. 355

reveals Ms. Dunn illegal use of AUTOMATIC ORDERS after

September 2, 2016, Judgement of Divorce NYSCEF No. 107, resulted

in tax year 2017 stiff RMD 50% penalty: **$11,932**.

      c. March 22, 2018, Ms. Dunn letter to TIAA NYSCEF No. 364

and March 22, 2018, Ms. Dunn letter to Vanguard NYSCEF No. 365

caused tax year 2018 stiff RMD 50% penalty: **$57,341**.

  724. <u>Table 26</u> summarizes RMD 50% penalty details.

  725. November 13, 2015, Ms. Dunn **<u>MEMORANDUM OF LAW</u>**

NYSCEF No. 40 (7 pages) reveals the need for **$0.00** RMD 50% penalties,

which would have resulted in Plaintiff Peter Kijewski **$389,960** RMD

disbursements to pay for living expenses, minor support and taxes.

726. **Internal Revenue Code**: Hon. Paul I. Marx, J.S.C. No. 1 of 7, PENDENTE LITE DECISION AND ORDER NYSCEF No. 59 Ms. Dunn, Mr. Cohen & Ms. Kijewski failed to memorialize:

a. "Therefore, the Court awards Plaintiff the sum of $87,055.66 annually or $7,254.64 per month to be paid by Defendant. The award shall be taxable to Plaintiff, as she does not specify any basis for departing from "the norm envisioned by current Internal Revenue Code provisions." *Girgenti v Girgenti,* 81 AD3d 886, 889 [2nd Dept 2011] (quoting *Grumet v Grumet,* 37 AD3d 534, 536 [2nd Dept 2007]); *see also Markopoulos v Markopoulos,* 274 AD2d 457, 459 [2nd Dept 2000]."

b. "***Required Minimum Distribution***"

c. "Plaintiff asks the Court to direct Defendant to distribute 50% of his Required Minimum Distribution to her. Plaintiff explains that Defendant is required to withdraw a certain amount from his retirement accounts each year or he will be charged a 50% penalty. Plaintiff notes that Defendant has already received $2,207.60 from one retirement account. She does not ask for a portion of that distribution. Instead, Plaintiff asks that the remaining distribution of approximately $48,389.49 be divided equally between the parties. Defendant opposes Plaintiff's request, noting that since it is a marital asset, it cannot be distributed until equitable distribution of the entire marital estate occurs."

d. "The Court has considered several factors in awarding interim fees in this case, notably, the lack of complexity of the case, which does not warrant the large award sought by Plaintiff. In addition, the Court's award of temporary maintenance and interim child support changes the financial circumstances of both parties, rendering greater parity. Furthermore, Plaintiff expects to receive close to $25,000 from Defendant's Required Minimum Deduction. Accordingly, the Court awards Plaintiff interim counsel fees in the amount of $5,000, with leave to bring further application, if necessary. Defendant shall pay to Plaintiff's counsel $5,000 within 60 days of the date of this Decision and Order."

727. **Just & Fair RMD Retirement Income**: Ms. Dunn, Mr. Cohen & Ms. Kijewski compliance with Hon. Paul I. Marx, J.S.C. No. 1 of 7, PENDENTE LITE DECISION AND ORDER NYSCEF No. 59 would have protected Plaintiff Peter Kijewski "Required Minimum Distribution" (RMD) disbursements retirement income.

## COUNT X: Additional Cash Payments Payable to Peter Kijewski

728. Commencing with SDNY CM/ECF filing Peter Kijewski COMPLAINT, additional payments to Peter Kijewski will be justified.

729. Peter Kijewski will continue to review and analyze NYSCEF and other documents to be appended to the present COMPLAINT.

730. Peter Kijewski COMPLAINT contents exceed requirements for Notice to DEFENDANTS:

a. **Don't**: Violate IRS, Department of Treasury, Internal Revenue Code, causing stiff "Required Minimum Distribution" (RMD) tax penalties!

b. **Don't**: Violate "Employee Retirement Income Security Act of 1974" (ERISA): Peter Kijewski account owner, 403(b) & 457(b) retirement plans!

c. **Don't**: Violate AUTOMATIC ORDERS "tax-deferred funds in pay status exception" since May 10, 2011!

d. **Don't**: Conceal evidence using statements deletion and document redaction: March 10, 2018, NYSCEF No. 189 & January 2, 2019, NYSCEF No. 283.

e. **Don't**: Subvert Court Orders: Hon. Paul I. Marx, J.S.C. No. 1 of 7, PENDENTE LITE DECISION AND ORDER NYSCEF No. 59!

f. **Don't**: Write more letters "If you have concerns about opposing parties' activities, we suggest that you work with your own counsel to resolve this situation. It is not the role of TIAA to look into

opposing parties' activities" draining TIAA bank, TIAA Portfolio

Advisor IRA and investment accounts that are not theirs!

      g. "**Don't**: Make your child choose between mom and dad"!

      h. **Don't**: Ignore mental illness!

## XXXI. CAUSE OF ACTION: JUST, FAIR & UNTIMELY JURY TRIAL

## COUNT XI: Pain and Suffering $20,000,000 Award - Willful Harming Plaintiff Peter Kijewski

731. Defendants additional collective cash payment to Peter Kijewski: **$20,000,000**.

732. **Potential JURY TRIAL**: Failure to achieve Defendants cash payment to Peter Kijewski, allocating about three (3) months for assignment of payments among Defendants, will result in moving forward with a just, fair and untimely JURY TRIAL.

733. **Defamation**: Paul Cowie, TIAA CFP, Portfolio Advisor WMA, comprehensive review and analysis of NYSCEF documents will indisputably confirm eight (8+) years **defamation** against Peter Kijewski.

734. **Courtroom Confinement**: Two (2) years full-time employment and six (6+) years retirement, Peter Kijewski endured extreme economic duress and requirement to allocate all available time for his defense: Ms. Dunn failed to consider Peter Kijewski was forced self-learning to write this Federal Court COMPLAINT.

735. **Willful Harm**: April 10, 2018, Ms. Kijewski **AFFIDAVIT IN REPLY** NYSCEF No. 193, filed April 11, 2018, by Ms. Dunn:

a. Twenty (20) days after March 22, 2018, Ms. Dunn **3.8** years RMD "hold" letter to TIAA NYSCEF No. 364.

b. Ms. Dunn **5.4** years RMD "hold" letter to Vanguard NYSCEF No. 365.

c. April 10, 2018, NYSCEF No. 193, including an analysis of
Peter Kijewski tax year 2016 subpoenaed tax return NYSCEF No. 195:

i. "2. My application successfully sought an immediate
order restraining Defendant's retirement assets at TIAA-CREF
and Vanguard, based upon information I acquired upon review
of Defendant's TIAA-CREF statements that were finally
produced through his attorneys in early March. I have
subsequently received documents in response to subpoenas that
were served upon TIAA-CREF, Vanguard, and CitiMortgage (in
connection with Defendant's recent mortgage application) which
have shed even more light on Defendant's substantial efforts to
conceal assets and deprive me of my share of marital assets.
There are still, however, numerous issues remaining to be
resolved, not the least of which is the ultimate impact on me of
Defendant's decisions to intentionally and prematurely change
the status of certain of his retirement accounts before any
QDROs could be processed. Until such time as these issues have
been fully explained and resolved, and the QDROs have been
prepared, submitted and processed, the restraining orders
should remain in place."

ii. "9. It is respectfully submitted that, due to Defendant's
actions, the impact of the various account changes (other than
the obvious reductions in value) remains unknown at this time.
Accordingly, the restraining order on these accounts must stay

in effect until the full impact can be determined, ideally by an
Order from this Court directing Defendant in provide an
authorization so that I and my attorney can speak to TIAA
directly and receive complete information on these changes as
well as on any discussions concerning them. Defendant will not
be harmed by extending the restraining order as he received
substantial RMDs in December 2017, he just sold the former
marital residence, and he recently received an inheritance."

736. **Husband Health**: September 8, 2015, Ms. Kijewski
"STATEMENT OF NET WORTH" NYSCEF No. 16 (19 pages): "(q) Husband's
health … good except neuropathy".

737. **Husband Health**: October 22, 2015, Plaintiff Peter Kijewski
"STATEMENT OF NET WORTH" NYSCEF No. 21 (36 pages): "(r) Husband's
Health ● Chronic pain ● Inability to perform some activities of daily living
● Deteriorating hearing".

738. **Adverse Sequelae**: January 2, 2019, Peter K. Kijewski Letter to
Special Referee Family Law Attorney White Plains | Josephine Trovini
Court Application No. 9 NYSCEF No. 373 (81 pages) confirms Peter Kijewski
inability to transfer his Klonopin prescription from NY to MA, causing June
9, 2018, horrific adverse outcome.  All Peter Kijewski medical records will be
publicly available.

739. **Klonopin**: Peter Kijewski required prescription Klonopin,
Radiology diagnostic evaluation and some intervention procedures:

Comprehensive medical records available, provided without any restrictions for public distribution.

740. **Age**: Peter Kijewski, age eighty-four (84): [Home - Elder Justice | NYCOURTS.GOV](Home - Elder Justice | NYCOURTS.GOV).

741. **Physical Violence** against Peter Kijewski in the martial home known to attorneys:

a. June 15, 2015, Mr. Cohen and Ms. Kijewski Conference agenda items NYSCEF No. 356, conducted in secrecy.

b. June 30, 2015, Peter Kijewski, pro se, wire communication to Lauren Bokor, Esq. Mediator NYSCEF No. 357.

c. December 2, 2015, Ms. Kijewski **AFFIDAVIT IN REPLY** NYSCEF No. 48 about denied 911 calls.

d. March 23, 2016, Ms. Dahan wire communication to Peter Kijewski NYSCEF No. 448, including attachments.

742. **Continuing Legal Education**: Attorney understanding of IRS Internal Revenue Code and "Employe Retirement Income Security Act of 1974" (ERISA) about mandatory "Required Minimum Distribution" (RMD) disbursements and prompt submission of Domestic Relations Orders (DRO) to retirement asset custodians confirms November 13, 2015, Ms. Dunn Memorandum of Law NYSCEF No. 40:

a. "Courts have consistently held that a party should not be placed under economic duress during the pendency of a matrimonial action and should be permitted to continue the standard of living

commensurate with that enjoyed prior to the commencement of the action and the marital difficulties."

      b. "See, O'Shea v. O'Shea, 93 NY.2d 187; 689 N.Y.S.2d 8 (1999) **["The Courts are to see to it that the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant's wallet"]** [emphasis added] (by Ms. Dunn)."

743. EXHIBIT 27 Information Ms. Kijewski failed to disclose, also exposed June 15, 2015, Mr. Cohen and Ms. Kijewski Conference agenda items NYSCEF No. 356.

## COUNT XII: Failure to Achieve a Satisfactory Settlement Commensurate with Peter Kijewski Needless Unprecedented Pain and Suffering, and Persistent Economic Duress

744. **DEATH**: August 7, 2019, Transcript NYSCEF No. 306 (37 pages):

"THE COURT": Special Referee Josephine Trovini.

"Q": Ms. Dunn "intransigent, untrustworthy opposing counsel".

"A": Ms. Kijewski "personality disordered opposing party" revealed viewing

June 15, 2015, conference agenda items NYSCEF No. 356.

          Q. And what, if anything, did you do
when you learned that Peter had reduced the
death benefit?

          A. I believe that we asked him through his
attorneys to increase it and we eventually filed a
motion.

          A. And do you know as of today whether he
has increased that death benefit?

          Q. As far as I know, he has not.

          Q. And what are you seeking from this
Court with respect to the life insurance?

          A. I'm not seeking anything in particular
because I believe if he were to die I would have
a claim on his estate for all the money he owes
me.

          Q. Are you asking this Court to issue an
order to reinstate the death benefit to the
$450,000 that's required under the stipulation?

          A. Yes, I am.

745. **PENALTY**: November 2, 2021, Ms. Dunn "carve out" wire communication to Mr. Senter NSYCEF No. 396 about "his 2021 RMD to avoid further" tax year 2021 stiff **<span style="color:red">$93,840</span>** RMD 50% penalty: "If he does truly want to resolve these issues, please advise if he will consent to a further restraining order being imposed on the accounts while we work through the myriad of issues remaining in an effort to divide the retirement interests appropriately. If he will consent, I can discuss with my client a carve out to enable Mr. Kijewski to remove his 2021 RMD to avoid further penalty, however those funds must first go to pay the outstanding money judgments and child support owed to my client."

746. **DEATH & RMD PENALTY**: January 2, 2019, Plaintiff Peter Kijewski RMD pleadings letter to Special Referee Josephine Trovini Court <u>Application</u> No. 9 NYSCEF No. 373 (81 pages).

747. **RMD PENALTY Response**: February 20, 2019, Special Referee Josephine Trovini **REPORT AND RECOMMENTATION** Seq. No. 9 NYSCEF No. 272:

> a. "This matter was assigned to the undersigned Special Referee to hear and report pursuant to the standing orders of the Hon. Alan D. Scheinkman, JSC dated September 5, 2017 and December 13, 2017. The following constitutes the report and recommendation of the undersigned referee."

> b. "Defendant submitted a flash drive and a response to "Motion Sequence #9" on January 2, 2019. In his response, Defendant stated that "I am **not** self-representing and I am **not** a lawyer"; yet, he

provided what appeared to be, a copy of the invoice which was color-coded to indicate his purported opposition to the amount of the fees sought. Recognizing that Dr. Peter Kijewski is a pro se litigant, and may be given some latitude due to his lack of formal legal training and unfamiliarity with court procedures, the Court shall deem Defendant's submission as opposition to the motion."

    c. "Here, the undersigned referee recommends that the branch of the motion to fix the counsel fees in the amount of $17,547.16 be denied without prejudice, with leave to renew, upon proof of service of the Notice of Client's Right to Arbitrate."

