UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PETER K. KIJEWSKI, Plaintiff, -v- TIAA, et al., Defendants. | : | 25-CV-01779 (JAV) <br> OPINION AND ORDER |

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Peter K. Kijewski brings this action *pro se* against Defendants Teachers Insurance and Annuity Association of America (sued as "TIAA"), The Vanguard Group, Inc. ("Vanguard"), BNY Pershing, Maureen A. Dunn, Mitchell Y. Cohen, and Marie F. Kijewski. Defendants now move to dismiss this action pursuant to Rules 8, 9, 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 24, 30, 51, 69. For the reasons that follow, the motion to dismiss is **GRANTED**.

**BACKGROUND**

This case arises out of a contentious matrimonial action between Plaintiff and his ex-wife, Defendant Marie Foley Kijewski, that was adjudicated in the Supreme Court of the State of New York. *See Marie Foley Kijewski v. Peter K. Kijewski*, Index No. 60606/2015 (the "Matrimonial Action"). *See* ECF No. 8-3.

The Court notes at the outset that the Amended Complaint is 466 pages in length and consists of 747 paragraphs. ECF No. 6. ("Am. Compl.") Despite its

prolixity, the Amended Complaint contains no narrative account of events. Instead, Plaintiff quotes at length from various documents, including court orders, court filings, correspondence, without providing any context. Many of the paragraphs are incomprehensible.

To provide an example, paragraph 515 reads in its entirety: "RMD automation disabled: March 3, 2018, IRA FBO PETER K KIJEWSKI, RMD Request QUARTERLY, TIAA PORTFOLIO ADVISOR INVESTMENT ADVISORY PROGRAM, Periodic Asset Movement NYSCEF No. 181."

To further confuse matters, Plaintiff appears to include quotation marks around passages that are not in fact quotations from other documents. *See, e.g.*, Am. Compl., ¶ 36(a). He even goes so far as to present a falsified exhibit, on TIAA letterhead, that he calls an "alternative" letter to replace the "pathetic ineffectual" letter that TIAA actually sent. Am. Compl., Ex. 4.

As best as the Court can ascertain, mostly through reference to the exhibits attached to the Amended Complaint, in the course of the Matrimonial Action, the state court judge issued restraining orders preventing Plaintiff from dissipating several of his retirement accounts that were determined to be potential marital assets. *See* Am. Compl., Exs. 2, 5. Plaintiff alleges that he was subject to penalties from the IRS as a result of his failure to take Required Minimum Distributions ("RMDs") from these retirement accounts. *Id.* at ¶¶ 641, 698-700, 723. He now seeks to hold Defendants liable for these penalties.

Defendants Cohen and Dunn represented Ms. Kijewski in the Matrimonial Action. TIAA-CREF, as the third-party administrator for Plaintiff's employment-sponsored Retirement Savings Plans, received a letter from Ms. Kijewski's attorney in 2015, informing TIAA of the court orders prohibiting the parties from withdrawing retirement funds. Am. Compl., Ex. 5.

In November 2015, Dunn wrote to Plaintiff's counsel urging Plaintiff to take his RMDs from his retirement accounts to avoid imposition of the 50% penalty imposed by the IRS. Am. Compl., ¶ 27. Dunn proposed that the RMDs either be distributed equally to Mr. and Ms. Kijewski or be placed in an escrow account. *Id.* The Amended Complaint does not indicate how Plaintiff responded to this offer.

On September 2, 2016, the judgment of divorce issued pursuant to a settlement agreement between the parties. *Id.*, ¶ 34. The order provided that a qualified domestic relations order would be issued "as soon as practicable." *Id.* For reasons not set forth in the Complaint, in March 2018 counsel for Ms. Kijewski sought a temporary restraining order from the state court judge that again enjoined TIAA from making any distributions from the retirement accounts. *Id.*, ¶¶ 38-40.

In December 2017, Plaintiff requested of TIAA that he begin receiving his RMDs. Am. Compl., Ex.5. The TIAA Retirement Plans made payments to Plaintiff until March 2018, at which time TIAA received a letter from Ms. Kijewski's attorney stating that an order had been issued by the state court prohibiting transfers or withdrawals from any of Plaintiff's retirement accounts. *Id.* After receiving this letter, TIAA froze Plaintiff's account, ceased with distributions, and

notified Plaintiff that this restriction would remain in place until TIAA received a signed court order releasing the restriction or a completed qualified domestic relations order ("DRO"). *Id.*

The funds in the retirement accounts remained frozen through 2021. *Id.* (In 2020, no RMDs were due as a result of the Coronavirus Aid, Relief, and Economic Security Act). *Id.* In 2021, Plaintiff reengaged with his retirement plans regarding a potential qualified domestic relations order ("DRO"). *Id.* At the direction of the employer-sponsored plan, TIAA sent a letter to Ms. Kijewski's attorneys in October 2021, stating that because TIAA had yet to receive a DRO, TIAA intended to release the hold on Plaintiff's retirement accounts unless a DRO was received within 30 days. Am. Compl., Exs. 1, 2. TIAA did not receive a DRO, and thus in 2021 paid Plaintiff the amount of RMDs that had been suspended in 2018, 2019, and 2021, as well as fixed period annuity payments. Am. Compl., Exs. 2, 5.