March 12, 2025        Respectfully submitted,

                      /s/ Peter Kijewski
                      Peter K. Kijewski, PhD
                      23 Shipyard Drive #307
                      Hingham MA, 02043
                      (914) 281-4893
                      pkijewski@outlook.com

# XXXII. EXHIBITS, Tables and Visuals Indices

## A. EXHIBITS Index

| # | Bookmark | EXHIBIT Title |
|---|---|---|
| 1 | EXHIBIT 1 | October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, Letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348 |
| 2 | EXHIBIT 2 | June 22, 2022, Ms. Perry, TIAA Law & Compliance Liaison, Letter to "Dear Dr. Kijewski" |
| 3 | EXHIBIT 3 | Jul 6, 2015, Ms. Angela Shaw, TIAA QDRO Relationship Manager, Letter to "Dear Attorney Cohen" NYSCEF No. 358 |
| 4 | EXHIBIT 4 | July 6, 2015, Peter Kijewski Proposed, Effective TIAA Alternative Letter |
| 5 | EXHIBIT 5 | October 13, 2023, EMPLOYEE BENEFITS SECURITY ADMINISTRATION Letter to "Dear Mr. Kijewski", Including Enclosures |
| 5 | EXHIBIT 5 | Enclosed September 26, 2023, Ms. Perry, TIAA Law & Compliance Liaison, letter to Ms. Christine Pesaturo, MSKCC Plan Administrator, Plaintiff Peter Kijewski sponsor 403(b) & 457(b) retirement plans |
| 5 | EXHIBIT 5 | Enclosed MSKCC Retirement Savings Plan (RSP) Summary Plan Description, MSK BENEFITS DEPARTMENT |
| 6 | EXHIBIT 6 | June 12, 2024, EBSA File No. 202430-11820 |
| 7 | EXHIBIT 7 | December 1, 2023, Ms. Perry, TIAA Law & Compliance Liaison, Letter to "Dear Ms. Dunn", Enclosure |
| 7 | EXHIBIT 7 | Enclosed October 18, 2022, Ms. Perry, TIAA Law & Compliance Liaison, Letter to "Dear Ms. Dunn" |
| 8 | EXHIBIT 8 | April 5, 2018, Miles Gilpin, Legal Analyst, Vanguard Legal Department, Subpoena Response to "Dear Ms. Dunn", Enclosures |
| 9 | EXHIBIT 9 | April 9, 2018, Ms. Lynda Roseboro, Legal Analyst, Vanguard Legal Department, Letter to "Dear Mr. Kijewski" NYSCEF No. 367, Enclosure |
| 10 | EXHIBIT 10 | November 23, 2015, Ms. Woolston Wire Communication to "Hello Peter", Reply from BNY Pershing Legal Group NYSCEF No. 418 |
| 11 | EXHIBIT 11 | April 12, 2016, Ms. Dunn Letter to "Dear Ms. Dahan" |
| 12 | EXHIBIT 12 | December 7, 2016, Ms. Woolston Wire Communication to "Hello Maureen, Jessica, Peter and Marie" NYSCEF No. 362 |
| 13 | EXHIBIT 13 | Contact Information |
| 14 | EXHIBIT 14 | February 1, 2020, Ms. Judy Perry Martinez, ABA Journal President's Letter - We must not squander the future of legal services |
| 15 | EXHIBIT 15 | October 31, 2021 - November 28, 2021, Peter Kijewski NYSCEF Filing |
| 16 | EXHIBIT 16 | February 19, 2025, TIAA Wire Communication - Modern Retirement Scams |
| 17 | EXHIBIT 17 | October 5, 2021 Immediate Unconditional Removal of all "Temporary" Restraining Orders Freezing Retirement Accounts – Letter |
| 18 | EXHIBIT 18 | October 5, 2021 Immediate Unconditional Removal of all "Temporary" Restraining Orders Freezing Retirement Accounts |
| 19 | EXHIBIT 19 | June 12, 2024 Letter to U.S. Government Officials -Tracking TIAA, Vanguard and BNY Mellon Pershing Serial Enforcement $0.00 RMDs vs. June 25, 2015, $493,192 DRO |
| 20 | EXHIBIT 20 | December 4, 2024, Letter to Jill F. Spielberg - NYSCEF Document Redaction |
| 21 | EXHIBIT 21 | January 12, 2025, NYS Electronic Filing System - Peter Kijewski Comments |
| 22 | EXHIBIT 22 | July 31, 2023, TIAA Client Relationship Summary |
| 23 | EXHIBIT 23 | June 25, 2015, Mr. Cohen AUTOMATIC ORDERS Letter to Vanguard, via FAX "06 27 2015 300" |
| 24 | EXHIBIT 24 | February 22, 2016, Ms. Dunn Discovery Deficiency Letter to "Dear Ms. Dahan" |
| 25 | EXHIBIT 25 | March 14, 2018, Ms. Kijewski AFFIDAVIT IN SUPPORT |
| 26 | EXHIBIT 26 | March 14, 2018, Ms. Dunn AFFIRMATION IN SUPPORT |
| 27 | EXHIBIT 27 | Mary Kentros, MD & Priscilla Fishler, PhD |
| 28 | EXHIBIT 28 | June 12, 2024 - Tracking Ms. Dunn October 20, 2016, $468,997 IRA DRO to December 11, 2023, $1,027,035.27 IRA DRO "Investment Experience" Financial Plan - Analysis |
| 29 | EXHIBIT 29 | Attorney Compliance - Internal Revenue Code, Internal Revenue Service, and "Employee Retirement Income Security Act of 1974" (ERISA) |

# B. Tables Index

| # | Bookmark | Table Title |
|---|---|---|
| 1 | Table 1 | Vanguard Annual RMD Letters |
| 2 | Table 2 | Attorney AUTOMATIC ORDERS Invoices and Process Notes |
| 3 | Table 3 | Attorney Exorbitant Process Notes and Invoices |
| 4 | Table 4 | NYS WebCivil Supreme Application No 14 Appearance Information |
| 5 | Table 5 | Attorney Failure to Follow the Tax Laws |
| 6 | Table 6 | June 19, 2015, $493,192 Domestic Relations Order (DRO) Processing Benefits |
| 7 | Table 7 | Ms. Dunn Preparing Potential Domestic Relations Order (DRO) |
| 8 | Table 8 | November 5, 2021, Ms. Dunn E-Filing RMD Restraining Order |
| 9 | Table 9 | TIAA Confirmation March 6, 2018 - December 16, 2021, RMD Disbursements "Hold" |
| 10 | Table 10 | June 25, 2015, Mr. Cohen TIAA, Vanguard & BNY Pershing RMD "Hold" |
| 11 | Table 11 | Tax Year 2015, BNY Pershing $48,389.49 Blocked RMD |
| 12 | Table 12 | September 20, 2017, Ms. Dunn Terminated June 2015, RMD "Hold" |
| 13 | Table 13 | Actuary Robert Guarnera $468,997/$493,192 Domestic Relations Order (DRO) Calculation |
| 14 | Table 14 | June 24, 2015, Mr. Cohen Review Retirement Benefits Financial Account Listing |
| 15 | Table 15 | March 31, 2015, TIAA Quarterly Retirement Portfolio Statement |
| 16 | Table 16 | July 13, 2015, Mr. Cohen Review TIAA & BNY Pershing RMD "Hold" Letters |
| 17 | Table 17 | July 26, 2016, Stipulation of Settlement Contract Process Notes |
| 18 | Table 18 | NYS Supreme Court Applications No. 1, 2 & 3 |
| 19 | Table 19 | April 29, 2016, Ms. Dunn Application No. 2 Award Sought |
| 20 | Table 20 | June 15, 2015 - July 13, 2013, Mr. Cohen & Ms. Kijewski Achievement RMD Disbursement "Hold" |
| 21 | Table 21 | Plaintiff Peter Kijewski TIAA, Vanguard & BNY Pershing Retirement Account Owner Financial Asset Loss |
| 22 | Table 22 | June 24, 2015, Mr. Cohen Review Financial Account Listing for RMD "Hold" Letters |
| 23 | Table 23 | Tax Year 2018 "Required Minimum Distribution" (RMD) $57,341 50% Penalty |
| 24 | Table 24 | Tax Years 2011 - 2023 Federal Tax Returns Expose Deficient RMD Disbursements |
| 25 | Table 25 | June 25, 2015, Mr. Cohen AUTOMATIC ORDERS Economic Duress E-Filings |
| 26 | Table 26 | "Required Minimum Distribution" (RMD) 50% Penalties |
| 27 | Table 27 | June 30, 2015 & December 31, 2017, TIAA Quarterly Retirement Portfolio Statements |
| 28 | Table 28 | November 13, 2018, Ms. Dunn False "Investment Experience" Claim |
| 29 | Table 29 | March 8, 2023, Ms. Dunn Money Judgment |
| 30 | Table 30 | TIAA & Vanguard IRA Assignment to Ms. Kijewski |
| 31 | Table 31 | December 8, 2016, Actuary Robert Guarnera and January 19, 2023, Kijewski Retirement Assets Comparison |
| 32 | Table 32 | May 15, 2023, Vanguard IRA & August 22, 2023, TIAA IRA Assignment to Ms. Kijewski |
| 33 | Table 33 | Lincoln Financial RMD WITHDRAWAL OF INCOME |
| 34 | Table 34 | March 5, 2018, Final TIAA "Required Minimum Distribution" (RMD) Disbursement |
| 35 | Table 35 | January 22, 2018, Lost and Reissued RMD Check |
| 36 | Table 36 | December 31, 2018, Paul Cowie, TIAA CFP, Portfolio Advisor WMA, Quarterly Performance Report |
| 37 | Table 37 | September 2018 Attorney Wire Communication Various Process Notes |
| 38 | Table 38 | March 31, 2015 & August 11, 2018, TIAA Quarterly Retirement Portfolio Statements |
| 39 | Table 39 | October 13, 2021, Ms. Kijewski Vanguard IRA "Investment Experience" Calculations |
| 40 | Table 40 | March 31, 2015 & October 26, 2021, TIAA Quarterly Retirement Portfolio Statements |
| 41 | Table 41 | November 2021 Ms. Dunn & Mr. Senter Process Notes and Invoices About Continuing RMD Restraining Order |
| 42 | Table 42 | March 8, 2023, Ms. Dunn Money Judgment Causing Peter Kijewski Deficit |
| 43 | Table 43 | December 31, 2022, Vanguard IRA 50% RMD Penalty |
| 44 | Table 44 | Tax Year 2016 Application No. 2 Process Notes and Invoices |
| 45 | Table 45 | Tax Year 2016 Citibank Account Statement Analysis |
| 46 | Table 46 | May 25, 2016, Court Appearance Process Notes and Invoices |
| 47 | Table 47 | June 28, 2016, Minor (17) Add-On Expense Share |
| 48 | Table 48 | Tax Year 2016, Settlement Proposals |
| 49 | Table 49 | TIAA Quarterly Retirement Portfolio Statement |
| 50 | Table 50 | November 8, 2016 - May 15, 2023, Vanguard "Required Minimum Distribution" (RMD) Disbursements "Hold" |
| 51 | Table 51 | Cash Award Calculation due to Financial Asset Loss |

| 52 | Table 52 | TIAA PORTFOLIO ADVISOR Program A57-666850 Investment Account Flushing Cash into Bottomless Pit |
| 53 | Table 53 | Payroll Compensation Calculation |
| 54 | Table 54 | Plaintiff Peter Kijewski Time & Effort Compensation: Federal Law Compliance Enforcement |

## C. Visuals Index

| \# | Bookmark | Visual Title |
|---|---|---|
| | **Visuals Index** | |
| 1 | Visual 1 | June 12, 2015, Ms. Kijewski $25,500 Payroll Money Transfer to her Private Personal Chase Account |
| 2 | Visual 2 | June 12, 2015, $25,010 Ms. Kijewski Payroll Money Countercheck |
| 3 | Visual 3 | Tracking TIAA, Vanguard & BNY Pershing RMD "Hold" |

## XXXIII. EXHIBITS

748. Selected EXHIBITS are appended to COMPLAINT.

749. All EXHIBITS will be filed separately together with the COMPLAINT.

750. Plaintiff Peter Kijewski has written numerous review and analysis documents.  These analysis documents will be updated and e-filed as SDNY CM/ECF EXHIBITS at a later time.

751. Flash Drive contents:

a. Folder Bank Statements: Inactive bank statements.

b. Folder Documents: Relevant documents which have not been NYSCEF e-filed.

c. Folder EXHIBITS: EXHIBIT documents No. 1 - 28.

d. Folder NYSCEF: Downloaded NYSCEF documents No. 1 - 553.

e. Folder TIAA CFP: Inactive retirement account statements.

f. Folder US Tax Returns: Tax years 2011 – 2023 Federal tax returns.

g. SDNY download, data entry and signed: February 25, 2025, Plaintiff Peter Kijewski, United States District Court, Southern District of New York, COMPLAINT.pdf

h. 20250225 February 25, 2025, Peter Kijewski Letter to Court Intake Unit.pdf

i. NYSCEF Index.xlsx: Information about NYSCEF documents.

**EXHIBIT 1 October 26, 2021, Ms. Perry, TIAA Law & Compliance Liaison, Letter to "Dear Ms. Dunn & Mr. Senter" NYSCEF No. 348**



Elizabeth Perry
Sr. Customer Resolution Manager
Customer Care Team
**T** 800 842-2733 Ext 242873
**F** 800 914 -8922
eperry@tiaa.org

October 26, 2021

Johnson & Cohen, LLP
Attorneys at Law
Attn: Maureen A. Dunn
701 Westchester Ave., Suite 208W
White Plains, NY 10604

Greenbaum, Rowe, Smith & Davis LLP
Attn: Thomas C. Senter
99 Wood Avenue South
Iselin, NJ 08830

RE: Dr. Kijewski's TIAA Retirement Accounts held in:

      Brigham and Women's Hospital Professional Staff Retirement Plan
      New England Deaconess Hospital Discontinued
      Retirement Income Plan for Teaching Faculty of Harvard University
      MSKCC Retirement Savings Plan (RSP) Base Plus Match Plan
      MSKCC Retirement Savings Plan (RSP) Voluntary Plan
      MSKCC Key Employee Supplemental Savings Plan
      IRA FBO Peter K Kijewski

Dear Ms. Dunn & Mr. Senter:

TIAA has received multiple communications relating to a potential qualified domestic relations order (DRO) involving the subject retirement plan accounts record kept by TIAA. Pursuant to those communications, TIAA has maintained a disbursement hold on Dr. Kijewski's accounts since 2018, pending the receipt of a domestic relations order (DRO). However, TIAA has never received a DRO in this matter.

Because TIAA has not received a DRO, we will release the disbursement hold on Dr. Kijewski's accounts if TIAA does not receive a DRO within 30 days of the date of this letter.

Please feel free to contact me directly if you have any questions or concerns regarding this matter. I can be reached weekdays at **800-842-2733, ext. 242873** or via email at eperry@tiaa.org.

Sincerely,

Elizabeth J. Perry
Sr. Customer Resolution Manager
cc: Peter K. Kijewski

_____

**EXHIBIT 2** <u>June 22, 2022, Ms. Perry, TIAA Law & Compliance Liaison,</u>
<u>Letter to "Dear Dr. Kijewski"</u>



**Elizabeth Perry**
Sr. Customer Resolution
Manager
Customer Care Team
**T** 800 842-2733 Ext 242873
**F** 800 914 -8922
eperry@tiaa.org

June 22, 2022

Peter K. Kijewski
23 Shipyard Dr. Apt. 307
Hingham, MA 0204

RE: SR# 1-24449477103

Dear Dr. Kijewski:

This letter is a follow-up to your May 9 communications to Stacy Caraccio and Paul Cowie about Paul's fiduciary responsibilities regarding your TIAA accounts. You have also expressed concern that the balances in your accounts has decreased.

We recognize that you have been unhappy with your interactions with TIAA as they relate to our record keeping of your accounts that have been the subject of certain domestic relations proceedings. As this issue has been the subject of substantial past correspondence, this letter will address new issues that you have raised and only summarize issues that have been the subject of past communications.

### Fiduciary Responsibilities

TIAA has completed a thorough review of Paul Cowie's interactions with you and your accounts. Our review indicates that Paul has met all regulatory requirements applicable to TIAA and to Paul as your assigned Wealth Management Advisor.

### Qualified Domestic Relations Order (QDRO) and Required Minimum Distribution (RMD)

On July 1, 2015, April 18, 2017 and March 22, 2018, TIAA received an order to restrain withdrawals, transfers, and prevent any status changes of your retirement plan accounts until the necessary QDRO had been executed, processed, and funds distributed to the plaintiff. As a result of these orders, TIAA placed a restriction on your retirement accounts.