TIAA sent a similar letter to Ms. Kijewski's attorneys in October 2022. *Id.*, Ex. 7. While TIAA received a Decision and Order issued in the Matrimonial Action on November 4, 2022, TIAA assessed that this did not constitute a DRO with respect to the TIAA or the retirement plans. *Id.* Additionally, the November 2022 Decision and Order explicitly carved out RMDs. *See* Am. Compl., ¶ 9(a) (alleging that decision restrained Plaintiff "from removing, transferring, or withdrawing the retirement assets at Vanguard and TIAA-CREF until the necessary QDROs are processed, except to the extent he is required to take a mandatory distribution for

the calendar year 2022"). Accordingly, TIAA indicated that it did not intend to withhold payment to Plaintiff from his retirement accounts. *Id.*, Ex. 7.

Vanguard holds Plaintiff's Rollover IRA account. On April 9, 2018, Vanguard received the restraining order from Ms. Kijewski's counsel. Am. Compl., Ex. 9. Vanguard noted that it was not a party to the Matrimonial Action, and thus deemed itself not to be bound by the order. *Id.* It nonetheless stated that, in light of the "dispute regarding the assets in the Account," Vanguard had placed a restriction on the account, including any Required Minimum Distributions. *Id.* On January 30, 2023, the state court issued an order authorizing Plaintiff to take his 2022 RMDs from his Vanguard IRA account. Am. Compl., ¶ 21. In March 2023, the state court further ordered Vanguard to issue RMDs from the Vanguard IRA accounts for 2018 through 2023. *Id.*, ¶ 22.

BNY Pershing also holds one of Plaintiff's IRA accounts. Am. Compl., ¶ 25. In June 2015, Cohen sent a copy of the restraining order to BNY Pershing. *Id.*, ¶ 26. In 2016, when BNY Pershing advised that Plaintiff was required to take his RMDs and that the litigation hold needed to be dealt with, Dunn responded that Ms. Kijewski would consent to the release of the RMDs, with the distribution to be evenly divided between Plaintiff and Ms. Kijewski. *Id.*, ¶¶ 28-30. On September 20, 2017, counsel for Ms. Kijewski emailed BNY Pershing to advise that the judgment of divorce had issued and no further restraint should be imposed on his account, including the RMDs. *Id.*, ¶ 35.

With respect to Cohen and Dunn, Plaintiff accuses them of filing an unprecedented volume of "obfuscating" documents in the Matrimonial Action, and seeks to recover for the time he spent reviewing those filings. *Id.* at ¶¶ 39, 48-49, 52, 63, 685. He also brings claims against them for "fraud" in connection with applications for attorney's fees that were awarded by the state court, *id.* at ¶¶ 711-20, and for their failure to convince Ms. Kijewski to enter into a "prompt" and "satisfactory" settlement of the Matrimonial Action. *Id.* at ¶¶ 688, 744-47.

**LEGAL STANDARDS**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc.*, 138 F.4th 104, 108 (2d Cir. 2025) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [the standard] requires more than labels[,] conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Jennings v. Hunt Companies*, Inc., 367 F.

Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).

A "pro se complaint . . . [is] interpret[ed] . . . to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (cleaned up). Yet a *pro se* complaint must still "plead sufficient facts to state a claim to relief that is plausible on its face." *Wilder v. United States Dep't of Veterans Affairs*, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (citations omitted). "[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008).

**DISCUSSION**

Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Fraenkel v. Standard Chartered Bank*, No. 24-CV-4484 (MMG) (RWL), No. 24-CV-5788 (MMG) (RWL), 2025 WL 2773251, at *6 (S.D.N.Y. Sept. 26. 2025) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

The 466-page, 747-paragraph Amended Complaint does not provide a "short and plain" statement. "Dismissal pursuant to [Rule 8] is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise

unintelligible that its true substance, if any, is well disguised." *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (quotation omitted). The Complaint clearly meets this standard.

The Amended Complaint largely quotes from various documents and transcripts without commentary or explanation. The paragraphs that do not consist of quotations or charts of exhibits are largely incomprehensible. For example, paragraph 17 reads in its entirety: "Vanguard Group Inc. failed to assure the Internal Revenue Code compliance mandating Peter Kijewski, Individual Retirement Account (IRA) owner quarterly scheduled 'Required Minimum Distribution' (RMD) disbursements, starting May 10, 2011." Paragraph 26 states: "June 25, 2015, Mr. Cohen AUTOMATIC ORDERS letter to Pershing Advisor Solutions NYSCEF No. 400 (18 pages), enclosed unauthorized BNY Pershing IRA account numbers and dog & cat doodle, account owner Peter Kijewski." It is only by referencing certain of the attached exhibits that the Court was able to glean, in broad terms, the contours of Plaintiff's claims. Yet the sequence of events is not at all clear from the pleadings, nor is it evident what specific acts by each of the Defendants form the basis of his claims. The Court therefore dismisses the Amended Complaint for violation of Rule 8(a)(2).