TIAA is the record keeper for the employer-sponsored retirement plans in which you participate. In November 2021, TIAA took direction from those plans to pay your 2018, 2019, and 2021 RMDs as well as the 2018 – 2021 fixed period annuity payments. The Internal Revenue Service (IRS) waived the requirement of the 2020 RMD, therefore TIAA did not issue RMD payments for the 2020 tax year.

In relation to your concerns about the IRS penalty for delayed RMD, The IRS may waive part or all of additional taxes due if you can show that any shortfall in the amount of distributions was due to reasonable error and you are taking reasonable steps to remedy the shortfall. Please refer to IRS Form 5329 and its instructions providing IRS guidance regarding the attachment of a statement of explanation to your Form 5329.

You have repeatedly expressed concerns about the activities of the opposing party and her counsel in your domestic relations proceedings. We strongly encourage you to work with your own counsel to resolve this situation. As plan record keeper, TIAA has no role in investigating the activities of either party.

**Account Fluctuation**

In December 2021, at the direction from your retirement plans, TIAA issued your 2018, 2019, and 2021 RMDs, as well as the 2018 – 2021 fixed period annuity payments. In addition, the 2018, 2019, and 2021 RMD payments were issued from your Portfolio Advisor (PA) Individual Retirement Account (IRA). These distributions totaled $439,826.37 and caused a corresponding decrease in the balance of your accounts. It's also important to note that financial markets do fluctuate and in some years can be quite volatile. If you are concerned how market volatility will affect your retirement investments, we suggest that you speak to your advisory team. They can provide assistance towards meeting your financial goals.

Please feel free to contact me directly if you have any questions or concerns regarding this matter. I can be reached weekdays at **800-842-2733, ext. 242873** or via email at eperry@tiaa.org.

Sincerely,

Elizabeth J. Perry
Sr. Customer Resolution Manager

cc: Paul Cowie, Wealth Management Advisor
Stacy Caraccio, Senior Director, Client Relationships

**EXHIBIT 3 Jul 6, 2015, Ms. Angela Shaw, TIAA QDRO Relationship Manager, Letter to "Dear Attorney Cohen" NYSCEF No. 358**



Financial Services

Angela Shaw
QDRO Relationship Manager, Customer Solutions Group
TIAA-CREF Individual & Institutional Services, LLC,
Member FINRA/SIPC
Phone: (877) 535-3910, ext. 22-2236
Fax: (800) 914-8922

July 6, 2015

Johnson & Cohen, LLP
Attorneys at Law
Attn: Mitchell Y. Cohen
701 Westchester Avenue
Suite 208W
White Plains, NY 10604

Re: TIAA-CREF Annuities of Peter Kijewski (Task ID t150701e3os)

Dear Attorney Cohen:

This letter is in response to a Notice of Entry of Automatic Orders received on July 1, 2015 pertaining to Mr. Kijewski's TIAA-CREF annuity contracts.

Our records have been updated with this information; however, we cannot be held responsible for any transactions that may have occurred prior to the processing of this order.

TIAA-CREF cannot be held responsible for any transaction executed by the Participant, such as cash withdrawals, transfers, and/or a conversion from a Deferred Annuity contract to an Immediate Annuity contract prior to receipt of a valid QDRO. If there have been account withdrawals or transfers, there may be insufficient funds to meet the terms of the Order. We will implement the Order to the extent of the funds remaining in the contract affected.

I am the divorce case manager concerning the division of your TIAA-CREF annuities. For future inquiries or requests regarding this matter, you may reach me from 9:30 AM to 6:30 PM (ET) at (877) 535-3910, ext. 222236. For all other inquiries regarding TIAA-CREF products and services, please call our National Contact Center at (800) 842-2776.

Page 2

Our consultants are available Monday through Friday from 8:00 AM to 10:00
PM and Saturdays from 9:00 AM to 6:00 PM (ET).

Sincerely,

*Angela Shaw*

Angela Shaw
QDRO Relationship Manager, Customer Solutions Group


cc: Peter Kijewski w/ copy of order

**EXHIBIT 4 <u>July 6, 2015, Peter Kijewski Proposed, Effective TIAA Alternative Letter</u>**

July 6, 2015, Peter Kijewski comprehensive effective letter to Ms. Dunn and Mr. Cohen, replacing pathetic ineffectual July 6, 2015, TIAA letter NYSCEF No. 358:



J. Christian Annalora
Senior Director
Associate General Counsel | Law & Compliance
TIAA
730 Third Ave | 12th Floor
New York, NY 10017-3206
Tel. 212.916.5121
cannalora@tiaa.org
www.tiaa.org

July 6, 2015

Johnson & Cohen, LLP
Attorneys at Law
Attn: Mitchell Y. Cohen & Maureen A. Dunn
701 Westchester Avenue
Suite 208W
White Plains, NY 10604
Re: TIAA-CREF Annuities of Peter Kijewski (Task ID t150701e3os)

Dear Ms. Dunn & Mr. Cohen,

I'm an attorney at TIAA, and I am reaching out to you concerning your June 25, 2015, letter, received July 1, 2015, 7:30, via FAX (enclosed). You asked us to perform certain transactions on Peter Kijewski's behalf that we are <u>unable</u> to perform.

Peter Kijewski has been our client since September 1, 1975. Peter Kijewski, account <u>owner</u>, will have unlimited access to his 403(b) & 457(b) retirement plans and IRAs to pay for living expenses, minor (16) support and taxes. If you wish to proceed, further action by your law firm will be required.

TIAA is obligated to comply: "While the division of marital property generally is governed by state domestic relations law, any assignments of retirement interests must also comply with Federal law, namely the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1986 (the Code)."

TIAA is obligated to comply with AUTOMATIC ORDERS "tax deferred funds in pay status exception", which permits Peter Kijewski receipt of his "Required Minimum Distribution" (RMD) disbursements retirement income since May 10, 2011.

TIAA will not initiate any enforcement actions resulting in "Required Minimum Distribution" (RMD) disbursement "==hold==" due to IRS Internal Revenue Code RMD 50% ==penalties==. Retirement asset custodian TIAA will

immediately implement automatic quarterly scheduled "Required Minimum Distribution" (RMD) disbursements.  On behalf of account <u>owner</u> Peter Kijewski, we will withhold mandatory Federal & State taxes.  Net RMD disbursements will be deposited in Peter Kijewski separate bank account.  Our client Peter Kijewski will work with his tax accountant for assurance of mandatory quarterly estimated Federal & State tax payments.

To date Peter Kijewski has never authorized release of March 31, 2015, TIAA-CREF Quarterly Retirement Portfolio Statement in your possession.  Please, shred and discard the TIAA statement, Peter Kijewski account <u>owner</u>.  You are prohibited to act using March 31, 2015, TIAA statement.

Following Peter Kijewski authorization, please use the TIAA statement we will provide to submit a just, fair and timely **$493,192** Domestic Relations Order.  TIAA will successfully assign **$493,192** retirement assets, account <u>owner</u> Peter Kijewski, to your client Ms. Kijewski, account <u>owner</u> **$493,192** retirement assets.

TIAA Portfolio Advisor account transactions are processed by BNY Pershing, revealing important compliance requirements in January 2011 BNY Pershing IRA statement:

**"Disclaimers and Other Important Information Regarding Your Required Minimum Distribution Summary**

According to our records, you are required under federal tax law to take an annual minimum distribution from your retirement account. These required minimum distributions (RMDs) usually begin in the year you reach the age of <mark>70 1/2</mark>. Failure to take the RMD when required may result in a 50% excise tax imposed on the amount you did not take.

You are allowed to take your RMD in cash or securities. For a distribution to be made, sufficient cash or securities must be available in your retirement account when we receive your distribution request and for subsequent distributions. If you changed your beneficiary after January 1 of this year and your new or prior beneficiary is your spouse who is more than ten years younger than you, you may need to recalculate the RMD amount stated above.

If you have more than one traditional individual retirement account (IRA), including SEP and SIMPLE IRAs, the RMD for these accounts can be aggregated and removed from a single traditional IRA. This exception does not apply to multiple qualified retirement plans (QRPs) such as profit sharing, money purchase pension, 401(k), and defined benefit plans. RMDs for QRPs must be <u>removed from each QRP account</u>.

**NOTE:** Any outstanding rollovers or recharacterizations that were not in your account on December 31 of the prior year should be added to your year-end fair market value for the previous year to calculate your RMD for the current year. Also, when taking your RMD, please consider any <mark>scheduled distribution amounts</mark> you have established which may allow you to automatically meet all or part of your RMD. Please contact us if you are interested in establishing instructions.

Using the information in our files, your RMD was determined by dividing your fair market value by a calculation factor determined by the Internal Revenue Service (IRS). The factor is based on your age at the end of the year and the age and relationship of your beneficiary(ies). We strongly suggest that you verify this calculation with your ==tax professional==, as there may be other pertinent information that could impact your RMD amount. To withdraw your RMD, contact your ==investment professional== for the appropriate withdrawal form."

**Bookmark: "Portfolio Holdings"** "Securities acquired before 2011 are generally not subject to the new cost basis reporting rules set forth in the Internal Revenue Code of 1986, as amended ("IRC") (incorporating amendments enacted by P.L.110-343, the Emergency Economic Stabilization Act of 2008) and are, therefore, considered "uncovered" under the new cost basis reporting rules, and marked or denoted as such. All other securities in this section are securities which are "covered" under the new cost basis reporting rules. Securities which are "covered" under the new cost basis reporting rules are defined as securities which have been acquired on or after their "applicable date(s)" at which they are subject to the cost basis reporting rules and the adjusted basis will be reported to the IRS on form 1099-B for the applicable tax year in which the security is disposed …

Reinvestment - The dollar amount of Mutual Fund distributions, Money Market Fund dividend income, Bank Deposit interest income, or dividends for other securities shown on your Statement may have been reinvested. You will not receive confirmation of these reinvestments. However, information pertaining to these transactions which would otherwise appear on confirmations, including the time of execution and the name of the person from whom your security was purchased, will be furnished to you upon written request to your introducing firm. In dividend reinvestment transactions, Pershing acts as your agent and receives payment for order flow, the source and nature of which payment will be furnished to you upon written request to your introducing firm."

Please consider this as Notice to you that these IRS Internal Revenue Code restrictions are in place and be guided accordingly.

Keep in mind these simple **regulatory requirements**:

1. Ms. Kijewski, owner of her retirement plans and IRAs.

2. Mr. Kijewski, owner of his retirement plans and IRAs.

3. June 19, 2015, Attorney/Firm for Plaintiff submission of a just, fair & timely $493,192 Domestic Relations Order (DRO) to TIAA, Vanguard and/or BNY Pershing may result in assignment of $493,192 retirement assets, account owner Peter Kijewski, to Ms. Kijewski, account owner $493,192 retirement assets.

4. Carlyn D'Agostino, Esq. provides $493,192 Domestic Relations Order (DRO) calculations, using Peter Kijewski retirement plans and IRA statements in the possession of Attorney/Firm for Plaintiff.

5. Ms. Kijewski, <u>owner</u> $84,420 tax-free Roth IRA, promptly approves Equitable Distribution Roth IRA share assignment to Mr. Kijewski.

6. Attorneys may include "Required Minimum Distribution" (RMD) disbursements retirement income when calculating minor (16) support payments until June 30, 2017, including reduction due to Ms. Kijewski minor (16) Supplemental Security Income (SSI).

7. Attorney/Firm for Plaintiff understand IRA "tax-deferred funds in pay status exception" since May 10, 2011.

8. The Internal Revenue Code protects RMD retirement income, starting May 10, 2011: "Retirement plan <u>participants</u> and IRA <u>owners</u>, including <u>owners</u> of SEP IRAs and SIMPLE IRAs, are responsible for taking the correct amount of RMDs on time, every year from their accounts, and they may face stiff penalties for failure to take RMDs."

9. Justice of the Supreme Court will require:

   a. "ORDERED AND ADJUDGED that equitable distribution shall be as set forth in the parties' Stipulation of Settlement."

   b. "ORDERED AND ADJUDGED that pursuant to the Stipulation of Settlement, a separate Qualified Domestic Relations Order shall be issued simultaneously herewith or as soon as practicable."

**Additional issues for your immediate attention**

***Alternative Dispute Resolution***: "In case of your failure to appear, judgment will be taken against you by default for the relief demanded in the notice forth below": You need to immediately correct your <u>false</u> statement and notify Peter Kijewski about his rights and NYS Cout recommended Alternative Dispute Resolution guidance.

***Minor (16)***: "Joseph Kijewski, born on September 29, 1998": You may include Required Minimum Distribution" (RMD) disbursement when calculating minor (16) support payments.  IRS Internal Revenue Code prohibits any actions interfering with RMD disbursements.

***NYS Law***: "Equitable Distribution of the marital property, ~~including a distributive award to Plaintiff~~"

***Adult***: "Including Paul": Remove issues which do not apply for adults.

TIAA broker fiduciaries will forward comprehensive information about Domestic Relations Order (DRO) and QDROs

ABA concerns have come to our attention, mandating extreme vigilance:

"Lawyers have the privilege of regulating their own profession. With that privilege comes a responsibility to ensure that the rules and regulations of the legal profession serve the public good. The ultimate purpose of regulation is not to protect the livelihoods of lawyers but to advance the administration of justice. Some would suggest that if we don't have justice or public protection as our goal, we potentially put our self-regulation at risk."

You may contact me to discuss the situation.

Thank you,
Chris Annalora

**J. Christian Annalora**
Senior Director, Associate General Counsel | Law & Compliance
**TIAA**
730 Third Avenue | 12th Floor
New York, NY 10017-3206
Tel:  212.916.5121
cannalora@tiaa.org
www.tiaa.org


Cc: Peter Kijewski w/ copy of order
Enclosure(s):
A Sample Model Order**(s);**
**Retirement Accumulations and Domestic Relations Matters Frequently Asked Questions (FAQ );** and
**Approval Guidelines and Procedures for Qualified Domestic Relations Orders** (the "Guidelines").

**EXHIBIT 5 October 13, 2023, EMPLOYEE BENEFITS SECURITY ADMINISTRATION Letter to "Dear Mr. Kijewski", Including Enclosures**

 **EMPLOYEE BENEFITS SECURITY ADMINISTRATION**
U.S. DEPARTMENT OF LABOR

J.F. Kennedy Federal Building
Room 575
Boston, MA 02203
Phone: (617) 565-9600
Fax: (617) 565-9666

October 13, 2023

Peter Kijewski
23 Shipyard Dr., Apt. 307
Hingham, MA 02043
*via e-mail to pkijewski@outlook.com*

RE: Memorial Sloan Kettering Cancer Center Retirement Savings

Plan Dear Mr. Kijewski:

This letter is in response to your communications with the Boston Regional Office of the U.S. Department of Labor, Employee Benefits Security Administration. You contacted us for assistance regarding the Memorial Sloan Kettering Cancer Center Retirement Savings Plan.

Benefits Advisor Sean Cooney contacted the Plan on your behalf and received a response from Daniel Green, Director of Retirement Benefits. According to Ms. Green, the reason your retirement accounts were frozen in 2017 is that that an Order to Show Cause had been signed stating that no withdrawals or transfers were to be made from your retirement accounts. The response from the Plan is attached for your review.

The Department of Labor does not interpret plan documents or determine whether individuals are entitled to benefits. That is the responsibility of the Plan Administrator or other appropriate plan officials. If you believe your rights under the Plan or ERISA have been violated, and you have exhausted the claim and appeal procedures under the Plan, you may want to consult a lawyer or a legal aid organization for further assistance. Under ERISA, the court may, in its discretion, award legal fees and other costs to either party.