"When the court chooses to dismiss, it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8." *Salahuddin*, 861 F.2d at 42. "It will generally be an abuse of discretion to deny leave to amend when dismissing a nonfrivolous original complaint on the sole ground that it does not

constitute the short and plain statement required by Rule 8." *Id.* If the "substance of the claim pleaded is frivolous on its face," however, the Court need not grant leave to amend. *Id.*

Defendants argue that leave to amend should not be granted because the Amended Complaint is frivolous. Specifically, Defendants contend that Plaintiff's claims are precluded under the Domestic Relations Exception Doctrine and the Domestic Relations Abstention Doctrine. *See* ECF No. 26 at 8-9, ECF No. 71 at 7-10.

The Domestic Relations Exception Doctrine does not deprive this Court of subject matter jurisdiction over the Complaint, however. That doctrine only applies to the "narrow" class of actions in which a federal court is asked to "grant a divorce or annulment, determine support payments, or award custody of a child." *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990). Moreover, this exception to subject matter jurisdiction is limited to cases involving the federal court's diversity jurisdiction. *Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d Cir. 2019). Plaintiff asserts claims under the Employee Retirement Income Security Act of 1974, and thus this case presents a federal question.

In contrast, the Domestic Relations Abstention Doctrine is potentially implicated by Plaintiff's claims. "A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *American Airlines*, 905 F.2d at 14. Federal courts

must therefore generally abstain from entertaining challenges to orders entered by a state court in divorce or custody proceedings. *See Deem*, 941 F.3d at 623-25.

Yet given the lack of clarity in the pleadings, the Court cannot conclude that Plaintiff's claims are limited to seeking a redistribution of marital assets awarded in the Matrimonial Action or otherwise challenging orders issued by the state court. The Court does not have before it any of the state court orders at issue, or a sufficient understanding of what occurred in the Matrimonial Proceedings. It is thus unclear, for example, whether the state court orders at issue required that TIAA, Vanguard, and BNY Pershing freeze Plaintiff's accounts or precluded him from receiving his RMDs during the entirety of the relevant time period, such that any claims arising from the restraint on the accounts amounts to an attack on the state court's authority. As the Court cannot determine at this stage of the proceeding that Plaintiff's claims are entirely foreclosed by the Domestic Relations Abstention Doctrine, it will not deny leave to amend on this ground.

Defendants also invoke the *Rooker-Feldman* doctrine. ECF No. 51-1 at 13. The *Rooker-Feldman* doctrine deprives federal courts of jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). For the doctrine to apply, "four requirements must be met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment;

(3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Sung Cho v. City of New York*, 910 F.3d 639, 645 (2d Cir. 2018). The doctrine does not apply, however, to "injuries caused by a state-court order that was interlocutory, unappealable, and effectively reversed by a superseding order." *Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009).

The lack of clarity in the pleadings as to the nature and extent of Plaintiff's claims leaves the Court unable to determine whether, and to what extent, the *Rooker-Feldman* doctrine applies. Given the impenetrable nature of the Amended Complaint, the Court cannot say that there is no set of facts that Plaintiff could allege that would fall within the Court's subject matter jurisdiction.

That is not to say that all of Plaintiff's claims escape preclusion. Plaintiff fails to state a claim against Defendants Cohen and Dunn for their failure to "guide" their client to "a prompt settlement," Am. Compl., ¶ 688, or for making purportedly excessive filings in the Matrimonial Action, *id.*, ¶¶ 39, 48-49, 52, 63, 685. "New York courts make abundantly clear that an attorney does not owe a duty of care to an adversary." *Sanchez v. Ehrlich*, No. 16-CV-8677 (LAP), 2018 WL 2084147, at *7, (S.D.N.Y. Mar. 29, 2018) (quoting *Crews v. City of Nassau*, 612 F. Supp. 2d 199, 205 (E.D.N.Y. 2009)). Because Defendants Cohen and Dunn did not owe a duty of care to Plaintiff, the Court dismisses these claims with prejudice.

## CONCLUSION

Accordingly, Defendants' motion to dismiss is **GRANTED**. Plaintiff shall have until November 23, 2026, to file his Second Amended Complaint. Plaintiff is cautioned, however, that Rule 8 requires a short and plain statement of the case, with each allegation being "simple, concise and direct." Fed. R. Civ. P. 8(d)(1). Plaintiff's continued failure to comply with Rule 8 may result in the dismissal of his case without leave to further amend.

The Clerk of the Court is directed to terminate ECF Nos. 24, 30, 51, 69, 78, and 92.

SO ORDERED.

Dated: September 30, 2026
New York, New York

JEANNETTE A. VARGAS
United States District Judge