We hope this information will be helpful to you. If you have any questions, please contact Mr. Cooney at 617-565-9277.

Sincerely,

Carol S. Hamilton
Regional Director

*/Patricia Richardson/*

By:    Patricia Richardson
       Supervisory Benefits Advisor

Enclosures

The U.S. Department of Labor's Employee Benefits Security Administration (EBSA) administers and enforces Title I of the Employee Retirement Income Security Act. Contact EBSA:

Main site: dol.gov/agencies/ebsa

Toll-free: 1-866-444-3272
TTY: 202-501-3911

# COVINGTON

BEIJING BRUSSELS DUBAI FRANKFURT JOHANNESBURG
LONDON LOS ANGELES NEW YORK PALO ALTO
SAN FRANCISCO SEOUL SHANGHAI WASHINGTON

Robert S. Newman

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5125
rnewman@cov.com

September 28, 2023

Carol S. Hamilton
Regional Director
Employee Benefits Security Administration
J.F. Kennedy Federal Building
15 Sudbury St, Room 575
Boston, MA 02203

Re:    MSKCC Retirement Savings Plan

Dear Ms. Hamilton:

As counsel to Memorial Sloan Kettering Cancer Center ("MSK"), I am writing in connection with your letter, dated September 18, 2023 (the "Letter"), to Daniel Green, Director of Retirement Benefits at MSK, regarding the participation of Peter Kijewski in the MSKCC Retirement Savings Plan (the "Plan") sponsored by MSK. Specifically, your letter requests that MSK provide the following:

- A written explanation as to why Mr. Kijewski's funds were frozen;
- A written explanation as to the status of Mr. Kijewski's Required Minimum Distributions from 2015 to 2021; and
- A copy of the Summary Plan Description.

Below is a brief explanation and history regarding the freezing of Mr. Kijewski's funds and the status of his Required Minimum Distributions ("RMDs") from 2015 to 2021, and attached as Exhibit A is summary of the payments made to Mr. Kijewski from 2015 to 2021.

In 2015, the third party administrator of the Plan, TIAA-CREF ("TIAA"), received a letter from the attorney for Marie Kijewski, the spouse of Mr. Kijewski, that Ms. Kijewski had commenced a divorce proceeding against her husband, and that the court had issued an order prohibiting the parties from withdrawing retirement funds. At the time, Mr. Kijewski remained employed by MSK and no distributions from the Plan were due or requested by Mr. Kijewski.

Mr. Kijewski continued to work for MSK until June 30, 2017. In December of 2017, Mr. Kijewski requested that he receive retirement benefits in the amount of RMDs. That

month, MSK paid to Mr. Kijewski a single lump sum equivalent to what would have been his RMDs for 2017. (Mr. Kijewski was rehired by MSK for limited purposes in October 2017 and therefore RMDs might not have been due in any event.) MSK then continued to make payments to Mr. Kijewski through March of 2018, at which point TIAA received a letter from Ms. Kijewski's attorney stating that an Order to Show Cause had been signed in connection with the Kijewski matrimonial matter and that no transfer or withdrawals may be made from any of his retirement accounts. After receiving this letter, TIAA froze Mr. Kijewski's account, ceased providing him with distributions, and notified Mr. Kijewski and counsel for Ms. Kijewski that the restriction would remain in place until TIAA received a signed court order releasing the restriction or a completed qualified domestic relations order.

For the remainder of 2018, 2019, 2020, and for part of 2021, TIAA continued to restrict Mr. Kijewski's account. (Notably, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act suspended RMDs for 2020, and therefore no amounts would have been paid for that year.) During this time, neither Mr. Kijewski nor Ms. Kijewski provided TIAA with a court order indicating that the restriction should be released or with a domestic relations order to be qualified by the Plan.

In 2021, there were further discussions with Mr. Kijewski and with Ms. Kijewski's attorney regarding a potential qualified domestic relations order. Given the passage of time without the submission of a domestic relations order to be qualified, the Plan paid Mr. Kijewski the amount of RMDs that had been suspended in 2018, 2019, and 2021 that he had requested, as shown in Exhibit A.

If you require any additional information, or if there are any questions, please contact me at 202.662.5125.

Sincerely,

Robert Newman

cc: Daniel Green, Director of Retirement Benefits
Enclosures

2

EXHIBIT
Summary of Payments



**Elizabeth Perry**
Sr. Customer Resolution Manager
TIAA Customer Care

**T** 800 842-2733 Ext 242873
**F** 800 914 -8922
eperry@tiaa.org

September 26, 2023

Christine Pesaturo
Memorial Sloan Kettering Cancer Center
1275 York Ave.
New York, NY 10065

RE: Peter Kijewski Distributions

Dear Ms. Pesaturo:

I have researched your inquiry regarding payments that were issued to Dr.
Kijewski from the Memorial Sloan Kettering Cancer Center retirement plans.
The payment details are outlined in the table below:

| Contract Number | Payment Date | Gross Amount | Federal Taxes | State Taxes | Net Amount |
|---|---|---|---|---|---|
| L8754974 | 12/27/2021 | $22,001.16 | $0.00 | $0.00 | $22,001.16 |
| L8754974 | 12/23/2021 | $15,766.56 | $0.00 | $0.00 | $15,766.56 |
| L8754974 | 12/22/2021 | $11,073.96 | $0.00 | $0.00 | $11,073.96 |
| L8754974 | 12/20/2021 | $8,425.71 | $0.00 | $0.00 | $8,425.71 |
| K5994351 | 12/17/2021 | $90,558.40 | $18,111.68 | $4,527.92 | $67,918.80 |
| C3686023 | 12/16/2021 | $1.35 | $0.27 | $0.07 | $1.01 |
| 08156M09 | 12/16/2021 | $145,968.07 | $29,193.61 | $7,298.40 | $109,476.06 |
| K5994351 | 03/06/2018 | $2,585.29 | $517.06 | $131.85 | $1,936.38 |
| K5994351 | 03/05/2018 | $23,864.65 | $4,772.93 | $1,217.10 | $17,874.62 |
| K5994351 | 03/05/2018 | $2,872.55 | $574.51 | $146.50 | $2,151.54 |
| L8754974 | 03/02/2018 | $936.19 | $0.00 | $0.00 | $936.19 |
| L8754974 | 02/02/2018 | $936.19 | $0.00 | $0.00 | $936.19 |
| L3754974 | 01/04/2018 | $936.19 | $0.00 | $0.00 | $936.19 |
| C8·156M09 | 12/07/2017 | $33,667.13 | $8,416.78 | $0.00 | $25,250.35 |
| Totals | | $359,593.40 | $61,586.84 | $13,321.84 | $284,684.72 |

Page 2 of 2

The payments were distributed as follows:

| Contract Number | Payment Date | Payment Destination |
|---|---|---|
| L8754974 | 12/27/2021 | EFT - BANK OF AMERICA, NA |
| L8754974 | 12/23/2021 | EFT - BANK OF AMERICA, NA |
| L8754974 | 12/22/2021 | EFT - BANK OF AMERICA, NA |
| L8754974 | 12/20/2021 | EFT - BANK OF AMERICA, NA |
| K5994351 | 12/17/2021 | EFT - BANK OF AMERICA, NA |
| C3686023 | 12/16/2021 | EFT - BANK OF AMERICA, NA |
| C8156M09 | 12/16/2021 | EFT - BANK OF AMERICA, NA |
| K5994351 | 03/06/2018 | MAIL - PERSHING LLC C/O TC BROKERAGE, |
| K5994351 | 03/05/2018 | MAIL - PERSHING LLC CO TC BROKERAGE |
| K5994351 | 03/05/2018 | MAIL - PERSHING LLC CO TC BROKERAGE, |
| L8754974 | 03/02/2018 | EFT - EVERBANK, NA |
| L8754974 | 02/02/2018 | EFT - EVERBANK, NA |
| L8754974 | 01/04/2018 | EFT - EVERBANK, NA |
| C8156M09 | 12/07/2017 | EFT - EVERBANK, NA |

You may contact me directly if you have any questions or concerns regarding this matter. I can be reached weekdays at 800-842-2733, ext. 242873 or via email at eperry@tiaa.org.

Sincerely,

Elizabeth J. Perry
Sr. Customer Resolution Manager



Memorial Sloan Kettering
Cancer Center

# MSKCC Retirement Savings Plan (RSP)

## Summary Plan Description

### MSK BENEFITS DEPARTMENT

(646) 677-7411 I hrrc@mskcc.org

# CONTENTS

INTRODUCTION ....................................................................... 1

ELIGIBILITY AND ENROLLMENT ........................................... 1
ELIGIBILITY ................................................................................ 1
ENROLLMENT ............................................................................. 2

SUMMARY OF BENEFITS.................................................... 2

EMPLOYEE CONTRIBUTIONS............................................. 3
PRE-TAX CONTRIBUTIONS.......................................................... 3
ROTH CONTRIBUTIONS............................................................... 3
AGE 50 CATCH-UP CONTRIBUTIONS ........................................... 4
SPECIAL 15-YEAR CATCH-UP CONTRIBUTIONS ............................. 4
ROLLOVER CONTRIBUTIONS ....................................................... 4
RETURNING FROM QUALIFIED MILITARY SERVICE......................... 4

EMPLOYER CONTRIBUTIONS ............................................. 5
MSK BASE CONTRIBUTIONS ....................................................... 5
MSK MATCH CONTRIBUTIONS .................................................... 5
TRUE-UP CONTRIBUTION............................................................ 6
45/60 TRANSITION BENEFIT ....................................................... 6
LEAVES OF ABSENCE AND PERIODS OF LONG-TERM DISABILITY............. 7

IRS CONTRIBUTION LIMITATIONS ..................................... 7

IRS NON-DISCRIMINATION TESTS ..................................... 8

INVESTMENT CHOICES...................................................... 8
MAXIMIZING YOUR INVESTMENT STRATEGY ............................... 9
RISK TOLERANCE ....................................................................... 9
TIAA SELF-DIRECTED BROKERAGE ACCOUNT.............................10

FEES AND EXPENSES ..................................................... 10

VESTING............................................................................ 11

WITHDRAWALS WHILE EMPLOYED ................................. 12
ROLLOVER CONTRIBUTION ACCOUNT .......................................12
AGE $59\frac{1}{2}$ WITHDRAWALS ...................................................12
AGE 70 WITHDRAWALS .............................................................12

DISABILITY WITHDRAWALS ..................................................................12
HARDSHIP WITHDRAWALS ..................................................................12
DISTRIBUTIONS DURING QUALIFIED MILITARY SERVICE ........................14

**LOANS FROM THE PLAN** ......................................................... **14**

**DISTRIBUTIONS WHEN YOU LEAVE MSK** ................................... **15**

**DEATH BENEFITS** .................................................................... **15**

**PAYMENT OF YOUR BENEFITS** ................................................. **15**

**CLAIM REVIEW PROCEDURE** ................................................... **17**

**OTHER IMPORTANT INFORMATION** ......................................... **18**
NO GUARANTEE OF BENEFIT AMOUNT ..................................................18
RIGHT TO AMEND OR TERMINATE PLAN ..............................................18
BENEFITS NOT ASSIGNABLE ..................................................................19
NO GUARANTEE OF EMPLOYMENT ........................................................19
BENEFITS TO MINORS AND INCOMPETENTS ..........................................19

**YOUR ERISA RIGHTS** ............................................................... **19**
RECEIVE INFORMATION ABOUT YOUR PLAN AND BENEFITS .....................19
PRUDENT ACTIONS BY PLAN FIDUCIARIES ............................................20
ENFORCE YOUR RIGHTS ........................................................................20
ASSISTANCE WITH YOUR QUESTIONS ....................................................20

**GLOSSARY OF TERMS** .............................................................. **21**

**ADMINISTRATION** .................................................................... **26**

Note: Complete Document Filed Separately

**EXHIBIT 6 June 12, 2024, EBSA File No. 202430-11820**

June 12, 2024, Plaintiff Peter Kijewski wrote and mailed to the Department of Labor his complaint about $0.00 "Required Minimum Distribution" (RMD) disbursements since March 6, 2018.  By email or phone, Peter Kijewski received monthly information of an active investigation:

**EBSA File No. 202430-11820**
BE
Bautista, Karin - EBSA<Bautista.Karin@dol.gov>
To:You

Fri 1/31/2025 8:54 AM

You forwarded this message on Fri 1/31/2025 1:01 PM

January 31, 2025

Re: EBSA File No. 202430-11820

Dear Peter Kijewski:

This email is in response to your inquiry to the Department regarding your Qualified Domestic Relations Order (QDRO) and the disbursement of retirement benefits from the custodians who oversee your retirement plans.

The Department is reviewing the information provided. If we need additional information from you, we will let you know.

Sincerely,

**Karin Bautista** | Benefits Advisor
United States Department of Labor
Employee Benefits Security Administration
201 Varick Street – Room 746, New York, NY 10014
Direct: (212) 863-0980 | Fax: (212) 607-8611
bautista.karin@dol.gov

**EXHIBIT 7 December 1, 2023, Ms. Perry, TIAA Law & Compliance Liaison, Letter to "Dear Ms. Dunn", Enclosure**



**Elizabeth Perry**
Sr. Customer Resolution Manager
TIAA Customer Care
**T** 800 842-2733 Ext 242873
**F** 800 914 -8922
eperry@tiaa.org

December 1, 2023

Johnson & Cohen, LLP
Attorneys at Law
Attn: Maureen A. Dunn
707 Westchester Ave., Suite 410
White Plains, NY 10604

RE: Dr. Kijewski's TIAA Retirement Accounts held in:

Brigham and Women's Hospital Professional Staff Retirement Plan
New England Deaconess Hospital Discontinued
Retirement Income Plan for Teaching Faculty of Harvard University
MSKCC Retirement Savings Plan (RSP) Base Plus Match Plan
MSKCC Retirement Savings Plan (RSP) Voluntary Plan
MSKCC Key Employee Supplemental Savings Plan

Dear Ms. Dunn:

TIAA has maintained a disbursement hold on Dr. Kijewski's TIAA retirement plan accounts since 2018, pending the receipt of a Domestic Relations Order (DRO).

Letters were sent in 2021 and 2022 informing parties that the hold on Peter Kijewski's accounts would be released within 30 days of the date of our letters if no DRO was received. A copy of the 2022 letter is enclosed for your reference. We are past that 30-day notice.

Last year you shared a' Decision and Order' dated November 4, 2022. While the Order appeared to be against Dr. Kijewski, not TIAA or the retirement plans, TIAA as a courtesy maintained the holds on the retirement accounts because we were expecting receipt of the DRO within the first part of 2023. To date, TIAA has not received a DRO for the retirement plans. Since we do not have a DRO, the hold on the accounts will be released on December 13, 2023.

Dr. Kijewsjki has requested a withdrawal from his retirement accounts. We are making you aware of this request as a courtesy. This payment will be made when the hold is released. Please note that TIAA will not send you notifications in the future should Dr. Kijewski request any additional withdrawals from his retirement plan accounts.

Please feel free to contact me directly if you have any questions or concerns regarding this matter. I can be reached weekdays at **800-842-2733, ext. 242873** or via email at eperry@tiaa.org.

Sincerely,

Elizabeth J. Perry
Sr. Customer Resolution Manager


Enclosure


cc: Peter K. Kijewski



**Elizabeth Perry**
Sr. Customer Resolution Manager
TIAA Customer Care

**T** 800 842-2733 Ext 242873
**F** 800 914 -8922
eperry@tiaa.org

October 18, 2022

Johnson & Cohen, LLP
Attorneys at Law
Attn: Maureen A. Dunn
707 Westchester Ave., Suite 410
White Plains, NY 10604

RE: Dr. Kijewski's TIAA Retirement Accounts held in:

Brigham and Women's Hospital Professional Staff Retirement Plan
New England Deaconess Hospital Discontinued
Retirement Income Plan for Teaching Faculty of Harvard University
MSKCC Retirement Savings Plan (RSP) Base Plus Match Plan
MSKCC Retirement Savings Plan (RSP) Voluntary Plan
MSKCC Key Employee Supplemental Savings Plan
IRA FBO Peter K Kijewski

Dear Ms. Dunn:

This letter was previously sent to you and Dr. Kijewski's attorney on September 26. However, the letter addressed to you referenced your former address. I apologize for this error.

TIAA has maintained a disbursement hold on Dr. Kijewski's TIAA retirement plan accounts since 2018, pending the receipt of a qualified domestic relations order (DRO). To date, TIAA has not received a DRO in this matter.

Because TIAA has not received a DRO, we will release the disbursement hold on Dr. Kijewski's accounts if TIAA does not receive a DRO within 30 days of the date of this letter.

Please feel free to contact me directly if you have any questions or concerns regarding this matter. I can be reached weekdays at **800-842-2733, ext. 242873** or via email at eperry@tiaa.org.

Sincerely,

Elizabeth J. Perry
Sr. Customer Resolution Manager

cc: Peter K. Kijewski

**EXHIBIT 8** <u>**April 5, 2018, Miles Gilpin, Legal Analyst, Vanguard Legal Department, Subpoena Response to "Dear Ms. Dunn", Enclosures**</u>



P.O. Box 2600
Valley Forge, PA 19482-2600

www.vanguard.corn

April 5, 2018

<u>*Via FedEx*</u>

Maureen A. Dunn, Esquire
Johnson & Cohen, L L P
701 Westchester Avenue, Suite 208W
White Plains, NY 10604

RE:     **Marie Foley Kijewski v. Peter K. Kijewski**
        **Index No.: 60606/15**

Dear Ms. Dunn:

On behalf of The Vanguard Group, Inc. ("Vanguard"), I am responding to the March 14, 2018 subpoena regarding the above-captioned matter.

Vanguard objects to the subpoena (i) to the extent that the language used in the subpoena is vague and ambiguous; (ii) to the extent that it is overly broad or the production of documents in response to the subpoena would be unduly burdensome; (iii) to the extent that it seeks the production of documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence; and (iv) to the extent that it requests the production of documents that are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or exemption.

Subject to and without waiver of the foregoing objections, Vanguard is enclosing the following responsive documents, Bates labeled, VGI-1023958-000001 through VGI-1023958-000120:

**Peter K. Kijewski — Rollover IRA and rollover IRA Brokerage Account**

- May 31, 2017, monthly transaction statement (sufficient to show 5/19/2017 transfer in amount)
- December 31, 2016 year-to-date statement sufficient to show 11/14/2016 asset transfer distribution amount (occurred via National Securities Clearing Corporation (NSCC) platform)
- IRA Asset Transfer Form (received by Vanguard 1-25-2017)
- 1-31-2017 correspondence from Vanguard to Peter K. Kijewski
- IRA Asset Transfer Form (received by Vanguard 3-6-2017)
- Brokerage In-Kind Account Transfer Form (received by Vanguard 4-5-2017)
- Brokerage In-Kind Account transfer from (received by Vanguard on 4-13-2017)
- Vanguard Brokerage Account In-Kind Transfer Form (received by Vanguard on 5-16-2017)

**Peter K. Kijewski — Traditional IRA and Individual Account**
- December 31, 2016 year-to-date statement sufficient to show 11/14/2016 asset transfer distribution amount (occurred via National Securities Clearing Corporation (NSCC) platform)

Ms. Dunn
April 5, 2018
Page 2


If you have any questions concerning this matter, please contact me at 610-669-9374.

Enclosures
cc:      Peter K. Kijewski (letter only, w/copy of subpoena)


Sincerely,

Miles Gilpin
Legal Analyst
Legal Department

**EXHIBIT 9** <u>April 9, 2018, Ms. Lynda Roseboro, Legal Analyst, Vanguard Legal Department, Letter to "Dear Mr. Kijewski" NYSCEF No. 367, Enclosure</u>



P0. Box 2600
Valley Forge, PA 19482-
2600

www.vanguard.corn

April 9, 2018

Peter K. Kijewski
23 Shipyard Dr, Apt N307
Hingham, MA 02043-1607

RE:     **Marie Foley Kijewski v. Peter K. Kijewski**
        **Index No. 60606-15**
        **Our File No. 1024233**
        **Rollover IRA - #xxxxx8421**

Dear Mr. Kijewski:

I am writing with regard to documentation that The Vanguard Group, Inc. ("Vanguard") received in connection with the above-referenced Vanguard account (the "Account").

Enclosed is a copy of the Order to Show Cause associated with the documentation received.

Vanguard is not a party to this action, and is therefore not bound by the March 14, 2018, Order. However, in light of what appears to be a dispute regarding the assets in the Account, we are writing to notify you that Vanguard has placed a restriction on the Account; accordingly, no exchanges, redemptions, withdrawals, or distributions of any kind may occur in or from the Account during this time (including any Required Minimum Distributions).                                          <span style="color:red">Peter: See this restriction</span>

Vanguard will maintain the restriction on the Account until we receive satisfactory documentation that the dispute regarding the assets in the Account is resolved, or is no longer being pursued.

Should you have any questions concerning this matter, please contact me at 610/503-2218.

Sincerely,

*Lynda Roseboro*

Lynda Roseboro
Legal Analyst
Legal Department
Enclosure

**EXHIBIT 10** <u>November 23, 2015, Ms. Woolston Wire Communication to</u>
<u>"Hello Peter", Reply from BNY Pershing Legal Group NYSCEF No. 418</u>

## RE: Clear Harbor Letter

| CW |
|---|

Catherine Woolston <CWoolston@clearharboram.com>
Mon 11/23/2015 1:09 PM
To: You; Louis Newman; Jessica Dahan
Kijewski Letter.pdf 231 KB

Hello Peter,

Please find attached the letter Pershing received in June.

I received the following reply from Pershing to my inquiry after their legal team
reviewed the RMD request:

**Morning Cat,**
**Our legal group has reviewed the Action for Divorce submitted to us in**
**June of this year.   Regarding the client being able to take out his RMD,**
**they responded with the below:**

**"This client needs to take their RMD and should have his attorney alert**
**Mitchell Cohen of Johnson & Cohen LLP that this action took place and is**
**a regulatory requirement."**

I am initiating the RMD today as per your request on Friday.

Happy Thanksgiving!

Cat
Catherine Stamm Woolston, Director
Clear Harbor Asset Management
420 Lexington Avenue, Suite 2006
New York, NY 10170
212 843 2016 Direct
646 489 8695 Cell
212 867 7310 Main
212 867 7804 Fax
cwoolston@clearharboram.com
www.clearharboram.com
**NEW YORK | WASHINGTON, D.C. | DALLAS**

Confidentiality Note: This message and all attachments may contain confidential and/or legally privileged information for the firm
Clear Harbor Asset Management, LLC, and is intended only for the use of the addressee. If you are not the intended recipient, you
are hereby notified that any disclosure, copying, distribution or taking of any action in reliance to the contents is strictly prohibited. If
you have received this message in error, please notify this firm immediately by telephone (212-867-7310) or by electronic mail
(info@clearharboram.com), and delete this message and all copies and backups thereof.

**EXHIBIT 11** <u>April 12, 2016, Ms. Dunn Letter to "Dear Ms. Dahan"</u>

## JOHNSON & COHEN, L L P
ATTORNEYS AT LAW

MARTIN T. JOHNSON*
MITCHELL Y. COHEN*
SUSAN G. YELLEN**

MAUREEN A. DUNN
AMY M. EISENBERG
LEAH E. ROSS
_____

701 WESTCHESTER AVENUE
SUITE 208W
WHITE PLAINS, NEW YORK 10604
(914) 644-7100
FAX (914) 922-9500

ROCKLAND OFFICE
ONE BLUE HILL PLAZA
11ᵀᴴ FLOOR P.O. BOX 1629
PEARL RIVER, NEW YORK
10965-8629
(845) 735-7000
FAX (845) 735-7585

* Fellow American Academy of Matrimonial Lawyers
** ADMITTED IN NY, MD & D.C.

April 12, 2016

***Via Email Only***
Jessica A. Dahan, Esq.
Newman & Denney, PC
570 Lexington Avenue, Suite 1600
New York, NY 10022

Re:     **Kijewski v. Kijewski**
        **Index No: 60606-15**

Dear Ms. Dahan:

I am writing to address your client's request for an advance on equitable distribution, as well as the outstanding issues with regard to the disposition of the marital residence.

Since October, 2015, both parties have agreed that the marital residence should be sold in the spring market, when the best possible price could be obtained, and that it would be listed for sale in February, 2016. However, your client has consistently delayed this process, first by refusing to reimburse my client for $3,467.50 in repairs made to ready the home for sale (which he still has not paid), and more recently by refusing to attend joint meetings with two proposed real estate agents, instead demanding separate meetings with each, and by refusing to listen to their proposals. These meetings took place on March 26, but your client has still not indicated which of the two real estate agents he would prefer to use to sell the home. Additionally, we discussed the possibility of your client purchasing my client's interest in the home, and we made a proposal that he buy her out at $1.3 million, a price recommended by one of the realtors in a written proposal. While you rejected this price, your client has not proposed a price at which he would agree to buy out my client's share. This afternoon you indicated that your client was going to have the house appraised on April 16. This assessment is unnecessary, and it constitutes yet another stalling tactic. Two realtors have provided recommended listing prices, based on assessment of current market conditions and supported by recent sales. One agent recommended $1.2 million as a conservative listing price, intended to create interest from multiple buyers and a bidding war; the other recommended $1.275-1.3 million, indicating to my client that at $1.275 buyers would be "beating down your door."

Jessica A. Dahan, Esq.
Re: Kijewski v. Kijewski
Page 2
April 12, 2016

We are now well into the spring season, and the parties have missed the prime real estate market. Since January, houses in the parties' neighborhood have sold quickly for high prices. They are running out of time to list and prepare the home for sale before the spring real estate market is completely over. My client has been approached by a local realtor who has heard the home may be sold. This realtor has clients who have sold their home and are in a month-to-month rental in the parties' neighborhood, and are very interested in seeing the home. However, since your client has not indicated whether he will agree to list the home with one of the realtors that the parties have (separately) interviewed, the parties may lose this opportunity to sell to motivated buyers.

I understand that your client claims to need an advance on equitable distribution, although I cannot understand how that is possible as he did not pay any expenses for the marital residence for four months and has not paid my client the support he owes her. Regardless, my client is willing to agree that your client take his 2016 RMD from his Clear Harbor retirement account now, to be divided evenly between the parties. This will be approximately $49,000 in total.

However, my client will only agree to this advance on equitable distribution if your client does one of the following with respect to the marital residence:

1) Offers to purchase my client's interest in the home at a price agreeable to both parties; or

2) Signs a listing agreement with one of the two real estate agents that have been proposed, and further agrees to be equally responsible for the reasonable repairs and staging recommended by the selected agent in order to prepare the home for sale.

Please review this proposal with your client, and please advise by this Friday, April 15th as to which, if either, of the two options he has selected. If your client declines to buy out my client's interest, and further refuses to sign a listing agreement with either real estate agent, my client will not agree that he take any advance on equitable distribution. Further, as the parties will lose the potential to sell the home this spring due to your client's continued delay, we will address your client's wasteful dissipation of this substantial marital asset with the Court.

Very truly yours,

Maureen A. Dunn

cc: Marie Kijewski (via email)

**EXHIBIT 12** <u>December 7, 2016, Ms. Woolston Wire Communication to "Hello Maureen, Jessica, Peter and Marie" NYSCEF No. 362</u>

## Kijewski - Required Minimum Distribution from Peter's IRA--MUST be done before 12/31/16

You forwarded this message on Thu 12/8/2016 8:13 AM

You forwarded this message on Thu 12/8/2016 8:13 AM

**CW**

Catherine Woolston <CWoolston@clearharboram.com>

Wed 12/7/2016 4:40 PM

To: You; Maureen Dunn; Jessica Dahan; Marie Kijewski

Clear Harbor (Woolston) 2015-12-02 release RMD funds.pdf 46 KB

2016 RMD KIJEWSKI .pdf 173 KB

2 attachments (220 KB)Download all Save all to OneDrive

Hello Maureen, Jessica, Peter and Marie:

Anticipating an issue since Pershing still has a block on Peter's IRA…I'm sure we need a letter like this one to do the RMD.

I spoke to Peter and he know he needs to sign the attached RMD form.

Please provide the LOA ASAP.

Thanks,

Cat

Catherine Stamm Woolston, Director

Clear Harbor Asset Management

420 Lexington Avenue, Suite 2006

New York, NY 10170

212 843 2016 Direct

646 489 8695 Cell

212 867 7310 Main

212 867 7804 Fax

cwoolston@clearharboram.com

www.clearharboram.com

**NEW YORK | WASHINGTON, D.C. | DALLAS**

Confidentiality Note: This message and all attachments may contain confidential and/or legally privileged information for the firm Clear Harbor Asset Management, LLC, and is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance to the contents is strictly prohibited. If you have received this message in error, please notify this firm immediately by telephone (212-867-7310) or by electronic mail (info@clearharboram.com), and delete this message and all copies and backups thereof.

**EXHIBIT 13** <u>Contact Information</u>

EXHIBIT 13: Complete list of contacts provided for SDNY CM/ECF filing with COMPLAINT.

**Plaintiff**

Peter K. Kijewski, PhD
23 Shipyard Drive #307
Hingham, MA 02043
Cell: 914-281-4893
Email: pkijewski@outlook.com

**Matrimonial Legal Representation**

**Jill F. Spielberg, Esq.**

81 Main Street

Suite 400

White Plains, NY 10601

Tel: (914) 607-7010

Fax: (718) 215-8186

Email: jspielberg@abramslaw.com

Family Law Attorney White Plains |Jill Spielberg 914-607-7010

**Alyson Kuritzky, Esq.**

81 Main Street

Suite 400

White Plains, NY 10601

Tel: (914) 607-7010

Fax: (718) 215-8186

Email: akuritzky@abramslaw.com

Matrimonial Law Attorney White Plains | Alyson Kuritzky


**Defendants**

**TIAA**

Law & Compliance

730 3rd Avenue

New York, NY 10017

(800) 842-2733

J. Christian Annalora

Senior Director, Associate General Counsel

Law & Compliance

(212) 916-5121

**TIAA Communications:**

**Elizabeth Perry**
TIAA, Law & Compliance Liaison
Sr. Customer Resolution Manager
TIAA Customer Care
**T** 800 842-2733 Ext 242873
**F** 800 914 -8922
eperry@tiaa.org
ELIZABETH JENNIFER PERRY - Broker at TIAA-CREF INDIVIDUAL &
INSTITUTIONAL SERVICES, LLC

**Vanguard Group, Inc.**
Office of the General Counsel
100 Vanguard Blvd — M35
Malvern, PA 19355
Subpoena_Response@vanguard.com

**BNY Pershing**
Legal Department
One Pershing Plaza
Jersey City, NJ 07302
(201) 413-362

**Maureen A. Dunn, Esq.**
White Plains Office
707 Westchester Avenue
Suite 410
White Plains, NY 10604
Email: mdunn@johnsoncohenlaw.com
Dunn, Maureen A. | Johnson & Cohen, LLP

**Mitchell Y. Cohen, Esq.**
White Plains Office
707 Westchester Avenue
Suite 410
White Plains, NY 10604
(877) 807-1472
Email: mitchellc@johnsoncohenlaw.com
Cohen, Mitchell Y. | Johnson & Cohen, LLP

**Marie F. Kijewski, PhD**
86 Manthorne Rd.
West Roxbury, MA 02132
MarieKijewski@gmail.com

**NYS Supreme Court Case**

Login (state.ny.us) "Search as Guest", "Case Number: 60606/2015", "County: Westchester", "Search", "Click: 60606/2015".

WebCivil Supreme - Case Search Results (state.ny.us) "Index Search", "Index Number: 60606/2015", "Court(s): Westchester Supreme Court", "Find Case(s)", "Click: 60606/2015".

Matrimonial Part Westchester Supreme - 9th JD | NYCOURTS.GOV

Alternative Dispute Resolution | NYCOURTS.GOV

NYS Supreme Court NYSCEF documents are accessible using username/password. NYSCEF folder: ALL NYS Supreme Court NYSCEF documents downloaded, including assigned names indicating content.


**Court Attorney Referees**

**Irene Ratner, Esq.**

**Josephine Trovini, Esq.**

Family Law Attorney White Plains | Josephine Trovini 914-607-7010

**EXHIBIT 14** <u>**We must not squander the future of legal services**</u>

[We must not squander the future of legal services (abajournal.com)](#)

 PRESIDENT'S LETTER
BY JUDY PERRY MARTINEZ
FEBRUARY 1, 2020, 1:35 AM CST

 Access to justice is a fundamental tenet of the rule of law. Without it, people cannot fully protect their rights, liberty and property; and the public's confidence in our justice system is put at risk.

U.S. Supreme Court Justice Lewis Powell, a former president of the American Bar Association, robustly distilled the concept in 1976. "Equal justice under law is not merely a caption on the facade of the Supreme Court building," he said. "It is perhaps the most inspiring ideal of our society. … it is fundamental that justice should be the same, in substance and availability, without regard to economic status."

Yet the World Justice Project ranks the United States tied for 99th out of 126 countries when it comes to access to and affordability of civil justice. Legal Services Corp. research found that low-income Americans received inadequate or no professional legal help for 86% of their civil legal problems—such as child custody, debt collection, eviction and foreclosure. And in many states, overwhelming caseloads and inadequate resources for public defenders severely hamper the Sixth Amendment right to counsel for indigent criminal defendants.

Though lawyers donate countless hours to help, pro bono cannot fully address the unmet legal needs in our country. Similarly, efforts to secure adequate funding for civil legal aid and establish a right to counsel in civil cases have proven to be a bridge too far.

We need new ideas. We are one-fifth into the 21st century, yet we continue to rely on 20th-century processes, procedures and regulations. We need to retain 20th-century values but advance them using 21st-century approaches that can increase access to justice.

For example, regulators in some states are exploring whether educated technicians without a law degree should be authorized and regulated under rules of professional conduct to offer limited legal services.

Others are looking at whether efficiencies can be gained by enabling professionals who are not lawyers to share fees or hold a financial interest in law firms without compromising lawyer independence. Courthouse kiosks, courthouse navigators, online legal forms, document-preparers and online dispute resolution are all gaining traction around the country.

Lawyers have the privilege of regulating their own profession. With that privilege comes a responsibility to ensure that the rules and regulations of the legal profession serve the public good. The ultimate purpose of regulation is not to protect the livelihoods of lawyers but to advance the administration of justice. Some would suggest that if we don't have justice or public protection as our goal, we potentially put our self-regulation at risk.

Lawyers are seeing how they can make a difference by viewing what they do through the consumer's lens. The aim of current reform discussions is not to eliminate lawyers. Quite the contrary, the aim is to help lawyers lead changes that are sweeping all economic sectors of society. Part of that leadership can be at the state level, where lawyers can help their jurisdictions serve, as Justice Louis Brandeis described, as "the laboratories of democracy." Together, building on that leadership, we can drive efficiency in the delivery of legal services and spark greater access to justice while embracing the best principles of the legal profession.

The ABA is actively monitoring developments, primarily through its Center for Innovation and Center for Professional Responsibility. We are bringing together leaders from within and outside the legal industry, including technologists, design experts and computer scientists to think about—and where appropriate, provide guidance—on changes to the way legal services are delivered and accessed. It is important for discussions to continue not only with lawyers and judges at the table but also with consumers of justice.

Change is difficult. It should not be undertaken without serious consideration of the potential benefits and costs. But given the dire circumstances that the public faces when trying to protect their basic rights, doing nothing poses an even greater risk to our system of justice and the rule of law.

*This article ran in the February-March 2020 issue of the* ABA Journal *under the headline: "Innovation and Access to Justice: We must not squander the future of legal services"*

**EXHIBIT 15** <u>October 31, 2021 - November 28, 2021, Peter Kijewski NYSCEF Filing</u>

Peter Kijewski NYSCEF filing and NSYCEF downloading adds highly relevant information for verification of the present COMPLAINT against DEFENDANTS. Six (6+) years Peter Kijewski was severely disadvantaged due to haphazard access to Court documents. Peter Kijewski NYSCEF access included instant smartphone Notice in the event any attorney filed a NYSCEF document.

Complaint letters to NYS Supreme Court are selectively returned without opening.

Ms. Veronica Kapka filed January 2, 2019, Peter Kijewski complaint letter to Court Attorney Referee Ms. Trovini NYSCEF No. 283 (Pages 1 - 8 of 81 pages).

Peter Kijewski filed January 2, 2019, Peter Kijewski complaint letter to Court Attorney Referee Ms. Trovini NYSCEF No. 373 (81 pages).

November 5, 2021, Ms. Dunn Affirmation NYSCEF No. 381: "11. After becoming aware of the content of this correspondence by Defendant's rampant NYSCEF filings, affirmant contacted TIAA and spoke with Elizabeth Perry, who issued the letter in question, on November 1, 2021. Ms. Perry first advised affirmant that the reason the hold would be released was because the accounts were "ERISA accounts" and could only be restrained for 18 months.[1] Despite this, Ms. Perry assured affirmant that if a new restraining order was issued, this would effectively "restart the clock" with respect to the 18-month time frame. However, Ms. Perry followed that conversation with an email to affirmant on November 2, 2021, wherein she wrote: "I spoke with our legal department after our call. I misspoke. Per ERISA and the IRS the 18-month time frame does not reset with a new order. Additionally, counsel for the related retirement plans is telling us that the hold on Dr. Kijewski's accounts should be released." A copy of Ms. Perry's email of November 2, 2021 is annexed as Exhibit "6".

[1] It should be noted that Defendant's IRA account with TIAA is not an ERISA account."

"Defendant's IRA account with TIAA" includes multiple IRA accounts due to Paul Cowie, TIAA CFP, Portfolio Advisor WMA, TIAA Portfolio Advisor IRA consolidation. IRS, Department of the Treasury, Internal Revenue Code mandates annual RMD disbursements since May 10, 2011, including Federal & State tax withholding and quarterly estimated tax payments!

"Defendant's rampant NYSCEF filings" principal issue: "Required Minimum Distribution" (RMD) disbursement "hold" and highly relevant documents Ms. Dunn & Mr. Cohen <mark>failed</mark> to file in NYSCEF.

"Exhibit "6"": November 5, 2021, Ms. Dunn "Oct 26, 2021 letter from TIAA" NSYCEF No. 386.

October 31, 2021, Ms. Dunn email Notice due to Peter Kijewski NYSCEF filing:

October 31, 2021, Peter Kijewski "October 26, 2021 TIAA Law & Compliance letter to Maureen A. Dunn, Esq." NYSCEF No. 348.

October 31, 2021, Peter Kijewski "October 26, 2021 TIAA Law & Compliance letter to Thomas C. Senter, Esq., subject matter expert "Employee Retirement Income" Security Act of 1974 (ERISA)" NSYCEF No. 349.

October 31, 2021, Peter Kijewski "October 26, 2021 TIAA Law & Compliance letter to Peter K. Kijewski, initiated by Christine P. Pesaturo, Experienced Retirement Plan Services Leader, Memorial Sloan Kettering Cancer Center" NYSCEF No. 350.

November 5, 2021, Ms. Dunn Affirmation NYSCEF No. 381: Ms. Dunn first encounter of "Employee Retirement Income Security Act of 1974 (ERISA)" since June 19, 2015, NYSCEF No. 1 & 2, causing disputes with Elizabeth Perry, TIAA Law & Compliance Liaison (official title), "Sr. Customer Resolution Manager, TIAA Customer Care" euphemism for clients. Peter Kijewski inquiries to Paul Cowie, TIAA CFP, Portfolio Advisor WMA, trigger Ms. Perry, TIAA Law & Compliance Liaison, TIAA archive filing "Customer Care Correspondence - St".

|  | **October 31, 2021 - November 28, 2021, Peter Kijewski NYSCEF Filing, "Additional Document Information"** |
|---|---|---|---|
|  | October 1, 2021 - January 31, 2021, Ms. Dunn Process Notes and Invoices NYSCEF No. 503 confirms November 2021 Ms. Dunn reviewed Peter Kijewski NYSCEF filings. |
|  | Column "Omit": Mr. Cohen & Ms. Dunn omitted NYSCEF filing highly relevant documents. |
| NYSCEF | Filing Date | Omit | Additional Document Information |
| 347 | 10/31/2021 | | Peter K. Kijewski NYSCEF document filing |
| 348 | 10/31/2021 | | "October 26, 2021 TIAA Law & Compliance letter to Maureen A. Dunn, Esq." |
| 349 | 10/31/2021 | | "October 26, 2021 TIAA Law & Compliance letter to Thomas C. Senter, Esq., subject matter expert "Employee Retirement Income" Security Act of 1974 (ERISA)" |
| 350 | 10/31/2021 | | "October 26, 2021 TIAA Law & Compliance letter to Peter K. Kijewski, initiated by Christine P. Pesaturo, Experienced Retirement Plan Services Leader, Memorial Sloan Kettering Cancer Center" |
| 351 | 10/31/2021 | | January 31, 2011 IRA Statement: "Failure to take the RMD when required may result in a 50% excise tax imposed on the amount you did not take." "Also, when taking your RMD, please consider … to automatically meet all or part of your RMD." |
| 352 | 11/1/2021 | | August 30, 2018 letter to IRS "Johnson & Cohen, LLP restrained my RMD payments and tax payments June 25, 2015": Your item was delivered at 11:31 am on September 7, 2018 in HOLTSVILLE, NY 11742 to IRS EXPRESS. The item was signed for by J SANTIAGO. |
| 353 | 11/1/2021 | | December 22, 2018 Form 5329 Penalty Waiver to IRS "Last Modified 12/22/2018 11:27 AM" Your item was delivered at 10:56 am on December 27, 2018 in WHITE PLAINS, NY 10606 to DISTRICT ATTORNEY. The item was signed for by A JACK. December 27, 2018, 10:56 am |
| 354 | 11/1/2021 | Omit | November 1, 2021 Demand - Mitchell Y. Cohen, Esq. filing documents in NYSCEF |
| 355 | 11/2/2021 | Omit | November 2, 2021 Demand - Maureen A. Dunn, Esq. filing in NYSCEF September 20, 2017 document "Ms. Dunn removing the hold on the" BNY Mellon Pershing account enforced since June 25, 2015 "lawyers' letterhead, a physical signature and date included". |
| 356 | 11/3/2021 | Omit | June 15, 2015 Mitchell Y. Cohen, Esq. & June 28, 2016 Attorneys Mitchell Y. Cohen, Maureen A. Dunn, Louis I. Newman, Jessica A. Dahan conference: "8-year-old daughter" Sonia Kijewski Poulin (42), "P" Paul N. Kijewski (22), "J" Joseph P. Kijewski (16) |
| 357 | 11/3/2021 | | June 25, 2015 Mitchell Y. Cohen secretive filing "description of the person" and "photograph provided to me" NYSCEF No. 3 thwarted mediation in June 30, 2015 Peter K. Kijewski communication to mediator Lauren Bokor, Esq. |

| 358 | 11/3/2021 | Omit | RMDs: July 6, 2015 Angela Shaw, TIAA QDRO Relationship Manager: "Dear Attorney Cohen: We will implement the Order to the extent of the funds remaining in the contract affected." |
| 359 | 11/3/2021 | Omit | RMDs: Jessica A. Dahan, Esq. letter to Maureen A. Dunn, Esq.: "As a result of your instruction, Mr. Kijewski's RMD request at Clear Harbor is currently blocked and will continue to be blocked" |
| 360 | 11/3/2021 | Omit | RMDs: December 2, 2015 Mitchell Y. Cohen, Esq. letter to BNY Mellon Pershing: "The sum of $48,389.49, which represents his Required Minimum Distribution for the year 2015. On behalf of Ms. Kijewski, we consent to the request to release these funds." |
| 361 | 11/3/2021 | | QDROs: October 11, 2016 Email from Paul Cowie, TIAA Portfolio Advisor WMA: "Hello Mr. Kijewski, I am in receipt of your voice message. I am uncertain where you are in the process but have you received QDRO Documents from the Courts?" |
| 362 | 11/3/2021 | Omit | RMDs: December 7, 2016 Catherine Woolston Email: "Kijewski - Required Minimum Distribution from Peter's IRA--MUST be done before 12/31/16"- "Anticipating an issue since Pershing still has a block on Peter's IRA." |
| 363 | 11/3/2021 | | QDROs: December 15, 2017 Maureen A. Dunn, Esq. rejecting $568,313 retirement asset reallocation to Marie F. Kijewski |
| 364 | 11/4/2021 | Late | RMDs: March 22, 2018 Maureen A. Dunn, Esq. letter: "Order temporarily restrains all retirement accounts maintained by Mr. Kijewski at TIAA-CREF, so that no transfers or withdrawals may be made out of any retirement accounts, and no changes may be made." |
| 365 | 11/4/2021 | Omit | RMDs: March 22, 2018 Maureen A. Dunn, Esq. letter: "Order temporarily restrains all retirement accounts maintained by Mr. Kijewski at Vanguard, so that no transfers or withdrawals may be made out of any retirement accounts." |
| 366 | 11/4/2021 | | RMDs: March 27, 2018 TIAA to Maureen A. Dunn, Esq.: "The restriction will remain in place until we receive a judge signed court certified copy of an order releasing or removing the restriction or upon the successful completion of a QDRO." |
| 367 | 11/4/2021 | | RMDs: April 9, 2018 Vanguard to Maureen A. Dunn, Esq.: "Vanguard is not a party to this action, and is therefore not bound by the March 14, 2018, Order. " - "what appears to be a dispute" - "restriction" - "including any Required Minimum Distributions." |
| 368 | 11/4/2021 | Omit | RMDs: May 25, 2018 Maureen A. Dunn, Esq. to TIAA about the January 22, 2018 lost RMD check: "The gross distribution was $7,022.75 and the net distribution was $5,260.04." - "consider taking legal action against TIAA-CREF for its failure to abide" |
| 369 | 11/4/2021 | Omit | RMDs: May 31, 2018 TIAA to Maureen A. Dunn, Esq.: "The attorneys and the parties will need to determine how to handle the RMD contracts as Dr. Kijewski's RMD payments" - "will need to be accelerated for the calendar year in which a final certified QDRO" |
| 370 | 11/4/2021 | | RMDs: October 11, 2018 Peter K. Kijewski Email to Jessica R. Friedrich, Esq. and Dana M. Stutman, Esq.: "I must make a withdrawal from the accounts by December 31, 2018 to avoid an IRS penalty of about $25,000. Therefore a hearing is not required." |
| 371 | 11/4/2021 | | RMDs: November 15, 2019 Vanguard letter omitting January 17, 2019 Decision & Order NYSCEF No. 265 or NYSCEF No. 268: "I also suggested that you contact Ms. Kijewski's attorneys in this matter to reach an agreement to allow you to take your RMD." |
| 372 | 11/4/2021 | | RMDs: September 30, 2021 Paul Cowie, TIAA Portfolio Advisor WMA, Performance Report shows adverse financial outcomes due to suspending "Required" Minimum Distributions: 1) Surging retirement assets and 2) plunging investment assets causing tax debt. |
| 373 | 11/5/2021 | Omit | RMDs: January 2, 2019 letter (81 pages) to Referee Josephine Trovini, Esq., 8 pages initial "JT" filed in March 27, 2019 NYSCEF No. 283: "I request that my TIAA and Vanguard restraints are lifted immediately for these reasons" |
| 374 | 11/5/2021 | | RMDs: November 5, 2021 letter to Maria Baratta, Esq. about subject matter experts IRS, Department of the Treasury, Internal Revenue Code, ERISA, CPA |
| 375 | 11/5/2021 | | Responsibilities |
| 376 | 11/5/2021 | | April 8, 2021 Thomas C. Senter, Esq., Paul Abrams, CPA and Kasia Wodeslavsky, CPA MST, IRS, Department of the Treasury, Form 2848 Power of Attorney - Signed |
| 377 | 11/5/2021 | | April 24, 2021 Kasia Wodeslavsky, CPA MST, Authorization for TIAA Access - Signed |
| 378 | 11/5/2021 | | April 24, 2021 Paul Abrams, CPA Authorization for TIAA Access - Signed |

| 379 | 11/5/2021 | | April 24, 2021 Thomas C. Senter, Esq. Authorization for TIAA Access - Signed |
|---|---|---|---|
| 391 | 11/5/2021 | | RMDs: October 26, 2021 TIAA "release disbursement hold" is due to the July 19, 2021 MSKCC RSP: "Dear Peter, The Plan is described in Section 403(b) of the Internal Revenue Code to provide you and your family with income during your retirement years." |
| 392 | 11/5/2021 | | CPA: January 8, 2021 Paul Abrams, CPA, Retainer Letter: Kasia Wodeslavsky, CPA MST, filed tax years 2018, 2019 and 2020 tax returns. Omitted are "Required" Minimum Distribution Federal and State tax payments terminated March 5, 2018. |
| 393 | 11/5/2021 | | RMDs: November 5, 2021 communication received from Maureen A. Dunn, Esq. by wire, attachment "Proposed OSC with Supporting Docs.pdf" |
| 394 | 11/5/2021 | | RMDs: November 5, 2021 attachment received from Maureen A. Dunn, Esq. by wire "Proposed OSC with Supporting Docs.pdf" |
| 395 | 11/6/2021 | | ERISA: October 8, 2020 Thomas C. Center, Esq. "Greenbaum, Rowe - LLP to represent you in connection with various issues pertaining to your retirement accounts that have been frozen, thus preventing you from taking your required minimum distributions." |
| 396 | 11/6/2021 | Omit | RMDs: November 2, 2021 Maureen A. Dunn, Esq. wire communication: "I can discuss with my client a carve out to enable Mr. Kijewski to remove his 2021 RMD to avoid further penalty, however those funds must first go to pay the outstanding money judgments" |
| 397 | 11/6/2021 | | RMDs: Tax Years 2011 - 2021 "Required" Minimum Distribution timeline: TIAA, Vanguard and BNY Mellon Pershing IRS, Department of the Treasury, Internal Revenue Code (IRC) compliance failure, IRC terms in January 31, 2011 J4N301918 IRA statement. |
| 398 | 11/6/2021 | | Summons: November 6, 2021 Contact Information |
| 399 | 11/7/2021 | Omit | RMDs: June 25, 2015 Mitchell Y. Cohen, Esq. initiating TIAA "hold, release, terminate" "Required" Minimum Distributions. Demand: Johnson & Cohen, LLP file four (4) original June 25, 2015 documents in NSYCEF. |
| 400 | 11/7/2021 | Omit | RMDs: June 25, 2015 Mitchell Y. Cohen, Esq. initiating BNY Mellon Pershing "hold, release, terminate" "Required" Minimum Distributions. Demand: Johnson & Cohen, LLP file four (4) original June 25, 2015 documents in NSYCEF. |
| 401 | 11/8/2021 | | RMDs: September 7, 2018 - October 6, 2021 USPS Priority Mail Express Tracking. September 7, 2018: IRS. October 6, 2021: Plan Administrators Memorial Sloan Kettering Cancer Center, Harvard University, Mass General Brigham, Beth Israel Deaconess MC |
| 402 | 11/8/2021 | | RMDs: November 8, 2021 immediate unconditional removal of all "Temporary" Restraining Orders freezing retirement accounts, including resuming suspended "Required" Minimum Distributions, resulting in IRS Internal Revenue Code and DOL ERISA compliance! |
| 403 | 11/8/2021 | | RMDs: November 8, 2021 letter to Hon. Nancy Quinn Koba, NYS JSC, about QRP and IRA retirement account IRS, Department of the Treasury, Internal Revenue Code and Department of Labor "Employee Retirement Income" Security Act of 1974 compliance. |
| 407 | 11/9/2021 | | RMDs hold, release, terminate: Automatic quarterly scheduled "Required" Minimum Distributions affirm 1) IRS, Department of the Treasury, Internal Revenue Code compliance, 2) Department of Labor "Employee Retirement Income" Security Act of 1974 compliance |
| 408 | 11/9/2021 | | RMDs hold, release, terminate: November 9, 2021 response to November 9, 2021 OSC NYSCEF No. 404 explains Peter K. Kijewski has NEVER been the empowered authority restraining, withdrawing and/or transferring any funds from his retirement assets. |
| 409 | 11/10/2021 | | RMDs hold, release, terminate: 1) Tax avoidance: QRP and IRA accounts. 2) Omitted tax payments: IRS Internal Revenue Code & DOL ERISA rights demand immediate unconditional compliance due to terminating RMDs for QRP and IRA accounts since March 5, 2018 |
| 410 | 11/10/2021 | Omit | RMDs hold, release, terminate: June 25, 2015 Mitchell Y. Cohen, Esq. Order freezing TIAA retirement accounts, including suspending "Required" Minimum Distributions |
| 411 | 11/10/2021 | Omit | RMDs hold, release, terminate: June 25, 2015 Mitchell Y. Cohen, Esq. Order freezing BNY Mellon Pershing retirement accounts, including suspending "Required" Minimum Distributions |

| | | | |
|---|---|---|---|
| 412 | 11/10/2021 | | RMDs hold, release, terminate: June 25, 2015 Mitchell Y. Cohen, Esq. Order freezing TIAA, Vanguard, BNY Mellon Pershing and Lincoln Financial retirement accounts, including suspending "Required" Minimum Distributions |
| 413 | 11/10/2021 | Omit | RMDs hold, release, terminate: July 6, 2015 Angela Shaw, TIAA "Dear Attorney Cohen: We will implement the Order to the extent of the funds remaining in the contract affected." Attachment June 19, 2015 Summons NYSCEF No. 1 |
| 414 | 11/10/2021 | | RMDs hold, release, terminate: November 16, 2015 Marie F. Kijewski "Required" Minimum Distribution IRA Distribution Request Instructions - Omitting notice to Peter K. Kijewski RMDs on hold |
| 415 | 11/10/2021 | Omit | RMDs hold, release, terminate: November 16, 2015 Maureen A. Dunn, Esq. letter to Jessica A. Dahan, Esq.: "Such delay would subject the parties to a penalty of up to 50%, which would be a wholly unnecessary dissipation of marital funds." |
| 416 | 11/10/2021 | Omit | RMDs hold, release, terminate: November 17, 2015 Email from Jessica A. Dahan, Esq.: "Attached please find letters from J&C from yesterday, as well as the RMD form you should sign. Please review the RMD form immediately." |
| 417 | 11/10/2021 | | RMDs hold, release, terminate: November 22, 2015 Email to BNY Mellon Pershing via Catherine Woolston: "Appended is the letter I received from TIAA-CREF as a result of a communication by Johnson & Cohen to TIAA-CREF." |
| 418 | 11/10/2021 | | RMDs hold, release, terminate: November 23, 2015 BNY Mellon Pershing Legal Group: "This client needs to take their RMD and should have his attorney alert Mitchell Cohen of Johnson & Cohen LLP that this action took place and is a regulatory requirement." |
| 419 | 11/10/2021 | | RMDs hold, release, terminate: November 23, 2015 Email from Catherine Woolston "Anytime - the funds did not yet go out - I submitted it earlier, but it can take a day or two to process - Will email when I got notice that the funds went out." |
| 420 | 11/10/2021 | | RMDs hold, release, terminate: November 23, 2015 "Pershing is now coming back with this - |
| 421 | 11/10/2021 | | RMDs hold, release, terminate: December 1, 2015 Email from Catherine Woolston: "I know this is frustrating, but unfortunately, I can't change Pershing.  Please let me know if you/your attorney will contact Johnson and Cohen or if you want me to try." |
| 422 | 11/10/2021 | Omit | RMDs hold, release, terminate: December 2, 2015 Jessica A. Dahan, Esq. letter to Maureen A. Dunn, Esq.: "As a result of your instruction, Mr. Kijewski's RMD request at Clear Harbor is currently blocked - that you consent to the release of the funds." |
| 423 | 11/11/2021 | | November 11, 2021 LETTER FROM DR. KIJEWSKI TO HONORABLE NANCY QUINN KOBA, J.S.C. |
| 424 | 11/11/2021 | | November 11, 2021 SUBJECT MATTER EXPERTISE OF THOMAS C. SENTER, ESQ. OF GREENBAUM, ROWE, SMITH & DAVIS LLP |
| 425 | 11/11/2021 | | November 11, 2021 SUBJECT MATTER EXPERTISE OF PAUL ABRAMS, CPA AND KASIA WODESLAVSKY, CPA OF ABRAMS & McKEEVER, CPAs LLC |
| 426 | 11/11/2021 | | RMDs hold, release, terminate: December 2, 2015 Email from Catherine Woolston: "Great - I see it says the funds will be held in escrow - so I think that means the wire instructions may be different - page if you want to change the wire instructions." |
| 427 | 11/11/2021 | Omit | RMDs hold, release, terminate: December 2, 2015 "wire instructions kijewski rmd 2015 signed and submitted - pending approval" |
| 428 | 11/11/2021 | | RMDs hold, release, terminate: December 2, 2015 Johnson & Cohen, LLP Process Notes about blocked BNY Mellon Pershing RMDs via Clear Harbor Asset Management and NYSCEF filing Motion No. 1 documents |
| 429 | 11/11/2021 | Omit | RMDs hold, release, terminate: December 2, 2015 Mitchell Y. Cohen, Esq. "A distribution - in the sum of $48,389.49, which represents his Required Minimum Distribution.  On behalf of Ms. Kijewski, we consent to the request to release these funds." |
| 430 | 11/11/2021 | | RMDs hold, release, terminate: December 9, 2015 Catherine Woolston: "I have letter from Marie's attorney approving the RMD to an escrow account - but still need the new instructions from you requesting the funds go to escrow not your checking account." |

| 431 | 11/11/2021 | | RMDs hold, release, terminate: December 9, 2015 Jessica A. Dahan, Esq. "Please provide us with the funds with a check made out to "Newman & Denney, P.C. as Attorneys" and we will put it into an escrow account." |
|---|---|---|---|
| 432 | 11/11/2021 | | RMDs hold, release, terminate: December 9, 2015 Catherine Woolston: "Where should it be mailed? Peter, Can you reply by email or call me to confirm that you permit me to change the instruction page on the RMD form you dropped off the other day." |
| 433 | 11/11/2021 | | RMDs hold, release, terminate: December 9, 2015 Jessica A. Dahan, Esq. "RMD - Please mail it to my attention at: Newman & Denney P.C. " |
| 434 | 11/11/2021 | | RMDs hold, release, terminate: December 9, 2015 Jessica A. Dahan, Esq.: "Peter, the Order is attached. Thank you. Attachment Pendente lite decision and order.pdf 340 KB" |
| 435 | 11/11/2021 | | RMDs hold, release, terminate: December 9, 2015 Hon. Paul I. Marx: "Required Minimum Distribution - Plaintiff explains that Defendant is required to withdraw a certain amount from his retirement accounts each year or he will be charged a 50% penalty." |
| 436 | 11/11/2021 | | RMDs hold, release, terminate: December 9, 2015 Email to Catherine Woolston: "I authorize that the entire $ amount as submitted by me to Clear Harbor be paid to Newman & Denney, P.C. as Attorneys and as instructed by Jessica Dahan." |
| 437 | 11/11/2021 | | RMDs hold, release, terminate: December 11, 2015 $48,389.49 BNY Mellon Pershing RMD check omitting Federal and State tax deduction |
| 438 | 11/11/2021 | | RMDs hold, release, terminate: June 15, 2015 - December 31, 2015 1) $58,800 legal fees, 2) $0 RMD Federal and State tax payments. |
| 439 | 11/12/2021 | | November 12, 2021 request for consultant participation in the November 12, 2021 conference call: Thomas C. Senter, Esq., Paul Abrams, CPA and Kasia Wodeslavsky, CPA, MST. |
| 440 | 11/13/2021 | | RMDs hold, release, terminate: November 13, 2021 49 days remaining until tax years 2018, 2019 and 2021 $200,000+ TIAA and Vanguard 50% "Required" Minimum Distribution penalty for QRP and IRA RMDs terminated March 5, 2018. |
| 441 | 11/13/2021 | | RMDs hold, release, terminate: November 16, 2015 tax years 2011 - 2015 RMD calculations worksheet: "11/16/2015 3:55 PM last modified by mdunn, 10/20/2014 4:15 PM created by Marie". "mdunn" Maureen A. Dunn, Esq., "Marie" Marie F. Kijewski. |
| 442 | 11/13/2021 | | RMDs hold, release, terminate: April 10, 2014 Marie F. Kijewski stopped contributing her salary for household expenses saving marital assets for Mitchell Y. Cohen, Esq. legal fees: 1) Action for a Divorce, 2) freezing retirement accounts June 25, 2015. |
| 443 | 11/13/2021 | | RMDs hold, release, terminate: January 2 - 10, 2016 Emails with Rosalia Labate: "I spent about $2,400 of that for my personal use, like cab fares for the 2015 RMD fiasco. Unknown is what happened to the RMD payments prior to 2015." |
| 444 | 11/13/2021 | | RMDs hold, release, terminate: 13X Emails "RMD - IRA distribution is reported in full $48,389.49 on line on line 15b and half is deducted on line 21 per your and Jessica Dahan's e-mail." - "I will pay the minimum of $38,500 on federal." |
| 445 | 11/13/2021 | | RMDs hold, release, terminate: June 1, 2016 Peter K. Kijewski: "I thought the division of assets is not done until a final agreement. Judge Marx referenced this for the RMD, but made a special exception. Had J&C negotiated in good faith" |
| 446 | 11/13/2021 | | RMDs hold, release, terminate: June 30, 2016 Email to Jessica A. Dahan, Esq.: "Marie or Claire Foley has to document that the RMD funds were deposited in marital accounts. - If they cannot document that this is the case, we have a $130K problem." |
| 447 | 11/14/2021 | | Equitable Distribution: June 30, 2016 Email to Jessica A. Dahan, Esq. attachment: March 23, 2016 Marie F. Kijewski breathtaking marital property removal violation in the presence of the minor son. Original item yellow highlight for Maureen attention. |
| 448 | 11/14/2021 | Omit | Equitable Distribution: March 23, 2016 Jessica A. Dahan, Esq. About Property Removal with 3 Attachments: "Peter, please see the attachments and let's discuss tomorrow. They are insane." |
| 449 | 11/14/2021 | | QDROs: August 4, 2016 Email to Actuary Robert Guarnera: "Appended is the information you requested. The second document references a RMD distribution which I paid in full, but Marie Kijewski received 1/2. This payment is not normally made - trial." |

| | | | |
|---|---|---|---|
| 450 | 11/14/2021 | | Economic Duress: August 7, 2016 Email to Louis I. Newman, Esq.: "The $50,000 loan made up my deficit the first time. The Vanguard investment account made up my deficit for the second time. The Clear Harbor investment account is my next source of cash." |
| 451 | 11/14/2021 | | RMDs hold, release, terminate: August 14, 2016 Email to Jessica A. Dahan, Esq.: "It looks to me like my RMD's were deposited in the joint Clear Harbor investment account." |
| 452 | 11/14/2021 | | QDROs: August 18, 2016 Email to Actuary Robert Guarnera Forwarding Retirement Account Information |
| 453 | 11/14/2021 | | QDROs: August 18, 2016 Retirement Account Information |
| 454 | 11/15/2021 | | QDROs: September 1, 2016 Email to Jessica A. Dahan, Esq.: "Issues for Resolution" including retirement accounts and RMDs - Bookmarks |
| 455 | 11/15/2021 | | RMDs hold, release, terminate: September 23, 2016 Email to Marie F. Kijewski: "1. The deer will rub their antlers on the small magnolia tree - 5. You will need to take an RMD before the end of the year. I've attached a spreadsheet with calculations." |
| 461 | 11/15/2021 | | RMDs hold, release, terminate: October 9, 2016 Email to Jessica A. Dahan, Esq.: "The time has passed where Johnson & Cohen can back me into a corner and we have yet another crisis to deal with - until such time that I can lead a reasonably normal life." |
| 456 | 11/15/2021 | | QDROs: October 11, 2016 Introductory Email from Paul Cowie, TIAA Portfolio Advisor WMA: "I am uncertain where you are in the process but have you received QDRO Documents from the Courts?" |
| 457 | 11/15/2021 | Omit | RMDs hold, release, terminate: December 7, 2016 Email from Catherine Woolston: "Peter's IRA--MUST be done before 12/31/16 - Anticipating an issue since Pershing still has a block on Peter's IRA - I'm sure we need a letter like this one to do the RMD." |
| 458 | 11/15/2021 | | RMDs hold, release, terminate: December 7, 2016 Email to Jessica A. Dahan, Esq. "This is how I get to waste my time. Clear Harbor cannot withdraw my RMD. Johnson & Cohen blocked payment. Same as last year. Catherine will send request to J & C." |
| 459 | 11/15/2021 | Omit | RMDs hold, release, terminate: December 7, 2016 Email from Marie F. Kijewski false: "Peter always took the entire RMD amount from the Clear Harbor IRA. - I can also explain." True: "Marie always took the entire RMD amount from the Clear Harbor IRA." |
| 460 | 11/15/2021 | Omit | RMDs hold, release, terminate: December 7, 2016 Email to the attorneys and parties: "All RMD'S have been paid except this one. Johnson & Cohen blocked payment. Same as last year. I have J & C invoice with charge for permitting payment." |
| 462 | 11/15/2021 | | RMDs hold, release, terminate: December 7, 2016 Email from Catherine Woolston: "I got the letter from Marie's lawyer OK'ing the releasing the RMD funds - All I need is for you to sign page 9 of the attached PDF and return it to me ASAP." |
| 463 | 11/15/2021 | | RMDs hold, release, terminate: December 10, 2016 Email to Catherine Woolston: "The signed form is attached." |
| 464 | 11/15/2021 | Omit | Roth IRA: December 13, 2016 Email from Maureen A. Dunn, Esq. resulting in NO Roth IRA split: "Marie needs to know whether Peter is setting up a Roth Brokerage IRA, or whether he will set up just a Roth IRA." Peter K. Kijewski set up Vanguard Roth IRA. |
| 465 | 11/15/2021 | | RMDs hold, release, terminate: December 14, 2016 Email from Paul Cowie, TIAA: "I wanted to let you know that we have received your Required Minimum Distribution Paperwork and the paperwork is in good order so you will be receiving your 2016 RMD." |
| 466 | 11/15/2021 | | Equitable Distribution: December 14, 2016 Email to Jessica A. Dahan, Esq.: "Found in a box labelled "Hold for Joseph" left when she stripped the residence. Marie does not seem to have lot of experience as a thief. She left a lot of other items." |
| 467 | 11/15/2021 | | Equitable Distribution: January 1, 2017 Email to Jessica A. Dahan, Esq.: "I am requesting the return of Deutsche Bank account statements. There have been multiple direct arrangements with Marie Kijewski to pick up her personal and work materials." |
| 468 | 11/15/2021 | | QDROs: January 5, 2017 Email from Maureen A. Dunn, Esq. showing "protect the livelihoods of lawyers": "I have discussed this with Marie and quite frankly, Peter's position does not make sense and we do not consent to using TIAA Cref for the QDRO." |
| 469 | 11/15/2021 | | RMDs hold, release, terminate: January 6, 2017 Email to Jessica A. Dahan, Esq.: "I also learned that the 2017 RMD has to be withdrawn before transfer to Marie." |

| 470 | 11/15/2021 | | RMDs hold, release, terminate: January 8, 2018 Email to Jessica A. Dahan, Esq.: "The 2016 Vanguard IRA RMD is $29,282.05. I am required by Federal Law to withdraw an accelerated 2017 RMD prior to transfer of any funds to Marie." |
| 471 | 11/15/2021 | | Roth IRA: January 17, 2017 Email to Jessica A. Dahan, Esq.: "I agreed that the Roth IRA will be sold and the proceeds split.  I do not know what happened to the cash." |
| 472 | 11/15/2021 | | RMDs hold, release, terminate: January 17, 2017 Email from Paul Cowie, TIAA: "Clear Harbor Account had a restriction on it which prohibited it from being transferred. The only way to transfer the account was to have the attorneys lift the restriction." |
| 473 | 11/15/2021 | | RMDs hold, release, terminate: January 30, 2017 Email to Jessica A. Dahan, Esq.: "Blocked by Johnson & Cohen - blocks my taking ownership - blocked by Johnson & Cohen - since it is blocked by Johnson & Cohen absent document - which permits the block." |
| 474 | 11/15/2021 | | QDROs: February 5, 2017 Email to Actuary Robert Guarnera with comprehensive QDRO review. |
| 475 | 11/16/2021 | | QDROs: February 6, 2017 Email to Jessica A. Dahan, Esq.: "I cannot locate the e-mail of August 10, 2016 referenced by Robert Guarnera.  Please forward to me if you have it. My earned income January 2017: $7,649.18 - Support payment to Marie: $8,067.50" |
| 476 | 11/16/2021 | | QDROs: February 27, 2017 Jessica A. Dahan, Esq. gross negligence due to failure forwarding the August 10, 2016 Robert Guarnera "Kijewski - QDRO Checklist & Retainer" |
| 477 | 11/16/2021 | | Taxes: March 8, 2017 Email to Hasmukh S. Chheda: "Dear Mr. Chheda, Today I am putting together a package for my 2016 return." |
| 478 | 11/16/2021 | | RMDs hold, release, terminate: March 8, 2017 Dana M. Stutman, Esq. Retainer Agreement due to Jessica A. Dahan, Esq. ghosting, concurrent with June 25, 2015 Mitchell Y. Cohen, Esq. BNY Mellon Pershing "RMD hold" attached by Peter K. Kijewski - Bookmarks |
| 479 | 11/16/2021 | | RMDs hold, release, terminate: March 9, 2017 Email to SASL LLP: "I have signed the retainer agreement and credit card authorization" - Attachment Dana M. Stutman, Esq. CPA subject matter expertise. |
| 480 | 11/16/2021 | | QDROs: March 15, 2017 Email to Dana M. Stutman, Esq. with 3 attachments "Issues to be resolved" |
| 481 | 11/16/2021 | | Economic Duress: March 21, 2017 Email to Dana M. Stutman, Esq.: "I have updated the analysis of my deficit relative to my net salary for the past 21 months. It is $262,175 or $12,484/month." - "Maureen - said that they will be filing a contempt motion" |
| 482 | 11/27/2021 | Omit | RMDs hold, release, terminate: August 9, 2021 Maureen A. Dunn, Esq. TIAA and Vanguard Peter K. Kijewski records subpoena: "Failure to comply with this subpoena is punishable for - all damages sustained by reason of your failure to comply." |
| 483 | 11/27/2021 | | RMDs hold, release, terminate: August 11, 2021 Vanguard letter to Peter K. Kijewski: "Vanguard intends to respond to the subpoena unless we receive notice that a formal objection has been filed with the Court." |
| 484 | 11/27/2021 | Omit | RMDs hold, release, terminate: August 12, 2021 Vincent Ford, TIAA QRM, subpoena letter to Maureen A. Dunn, Esq.: Disbursement restrictions removed "i. Date Minimum Distribution Payments must commence; ii. Six (6) months following receipt of the notice." |
| 485 | 11/27/2021 | Omit | RMDs hold, release, terminate: August 12, 2021 Vincent Ford, TIAA QRM, subpoena letter to Maureen A. Dunn, Esq. enclosure TIAA.ORG "APPROVAL GUIDELINES AND PROCEDURES FOR QUALIFIED DOMESTIC RELATIONS ORDERS" about disbursement restrictions removal. |
| 486 | 11/27/2021 | Omit | RMDs hold, release, terminate: August 12, 2021 Vincent Ford, TIAA QRM, subpoena letter to Maureen A. Dunn, Esq. enclosure TIAA.ORG "RETIREMENT ACCUMULATIONS AND DOMESTIC RELATIONS MATTERS - FREQUENTLY ASKED QUESTIONS" about splitting IRAs |
| 487 | 11/27/2021 | Omit | RMDs hold, release, terminate: August 30, 2021 Maureen A. Dunn, Esq. letter to Peter K. Kijewski - August 16, 2021 TIAA Subpoena Compliance: "Plaintiff intends to offer at trial or hearing, business records authenticated by certification." |
| 488 | 11/27/2021 | Omit | RMDs hold, release, terminate: September 16, 2021 Maureen A. Dunn, Esq. letter to Peter K. Kijewski: "Plaintiff intends to offer at trial or hearing, business records authenticated by certification", Vanguard IRA December 31, 2019 – June 30, 2021 |

| 489 | 11/28/2021 | | RMDs hold, release, terminate: Vanguard Individual 401(k) Basic Plan Document and Vincent Ford, TIAA QRM, documents mailed to Maureen A. Dunn, Esq. show placing a hold on "Required" Minimum Distributions is strictly prohibited. There are NO exceptions. |
|---|---|---|---|
| 490 | 12/2/2021 | | NOTICE OF APPEARANCE (POST RJI) |
| 503 | 2/2/2022 | | J&C billing statements |

## A. SDNY CM/ECF EXHIBITS Filed Separately

**EXHIBIT 16 February 19, 2025, TIAA Wire Communication: Modern Retirement Scams**

Provided for SDNY CM/ECF filing with COMPLAINT.

**EXHIBIT 17 October 5, 2021 Immediate Unconditional Removal of all 'Temporary' Restraining Orders Freezing Retirement Accounts – Letter**

Provided for SDNY CM/ECF filing with COMPLAINT.

**EXHIBIT 18 October 5, 2021 Immediate Unconditional Removal of all 'Temporary' Restraining Orders Freezing Retirement Accounts**

Provided for SDNY CM/ECF filing with COMPLAINT.

**EXHIBIT 19 June 12, 2024, Letter to U.S. Government Officials -Tracking TIAA, Vanguard and BNY Mellon Pershing Serial Enforcement $0.00 RMDs vs. June 25, 2015, $493,192 DRO**

Provided for SDNY CM/ECF filing with COMPLAINT.

**EXHIBIT 20 December 4, 2024, Letter to Jill F. Spielberg - NYSCEF Document Redaction**

Provided for SDNY CM/ECF filing with COMPLAINT.

**EXHIBIT 21 January 12, 2025, NYS Electronic Filing System - Peter Kijewski Comments**

Provided for SDNY CM/ECF filing with COMPLAINT.

**EXHIBIT 22 July 31, 2023, TIAA Client Relationship Summary**

Provided for SDNY CM/ECF filing with COMPLAINT.

**EXHIBIT 23 June 25, 2015, Mr. Cohen AUTOMATIC ORDERS Letter to Vanguard, via FAX "06 27 2015 300"**

Provided for SDNY CM/ECF filing with COMPLAINT.

**EXHIBIT 24 February 22, 2016, Ms. Dunn Discovery Deficiency Letter to "Dear Ms. Dahan"**

Provided for SDNY CM/ECF filing with COMPLAINT

.

**EXHIBIT 25 <u>March 14, 2018, Ms. Kijewski AFFIDAVIT IN SUPPORT</u>**

Provided for SDNY CM/ECF filing with COMPLAINT.


**EXHIBIT 26 <u>March 14, 2018, Ms. Dunn AFFIRMATION IN SUPPORT</u>**

Provided for SDNY CM/ECF filing with COMPLAINT.


**EXHIBIT 27 <u>Mary Kentros, MD & Priscilla Fishler, PhD</u>**

Provided for SDNY CM/ECF filing with COMPLAINT.

**EXHIBIT 28 <u>June 12, 2024 - Tracking Ms. Dunn October 20, 2016, $468,997 IRA DRO to December 11, 2023, $1,027,035.27 IRA DRO "Investment Experience" Financial Plan – Analysis</u>**

Provided for SDNY CM/ECF filing with COMPLAINT.


**EXHIBIT 29 <u>Attorney Compliance - Internal Revenue Code, Internal Revenue Service, and "Employee Retirement Income Security Act of 1974" (ERISA)</u>**

Provided for SDNY CM/ECF filing with COMPLAINT.